1  E. MARTIN ESTRADA
2  United States Attorney
   THOMAS D. COKER
3  Assistant United States Attorney
   Chief, Tax Division
4  GAVIN L. GREENE (Cal. Bar No. 230807)
5  Assistant United States Attorney
6        Federal Building, Suite 7211
7        300 North Los Angeles Street
         Los Angeles, California 90012
8        Telephone: (213) 894-4600
         Facsimile: (213) 894-0115
9        E-mail: Gavin.Greene@usdoj.gov

10

11 Attorneys for the United States of America

12              UNITED STATES DISTRICT COURT
13             CENTRAL DISTRICT OF CALIFORNIA
                      WESTERN DIVISION
14

15

16 United States of America,           Case No. 2:21-cv-06746-FMO-KS

17         Plaintiff,                   Notice of Motion and Cross Motion for
                                        Summary Judgment; Memorandum of
18         v.                           Points and Authorities; Declarations

19

20 Laura Kim,                           Date:        Thursday,
                                                     March 9, 2023
21         Defendant.                   Time:        10:00 a.m.
22                                      Courtroom:   6D
                                        Location:    First Street Courthouse
23                                                   350 West First Street
24                                                   Los Angeles, California

25

26

27

28

                              1

## **Notice of Motion and Cross-Motion for Summary Judgment**

PLEASE TAKE NOTICE that on March 9, 2023, at 10:00 a.m., before the Honorable Fernando M. Olguin, in Courtroom 6D of the United States Courthouse for the Central District of California, 350 West 1st Street, 6th Floor, Los Angeles, California, the United States of America (Plaintiff) and Laura Kim (Defendant) each move the Court for an order granting summary judgment pursuant to Federal Rule of Civil Procedure 56.

On January 4, 2023 (more than 35 days prior to filing this motion), Plaintiffs' counsel, AUSA Gavin Greene, conferred with Defendant's counsel, Caroline Ciraolo, William Greco, A. Lavar Taylor, and Jonathan Amitrano pursuant to Local Rule 7-3 and the Court's Order Re: Summary Judgment Motions (ECF document number 21) and the Order Establishing Dates for the Motion for Summary Judgment (ECF document number 30). Counsel for the parties were unable to reach a resolution regarding the matters raised by the motions.

This motion is based upon this Notice of Motion, the following documents, and such oral argument and additional evidence that the Court may permit:

- Joint Memorandum of Points and Authorities;
- Evidentiary Appendix of declarations and written evidence (including documents and deposition excerpts);
- Joint Appendix of Undisputed and Disputed Facts;
- Declaration of Gavin Greene (GG or Exhibit 186);
- Declaration of IRS Appeals Officer Duane Binns (DB or Exhibit 188);

2

- Declaration of Kathy Mitchell (KM or Exhibit 189); and
- Deposition of Laura Kim (Kim or Exhibit 182); and
- Stipulation of Regarding Foreign Account Balances (Exhibit 213).

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney
THOMAS D. COKER
Assistant United States Attorney
Chief, Tax Division

Dated: February 7, 2023          /s/
GAVIN GREENE
Assistant United States Attorney
Attorneys for the United States of America

# Contents

I. Preliminary Statements ................................................................... 1

    A. United States' Preliminary Statement ...................................... 1

    B. Defendant's Preliminary Statement ......................................... 1

II. Whether Defendant was willful ................................................... 2

    A. United States' Position ............................................................. 2

        1.   Facts ................................................................................ 2

        2.   Analysis .......................................................................... 8

    B. Defendant's Position .............................................................. 16

        1.   Facts .............................................................................. 16

        2.   Analysis ........................................................................ 24

III. Whether the FBAR penalties were assessed within the applicable limitations period ............................................................................. 28

    A. Defendant's Position ............................................................. 28

    B. United States' Position .......................................................... 29

        1.   Additional Facts ........................................................... 29

        2.   Analysis ........................................................................ 30

IV. Whether the FBAR penalties were assessed by someone with the requisite authority to make the assessment ....................................... 32

    A. Defendant's Position ............................................................. 32

    B. United States' Position .......................................................... 35

        1.   Additional Facts ........................................................... 35

        2.   Analysis ........................................................................ 36

V. Whether the IRS failed to identify specific accounts that Defendant willfully failed to accurately report on her FBARs ............................. 39

    A. Defendant's Position ............................................................. 39

    B. United States' Position .......................................................... 41

        1.   Additional Facts ........................................................... 41

        2.   Analysis ........................................................................ 41

VI. Whether the IRS calculation of the FBAR penalties was arbitrary and capricious ................................................................................. 42

    A. Defendant's Position ...................................................................... 42

    B. United States' Position ................................................................... 47

        1.    The FBAR penalty was not arbitrary and capricious ........ 47

        2.    In the alternative, remand to the IRS is appropriate ........ 47

VII. Defendant's Conclusion .................................................................... 48

## CASES

*350 Montana v. Haaland*, 50 F.4th 1254, 1273 (9th Cir. 2022) ................... 42

*Am. Power & Light Co. v. SEC*, 329 U.S. 90 (1946)........................................ 47

*Bedrosian v. United States*, 2017 WL 4946433 (E.D. Pa. Sept. 20, 2017) .... 12

*Bedrosian v. United States*, 42 F.4th 174 (3d Cir. 2022), *petition for cert. filed* (U.S. Dec. 29, 2022) (No. 22-598) .................................................. 26

*Bedrosian v. United States*, 505 F. Supp. 3d 502 (E.D. Pa. 2020)................ 13

*Bedrosian v. United States*, 912 F.3d 144 (3d Cir. 2018)................... 10, 12, 13

*Bellis v. Comm'r,* 67 TCM 2013 (1994) ........................................................ 28

*Brafman v. United States*, 384 F.2d 863 (5th Cir. 1967)...........................34

*Chevron U.S.A. Inc. v. Natural Resources Defense Council Inc.*, 467 U.S. 837, 844 (1984) ........................................................................ 40

*Country Gas Service, Inc. v. United States*, 405 F.2d 147 (1st Cir. 1969)......34

*Crawford-Hall v. United States*, 394 F. Supp. 3d 1122 (C.D. Cal. 2019)..........................................................................................37

*DelPonte v. Commissioner*, 158 T.C. No. 7 (2022)...................................33

*Dep't of Homeland Security v. Regents of the University of California*, 140 S. Ct. 1891 (2020) ...................................................... 42, 43

*Fargo v. Commissioner*, 447 F.3d 706 (9th Cir. 2006) ............................ 30, 41

*Farmer v. Brennan*, 511 U.S. 825 (1994) .......................................................... 9

*Frankl v. HTH Corp.*, 650 F.3d 1334 (9th Cir. 2011)…...............................37

*Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 541 (11th Cir. 1996)............... 47

*Hicks v. Comm'r,* 62 TCM 1234 (1991) ........................................................ 28

*In re Klee*, 216 B.R. 42 (Bankr. D. Or. 1997)…...........................................35

*Inland Empire Pub. Lands Council v. Glickman*, 88 F.3d 697 (9th Cir. 1996)..........................................................................................37

*Jones v. United States*, 2020 WL 2803353 (C.D. Cal. May 11, 2020)...... 15, 47

*Jones v. United States*, No. 19-cv-4950, 2020 WL 2803353, at *8 (C.D. Cal. May 11, 2020)................................................. 24, 42, 46

*Kimble v. United States*, 141 Fed. Cl. 373 (Fed. Cl. 2018)........................... 15

*Lefcourt v. United States*, 125 F.3d 79 (2d Cir. 1997) ................................... 10

iii

*Mann Construction, Inc. v. United States,* No. 1:20-cv-11307, --- F. Supp. 3d ---, 2023 WL 248814, at *3 (E.D. Mich.) (Jan. 18, 2023) ....... 43

*Miller v. United States,* 363 F.3d 999 (9th Cir. 2004) .................................... 31

*Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983) .............................................................................. 42

*Niz-Chavez v. Garland,* 141 S. Ct. 1474, 1486 (2021) .................................... 49

*Norman v. United States,* 138 Fed. Cl. 189 (2018) ........................................ 15

*Norman v. United States,* 942 F.3d 1111 (Fed. Cir. 2019) ...................... 10, 12

*Pollinator Stewardship Council v. EPA,* 806 F.3d 520, 532 (9th Cir. 2015) 46

*Ratzlaf v. United States,* 510 U.S. 135, 141 (1994) ............................ 24, 25, 26

*Russello v. United States,* 464 U.S. 16, 23 (1983) ......................................... 25

*Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47 (2007) ........................................ 9

*Smith v. Comm'r,* 56 TCM 1373 (1989) ......................................................... 29

*Stiskin v. Comm'r,* T.C. Memo. 1996-306, 1996 WL 377047 ........................ 32

*Toth v. United States,* 598 U.S. __ (2023) *denying cert.* 33 F.4th 1 (1st Cir. 2022) .................................................................................................. 2

*United States v. Bajakajian,* 524 U.S. 321, 334 (1998) ................................... 2

*United States v. Bohanec,* 263 F. Supp. 3d 881 (C.D. Cal. 2016) ........ 9, 10, 26

*United States v. Bohanec,* 263 F. Supp. 3d 881, 888-89 (C.D. Cal. 2016) ..... 25

*United States v. Cohen,* 2019 WL 8231039 (C.D. Cal. 2019) ............. 10, 12, 16

*United States v. Cohen,* No. 2:17-cv-01652, 2019 WL 8231039, at *1 (C.D. Cal. Dec. 16, 2019) ................................................................ 26, 27

*United States v. Gentges,* 531 F. Supp. 3d 731 (S.D.N.Y. 2021) .............. 15, 42

*United States v. Goldsmith,* 541 F. Supp. 3d 1058 (S.D. Cal. 2021) ............... 9

*United States v. Granda,* 565 F.2d 922, 926 (5th Cir. 1978) ......................... 25

*United States v. Horowitz,* 978 F.3d 80 (4th Cir. 2020) ................................. 15

*United States v. Horowitz,* 978 F.3d 80, 89-90 (4th Cir. 2020) ..................... 26

*United States v. Hughes,* 2020 WL 1536509 (N.D. Cal. Mar. 31, 2020) ........ 10

*United States v. Mahyari,* No. 20-cv-1887, 2023 WL 372656, at *5 n.4 (D. Ore.) (Jan. 24, 2023) ......................................................................... 25

iv

*United States v. McBride*, 908 F. Supp. 2d 1186 (D. Utah 2012) ................. 10

*United States v. Pomerantz*, No. C16-0689JLR, 2017 WL 2483213 (W.D. Wash. June 8, 2017)……………………………………………………35

*United States v. Rum*, 2019 WL 3943250 (M.D. Fla. Aug. 2, 2019) ............. 15

*United States v. Schwarzbaum*, 24 F.4th 1355 (11th Cir. 2022)................... 48

*United States v. Simonelli,* 614 F. Supp. 2d 241, 242 (D. Conn. 2008).......... 2

*United States v. Williams*, 489 F. App'x 655, 660 (4th Cir. 2012)................ 10

*Vidiksis v. E.P.A.*, 612 F.3d 1150 (11th Cir. 2010)........................................ 47

## STATUTES

31 U.S.C. § 5314............................................................................................ 32

31 U.S.C. § 5314(a) ......................................................................................... 8

31 U.S.C. § 5321(a)(5)(A) ............................................................................... 9

31 U.S.C. § 5321(a)(5)(C) ............................................................................. 47

31 U.S.C. § 5321(a)(5)(C)(i) ........................................................................... 9

31 U.S.C. § 5322............................................................................................ 25

31 U.S.C. § 5324............................................................................................ 25

5 U.S.C. § 706(2) ...................................................................................... 2, 42

Bank Secrecy Act ("BSA"), 31 U.S.C. § 5311 *et seq.*....................................... 24

Cal. Civ. Code § 1654..................................................................................... 31

Money Laundering Suppression Act of 1994, Pub. L. No. 103-325, 108 Stat. 2160........................................................................................... 25

## REGULATIONS

IRM 4.26.1-2 FBAR Delegation to IRS (04-05-2011) ................................ 32

IRM 4.26.16.6.5.3(2) (11-06-2015)................................................................ 44

IRS CCA 200603026 (Jan. 20, 2006) ........................................................... 26

Treas. Order 180-01, 67 Fed. Reg. 64697-01, 64697 (Oct. 21, 2002)............ 32

## OTHER AUTHORITIES

26 C.F.R. § 301.7701-9(c)....................................................................... 32, 33

31 C.F.R. § 1010.306(c)..................................................................... 9, 28, 30

31 C.F.R. § 1010.350(a) ....................................................................... 8

31 C.F.R. § 1010.810............................................................................ 32

IRM 4.26.17.4.3.4.2................................................................................ 30

IRM 4.26.17.4.6...................................................................................... 30

# Joint Memorandum of Points and Authorities

## I. Preliminary Statements

### A. United States' Preliminary Statement

A citizen of the United States is required to report his or her foreign bank accounts if the balance exceeds $10,000. This information is reported on the Report of Foreign Bank and Financial Accounts (FBAR). Willful failure to comply is subject to a penalty (per account) of the greater of $100,000 or 50% of the balance on June 30 of the following year. In this case, the United States assessed the willful FBAR penalty against Defendant for failure to fully disclose her foreign bank accounts and maximum balances for the years 2009 through 2012. The issues in this case are: (1) whether Defendant was willful, (2) whether the FBAR penalties were assessed within the applicable limitations period, (3) whether the FBAR penalties were assessed by someone with the requisite authority to make the assessment, (4) whether the IRS failed to identify specific accounts that Defendant willfully failed to accurately report on her FBARs, and (5) whether the IRS calculation of the FBAR penalties was arbitrary and capricious.

### B. Defendant's Preliminary Statement

The Internal Revenue Service ("IRS") assessed four penalties against Laura Kim ("Ms. Kim") for 2009, 2010, 2011, and 2012 pursuant to 31 U.S.C. § 5321(a)(5) ("FBAR Penalties"). D215, Ex. 70. To prevail in this action, Plaintiff must prove that: (1) Ms. Kim was a U.S. person who had a financial interest in or authority over certain accounts that held more than $10,000 in each year; (2) Ms. Kim willfully failed to accurately report those accounts on timely filed FBARs; (3) the IRS properly assessed the FBAR Penalties against Ms. Kim for willfully failing to report specific accounts each year; and (4) the FBAR Penalties were properly calculated.

The IRS committed several errors that render the assessments invalid: (1) the FBAR Penalties were assessed after the limitations periods expired; (2) the FBAR Penalties were assessed by an individual who lacked requisite authority; (3) the IRS failed to identify specific accounts Ms. Kim willfully failed to accurately report in violation of 31 U.S.C. § 5321(a)(5)(C)(i); and (4) the FBAR Penalties were calculated in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2).[1]

**II. Whether Defendant was willful**

**A. United States' Position**

    **1. Facts**

      a. <u>Background</u>

Defendant was born in the Republic of Korea (South Korea) and became a citizen of the United States in 1974 [Joint Appendix of Undisputed and Disputed Facts P66-67; Kim 5:19-20, 24-25]. She has a Ph.D. in ecological engineering [Fact P68; Kim 6:11-15]. Defendant owns multiple businesses in the United States and South Korea [Fact P68; Defendant Laura Kim's Response to United States' First Request for Admissions ¶ 6]. From 2009 through 2012, she owned Marina Enterprises, Inc. [Fact P70; Kim 11:24-25, 12:1-8, 13:15-16], which operated in South Korea [Fact P71;

---

[1] Ms. Kim raised the affirmative defense in her Answer, and reserves the right to challenge the FBAR Penalties as grossly disproportional to the gravity of her conduct in violation of the Eighth Amendment. *See* U.S. Const. amend. VIII; *United States v. Bajakajian,* 524 U.S. 321, 334 (1998) ("a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense."); *United States v. Simonelli,* 614 F. Supp. 2d 241, 242 (D. Conn. 2008) (holding that the FBAR penalty is a penal sanction that is "not compensation for actual pecuniary loss"); *Toth v. United States*, 598 U.S. __ (2023) *denying cert.* 33 F.4th 1 (1st Cir. 2022) (Gorsuch, J., dissenting) ("Under our cases a fine that serves even '*in part* to punish' is subject to analysis under the Excessive Fines Clause.").

Kim 36:5-7]. In 2011 and 2012, she owned LK Water Company [Fact P72; Kim 12:9-12, 13:21-24], which also operated in South Korea [Fact P73; Kim 36:8-9].

    b. <u>Defendant Timely filed FBARs for 2009 through 2012</u>

Defendant had foreign bank accounts since at least 2001 [Fact P77; Kim 14:3-16]. The first FBAR Defendant filed reporting to the United States that she had a financial interest in, or signature or other authority over foreign bank accounts was for the year 2008 [Fact P78; Kim 41:19-25, 42:1-13].

For the years 2009 through 2012, Defendant had multiple foreign bank accounts with Woori Bank and Standard Chartered First Bank Korea Limited. [Facts P4-56, 83; Exhibits 1-53]. During those years, Defendant used Michael Khim, a CPA, to prepare her U.S. Individual Income Tax Return (Form 1040) [Fact P173; Kim 35:21-23].

In 2009, Defendant requested and received an electronic copy of the FBAR from Mr. Khim [Fact P174; Kim 67:3-13, Exhibit 67]. For the years 2009 through 2012, Defendant did not seek the assistance of Mr. Khim in preparing her FBARs [Fact P175; Kim 45:9-15, 71:5-23] because she did not think that the FBAR was that serious at the time [Fact P176; Kim 46:16-24]. Instead, Defendant had her bookkeeper assist her in preparing her FBARs [Fact P177; Kim 70:19-22, 71:8-16]. The bookkeeper came to Defendant's home [Fact P178; Kim 71:2-4], brought bank statements or notes to assist in completing the FBAR forms [Fact P179; Kim 70:23-25, 71:1], and assisted Defendant by filling out the FBAR forms on the computer [Fact P180; Kim 70:19-22].

Defendant directed her bookkeeper what to type [Fact P181; Kim 46:16-24] and she made the decision about what information to put on the

FBAR form [Fact P182; Kim 46:16-24]. Defendant then reviewed the completed FBAR forms before they were filed [Fact P183; Kim 71:5-7].

     c. <u>Defendant did not report most of her bank accounts and almost all of her foreign assets on her FBARs for 2009 through 2012</u>

Between 2009 and 2012, Defendant owned or controlled at least 53 different foreign bank accounts [Facts P4-56, 92; Exhibits 1-53].

For 2009, Defendant timely filed an FBAR and reported that she owned seven accounts in her name at Standard Chartered First Bank Korea Ltd., in South Korea with account numbers ending in 6699, 3627, 2983, 2994, 2505, 5207, and 0218. Defendant also reported that she had a financial interest in one bank account held by Marina Enterprises with Woori Bank in South Korea with account number ending in 6411. The reported maximum value of all the accounts on the FBAR was $492,720.87. [Facts P84-85, 215; Exhibits 59, 63]. However, in 2009 Defendant had at least 15 different foreign bank accounts [Facts P4-18, 93, Exhibits 1-15]. In July 2009, the combined value of the 12 of her foreign bank accounts with balances over $100,000 was approximately $11,465,988, of which she only reported $492,721 or approximately 4% on her FBAR [Facts P102, 109, Exhibit 213 ¶¶ 2, 9].

For 2010, Defendant timely filed an FBAR and reported that she owned one savings account in her name with no bank name or account number, and two bank accounts held in her name with Woori Bank in South Korea, with account numbers ending in 9362 and 1003 (which was a legacy account number for an account that had been given a new account number ending in 2033). The reported maximum value of all the accounts on the FBAR was $607,773.00. [Facts P86-87, 216; Exhibits 60, 64]. However, in 2010 Defendant had at least 35 different foreign bank accounts [Facts P4-17, 19-33, 48-51, 53-54, 95; Exhibits 1-14, 16-30, 45-48, 50-51]. In August 2010, the combined value of the 6 of her foreign bank accounts with balances over

$100,000 was approximately $11,381,380, of which she only reported $607,773 or approximately 5% on her FBAR [Facts P104, 110, Exhibit 213 ¶ 4, 10].

For 2011, Defendant timely filed an FBAR and reported two bank accounts held in her name, one with Woori Bank with an account number ending in 5527, and the other with Standard Chartered with an account number ending in 1528, with a combined reported maximum value during the calendar year of $263,811.00 [Facts P63, 88-89; Exhibits 61, 65]. However, in 2011, Defendant had a financial interest in or authority over at least 28 different foreign bank accounts [Facts 97; Exhibits 1-4, 13, 22, 25-27, 29-40, 43, 45-46, 48, 50, 51, 53]. In April 2011, the combined value of the 5 of her foreign bank accounts with balances over $100,000 was approximately $11,437,064, of which she only reported $263,811 or approximately 2% on her FBAR [Facts P106, 111, Exhibit 213 ¶¶ 6, 11].

For 2012, Defendant timely filed an FBAR and reported two bank accounts held in her name, one with Woori Bank with an account number ending in 61AB, and the other with Standard Chartered with an account number ending in 7610, and an account owned by Marina Enterprises at Woori Bank with an account number ending in 6411, with a combined reported maximum value during the calendar year of $495,016.00 [Facts P64, 90-91, 217; Exhibits 62, 66]. However, in 2012 Defendant had at least 27 different foreign bank accounts [Fact P99; Exhibits 1-3, 13, 22, 25-27, 32, 34-42, 44-53]. In February 2012, the combined value of the 6 of her foreign bank accounts with balances over $100,000 was approximately $6,221,206, of which she only reported $495,016 or approximately 8% on her FBAR [Facts P108, 112, Exhibit 213 ¶¶ 8, 12].

The following is a summary for each year from 2009 through 2012, by account number, of the maximum value in South Korean Won ("KRW") (if

the account was held in KRW), the maximum value in U.S. dollars, and the maximum amount Defendant reported on her FBAR. It also demonstrates the total maximum value for each of the accounts in comparison to the amount that Defendant reported on her FBAR.

| Exhibit Number | Last 4 of Account Number | Maximum Value in KRW in 2009 | Maximum Value in Dollars in 2009 | Maximum Value Reported by Defendant on FBAR | Account Reported on FBAR | Account Not Reported on FBAR |
|---|---|---|---|---|---|---|
| 1 | 3441 | ₩ 2,144,283,978 | $ 1,838,890 | $ - | | X |
| 3 | 2033 | USD | $ 2,124,869 | $ - | | X |
| 4 | 5806 | USD | $ 215,106 | $ - | | X |
| 5 | 6658 | USD | $ 2,372,626 | $ - | | X |
| 6 | 6817 | USD | $ 511,156 | $ - | | X |
| 7 | 6005 | USD | $ 1,971,097 | $ - | | X |
| 8 | 0368 | USD | $ 325,708 | $ - | | X |
| 9 | 0361 | USD | $ 1,488,737 | $ - | | X |
| 10 | 2308 | USD | $ 655,968 | $ - | | X |
| 11 | 4317 | USD | $ 558,871 | $ - | | X |
| 12 | 0365 | USD | $ 323,048 | $ - | | X |
| 13 | 6411 | ₩ 719,639,591 | $ 617,147 | $ 319,716 | X | |
| 14 | 3626 | ₩ 2,000,000,000 | $ 1,715,156 | $ - | | X |
| | | Total in 2009 | $ 14,718,379 | | | |
| | | | | | | |
| | | Reported on FBAR | $ 492,721 | 3% | | |
| | | Amount Unreported | $ 14,225,658 | 97% | | |
| | | Total in 2009 | $ 14,718,379 | 100% | | |

[Facts P101-102, Exhibit 213 ¶¶ 1-2].

| Exhibit Number | Last 4 of Account Number | Maximum Value in KRW in 2010 | Maximum Value in Dollars in 2010 | Maximum Value Reported by Defendant on FBAR | Account Reported on FBAR | Account Not Reported on FBAR |
|---|---|---|---|---|---|---|
| 1 | 3441 | ₩ 1,163,671,196 | $ 1,039,039 | $ - | | X |
| 3 | 2033 | USD | $ 1,180,825 | $ 211,471 | X | |
| 17 | 7795 | USD | $ 297,071 | $ - | | X |
| 18 | 1478 | USD | $ 560,401 | $ - | | X |
| 19 | 2567 | USD | $ 665,368 | $ - | | X |
| 20 | 4765 | USD | $ 5,392,472 | $ - | | X |
| 21 | 1017 | ₩ 2,000,000,000 | $ 1,785,794 | $ - | | X |
| 22 | 9362 | USD | $ 1,450,856 | $ 305,885 | X | |
| 23 | 2274 | USD | $ 5,914,248 | $ - | | X |
| 24 | 4207 | USD | $ 2,393,868 | $ - | | X |
| 25 | 4889 | ₩ 906,297,396 | $ 809,230 | $ - | | X |
| 27 | 9368 | ₩ 501,072,295 | $ 447,406 | $ - | | X |
| 28 | 2748 | USD | $ 500,000 | $ - | | X |
| 29 | 2323 | USD | $ 9,130,610 | $ - | | X |
| 30 | 6397 | ₩ 1,164,831,183 | $ 1,040,074 | $ - | | X |
| | | Total in 2010 | $ 32,607,262 | | | |
| | | | | | | |
| | | Reported on FBAR | $ 607,773 | 2% | | |
| | | Amount Unreported | $ 31,999,489 | 98% | | |
| | | Total in 2010 | $ 32,607,262 | 100% | | |

[Facts P103-104, Exhibit 213 ¶¶ 3-4].

| Exhibit Number | Last 4 of Account Number | Maximum Value in KRW in 2011 | Maximum Value in Dollars in 2011 | Maximum Value Reported by Defendant on FBAR | Account Reported on FBAR | Account Not Reported on FBAR |
|---|---|---|---|---|---|---|
| 1 | 3441 | ₩ 1,165,788,609 | $ 1,005,727 | $ - | | X |
| 3 | 2033 | USD | $ 656,109 | $ - | | X |
| 13 | 6411 | ₩ 290,870,197 | $ 250,934 | $ - | | X |
| 22 | 9362 | USD | $ 1,038,822 | $ - | | X |
| 25 | 4889 | ₩ 951,030,833 | $ 820,455 | $ - | | X |
| 29 | 2323 | USD | $ 9,144,218 | $ - | | X |
| 32 | 0302 | USD | $ 3,180,516 | $ - | | X |
| 33 | 3570 | ₩ 878,049,687 | $ 757,494 | $ - | | X |
| 34 | 4681 | ₩ 3,243,030,079 | $ 2,797,765 | $ - | | X |
| 35 | 5417 | ₩ 1,022,415,985 | $ 882,039 | $ - | | X |
| 36 | 0758 | USD | $ 3,006,985 | $ - | | X |
| | | Total in 2011 | $ 23,541,064 | | | |
| | | | | | | |
| | | Reported on FBAR | $ 263,811 | 1% | | |
| | | Amount Unreported | $ 23,277,253 | 99% | | |
| | | Total in 2011 | $ 23,541,064 | 100% | | |

[Facts P105-106, Exhibit 213 ¶¶ 5-6].

7

| Exhibit Number | Last 4 of Account Number | Maximum Value in KRW in 2012 | Maximum Value in Dollars in 2012 | Maximum Value Reported by Defendant on FBAR | Account Reported on FBAR | Account Not Reported on FBAR |
|---|---|---|---|---|---|---|
| 1 | 3441 | ₩ 143,791,786 | $ 134,696 | $ - | | X |
| 22 | 9362 | USD | $ 952,593 | $ - | | X |
| 25 | 4889 | ₩ 1,001,030,833 | $ 937,707 | $ - | | X |
| 34 | 4681 | ₩ 1,030,411,877 | $ 965,230 | $ - | | X |
| 35 | 5417 | ₩ 587,979,598 | $ 550,785 | $ - | | X |
| 39 | 9689 | ₩ 158,652,370 | $ 148,616 | $ - | | X |
| 42 | 9546 | USD | $ 3,018,652 | $ - | | X |
| 44 | 8765 | USD | $ 683,085 | $ - | | X |
| 48 | 3908 | ₩ 110,023,721 | $ 103,064 | $ - | | X |
| 49 | 5183 | ₩ 110,911,770 | $ 103,896 | $ - | | X |
| 52 | 3558 | USD | $ 3,022,086 | $ - | | X |
| | | Total in 2012 | $ 10,620,410 | | | |
| | | | | | | |
| | | Reported on FBAR | $ 495,016 | 5% | | |
| | | Amount Unreported | $ 10,125,394 | 95% | | |
| | | Total in 2012 | $ 10,620,410 | 100% | | |

[Facts P107-108, Exhibit 213 ¶¶ 7-8].

d. <u>FBAR Penalty Assessments</u>

On August 20, 2019, the IRS assessed willful FBAR penalties against Defendant for the years 2009 through 2012 in the amount of $1,014,109.85 for each year [Facts P165-166; KM ¶¶ 11-12, Exhibit 70].

**2. Analysis**

a. <u>FBAR filing requirements</u>

Citizens of the United States are required to report to the IRS certain activity with foreign financial agencies for each year in which the activity occurs. 31 U.S.C. § 5314(a); 31 C.F.R. § 1010.350(a). One such activity is "having a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country." 31 C.F.R. § 1010.350(a). The form that needs to be completed for this annual reporting requirement is the FBAR. For calendar years before 2017, the FBAR report for foreign financial accounts exceeding $10,000 maintained during a

8

calendar year was due by June 30 of the following calendar year. 31 C.F.R. § 1010.306(c). Civil penalties can be assessed against an individual who, whether willfully or non-willfully, fails to comply with the FBAR reporting requirements. 31 U.S.C. § 5321(a)(5)(A). For willful violations, the maximum penalty that can be assessed is the greater of $100,000 or 50% of the balance in each foreign financial account at the time of the violation. 31 U.S.C. § 5321(a)(5)(C)(i).

There is no dispute that Defendant was required to file FBARs for the years 2009 through 2012 and report all foreign bank accounts that she had a financial interest in, or signature or other authority over, in which the aggregate balance exceeded $10,000 during the year. In fact, Defendant filed FBARs for those years, but did not report all her foreign bank accounts. On August 20, 2019, the IRS made FBAR penalty assessments against Defendant for willfully violating the statutory reporting requirements. The government has the burden to establish her willfulness in this case by a preponderance of the evidence. *United States v. Goldsmith*, 541 F. Supp. 3d 1058, 1072 (S.D. Cal. 2021); *United States v. Bohanec*, 263 F. Supp. 3d 881, 889 (C.D. Cal. 2016) (J. Pregerson).

b. Willfulness includes knowing violations and recklessness

Although Congress did not define the term "willful" in the statute, the Supreme Court has made clear that "where willfulness is a statutory condition of civil liability," the term covers "not only knowing violations of a standard, but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007). In civil cases, recklessness refers to "conduct violating an *objective standard*: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* at 68 (emphasis added) (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). Following this guidance, "willfulness" under 31 U.S.C. § 5321 also includes reckless

9

disregard of a statutory duty. *See e.g., Norman v. United States*, 942 F.3d 1111, 1115 (Fed. Cir. 2019) ("[W]illfulness in the context of § 5321(a)(5)(C) includes recklessness."); *Bedrosian v. United States*, 912 F.3d 144, 152-53 (3d Cir. 2018) (same); *United States v. Williams*, 489 F. App'x 655, 660 (4th Cir. 2012) ("[The defendant's] undisputed actions establish reckless conduct, which satisfies the proof requirement under § 5314."); *United States v. Bohanec*, 263 F. Supp. 3d 881, 889 (C.D. Cal. 2016) (J. Pregerson) (applying recklessness standard for a willful FBAR violation); *United States v. Cohen*, 2019 WL 8231039, at *7 (C.D. Cal. 2019) (J. Fitzgerald) (in the FBAR context, the term "willfulness" includes recklessness).

Under the civil standard, an improper motive or bad purpose is not necessary to establish willfulness. *United States v. Hughes*, 2020 WL 1536509, at *6 (N.D. Cal. Mar. 31, 2020); *United States v. McBride*, 908 F. Supp. 2d 1186, 1204 (D. Utah 2012). A "subjective good faith belief that one's conduct is lawful" does not preclude the imposition of a penalty in these circumstances. *Lefcourt v. United States*, 125 F.3d 79, 82 (2d Cir. 1997).

c. <u>Defendant willfully did not report foreign bank accounts with substantial balances despite knowledge of the FBAR requirements</u>

Defendant had actual knowledge of the FBAR filing requirements, and timely filed FBARs for the years 2009 through 2012. As noted above, for 2009 Defendant reported some of the multiple bank accounts held in her name with Standard Chartered, and one bank account held by Marina Enterprises with Woori Bank, with a combined reported maximum value during the calendar year of $492,721. However, she had signature authority for at least 12 other foreign bank accounts that she did not report on her FBAR, each with a value during the year of over $100,000, and the largest unreported account had a maximum value of over $2,000,000.

For 2010, Defendant reported one savings account, and two bank accounts with a combined reported maximum value during the calendar year of $607,773. However, she had signature authority for at least 14 other foreign bank accounts that she did not report on her FBAR, each with a maximum value during the year of over $100,000, and the largest unreported account had a maximum value of over $8,000,000.

For 2011, Defendant reported two bank accounts held in her name, one with Woori Bank, and the other with Standard Chartered, with a combined reported maximum value during the calendar year of $263,811. However, she had signature authority for at least 11 other foreign bank accounts that she did not report on her FBAR, each with a maximum value during the year of over $100,000, and the largest unreported account had a maximum value of over $8,000,000.

For 2012, Defendant reported two bank accounts held in her name – one with Woori Bank, and the other with Standard Chartered – and an account owned by Marina Enterprises at Woori Bank, with a combined reported maximum value during the calendar year of $495,016. However, she had signature authority for at least 11 other foreign bank accounts that she did not report on her FBAR, each with a maximum value during the year of over $100,000, and the largest unreported account had a maximum value of over $3,000,000.

Defendant's filed FBARs show that she knew that she was legally required to report the foreign bank accounts held in her name, and those for which she had signature authority but were held in the name of a foreign corporation. For example, in her 2009 FBAR, she reported an account held by Marina Enterprises. The filed FBARs also demonstrate that Defendant knew that multiple bank accounts with the same bank needed to be reported separately. Yet despite this knowledge, she did not comply with her legal

11

1    obligation. She willfully omitted almost all the foreign bank accounts for

2    which she had signature authority – including accounts that were worth

3    millions of dollars – and underreported the balances of the accounts she did

4    report. As such, the willful FBAR penalty should be sustained.

5        d. <u>In the alternative, Defendant willfully failed to include foreign bank</u>

6           <u>accounts with substantial balances due to recklessness</u>

7        Even if Defendant did not knowingly violate the FBAR filing

8    requirement by not reporting certain bank accounts and underreporting the

9    total value of her foreign bank accounts, she is still liable for the willful

10   penalty because her actions were reckless. A person is willful if she

11   recklessly fails to comply with an IRS filing requirement when the person:

12   (1) clearly ought to have known that (2) there was a grave risk that the filing

13   requirement was not being met and (3) was in a position to find out for

14   certain very easily. *Bedrosian* 912 F.3d at 153; *Cohen* at *7. *See also Norman*

15   *v. United States*, 942 F.3d 1111, 1115-16 (Fed. Cir. 2019) (willfulness in the

16   FBAR context includes recklessness, actual knowledge of the obligation to

17   file an FBAR is not required, and failure to read signed documents supports

18   a finding of recklessness).

19       Defendant's willful failure to report some of her foreign bank accounts

20   to the IRS is similar to *Bedrosian v. United States*, No. CV 15-5853, 2017 WL

21   4946433 (E.D. Pa. Sept. 20, 2017) (*Bedrosian I*). Arthur Bedrosian was a

22   successful businessman who had two bank accounts with UBS. *Id.* at *1. In

23   2008, he filed an FBAR for the year 2007, but he only listed his UBS account

24   ending in 5316, which had assets totaling approximately $240,000, but did

25   not report the account ending in 6167, which had assets totaling

26   approximately $2,000,000. *Id.* at *2.

27       The district court initially determined that the government had not

28   met its burden to establish that Bedrosian willfully violated Section 5314. *Id.*

at *7. On appeal, the Third Circuit confirmed that willfulness "includes both knowing and reckless conduct" *Bedrosian v. United States*, 912 F.3d 144, 152-53 (3d Cir. 2018) (*Bedrosian II*), and remanded the case to the district court to apply the appropriate standard for recklessness. *Id.* at 154. On remand, the district court explained that originally it did not consider whether, when his 2007 FBAR filing came due, Bedrosian "(1) clearly ought to have known that (2) there was a grave risk that [an accurate FBAR was not being filed] and if (3) he was in a position to find out for certain very easily. *Bedrosian v. United States*, 505 F. Supp. 3d 502, 507 (E.D. Pa. 2020) (*Bedrosian III*). Bedrosian was aware of the significant amount of money held in his foreign bank accounts, *id.* at 504, and even if he did not know that there were two accounts, the stated amount should have prompted him to investigate further, which he could have done easily by contacting the bank. *Id.* at 508. Bedrosian's claim that he did not review the form did not negate recklessness because he knew or should have known the form he signed was inaccurate, and his failure to disclose the second and much larger UBS account was willful. *Id.*

Bedrosian filed an FBAR and listed one UBS account with a value of $240,000, but omitted the other one with a value of $2,000,000. He omitted half of his accounts and almost 90% of his assets, and his omission was found to be reckless, and therefore willful.

In this case, Defendant's omissions were much more egregious. She filed the FBAR forms and omitted more than half of her foreign bank accounts and between 95% and 99% of the maximum balances for each of the years 2009 through 2012. Even if only the highest monthly balance for accounts worth more than $100,000 is considered, she still omitted between 92% and 98% of her foreign account assets, summarized as follows:

13

| | 2009 | 2010 | 2011 | 2012 |
|---|---|---|---|---|
| Month with the Maximum Combined Balance | July 2009 | August 2010 | April 2011 | February 2012 |
| Combined Value of Accounts over $100,000 | $ 11,465,988.01 | $ 11,381,379.97 | $ 11,437,063.80 | $ 6,221,206.17 |
| Amount Reported by Defendant on her FBAR | $     492,721.00 | $     607,773.00 | $     263,811.00 | $     495,016.00 |
| Amount Unreported by Defendant on her FBAR | $ 10,973,267.01 | $ 10,773,606.97 | $ 11,173,252.80 | $ 5,726,190.17 |
| Percentage Reported by Defendant | 4% | 5% | 2% | 8% |
| Percentage Unreported by Defendant | 96% | 95% | 98% | 92% |

Fact P102, 104, 106, 108-112, Exhibit 213 ¶ 2, 4, 6, 8-12.

Defendant knew that she had numerous accounts with Woori Bank, and she only reported a few of them each year. Even a cursory review of her FBARs forms reveals that she did not list all of her foreign bank accounts and the total amount reported was much too low. She signed the FBARs and ought to have known that there was a grave risk that the filing requirement was not being met, both because she had many more bank accounts than had been reported, and the combined reported maximum value was consistently off by 95% or more. Furthermore, she was able to find out for certain very easily by checking the bank statements, contacting Woori Bank, or providing the bank statements to her CPA and having him prepare the FBAR. Based on the foregoing, Defendant filed FBARs for the years 2009 through 2012 that recklessly omitted numerous bank accounts and understated the maximum value of her foreign accounts in violation of her reporting obligation. As such, the United States is entitled to summary judgment against the Defendant for the willful FBAR penalty as a matter of law for the years 2009 through 2012.

e. Willfulness is appropriate to decide on summary judgment

Although willfulness is generally a question of fact, courts have decided the question on summary judgment where the undisputed facts

14

demonstrated that the civil willfulness standard was satisfied. *See e.g., United States v. Horowitz*, 978 F.3d 80, 89-90 (4th Cir. 2020) (the Horowitzes were reckless as a matter of law for failure to file FBARs to report the foreign account that held a "significant portion of their savings" and despite "numerous red flags, they neither made a simple inquiry to their accountant nor gave even the minimal effort necessary to render meaningful their sworn declaration[.]"); *Norman v. United States*, 138 Fed. Cl. 189, 196 (2018) ("repeated and admitted lack of care" was sufficient to reach "the standard of reckless disregard for the law required to constitute a willful violation of § 5314."), aff'd, 942 F.3d 1111 (Fed. Cir. 2019); *United States v. Rum*, No. 17-CV-826, 2019 WL 3943250 (M.D. Fla. Aug. 2, 2019), report and recommendation adopted, 2019 WL 5188325 (M.D. Fla. Sept. 26, 2019), appeal docketed, No. 19-14464, 995 F.3d 882, 890 (11th Cir. Apr. 23, 2021) ("[N]o genuine issues of material fact regarding Rum's willfulness or recklessness."); *Kimble v. United States*, 141 Fed. Cl. 373, 386 (Fed. Cl. 2018) (Kimble "exhibited a 'reckless disregard' of the legal duty under federal tax law to report foreign bank accounts to the IRS by filing a FBAR."); *United States v. Gentges*, 531 F. Supp. 3d 731, 752 (S.D.N.Y. 2021) ("Defendant recklessly disregarded the FBAR reporting obligation.").

This case is not like cases in the Central District of California that have denied summary judgment in FBAR cases on the issue of willfulness. In *Jones v. United States*, the Mrs. Jones did not timely file an FBAR for the year at issue, so there was a dispute as to whether she had knowledge of the FBAR filing requirement sufficient to establish willfulness. WL 2803353, at *6-7 (C.D. Cal. May 11, 2020) (J. Selna). In this case, Defendant filed timely FBARs for the years at issue, so there is no dispute that she knew about the FBAR filing requirement.

In *United States v. Cohen*, Fariba Cohen had signature authority for an account at Bank Leumi (Luxembourg). 2019 WL 8231039, at *2 (C.D. Cal. Dec. 16, 2019) (J. Fitzgerald). However, Fariba Cohen disputed signing all the documents. *Id*. at *7. She also asserted that she did not know that Bank Leumi (Luxembourg) was a foreign bank, and that she did not know how much money was in the foreign bank accounts. *Id*. Based on the record, the court could not determine as a matter of law that Fariba Cohen recklessly violated the FBAR requirement. *Id*.

In this case, unlike *Jones* and *Cohen,* there is no dispute that Defendant knew that she had foreign bank accounts and that she knew she was required to comply with the FBAR filing requirement to report the maximum balances for each of her foreign bank accounts. As such, granting the motion for summary judgment in favor of the United States would be consistent with the decisions in both *Jones* and *Cohen*, as well numerous other federal decisions as cited above.

**B. Defendant's Position**

    **1. Facts**

Ms. Kim was born and raised in South Korea ("Korea"). D216-D217, Ex. 182 at 5:20-23. She is not a native English speaker and has limited proficiency. D218-D219, Ex. 182 at 6:21-7:7. She moved to the United States in 1968, when she was 22 years old. D217, Ex. 182 at 5:23. She married, had two children, and in 1974 became a U.S. citizen and opened a business in Los Angeles called Laura's French Baking Company ("LFBC"). D220, Ex. 191 at 4; D221, Ex. 192 at 16:7-8; D222-D223, Ex. 182 at 5:25, 13:17-19. In 1989 and 1990, she went through a difficult divorce and suffered financial hardship resulting in a bankruptcy in 1991. D224-D226, Ex. 192 at 40:21-42:11. In or around 1994, she married again and moved back to Korea, where she has lived ever since. D227, Ex. 191 at 6; D228-D229, Ex. 193 at 7:18,

9:13-20. During this time, her brother-in-law operated LFBC. D230-D239, Ex. 194 at 5:7, 7:8-10.

Ms. Kim's second husband tragically died shortly after they moved to Korea, leading Ms. Kim to suffer severe depression and attempt suicide in 1997. D240-D242, Ex. 192 at 118:1-9. She sustained a serious head injury that continues to cause her difficulties, including severe dizziness. D243-D245, Ex. 182 at 9:14-10:9.

While recuperating in Korea, Ms. Kim formed Marina Enterprise, her first business outside the United States. D246, Ex. 193 at 25:15. In 2004, she enrolled in a Korean university to study ecological engineering full time, earning a bachelor's degree, master's degree, and eventually her Ph.D. in 2011. D247-D248, D252-253, Ex. 193 at 6:18, 7:21, 9:16, 10:6-7; D249-D250, Ex. 182 at 6:12, 8:1-5; D251, Ex. 192 at 17:12-18. While in school, Ms. Kim purchased LK Water Corp, which aligned with her environmental interests. D254, Ex. 193 at 21:2. Ms. Kim has no training in finance, tax, or accounting. D255-D257, Ex. 191 at 11. She never prepared Korean or U.S. tax returns and relied on her family, employees, and professionals for bookkeeping, accounting, and tax return preparation. D258, Ex. 182 at 60:25-62:22, Ex. 192 at 11:6-14:5; D259-D261, Ex. 193 at 28:15-29:5, 45:3. When her accountants sought information, Ms. Kim referred them to her employees, who responded. D262, Ex. 192 at 14:3-5, Ex. 193, 60:5-7.

Ms. Kim had a financial interest in Korean bank accounts at Woori Bank and Standard Chartered ("the Korean Banks"). D515, Ex. 193, 27:10-18. Many of those accounts were opened by the Korean Banks without her knowledge or participation, based on the Korean Banks' practice of closing short-term interest-bearing accounts and transferring funds into new accounts on a frequent, periodic basis. D516-517, Ex. 195 at 5.

Ms. Kim engaged a Korean accountant to prepare her Korean tax returns and she paid her Korean taxes. D263, Ex. 182 at 37:1-3; D264, Ex. 191 at 14. The Korean accountant did not advise Ms. Kim that she was required to report her Korean income and accounts to the United States. D265, Ex. 182 at 39:14-24. Michael Khim, CPA ("Khim"), D266, Ex. 196 at 13:12-14, prepared U.S. tax returns for Ms. Kim and LFBC from 2009 to 2013. D267-D271, Ex. 196 at 17:17-21, 47:13-15; D272-D276, Exs. 197-201. Khim knew Ms. Kim lived in Korea and that she wired funds from her Korean personal account to LFBC's U.S. account. D277, Ex. 196 at 29:9-18; D278, Ex. 104 at 75:3-80:24. Khim did not advise Ms. Kim that she was required to report her foreign income and accounts to the United States and he filed her U.S. tax returns without sending her drafts to review. D279, Ex. 182 at 39:14-24; D280, Ex. 107 at USA – 003563; D281, Ex. 196 at 40:9-23; D282, Ex. 193 at 61:3-4. Because she did not know she required to do so, Ms. Kim did not report her Korean income or claim any foreign tax credit on her U.S. tax returns.[2] D283, Ex. 182 at 39:14-24; D284-D289, Exs. 55-57.

In 2009, Ms. Kim's sister mailed her a U.S. newspaper clipping noting the need to report foreign accounts. D299, Ex. 182 at 41:23-42:3; D300, Ex. 193 at 14:15-16:4. Ms. Kim contacted the IRS and Khim to request the form. D302, Ex. 182 at 44:1-4; D303, Ex. 67 at LHK_0267. Khim emailed the form but did not explain to Ms. Kim what needed to be reported. D304-D305, Ex. 67 at LHK_0267. Ms. Kim read the instructions and completed her 2008 FBAR to the best of her ability based on account information provided by her employee who managed her Korean accounts. D306, Ex. 191 at 17; D307, Ex.

---

[2] Ms. Kim's foreign tax credits, as determined by the IRS, exceeded the tax due on her foreign income for 2011, D293-D295, Ex. 195, and offset most of the tax due on her foreign income for 2010, D290-D292, Ex. 195, and 2012, D296-D298, Ex. 195. The IRS proposed no adjustments to tax year 2009.

193 at 95:2-10. When she mailed the FBAR to the IRS from Korea, Ms. Kim included a note asking the IRS to inform her of any errors. D308-D309, Ex. 182 at 44:2-5. The IRS did not respond. D310, Ex. 107 at USA - 003563. Ms. Kim sent the IRS a revised 2008 FBAR with corrections and another note, explaining why the second FBAR was being filed. D311-D314, Ex. 202. The IRS did not respond. D315, Ex. 107 at USA - 003563.

Ms. Kim prepared and timely filed her FBARs for 2009 through 2012 in the same manner. D316-D318, Ex. 193 at 95:2-10; D319, Ex. 182 at 56:21-57:8; D320-D323, Exs. 63-66. Although she became aware of the FBAR in 2009 and had read its instructions, she did not fully understand what information was required. D301, Ex. 193 at 15:19; D306, Ex. 191 at 17; D518, Ex. 182 at 43:23-44:2. She did not realize there were problems with her FBARs until after the IRS began auditing her and she filed her 2012 FBAR. D324-D325, Ex. 203; D326, Ex. 191 at 22; D327, Ex. 182 at 52:3-9. After learning her FBARs were incorrect, Ms. Kim terminated Khim and engaged Henry Chi, CPA. D328-D330, Ex. 193 at 76:25-77:2, 88:10-23.

In April 2017, the IRS sent Ms. Kim a Letter 3709 proposing penalties of $6,111,613 for willfully failing to report foreign accounts for 2009 through 2012. D331-D332, Ex. 84. The Letter 3709 included a Form 13449, *Agreement to Assessment and Collection of Penalties Under 31 USC 5321(a)(5) and 5321(a)(6)* ("Form 13449"), and an "FBAR Explanation of Items" containing Revenue Agent Ella Chernyak's ("Chernyak") rationale for imposing willful penalties and calculation of the penalties.[3] D333-D336, Ex. 84. Ms. Kim promptly filed a protest requesting a hearing with the IRS Office of Appeals ("Appeals") and signed Consents to Extend the Time to

---

[3] Chernyak repeatedly testified that she has no recollection of Ms. Kim's case. D519, Ex. 177 at 199:19-20, 154:6-9, 189:9-10, 275:2-3; Ex. 212 at 60:9-10.

Assess Civil FBAR Penalties ("Consents") agreeing to extend the time to assess FBAR penalties for 2009, 2010, and 2011 until June 30, 2019. D337-D338, Ex. 107; D339-D341, Ex. 185.

Chernyak did not forward Ms. Kim's case to Appeals. Instead, she issued a second Letter 3709 nearly a year later on March 7, 2018, stating she was "proposing a penalty under 31 U.S.C. § 5321(a)(5) for failing to meet the record keeping requirements under 31 U.S.C. § 5314" ("the second Letter 3709"). D343-D345, Ex. 69 at LHK_3479-3481. This Letter 3709 included a revised Form 13449 reducing the "willful" penalties to $1,014,109.85 for each year, totaling $4,056,439.40.[4] D346, D351-D352, Ex. 69 at LHK_3482-3483. The Form 13449 identifies the 2011 "Foreign Bank, Institution or Agent(s)" as "Woori Bank and Standard Chartered Bank," the "Foreign account number(s)" as "various (see attached)," and the "Proposed penalty" as being for "willful failure to meet recordkeeping requirements and/or report a foreign financial account on [an FBAR]." D354-D357, Ex. 69 at LHK_3482-3483. The Form 13449 does not identify any foreign bank, foreign account numbers, or reason for the proposed penalties for 2009, 2010, and 2012. D358-D369, Ex. 69 at LHK_3483.

The second Letter 3709 also included a revised "FBAR Explanation of Items," D370, Ex. 69 at LHK_3580-3598, in which Chernyak states: "In an effort to be conservative and safe regarding statute, the examining agent is assessing $4,056,439.39 per the attached penalty calculation [("Penalty Spreadsheet")] for the total FBAR penalty for the years 2009 through 2012." D520, Ex. 69 at LHK_3598. The Penalty Spreadsheet, D372, Ex. 69 at LHK_3484-3485, lists balances in various accounts as of June 30, 2012, and reflects a penalty equal to the greater of $100,000 or 50% of the stated

---

[4] The Form 13449 in fact stated the "total proposed penalty" was "$4056439.3999999999." D353, Ex. 69 at LHK_3482-3483.

account balance for each account.[5] D373-D375, Ex. 69 at LHK_3484-3485; Ex. 177 at 291:2-18. Chernyak attached Korean account statements to the Penalty Spreadsheet. D376, Ex. 69 at LHK_3487-3578.

On April 23, 2018, Ms. Kim sent Chernyak a protest to the second Letter 3709 and again requested a hearing with Appeals, noting that she "repeatedly requested that the income tax audit and the FBAR penalty case be resolved concurrently," but that "the IRS has refused to do so." D377-D379, Ex. 107 at USA – 003557, 003564. Ms. Kim also stated: "As of the date of this protest the IRS has still not issued a 30 day letter . . . for the income tax years under audit," in spite of being "repeatedly told that this audit will be closed soon." D380, Ex. 107 at USA - 003573. Ms. Kim also signed additional Consents to extend the time to assess FBAR penalties for 2009 through 2012 until December 31, 2019, D381-D384, Ex. 85 at USA – 003553 to 003556, but imposed the following condition in the letter that accompanied the Consents ("the April 2018 Conditional Consents"):

> It is our understanding that the FBAR penalty audit conducted by your office has now concluded and that your office will be forwarding our protest of the proposed FBAR penalty assessments against Ms. Kim, sent to you this same day, to the Office of Appeals in the very near future. The enclosed Consents are being submitted based and conditioned upon these understandings and representations by your office.

D385-D387, Ex. 85 at USA – 003551 to 003552.

Instead of closing Ms. Kim's FBAR audit and forwarding it to Appeals as instructed, Chernyak again held onto the FBAR case and continued to work on the income tax exam. D388, Ex. 161 at USA - 013092. On May 1, 2018, Chernyak proposed a $4.5 million increase in Ms. Kim's taxable

---

[5] Chernyak's penalty calculation was riddled with errors. *See infra* at 44-45.

income for 2010 through 2012. D389, Ex. 100 at USA - 016035. Ms. Kim filed a protest and requested an Appeals conference on June 8, 2018. D390, Ex. 178. Rather than forward the cases to Appeals, over the next several months, Chernyak sent Ms. Kim four revised reports proposing income tax adjustments. D391, Ex. 101; D392, Ex. 90; D393, Ex. 91; D394, Ex. 92. Ms. Kim responded to the final report, dated September 5, 2018, with yet another protest requesting an Appeals conference regarding the proposed income tax adjustments. D395, Ex. 116 at USA - 004600.

Chernyak finally closed Ms. Kim's FBAR audit on October 17, 2018, D396, Ex. 110, and Appeals received the case on November 15, 2018, D397, Ex. 111. The appeals were assigned to IRS Appeals Officer Duane Binns ("Binns"), D398-D399, Ex. 108 at USA – 004646, and on May 24, 2019, Binns sent Ms. Kim a Consent to extend the time to assess FBAR penalties for 2009 through 2012 until December 31, 2020. D400, Ex. 114; D401, Ex. 115.

On July 10, 2019, Ms. Kim signed and returned the Consent with a letter imposing a condition ("the July 2019 Conditional Consent"):

> Please understand that the enclosed Extension is conditional in nature. It operates to extend the statute of limitations on assessment for FBAR penalties for the years 2009 through 2012 **only** if the prior Consent to Extend the Time to Assess Civil FBAR Penalties, sent in April of 2018 to the Revenue Agent who conducted the audit, was valid. That particular Extension stated that it extended the statute of limitations assessing FBAR penalties for years 2009 through 2012 to December 31, 2019. But that particular Consent was accompanied by a letter which imposed a condition on the Extension. Specifically, that condition was as follows:
>
> Ms. Kim wishes to pursue a pre-assessment administrative appeal to challenge the proposed FBAR penalty assessments which have been

22

proposed by your office. **It is our understanding that the FBAR penalty audit conducted by your office has now concluded and that your office will be forwarding our protest of the proposed FBAR penalty assessments against Ms. Kim, sent to you this same day, to the Office of Appeals in the very near future. The enclosed Consents are being submitted based and conditioned upon these understandings and representations by your office.**

D402, Ex. 115; D403-D404, Ex. 116 at USA – 004596 to 004597.

On July 24, 2019, prior to considering the merits of Ms. Kim's appeals, Binns and his manager, Gregory Butler ("Butler"), determined they could not rely on the July 2019 Conditional Consent and agreed to request immediate assessment of the FBAR Penalties. D405-D407, Ex. 204 at 18:8-10, 79:18-80:5, 172:1-8, 208:15-21; D408-D409, Ex. 108 at USA - 004647. Butler signed a Form 13449 identical to the April version except the total penalties was revised from $4056439.3999999999 to $4056439.39. D411-D413, Ex. 155 at LHK_4046-4047. On August 13, 2019, Binns sent the signed Form 13449 to Onisha Darnell ("Darnell"), FBAR Penalty Coordinator at CTR Operations, and asked her to assess the FBAR Penalties. D414-D415, Ex. 155; D416, Ex. 206 at 88:13-14. Binns did not provide Darnell with any other attachments or explanation of how the FBAR penalties were calculated. D417-D418, Ex. 205 at 114:14-115:15. On August 20, 2019, Darnell asked Binns to provide a Consent confirming that the time to assess had not expired. D419, Ex. 156. Binns sent the July 2019 Conditional Consent—which he determined was unreliable—without the letter setting forth the condition. D420, Ex. 156; D421, Ex. 205 at 115:19-21.

The IRS assessed the FBAR Penalties on August 20, 2019. D422, Ex. 70. Cesilee Graves, a Lead Tax Examiner serving as an acting Supervisory Tax Examiner with CTR Operations ("Graves"), signed the four Forms

23

13448, *Penalty Assessment Certification (Title 31 "FBAR")* ("Forms 13448"), for 2009 through 2012. D423-D425, Ex. 70, Ex. 206 at 84:13-85:1. The Forms 13448 for each year listed the amount of penalty as $1,014,109.85, the "Foreign Account Number(s)" as "VARIOUS," and the "Foreign Bank" as "WOORI BANK AND STANDARD CHARTERED BANK." D426-D441, Ex. 70. At the request of Kathy Mitchell, a Supervisory Tax Law Specialist serving as acting CTR Operations Department Manager ("Mitchell"), Graves signed each Form 13448 "for: Leah Smith-Pope," the CTR Operations Department Manager ("Smith-Pope"). D442, Ex. 206 at 35:13-17; D443, Ex. 68; D444, Ex. 70; D456, Ex. 206 at 82:18-20.

After the FBAR Penalties were assessed, Binns learned that Chernyak made numerous errors that inflated the FBAR Penalties by at least $800,000.[6] D448, Ex. 153 at LHK_4036-4037. Binns told Ms. Kim's counsel that he would recommend to the Department of Justice ("DOJ") a reduction of $800,000 but only if Ms. Kim conceded liability for and immediately paid the reduced penalties totaling $3.3 million. D449-D450, Ex. 142. Ms. Kim rejected this offer and Appeals upheld Chernyak's erroneous penalty determination. D451-D452, Ex. 144 at LHK_4007.

### 2. Analysis

This Court reviews *de novo* whether Ms. Kim violated the FBAR reporting requirement under the Bank Secrecy Act ("BSA"), 31 U.S.C. § 5311 *et seq.*, and is subject to the willful FBAR penalties set forth in 31 U.S.C. § 5321. *Jones v. United States*, No. 19-cv-4950, 2020 WL 2803353, at *5 (C.D. Cal. May 11, 2020).

Willfulness is a "word of many meanings." *Ratzlaf v. United States*, 510 U.S. 135, 141 (1994). In the BSA context, willful violations require actual knowledge of the reporting requirement and a specific intent to violate the

---

[6] *See infra* at 45-46.

law. *See id.* at 141-43 (holding that the penalty provision of 31 U.S.C. § 5322 for violations of 31 U.S.C. § 5324 require knowledge that the structuring transaction was unlawful and that the term "willful" should be given the same meaning for section 5322 as elsewhere in the BSA). This remains true in light of the Money Laundering Suppression Act of 1994, Pub. L. No. 103-325, 108 Stat. 2160, where Congress excepted section 5324 from the penalty provisions of section 5322, added a penalty provision to section 5324 that did not require knowledge that the structuring was illegal, and left unchanged the penalty provisions for FBAR violations. *Id.* at § 411(a) and (c)(1), codified at 31 U.S.C. §§ 5322 (a), (b) and 5324(d).

"[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983). Because Congress decreased the threshold for a section 5324 violation but left untouched the "willfulness" standards for FBAR violations under sections 5321 and 5322, the *Ratzlaf* standard for willfulness should continue to apply for sections 5321 and 5322. The Ninth Circuit has not yet defined willfulness for purposes of the civil FBAR penalty. *See United States v. Mahyari*, No. 20-cv-1887, 2023 WL 372656, at *5 n.4 (D. Ore.) (Jan. 24, 2023); *but see United States v. Bohanec*, 263 F. Supp. 3d 881, 888-89 (C.D. Cal. 2016) (relying in part on the fact that "willfulness" in the civil tax context includes "recklessness" to hold that the same definition applies to FBAR violations under the BSA).

Expanding willfulness to include recklessness converts this regulatory violation into a *de facto* strict liability statute. *See United States v. Granda,* 565 F.2d 922, 926 (5th Cir. 1978) ("Congress, by adding [the terms knowing and willful], took this regulatory statute out of the ranks of strict liability . . .

25

.”); *see also Ratzlaf*, 510 U.S. at 146 (“Had Congress wished to dispense with the [willful] requirement, it could have furnished the appropriate instruction.”). In 2006, the IRS agreed. *See* IRS CCA 200603026 (Jan. 20, 2006) (“With respect to the issue of “willfulness” . . . [t]he first question is whether the phrase ‘willful violation (or willfully causes any violation)’ has the same definition and interpretation under 31 U.S.C. § 5321 (the civil penalty) and § 5322 (the criminal penalty). The answer is yes.”). This issue is the subject of a petition for writ of certiorari pending before the U.S. Supreme Court in *Bedrosian v. United States*, 42 F.4th 174 (3d Cir. 2022), *petition for cert. filed* (U.S. Dec. 29, 2022) (No. 22-598).

This court has held that willfulness under the BSA must be established by a preponderance of the evidence. *See Bohanec*, 263 F. Supp. 3d at 889. Ms. Kim contends that the standard is clear and convincing evidence, which the IRS has said may apply. *See* IRS CCA 200603026 (Jan. 20, 2006). Regardless of which standard applies, a court must consider all relevant facts regarding Ms. Kim’s knowledge, intent, and conduct. These facts are in dispute and, even if they were not, “*willfulness* itself would remain the disputed fact that a jury must find or not.” *See United States v. Cohen*, No. 2:17-cv-01652, 2019 WL 8231039, at *1 (C.D. Cal. Dec. 16, 2019) (emphasis in original). Accordingly, Plaintiff’s motion for summary judgment must be denied.

Ms. Kim lived and owned businesses in Korea, making it necessary for her to maintain Korean accounts. D512-D513, Ex. 193 at 13:12-15, 26:24-27:18. As soon as Ms. Kim learned of the requirement to file an FBAR, she requested the form, read the instructions, and tried her best to comply. D302, Ex. 182 at 44:1-4; D303, Ex. 67 at LHK_0267; D306, Ex. 191 at 17; D307, Ex. 193 at 95:2-10. Unlike the defendants in cases cited by Plaintiff, there is no evidence that Ms. Kim concealed her ownership of those accounts. *See, e.g.*, *United States v. Horowitz*, 978 F.3d 80, 89-90 (4th Cir. 2020).

Instead, Ms. Kim reported the Korean Banks on her FBARs, providing a clear path to her account information.[7] D523-D529, Exs. 59-62. At that time, she did not personally manage her accounts, D259, Ex. 193 at 28:15-20, and the Korean Banks often closed and opened accounts without her knowledge, D516-D517, Ex. 195, so she was not aware of all of the accounts in her name or in the names of her companies. *See Cohen*, 2019 WL 8231039, at *7-*8 (denying summary judgment where there was a genuine dispute over whether defendant knew she had reportable account).

Ms. Kim relied on her employee to provide records needed to prepare the FBAR. D307, Ex. 193 at 95:2-10; P174, Ex. 182 at 70:23-71:1. When Ms. Kim filed her 2008 FBAR, she asked the IRS to contact her if there were any errors. D309, Ex. 182 at 44:2-5. Receiving no response, D310, Ex. 107 at USA – 003563, and with the good faith belief that she was filing accurately, Ms. Kim timely filed FBARs for 2009, 2010, 2011, and 2012 in the same manner. D316-D319, Ex. 193 at 95:2-10, Ex. 182 at 56:21-57:8; D320-D323, Exs. 63-66. As soon as she was advised of the errors, she engaged a new accountant and promptly took corrective action. D326, Ex. 191 at 22; D328-D329, Ex. 193 at 88:10-23. As this Court noted in *Cohen*:

> to determine whether Plaintiff acted recklessly, it would have to make a credibility determination of Defendant's testimony. Of course, on a motion for summary judgment, the Court cannot make such credibility determinations.

2019 WL 8231039, at *8. In this case, there are genuine disputes as to material facts and Plaintiff is unable to prove that Ms. Kim intentionally

---

[7] Plaintiff alleges Ms. Kim "underreported the balances of the accounts that she did report," but has not provided admissible evidence to support this claim. *See* Responses to P109, P125, P137, P150.

violated a known legal duty or acted recklessly. Thus, Plaintiff is not entitled to judgment as a matter of law.

**III. Whether the FBAR penalties were assessed within the applicable limitations period**

**A. Defendant's Position**

An FBAR penalty may be assessed within six years of the FBAR filing deadline. 31 U.S.C. § 5321(b)(1). For the years at issue, the FBAR was due on June 30 following the calendar year. *See* 31 C.F.R. § 1010.306(c).

On September 11, 2017, Ms. Kim's representatives signed Consents to extend the FBAR penalty assessment period for 2009-2011 until June 30, 2019. D339-D341, Ex. 185. On April 23, 2018, Ms. Kim's representatives signed the April 2018 Conditional Consents. D381-D384, Ex. 85.

Chernyak's office did not close the FBAR audit until October 17, 2018 and did not forward Ms. Kim's protest to Appeals until November 5, 2018. D396, Ex. 110; D397, Ex. 111. This substantial delay clearly violated the conditions of the April 2018 Conditional Consent. On July 10, 2019, Ms. Kim's representatives signed the July 2019 Conditional Consent, which was expressly conditioned on the validity of the April 2018 Conditional Consent. D402-D404, Exs. 115-116.

Because the IRS failed to satisfy the conditions set forth in the April 2018 Conditional Consent and July 2019 Conditional Consent, the deadline to assess FBAR penalties for 2009 through 2012 expired on June 30, 2019, and the assessments of the FBAR Penalties on August 20, 2019, are invalid. *See Bellis v. Comm'r,* 67 TCM 2013 (1994) (cover letter requesting that an open-ended extension "be restricted to a period not to exceed" a specified date barred assessment after that date.); *Hicks v. Comm'r,* 62 TCM 1234 (1991) (where letter from revenue agent transmitting Form 872 stated that the examination would only cover specified issue, the waiver was conditional so

that expansion of the examination invalided the waiver); *Smith v. Comm'r,* 56 TCM 1373 (1989) (waiver held to be invalid where letter transmitting waiver conditioned waiver on transfer of case to the Los Angeles district, and that district declined to accept the transfer).

## B. United States' Position

### 1. Additional Facts

On September 11, 2017, Defendant's counsel consented to extend the time to assess the FBAR penalties under 31 U.S.C. § 5321 to June 30, 2019 [Fact P184; Exhibit 185].

On April 23, 2018, Defendant's counsel consented to extend the time to assess the FBAR penalties for the years 2009 through 2012 until December 31, 2019, provided that the case was forwarded to IRS Appeals "in the very near future." [Fact P185; Exhibit 85]. This allowed Appeals to consider the matter pre-assessment [*Id*].

On October 17, 2018, a document transmittal (Form 3210) was completed to transfer the FBAR case files from IRS Exam to Appeals [Fact P186; Exhibit 110]. Defendant's FBAR case was originally assigned to Appeals Officer Russell McGeehan ("Appeals Officer McGeehan" or "McGeehan") on December 21, 2018 [Fact P187; DB ¶ 3]. On March 22, 2019, Appeals Officer McGeehan contacted Defendant's counsel and agreed on the contested issues and a plan for a conference [Fact P188; DB ¶ 4]. Appeals Officer McGeehan's work on the case was delayed due to several competing priorities, so on May 24, 2019, the case was reassigned to Appeals Officer Duane Binns [Fact P189; DB ¶ 5]. On May 30, 2019, Defendant's counsel contacted Appeals Officer Binns and agreed to provide an extension to the statute of limitations on assessment [Fact P190; DB ¶ 7]. On July 24, 2019, Appeals Officer Binns received a letter from Defendant's counsel conditionally extending the statute of limitations for assessing the FBAR

penalty for tax years 2009 through 2012 [Fact P191; DB ¶ 8]. The same day, Appeals Officer Binns informed Defendant's counsel that if he did not agree to extend the statute of limitations without conditions, the IRS would assess the FBAR penalties [Fact P192; DB ¶ 9]. Defendant's counsel refused to unconditionally extend the statute of limitations for assessing the FBAR penalty for tax years 2009 through 2012 [Fact P193; DB ¶ 10]. On August 20, 2019, the IRS assessed willful FBAR penalties against Defendant for the years 2009 through 2012 in the amount of $1,014,109.85 for each year, for a total of $4,056,439.40 [Facts P165-166; KM ¶¶ 11-12, Exhibit 70].

### 2. Analysis

For the years 2009 through 2012, the FBAR reports were due to be filed by June 30 of the following calendar year. 31 C.F.R. § 1010.306(c). Unless the parties agree to extend the limitations period, the FBAR penalty must be assessed within 6 years from the date the FBAR was due to be filed. 31 U.S.C. § 5321(b)(1). Appeals has unlimited settlement authority if the penalty has not been assessed (pre-assessment), but if the penalty has been assessed, then settlement reducing the amount of the penalty over $100,000 requires Department of Justice approval. *See* Internal Revenue Manual ("IRM") 4.26.17.4.3.4.2(3)(b.).[8] Also, at the time Appeals would not consider pre-assessment FBAR cases unless there was at least 180 days remaining on the assessment statute of limitations. IRM 4.26.17.4.6(2)(c.) (added 01-01-2007).

Contracts are construed against the drafter. Under California law, where a contract is ambiguous, "the language of a contract should be interpreted most strongly against the party who caused the uncertainty to

---

[8] The IRM "does not have the force of law and does not confer rights on taxpayers." *Fargo v. Commissioner*, 447 F.3d 706, 713 (9th Cir. 2006). Still, the Manual provides extensive guidance to IRS employees.

1   exist." Cal. Civ. Code § 1654; *Miller v. United States*, 363 F.3d 999, 1006 (9th
2   Cir. 2004). In her April 23, 2018 letter, Defendant agreed to conditionally
3   extend the statute of limitations to December 31, 2019, if the case was
4   forwarded to Appeals – using the language "in the very near future[.]" But
5   Defendant did not define that term and provided no specific deadlines or
6   other dates in her letter. IRS Exam closed the case and transferred it pre-
7   assessment to Appeals on October 17, 2018.

8       On May 30, 2019, Defendant's counsel contacted Appeals Officer Binns
9   and agreed to provide an extension to the statute of limitations on
10  assessment, but when it arrived on July 24, 2019, the extension was again
11  conditional. Appeals Officer Binns informed Defendant's counsel that if he
12  did not agree to extend the statute of limitations without conditions, the IRS
13  would assess the FBAR penalties. Defendant's counsel refused, so the FBAR
14  penalties were assessed.

15      The IRS complied with the terms of the agreement dated April 23,
16  2018. The parties understood that the case would be transferred to Appeals
17  "in the very near future" so that Appeals would accept the case and review it
18  pre-assessment. That is what happened. IRS Exam closed the case and
19  transferred it pre-assessment to Appeals, which allowed Defendant the
20  opportunity to present her argument to the Independent Office of Appeals
21  about why she was not willful.

22      When the case was transferred to Appeals in October 2018, there was
23  still well over 180 days on the statute of limitations as required by the IRM,
24  even if the earlier date of June 30, 2019 was used. In May 2019, and well
25  after the April 23, 2018 letter, Defendant's counsel agreed to provide Appeals
26  Officer Binns with an extension of the statute of limitations but refused to do
27  so without conditions. As there was then less than 180 days before the

28

expiration of the statute of limitations, Appeals Officer Binns requested that the FBAR penalties be assessed for the years 2009 through 2012.

Defendant could have had a more thorough review by Appeals pre-assessment, but Defendant's counsel refused to extend the statute unconditionally in May 2019. The IRS complied with the conditions – which are construed against Defendant – and the assessments were timely.

## IV. Whether the FBAR penalties were assessed by someone with the requisite authority to make the assessment

### A. Defendant's Position

An action taken by an IRS employee is "null and void" unless that employee has the necessary authority to take that action. *See Stiskin v. Comm'r*, T.C. Memo. 1996-306, 1996 WL 377047, at *3. The authority to assess penalties for violations of 31 U.S.C. § 5314 is granted by statute to the Secretary of the Treasury ("the Secretary"). 31 U.S.C. § 5321(a)(5)(A). In 2002, the Secretary delegated FBAR enforcement authority to the Director of the Financial Crimes Enforcement Network ("FinCEN"), a bureau of the Treasury Department. *See* Treas. Order 180-01, 67 Fed. Reg. 64697-01, 64697 (Oct. 21, 2002). By Memorandum of Agreement and Delegation of Authority for Enforcement of FBAR Requirements, dated April 8, 2003, FinCEN redelegated its FBAR enforcement authority to the Commissioner of the IRS. IRM 4.26.1-2 FBAR Delegation to IRS (04-05-2011); *see also* 31 C.F.R. § 1010.810(g) (Mar. 1, 2011).

When an officer or employee of the IRS, including the Commissioner, is authorized by regulations or a Treasury decision to perform a particular function, they "shall have authority to redelegate the performance of such function to any officer or employee performing services under his supervision and control, unless such power to so redelegate is prohibited or restricted by proper order or directive." 26 C.F.R. § 301.7701-9(c). The Commissioner

32

exercised this authority delegating his civil FBAR enforcement authority—including the authority to "assess and collect civil penalties under 31 USC [sic] § 5321"—to specific IRS employees through Delegation Order 25-13 (Formerly DO 4-35, Rev. 1), IRM 1.2.2.14.13 (04-11-2012). The Commissioner later modified Delegation Order 25-13 in 2015, identifying different IRS employees who have the authority to assess FBAR penalties, including the Department Manager, CTR Operations. *See* Memo for Comm'r, LB&I *et al.* re: Deleg. Order 25-13 (Jul. 8, 2015) ("Memo for Comm'r, LB&I *et al*").

Delegation orders are used by the IRS to "vest authority at the point where immediate responsibility has been placed." IRS CCA 200133043 (Aug. 17, 2001). Authority is "delegated directly to the lowest level expected to take final action." *Id.* When a delegate is vested with authority to perform a particular action, "[e]very intervening line supervisory position up to and including the Commissioner has the same authority," but no inferior employee in the IRS's organizational hierarchy has that authority. *Id.* A delegate may redelegate their authority to any employee who performs services under the delegate's supervision and control *unless* redelegation is prohibited or restricted. *Id.*; *see also* 26 C.F.R. § 301.7701-9(c). If the "plain language" of a delegation order restricts the ability of an IRS employee from redelegating an authority, such language should be given its full effect. *DelPonte v. Comm'r*, 158 T.C. No. 7, *7 (2022). Delegation Order 25-13 specifies that FBAR enforcement authority, including authority to assess and collect civil FBAR penalties, "may not be redelegated." Deleg. Order 25-13. The 2015 modification of the Delegation Order did not alter that restriction. *See* Memo for Comm'r, LB&I *et al.*

In August 2019, Smith-Pope was Department Manager, CTR Operations. D444, Ex. 70. She designated Mitchell, a Supervisory Tax Law Specialist in CTR Operations, to temporarily serve as Acting Department

33

Manager, CTR Operations, from August 20-26, 2019. D442, Ex. 206 at 35:13-17; D443, Ex. 68. Mitchell and Smith-Pope had authority to assess FBAR penalties on August 20, 2019.

On or about August 20, 2019, Mitchell told Graves to sign Ms. Kim's Forms 13448 on behalf of Smith-Pope. D456, Ex. 206 at 82:18-20. The signing of the Form 13448 by an assessment officer effectuates the assessment of a civil FBAR penalty, making it valid and enforceable. IRM 4.26.17.4.3(8)(b) (12-11-2019) (stating that the Form 13448 "functions in the same way as the Form 23C, Assessment Certificate – Summary Record of Assessments"); *see also Brafman v. United States*, 384 F.2d 863, 864-865 (5th Cir. 1967) (finding that an assessment of estate tax was invalid because the Form 23C was not signed by an assessment officer). Graves signed each Form 13448 on or about August 20, 2019, when she was a Lead Tax Examiner temporarily serving as a Supervisory Tax Examining Technician. D422-D423, Ex. 70; D424-D425, Ex. 206 at 84:13-85:1.

Graves was not an authorized individual when she signed the Forms 13448. Neither a Lead Tax Examiner nor a Supervisory Tax Examining Technician are authorized to assess FBAR penalties in Delegation Order 25-13, as modified. *See* Memo for Comm'r, LB&I *et al*. The fact that Mitchell, designated to serve in the authorized position of Acting Department Manager, CTR Operations, told Graves to sign the Forms 13448 does not make the assessment valid because Delegation Order 25-13, as modified, explicitly states that the authority to assess civil FBAR penalties "may not be redelegated." *Id.*

Where IRS employees act outside their delegated authority, courts have declared those actions null and void. In *Country Gas Service, Inc. v. United States*, 405 F.2d 147 (1st Cir. 1969), the First Circuit examined whether an IRS revenue agent "had authority to make a binding agreement"

with taxpayers. *Id.* at 149. The court found that authority to compromise tax liabilities was explicitly reposed in "the Secretary or his delegate," and that "such delegation stops at the district director level." *Id.* at 150. There, as here, the relevant authority was delegated through a delegation order that stated the "authority may not be redelegated." *Id.* n.5. Because the revenue agent was not a district director, "any arrangement taxpayer[s] made with [the agent] had no legal standing." *Id.* Similarly, in *In re Klee*, 216 B.R. 42 (Bankr. D. Or. 1997), the court held that a closing agreement between the debtors and an IRS Associate Chief of Appeals was not binding because the agreement related to a matter pending in the U.S. Tax Court and the delegation order authorizing Associate Chiefs of Appeals to enter into closing agreements explicitly excluded cases docketed before the U.S. Tax Court. *Id.* at 44. Because the Associate Chief "did not have authority to enter the closing agreement," the agreement was "null and void." *Id.* at 44-45.

Here, Graves assessed the FBAR Penalties when she did not hold a position identified in Delegation Order 25-13, as modified. Because the Forms 13448 were not signed by an authorized individual, the assessments are null and void. Without valid assessments, Plaintiff cannot collect. *See* 31 U.S.C. § 5321(b)(2); *see also United States v. Pomerantz*, No. C16-0689JLR, 2017 WL 2483213, at *4 (W.D. Wash. June 8, 2017).

## B. United States' Position

### 1. Additional Facts

In August 2019, Leah Smith-Pope was the Department Manager of Currency Transaction Reporting (CTR) Operations [Fact P156; KM ¶ 2]. Kathy Mitchell was a Supervisory Tax Law Specialist in CTR Operations and reported directly to Leah Smith-Pope [Fact P157; KM ¶ 3]. The general procedure in CTR Operations regarding the FBAR Penalty Assessment Certification (Form 13448) was as follows: first it was reviewed by Kathy

Mitchell, and once her review was complete, she would give it to Leah Smith-Pope for signature so that one person was not both the initial reviewer and final signatory authorizing assessment [Fact P158; KM ¶ 4].

During the week of August 20, 2019 to August 26, 2019, Leah Smith-Pope was on leave, and Kathy Mitchell was the Acting Department Manager, CTR Operations [Facts P159-160; KM ¶ 5-6, Exhibit 68]. Cesilee Graves was on detail as a frontline manager with the title Supervisory Tax Examiner in CTR Operations [Fact P161; KM ¶ 7].

Kathy Mitchell reviewed the Penalty Assessment Certification (Form 13448) for Defendant for the years 2009, 2010, 2011, and 2012 [Fact P162; KM ¶ 8]. After reviewing Form 13448, Kathy Mitchell gave the form to Cesilee Graves and verbally requested that she sign the Form 13448 for Leah Smith-Pope so that Kathy Mitchell was not both the reviewer and signatory on the Form 13448 [Fact P163; KM ¶ 9]. Form 13448 for Defendant dated August 20, 2019, was signed by Cesilee Graves for Leah Smith-Pope [Facts P164-165; KM ¶¶ 10-11, Exhibit 70].

## 2. Analysis

Although Defendant recognizes that delegation of authority to assess the FBAR penalty is allowed, she cites to an irrelevant and nonbinding Chief Counsel Advisory opinion[9] and out of district cases that are contrary to Ninth Circuit law, as explained below. Defendant's argument would – in addition to giving her an unfair $4,000,000 windfall – prohibit CTR Operations from making assessments when the Department Manager is out of the office and should be rejected.

The IRS was delegated the authority to assess and collect civil FBAR penalties under 31 U.S.C. § 5321(b). *See* 31 C.F.R. §§ 1010.350(a) and

---

[9] IRS CCA 200133043 (Aug. 17, 2001) is inapposite as it analyzes delegation of authority under Title 26 during a limited transitional period for the IRS.

1  1010.810(g); IRM 4.26.16.5.1. In addition, the "delegation to the [IRS]
2  Commissioner includes the authority to further delegate this authority to
3  any officer or employee within the IRS." 2A IRM Abr. & Ann. § 4.26.1-2.
4  Delegation Order 25-13 delegated authority to assess and collect FBAR
5  penalties for assessment of the FBAR penalty to Currency Transaction
6  Reporting (CTR) Operations. IRM 1.2.2.14.13(1)-(3) (4-11-2012). In July
7  2015, Delegation Order 25-13 was modified, and authority for FBAR
8  enforcement was delegated to the Department Manager of CTR Operations.
9  Facts P177-178, KM ¶¶ 17-18, Exhibit 183.

10       "The Ninth Circuit has recognized a presumption that subdelegations
11  by a federal officer or agency to a subordinate are permissible, and 'express
12  statutory authority for [sub]delegation is not required.'" *Crawford-Hall v.*
13  *United States*, 394 F. Supp. 3d 1122, 1136 (C.D. Cal. 2019) (J. Wilson),
14  quoting *Loma Linda Univ. v. Schweiker*, 705 F.2d 1123, 1128 (9th Cir. 1983)
15  (citation omitted). "When a statute delegates authority to a federal officer or
16  agency, subdelegation to a subordinate federal officer or agency is
17  presumptively permissible absent affirmative evidence of a contrary
18  congressional intent." *Frankl v. HTH Corp.*, 650 F.3d 1334, 1350 (9th Cir.
19  2011) (internal quotation marks omitted) (quoting *U.S. Telecom Ass'n v.*
20  *FCC*, 359 F.3d 554, 565 (D.C. Cir. 2004)). To determine whether the
21  presumption applies, courts "must look to the purpose of the statute to set its
22  parameters" regarding subdelegation. *Inland Empire Pub. Lands Council v.*
23  *Glickman*, 88 F.3d 697, 702 (9th Cir. 1996). Ultimately, "delegation generally
24  is permitted where it is not inconsistent with the statute." *Id.* (internal
25  quotation marks and citation omitted).

26       The purpose of the statute is to require individuals to report their
27  foreign bank accounts to the IRS and allow the IRS to assess penalties for
28  willful failures to file FBARs. The presumption permitting subdelegation

applies in this case, and Defendant cites no affirmative evidence of contrary congressional intent. As such, when the Department Manager of CTR Operations is on leave, subdelegation of authority to review and assess the willful FBAR penalty is consistent with the statute.

Defendant states that "[b]oth Smith-Pope and Mitchell had authority to assess FBAR penalties on August 20, 2019" which acknowledges that delegation is appropriate beyond the Department Manager of CTR Operations. Kathy Mitchell reviewed Form 13448 and then gave it to Cesilee Graves to sign on behalf of Leah Smith-Pope. Such delegation is not prohibited by statute and was appropriate in this case. During the period at issue, Leah Smith-Pope was the Department Manager of CTR Operations, but she was on leave, so she delegated authority to Kathy Mitchell to act on her behalf as Acting Department Manager. The Penalty Assessment Certification (Form 13448) for Defendant for the years 2009, 2010, 2011, and 2012 was reviewed by Kathy Mitchell, who then requested that Cesilee Graves sign the form. This preserved the internal control of separating the roles of: (1) initial review and; (2) authorization to assess the penalty. Such action was appropriate, and based on the foregoing, the assessment of the FBAR penalties against Defendant was made by someone with adequate authority. Defendant's argument to the contrary implies that CTR Operations should not be allowed to continue with assessment and collection of FBAR penalties any time the Department Manager is on leave. Allowing Defendant to escape legal liability because of personnel scheduling is unsupported by law and should be rejected.

1
2
3

**V. Whether the IRS failed to identify specific accounts that Defendant willfully failed to accurately report on her FBARs**
**A. Defendant's Position**

4
5
6
7
8
9
10
11
12

The Secretary can only collect a civil FBAR penalty that is properly assessed under 31 U.S.C. § 5321(a). *See* 31 U.S.C. § 5321(b)(2). Under 31 U.S.C. § 5321(a)(5)(C)(i), the maximum amount of a willful FBAR penalty is the greater of $100,000 or 50% of the balance in the account at the time of the violation. *See* 31 U.S.C. § 5321(a)(5)(C)(i) and (D)(ii). Thus, the statute requires the IRS to identify the accounts that are the basis of the violation and the balance in each account on the date of violation.[10] Because the IRS failed to satisfy both requirements when it assessed the FBAR Penalties, the assessments are invalid.

13
14
15
16
17
18
19
20
21
22
23
24
25

The IRS recognizes that these determinations are statutorily required prior to assessment of willful FBAR penalties. In the IRM, the IRS states that a Form 13449 "functions as the examiner's report of FBAR violations" and "is the basis for the FBAR penalty assessment(s)," IRM 4.26.17.4.3(4)(b) (12-11-2019), and requires the examiner to list the account numbers of the unreported accounts, maximum value of the accounts, foreign bank where the account is located, reason for the penalty, and amount of the penalty corresponding to those accounts. D354-D369, Ex. 69 at LHK_3483. The Form 13448 also requires the reason for and amount of the FBAR penalty, account numbers of unreported accounts, and the foreign bank at which the accounts are located. D426-D441, Ex. 70. If any required information is missing, the forms are incomplete and the penalty can't be assessed. D459, Ex. 206 at 70:4-72:15.

26
27
28

---

[10] A contrary interpretation allows the IRS to assess willful penalties without knowing if the penalty exceeds the statutory maximum.

The IRS employees involved in Ms. Kim's audit and administrative appeal understood that this information is essential for a valid willful FBAR penalty assessment. McGeehan, the FBAR Coordinator assigned to Ms. Kim's appeal, D457, Ex. 204 at 145:10-12, told Binns: "We need a penalty calculation schedule that shows which foreign accounts were being penalized by Exam, how much of the penalty is attributable to each account, and which accounts your partial abatement recommendation involves." D458, Ex. 152 at LHK_4035. Mitchell, who asked Graves to sign the Forms 13448, testified that no penalty should be authorized for assessment unless the fields on the Form 13449 for "Proposed penalty," "Foreign account number(s)," "Foreign Bank, Institution, or Agent(s)," and "Maximum value of account" are filled in. D459, Ex. 206 at 70:4-72:15.

Here, the Forms 13449 and 13448 do not provide the foreign account numbers at issue. D428, D432, D436, D440, Ex. 70; D412, Ex. 155. The Form 13449 also omits any proposed penalty for 2009, 2010, or 2012, and maximum values of accounts for any year. D412, Ex. 155. In addition, despite referring to attachments, Binns attached nothing to the Form 13449 sent to CTR Operations.[11] D417, Ex. 205 at 114:14-115:15. In sum, CTR Operations received no information identifying accounts at issue or the balances on the dates of violation prior to assessment of the FBAR Penalties.

Without documents demonstrating that the Secretary complied with the statutory requirements, Plaintiff cannot now prove that the IRS properly assessed the FBAR Penalties. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council Inc.*, 467 U.S. 837, 844 (1984).

---

[11] *See supra* at 23.

**B. United States' Position**

    **1. Additional Facts**

    Form 13449 for Defendant – Agreement to Assessment and Collection – listed the account numbers as "various (see attached)" for 2011 [D356], and was blank for 2009, 2010, and 2012 [D365, D361, D369]. Similarly, Form 13448 for Defendant – Penalty Assessment Certification – listed the foreign bank account numbers as "various" [D428, D432, D436, and D440].

    **2. Analysis**

    Defendant has cited no statutory or regulatory authority for the proposition that the IRS is required to identify specific accounts on particular forms for a valid assessment. To the extent she cites the IRM in support of her position, it "does not have the force of law and does not confer rights on taxpayers." *See Fargo*, 447 F.3d at 713.

    For willful violations, the maximum FBAR penalty is the greater of $100,000 or 50% of the "the amount determined under subparagraph (D)[.]" 31 U.S.C. § 5321(a)(5)(C)(i). That amount – for cases like this one involving a failure to report the existence of an account or any identifying information required to be provided with respect to an account – is the balance in the account at the time of the violation. 26 U.S.C. 5321(a)(5)(D)(ii). The phrase "amount determined" is a defined term, and not a requirement that the IRS identify specific account numbers on a specific administrative form. Neither the IRM, nor statements by IRS employees about general procedures, supersede the statute enacted by Congress.

    The years at issue are 2009 through 2012, so the balance in Defendant's accounts at the time of the violation was June 30 of the following year. For each of the years at issue, Defendant had at least 11 accounts every year with a maximum value during the year of over $100,000 that she failed to report on her FBAR. Each of those accounts subjected

Defendant to a willful FBAR penalty of at least $100,000 per account, corresponding to a penalty of at least $1,100,000 per year. The amount of the willful FBAR penalty assessed against Defendant was $1,014,109.85, which was less than allowed by statute, and the FBAR penalties against her were proper.

**VI. Whether the IRS calculation of the FBAR penalties was arbitrary and capricious**

**A. Defendant's Position**

Courts review the amount of willful FBAR penalties for "abuse of discretion under the 'arbitrary and capricious' standard of the [APA]." *United States v. Gentges*, 531 F. Supp. 3d 731, 752 (S.D.N.Y. 2021) (citing 5 U.S.C. § 706(2)(A) and *Jones, supra*, at *8). The court must "consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). A decision that departs from the IRS's internal guidelines is arbitrary and capricious. *See Gentges*, 531 F. Supp. 3d, at 754. Additionally, a decision that relies on factors that Congress did not intend for it to consider is normally arbitrary and capricious. *State Farm*, 463 U.S., at 43.

When an agency action is arbitrary and capricious, "vacatur is the presumptive remedy under the APA." *350 Montana v. Haaland*, 50 F.4th 1254, 1273 (9th Cir. 2022); *see also* 5 U.S.C. § 706(2)(D) ("The reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . without observance of procedure required by law . . . ."). Any remand to the agency is limited, as outlined by the Supreme Court in *Dep't of Homeland Security v. Regents of the University of California*, 140 S. Ct. 1891 (2020):

It is a "foundational principle of administrative law" that judicial

review of agency action is limited to "the grounds that the agency invoked when it took the action." If those grounds are inadequate, a court may remand for the agency to do one of two things: First, the agency can offer "a fuller explanation of the agency's reasoning at the time of the agency action." This route has important limitations. When an agency's initial explanation "indicate[s] the determinative reason for the final action taken," the agency may elaborate later on that reason (or reasons) but may not provide new ones. Alternatively, the agency can "deal with the problem afresh" by taking new agency action. An agency taking this route is not limited to its prior reasons but must comply with the procedural requirements for *new* agency action.

*Id.* at 1907-08 (citations omitted) (emphasis in original); *see also Mann Construction, Inc. v. United States,* No. 1:20-cv-11307, --- F. Supp. 3d ---, 2023 WL 248814, at *3 (E.D. Mich.) (Jan. 18, 2023) ("In sum, if an agency action violates the APA, 'then the court should invalidate the challenged action.'").

Congress clearly intended the maximum amount of a willful FBAR penalty to be based on the balance in the account on the date of violation. *See* 31 U.S.C. § 5321(a)(5)(C), (D). Yet, in 2015, the IRS issued administrative guidance with a modified approach:

the total [willful FBAR] penalty amount for all years under examination will be limited to 50 percent of the highest aggregate balance of all unreported foreign financial accounts during the years under examination. In such cases, the penalty for each year will be determined by allocating the total penalty amount to all years for which the FBAR violations were willful based upon the ratio of the highest aggregate balance for each year to the total of the highest aggregate balances for all years combined, subject to

43

the maximum penalty limitation in 31 USC 5321(a)(5)(C) for each year.

IRM 4.26.16.6.5.3(2) (11-06-2015).

Chernyak calculated the FBAR Penalties using a third, clearly erroneous approach: calculating the statutory maximum penalty for each open account from January 1, 2011, through June 30, 2012, and then spreading the aggregate amount equally over each of the four years.[12] D461, Ex. 177 at 266:9-13, 291:2-18. This method violates both the statute and the IRS's administrative guidance and is therefore arbitrary and capricious.[13]

Even if Chernyak's methodology to calculate the FBAR Penalties is not arbitrary and capricious *per se*, the Court should vacate the assessments due to her clear errors, all of which were raised by Ms. Kim during the audit. D377, Ex. 107 at USA – 003592 to 3598. First, Chernyak attributes a penalty of $356,439.39 to Account -4681, and another penalty of $100,000 to the *same account*. D462-D463, Ex. 69 at LHK_3484-3485. The administrative record establishes that the June 30, 2012, account balance for Account -4681 was $672,657, D464, Ex. 34 at LHK_0085, so the penalties assessed exceed the maximum penalty of $336,328.50. She also attributes two penalties of $100,000 to Account -5417, again exceeding the statutory maximum under 31 U.S.C. § 5321(a)(5)(D). D465, Ex. 69 at LHK_3484-3485. Second, she

---

[12] Butler stated that Chernyak calculated the FBAR Penalties "by taking every account that had some balance in 2011, and for each such account determined a penalty equal to the greater of $100,000 or 50% of the balance of that account on June 30, 2012. The 2011 penalty was spread out equally over the four years . . . ." D530, Ex. 144 at LHK_4007.

[13] The IRS does not explain why Chernyak's method is appropriate or why mitigation was inappropriate. Presumably, its reasoning would be in the Appeals Case Memorandum ("ACM"), but Plaintiff has not produced that document. The Court is therefore unable to review the IRS's reasoning supporting assessment of the FBAR Penalties.

attributes a $100,000 penalty to Account -6699 even though Ms. Kim reported this account and Accounts -3627 and -5282 on her 2011 FBAR.[14] D467-D468, Ex. 65. Third, she attributes $100,000 penalties to Accounts -8765, -9546, and -6258, but nothing in the administrative record suggests they were open in 2011.[15] D475-D477, Ex. 69 at LHK_3484-3485; D478-D480, Exs. 41, 42, 44. Fourth, she attributes a $100,000 penalty each to Accounts -1003, -2001, -2033, -3001, -3441, and -6411. D483-D488, Ex. 69 at LHK_3484-3485. However, accounts -1003 and -2033 are the same, as are -2001 and -3441, and -3001 and -6411. D483-488, Ex. 69 at LHK_3484-3485; D489-D491, Exs. 209-211.[16] These errors render the FBAR Penalties arbitrary and capricious.

Moreover, the IRS *knew* Chernyak's calculations were erroneous. On August 10, 2020, Binns told McGeehan that Accounts -8765, -9546, and -6258 were not open in 2011; and Accounts -6411, -3441, and -2033 were "successor" accounts to Accounts -3001, -2001, and -1003, respectively. D448, Ex. 153 at LHK_4036-4037. Binns recommended that the FBAR penalty for 2011 be reduced by $800,000 ($100,000 for each account incorrectly penalized). D449, Ex. 142. On September 24, 2020, McGeehan told Binns that DOJ's approval is likely conditional on Ms. Kim "full paying the

---

[14] Ms. Kim reported multiple accounts in single account fields on her FBARs, separating account numbers by commas. D474, Ex. 59.

[15] The IRS also attributed a $100,000 penalty to Account -0405, but the administrative record suggests that account had no balance in 2011. D481-D482. While the statute allows for a penalty on a zero-balance account in proper circumstances, this is contrary to the IRS's stated methodology for calculating the FBAR Penalties in this case, which counted only "account[s] that had some balance in 2011." D530, Ex. 144 at LHK_4007.

[16] The account statements state—and Binns accepted—that these are "Precursor/Successor Accounts." D448, Ex. 153 at LHK_4036-4037; D489-491, Exs. 209-210.

1   remaining $3.3M FBAR liability immediately." D492, Ex. 207 at LHK_4155.
2   On September 24, 2020, Binns told Ms. Kim's counsel:

3       Appeals management sees no reason to present this to the DOJ unless
4       1) Taxpayer agrees that she will settle the FBAR issue for this amount,
5       and 2) Taxpayer agrees that she will immediately pay this amount (i.e.,
6       the DOJ's approval will, in all likelihood, be conditional on Taxpayer
7       paying this amount upfront to secure the agreement). If Taxpayer is
8       not willing to make these two commitments, Appeals will close the case
9       unagreed, and you can take the full amount (i.e., with no abatement) to
10      trial.

11  D493, Ex. 142. Nonetheless, the IRS upheld the assessment of the FBAR
12  Penalties based on Chernyak's calculations. D452, Ex. 144. *See Jones, supra*
13  at *8 ("While the end result was well within the maximum allotted for in the
14  statute, the calculation of the penalty was 'arbitrary and capricious.'"). The
15  IRS's serious and blatant disregard for its obligations under the statute and
16  its own administrative guidance renders its decision fundamentally flawed,
17  warranting vacatur. *See Pollinator Stewardship Council v. EPA*, 806 F.3d
18  520, 532 (9th Cir. 2015).

19      Finally, there are several accounts that the IRS included in calculating
20  the FBAR Penalties but, in the Complaint, Plaintiff failed to allege Ms. Kim
21  willfully omitted these accounts from her FBARs.[17] Thus, Plaintiff's request
22  to collect FBAR penalties attributable to those accounts must be denied.

23
24
25
26  [17] The IRS attributed penalties of $100,000 each to Accounts -9534, -8740, -
27  6699, -9676, -0232, -8951, -5091, -6048, -0907, -5711, -1926, -7808, -9166, -
28  6539, -0405, and -6258. D494-D509, Ex. 69 at LHK_3484-3485. Plaintiff
    has not alleged that Ms. Kim willfully failed to report these accounts on
    her 2011 FBAR. Complaint at Ex. A, ECR No. 1 (Aug. 20, 2021).

**B. United States' Position**

    **1. The FBAR penalty was not arbitrary and capricious**

       Although Congress prescribed a maximum penalty for willful FBAR violations, it did not otherwise limit the IRS's discretion to set the amount of the penalty. 31 U.S.C. § 5321(a)(5)(C). Accordingly, the IRS's determination will be set aside only if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," taking "due account . . . of the rule of prejudicial error," as provided under the Administrative Procedure Act (APA), 5 U.S.C. § 706; *see, e.g., Jones v. United States*, 2020 WL 2803353, at *8 (C.D. Cal. May 11, 2020). This standard is "exceedingly deferential" to the agency. *Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 541 (11th Cir. 1996). And "[r]egarding a penalty assessment, an agency's determination is considered to be particularly within the agency's competence." *Vidiksis v. E.P.A.*, 612 F.3d 1150, 1154 (11th Cir. 2010). "Only if the remedy chosen is unwarranted in law or is without justification in fact should a court attempt to intervene in the matter." *Id.* (quoting *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 112-13 (1946)).

       In this case, the IRS's decision as to the amounts of the penalties is warranted by the facts and the law. Even if the IRS only considered accounts with a value of over $100,000 during each of the years at issue that she failed to report on her FBAR, the amount assessed of $1,014,109.85 per year was less than the statutory maximum, which would have been at least $1,100,000 per year for her 11 accounts. Since the amount assessed was less than the statutory maximum, it was not arbitrary and capricious.

    **2. In the alternative, remand to the IRS is appropriate**

       In *Jones v. United States*, the assessed FBAR penalties for 2011 and 2012 were based on the statutory maximum penalty of 50% of the balance on June 30, 2013, prorated between the two years. 2020 WL 2803353, at *11

47

1   (C.D. Cal. May 11, 2020). The Court determined that "[s]hould willfulness be
2   found at trial, the Court will remand the action to the IRS for recalculation."
3   *Id.* at *8. "[T]his would not be a new assessment of penalties, but rather a
4   recalculation of the initial penalty based upon an upheld finding of
5   willfulness." *Id. See also United States v. Schwarzbaum*, 24 F.4th 1355, 1365
6   (11th Cir. 2022) (directing the district court to remand to the IRS).

7       Accordingly, this Court should follow *Jones* and first determine if
8   Defendant was willful. If the court determines that Defendant was willful,
9   then assuming arguendo that the IRS calculation was arbitrary and
10  capricious, the proper remedy is to remand the action to the IRS for
11  recalculation of the penalty.

12  **VII. Defendant's Conclusion**

13      Ms. Kim is a native of Korea who has limited English proficiency. She
14  relied in good faith on her advisors, did her best to comply with her FBAR
15  obligations, timely filed the FBARs at issue, and asked the IRS for
16  assistance, receiving no response. Ms. Kim did not willfully or recklessly
17  violate a known legal duty.

18      In contrast, the IRS engaged in improper and abusive conduct during
19  Ms. Kim's audit, administrative appeal, and this litigation. Chernyak made
20  numerous, blatant errors in proposing willful FBAR penalties, repeatedly
21  delayed this case, issued serial, inflated proposed income adjustments that
22  forced Ms. Kim to incur substantial professional fees, and claimed complete
23  ignorance of this case during her depositions. Binns rushed to assess the
24  inflated FBAR Penalties in violation of the statutory provisions and the APA.
25  Graves then assessed the FBAR Penalties without authority and with
26  incomplete Forms 13448. In sum, the IRS seeks to extract excessive
27  penalties from Ms. Kim for failing to turn square corners in her dealings
28  with the government, while intentionally and repeatedly failing to hold itself

to the same standard. *See Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1486 (2021).

Plaintiff seeks to collect FBAR Penalties assessed after the statute of limitations expired, assessed without proper authorization, and based on false allegations and clearly erroneous calculations that violate the statutory framework and the APA. Based on the foregoing, the Court should grant summary judgment in favor of Ms. Kim, deny summary judgment to Plaintiff, and grant such other relief as justice may require.

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney
THOMAS D. COKER
Assistant United States Attorney
Chief, Tax Division

February 7, 2023                    /s/
GAVIN GREENE
Assistant United States Attorney

Kostelanetz LLP

February 7, 2023                    /s/
CAROLINE D. CIRAOLO
Attorneys for Laura Kim

Kostelanetz LLP

February 7, 2023                    /s/
WILLIAM GRECO
Attorneys for Laura Kim

1                           Taylor, Nelson & Amitrano, LLP

2

February 7, 2023          /s/

3                           A. LAVAR TAYLOR

4                           Attorneys for Laura Kim

5                           Taylor, Nelson & Amitrano, LLP

6

7  February 7, 2023          /s/

                         JONATHAN AMITRANO

8                           Attorneys for Laura Kim

9

10       Pursuant to Local Rule 5-4.3.4(a)(2)(i), I, Gavin Greene, attest that Caroline D. Ciraolo, William Greco, A. Lavar Taylor, and Jonathan Amitrano, concur in the contents of this document and have authorized this filing.

1

## Certificate of Compliance

2

3   The undersigned, counsel of record for the United States and

4 Defendant Laura Kim, certify that this brief contains 50 pages, which

5 complies with Court's requirement that the cross motion for summary

6 judgment be a single integrated document with 25 pages per side. *See* ECF

7 document numbers 21 and 30.

8

9          E. MARTIN ESTRADA

           United States Attorney

10         THOMAS D. COKER

11         Assistant United States Attorney

           Chief, Tax Division

12

13 February 7, 2023     /s/

14         GAVIN GREENE

           Assistant United States Attorney

15

16         Kostelanetz LLP

17

18 February 7, 2023     /s/

19         CAROLINE D. CIRAOLO

           Attorneys for Laura Kim

20

21         Kostelanetz LLP

22

23 February 7, 2023     /s/

24         WILLIAM GRECO

           Attorneys for Laura Kim

25

26

27

28

1                                                     Taylor, Nelson & Amitrano, LLP

2

3 February 7, 2023                     /s/

4                                           A. LAVAR TAYLOR
                                          Attorneys for Laura Kim

5

6                                                     Taylor, Nelson & Amitrano, LLP

7

8 February 7, 2023                     /s/

9                                           JONATHAN AMITRANO
                                          Attorneys for Laura Kim

10

11       Pursuant to Local Rule 5-4.3.4(a)(2)(i), I, Gavin Greene, attest that

12 Caroline D. Ciraolo, William Greco, A. Lavar Taylor, and Jonathan

13 Amitrano, concur in the contents of this document and have authorized this

14 filing.

15

16

17

18

19

20

21

22

23

24

25

26

27

28