| Form **4549-A** | Department of the Treasury-Internal Revenue Service | | | |
|---|---|---|---|---|
| (Rev. March 2013) | **Income Tax Examination Changes** (Unagreed and Excepted Agreed) | | Page 2 of 2 | |

| Name of Taxpayer LAURA H KIM | Taxpayer Identification Number ▮▮▮-8486 | | Return Form No.: 1040 | |
|---|---|---|---|---|
| **17. Penalties/ Code Sections** | **Period End** 12/31/2010 | **Period End** 12/31/2011 | **Period End** 12/31/2012 | |
| a. | | | | |
| b. | | | | |
| c. | | | | |
| d. | | | | |
| e. | | | | |
| f. | | | | |
| g. | | | | |
| h. | | | | |
| i. | | | | |
| j. | | | | |
| k. | | | | |
| l. | | | | |
| m. | | | | |
| n. | | | | |
| **18. Total Penalties** | | | | |
| Underpayment attributable to negligence: *(1981-1987)* A tax addition of 50 percent of the interest due on the underpayment will accrue until it is paid or assessed | | | | |
| Underpayment attributable to fraud: *(1981-1987)* A tax addition of 50 percent of the interest due on the underpayment will accrue until it is paid or assessed. | | | | |
| Underpayment attributable to Tax Motivated Transactions *(TMT).* Interest will accrue and be assessed at 120% of underpayment rate in accordance with IRC 6621 (c). | 0.00 | 0.00 | 0.00 | |
| **19. Summary of Taxes, Penalties and Interest:** | | | | |
| a. Balance due *or (Overpayment)* Taxes - *(Line 16, Page 1)* | 138,878.00 | 130,697.00 | 68,717.00 | |
| b. Penalties *(Line 18)* - computed to 06/12/2018 | | | | |
| c. Interest *(IRC § 6601)* - computed to 07/12/2018 | 38,990.20 | 30,991.11 | 13,786.75 | |
| d. TMT Interest - computed to 07/12/2018 *(on TMT underpayment)* | 0.00 | 0.00 | 0.00 | |
| e. Amount due or refund - *(sum of Lines a, b, c and d)* | 177,868.20 | 161,688.11 | 82,503.75 | |

**Other Information:**

For tax period(s) 201012, 201112, the tax liability shown in this report may be subject to IRC section 6404(g). Interest on the amount due will not be charged during the suspension period applicable to your tax liability. When your tax bill is issued, it will reflect the reduced amount of interest based on IRC section 6404(g), if such suspension period has resulted.

| Examiner's Signature: Name | Employee ID: | Office: | Date: |
|---|---|---|---|
| Ella Chernyak | ▮▮▮4322 | | 06/12/2018 |

The Internal Revenue Service has agreements with state tax agencies under which information about federal tax, including increases or decreases, is exchanged with the states. If this change affects the amount of your state income tax, you should amend your state return by filing the necessary forms.

You may be subject to backup withholding if you underreport your interest, dividend, or patronage dividend income you earned and do not pay the required tax. The IRS may order backup withholding *(withholding of a percentage of your dividend and/or interest payments)* if the tax remains unpaid after it has been assessed and four notices have been issued to you over a 120-day period.

USA_010153

**Form 4549-A**
(Rev. March 2013)

Department of the Treasury-Internal Revenue Service

# Income Tax Examination Changes
## (Unagreed and Excepted Agreed)

Page __1__ of __2__

| Name and Address of Taxpayer | Taxpayer Identification Number | Return Form No.: |
|---|---|---|
| LAURA H KIM<br><br>LOS ANGELES  CA | ▮▮-8486 | 1040 |

| | Person with whom examination changes were discussed. | Name and Title:<br>LAURA H KIM |
|---|---|---|

| 1.  Adjustments to Income | Period End<br>12/31/2010 | Period End<br>12/31/2011 | Period End<br>12/31/2012 |
|---|---|---|---|
| a.  Sch E2 - Rents Received | 9,690.30 | 20,763.74 | 3,337.53 |
| b.  Qualified Dividends | 1,281.82 | 15,260.21 | 10,500.57 |
| c.  Taxable Interest | 267,721.15 | 72,927.94 | 5,190.70 |
| d.  NOL Carryforward | 546,719.00 | 582,635.00 | |
| e.  Wages, Salaries and Tips, etc. | 699,489.78 | 172,078.59 | 161,411.91 |
| f.  Qualified dividends | 148,383.50 | 271,604.75 | 120,431.00 |
| g.  State Refunds, Credits, or Offsets | | 3,060.00 | 465.00 |
| h. | | | |
| i. | | | |
| j. | | | |
| k. | | | |
| l. | | | |
| m. | | | |
| n. | | | |
| o. | | | |
| p. | | | |
| 2.  Total Adjustments | 1,673,285.55 | 1,138,330.23 | 301,336.71 |
| 3.  Taxable Income Per Return or as Previously Adjusted | (600,246.00) | (534,608.00) | 311,285.00 |
| 4.  Corrected Taxable Income<br>     Tax Method<br>     Filing Status | 1,073,040.00<br>SCHEDULE D<br>Single | 603,722.00<br>SCHEDULE D<br>Single | 612,622.00<br>SCHEDULE D<br>Single |
| 5.  Tax | 323,532.00 | 135,237.00 | 164,170.00 |
| 6.  Additional Taxes / Alternative Minimum | 112,151.00 | 74,365.00 | 86,443.00 |
| 7.  Corrected Tax Liability | 435,683.00 | 209,602.00 | 250,613.00 |
| 8.  Less   a.  Foreign Tax Credit<br>     Credits  b.  Credit for Elderly<br>     c.<br>     d. | 297,205.00 | 74,426.00<br>750.00 | 164,170.00 |
| 9.  Balance (Line 7 less total of Lines 8a thru 8d) | 138,478.00 | 134,426.00 | 86,443.00 |
| 10.  Plus   a.<br>      Other  b.<br>      Taxes  c.<br>      d. | | | |
| 11.  Total Corrected Tax Liability (Line 9 plus Lines 10a thru 10d) | 138,478.00 | 134,426.00 | 86,443.00 |
| 12.  Total Tax Shown on Return or as Previously Adjusted | 0.00 | 3,729.00 | 17,726.00 |
| 13.  Adjustments to:  a.  See Attached<br>      b.<br>      c. | (400.00) | | |
| 14.  Deficiency-Increase in Tax or (Overassessment - Decrease in Tax)<br>      (Line 11 less Line 12 adjusted by Lines 13a through 13c) | 138,878.00 | 130,697.00 | 68,717.00 |
| 15.  Adjustments to Prepayment Credits-Increase (Decrease) | | | |
| 16.  Balance Due or (Overpayment) - (Line 14 adjusted by Line 15)<br>      (Excluding interest and penalties) | 138,878.00 | 130,697.00 | 68,717.00 |

USA_010154

| Form **4549-A**<br>(Rev. March 2013) | Department of the Treasury-Internal Revenue Service<br>**Income Tax Examination Changes**<br>**(Unagreed and Excepted Agreed)** | | Page 2 of 2 |
|---|---|---|---|

| Name of Taxpayer<br>LAURA H KIM | Taxpayer Identification Number<br>8486 | Return Form No.:<br>1040 |
|---|---|---|

| 17. Penalties/ Code Sections | Period End<br>12/31/2010 | Period End<br>12/31/2011 | Period End<br>12/31/2012 |
|---|---|---|---|
| a. | | | |
| b. | | | |
| c. | | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| h. | | | |
| i. | | | |
| j. | | | |
| k. | | | |
| l. | | | |
| m. | | | |
| n. | | | |
| **18. Total Penalties** | | | |
| Underpayment attributable to negligence: *(1981-1987)*<br>A tax addition of 50 percent of the interest due on the<br>underpayment will accrue until it is paid or assessed. | | | |
| Underpayment attributable to fraud: *(1981-1987)*<br>A tax addition of 50 percent of the interest due on the<br>underpayment will accrue until it is paid or assessed. | | | |
| Underpayment attributable to Tax Motivated Transactions *(TMT)*.<br>Interest will accrue and be assessed at 120% of underpayment<br>rate in accordance with IRC 6621(c). | 0.00 | 0.00 | 0.00 |
| **19. Summary of Taxes, Penalties and Interest:** | | | |
| a. Balance due or *(Overpayment)* Taxes - *(Line 16. Page 1)* | 138,878.00 | 130,697.00 | 68,717.00 |
| b. Penalties *(Line 18)*. computed to 06/12/2018 | | | |
| c. Interest *(IRC§ 6601)* - computed to 07/12/2018 | 38,990.20 | 30,991.11 | 13,786.75 |
| d. TMT Interest - computed to 07/12/2018 *(on TMT underpayment)* | 0.00 | 0.00 | 0.00 |
| e. Amount due or refund - *(sum of Lines a, b, c and d)* | 177,868.20 | 161,688.11 | 82,503.75 |

**Other Information:**

For tax period(s) 201012, 201112, the tax liability shown in this report may be subject to IRC section 6404(g). Interest on the amount due will not be charged during the suspension period applicable to your tax liability. When your tax bill is issued, it will reflect the reduced amount of interest based on IRC section 6404(g), if such suspension period has resulted.

| Examiner's Signature:<br>Name | EmployeeID: | Office: | Date: |
|---|---|---|---|
| Ella Chernyak | 4322 | | 06/12/2018 |

The Internal Revenue Service has agreements with state tax agencies under which information about federal tax, including increases or decreases, is exchanged with the states. If this change affects the amount of your state income tax, you should amend your state return by filing the necessary forms.

You may be subject to backup withholding if you underreport your interest, dividend, or patronage dividend income you earned and do not pay the required tax. The IRS may order backup withholding *(withholding of a percentage of your dividend and/or interest payments)* if the tax remains unpaid after it has been assessed and four notices have been issued to you over a 120-day period.

USA - 010155

| Form **4549-A** (Rev. March 2013) | Income Tax Examination Changes (Unagreed and Excepted Agreed) | | Page 1 of 2 |
|---|---|---|---|

| Name and Address of Taxpayer | Taxpayer Identification Number | Return Form No.: |
|---|---|---|
| LAURA H KIM<br><br>LOS ANGELES CA | ▮-8486 | 1040 |

| | Person with whom examination changes were discussed: | Name and Title: LAURA H KIM |
|---|---|---|

| 1. Adjustments to Income | Period End 12/31/2010 | Period End 12/31/2011 | Period End 12/31/2012 |
|---|---|---|---|
| a. Sch E2 - Rents Received | 9,690.30 | 20,763.74 | 3,337.53 |
| b. Qualified Dividends | 1,281.82 | 15,260.21 | 10,500.57 |
| c. Taxable Interest | 267,721.15 | 72,927.94 | 5,190.78 |
| d. NOL Carryforward | 546,719.00 | 582,635.00 | |
| e. Wages, Salaries and Tips, etc. | 699,489.78 | 172,078.59 | 161,411.91 |
| f. Qualified dividends | 148,383.50 | 271,604.75 | 120,431.00 |
| g. State Refunds, Credits, or Offsets | | 3,060.00 | 465.00 |
| h. | | | |
| i. | | | |
| j. | | | |
| k. | | | |
| l. | | | |
| m. | | | |
| n. | | | |
| o. | | | |
| p. | | | |
| 2. Total Adjustments | 1,673,285.55 | 1,138,330.23 | 301,336.71 |
| 3. Taxable Income Per Return or as Previously Adjusted | (600,246.00) | (534,608.00) | 311,285.00 |
| 4. Corrected Taxable Income | 1,073,040.00 | 603,722.00 | 612,622.00 |
| Tax Method | SCHEDULE D | SCHEDULE D | SCHEDULE D |
| Filing Status | Single | Single | Single |
| 5. Tax | 323,532.00 | 135,237.00 | 164,170.00 |
| 6. Additional Taxes / Alternative Minimum | 112,151.00 | 74,365.00 | 86,443.00 |
| 7. Corrected Tax Liability | 435,683.00 | 209,602.00 | 250,613.00 |
| 8. Less Credits    a. Foreign Tax Credit | 297,205.00 | 74,426.00 | 164,170.00 |
| b. Credit for Elderly | | 750.00 | |
| c. | | | |
| 9. Balance (Line 7 less total of Lines 8a thru 8d) | 138,478.00 | 134,426.00 | 86,443.00 |
| 10. Plus   a. | | | |
| Other   b. | | | |
| Taxes   c. | | | |
|      d. | | | |
| 11. Total Corrected Tax Liability (Line 9 plus Lines 10a thru 10d) | 138,478.00 | 134,426.00 | 86,443.00 |
| 12. Total Tax Shown on Return or as Previously Adjusted | 0.00 | 3,729.00 | 17,726.00 |
| 13. Adjustments to: a. See Attached | (400.00) | | |
| b. | | | |
| c. | | | |
| 14. Deficiency-Increase in Tax or (Overassessment - Decrease in Tax) (Line 11 less Line 12 adjusted by Lines 13a through 13c) | 138,878.00 | 130,697.00 | 68,717.00 |
| 15. Adjustments to Prepayment Credits-Increase (Decrease) | | | |
| 16. Balance Due or (Overpayment) - (Line 14 adjusted by Line 15) (Excluding interest and penalties) | 138,878.00 | 130,697.00 | 68,717.00 |

USA 010156

Catalog Number 23110T      www.irs.gov      Form **4549-A** (Rev. 3-2013)

Form **4549-A**
(Rev. March 2013)

Department of the Treasury-Internal Revenue Service

## Income Tax Examination Changes
### (Unagreed and Excepted Agreed)

Page ___2___ of ___2___

| Name of Taxpayer LAURA H KIM | Taxpayer Identification Number ▉-8486 | Return Form No.: 1040 |
|---|---|---|

| 17. Penalties/Code Sections | Period End 12/31/2010 | Period End 12/31/2011 | Period End 12/31/2013 |
|---|---|---|---|
| a. | | | |
| b. | | | |
| c. | | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| h. | | | |
| i. | | | |
| j. | | | |
| k. | | | |
| l. | | | |
| m. | | | |
| n. | | | |
| **18. Total Penalties** | | | |
| Underpayment attributable to negligence: *(1981-1987)* *A tax addition of 50 percent of the interest due on the underpayment will accrue until it is paid or assessed.* | | | |
| Underpayment attributable to fraud: *(1981-1987)* *A tax addition of 50 percent of the interest due on the underpayment will accrue until it is paid or assessed.* | | | |
| Underpayment attributable to Tax Motivated Transactions *(TMT).* Interest will accrue and be assessed at 120% of underpayment rate in accordance with IRC 6621(c). | 0.00 | 0.00 | 0.00 |
| **19. Summary of Taxes, Penalties and Interest:** | | | |
| a. Balance due or *(Overpayment)* Taxes - *(Line 16, Page 1)* | 138,878.00 | 130,697.00 | 68,717.00 |
| b. Penalties *(Line 18)* - computed to 06/12/2018 | | | |
| c. Interest *(IRC§ 6601)* - computed to 07/12/2018 | 38,990.20 | 30,991.11 | 13,786.75 |
| d. TMT Interest - computed to 07/12/2018 *(on TMT underpayment)* | 0.00 | 0.00 | 0.00 |
| e. Amount due or refund - *(sum of Lines a, b, c and d)* | 177,868.20 | 161,688.11 | 82,503.75 |

Other Information:

For tax period(s) 201012, 201112, the tax liability shown in this report may be subject to IRC section 6404(g). Interest on the amount due will not be charged during the suspension period applicable to your tax liability. When your tax bill is issued, it will reflect the reduced amount of interest based on IRC section 6404(9), if such suspension period has resulted.

| Examiner's Signature: Name | Employee ID: | Office: | Date: |
|---|---|---|---|
| Ella Chernyak | ▉4322 | | 06/12/2018 |

The Internal Revenue Service has agreements with state tax agencies under which information about federal tax, including increases or decreases, is exchanged with the states. If this change affects the amount of your state income tax, you should amend your state return by filing the necessary forms.

You may be subject to backup withholding if you underreport your interest, dividend, or patronage dividend income you earned and do not pay the required tax. The IRS may order backup withholding *(withholding of a percentage of your dividend and/or interest payments)* if the tax remains unpaid after it has been assessed and four notices have been issued to you over a 120-day period.

USA - 010157

| Form **4549-A**<br>(Rev. March 2013) | Department of the Treasury-Internal Revenue Service<br>**Income Tax Examination Changes**<br>(Unagreed and Excepted Agreed) | | Page __1__ of __2__ |
|---|---|---|---|
| **Name and Address of Taxpayer**<br><br>LAURA H KIM<br><br>LOS ANGELES    CA | **Taxpayer Identification Number**<br>＿＿＿＿-8486 | | **Return Form No.:**<br>1040 |
| | Person with whom<br>examination<br>changes were<br>discussed | **Name and Title:**<br>LAURA H KIM | |

| 1. Adjustments to Income | **Period End**<br>12/31/2010 | **Period End**<br>12/31/2011 | **Period End**<br>12/31/2012 |
|---|---|---|---|
| a. Sch E2 - Rents Received | 9,690.30 | 20,763.74 | 3,337.53 |
| b. Qualified Dividends | 1,281.82 | 15,260.21 | 10.500.57 |
| c. Taxable Interest | 267,721.15 | 72,927.94 | 5,190.70 |
| d. NOL Carryforward | 546,719.00 | 582,635.00 | |
| e. Wages, Salaries and Tips, etc. | 699,489.78 | 172,078.59 | 161,411.91 |
| f. Qualified dividends | 148,383.50 | 271,604.75 | 120,431.00 |
| g. State Refunds, Credits, or Offsets | | 3,060.00 | 465.00 |
| h. | | | |
| i. | | | |
| j. | | | |
| k. | | | |
| l. | | | |
| m. | | | |
| n. | | | |
| o. | | | |
| p. | | | |
| 2. **Total Adjustments** | 1,673,285.55 | 1,138,330.23 | 301,336.71 |
| 3. Taxable Income Per Return or as Previously Adjusted | (600,246.00) | (534,608.00) | 311,285.00 |
| 4. **Corrected Taxable Income** | 1,073,040.00 | 603,722.00 | 612,622.00 |
|     Tax Method | SCHEDULE D | SCHEDULE D | SCHEDULE D |
|     Filing Status | Single | Single | Single |
| 5. **Tax** | 323,532.00 | 135,237.00 | 164,170.00 |
| 6. **Additional Taxes / Alternative Minimum** | 112,151.00 | 74,365.00 | 86,443.00 |
| 7. Corrected Tax Liability | 435,683.00 | 209,602.00 | 250,613.00 |
| 8. **Less** a. Foreign Tax Credit | 297,205.00 | 74,426.00 | 164,170.00 |
|     **Credits** b. Credit for Elderly | | 750.00 | |
|     c. | | | |
|     d. | | | |
| 9. **Balance** (Line 7 less total of Lines 8a thru 8d) | 138,478.00 | 134,426.00 | 86,443.00 |
| 10. **Plus** a. | | | |
|     **Other** b. | | | |
|     **Taxes** c. | | | |
|     d. | | | |
| 11. Total Corrected Tax Liability (Line 9 plus Lines 10a thru 10d) | 138,478.00 | 134,426.00 | 86,443.00 |
| 12. Total Tax Shown on Return or as Previously Adjusted | 0.00 | 3,729.00 | 17,726.00 |
| 13. Adjustments to: a. See Attached | (400.00) | | |
|     b. | | | |
|     c. | | | |
| 14. Deficiency-Increase in Tax or (Overassessment - Decrease in Tax)<br>(Line 11 less Line 12 adjusted by Lines 13a through 13c) | 138,878.00 | 130,697.00 | 68,717.00 |
| 15. Adjustments to Prepayment CreditsIncrease (Decrease) | | | |
| 16. Balance Due or (Overpayment) - (Line 14 adjusted by Line 15)<br>(Excluding interest and penalties) | 138,878.00 | 130,697.00 | 68,717.00 |

USAL 010158

Catalog Number 23110T                    www.irs.gov                    Form **4549-A** (Rev. 3-2013)

| Form **4549-A**<br>(Rev. March 2013) | Department of the Treasury-Internal Revenue Service<br>**Income Tax Examination Changes**<br>**(Unagreed and Excepted Agreed)** | | Page _2_ of _2_ | |
|---|---|---|---|---|
| Name of Taxpayer<br>LAURA H KIM | | Taxpayer Identification Number<br>█████-8486 | | Return Form No.:<br>1040 |

| 17. Penalties/ Code Sections | Period End<br>12/31/2010 | Period End<br>12/31/2011 | Period End<br>12/31/2012 |
|---|---|---|---|
| a. | | | |
| b. | | ´ | |
| c. | | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| h. | | | |
| i. | | | |
| j. | | | |
| k. | | | |
| l. | | | |
| m. | | | |
| n. | | | |
| **18. Total Penalties** | | | |
| Underpayment attributable to negligence: *(1981-1987)*<br>A tax addition of 50 percent of the interest due on the<br>underpayment will accrue until it is paid or assessed. | | | |
| Underpayment attributable to fraud: *(1981-1987)*<br>A tax addition of 50 percent of the interest due on the<br>underpayment will accrue until it is paid or assessed. | | | |
| Underpayment attributable to Tax Motivated Transactions *(TMT)*.<br>Interest will accrue and be assessed at 120% of underpayment<br>rate in accordance with IRC 6621(c). | 0.00 | 0.00 | 0.00 |
| **19. Summary of Taxes, Penalties and Interest:** | | | |
| a. Balance due or *(Overpayment)* Taxes - *(Line 16, Page 1)* | 138,878.00 | 130,697.00 | 68,717.00 |
| b. Penalties *(Line 18)* - computed to 06/12/2018 | | | |
| c. Interest *(IRC§ 6601)* - computed to 07/12/2018 | 38,990.20 | 30,991.11 | 13,786.75 |
| d. TMT Interest - computed to 07/12/2018 *(on TMT underpayment)* | 0.00 | 0.00 | 0.00 |
| e. Amount due or refund - *(sum of Lines a, b, c and d)* | 177,868.20 | 161,688.11 | 82,503.75 |

**Other Information:**

For tax period(s) 201012, 201112, the tax liability shown in this report may be subject to IRC section 6404(g). Interest on the amount due will not be charged during the suspension period applicable to your tax liability. When your tax bill is issued, it will reflect the reduced amount of interest based on IRC section 6404(g), if such suspension period has resulted.

| Examiner's Signature:<br>Name | Employee ID: | Office: | Date: |
|---|---|---|---|
| Ella Chernyak | █████4322 | | 06/12/2018 |

The Internal Revenue Service has agreements with state tax agencies under which information about federal tax, including increases or decreases, is exchanged with the states. If this change affects the amount of your state income tax, you should amend your state return by filing the necessary forms.

You may be subject to backup withholding if you underreport your interest, dividend, or patronage dividend income you earned and do not pay the required tax. The IRS may order backup withholding *(withholding of a percentage of your dividend and/or interest payments)* if the tax remains unpaid after it has been assessed and four notices have been issued to you over a 120-day period.

USA - 010159

| Form **4549-A** (Rev. March 2013) | Department of the Treasury-Internal Revenue Service **Income Tax Examination Changes** (Unagreed and Excepted Agreed) | | Page 1 of 2 |
|---|---|---|---|

| Name and Address of Taxpayer | Taxpayer Identification Number | Return Form No.: |
|---|---|---|
| LAURA H KIM<br><br>LOS ANGELES CA | -8486 | 1040 |

| | Person with whom examination changes were discussed. | Name and Title:<br>LAURAH KIM |
|---|---|---|

| 1. Adjustments to Income | Period End 12/31/2010 | Period End 12/31/2011 | Period End 12/31/2012 |
|---|---|---|---|
| a. Sch E2 - Rents Received | 9,690.30 | 20,763.74 | 3,337.53 |
| b. Qualified Dividends | 1,281.82 | 15,260.21 | 10,500.57 |
| c. Taxable Interest | 267,721.15 | 72,927.94 | 5,190.70 |
| d. Other Income | 783,153.07 | 78,451.95 | |
| e. NOL Carryforward | 546,719.00 | 582,635.00 | |
| f. Sch E-Inc/Loss-Prtnrship/S Corps-Passve/Non-Passve | 272,780.80 | 31,561.00 | 220,487.70 |
| g. Wages, Salaries and Tips, etc. | 699,489.78 | 172,078.59 | 161,411.91 |
| h. Qualified dividends | 148,383.50 | 271,604.75 | 120,431.00 |
| i. State Refunds, Credits, or Offsets | | 3,060.00 | 465.00 |
| j. | | | |
| k. | | | |
| l. | | | |
| m. | | | |
| n. | | | |
| o. | | | |
| p. | | | |
| 2. Total Adjustments | 2,729,218.42 | 1,248,743.18 | 521,824.41 |
| 3. Taxable Income Per Return or as Previously Adjusted | (600,246.00) | (534,608.00) | 311,285.00 |
| 4. Corrected Taxable Income | 2,128,972.00 | 714,135.00 | 833,109.00 |
|     Tax Method | SCHEDULE D | SCHEDULE D | SCHEDULE D |
|     Filing Status | Single | Single | Single |
| 5. Tax | 693,108.00 | 172,941.00 | 241,340.00 |
| 6. Additional Taxes / Alternative Minimum | 38,236.00 | 67,576.00 | 79,769.00 |
| 7. Corrected Tax Liability | 731,344.00 | 240,517.00 | 321,109.00 |
| 8. Less    a. Foreign Tax Credit | 297,205.00 | 74,426.00 | 172,929.00 |
|    Credits   b. Credit for Elderly | | 750.00 | |
|            c. | | | |
|            d. | | | |
| 9. Balance (Line 7 less total of Lines 8a thru 8d) | 434,139.00 | 165,341.00 | 148,180.00 |
| 10. Plus    a. | | | |
|    Other    b. | | | |
|    Taxes    c. | | | |
|           d. | | | |
| 11. Total Corrected Tax Liability (Line 9 plus Lines 10a thru 10d) | 434,139.00 | 165,341.00 | 148,180.00 |
| 12. Total Tax Shown on Return or as Previously Adjusted | 138,478.00 | 134,426.00 | 86,443.00 |
| 13. Adjustments to: a. | | | |
|                b. | | | |
|                c. | | | |
| 14. Deficiency-Increase in Tax or (Overassessment- Decrease in Tax) (Line 11 less Line 12 adjusted by Lines 13a through 13c) | 295,661.00 | 30,915.00 | 61,737.00 |
| 15. Adjustments to Prepayment Credits-Increase (Decrease) | | | |
| 16. Balance Due or (Overpayment) - (Line 14 adjusted by Line 15) (Excluding interest and penalties) | 295,661.00 | 30,915.00 | 61,737.00 |

USA - 010160

| Catalog Number 23110T | www.irs.gov | Form **4549-A** (Rev. 3-2013) |
|---|---|---|

| Form **4549-A** | Department of the Treasury-Internal Revenue Service | | | |
|---|---|---|---|---|
| (Rev. March 2013) | **Income Tax Examination Changes** (Unagreed and Excepted Agreed) | | Page __2__ of __2__ | |

| Name of Taxpayer LAURA H KIM | Taxpayer Identification Number ____-8486 | Return Form No.: 1040 |
|---|---|---|

| 17. Penalties/ Code Sections | Period End 12/31/2010 | Period End 12/31/2011 | Period End 12/31/2012 |
|---|---|---|---|
| a. Fraud-IRC 6663 | 325,904.25 | 121,209.00 | 97,840.50 |
| b. Delq-IRC 6651(a)(1) | | | 34,972.00 |
| c. | | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| h. | | | |
| i. | | | |
| j. | | | |
| k. | | | |
| l. | | | |
| m. | | | |
| n. | | | |
| **18. Total Penalties** | 325,904.25 | 121,209.00 | 132,812.50 |
| Underpayment attributable to negligence: *(1981-1987)* A tax addition of 50 percent of the interest due on the underpayment will accrue until it is paid or assessed. | | | |
| Underpayment attributable to fraud: *(1981-1987)* A tax addition of 50 percent of the interest due on the underpayment will accrue until it is paid or assessed. | | | |
| Underpayment attributable to Tax Motivated Transactions *(TMT)*. Interest will accrue and be assessed at 120% of underpayment rate in accordance with IRC 6621(c). | 0.00 | 0.00 | 0.00 |
| **19. Summary of Taxes, Penalties and Interest:** | | | |
| a. Balance due or *(Overpayment)* Taxes - *(Line 16, Page 1)* | 295,661.00 | 30,915.00 | 61,737.00 |
| b. Penalties *(Line 18)* - computed to 06/12/2018 | 325,904.25 | 121,209.00 | 132,812.50 |
| c. Interest *(IRC § 6601)* - computed to 07/12/2018 | 166,386.42 | 33,839.52 | 36,652.25 |
| d. TMT Interest - computed to 07/12/2018 *(on TMT underpayment)* | 0.00 | 0.00 | 0.00 |
| e. Amount due or refund - *(sum of Lines a, b, c and d)* | 787,951.67 | 185,963.52 | 231,201.75 |

**Other Information:**

For tax period(s) 201012, 201112, the tax liability shown in this report may be subject to IRC section 6404(g). Interest on the amount due will not be charged during the suspension period applicable to your tax liability. When your tax bill is issued, it will reflect the reduced amount of interest based on IRC section 6404(g), if such suspension period has resulted.

| Examiner's Signature: Name | Employee ID: | Office: | Date: |
|---|---|---|---|
| Ella Chernyak | ____4322 | | 06/12/2018 |

The Internal Revenue Service has agreements with state tax agencies under which information about federal tax, including increases or decreases, is exchanged with the states. If this change affects the amount of your state income tax, you should amend your state return by filing the necessary forms.

You may be subject to backup withholding if you underreport your interest, dividend, or patronage dividend income you earned and do not pay the required tax. The IRS may order backup withholding *(withholding of a percentage of your dividend and/or interest payments)* if the tax remains unpaid after it has been assessed and four notices have been issued to you over a 120-day period.

USA - 010161

| Catalog Number 23110T | www.irs.gov | Form **4549-A** (Rev. 3-2013) |
|---|---|---|

Agreed

| Form 886-A (Rev. January 1994) | EXPLANATION OF ITEMS | Schedule number or exhibit |
|---|---|---|
| Name of Taxpayer  KIM, LAURA H | Tax Identification Number ▓8486 | Year/Period ended |

Adjustment(s) to Prepayment Credit(s) Subject to
Deficiency (Form 4549 series Line 13a or Form
5278 Line 20a):                                          2010

Make work pay/government retiree credit                  (400.00)

Total Adjustment Amount:                                 (400.00)

Adjustment(s) to Prepayment Credit(s) Not
Subject to Deficiency (Form 4549 series Line 15
or Form 5278 Line 22):                                   2010

Total Adjustment Amount:

Form 886-A (1-1994)          Department of the Treasury-Internal Revenue Service

USA - 010162

Total

| Form 886-A<br>(Rev. January 1994) | **EXPLANATION OF ITEMS** | Schedule number or exhibit |
|---|---|---|
| Name of Taxpayer<br>      KIM, LAURA H | Tax Identification Number<br>      ▮▮-8486 | Year/Period ended |

Adjustment(s) to Prepayment Credit(s) Subject to
Deficiency (Form 4549 series Line 13a or Form
5278 Line 20a):                                      2010

Total Adjustment Amount:

Adjustment(s) to Prepayment Credit(s) Not
Subject to Deficiency (Form 4549 series Line 15
or Form 5278 Line 22):                               2010

Total Adjustment Amount:

Form **886-A** (1-1994)                    Department of the Treasury-Internal Revenue Service

USA - 010163

| Name of Taxpayer: | LAURA H KIM | | 06/12/2018 |
|---|---|---|---|
| Identification Number: | ▮▮▮-8486 | Agreed | 19.00.00 |

### 2010 - Form 6251 - Alternative Minimum Tax Computation

| | |
|---|---|
| 1. If filing Schedule A, enter taxable income before exemptions; otherwise, enter adjusted gross income | 1,076,690.00 |
| 2. Total adjustment and preferences (excluding any NOL deduction) | 13,993.00 |
| 3. Net operating loss deduction | 546,719.00 |
| 4. Alternative tax net operating loss deduction | 0.00 |
| 5. Alternative minimum taxable income (combine lines 1 thru 4) | 1,637,402.00 |
| 6. Exemption amount | 0.00 |
| 7. Subtract line 6 from line 5 (if zero or less, enter zero) | 1,637,402.00 |
| 8. If capital gains are reported, see line 19 from continuation page (If FEIT worksheet for AMT is used, enter amount from line 6 of that worksheet instead) All others: If line 7 is $175,000 or less ($87,500 if MFS) multiply line 7 by 26%. Otherwise, multiply line 7 by 28% and subtract $3.500 ($1,750 if MFS) from the result | 435,683.00 |
| 9. Alternative minimum tax foreign tax credit | 297,205.00 |
| 10. Tentative minimum tax (line 8 less line 9) | 138,478.00 |
| 11. Regular tax before credits (if Schedule J was used to figure tax, use the refigured amounts for lines 44 and 47 of Form 1040 without using Schedule J) | 26,327.00 |
| 12. Alternative minimum tax | 112,151.00 |

### Exemption Worksheet (line 6 above)

| | |
|---|---|
| A. Exemption amount based on filing status | 47,450.00 |
| B. Alternative minimum taxable income | 1,637,402.00 |
| C. Enter $112,500 ($150,000 if married filing jointly or qualifying widow(er), $75,000 if married filing separately) | 112,500.00 |
| D. Subtract line C from line B | 1,524,902.00 |
| E. Multiply line D by 25% | 381,226.00 |
| F. Subtract line E from line A (if zero or less, enter zero) | 0.00 |

| | | | |
|---|---|---|---|
| Name of Taxpayer: | LAURA H KIM | | 06/12/2018 |
| Identification Number: | ▉▉▉-8486 | Agreed | 19.00.00 |

## 2010 - Form 6251 - Continuation, Tax Computation Using Maximum Capital Gain Rates

1. Amount from Form 6251 report, line 7      1,637,402.00
   (If FEIT worksheet for AMT was used, enter amount from line 3 of that worksheet instead)
2. Amount from line 6 Qualified Dividends and Capital Gain Tax Worksheet
   or line 13 Schedule D Tax Worksheet (refigured for AMT)      148,383.50
3. Amount from Schedule D line 19 (refigured for AMT)      0.00
4. Amount from line 2 if no Schedule D worksheet; otherwise, the smaller of
   the sum of line 2 and line 3 or Schedule D worksheet line 10 (refigured for AMT)      148,383.50
5. Smaller of line 1 or line 4      148,383.50
6. Subtract line 5 from line 1      1,489,018.50
7. If line 6 is $175,000 or less ($87,500 if MFS) multiply line 6 by 26%,
   otherwise, multiply line 6 by 28% and subtract $3,500 ($1,750 if MFS)
   from the result      413,425.00
8. Enter:
   $68,000 if married filing jointly or qualifying widow(er)
   $34,000 if single or married filing separately      34,000.00
   $45,550 if head of household
9. Amount from line 7 Qualified Dividends and Capital Gain Tax Worksheet
   or line 14 Schedule D Tax Worksheet      924,656.50
10. Subtract line 9 from line 8 (if zero or less, enter zero)      0.00
11. Smaller of line 1 or line 2      148,383.50
12. Smaller of line 10 or line 11      0.00
13. Subtract line 12 from line 11      148,383.50
14. Multiply line 13 by 15%      22,258.00
15. Subtract line 11 from line 5      0.00
16. Multiply line 15 by 25%      0.00
17. Total of lines 7, 14 and 16      435,683.00
18. If line 1 is $175,000 or less ($87,500 if MFS) multiply line 1 by 26%;
    otherwise, multiply line 1 by 28% and subtract $3,500 ($1,750 if MFS)
    from the result      454,973.00
19. Smaller of line 17 or line 18. Enter here and on line 8 of Form 6251 report      435,683.00

| Name of Taxpayer.  LAURA H KIM | | 05/12/2018 |
| Identification Number:  ▮▮-8486 | Agreed | 19 00.00 |

## 2010 - Form 8801 - Credit for Prior Year Minimum Tax

### Part I - Net Minimum Tax on Exclusion Items

| | |
|---|---:|
| 1. Taxable income (loss) from prior year Form 6251 | 0.00 |
| 2. Adjustments and preferences treated as exclusion items | 0.00 |
| 3. Minimum tax credit net operating loss deduction | 0.00 |
| 4. Combine lines 1 through 3 (if more than $216,900 and married filing separate for prior year - see instructions) | 0.00 |
| 5. Exemption amount from prior year Form 6251 | 46,700.00 |
| 6. Phase-out exemption from prior year Form 6251 | 112,500.00 |
| 7. Subtract line 6 from line 4 (if zero or less, enter -0-) | 0.00 |
| 8. Multiply line 7 by 25% | 0.00 |
| 9. Subtract line 8 from line 5 (if zero or less, enter -0-) | 0.00 |
| 10. Subtract line 9 from line 4 (if zero or less, enter -0-) | 0.00 |
| 11. Line 11 computation (if filing Form 2555/2555-EZ for prior year, enter amount from page 3) or, (if capital gains for prior year, enter amount from Part III, line 47); otherwise, multiply line 10 by 26% and subtract $  0  from the result) | 0.00 |
| 12. Minimum tax foreign tax credit on exclusion items | 0.00 |
| 13. Tentative minimum tax on exclusion items (line 11 less line 12) | 0.00 |
| 14. Regular tax before credits minus foreign tax credit (line 35 of prior year Form 6251) | 0.00 |
| 15. Net minimum tax on exclusion items (line 13 less line 14) | 0.00 |

### Part II - Current Year Nonrefundable and Refundable Credits and Carryover

| | |
|---|---:|
| 16. Line 36 of prior year Form 6251 | 0.00 |
| 17. Amount from line 15 above | 0.00 |
| 18. Adjusted net minimum tax (line 16 less line 17) | 0.00 |
| 19. Carryforward of minimum tax credit from prior year | 0.00 |
| 20. Prior year unallowed qualified electric vehicle credit | 0.00 |
| 21. Combine lines 18 through 20 | 0.00 |
| 22. Current year regular income tax less allowable credits | 0.00 |
| 23. Current year tentative minimum tax (line 33 of Form 6251) | 0.00 |
| 24. Subtract line 23 from line 22 (if zero or less, enter -0-) | 0.00 |
| 25. Current year nonrefundable credit (smaller of line 21 or line 24) | 0.00 |
| 26. Tentative refundable credit (amount from Part IV, line 53 or 57) (if applicable) | 0.00 |
| 27. Current year refundable credit (line 26 less line 25) | 0.00 |
| 28. Credit carryforward (subtract larger of line 25 or line 26 from line 21) | 0.00 |

USA - 010166

Name of Taxpayer:  LAURA H KIM                                                    06/12/2016
Identification Number: ███-8486          Agreed                                   19.00.00

## Part III - Tax Computation Using Maximum Capital Gains Rates

29. Amount from line 10
   (If FEIT worksheet for F8801 was used,
   enter amount from line 3 of that worksheet instead)                               0.00
30. Amount from prior year line 6 of Qualified Dividends Worksheet or
   line 13 of Schedule D Tax Worksheet                                               0.00
31. Amount from prior year Schedule D, line 19                                       0.00
32. Smaller of lines 30 and 31                                                       0.00
   or prior year line 10 of Schedule D Tax Worksheet
33. Smaller of line 29 or line 32                                                    0.00
34. Subtract line 33 from line 29                                                    0.00
35. Multiply line 34 by 26% and subtract $   0   from the result                     0.00
36. Enter:                                                                           0.00
   $67,900 if married filing jointly or qualifying widow(er) for 2009,
   $33,950 if single or married filing separately for 2009,
   $45,500 if head of household for 2009
37. Amount from prior year line 7 of Qualified Dividends Worksheet or
   line 14 of Schedule D Tax Worksheet                                               0.00
38. Subtract line 37 from line 36. If zero or less, enter -0-                        0.00
39. Smaller of line 29 or line 30                                                    0.00
40. Smaller of line 38 or line 39                                                    0.00
41. Subtract line 40 from line 39                                                    0.00
42. Multiply line 41 by 15%                                                          0.00
43. Subtract line 39 from line 33                                                    0.00
44. Multiply line 43 by 25%                                                          0.00
45. Add lines 35, 42, and 44                                                         0.00
46. Multiply line 29 by 26% and subtract $   0   from the result                     0.00
47. Smaller of line 45 or line 46 (enter here and on line 11 above)
   (If FEIT worksheet for F8601 was used,
   enter amount on line 4 of that worksheet instead)                                 0.00

## Part IV - Tentative Refundable Credit

48. Enter amount from line 21
49. Minimum tax credit amount
   from 2008 Form 8801, lines 18 and 20 (if zero or less, enter -0-)
50. Minimum tax credit amount
   from 2009 Form 8801, lines 18 and 20 (if zero or less, enter -0-)
51. Total of lines 18 and 20 above (if zero or less, enter -0-)
52. Add lines 49 thru 51
53. Long-term unused minimum tax credit (subtract line 52 from line 48)
   (if zero or less, stop and enter -0- here and on line 26 and
   do not complete the rest of Part IV).
54. Multiply line 53 by 50%
55. Prior year AMT refundable credit amount
56. Larger of line 54 or line 55
57. Smaller of line 53 or line 56. Enter result here and on line 26

USA - 010167

| Name of Taxpayer: | LAURA H KIM | | 06/12/2018 |
| Identification Number: | ▮8486 | Agreed | 19.00.00 |

## 2010 - FOREIGN EARNED INCOME TAX WORKSHEET for PRIOR YEAR MINIMUM TAX

1. Enter amount from Form 8801, line 10     0.00
2. Enter amount from 2009 Form 2555, line 45 and 50,
    or Form 2555-EZ, line 18     0.00
3. Add lines 1 and 2     0.00
4. Tax on amount on line 3
    If capital gains are reported for prior year,
    enter amount from line 3 on Form 8801, line 29.
    Complete Form 8801, Part III and enter amount from line 47 here
    All others: If line 3 is $175,000 or less
    ($87,500 or less if married filing separately for prior year),
    multiply line 3 by 26%;
    otherwise, multiply line 3 by 28% and subtract $3,500
    ($1,750 if married filing separately for prior year) from the result     0.00
5. Tax on amount on line 2
    If line 2 is $175,000 or less
    ($87,500 or less if married filing separately for prior year),
    multiply line 2 by 26%;
    otherwise, multiply line 2 by 28% and subtract $3,500
    ($1,750 if married filing separately for prior year) from the result     0.00
6. Subtract line 5 from line 4. If zero or less, enter -0-
    (enter amount here and on line 11 of page 1)     0.00

NOTE: Computations include capital gain excess determination and any necessary modifications to Form 8801, Part III

USA - 010168

Name of Taxpayer: **LAURA H KIM**                                                    06/12/2018

Identification Number: ▮▮▮▮8486        Agreed                                    19.00.00

## 2010 - Qualified Dividends and Capital Gain Tax Worksheet

1. Enter the amount from Form 1040, line 43 or
   FEIT worksheet, line 3, if applicable ............................. 1.    1,073,040.00
2. Enter the amount from Form 1040, line 9b ............ 2.       148,383.50
3. Are you filing Schedule D?

   ☐ **Yes.** Enter the smaller of line 15 or 16 of
       Schedule D, but do not enter less than
       -0-                  3.      0.00

   ☑ **No.** Enter the amount from Form 1040, line 13
4. Add lines 2 and 3 .......................... 4.       148,383.50
5. If filing Form 4952, enter any amount from line 4g
   of that form .................................. 5.       0.00
6. Subtract line 5 from line 4. If zero or less, enter -0- ................... 6.       148,383.50
7. Subtract line 6 from line 1. If zero or less, enter -0- ................... 7.       924,656.50
8. Enter:
   $34,000 if single or married filing separately,           ......... 8.       34,000.00
   $68,000 if married filing jointly or qualifying widow(er),
   $45,550 if head of household.
9. Enter the smaller of line 1 or line 8 .............................. 9.       34,000.00
10. Enter the smaller of line 7 or line 9 ............................ 10.       34,000.00
11. Subtract line 10 from line 9. This amount is taxed at 0% ............... 11.       0.00
12. Enter the smaller of line 1 or line 6 .............................. 12.       148,383.50
13. Enter the amount from line 11 .................................... 13.       0.00
14. Subtract line 13 from line 12 .................................... 14.       148,383.50
15. Multiply line 14 by 15% (.15) ..................................... 15.       22,258.00
16. Figure the tax on the amount on line 7. If the amount on line 7 is less than $100,000, use
    the Tax Table to figure this tax. If the amount on line 7 is $100,000 or more, use the
    Tax Computation Worksheet ...................................... 16.       301,274.00
17. Add lines 15 and 16 ............................................ 17.       323,532.00
18. Figure the tax on the amount on line 1. If the amount on line 1 is less than $100,000, use
    the Tax Table to figure this tax. If the amount on line 1 is $100,000 or more, use the
    Tax Computation Worksheet ...................................... 18.       353,208.00
19. Tax on all taxable income. Enter the smaller of line 17 or line 18. Also include this amount on
    Form 1040, line 44 or FEIT worksheet, line 4, if applicable ................. 19.       323,532.00

USA - 010169

| Name of Taxpayer: | LAURA H KIM | | Page        of |
|---|---|---|---|
| Identification Number: | ▮-8486 | Agreed | Tax Period Ending: 12/31/2010 |

## Civil Fraud Penalty under IRC 6663(a)

**Civil Fraud Penalty - Internal Revenue Code Section 6663(a)**

It has been determined that the underpayment of tax shown on line 5 below is attributable to fraud.
Therefore, an addition to tax is imposed as provided by Section 6663(a) of the Internal Revenue Code.

| | |
|---|---|
| 1. Total underpayment, excluding underpayment attributable to Section 6662A penalty issues, if any | 0.00 |
| 2. Less: Underpayment attributable to non-penalty issues | 0.00 |
| 3. Less: Underpayment attributable to 20% Section 6662 penalty issues | 0.00 |
| 4. Less: Underpayment attributable to 40% Section 6662 penalty issues | 0.00 |
| 5. Underpayment to which Section 6663(a) applies (Line 1 less the sum of lines 2, 3, and 4) | 0.00 |
| 6. Applicable penalty rate | 75.00% |
| 7. Section 6663(a) civil fraud penalty (Line 5 times line 6) | 0.00 |
| 8. Less: Previously assessed/previously agreed Section 6663(a) penalty | 0.00 |
| 9. Total section 6663(a) civil fraud penalty (Line 7 less line 8) | 0.00 |

| Name of Taxpayer: | LAURA H KIM | | 06/12/2018 |
|---|---|---|---|
| Identification Number: | ▮▮▮-8486 | Agreed | 19.00.00 |

## HOW TO PAY YOUR TAXES

If you agree with our examination, pay now by sending a check or money order payable to United States Treasury and your signed agreement. The enclosed report does not reflect any balance currently due on your account.

Why it is to your advantage to pay now:

- Decreases future interest charges
- Prevents assessment of failure to pay penalty
- Reduces payment of nondeductible interest
- Eliminates further contact with us

If you agree with our examination and cannot pay now:

1) Can you pay the full amount within 120 days?   [ ] Yes   [ ] No
   - If yes, send in the signed agreement now and submit the balance due when you receive a bill. Checks should be made payable to United States Treasury.
   - If no, you may be eligible for a payment plan.

2) If you would like us to consider an installment agreement, submit your written request or check the box below and return this flyer with your signed agreement.

   [ ] I would like to pay $ _____ per month.

   (We encourage you to make your payments as large as possible to limit penalty and interest charges.)

   I would like my payment to be due on the _____ of the month.

   (Please indicate a date between the 1st and 28th of the month.)

   You will be charged a fee if your request is approved. DO NOT include the fee with this flyer. We will send you a bill for the fee when we approve your request.

   Please provide a telephone number where we can contact you regarding your request.

   Home: ( ) _____

   Work: ( ) _____

ALSO, if you agree with our examination, PLEASE SIGN PAGE 2 OF THE REPORT (Form 4549) and return pages 1 and 2 to us.

* Interest and applicable penalties will continue to accrue until your balance is paid in full.
* All checks or money orders for payment should be made payable to United States Treasury.

USA - 010171

| Name Of Taxpayer:   LAURA H KIM | | 06/12/2018 |
|---|---|---|
| Identification Number:  ■■■-8486 | Agreed | 1900.00 |

## 2010 TAX YEAR INTEREST COMPUTATION

| | | |
|---|---|---|
| Interest computed to | | 07/12/2018 |
| Total Tax Deficiency | | $138,878.00 |

Plus Penalties*

| | |
|---|---|
| Failure to File - IRC 6651 | $.00 |
| Accuracy Related Penalty - IRC 6662 | $.00 |
| Accuracy Related Penalty - IRC 6662A | $.00 |
| Civil Fraud - IRC 6663 | $.00 |
| Manually Computed Penalty | $.00 |

| | | |
|---|---|---|
| Total Penalties Subject to Interest | | $.00 |
| Tax Deficiency and Penalties Subject to Interest | | $138,878.00 |

| Type | Effective Dates | Days | Rate | Interest |
|---|---|---|---|---|
| Compound | 04/15/2011--09/30/2011 | 168 | 4% | $2,580.42 |
| Compound | 10/01/2011--12/31/2011 | 92 | 3% | $1,073.67 |
| Compound | 01/01/2012--12/31/2012 | 366 | 3% | $4,340.57 |
| Compound | 01/01/2013--12/31/2013 | 365 | 3% | $4,472.75 |
| Compound | 01/01/2014--12/31/2014 | 365 | 3% | $4,608.96 |
| Compound | 01/01/2015--12/31/2015 | 365 | 3% | $4,749.32 |
| Compound | 01/01/2016--03/31/2016 | 91 | 3% | $1,203.12 |
| Compound | 04/01/2016--12/31/2016 | 275 | 4% | $4,939.64 |
| Compound | 01/01/2017--12/31/2017 | 365 | 4% | $6,808.75 |
| Compound | 01/01/2018--03/31/2018 | 90 | 4% | $1,721.14 |
| Compound | 04/01/2018--07/12/2018 | 103 | 5% | $2,491.86 |

| | |
|---|---|
| Total Interest | $38,990.20 |

Interest on penalties is computed from the due date of the return (including extensions) until the date of payment.  The interest shown on this report is estimated.  Interest is computed from the due date of the return (including extensions) and will continue to accrue until the date paid in full.  Interest on the failure to pay penalty is computed from the date of assessment and is therefore not considered in this report.

USA - 010172

Name of Taxpayer: LAURA H KIM                                           06/12/2018
Identification Number: [REDACTED]-8486          Agreed                  19.00.00

## 2010 - MAKING WORK PAY CREDIT

| | |
|---|---|
| 1a. Earned income amount (*see below) | 754,489.78 |
| 1b. Nontaxable combat pay included in line 1a | 0.00 |
| 2. Multiply line 1a by .062 | 46,778.00 |
| 3. Enter $400 ($800 if married filing jointly) | 400.00 |
| 4. Smaller of line 2 or line 3 | 400.00 |
| 5. Adjusted gross income | 1,090,683.00 |
| 6. Enter $75,000 ($150,000 if married filing jointly) | 75,000.00 |
| 7. Subtract line 6 from line 5 (if zero or less, skip line 8 and enter amount from line 4 on line 9) | 1,015,683.00 |
| 8. Multiply line 7 by .02 | 20,314.00 |
| 9. Subtract line 8 from line 4 (if zero or less, enter -0-) | 0.00 |
| 10. Economic recovery payment amount received for current year | 0.00 |
| 11. Making work pay credit. Subtract line 10 from line 9 (if zero or less, enter -0-) | 0.00 |

\* Enter earned income amount on line 1a if any of the following conditions apply:

   Net loss from business;

   Taxable scholarship or fellowship grant not reported on Form W-2;

   Wages include pay for work performed while an inmate in a penal institution;

   Received pension or annuity from a nonqualified deferred compensation plan or nongovernmental section 457 plan;

   Filing Form 2555 or 2555-EZ.

If current year wages are more than minimum amount, skip lines 1a through 3 and enter $400

   ($800 if married filing jointly) on line 4 and go to line 5; otherwise, enter earned income amount on line 1a

USA - 010173

| Name of Taxpayer: | LAURA H KIM | | 06/12/2018 |
| Identification Number: | ██-8486 | Total | 19.00.00 |

## 2010 - Form 6251 - Alternative Minimum Tax Computation

| | | |
|---|---|---:|
| 1. | If filing Schedule A, enter taxable income before exemptions; otherwise, enter adjusted gross Income | 2,132,622.00 |
| 2. | Total adjustment and preferences (excluding any NOL deduction) | 13,993.00 |
| 3. | Net operating loss deduction | 546,719.00 |
| 4. | Alternative tax net operating loss deduction | 0.00 |
| 5. | Alternative minimum taxable income (combine lines 1 thru 4) | 2,693,334.00 |
| 6. | Exemption amount | 0.00 |
| 7. | Subtract line 6 from line 5 (if zero or less, enter zero) | 2,693,334.00 |
| 8. | If capital gains are reported, see line 19 from continuation page (If FEIT worksheet for AMT is used, enter amount from line 6 of that worksheet instead) All others: If line 7 is $175,000 or less ($87,500 if MFS) multiply line 7 by 26%. Otherwise, multiply line 7 by 28% and subtract $3,500 ($1,750 if MFS) from the result | 731,344.00 |
| 9. | Alternative minimum tax foreign tax credit | 297,205.00 |
| 10. | Tentative minimum tax (line 8 less line 9) | 434,139.00 |
| 11. | Regular tax before credits (if Schedule J was used to figure tax, use the refigured amounts for lines 44 and 47 of Form 1040 without using Schedule J) | 395,903.00 |
| 12. | Alternative minimum tax | 38,236.00 |

### Exemption Worksheet (line 6 above)

| | | |
|---|---|---:|
| A. | Exemption amount based on filing status | 47,450.00 |
| B. | Alternative minimum taxable income | 2,693,334.00 |
| C. | Enter $112,500 ($150,000 if married filing jointly or qualifying widow(er), $75,000 if married filing separately) | 112,500.00 |
| D. | Subtract line C from line B | 2,580,834.00 |
| E. | Multiply line D by 25% | 645,209.00 |
| F. | Subtract line E from line A (if zero or less, enter zero) | 0.00 |

USA - 010174

| Name of Taxpayer: | LAURA H KIM | | 06/12/2018 |
| Identification Number: | ███-8486 | Total | 19.00.00 |

## 2010 - Form 6251 - Continuation, Tax Computation Using Maximum Capital Gain Rates

| | | |
|---|---|---|
| 1. Amount from Form 6251 report, line 7 | | 2,693,334.00 |
| (If FEIT worksheet for AMT was used, enter amount from line 3 of that worksheet instead) | | |
| 2. Amount from line 6 Qualified Dividends and Capital Gain Tax Worksheet | | |
| or line 13 Schedule D Tax Worksheet (refigured for AMT) | | 148,383.50 |
| 3. Amount from Schedule D line 19 (refigured for AMT) | | 0.00 |
| 4. Amount from line 2 if no Schedule D worksheet; otherwise, the smaller of | | |
| the sum of line 2 and line 3 or Schedule D worksheet line 10 (refigured for AMT) | | 148,383.50 |
| 5. Smaller of line 1 or line 4 | | 148,383.50 |
| 6. Subtract line 5 from line 1 | | 2,544,950.50 |
| 7. If line 6 is $175,000 or less ($87,500 if MFS) multiply line 6 by 26%; | | |
| otherwise, multiply line 6 by 28% and subtract $3,500 ($1,750 if MFS) | | |
| from the result | | 709,086.00 |
| 8. Enter: | | |
| $68,000 if married filing jointly or qualifying widow(er) | | |
| $34,000 if single or married filing separately | | 34,000.00 |
| $45,550 if head of household | | |
| 9. Amount from line 7 Qualified Dividends and Capital Gain Tax Worksheet | | |
| or line 14 Schedule D Tax Worksheet | | 1,980,588.50 |
| 10. Subtract line 9 from line 8 (if zero or less, enter zero) | | 0.00 |
| 11. Smaller of line 1 or line 2 | | 148,383.50 |
| 12. Smaller of line 10 or line 11 | | 0.00 |
| 13. Subtract line 12 from line 11 | | 148,383.50 |
| 14. Multiply line 13 by 15% | | 22,258.00 |
| 15. Subtract line 11 from line 5 | | 0.00 |
| 16. Multiply line 15 by 25% | | 0.00 |
| 17. Total of lines 7, 14 and 16 | | 731,344.00 |
| 18. If line 1 is $175,000 or less ($87,500 if MFS) multiply line 1 by 26%; | | |
| otherwise, multiply line 1 by 28% and subtract $3,500 ($1,750 if MFS) | | |
| from the result | | 750,634.00 |
| 19. Smaller of line 17 or line 18. Enter here and on line 8 of Form 6251 report | | 731,344.00 |

USA - 010175

| | | |
|---|---|---|
| Name of Taxpayer: LAURA H KIM | | 06/12/2018 |
| Identification Number: ▮▮▮-8486 | Total | 19.00.00 |

## 2010 - Form 8801 - Credit for Prior Year Minimum Tax

### Part I - Net Minimum Tax on Exclusion Items

| | |
|---|---|
| 1. Taxable income (loss) from prior year Form 6251 | 0.00 |
| 2. Adjustments and preferences treated as exclusion items | 0.00 |
| 3. Minimum tax credit net operating loss deduction | 0.00 |
| 4. Combine lines 1 through 3 (if more than $216,900 and | |
| married filing separate for prior year - see instructions) | 0.00 |
| 5. Exemption amount from prior year Form 6251 | 46,700.00 |
| 6. Phase-out exemption from prior year Form 6251 | 112,500.00 |
| 7. Subtract line 6 from line 4 (if zero or less, enter -0-) | 0.00 |
| 8. Multiply line 7 by 25% | 0.00 |
| 9. Subtract line 8 from line 5 (if zero or less, enter -0-) | 0.00 |
| 10. Subtract line 9 from line 4 (if zero or less, enter -0-) | 0.00 |
| 11. Line 11 computation | |
| (if filing Form 2555/2555-EZ for prior year, enter amount from page 3) or, | |
| (if capital gains for prior year, enter amount from Part III, line 47); | |
| otherwise, multiply line 10 by 26% and subtract $ 0 from the result) | 0.00 |
| 12. Minimum tax foreign tax credit on exclusion items | 0.00 |
| 13. Tentative minimum tax on exclusion items | |
| (line 11 less line 12) | 0.00 |
| 14. Regular tax before credits minus foreign tax credit | |
| (line 35 of prior year Form 6251) | 0.00 |
| 15. Net minimum tax on exclusion items (line 13 less line 14) | 0.00 |

### Part II - Current Year Nonrefundable and Refundable Credits and Carryover

| | |
|---|---|
| 16. Line 36 of prior year Form 6251 | 0.00 |
| 17. Amount from line 15 above | 0.00 |
| 18. Adjusted net minimum tax (line 16 less line 17) | 0.00 |
| 19. Carryforward of minimum tax credit from prior year | 0.00 |
| 20. Prior year unallowed qualified electric vehicle credit | 0.00 |
| 21. Combine lines 18 through 20 | 0.00 |
| 22. Current year regular income tax less allowable credits | 0.00 |
| 23. Current year tentative minimum tax (line 33 of Form 6251) | 0.00 |
| 24. Subtract line 23 from line 22 (if zero or less, enter -0-.) | 0.00 |
| 25. Current year nonrefundable credit (smaller of line 21 or line 24) | 0.00 |
| 26. Tentative refundable credit (amount from Part IV, line 53 or 57) *(if applicable)* | 0.00 |
| 27. Current year refundable credit (line 26 less line 25) | 0.00 |
| 28. Credit carryforward (subtract larger of line 25 or line 26 from line 21) | 0.00 |

USA - 010176

Name of Taxpayer:  LAURA H KIM                                                    06/12/2018
Identification Number: ____-8486          Total                                    19,00.00

## Part III - Tax Computation Using Maximum Capital Gains Rates

29. Amount from line 10
    (If FEIT worksheet for F8801 was used,
    enter amount from line 3 of that worksheet instead)                           0.00
30. Amount from prior year line 6 of Qualified Dividends Worksheet or
    line 13 of Schedule D Tax Worksheet                                           0.00
31. Amount from prior year Schedule D, line 19                                    0.00
32. Smaller of lines 30 and 31                                                    0.00
    or prior year line 10 of Schedule D Tax Worksheet
33. Smaller of line 29 or line 32                                                 0,00
34. Subtract line 33 from line 29                                                 0.00
35. Multiply line 34 by 26% and subtract $    0    from the result                0.00
36. Enter:                                                                        0.00
    $67,900 if married filing jointly or qualifying widow(er) for 2009,
    $33,950 if single or married filing separately for 2009,
    $45,500 if head of household for 2009
37. Amount from prior year line 7 of Qualified Dividends Worksheet or
    line 14 of Schedule D Tax Worksheet                                           0.00
38. Subtract line 37 from line 36. If zero or less, enter -0-                     0.00
39. Smaller of line 29 or line 30                                                 0.00
40. Smaller of line 38 or line 39                                                 0.00
41. Subtract line 40 from line 39                                                 0.00
42. Multiply line 41 by 15%                                                       0.00
43. Subtract line 39 from line 33                                                 0.00
44. Multiply line 43 by 25%                                                       0.00
45. Add lines 35, 42, and 44                                                      0.00
46. Multiply line 29 by 26% and subtract $    0    from the result               0.00
47. Smaller of line 45 or line 46 (enter here and on line 11 above)
    (If FEIT worksheet for F8801 was used,
    enter amount on line 4 of that worksheet instead)                             0.00

## Part IV - Tentative Refundable Credit

48. Enter amount from line 21
49. Minimum tax credit amount
    from 2008 Form 8801, lines 18 and 20 (if zero or less, enter -0-)
50. Minimum tax credit amount
    from 2009 Form 8801, lines 18 and 20 (if zero or less, enter -0-)
51. Total of lines 18 and 20 above (if zero or less, enter -0-)
52. Add lines 49 thru 51
53. Long-term unused minimum tax credit (subtract line 52 from line 48)
    (if zero or less, stop and enter -0- here and on line 26 and
    do not complete the rest of Part IV),
54. Multiply line 53 by 50%
55. Prior year AMT refundable credit amount
56. Larger of line 54 or line 55
57. Smaller of line 53 or line 56. Enter result here and on line 26

USA - 010177

| Name of Taxpayer: | LAURA H KIM | | 06/12/2018 |
| Identification Number: | ■■■-8486 | Total | 19,00.00 |

## 2010 - FOREIGN EARNED INCOME TAX WORKSHEET for PRIOR YEAR MINIMUM TAX

1. Enter amount from Form 8801, line 10      0.00
2. Enter amount from 2009 Form 2555, line 45 and 50,
   or Form 2555-EZ, line 18      0.00
3. Add lines 1 and 2      0.00
4. Tax on amount on line 3
   If capital gains are reported for prior year,
   enter amount from line 3 on Form 8801, line 29,
   Complete Form 8801, Part III and enter amount from line 47 here
   All others: If line 3 is $175,000 or less
   ($87,500 or less if married filing separately for prior year),
   multiply line 3 by 26%;
   otherwise, multiply line 3 by 28% and subtract $3,500
   ($1,750 if married filing separately for prior year) from the result      0.00
5. Tax on amount on line 2
   If line 2 is $175,000 or less
   ($87,500 or less if married filing separately for prior year),
   multiply line 2 by 26%;
   otherwise, multiply line 2 by 28% and subtract $3,500
   ($1,750 if married filing separately for prior year) from the result      0.00
6. Subtract line 5 from line 4. If zero or less, enter -0-
   (enter amount here and on line 11 of page 1)      0.00

NOTE: Computations include capital gain excess determination and any necessary modifications to Form 8801, Part III

USA - 010178

| Name of Taxpayer: | LAURA H KIM | | 06/12/2018 |
|---|---|---|---|
| Identification Number: | ████-8486 | Total | 19.0000 |

## 2010 - Qualified Dividends and Capital Gain Tax Worksheet

| | | | |
|---|---|---|---|
| 1. Enter the amount from Form 1040, line 43 or FEIT worksheet, line 3, if applicable . . . . . . . . . . . . . . . . . . . . . . . 1. | | 2,128,972.00 | |
| 2. Enter the amount from Form 1040, line 9b . . . . . . . . . . . 2. | 148,383.50 | | |
| 3. Are you filing Schedule D? | | | |
| ☐ Yes. Enter the smaller of line 15 or 16 of Schedule D, but do not enter less than -0- ☑ No. Enter the amount from Form 1040, line 13 } 3. | 0.00 | | |
| 4. Add lines 2 and 3 . . . . . . . . . . . . . . . . . . . . . . . . . . 4. | 148,383.50 | | |
| 5. If filing Form 4952, enter any amount from line 4g of that form . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5. | 0.00 | | |
| 6. Subtract line 5 from line 4. If zero or less, enter -0- . . . . . . . . . . . . . . . . . . . 6. | | 148,383.50 | |
| 7. Subtract line 6 from line 1. If zero or less, enter -0- . . . . . . . . . . . . . . . . . . . 7. | | 1,980,588.50 | |
| 8. Enter: $34,000 if single or married filing separately, $68,000 if married filing jointly or qualifying widow(er), $45,550 if head of household. } . . . . . . . . . . 8. | | 34,000.00 | |
| 9. Enter the smaller of line 1 or line 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9. | | 34,000.00 | |
| 10. Enter the smaller of line 7 or line 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10. | | 34,000.00 | |
| 11. Subtract line 10 from line 9. This amount is taxed at 0% . . . . . . . . . . . . . . . . 11. | | 0.00 | |
| 12. Enter the smaller of line 1 or line 6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12. | | 148,383.50 | |
| 13. Enter the amount from line 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13. | | 0.00 | |
| 14. Subtract line 13 from line 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14. | | 148,383.50 | |
| 15. Multiply line 14 by 15% (.15) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15. | | | 22,258.00 |
| 16. Figure the tax on the amount on line 7. If the amount on line 7 is less than $100,000, use the Tax Table to figure this tax. If the amount on line 7 is $100,000 or more, use the Tax Computation Worksheet . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16. | | | 670,850.00 |
| 17. Add lines 15 and 16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17. | | | 693,108.00 |
| 18. Figure the tax on the amount on line 1. If the amount on line 1 is less than $100,000, use the Tax Table to figure this tax. If the amount on line 1 is $100,000 or more, use the Tax Computation Worksheet . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18. | | | 722,784.00 |
| 19. Tax on all taxable income. Enter the smaller of line 17 or line 18. Also include this amount on Form 1040, line 44 or FEIT worksheet, line 4, if applicable . . . . . . . . . . . . . . . . . . . . . . . . 19. | | | 693,108.00 |

USA - 010179

| Name of Taxpayer: | LAURA H KIM | | Page of |
| Identification Number: | ▮▮▮-8486 | Total | Tax Period Ending: 12/31/2010 |

## Civil Fraud Penalty under IRC 6663(a)

Civil Fraud Penalty - Internal Revenue Code Section 6663(a)

It has been determined that the underpayment of tax shown on line 5 below is attributable to fraud.
Therefore, an addition to tax is imposed as provided by Section 6663(a) of the Internal Revenue Code.

| | |
|---|---:|
| 1. Total underpayment, excluding underpayment attributable to Section 6662A penalty issues, if any | 434,539.00 |
| 2. Less: Underpayment attributable to non-penalty issues | 0.00 |
| 3. Less: Underpayment attributable to 20% Section 6662 penalty issues | 0.00 |
| 4. Less: Underpayment attributable to 40% Section 6662 penalty issues | 0.00 |
| 5. Underpayment to which Section 6663(a) applies (Line 1 less the sum of lines 2, 3, and 4) | 434,539.00 |
| 6. Applicable penalty rate | 75.00% |
| 7. Section 6663(a) civil fraud penalty (Line 5 times line 6) | 325,904.25 |
| 8. Less: Previously assessed/previously agreed Section 6663(a) penalty | 0.00 |
| 9. Total section 6663(a) civil fraud penalty (Line 7 less line 8) | 325,904.25 |

| Name of Taxpayer: | LAURA H KIM | | 06/12/2018 |
| Identification Number: | ███-8486 | Total | 19.00.00 |

## HOW TO PAY YOUR TAXES

If you agree with our examination, pay now by sending a check or money order payable to United States Treasury and your signed agreement. The enclosed report does not reflect any balance currently due on your account.

Why it is to your advantage to pay now:

- Decreases future interest charges
- Prevents assessment of failure to pay penalty
- Reduces payment of nondeductible interest
- Eliminates further contact with us

If you agree with our examination and cannot pay now:

1) Can you pay the full amount within 120 days?   [ ] Yes     [ ] No
   - If yes, send in the signed agreement now and submit the balance due when you receive a bill. Checks should be made payable to United States Treasury.
   - If no, you may be eligible for a payment plan.

2) If you would like us to consider an installment agreement, submit your written request or check the box below and return this flyer with your signed agreement.

   [ ] I would like to pay $ _____ per month.

   (We encourage you to make your payments as large as possible to limit penalty and interest charges.)

   I would like my payment to be due on the _____ of the month.

   (Please indicate a date between the 1st and 28th of the month.)

   You will be charged a fee if your request is approved. DO NOT include the fee with this flyer. We will send you a bill for the fee when we approve your request.

   Please provide a telephone number where we can contact you regarding your request.

   Home: (    ) _____

   Work: (    ) _____

ALSO, if you agree with our examination, PLEASE SIGN PAGE 2 OF THE REPORT (Form 4549) and return pages 1 and 2 to us.

*interest and applicable penalties will continue to accrue until your balance is paid in full.
* All checks or money orders for payment should be made payable to United States Treasury.

USA - 010181

| Name Of Taxpayer: | LAURA H KIM | | | 06/12/2018 |
| Identification Number: | ▮-8486 | Total | | 19.00.00 |

## 2010 TAX YEAR INTEREST COMPUTATION

Interest computed to                                          07/12/2018

Total Tax Deficiency                                         $295,661.00

Plus Penalties*
   Failure to File - IRC 6651                          $.00
   Accuracy Related Penalty - IRC 6662                 $.00
   Accuracy Related Penalty -IRC 6662A                 $.00
   Civil Fraud - IRC 6663                        $325,904.25
   Manually Computed Penalty                           $.00

Total Penalties Subject to Interest                          $325,904.25

Tax Deficiency and Penalties Subject to Interest             $621,565.25

| Type | Effective Dates | Days | Rate | Interest |
|---|---|---|---|---|
| Compound | 04/15/2011--09/30/2011 | 168 | 4% | $5,493.52 |
| Compound | 10/01/2011--12/31/2011 | 92 | 3% | $4,354.79 |
| Compound | 01/01/2012--12/31/2012 | 366 | 3% | $19,228.61 |
| Compound | 01/01/2013--12/31/2013 | 365 | 3% | $19,814.18 |
| Compound | 01/01/2014--12/31/2014 | 365 | 3% | $20,417.58 |
| Compound | 01/01/2015--12/31/2015 | 365 | 3% | $21,039.37 |
| Compound | 01/01/2016--03/31/2016 | 91 | 3% | $5,329.81 |
| Compound | 04/01/2016--12/31/2016 | 275 | 4% | $21,882.48 |
| Compound | 01/01/2017--12/31/2017 | 365 | 4% | $30,162.60 |
| Compound | 01/01/2018--03/31/2018 | 90 | 4% | $7,624.62 |
| Compound | 04/01/2018--07/12/2018 | 103 | 5% | $11,038.86 |

Total Interest          $166,386.42

Interest on penalties is computed from the due date of the return (including extensions) until the date of payment. The interest shown on this report is estimated. Interest is computed from the due date of the return (including extensions) and will continue to accrue until the date paid in full. Interest on the failure to pay penalty is computed from the date of assessment and is therefore not considered in this report.

USA - 010182

Name of Taxpayer: LAURA H KIM                                    06/12/2018
Identification Number: ████-8486          Total                  19.00.00

### 2010 - MAKING WORK PAY CREDIT

| | |
|---|---:|
| 1a. Earned income amount (`see below) | 754,489.78 |
| 1b. Nontaxable combat pay included in line 1a | 0.00 |
| 2. Multiply line 1a by .062 | 46,778.00 |
| 3. Enter $400 ($800 if married filing jointly) | 400.00 |
| 4. Smaller of line 2 or line 3 | 400.00 |
| 5. Adjusted gross income | 2,146,615.00 |
| 6. Enter $75,000 ($150,000 if married filing jointly) | 75,000.00 |
| 7. Subtract line 6 from line 5 (if zero or less, skip line 8 and enter amount from line 4 on line 9) | 2,071,615.00 |
| 8. Multiply line 7 by .02 | 41,432.00 |
| 9. Subtract line 8 from line 4 (if zero or less, enter -0-) | 0.00 |
| 10. Economic recovery payment amount received for current year | 0.00 |
| 11. Making work pay credit. Subtract line 10 from line 9 (if zero or less, enter -0-) | 0.00 |

* Enter earned income amount on line 1a if any of the following conditions apply:
  Net loss from business;
  Taxable scholarship or fellowship grant not reported on Form W-2;
  Wages include pay for work performed while an inmate in a penal institution;
  Received pension or annuity from a nonqualified deferred compensation plan or nongovernmental section 457 plan;
  Filing Form 2555 or 2555-EZ.
  If current year wages are more than minimum amount, skip lines 1a through 3 and enter $400
  ($800 if married filing jointly) on line 4 and go to line 5; otherwise, enter earned income amount on line 1a

USA - 010183

| | | |
|---|---|---|
| Name of Taxpayer: | LAURA H KIM | 06/12/2018 |
| Identification Number: | ■■■-8486    Agreed | 19.00.00 |

## 2011 - Form 6251 - Alternative Minimum Tax Computation

1. If filing Schedule A, enter taxable income before exemptions;
   otherwise, enter adjusted gross income — 607.422.00
2. Total adjustment and preferences (excluding any NOL deduction) — 13,950.00
3. Net operating loss deduction — 0.00
4. Alternative tax net operating loss deduction — 0.00
5. Alternative minimum taxable income (combine lines 1 thru 4) — 621,372.00
6. Exemption amount — 0.00
7. Subtract line 6 from line 5 (if zero or less, enter zero) — 621,372.00
8. If capital gains are reported, see line 19 from continuation page
   (If FEIT worksheet for AMT is used, enter amount from line 6 of that worksheet instead)
   All others:
   If line 7 is $175,000 or less ($87,500 if MFS) multiply
   line 7 by 26%. Otherwise, multiply line 7 by 28% and
   subtract $3,500 ($1,750 if MFS) from the result — 135,176.00
9. Alternative minimum tax foreign tax credit — 0.00
10. Tentative minimum tax (line 8 less line 9) — 135,176.00
11. Regular tax before credits (if Schedule J was used to figure tax,
    use the refigured amounts for lines 44 and 47 of Form 1040
    without using Schedule J) — 60,811.00
12. Alternative minimum tax — 74,365.00

### Exemption Worksheet (line 6 above)

A. Exemption amount based on filing status — 48.450.00
B. Alternative minimum taxable income — 621,372.00
C. Enter $112,500 ($150,000 if married filing jointly or
   qualifying widow(er), $75,000 if married filing separately) — 112,500.00
D. Subtract line C from line B — 508,872.00
E. Multiply line D by 25% — 127,218.00
F. Subtract line E from line A (if zero or less, enter zero) — 0.00

USA - 010184

Name of Taxpayer:   LAURA H KIM                                                    06/12/2018
Identification Number:   ████-8486              Agreed                              19.00.00

### 2011 - Form 6251 - Continuation, Tax Computation Using Maximum Capital Gain Rates

1. Amount from Form 6251 report, line 7                                             621,372.00
   (If FEIT worksheet for AMT was used, enter amount from line 3 of that worksheet instead)
2. Amount from line 6 Qualified Dividends and Capital Gain Tax Worksheet
   or line 13 Schedule D Tax Worksheet (refigured for AMT)                          271,604.75
3. Amount from Schedule D line 19 (refigured for AMT)                               0.00
4. Amount from line 2 if no Schedule D worksheet; otherwise, the smaller of
   the sum of line 2 and line 3 or Schedule D worksheet line 10 (refigured for AMT)  271,604.75
5. Smaller of line 1 or line 4                                                      271,604.75
6. Subtract line 5 from line 1                                                      349,767.25
7. If line 6 is $175,000 or less ($87,500 if MFS) multiply line 6 by 26%;
   otherwise, multiply line 6 by 28% and subtract $3,500 ($1,750 if MFS)
   from the result                                                                  94,435.00
8. Enter:
   $69,000 if married filing jointly or qualifying widow(er)
   $34,500 if single or married filing separately                                   34,500.00
   $46,250 if head of household
9. Amount from line 7 Qualified Dividends and Capital Gain Tax Worksheet
   or line 14 Schedule D Tax Worksheet                                              332,117.25
10. Subtract line 9 from line 8 (if zero or less, enter zero)                       0.00
11. Smaller of line 1 or line 2                                                     271,604.75
12. Smaller of line 10 or line 11                                                   0.00
13. Subtract line 12 from line 11                                                   271,604.75
14. Multiply line 13 by 15%                                                         40,741.00
15. Subtract line 11 from line 5                                                    0.00
16. Multiply line 15 by 25%                                                         0.00
17. Total of lines 7, 14 and 16                                                     135,176.00
18. If line 1 is $175,000 or less ($87,500 if MFS) multiply line 1 by 26%;
    otherwise, multiply line 1 by 28% and subtract $3,500 ($1,750 if MFS)
    from the result                                                                 170,484.00
19. Smaller of line 17 or line 18. Enter here and on line 8 of Form 6251 report     135,176.00

USA - 010185

| Name of Taxpayer:  LAURA H KIM | | 06/12/2018 |
| Identification Number: ██████-8486 | Agreed | 19.00.00 |

## 2011 - Form 8801 - Credit for Prior Year Minimum Tax

### Part I - Net Minimum Tax on Exclusion Items

| | |
|---|---:|
| 1. Taxable income (loss) from prior year Form 6251 | 1,623,409.00 |
| 2. Adjustments and preferences treated as exclusion items | 0.00 |
| 3. Minimum tax credit net operating loss deduction | 0.00 |
| 4. Combine lines 1 through 3 (if more than $219,900 and married filing separate for prior year - see instructions) | 1,623,409.00 |
| 5. Exemption amount from prior year Form 6251 | 47,450.00 |
| 6. Phase-out exemption from prior year Form 6251 | 112,500.00 |
| 7. Subtract line 6 from line 4 (if zero or less, enter -0-) | 1,510,909.00 |
| 8. Multiply line 7 by 25% | 377,727.00 |
| 9. Subtract line 8 from line 5 (If zero or less, enter -0-) | 0.00 |
| 10. Subtract line 9 from line 4 (if zero or less, enter -0-) | 1,623,409.00 |
| 11. Line 11 computation (if filing Form 2555/2555-EZ for prior year, enter amount from page 3) or, (if capital gains for prior year, enter amount from Part III, line 47); otherwise, multiply line 10 by 28% and subtract $3,500 from the result) | 431,765.00 |
| 12. Minimum tax foreign tax credit on exclusion items | 0.00 |
| 13. Tentative minimum tax on exclusion items (line 11 less line 12) | 431,765.00 |
| 14. Regular tax before credits minus foreign tax credit (line 34 of prior year Form 6251) | 26,327.00 |
| 15. Net minimum tax on exclusion items (line 13 less line 14) | 405,438.00 |

### Part II - Current Year Nonrefundable and Refundable Credits and Carryover

| | |
|---|---:|
| 16. Line 35 of prior year Form 6251 | 112,151.00 |
| 17. Amount from line 15 above | 405,438.00 |
| 18. Adjusted net minimum tax (line 16 less line 17) | (293,287.00) |
| 19. Carryforward of minimum tax credit from prior year | 0.00 |
| 20. Prior year unallowed qualified electric vehicle credit | 0.00 |
| 21. Combine lines 18 through 20 | 0.00 |
| 22. Current year regular income tax less allowable credits | 0.00 |
| 23. Current year tentative minimum tax (line 33 of Form 6251) | 0.00 |
| 24. Subtract line 23 from line 22 (if zero or less, enter -0-) | 0.00 |
| 25. Current year nonrefundable credit (smaller of line 21 or line 24) | 0.00 |
| 26. Tentative refundable credit (amount from Part IV, line 53 or 57) (if applicable) | 0.00 |
| 27. Current year refundable credit (line 26 less line 25) | 0.00 |
| 28. Credit carryforward (subtract larger of line 25 or line 26 from line 21) | 0.00 |

USA - 010186

| Name of Taxpayer: LAURA H KIM | | 06/12/2018 |
| Identification Number: ▮▮▮▮8486 | Agreed | 19.00.00 |

## Part III - Tax Computation Using Maximum Capital Gains Rates

| | |
|---|---:|
| 29. Amount from line 10 | |
| (If FEIT worksheet for F8801 was used, | |
| enter amount from line 3 of that worksheet instead) | 1,623,409.00 |
| 30. Amount from prior year line 6 of Qualified Dividends Worksheet or | |
| line 13 of Schedule D Tax Worksheet | 148,383.50 |
| 31. Amount from prior year Schedule D, line 19 | 0.00 |
| 32. Smaller of lines 30 and 31 | 148,383.50 |
| or prior year line 10 of Schedule D Tax Worksheet | 148,383.50 |
| 33. Smaller of line 29 or line 32 | 148,383.50 |
| 34. Subtract line 33 from line 29 | 1,475,025.50 |
| 35. Multiply line 34 by 28% and subtract $ 3,500 from the result | 409,507.00 |
| 36. Enter: | 34,000.00 |
| $68,000 if married filing jointly or qualifying widow(er) for 2010, | |
| $34,000 if single or married filing separately for 2010, | |
| $45,550 if head of household for 2010 | |
| 37. Amount from prior year line 7 of Qualified Dividends Worksheet or | |
| line 14 of Schedule D Tax Worksheet | 924,656.50 |
| 38. Subtract line 37 from line 36. If zero or less, enter -0- | 0.00 |
| 39. Smaller of line 29 or line 30 | 148,383.50 |
| 40. Smaller of line 38 or line 39 | 0.00 |
| 41. Subtract line 40 from line 39 | 148,383.50 |
| 42. Multiply line 41 by 15% | 22,258.00 |
| 43. Subtract line 39 from line 33 | 0.00 |
| 44. Multiply line 43 by 25% | 0.00 |
| 45. Add lines 35, 42, and 44 | 431,765.00 |
| 46. Multiply line 29 by 28% and subtract $ 3,500 from the result | 451,055.00 |
| 47. Smaller of line 45 or line 46 (enter here and on line 11 above) | |
| (If FEIT worksheet for F8801 was used, | |
| enter amount on line 4 of that worksheet instead) | 431,765.00 |

## Part IV - Tentative Refundable Credit

| | |
|---|---|
| 48. Enter amount from line 21 | |
| 49. Minimum tax credit amount | |
| from 2009 Form 8801, lines 18 and 20 (if zero or less, enter -0-) | |
| 50. Minimum tax credit amount | |
| from 2010 Form 8801, lines 18 and 20 (if zero or less, enter -0-) | |
| 51. Total of lines 18 and 20 above (if zero or less, enter -0-) | |
| 52. Add lines 49 thru 51 | |
| 53. Long-term unused minimum tax credit (subtract line 52 from line 48) | |
| (if zero or less, stop and enter -0- here and on line 26 and | |
| do not complete the rest of Part IV), | |
| 54. Multiply line 53 by 50% | |
| 55. Prior year AMT refundable credit amount | |
| 56. Larger of line 54 or line 55 | |
| 57. Smaller of line 53 or line 56. Enter result here and on line 26 | |

USA - 010187

Name of Taxpayer:    LAURA H KIM                                    06/12/2018
Identification Number:    ████-8486           Agreed               19.00.00

## 2011  - FOREIGN EARNED INCOME TAX WORKSHEET for PRIOR YEAR MINIMUM TAX

1. Enter amount from Form 8801, line 10                                              0.00
2. Enter amount from 2010 Form 2555, line 45 and 50,
   or Form 2555-EZ, line 18                                                          0.00
3. Add lines 1 and 2                                                                 0.00
4. Tax on amount on line 3
   If capital gains are reported for prior year,
   enter amount from line 3 on Form 8801, line 29.
   Complete Form 8801, Part III and enter amount from line 47 here
   All others: If line 3 is $175,000 or less
   ($87,500 or less if married filing separately for prior year),
   multiply line 3 by 26%;
   otherwise, multiply line 3 by 28% and subtract $3,500
   ($1,750 if married filing separately for prior year) from the result            0.00
5. Tax on amount on line 2
   If line 2 is $175,000 or less
   ($87,500 or less if married filing separately for prior year),
   multiply line 2 by 26%;
   otherwise, multiply line 2 by 28% and subtract $3,500
   ($1,750 if married filing separately for prior year) from the result            0.00
6. Subtract line 5 from line 4. If zero or less, enter -0-
   (enter amount here and on line 11 of page 1)                                     0.00

NOTE: Computations include capital gain excess determination and any necessary modifications to Form 8801, Part III

USA - 010188

| Name of Taxpayer: | LAURA H KIM | | 06/12/2018 |
| Identification Number: | ░░-8486 | Agreed | 19.00.00 |

## 2011 - Qualified Dividends and Capital Gain Tax Worksheet

1. Enter the taxable income from Form 1040, line 43, or the amount from
   Foreign Earned Income Tax Worksheet, line 3, if filing Form 2555 or 2555-EZ ............ 603,722.00

2. Enter the qualified dividends from Form 1040, line 9b ............ 271,604.75

3. If filing Schedule D, enter the smaller line 15 or line 16 of Schedule D, but do not enter
   less than -0-. Otherwise, enter the amount from Form 1040, line 13 ............ 0.00

4. Add lines 2 and 3 ............ 271,604.75

5. If filing Form 4952, enter the amount, if any, from line 4g of Form 4952. Otherwise, enter -0- ............ 0.00

6. Subtract line 5 from line 4. If zero or less, enter -0- ............ 271,604.75

7. Subtract line 6 from line 1. If zero or less, enter -0- ............ 332,117.25

8. Enter:
   $34,500 if single or married filing separately;
   $69,000 if married filing jointly or qualifying widow(er); or
   $46,250 if head of household ............ 34,500.00

9. Enter the smaller of line 1 or line 8 ............ 34,500.00

10. Enter the smaller of line 7 or line 9 ............ 34,500.00

11. Subtract line 10 from line 9. This amount is taxed at 0% ............ 0.00

12. Enter the smaller of line 1 or line 6 ............ 271,604.75

13. Enter the amount from line 11 ............ 0.00

14. Subtract line 13 from line 12 ............ 271,604.75

15. Multiply line 14 by 15% (.15) ............ 40,741.00

16. Figure the tax on the amount on line 7. If the amount on line 7 is less than $100,000,
    use the Tax Table to figure this tax. If the amount on line 7 is $100,000 or more,
    use the Tax Computation Worksheet ............ 94,496.00

17. Add lines 15 and 16 ............ 135,237.00

18. Figure the tax on the amount on line 1. If the amount on line 1 is less than $100,000,
    use the Tax Table to figure this tax. If the amount on line 1 is $100,000 or more,
    use the Tax Computation Worksheet ............ 188,617.00

19. Tax on all taxable income. Enter the smaller of line 17 or line 18
    Also include this amount on Form 1040, line 44, or
    Foreign Earned Income Tax Worksheet, line 4, if applicable ............ 135,237.00

USA - 010189

| Name of Taxpayer:   LAURA H KIM | | Page      of |
| Identification Number: ████-8486 | Agreed | Tax Period Ending: 12/31/2011 |

## Civil Fraud Penalty under IRC 6663(a)

**Civil Fraud Penalty - Internal Revenue Code Section 6663(a)**

It has been determined that the underpayment of tax shown on line 5 below is attributable to fraud. Therefore, an addition to tax is imposed as provided by Section 6663(a) of the Internal Revenue Code.

| | |
|---|---|
| 1. Total underpayment, excluding underpayment attributable to Section 6662A penalty issues, if any | 0.00 |
| 2. Less: Underpayment attributable to non-penalty issues | 0.00 |
| 3. Less: Underpayment attributable to 20% Section 6662 penalty issues | 0.00 |
| 4. Less: Underpayment attributable to 40% Section 6662 penalty issues | 0.00 |
| 5. Underpayment to which Section 6663(a) applies (Line 1 less the sum of lines 2, 3, and 4) | 0.00 |
| 6. Applicable penalty rate | 75.00% |
| 7. Section 6663(a) civil fraud penalty (Line 5 times line 6) | 0.00 |
| 8. Less: Previously assessed/previously agreed Section 6663(a) penalty | 0.00 |
| 9. Total section 6663(a) civil fraud penalty (Line 7 less line 8) | 0.00 |

| Name of Taxpayer: | LAURA H KIM | | 06/12/2018 |
|---|---|---|---|
| Identification Number: | -8486 | Agreed | 19.00.00 |

## HOW TO PAY YOUR TAXES

If you agree with our examination, pay now by sending a check or money order payable to United States Treasury and your signed agreement. The enclosed report does not reflect any balance currently due on your account.

Why it is to your advantage to pay now:

- Decreases future interest charges
- Prevents assessment of failure to pay penalty
- Reduces payment of nondeductible interest
- Eliminates further contact with us

If you agree with our examination and cannot pay now:

1) Can you pay the full amount within 120 days?   [ ] Yes    [ ] No
   - If yes, send in the signed agreement now and submit the balance due when you receive a bill. Checks should be made payable to United States Treasury.
   - If no, you may be eligible for a payment plan.

2) If you would like us to consider an installment agreement, submit your written request or check the box below and return this flyer with your signed agreement.

   [ ] I would like to pay $ _____ per month.

   (We encourage you to make your payments as large as possible to limit penalty and interest charges.)

   I would like my payment to be due on the _____ of the month.

   (Please indicate a date between the 1st and 28th of the month.)

   You will be charged a fee if your request is approved.  DO NOT include the fee with this flyer.  We will send you a bill for the fee when we approve your request.

   Please provide a telephone number where we can contact you regarding your request.

   Home: (     ) _____

   Work: (     ) _____

ALSO, if you agree with our examination, PLEASE SIGN PAGE 2 OF THE REPORT (Form 4549) and return pages 1 and 2 to us.

* Interest and applicable penalties will continue to accrue until your balance is paid in full.

* All checks or money orders for payment should be made payable to United States Treasury.

USA - 010191

| Name Of Taxpayer: | LAURA H KIM | | 06/12/2018 |
| Identification Number: | 8486 | Agreed | 19.00.00 |

## 2011  TAX YEAR INTEREST COMPUTATION

| Interest computed to | | 07/12/2018 |
|---|---|---|
| Total Tax Deficiency | | $130,697.00 |

Plus Penalties*

| | | |
|---|---|---|
| Failure to File - IRC 6651 | $.00 | |
| Accuracy Related Penalty - IRC 6662 | $.00 | |
| Accuracy Related Penalty - IRC 6662A | $.00 | |
| Civil Fraud - IRC 6663 | $.00 | |
| Manually Computed Penalty | $.00 | |

| Total Penalties Subject to Interest | | $.00 |
|---|---|---|
| Tax Deficiency and Penalties Subject to Interest | | $130,697.00 |

| Type | Effective Dates | Days | Rate | Interest |
|---|---|---|---|---|
| Compound | 04/15/2012--06/30/2012 | 76 | 3% | $816.69 |
| Compound | 07/01/2012--09/30/2012 | 92 | 3% | $995.45 |
| Compound | 10/01/2012--12/31/2012 | 92 | 3% | $1,002.99 |
| Compound | 01/01/2013--03/31/2013 | 90 | 3% | $991.24 |
| Compound | 04/01/2013--06/30/2013 | 91 | 3% | $1,009.74 |
| Compound | 07/01/2013--09/30/2013 | 92 | 3% | $1,028.54 |
| Compound | 10/01/2013--12/31/2013 | 92 | 3% | $1,036.35 |
| Compound | 01/01/2014--03/31/2014 | 90 | 3% | $1,021.43 |
| Compound | 04/01/2014--06/30/2014 | 91 | 3% | $1,040.49 |
| Compound | 07/01/2014--09/30/2014 | 92 | 3% | $1,059.87 |
| Compound | 10/01/2014--12/31/2014 | 92 | 3% | $1,067.91 |
| Compound | 01/01/2015--03/31/2015 | 90 | 3% | $1,052.54 |
| Compound | 04/01/2015--06/30/2015 | 91 | 3% | $1,072.18 |
| Compound | 07/01/2015--09/30/2015 | 92 | 3% | $1,092.14 |
| Compound | 10/01/2015--12/31/2015 | 92 | 3% | $1,100.43 |
| Compound | 01/01/2016--03/31/2016 | 91 | 3% | $1,093.68 |
| Compound | 04/01/2016--06/30/2016 | 91 | 4% | $1,470.97 |
| Compound | 07/01/2016--09/30/2016 | 92 | 4% | $1,502.08 |
| Compound | 10/01/2016--12/31/2016 | 92 | 4% | $1,517.25 |
| Compound | 01/01/2017--03/31/2017 | 90 | 4% | $1,503.23 |
| Compound | 04/01/2017--06/30/2017 | 91 | 4% | $1,535.08 |
| Compound | 07/01/2017--09/30/2017 | 92 | 4% | $1,567.59 |
| Compound | 10/01/2017--12/31/2017 | 92 | 4% | $1,583.48 |
| Compound | 01/01/2018--03/31/2018 | 90 | 4% | $1,564.58 |
| Compound | 04/01/2018--06/30/2018 | 91 | 5% | $1,999.63 |
| Compound | 07/01/2018--07/12/2018 | 12 | 5% | $265.55 |

| Name Of Taxpayer: | LAURA H KIM | | 06/12/2018 |
|---|---|---|---|
| Identfication Number: | ████-8486 | Agreed | 19.0000 |

## 2011  TAX YEAR INTEREST COMPUTATION

Interest computed to                                                                                 07/12/2018

| Type | Effective Dates | Days | Rate. | Interest |
|---|---|---|---|---|
| | | | | |

| | | |
|---|---|---|
| | Total Interest | $30,991.11 |

Interest on penalties is computed from the due date of the return (including extensions) until the date of payment.  The interest shown on this report is estimated.  Interest is computed from the due date of the return (including extensions) and will continue to accrue until the date paid in full.  Interest on the failure to pay penalty is computed from the date of assessment and is therefore not considered in this report.

USA - 010193

| Name of Taxpayer: | LAURA H KIM | | 06/12/2018 |
| Identification Number: | ████-8486 | Total | 19.00.00 |

## 2011 - Form 6251 - Alternative Minimum Tax Computation

1. If filing Schedule A, enter taxable income before exemptions;
   otherwise, enter adjusted gross income — 717,835.00
2. Total adjustment and preferences (excluding any NOL deduction) — 13,950.00
3. Net operating loss deduction — 0.00
4. Alternative tax net operating loss deduction — 0.00
5. Alternative minimum taxable income (combine lines 1 thru 4) — 731,785.00
6. Exemption amount — 0.00
7. Subtract line 6 from line 5 (if zero or less, enter zero) — 731,785.00
8. If capital gains are reported, see line 19 from continuation page
   (If FEIT worksheet for AMT is used, enter amount from line 6 of that worksheet instead)
   All others:
   If line 7 is $175,000 or less ($87,500 if MFS) multiply
   line 7 by 26%. Otherwise, multiply line 7 by 28% and
   subtract $3,500 ($1,750 if MFS) from the result — 166,091.00
9. Alternative minimum tax foreign tax credit — 0.00
10. Tentative minimum tax (line 8 less line 9) — 166,091.00
11. Regular tax before credits (if Schedule J was used to figure tax,
    use the refigured amounts for lines 44 and 47 of Form 1040
    without using Schedule J) — 98,515.00
12. Alternative minimum tax — 67,576.00

### Exemption Worksheet (line 6 above)

A. Exemption amount based on filing status — 48,450.00
B. Alternative minimum taxable income — 731,785.00
C. Enter $112,500 ($150,000 if married filing jointly or
   qualifying widow(er), $75,000 if married filing separately) — 112,500.00
D. Subtract line C from line B — 619,285.00
E. Multiply line D by 25% — 154,821.00
F. Subtract line E from line A (if zero or less, enter zero) — 0.00

USA - 010194

| Name of Taxpayer: | LAURA H KIM | | 06/12/2018 |
| Identification Number: | ████-8486 | Total | 19.00.00 |

### 2011 - Form 6251 - Continuation, Tax Computation Using Maximum Capital Gain Rates

| | |
|---|---|
| 1. Amount from Form 6251 report, line 7 | 731,785.00 |
| (If FEIT worksheet for AMT was used, enter amount from line 3 of that worksheet instead) | |
| 2. Amount from line 6 Qualified Dividends and Capital Gain Tax Worksheet | |
| or line 13 Schedule D Tax Worksheet (refigured for AMT) | 271,604.75 |
| 3. Amount from Schedule D line 19 (refigured for AMT) | 0.00 |
| 4. Amount from line 2 if no Schedule D worksheet; otherwise, the smaller of | |
| the sum of line 2 and line 3 or Schedule D worksheet line 10 (refigured for AMT) | 271,604.75 |
| 5. Smaller of line 1 or line 4 | 271,604.75 |
| 6. Subtract line 5 from line 1 | 460,180.25 |
| 7. If line 6 is $175,000 or less ($87,500 if MFS) multiply line 6 by 26%; | |
| otherwise, multiply line 6 by 28% and subtract $3,500 ($1,750 if MFS) | |
| from the result | 125,350.00 |
| 8. Enter: | |
| $69,000 if married filing jointly or qualifying widow(er) | |
| $34,500 if single or married filing separately | 34,500.00 |
| $46,250 if head of household | |
| 9. Amount from line 7 Qualified Dividends and Capital Gain Tax Worksheet | |
| or line 14 Schedule D Tax Worksheet | 442,530.25 |
| 10. Subtract line 9 from line 8 (if zero or less, enter zero) | 0.00 |
| 11. Smaller of line 1 or line 2 | 271,604.75 |
| 12. Smaller of line 10 or line 11 | 0.00 |
| 13. Subtract line 12 from line 11 | 271,604.75 |
| 14. Multiply line 13 by 15% | 40,741.00 |
| 15. Subtract line 11 from line 5 | 0.00 |
| 16. Multiply line 15 by 25% | 0.00 |
| 17. Total of lines 7, 14 and 16 | 166,091.00 |
| 18. If line 1 is $175,000 or less ($87,500 if MFS) multiply line 1 by 26%; | |
| otherwise, multiply line 1 by 28% and subtract $3,500 ($1,750 if MFS) | |
| from the result | 201,400.00 |
| 19. Smaller of line 17 or line 18. Enter here and on line 8 of Form 6251 report | 166,091.00 |

USA - 010195

| Name of Taxpayer: | LAURA H KIM | | 06/12/2018 |
|---|---|---|---|
| Identification Number: | ■-8486 | Total | 19,00.00 |

## 2011 - Form 8801 - Credit for Prior Year Minimum Tax

### Part I - Net Minimum Tax on Exclusion Items

| | |
|---|---:|
| 1. Taxable income (loss) from prior year Form 6251 | 2,679,341.00 |
| 2. Adjustments and preferences treated as exclusion items | 0.00 |
| 3. Minimum tax credit net operating loss deduction | 0.00 |
| 4. Combine lines 1 through 3 (if more than $219,900 and married filing separate for prior year - see instructions) | 2,679,341.00 |
| 5. Exemption amount from prior year Form 6251 | 47,450.00 |
| 6. Phase-out exemption from prior year Form 6251 | 112,500.00 |
| 7. Subtract line 6 from line 4 (if zero or less, enter -0-) | 2,566,841.00 |
| 8. Multiply line 7 by 25% | 641,710.00 |
| 9. Subtract line 8 from line 5 (if zero or less, enter -0-) | 0.00 |
| 10. Subtract line 9 from line 4 (if zero or less, enter -0-) | 2,679,341.00 |
| 11. Line 11 computation (if filing Form 2555/2555-EZ for prior year, enter amount from page 3) or, (if capital gains for prior year, enter amount from Part III, line 47); otherwise, multiply line 10 by 28% and subtract $3,500 from the result) | 727,426.00 |
| 12. Minimum tax foreign tax credit on exclusion items | 0.00 |
| 13. Tentative minimum tax on exclusion items (line 11 less line 12) | 727,426.00 |
| 14. Regular tax before credits minus foreign tax credit (line 34 of prior year Form 6251) | 395,903.00 |
| 15. Net minimum tax on exclusion items (line 13 less line 14) | 331,523.00 |

### Part II - Current Year Nonrefundable and Refundable Credits and Carryover

| | |
|---|---:|
| 16. Line 35 of prior year Form 6251 | 38,236.00 |
| 17. Amount from line 15 above | 331,523.00 |
| 18. Adjusted net minimum tax (line 16 less line 17) | (293,287.00) |
| 19. Carryforward of minimum tax credit from prior year | 0.00 |
| 20. Prior year unallowed qualified electric vehicle credit | 0.00 |
| 21. Combine lines 18 through 20 | 0.00 |
| 22. Current year regular income tax less allowable credits | 0.00 |
| 23. Current year tentative minimum tax (line 33 of Form 6251) | 0.00 |
| 24. Subtract line 23 from line 22 (if zero or less, enter -0-) | 0.00 |
| 25. Current year nonrefundable credit (smaller of line 21 or line 24) | 0.00 |
| 26. Tentative refundable credit (amount from Part IV, line 53 or 57) *(if applicable)* | 0.00 |
| 27. Current year refundable credit (line 26 less line 25) | 0.00 |
| 28. Credit carryforward (subtract larger of line 25 or line 26 from line 21) | 0.00 |

USA - 010196

Name of Taxpayer:  LAURA H KIM                                                06/12/2018
Identification Number:    ▮▮▮-8486           Total                                  19,00.00

## Part III - Tax Computation Using Maximum Capital Gains Rates

29. Amount from line 10
    (if FEIT worksheet for F8801 was used,
    enter amount from line 3 of that worksheet instead)            2,679,341.00
30. Amount from prior year line 6 of Qualified Dividends Worksheet or
    line 13 of Schedule D Tax Worksheet            148,383.50
31. Amount from prior year Schedule D, line 19            0.00
32. Smaller of lines 30 and 31
    or prior year line 10 of Schedule D Tax Worksheet            148,383.50
33. Smaller of line 29 or line 32            148,383.50
34. Subtract line 33 from line 29            2,530,957.50
35. Multiply line 34 by 28% and subtract $ 3,500 from the result            705,168.00
36. Enter:            34,000.00
    $68,000 if married filing jointly or qualifying widow(er) for 2010,
    $34,000 if single or married filing separately for 2010.
    $45,550 if head of household for 2010
37. Amount from prior year line 7 of Qualified Dividends Worksheet or
    line 14 of Schedule D Tax Worksheet            1,980,588.50
38. Subtract line 37 from line 38. If zero or less, enter -0-            0.00
39. Smaller of line 29 or line 30            148,383.50
40. Smaller of line 38 or line 39            0.00
41. Subtract line 40 from line 39            148,383.50
42. Multiply line 41 by 15%            22,258.00
43. Subtract line 39 from line 33            0.00
44. Multiply line 43 by 25%            0.00
45. Add lines 35, 42, and 44            727,426.00
46. Multiply line 29 by 28% and subtract $ 3,500 from the result            746,715.00
47. Smaller of line 45 or line 46 (enter here and on line 11 above)
    (If FEIT worksheet for F8801 was used,
    enter amount on line 4 of that worksheet instead)            727,426.00

## Part IV - Tentative Refundable Credit

48. Enter amount from line 21
49. Minimum tax credit amount
    from 2009 Form 8801, lines 18 and 20 (if zero or less, enter -0-)
50. Minimum tax credit amount
    from 2010 Form 8801, lines 18 and 20 (if zero or less, enter -0-)
51. Total of lines 18 and 20 above (if zero or less, enter -0-)
52. Add lines 49 thru 51
53. Long-term unused minimum tax credit (subtract line 52 from line 48)
    (If zero or less, stop and enter -0- here and on line 26 and
    do not complete the rest of Part IV),
54. Multiply line 53 by 50%
55. Prior year AMT refundable credit amount
56. Larger of line 54 or line 55
57. Smaller of line 53 or line 56. Enter result here and on line 26

USA - 010197

| Name of Taxpayer: | LAURA HKIM | | 06/12/2018 |
|---|---|---|---|
| Identification Number: | ██-8486 | Total | 19.00.00 |

## 2011 - FOREIGN EARNED INCOME TAX WORKSHEET for PRIOR YEAR MINIMUM TAX

| | |
|---|---|
| 1. Enter amount from Form 8801, line 10 | 0 00 |
| 2. Enter amount from 2010 Form 2555, line 45 and 50, or Form 2555-EZ, line 18 | 0.00 |
| 3. Add lines 1 and 2 | 0.00 |
| 4. Tax on amount on line 3 | |
|     If capital gains are reported for prior year, | |
|     enter amount from line 3 on Form 8801, line 29. | |
|     Complete Form 8801, Part III and enter amount from line 47 here | |
|     All others: If line 3 is $175,000 or less | |
|     ($87,500 or less if married filing separately for prior year), | |
|     multiply line 3 by 26%; | |
|     otherwise, multiply line 3 by 28% and subtract $3,500 | |
|     ($1,750 if married filing separately for prior year) from the result | 0.00 |
| 5. Tax on amount on line 2 | |
|     If line 2 is $175,000 or less | |
|     ($87,500 or less if married filing separately for prior year), | |
|     multiply line 2 by 26%; | |
|     otherwise, multiply line 2 by 28% and subtract $3,500 | |
|     ($1,750 if married filing separately for prior year) from the result | 0.00 |
| 6. Subtract line 5 from line 4. If zero or less, enter -0- | |
|     (enter amount here and on line 11 of page 1) | 0.00 |

NOTE: Computations include capital gain excess determination and any necessary modifications to Form 8801, Part III.

| Name of Taxpayer: | LAURA H KIM | | 06/12/2018 |
|---|---|---|---|
| Identification Number: | ▆▆-8486 | Total | 19.00.00 |

## 2011 - Qualified Dividends and Capital Gain Tax Worksheet

1. Enter the taxable income from Form 1040, line 43, or the amount from
   Foreign Earned Income Tax Worksheet, line 3, if filing Form 2555 or 2555-EZ ............ 714.135.00

2. Enter the qualified dividends from Form 1040, line 9b ............ 271,604.75

3. If filing Schedule D, enter the smaller line 15 or line 16 of Schedule D, but do not enter
   less than -0-. Otherwise, enter the amount from Form 1040, line 13 ............ 0 00

4. Add lines 2 and 3 ............ 271,604.75

5. If filing Form 4952, enter the amount, if any, from line 4g of Form 4952. Otherwise, enter -0- ............ 0.00

6. Subtract line 5 from line 4. If zero or less, enter -0- ............ 271,604.75

7. Subtract line 6 from line 1. If zero or less, enter -0- ............ 442,530.25

8. Enter:
   $34,500 if single or married filing separately;
   $69,000 if married filing jointly or qualifying widow(er); or
   $46,250 if head of household ............ 34,500.00

9. Enter the smaller of line 1 or line 8 ............ 34,500.00

10. Enter the smaller of line 7 or line 9 ............ 34,500.00

11. Subtract line 10 from line 9. This amount is taxed at 0% ............ 0.00

12. Enter the smaller of line 1 or line 6 ............ 271,604.75

13. Enter the amount from line 11 ............ 0 00

14. Subtract line 13 from line 12 ............ 271,604.75

15. Multiply line 14 by 15% (.15) ............ 40,741.00

16. Figure the tax on the amount on line 7. If the amount on line 7 is less than $100,000,
    use the Tax Table to figure this tax. If the amount on line 7 is $100,000 or more,
    use the Tax Computation Worksheet ............ 132,200.00

17. Add lines 15 and 16 ............ 172,941.00

18. Figure the tax on the amount on line 1. If the amount on line 1 is less than $100,000,
    use the Tax Table to figure this tax. If the amount on line 1 is $100,000 or more,
    use the Tax Computation Worksheet ............ 227,261.00

19. Tax on all taxable income. Enter the smaller of line 17 or line 18
    Also include this amount on Form 1040, line 44, or
    Foreign Earned Income Tax Worksheet, line 4, if applicable ............ 172,941.00

USA - 010199

Name of Taxpayer:   LAURA H KIM                                    Page      of
Identification Number:      -8486                Total             Tax Period Ending: 12/31/2011

## Civil Fraud Penalty under IRC 6663(a)

**Civil Fraud Penalty - Internal Revenue Code Section 6663(a)**

It has been determined that the underpayment of tax shown on line 5 below is attributable to fraud.
Therefore, an addition to tax is imposed as provided by Section 6663(a) of the Internal Revenue Code.

| | |
|---|---:|
| 1. Total underpayment, excluding underpayment attributable to Section 6662A penalty issues, if any | 161,612.00 |
| 2. Less: Underpayment attributable to non-penalty issues | 0.00 |
| 3. Less: Underpayment attributable to 20% Section 6662 penalty issues | 0.00 |
| 4. Less: Underpayment attributable to 40% Section 6662 penalty issues | 0.00 |
| 5. Underpayment to which Section 6663(a) applies (Line 1 less the sum of lines 2, 3, and 4) | 161,612.00 |
| 6. Applicable penalty rate | 75.00% |
| 7. Section 6663(a) civil fraud penalty (Line 5 times line 6) | 121,209.00 |
| 8. Less: Previously assessed/previously agreed Section 6663(a) penalty | 0.00 |
| 9. Total section 6663(a) civil fraud penalty (Line 7 less line 8) | 121,209.00 |

| Name of Taxpayer: | LAURA H KIM | | | 06/12/2018 |
| Identification Number: | ▮▮▮-8486 | | Total | 19.00.00 |

### HOW TO PAY YOUR TAXES

If you agree with our examination, pay now by sending a check or money order payable to United States Treasury and your signed agreement. The enclosed report does not reflect any balance currently due on your account.

Why it is to your advantage to pay now:

- Decreases future interest charges
- Prevents assessment of failure to pay penalty
- Reduces payment of nondeductible interest
- Eliminates further contact with us

If you agree with our examination and cannot pay now:

1) Can you pay the full amount within 120 days?   [ ] Yes    [ ] No
   - If yes, send in the signed agreement now and submit the balance due when you receive a bill. Checks should be made payable to United States Treasury.
   - If no, you may be eligible for a payment plan.

2) If you would like us to consider an installment agreement, submit your written request or check the box below and return this flyer with your signed agreement.

   [ ] I would like to pay $ _____ per month.

   (We encourage you to make your payments as large as possible to limit penalty and interest charges.)

   I would like my payment to be due on the _____ of the month.

   (Please indicate a date between the 1st and 28th of the month.)

   You will be charged a fee if your request is approved. DO NOT include the fee with this flyer. We will send you a bill for the fee when we approve your request.

   Please provide a telephone number where we can contact you regarding your request.

   Home: (      ) _____

   Work: (      ) _____

ALSO, if you agree with our examination, PLEASE SIGN PAGE 2 OF THE REPORT (Form 4549) and return pages 1 and 2 to us.

* Interest and applicable penalties will continue to accrue until your balance is paid in full.
* All checks or money orders for payment should be made payable to United States Treasury.

USA - 010201

| Name Of Taxpayer: | LAURA H KIM | | 06/12/2018 |
| Identification Number: | ████-8486 | Total | 19.00.00 |

## 2011 TAX YEAR INTEREST COMPUTATION

Interest computed to                                                    07/12/2018

Total Tax Deficiency                                                    $30,915.00

Plus Penalties*

| | |
|---|---|
| Failure to File - IRC 6651 | $.00 |
| Accuracy Related Penalty - IRC 6662 | $.00 |
| Accuracy Related Penalty - IRC 6662A | $.00 |
| Civil Fraud - IRC 6663 | $121,209.00 |
| Manually Computed Penalty | $.00 |

Total Penalties Subject to Interest                                    $121,209.00

Tax Deficiency and Penalties Subject to Interest                       $152,124.00

| Type | Effective Dates | Days | Rate | Interest |
|---|---|---|---|---|
| Compound | 04/15/2012--06/30/2012 | 76 | 3% | $193.18 |
| Compound | 07/01/2012--09/30/2012 | 92 | 3% | $235.46 |
| Compound | 10/01/2012--12/31/2012 | 92 | 3% | $1,004.64 |
| Compound | 01/01/2013--03/31/2013 | 90 | 3% | $1,140.07 |
| Compound | 04/01/2013--06/30/2013 | 91 | 3% | $1,161.34 |
| Compound | 07/01/2013--09/30/2013 | 92 | 3% | $1,182.97 |
| Compound | 10/01/2013--12/31/2013 | 92 | 3% | $1,191.94 |
| Compound | 01/01/2014--03/31/2014 | 90 | 3% | $1,174.79 |
| Compound | 04/01/2014--06/30/2014 | 91 | 3% | $1,196.71 |
| Compound | 07/01/2014--09/30/2014 | 92 | 3% | $1,218.99 |
| Compound | 10/01/2014--12/31/2014 | 92 | 3% | $1,228.24 |
| Compound | 01/01/2015--03/31/2015 | 90 | 3% | $1,210.56 |
| Compound | 04/01/2015--06/30/2015 | 91 | 3% | $1,233.15 |
| Compound | 07/01/2015--09/30/2015 | 92 | 3% | $1,256.11 |
| Compound | 10/01/2015--12/31/2015 | 92 | 3% | $1,265.65 |
| Compound | 01/01/2016--03/31/2016 | 91 | 3% | $1,257.88 |
| Compound | 04/01/2016--06/30/2016 | 91 | 4% | $1,691.81 |
| Compound | 07/01/2016--09/30/2016 | 92 | 4% | $1,727.59 |
| Compound | 10/01/2016--12/31/2016 | 92 | 4% | $1,745.05 |
| Compound | 01/01/2017--03/31/2017 | 90 | 4% | $1,728.92 |
| Compound | 04/01/2017--06/30/2017 | 91 | 4% | $1,765.56 |
| Compound | 07/01/2017--09/30/2017 | 92 | 4% | $1,802.95 |
| Compound | 10/01/2017--12/31/2017 | 92 | 4% | $1,821.21 |
| Compound | 01/01/2018--03/31/2018 | 90 | 4% | $1,799.48 |
| Compound | 04/01/2018--06/30/2018 | 91 | 5% | $2,299.85 |
| Compound | 07/01/2018--07/12/2018 | 12 | 5% | $305.42 |

USA - 010202

| | | | | |
|---|---|---|---|---|
| Name Of Taxpayer: | LAURA H KIM | | · | 06/12/2018 |
| Identification Number: | ▪-8486 | Total | | 19.00.00 |

## 2011  TAX YEAR INTEREST COMPUTATION

Interest computed to                                            · 07/12/2018

| Type | Effective Dates | Days | Rate | Interest |
|------|-----------------|------|------|----------|

Total Interest $33,839.52

Interest on penalties is computed from the due date of the return (including extensions) until the date of payment.  The interest shown on this report is estimated.  Interest is computed from the due date of the return (including extensions) and will continue to accrue until the date paid in full.  Interest on the failure to pay penalty is computed from the date of assessment and is therefore not considered in this report.

USA - 010203

Name of Taxpayer:  LAURA H KIM                                    06/12/2018
Identification Number:  ■-8486          Agreed                    19.00.00

## 2012 - Form 6251 - Alternative Minimum Tax Computation

| | |
|---|---:|
| 1. If filing Schedule A, enter taxable income before exemptions; | |
|  otherwise, enter adjusted gross income | 623,822.00 |
| 2. Total adjustment and preferences (excluding any NOL deduction) | (139.00) |
| 3. Net operating loss deduction | 0.00 |
| 4. Alternative tax net operating loss deduction | 0.00 |
| 5. Alternative minimum taxable income (combine lines 1 thru 4) | 623,683.00 |
| 6. Exemption amount | 0.00 |
| 7. Subtract line 6 from line 5 (if zero or less, enter zero) | 623,683.00 |
| 8. If capital gains are reported, see line 19 from continuation page | |
|  (If FEIT worksheet for AMT is used, enter amount from line 6 of that worksheet instead) | |
|  All others: | |
|  If line 7 is $175,000 or less ($87,500 if MFS) multiply | |
|  line 7 by 26%. Otherwise, multiply line 7 by 28% and | |
|  subtract $3,500 ($1,750 if MFS) from the result | 153,575.00 |
| 9. Alternative minimum tax foreign tax credit | 67,132.00 |
| 10. Tentative minimum tax (line 8 less line 9) | 86,443.00 |
| 11. Regular tax before credits (if Schedule J was used to figure tax, | |
|  use the refigured amounts for lines 44 and 47 of Form 1040 | |
|  without using Schedule J) | 0.00 |
| 12. Alternative minimum tax | 86,443.00 |

### Exemption Worksheet (line 6 above)

| | |
|---|---:|
| A. Exemption amount based on filing status | 50,600.00 |
| B. Alternative minimum taxable income | 623,683.00 |
| C. Enter $112,500 ($150,000 if married filing jointly or | |
|  qualifying widow(er), $75,000 if married filing separately) | 112,500.00 |
| D. Subtract line C from line B | 511,183.00 |
| E. Multiply line D by 25% | 127,796.00 |
| F. Subtract line E from line A (if zero or less, enter zero) | 0.00 |

USA - 010204

Name of Taxpayer:    LAURA H KIM                                                    06/12/2018
Identification Number:    ████-8486                    Agreed                        19.00.00

## 2012 - Form 6251 - Continuation, Tax Computation Using Maximum Capital Gain Rates

| | |
|---|---|
| 1. Amount from Form 6251 report, line 7 | 623,683.00 |
| (If FEIT worksheet for AMT was used, enter amount from line 3 of that worksheet instead) | |
| 2. Amount from line 6 Qualified Dividends and Capital Gain Tax Worksheet | |
| or line 13 Schedule D Tax Worksheet (refigured for AMT) | 135,042.00 |
| 3. Amount from Schedule D line 19 (refigured for AMT) | 0.00 |
| 4. Amount from line 2 if no Schedule D worksheet; otherwise, the smaller of | |
| the sum of line 2 and line 3 or Schedule D worksheet line 10 (refigured for AMT) | 135,042.00 |
| 5. Smaller of line 1 or line 4 | 135,042.00 |
| 6. Subtract line 5 from line 1 | 488,641.00 |
| 7. If line 6 is $175,000 or less ($87,500 if MFS) multiply line 6 by 26%; | |
| otherwise, multiply line 6 by 28% and subtract $3,500 ($1,750 if MFS) | |
| from the result | 133,319.00 |
| 8. Enter: | |
| $70,700 if married filing jointly or qualifying widow(er) | |
| $35,350 if single or married filing separately | 35,350.00 |
| $47,350 if head of household | |
| 9. Amount from line 7 Qualified Dividends and Capital Gain Tax Worksheet | |
| or line 14 Schedule D Tax Worksheet | 477,580.00 |
| 10. Subtract line 9 from line 8 (if zero or less, enter zero) | 0.00 |
| 11. Smaller of line 1 or line 2 | 135,042.00 |
| 12. Smaller of line 10 or line 11 | 0.00 |
| 13. Subtract line 12 from line 11 | 135,042.00 |
| 14. Multiply line 13 by 15% | 20,256.00 |
| 15. Subtract line 11 from line 5 | 0.00 |
| 16. Multiply line 15 by 25% | 0.00 |
| 17. Total of lines 7, 14 and 16 | 153,575.00 |
| 18. If line 1 is $175,000 or less ($87,500 if MFS) multiply line 1 by 26%; | |
| otherwise, multiply line 1 by 28% and subtract $3,500 ($1,750 if MFS) | |
| from the result | 171,131.00 |
| 19. Smaller of line 17 or line 18. Enter here and on line 8 of Form 6251 report | 153,575.00 |

| Name of Taxpayer: LAURA H KIM | | 06/12/2018 |
|---|---|---|
| Identification Number: ____8486 | Agreed | 19.00.00 |

## 2012 - Form 8801 - Credit for Prior Year Minimum Tax

### Part I - Net Minimum Tax on Exclusion Items

| | |
|---|---|
| 1. Taxable income (loss) from prior year Form 6251 | 607,422.00 |
| 2. Adjustments and preferences treated as exclusion items | 0.00 |
| 3. Minimum tax credit net operating loss deduction | 0.00 |
| 4. Combine lines 1 through 3 (if more than $223,900 and married filing separate for prior year - see instructions) | 607,422.00 |
| 5. Exemption amount from prior year Form 6251 | 48,450.00 |
| 6. Phase-out exemption from prior year Form 6251 | 112,500.00 |
| 7. Subtract line 6 from line 4 (if zero or less, enter -0-) | 494,922.00 |
| 8. Multiply line 7 by 25% | 123,731.00 |
| 9. Subtract line 8 from line 5 (if zero or less, enter -0-) | 0.00 |
| 10. Subtract line 9 from line 4 (if zero or less, enter -0-) | 607,422.00 |
| 11. Line 11 computation (if filing Form 2555/2555-EZ for prior year, enter amount from page 3) or, (if capital gains for prior year, enter amount from Part III, line 47); otherwise, multiply line 10 by 26% and subtract $3,500 from the result) | 131,270.00 |
| 12. Minimum tax foreign tax credit on exclusion items | 0.00 |
| 13. Tentative minimum tax on exclusion items (line 11 less line 12) | 131,270.00 |
| 14. Regular tax before credits minus foreign tax credit (line 34 of prior year Form 6251) | 60,811.00 |
| 15. Net minimum tax on exclusion items (line 13 less line 14) | 70,459.00 |

### Part II - Current Year Nonrefundable and Refundable Credits and Carryover

| | |
|---|---|
| 16. Line 35 of prior year Form 6251 | 74,365.00 |
| 17. Amount from line 15 above | 70,459.00 |
| 18. Adjusted net minimum tax (line 16 less line 17) | 3,906.00 |
| 19. Carryforward of minimum tax credit from prior year | 0.00 |
| 20. Prior year coallowed qualified electric vehicle credit | 0.00 |
| 21. Combine lines 18 through 20 | 3,906.00 |
| 22. Current year regular income tax less allowable credits | 0.00 |
| 23. Current year tentative minimum tax (line 33 of Form 6251) | 86,443.00 |
| 24. Subtract line 23 from line 22 (if zero or less, enter -0-) | 0.00 |
| 25. Current year nonrefundable credit (smaller of line 21 or line 24) | 0.00 |
| 26. Tentative refundable credit (amount from Part IV, line 53 or 57) (if applicable) | 0.00 |
| 27. Current year refundable credit (line 26 less line 25) | 0.00 |
| 28. Credit carryforward (subtract larger of line 25 or line 26 from line 21) | 3,906.00 |

USA - 010206

Name of Taxpayer:   LAURA H KIM                 08/12/2018
Identification Number: &#9608;&#9608;-8486   Agreed             19.00.00

### Part III - Tax Computation Using Maximum Capital Gains Rates

29. Amount from line 10
 (If FEIT worksheet for F8801 was used,
 enter amount from line 3 of that worksheet instead)         607,422.00
30. Amount from prior year line 6 of Qualified Dividends Worksheet or
 line 13 of Schedule D Tax Worksheet           271,604.75
31. Amount from prior year Schedule D, line 19         0.00
32. Smaller of lines 30 and 31
 or prior year line 10 of Schedule D Tax Worksheet      271,604.75
33. Smaller of line 29 or line 32            271,604.75
34. Subtract line 33 from line 29            335,817.25
35. Multiply line 34 by 28% and subtract $ 3,500 from the result    90,529.00
36. Enter:                     34,500.00
 $69,000 if married filing jointly or qualifying widow(er) for 2011,
 $34,500 if single or married filing separately for 2011,
 $46,250 if head of household for 2011
37. Amount from prior year line 7 of Qualified Dividends Worksheet or
 line 14 of Schedule D Tax Worksheet          332,117.25
38. Subtract line 37 from line 36. If zero or less, enter -0-      0.00
39. Smaller of line 29 or line 30            271,604.75
40. Smaller of line 38 or line 39            0.00
41. Subtract line 40 from line 39           271,604.75
42. Multiply line 41 by 15%             40,741.00
43. Subtract line 39 from line 33            0.00
44. Multiply line 43 by 25%             0.00
45. Add lines 35, 42, and 44            131,270.00
46. Multiply line 29 by 28% and subtract $ 3,500 from the result    166,578.00
47. Smaller of line 45 or line 46 (enter here and on line 11 above)
 (If FEIT worksheet for F8801 was used,
 enter amount on line 4 of that worksheet instead)       131270.00

### Part IV - Tentative Refundable Credit

48. Enter amount from line 21
49. Minimum tax credit amount
 from 2010 Form 8801, lines 18 and 20 (if zero or less, enter -0-)
50. Minimum tax credit amount
 from 2011 Form 8801, lines 18 and 20 (if zero or less, enter -0-)
51. Total of lines 18 and 20 above (if zero or less, enter -0-)
52. Add lines 49 thru 51
53. Long-term unused minimum tax credit (subtract line 52 from line 48)
 (if zero or less, stop and enter -0- here and on line 26 and
 do not complete the rest of Part IV),
54. Multiply line 53 by 50%
55. Prior year AMT refundable credit amount
56. Larger of line 54 or line 55
57. Smaller of line 53 or line 56. Enter result here and on line 26

Name of Taxpayer:   LAURA H KIM                                                    06/12/2018
Identification Number:   ███-8486          Agreed                                  19.00.00

## 2012 - FOREIGN EARNED INCOME TAX WORKSHEET for PRIOR YEAR MINIMUM TAX

1. Enter amount from Form 8801 , line 10                                            0.00
2. Enter amount from 2011 Form 2555, line 45 and 50,
   or Form 2555-EZ, line 18                                                         0.00
3. Add lines 1 and 2                                                               0.00
4. Tax on amount on line 3
   If capital gains are reported for prior year,
   enter amount from line 3 on Form 8801, line 29.
   Complete Form 8801, Part III and enter amount from line 47 here
   All others: If line 3 is $175.000 or less
   ($87,500 or less if married filing separately for prior year),
   multiply line 3 by 26%;
   otherwise, multiply line 3 by 28% and subtract $3,500
   ($1,750 if married filing separately for prior year) from the result            0.00
5. Tax on amount on line 2
   If line 2 is $175,000 or less
   ($87,500 or less if married filing separately for prior year),
   multiply line 2 by 26%;
   otherwise, multiply line 2 by 28% and subtract $3,500
   ($1,750 if married filing separately for prior year) from the result            0.00
6. Subtract line 5 from line 4. If zero or less, enter -0-
   (enter amount here and on line 11 of page 1)                                    0.00

NOTE: Computations include capital gain excess determination and any necessary modifications to Form 8801. Part III

USA - 010208

| Name of Taxpayer: | LAURA H KIM | | 06/12/2018 |
| Identification Number. | ▮-8486 | Agreed | 19.00.00 |

## 2012 - Qualified Dividends and Capital Gain Tax Worksheet

1. Enter the taxable income from Form 1040, line 43, or the amount from
   Foreign Earned Income Tax Worksheet, line 3, if filing Form 2555 or 2555-EZ ... 612,622.00

2. Enter the qualified dividends from Form 1040, line 9b ... 135,042.00

3. If filing Schedule D, enter the smaller line 15 or line 16 of Schedule D, but do not enter
   less than -0-. Otherwise, enter the amount from Form 1040, line 13 ... 0.00

4. Add lines 2 and 3 ... 135,042.00

5. If filing Form 4952, enter the amount, if any, from line 4g of Form 4952. Otherwise, enter -0- ... 0.00

6. Subtract line 5 from line 4. If zero or less, enter -0- ... 135,042.00

7. Subtract line 6 from line 1. If zero or less, enter -0- ... 477,580.00

8. Enter:
   $35,350 if single or married filing separately;
   $70,700 if married filing jointly or qualifying widow(er); or
   $47,350 if head of household ... 35,350.00

9. Enter the smaller of line 1 or line 8 ... 35,350.00

10. Enter the smaller of line 7 or line 9 ... 35,350.00

11. Subtract line 10 from line 9. This amount is taxed at 0% ... 0.00

12. Enter the smaller of line 1 or line 6 ... 135,042.00

13. Enter the amount from line 11 ... 0.00

14. Subtract line 13 from line 12 ... 135,042.00

15. Multiply line 14 by 15% (.15) ... 20,256.00

16. Figure the tax on the amount on line 7. If the amount on line 7 is less than $100,000,
    use the Tax Table to figure this tax. If the amount on line 7 is $100,000 or more,
    use the Tax Computation Worksheet ... 143,914.00

17. Add lines 15 and 16 ... 164,170.00

18. Figure the tax on the amount on line 1. If the amount on line 1 is less than $100,000,
    use the Tax Table to figure this tax. If the amount on line 1 is $100,000 or more,
    use the Tax Computation Worksheet ... 191,179.00

19. Tax on all taxable income. Enter the smaller of line 17 or line 18
    Also include this amount on Form 1040, line 44, or
    Foreign Earned Income Tax Worksheet, line 4, if applicable ... 164,170.00

USA - 010209

| Name of Taxpayer: | LAURA H KIM | | Page | cf |
| Identification Number: | -8486 | Agreed | Tax Period Ending: | 12/31/2012 |

## Civil Fraud Penalty under IRC 6663(a)

**Civil Fraud Penalty - Internal Revenue Code Section 6663(a)**

It has been determined that the underpayment of tax shown on line 5 below is attributable to fraud.
Therefore, an addition to tax is imposed as provided by Section 6663(a) of the Internal Revenue Code.

| | |
|---|---|
| 1. Total underpayment, excluding underpayment attributable to Section 6662A penalty issues, if any | 0.00 |
| 2. Less: Underpayment attributable to non-penalty issues | 0.00 |
| 3. Less: Underpayment attributable to 20% Section 6662 penalty issues | 0.00 |
| 4. Less: Underpayment attributable to 40% Section 6662 penalty issues | 0.00 |
| 5. Underpayment to which Section 6663(a) applies (Line 1 less the sum of lines 2, 3, and 4) | 0.00 |
| 6. Applicable penalty rate | 75.00% |
| 7. Section 6663(a) civil fraud penalty (Line 5 times line 6) | 0.00 |
| 8. Less: Previously assessed/previously agreed Section 6663(a) penalty | 0.00 |
| 9. Total section 6663(a) civil fraud penalty (Line 7 less line 8) | 0.00 |

| Name of Taxpayer: | LAURA H KIM | | 06/12/2018 |
|---|---|---|---|
| Identification Number: | ▌-8486 | Agreed | 19.00.00 |

## HOW TO PAY YOUR TAXES

If you agree with our examination, pay now by sending a check or money order payable to United States Treasury and your signed agreement. The enclosed report does not reflect any balance currently due on your account.

Why it is to your advantage to pay now:

- Decreases future interest charges
- Prevents assessment of failure to pay penalty
- Reduces payment of nondeductible interest
- Eliminates further contact with us

If you agree with our examination and cannot pay now:

1) Can you pay the full amount within 120 days? [ ] Yes    [ ] No
   - If yes, send in the signed agreement now and submit the balance due when you receive a bill. Checks should be made payable to United States Treasury.
   - If no, you may be eligible for a payment plan.

2) If you would like us to consider an installment agreement, submit your written request or check the box below and return this flyer with your signed agreement.

   [ ] I would like to pay $ _____ per month.

   (We encourage you to make your payments as large as possible to limit penalty and interest charges.)

   I would like my payment to be due on the _____ of the month.

   (Please indicate a date between the 1 st and 28th of the month.)

   You will be charged a fee if your request is approved  DO NOT include the fee with this flyer. We will send you a bill for the fee when we approve your request.

   Please provide a telephone number where we can contact you regarding your request.

   Home: ( ) _____

   Work: ( ) _____

ALSO, if you agree with our examination, PLEASE SIGN PAGE 2 OF THE REPORT (Form 4549) and return pages 1 and 2 to us.

* Interest and applicable penalties will continue to accrue until your balance is paid in full.

* All checks or money orders for payment should be made payable to United States Treasury.

USA - 010211

| Name Of Taxpayer: | LAURA H KIM | | 06/12/2018 |
|---|---|---|---|
| Identification Number: ▮-8486 | | Agreed | 19.00.00 |

## 2012 TAX YEAR INTEREST COMPUTATION

| | | |
|---|---|---|
| Interest computed to | | 07/12/2018 |
| Total Tax Deficiency | | $68,717.00 |

Plus Penalties*
| | | |
|---|---|---|
| Failure to File - IRC 6651 | $.00 | |
| Accuracy Related Penalty - IRC 6662 | $.00 | |
| Accuracy Related Penalty - IRC 6662A | $.00 | |
| Civil Fraud - IRC 6663 | $.00 | |
| Manually Computed Penalty | $.00 | |

| | | |
|---|---|---|
| Total Penalties Subject to Interest | | $.00 |
| Tax Deficiency and Penalties Subject to Interest | | $68,717.00 |

| Type | Effective Dates | Days | Rate | Interest |
|---|---|---|---|---|
| Compound | 04/15/2013--06/30/2013 | 76 | 3% | $430.57 |
| Compound | 07/01/2013--09/30/2013 | 92 | 3% | $524.83 |
| Compound | 10/01/2013--12/31/2013 | 92 | 3% | $528.81 |
| Compound | 01/01/2014--03/31/2014 | 90 | 3% | $521.20 |
| Compound | 04/01/2014--06/30/2014 | 91 | 3% | $530.93 |
| Compound | 07/01/2014--09/30/2014 | 92 | 3% | $540.81 |
| Compound | 10/01/2014--12/31/2014 | 92 | 3% | $544.92 |
| Compound | 01/01/2015--03/31/2015 | 90 | 3% | $537.07 |
| Compound | 04/01/2015--06/30/2015 | 91 | 3% | $547.09 |
| Compound | 07/01/2015--09/30/2015 | 92 | 3% | $557.28 |
| Compound | 10/01/2015--12/31/2015 | 92 | 3% | $561.51 |
| Compound | 01/01/2016--03/31/2016 | 91 | 3% | $558.07 |
| Compound | 04/01/2016--06/30/2016 | 91 | 4% | $750.58 |
| Compound | 07/01/2016--09/30/2016 | 92 | 4% | $766.46 |
| Compound | 10/01/2016--12/31/2016 | 92 | 4% | $774.20 |
| Compound | 01/01/2017--03/31/2017 | 90 | 4% | $767.05 |
| Compound | 04/01/2017--06/30/2017 | 91 | 4% | $783.30 |
| Compound | 07/01/2017--09/30/2017 | 92 | 4% | $799.89 |
| Compound | 10/01/2017--12/31/2017 | 92 | 4% | $807.99 |
| Compound | 01/01/2018--03/31/2018 | 90 | 4% | $798.35 |
| Compound | 04/01/2018--06/30/2018 | 91 | 5% | $1,020.34 |
| Compound | 07/01/2018--07/12/2018 | 12 | 5% | $135.50 |

USA - 010212

Name Of Taxpayer:  LAURA H KIM                                                    06/12/2018
Identification Number:  ████-8486                        Agreed                   19.00.00

## 2012  TAX YEAR INTEREST COMPUTATION

Interest computed to                                                 07/12/2018

| Type | Effective Dates | Days | Rate | Interest |
|------|-----------------|------|------|----------|

Total Interest                                                      $13,786.75

Interest on penalties is computed from the due date of the return (including extensions) until the date of payment. The interest shown on this report is estimated. Interest is computed from the due date of the return (including extensions) and will continue to accrue until the date paid in full. Interest on the failure to pay penalty is computed from the date of assessment and is therefore not considered in this report.

USA - 010213

Name of Taxpayer:   LAURA H KIM                                          06/12/2018
Identification Number: ▓▓▓-8486              Total                        19.00.00

## 2012 - Form 6251 - Alternative Minimum Tax Computation

1. If filing Schedule A, enter taxable income before exemptions;
   otherwise, enter adjusted gross income                              844,309.00
2. Total adjustment and preferences (excluding any NOL deduction)       (139.00)
3. Net operating loss deduction                                            0.00
4. Alternative tax net operating loss deduction                           0.00
5. Alternative minimum taxable income (combine lines 1 thru 4)        844,170.00
6. Exemption amount                                                        0.00
7. Subtract line 6 from line 5 (if zero or less, enter zero)         844,170.00
8. If capital gains are reported, see line 19 from continuation page
   (if FEIT worksheet for AMT is used, enter amount from line 6 of that worksheet instead)
   All others:
   If line 7 is $175,000 or less ($87,500 if MFS) multiply
   line 7 by 26%. Otherwise, multiply line 7 by 28% and
   subtract $3,500 ($1,750 if MFS) from the result                    215,312.00
9. Alternative minimum tax foreign tax credit                          67,132.00
10. Tentative minimum tax (line 8 less line 9)                         148,180.00
11. Regular tax before credits (if Schedule J was used to figure tax,
   use the refigured amounts for lines 44 and 47 of Form 1040
   without using Schedule J)                                           68,411.00
12. Alternative minimum tax                                            79,769.00

### Exemption Worksheet (line 6 above)

A. Exemption amount based on filing status                             50,600.00
B. Alternative minimum taxable income                                 844,170.00
C. Enter $112,500 ($150,000 if married filing jointly or
   qualifying widow(er), $75,000 if married filing separately)        112,500.00
D. Subtract line C from line B                                        731,670.00
E. Multiply line D by 25%                                             182,918.00
F. Subtract line E from line A (if zero or less, enter zero)               0.00

Name of Taxpayer:   LAURA H KIM                                        06/12/2018
Identification Number:   ▮-8486                 Total                   19.00.00

## 2012 - Form 6251 - Continuation, Tax Computation Using Maximum Capital Gain Rates

1. Amount from Form 6251 report, line 7                                             844,170.00
   (If FEIT worksheet for AMT was used, enter amount from line 3 of that worksheet instead)
2. Amount from line 6 Qualified Dividends and Capital Gain Tax Worksheet
   or line 13 Schedule D Tax Worksheet (refigured for AMT)                          135,042.00
3. Amount from Schedule D line 19 (refigured for AMT)                                     0.00
4. Amount from line 2 if no Schedule D worksheet; otherwise, the smaller of
   the sum of line 2 and line 3 or Schedule D worksheet line 10 (refigured for AMT)  135,042.00
5. Smaller of line 1 or line 4                                                       135,042.00
6. Subtract line 5 from line 1                                                       709,128.00
7. If line 6 is $175,000 or less ($87,500 if MFS) multiply line 6 by 26%;
   otherwise, multiply line 6 by 28% and subtract $3,500 ($1,750 if MFS)
   from the result                                                                   195,056.00
8. Enter:
   $70,700 if married filing jointly or qualifying widow(er)
   $35,350 if single or married filing separately                                     35,350.00
   $47,350 if head of household
9. Amount from line 7 Qualified Dividends and Capital Gain Tax Worksheet
   or line 14 Schedule D Tax Worksheet                                               698,067.00
10. Subtract line 9 from line 8 (if zero or less, enter zero)                              0.00
11. Smaller of line 1 or line 2                                                      135,042.00
12. Smaller of line 10 or line 11                                                         0.00
13. Subtract line 12 from line 11                                                    135,042.00
14. Multiply line 13 by 15%                                                           20,256.00
15. Subtract line 11 from line 5                                                          0.00
16. Multiply line 15 by 25%                                                               0.00
17. Total of lines 7, 14 and 16                                                      215,312.00
18. If line 1 is $175,000 or less ($87,500 if MFS) multiply line 1 by 26%;
    otherwise, multiply line 1 by 28% and subtract $3,500 ($1,750 if MFS)
    from the result                                                                  232,868.00
19. Smaller of line 17 or line 18. Enter here and on line 8 of Form 6251 report      215,312.00

USA - 010215

| Name of Taxpayer: | LAURAH KIM | | 06/12/2018 |
| Identification Number: | ███-8486 | Total | 19.00.00 |

## 2012 - Form 8801 - Credit for Prior Year Minimum Tax

### Part I - Net Minimum Tax on Exclusion Items

| | |
|---|---:|
| 1. Taxable income (loss) from prior year Form 6251 | 717,835.00 |
| 2. Adjustments and preferences treated as exclusion items | 0.00 |
| 3. Minimum tax credit net operating loss deduction | 0.00 |
| 4. Combine lines 1 through 3 (if more than $223,900 and married filing separate for prior year- see instructions) | 717,835.00 |
| 5. Exemption amount from prior year Form 6251 | 48,450.00 |
| 6. Phase-out exemption from prior year Form 6251 | 112,500.00 |
| 7. Subtract line 6 from line 4 (if zero or less, enter -0-) | 605,335.00 |
| 8. Multiply line 7 by 25% | 151,334.00 |
| 9. Subtract line 8 from line 5 (if zero or less, enter -0-) | 0.00 |
| 10. Subtract line 9 from line 4 (if zero or less, enter -0-) | 717,835.00 |
| 11. Line 11 computation (if filing Form 2555/2555-EZ for prior year, enter amount from page 3) or, (if capital gains for prior year, enter amount from Part III, line 47); otherwise, multiply line 10 by 28% and subtract $3,500 from the result) | 162,185.00 |
| 12. Minimum tax foreign tax credit on exclusion items | 0.00 |
| 13. Tentative minimum tax on exclusion items (line 11 less line 12) | 162,185.00 |
| 14. Regular tax before credits minus foreign tax credit (line 34 of prior year Form 6251) | 98,515.00 |
| 15. Net minimum tax on exclusion items (line 13 less line 14) | 63,670.00 |

### Part II - Current Year Nonrefundable and Refundable Credits and Carryover

| | |
|---|---:|
| 16. Line 35 of prior year Form 6251 | 67,576.00 |
| 17. Amount from line 15 above | 63,670.00 |
| 18. Adjusted net minimum tax (line 16 less line 17) | 3,906.00 |
| 19. Carryforward of minimum tax credit from prior year | 0.00 |
| 20. Prior year unallowed qualified electric vehicle credit | 0.00 |
| 21. Combine lines 18 through 20 | 3,906.00 |
| 22. Current year regular income tax less allowable credits | 68,411.00 |
| 23. Current year tentative minimum tax (line 33 of Form 6251) | 148,180.00 |
| 24. Subtract line 23 from line 22 (if zero or less, enter -0-) | 0.00 |
| 25. Current year nonrefundable credit (smaller of line 21 or line 24) | 0.00 |
| 26. Tentative refundable credit (amount from Part IV, line 53 or 57) *(if applicable)* | 0.00 |
| 27. Current year refundable credit (line 26 less line 25) | 0.00 |
| 28. Credit carryforward (subtract larger of line 25 or line 26 from line 21) | 3,906.00 |

USA - 010216

Name of Taxpayer:   LAURA H KIM                                                    06/12/2018
Identification Number: ▮▮8486          Total                                        19.00.00

## Part III - Tax Computation Using Maximum Capital Gains Rates

29. Amount from line 10
    (If FEIT worksheet for F8801 was used,
    enter amount from line 3 of that worksheet instead)                            717,835.00
30. Amount from prior year line 6 of Qualified Dividends Worksheet or
    line 13 of Schedule D Tax Worksheet                                            271,604.75
31. Amount from prior year Schedule D. line 19                                           0.00
32. Smaller of lines 30 and 31
    or prior year line 10 of Schedule D Tax Worksheet                             271,604.75
33. Smaller of line 29 or line 32                                                 271,604.75
34. Subtract line 33 from line 29                                                 446,230.25
35. Multiply line 34 by 28 % and subtract $ 3,500 from the result                 121,444.00
36. Enter:                                                                         34,500.00
    $69,000 if married filing jointly or qualifying widow(er) for 2011,
    $34,500 if single or married filing separately for 2011,
    $46,250 if head of household for 2011
37. Amount from prior year line 7 of Qualified Dividends Worksheet or
    line 14 of Schedule D Tax Worksheet                                           442530.25
38. Subtract line 37 from line 36. If zero or less, enter -0-                          0.00
39. Smaller of line 29 or line 30                                                 271,604.75
40. Smaller of line 38 or line 39                                                      0.00
41. Subtract line 40 from line 39                                                 271,604.75
42. Multiply line 41 by 15%                                                        40,741.00
43. Subtract line 39 from line 33                                                      0.00
44. Multiply line 43 by 25%                                                            0.00
45. Add lines 35, 42, and 44                                                      162,185.00
46. Multiply line 29 by 28% and subtract $ 3,500 from the result                  197,494.00
47. Smaller of line 45 or line 46 (enter here and on line 11 above)
    (If FEIT worksheet for F8801 was used,
    enter amount on line 4 of that worksheet instead)                             162,185.00

## Part IV - Tentative Refundable Credit

48. Enter amount from line 21
49. Minimum tax credit amount
    from 2010 Form 8801, lines 18 and 20 (if zero or less, enter -0-)
50. Minimum tax credit amount
    from 2011 Form 8801, lines 18 and 20 (if zero or less, enter -0-)
51. Total of lines 18 and 20 above (if zero or less, enter -0-)
52. Add lines 49 thru 51
53. Long-term unused minimum tax credit (subtract line 52 from line 48)
    (if zero or less, stop and enter -0- here and on line 26 and
    do not complete the rest of Part IV).
54. Multiply line 53 by 50%
55. Prior year AMT refundable credit amount
56. Larger of line 54 or line 55
57. Smaller of line 53 or line 56. Enter result here and on line 26

USA - 010217

| Name of Taxpayer: | LAURAH KIM | | 06/12/2018 |
| Identification Number: | ▓▓▓-8486 | Total | 1900.00 |

## 2012 - FOREIGN EARNED INCOME TAX WORKSHEET for PRIOR YEAR MINIMUM TAX

| | |
|---|---|
| 1. Enter amount from Form 8801, line 10 | 0.00 |
| 2. Enter amount from 2011 Form 2555, line 45 and 50, | |
| or Form 2555-EZ, line 18 | 0.00 |
| 3. Add lines 1 and 2 | 0.00 |
| 4. Tax on amount on line 3 | |
| If capital gains are reported for prior year, | |
| enter amount from line 3 on Form 8801, line 29. | |
| Complete Form 8801, Part III and enter amount from line 47 here | |
| All others: If line 3 is $175,000 or less | |
| ($87,500 or less if married filing separately for prior year), | |
| multiply line 3 by 26%; | |
| otherwise, multiply line 3 by 28% and subtract $3,500 | |
| ($1,750 if married filing separately for prior year) from the result | 0.00 |
| 5. Tax on amount on line 2 | |
| If line 2 is $175,000 or less | |
| ($87,500 or less if married filing separately for prior year), | |
| multiply line 2 by 26%; | |
| otherwise, multiply line 2 by 28% and subtract $3,500 | |
| ($1,750 if married filing separately for prior year) from the result | 0.00 |
| 6. Subtract line 5 from line 4. If zero or less, enter -0- | |
| (enter amount here and on line 11 of page 1) | 0.00 |

NOTE: Computations include capital gain excess determination and any necessary modifications to Form 8801, Part III .

USA - 010218

| Name of Taxpayer: | LAURA H KIM | | 06/12/2018 |
|---|---|---|---|
| Identification Number: | 8486 | Total | 19.00.00 |

## EXPLANATION OF THE DELINQUENCY PENALTY

Since your income tax return was not filed within the time limit prescribed by law and/or
the tax was not paid, and you have not shown that such failure was due to reasonable cause,
an addition to the tax is charged as shown below, in accordance with Section 6651(a)(1)
and/or Section 6651(a)(2) of the Internal Revenue Code.

### 2012 - DELINQUENCY PENALTY

| | | |
|---|---|---|
| 1. Delinquency penalty abated | | 0.00 |
| 2. Date return due | 10/15/2013 | |
| 3. Date return filed | 10/21/2014 | |
| 4. Failure to File penalty rate | 0.250 | |
| 5. Failure to Pay penalty rate | 0.000 | |
| 6. Total corrected tax liability | | 148,180.00 |
| 7. Allowable payments on or prior to due date of return | | 8,292.00 |
| 8. Net Amount Due (line 6 less line 7) | | 139,888.00 |
| 9. Failure to File Penalty - line 8 multiplied by line 4 | | 34,972.00 |
| 10. Minimum penalty if over 60 days delinquent | | 135.00 |
| 11. Failure to File Penalty - Greater of line 9 or line 10 | | 34,972.00 |
| 12. Previously assessed/previously agreed Failure to File Penalty | | 0.00 |
| 13. Net Failure to File Penalty - line 11 less line 12 | | 34,972.00 |
| 14. Failure to Pay Penalty - line 8 multiplied by line 5 | | 0.00 |
| 15. Previously assessed/previously agreed Failure to Pay Penalty | | 0.00 |
| 16. Net Failure to Pay Penalty - line 14 less line 15 * | | 0.00 |
| 17. Total Delinquency Penalty - Sum of line 13 and 16 | | 34,972.00 |

* If an amount appears as the Failure to Pay Penalty, the amount only reflects the addition to tax under
  Internal Revenue Code section 6651(a)(2) through the date of this notice. The addition to tax will
  continue to accrue from the due date of the return at a rate of 0.5 percent each month, or fraction
  thereof, of nonpayment, not exceeding 25 percent.

USA - 010219

| Name of Taxpayer: | LAURA H KJM | | 06/12/2018 |
| Identification Number: | ▮-8486 | Total | 19,00.00 |

## 2012 - Qualified Dividends and Capital Gain Tax Worksheet

1. Enter the taxable income from Form 1040, line 43, or the amount from
   Foreign Earned Income Tax Worksheet, line 3, if filing Form 2555 or 2555-EZ     833,109.00

2. Enter the qualified dividends from Form 1040, line 9b     135,042.00

3. If filing Schedule D, enter the smaller line 15 or line 16 of Schedule D, but do not enter
   less than -0-. Otherwise, enter the amount from Form 1040, line 13     0.00

4. Add lines 2 and 3     135,042.00

5. If filing Form 4952, enter the amount, if any, from line 4g of Form 4952. Otherwise, enter-0-     0.00

6. Subtract line 5 from line 4. If zero or less, enter -0-     135,042.00

7. Subtract line 6 from line 1. If zero or less, enter -0-     698,067.00

8. Enter:
       $35,350 if single or married filing separately;
       $70,700 if married filing jointly or qualifying widow(er); or
       $47,350 if head of household     35,350.00

9. Enter the smaller of line 1 or line 8     35,350.00

10. Enter the smaller of line 7 or line 9     35,350.00

11. Subtract line 10 from line 9. This amount is taxed at 0%     0.00

12. Enter the smaller of line 1 or line 6     135,042.00

13. Enter the amount from line 11     0.00

14. Subtract line 13 from line 12     135,042.00

15. Multiply line 14 by 15% (.15)     20,256.00

16. Figure the tax on the amount on line 7. If the amount on line 7 is less than $100,000,
    use the Tax Table to figure this tax. If the amount on line 7 is $100,000 or more,
    use the Tax Computation Worksheet     221,084.00

17. Add lines 15 and 16     241,340.00

18. Figure the tax on the amount on line 1. If the amount on line 1 is less than $100,000,
    use the Tax Table to figure this tax. If the amount on line 1 is $100,000 or more,
    use the Tax Computation Worksheet     268,349.00

19. Tax on all taxable income. Enter the smaller of line 17 or line 18
    Also include this amount on Form 1040, line 44, or
    Foreign Earned Income Tax Worksheet, line 4, if applicable     241,340.00

USA - 010220

| Name of Taxpayer: | LAURA H KIM | | Page | of |
| Identification Number: | -8486 | Total | Tax Period Ending: 12/31/2012 | |

## Civil Fraud Penalty under IRC 6663(a)

**Civil Fraud Penalty - Internal Revenue Code Section 6663(a)**

It has been determined that the underpayment of tax shown on line 5 below is attributable to fraud.
Therefore, an addition to tax is imposed as provided by Section 6663(a) of the Internal Revenue Code.

| | |
|---|---:|
| 1. Total underpayment, excluding underpayment attributable to Section 6662A penalty issues, if any | 130,454.00 |
| 2. Less: Underpayment attributable to non-penalty issues | 0.00 |
| 3. Less: Underpayment attributable to 20% Section 6662 penalty issues | 0.00 |
| 4. Less: Underpayment attributable to 40% Section 6662 penalty issues | 0.00 |
| 5. Underpayment to which Section 6663(a) applies (Line 1 less the sum of lines 2, 3, and 4) | 130,454.00 |
| 6. Applicable penalty rate | 75.00% |
| 7. Section 6663(a) civil fraud penalty (Line 5 times line 6) | 97,840.50 |
| 8. Less: Previously assessed/previously agreed Section 6663(a) penalty | 0.00 |
| 9. Total section 6663(a) civil fraud penalty (Line 7 less line 8) | 97,840.50 |

| Name of Taxpayer: LAURA H KIM | | 06/12/2018 |
| Identification Number: ████8486 | Total | 19.00.00 |

## HOW TO PAY YOUR TAXES

If you agree with our examination, pay now by sending a check or money order payable to United States Treasury and your signed agreement. The enclosed report does not reflect any balance currently due on your account.

Why it is to your advantage to pay now:

- Decreases future interest charges
- Prevents assessment of failure to pay penalty
- Reduces payment of nondeductible interest
- Eliminates further contact with us

If you agree with our examination and cannot pay now:

1) Can you pay the full amount within 120 days?  [ ] Yes  [ ] No
   - If yes, send in the signed agreement now and submit the balance due when you receive a bill. Checks should be made payable to United States Treasury.
   - If no, you may be eligible for a payment plan.

2) If you would like us to consider an installment agreement, submit your written request or check the box below and return this flyer with your signed agreement.

   [ ] I would like to pay $ _____ per month.

   (We encourage you to make your payments as large as possible to limit penalty and interest charges.)

   I would like my payment to be due on the _____ of the month.

   (Please indicate a date between the 1st and 28th of the month.)

   You will be charged a fee if your request is approved. DO NOT include the fee with this flyer. We will send you a bill for the fee when we approve your request.

   Please provide a telephone number where we can contact you regarding your request.

   Home: (   ) _____

   Work: (   ) _____

ALSO, if you agree with our examination, PLEASE SIGN PAGE 2 OF THE REPORT (Form 4549) and return pages 1 and 2 to us.

* Interest and applicable penalties will continue to accrue until your balance is paid in full.
* All checks or money orders for payment should be made payable to United States Treasury.

USA - 010222

| Name Of Taxpayer: | LAURA H KIM | | 06/12/2018 |
|---|---|---|---|
| Identification Number: ████-8486 | | Total | 19.00.00 |

## 2012 TAX YEAR INTEREST COMPUTATION

| | | |
|---|---|---|
| Interest computed to | | 07/12/2018 |
| Total Tax Deficiency | | $61,737.00 |

Plus Penalties*
| | | |
|---|---|---|
| Failure to File - IRC 6651 | $34,972.00 | |
| Accuracy Related Penalty - IRC 6662 | $.00 | |
| Accuracy Related Penalty - IRC 6662A | $.00 | |
| Civil Fraud - IRC 6663 | $97,840.50 | |
| Manually Computed Penalty | $.00 | |

| | | |
|---|---|---|
| Total Penalties Subject to Interest | | $132,812.50 |
| Tax Deficiency and Penalties Subject to Interest | | $194,549.50 |

| Type | Effective Dates | Days | Rate | Interest |
|---|---|---|---|---|
| Compound | 04/15/2013--06/30/2013 | 76 | 3% | $386.84 |
| Compound | 07/01/2013--09/30/2013 | 92 | 3% | $471.52 |
| Compound | 10/01/2013--12/31/2013 | 92 | 3% | $1,318.27 |
| Compound | 01/01/2014--03/31/2014 | 90 | 3% | $1,460.57 |
| Compound | 04/01/2014--06/30/2014 | 91 | 3% | $1,487.82 |
| Compound | 07/01/2014--09/30/2014 | 92 | 3% | $1,515.53 |
| Compound | 10/01/2014--12/31/2014 | 92 | 3% | $1,527.03 |
| Compound | 01/01/2015--03/31/2015 | 90 | 3% | $1,505.05 |
| Compound | 04/01/2015--06/30/2015 | 91 | 3% | $1,533.13 |
| Compound | 07/01/2015--09/30/2015 | 92 | 3% | $1,561.68 |
| Compound | 10/01/2015--12/31/2015 | 92 | 3% | $1,573.53 |
| Compound | 01/01/2016--03/31/2016 | 91 | 3% | $1,563.88 |
| Compound | 04/01/2016--06/30/2016 | 91 | 4% | $2,103.37 |
| Compound | 07/01/2016-09/30/2016 | 92 | 4% | $2,147.85 |
| Compound | 10/01/2016--12/31/2016 | 92 | 4% | $2,169.56 |
| Compound | 01/01/2017--03/31/2017 | 90 | 4% | $2,149.51 |
| Compound | 04/01/2017--06/30/2017 | 91 | 4% | $2,195.05 |
| Compound | 07/01/2017--09/30/2017 | 92 | 4% | $2,241.54 |
| Compound | 10/01/2017--12/31/2017 | 92 | 4% | $2,264.25 |
| Compound | 01/01/2018--03/31/2018 | 90 | 4% | $2,237.23 |
| Compound | 04/01/2018--06/30/2018 | 91 | 5% | $2,859.32 |
| Compound | 07/01/2018--07/12/2018 | 12 | 5% | $379.72 |

USA - 010223

| Name Of Taxpayer: | LAURA H KIM | | 06/12/2018 |
| Identification Number: | ████-8486 | Total | 19,00.00 |

## 2012  TAX YEAR INTEREST COMPUTATION

Interest computed to                                                07/12/2018

| Type | Effective Dates | Days | Rate | Interest |
| --- | --- | --- | --- | --- |

Total Interest          $36,652.25

Interest on penalties is computed from the due date of the return (including extensions) until the date of payment.  The interest shown on this report is estimated.  Interest is computed from the due date of the return (including extensions) and will continue to accrue until the date paid in full.  Interest on the failure to pay penalty is computed from the date of assessment and is therefore not considered in this report.

USA - 010224

| Form **886-A**<br>(Rev. January<br>1994)886-A | **EXPLANATION OF ITEMS** | Schedule number or exhibit |
|---|---|---|
| Name of Taxpayer<br><br>LAURA H KIM | Taxpayer Identification Number<br><br>████8486 | Year/Period Ended<br><br>2010 2011 2012 |

**Statutory-Alt Min Tax**

| Tax Period | Per Return | Per Exam | Adjustment |
|---|---|---|---|
| 2010 | $0.00 | $112,151.00 | $112,151.00 |

You have an alternative minimum tax liability only if your tentative minimum tax exceeds your regular tax liability. Tentative minimum tax is computed by first calculating your alternative minimum taxable income, which equals your regular taxable income increased by any tax preference items for the taxable year, and increased or decreased by adjustment items for the taxable year. Alternative minimum taxable income is then reduced by an exemption amount:

($47,450 for Single/Head of Household
 $72,450 for Married Filing Joint/Surviving Spouse; and
 $36,225 for Married Filing Separately) which is subject to phase-out depending on the amount of your alternative minimum taxable income.

For taxable years after 1992, the remaining amount is subject to a 26 percent tax rate on the first $175,000 and 28 percent tax rate on any amount in excess of $175,000. A tentative minimum tax is then computed by reducing the amount determined in the preceding sentence by any allowable foreign tax credit. The alternative minimum tax liability is the amount by which tentative minimum tax exceeds regular tax liability.

| Tax Period | Per Return | Per Exam | Adjustment |
|---|---|---|---|
| 2011 | $4,479.00 | $74,365.00 | $69,886.00 |

You have an alternative minimum tax liability only if your tentative minimum tax exceeds your regular tax liability. Tentative minimum tax is computed by first calculating your alternative minimum taxable income, which equals your regular taxable income increased by any tax preference items for the taxable year, and increased or decreased by adjustment items for the taxable year. Alternative minimum taxable income is then reduced by an exemption amount:

($48,450 for Single/Head of Household
 $74,450 for Married Filing Joint/Surviving Spouse; and
 $37,225 for Married Filing Separately) which is subject to phase-out depending on the amount of your alternative minimum taxable income.

For taxable years after 1992, the remaining amount is subject to a 26 percent tax rate on the first $175,000 and 28 percent tax rate on any amount in excess of $175,000. A tentative minimum tax is then computed by reducing the amount determined in the preceding sentence by any allowable foreign tax credit. The alternative minimum tax liability is the amount by which tentative minimum tax exceeds regular tax liability.

| Form **886-A** (Rev. January 1994)886-A | **EXPLANATION OF ITEMS** | | Schedule number or exhibit |
|---|---|---|---|
| Name of Taxpayer<br>LAURA H KIM | Taxpayer Identification Number<br>■■■-8486 | | Year/Period Ended<br>2010 2011 2012 |

|  | Tax Period<br>2012 | Per Return<br>$1,841.00 | Per Exam<br>$86,443.00 | Adjustment<br>$84,602.00 |
|---|---|---|---|---|

You have an alternative minimum tax liability only if your tentative minimum tax exceeds your regular tax liability. Tentative minimum tax is computed by first calculating your alternative minimum taxable income, which equals your regular taxable income increased by any tax preference items for the taxable year, and increased or decreased by adjustment items for the taxable year. Alternative minimum taxable income is then reduced by an exemption amount:

($50,600 for Single/Head of Household
$78,750 for Married Filing Joint/Surviving Spouse; and
$39,375 for Married Filing Separately) which is subject to phase-out depending on the amount of your alternative minimum taxable income.

For taxable years after 1992, the remaining amount is subject to a 26 percent tax rate on the first $175,000 and 28 percent tax rate on any amount in excess of $175,000. A tentative minimum tax is then computed by reducing the amount determined in the preceding sentence by any allowable foreign tax credit. The alternative minimum tax liability is the amount by which tentative minimum tax exceeds regular tax liability.

USA - 010226

| Form **886-A**<br>(Rev. January<br>1994)886-A | **EXPLANATION OF ITEMS** | Schedule number or exhibit |
|---|---|---|
| Name of Taxpayer<br>LAURA H KIM | Taxpayer Identification Number<br>███-8486 | Year/Period Ended<br>2010 2011 2012 |

**Statutory-Alt Min Tax**

| Tax Period | Per Return | Per Exam | Adjustment |
|---|---|---|---|
| 2010 | $0.00 | $38,236.00 | $38,236.00 |

You have an alternative minimum tax liability only if your tentative minimum tax exceeds your regular tax liability. Tentative minimum tax is computed by first calculating your alternative minimum taxable income, which equals your regular taxable income increased by any tax preference items for the taxable year, and increased or decreased or adjustment items for the taxable year. Alternative minimum taxable income is then reduced by an exemption amount:

($47,450 for Single/Head of Household
 $72,450 for Married Filing Joint/Surviving Spouse; and
 $36,225 for Married Filing Separately) which is subject to phase-out depending on the amount of your alternative minimum taxable income.

For taxable years after 1992, the remaining amount is subject to a 26 percent tax rate on the first $175,000 and 28 percent tax rate on any amount in excess of $175,000. A tentative minimum tax is then computed by reducing the amount determined in the preceding sentence by any allowable foreign tax credit. The alternative minimum tax liability is the amount by which tentative minimum tax exceeds regular tax liability.

| Tax Period | Per Return | Per Exam | Adjustment |
|---|---|---|---|
| 2011 | $4,479.00 | $67,576.00 | $63,097.00 |

You have an alternative minimum tax liability only if your tentative minimum tax exceeds your regular tax liability. Tentative minimum tax is computed by first calculating your alternative minimum taxable income, which equals your regular taxable income increased by any tax preference items for the taxable year, and increased or decreased by adjustment items for the taxable year. Alternative minimum taxable income is then reduced by an exemption amount:

($48,450 for Single/Head of Household
 $74,450 for Married Filing Joint/Surviving Spouse; and
 $37,225 for Married Filing Separately) which is subject to phase-out depending on the amount of your alternative minimum taxable income.

For taxable years after 1992, the remaining amount is subject to a 26 percent tax rate on the first $175,000 and 28 percent tax rate on any amount in excess of $175,000. A tentative minimum tax is then computed by reducing the amount determined in the preceding sentence by any allowable foreign tax credit. The alternative minimum tax liability is the amount by which tentative minimum tax exceeds regular tax liability.

Form **886-A** (1-1994)                    Department of the Treasury - Internal Revenue Service

USA - 010227

| Form **886-A**<br>(Rev. January<br>1994) 886-A | **EXPLANATION OF ITEMS** | Schedule number or exhibit |
|---|---|---|
| Name of Taxpayer<br>LAURA H KIM | Taxpayer Identification Number<br> █████-8486 | Year/Period Ended<br>2010 2011 2012 |

| | Tax Period<br>2012 | Per Return<br>$1,841.00 | Per Exam<br>$79,769.00 | Adjustment<br>$77,928.00 |
|---|---|---|---|---|

You have an alternative minimum tax liability only if your tentative minimum tax exceeds your regular tax liability. Tentative minimum tax is computed by first calculating your alternative minimum taxable income, which equals your regular taxable income increased by any tax preference items for the taxable year, and increased or decreased by adjustment items for the taxable year. Allternative minimum taxable income is then reduced by an exemption amount:

($50,600 for Single/Head of Household
 $78,750 for Married Filing Joint/Surviving Spouse; and
 $39,375 for Married Filing Separately) which is subject to phase-out depending on the amount of your alternative minimum taxable income.

For taxable years after 1992, the remaining amount is subject to a 26 percent tax rate on the first $175,000 and 28 percent tax rate on any amount in excess of $175,000. A tentative minimum tax is then computed by reducing the amount determined in the preceding sentence by any allowable foreign tax credit. The alternative minimum tax liability is the amount by which tentative minimum tax exceeds regular tax liability.

Form **886-A** (1-1994)                                                   Department of the Treasury - Internal Revenue Service

USA - 010228

Exhibit 103

Laura Kim

Redacted 8486

FBAR Penalty Calc by Exam

| Account Holder | Bank | Acct # | | 2011 Hi Agg Bal | Bal at 6-30-12 | Greater of $100,000 or 50% |
|---|---|---|---|---|---|---|
| Individual | Woori | | 2323 | 9,144,219.00 | 796.46 | 100,000.00 |
| | | | 0302 | 680,732.84 | 1,899.23 | 100,000.00 |
| | | | 0758 | 3,006,985.34 | 2,613.00 | 100,000.00 |
| | | | 5806 | | | 100,000.00 |
| | | | 4681 | 610,332.22 | | 100,000.00 |
| | | | 9534 | 2,613.00 | 6,012.50 | 100,000.00 |
| | | | 6397 | | | 100,000.00 |
| | | | 8740 | | | 100,000.00 |
| | | | 3570 | | | 100,000.00 |
| | | | 3441 | 58,289.44 | 108,254.36 | 100,000.00 |
| | SC | | 6699 | 4,279.00 | 2,362.44 | 100,000.00 |
| Laura Distribution | Woori | | 9689 | 7,855.67 | 2,722.00 | 100,000.00 |
| LK Water Co | Woori | | 9676 | 958.74 | 202.00 | 100,000.00 |
| | | | 5417 | 259,219.83 | | 100,000.00 |
| Marina Enterprise | Woori | | 6411 | 143,612.90 | 15,056.00 | 100,000.00 |
| | | | 2033 | 1,875.32 | | 100,000.00 |
| | | | 4889 | 828,347.86 | | 100,000.00 |
| | | | 9362 | 684,255.00 | 194,390.18 | 100,000.00 |
| Other Accts | | | 0232 | 170,178.93 | | 100,000.00 |
| accts had activity during yr | | | 8951 | | | 100,000.00 |
| | | | 5091 | 92,500.00 | | 100,000.00 |
| | | | 6048 | 46,258.72 | | 100,000.00 |
| | | | 0907 | | | 100,000.00 |
| | | | 9368 | 13,710.55 | | 100,000.00 |
| | | | 5711 | | | 100,000.00 |
| | | | 1926 | 46,250.00 | | 100,000.00 |
| | | | 7808 | 8.68 | 8.68 | 100,000.00 |
| | | | 9166 | 1.55 | | 100,000.00 |
| | | | 2-001 | | 63,294.13 | 100,000.00 |
| LK Water Corp | | | 6539 | 6,763.40 | | 100,000.00 |
| Marina | | | 1-003 | 10,533.89 | | 100,000.00 |
| Marina | | | 3-001 | | 7,919.20 | 100,000.00 |
| LK Water Corp | | | 5417 | | 450,683.22 | 100,000.00 |
| Laura Kim | | | 0405 | | | 100,000.00 |
| | | | 8765 | | 631.80 | 100,000.00 |
| | | | 9546 | | 2,792.25 | 100,000.00 |
| | | | 4681 | | 712,878.78 | 356,439.39 |
| | | | 6258 | | 46,250.00 | 100,000.00 |

Total                    4,056,439.39

USA - 003624

# Exhibit 104

INTERNAL REVENUE SERVICE

FOR THE STATE OF CALIFORNIA

COUNTY OF SAN DIEGO


RE LAURA KIM,                          )
                                       )
                                       )


TRANSCRIPT OF PROCEEDINGS OF

MICHAEL K. KHIM

LOS ANGELES, CALIFORNIA

APRIL 6, 2017


Reported by:

Celeste Ramsey
CSR No. 13622

Job #25774

*Gabe, Inc.*®

Gabe, Inc.

www.gabeinc.com · 855.385.8555

LHK_3030

INTERNAL REVENUE SERVICE

FOR THE STATE OF CALIFORNIA

COUNTY OF SAN DIEGO


RE LAURA KIM,                              )
                                           )
                                           )


TRANSCRIPT OF PROCEEDINGS OF

MICHAEL K. KHIM

LOS ANGELES, CALIFORNIA

APRIL 6, 2017


Reported by:

Celeste Ramsey
CSR No. 13622

Job #25774

RE LAURA KIM
Michael Khim

Job 25774
Page 2

1                    INTERNAL  REVENUE  SERVICE

2                 FOR  THE  STATE  OF  CALIFORNIA

3                    COUNTY  OF  SAN  DIEGO

4

5

6     RE  LAURA  KIM,                          )
                                               )
7                                              )

8

9

10

11

12

13              Transcript of proceedings of
                MICHAEL K. KHIM taken at 300 North
14              Los Angeles Street, Los Angeles,
                California, commencing at 10:34 a.m.,
15              Thursday, April 6, 2017, before
                Celeste Ramsey, Certified Shorthand
16              Reporter No. 13622 of the State of
                California, pursuant to Notice.

17

18

19

20

21

22

23

24

25

*Gabe, Inc.*®
www.gabeinc.com · 855.385.85

1                    APPEARANCES OF COUNSEL

2

3      INTERNAL REVENUE SERVICE
       BY:   ELLA CHERNYAK, ESQ.
4            MONICA D. POLO, ESQ.
       701 B Street
5      Suite 901
       San Diego, California 92101
6      (619) 744-7114
       Ella.chernyak@irs.gov
7

8

9      INTERNAL REVENUE SERVICE
       BY:   SIMON BONILLA, ESQ.
10     333 West Broadway, M/S 4466
       San Diego, California 92101
11     (619) 615-7745

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Gabe, Inc.*®

1                    I N D E X

2

3    WITNESS

4      MICHAEL K. KHIM

5         Examined by MS. CHERNYAK

6                   MS. POLO

7                   MR. BONILLA

8

9

10

11                      EXHIBITS

12   Exhibit                                    Page

13   Exhibit 1   2010 tax return 1040            8

14   Exhibit 2   2011 tax return 1040           11

15   Exhibit 3   2012 tax return 1040           13

16   Exhibit 4   2010 amended tax return 1040X  57

17   Exhibit 5   2011 amended tax return 1040X  58

18   Exhibit 6   2012 amended tax return 1040X  58

19

20         (Exhibits 1 through 6 are

21         confidential)

22

23

24

25

*Gabe, Inc.*®
www.gabeinc.com · 855 385.85

LHK_3034

RE LAURA KIM
Michael Khim

Job 25774
Page 5

1

2

3

4

5  INFORMATION TO BE SUPPLIED

6          Page        Line

7           55          2

8           64          2

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Gabe, Inc.*®

www.gabeinc.com · 855.385.85

1          LOS ANGELES, CALIFORNIA; THURSDAY, APRIL 6, 2017

2                          10:34 A.M.

3                            -OOO-

4

5                     MICHAEL K. KHIM,

6       having been first duly affirmed, was examined and

7                      testified as follows:

8

9                       EXAMINATION

10

11

12          MS. CHERNYAK:  We do have present

13   Ms. Monica Polo, counsel.

14          MR. BONILLA:  Simon Bonilla.

15          MS. CHERNYAK:  My manager, group manager;

16   Ella Chernyak, revenue agent; and Mr. Michael Khim.

17   BY MS. CHERNYAK:

18      Q    So we're going to ask you a bunch of questions,

19   and then you respond to the best of your knowledge.

20          So let's begin with personal 1040 tax return

21   for Ms. Laura Kim.  We're going to start with 2010.

22   It's an originally filed return, according to our

23   records, and I'll just ask you questions, starting with

24   that, and then we'll just take it from there.

25      A    Okay.

*Gabe, Inc.* ®
www.gabeinc.com  855.385.85

1   time ago -- after creating from company the Randy, I

2   don't know his last name -- sued him, sued the Laura.

3       So for the defense -- actually the Laura

4   herself paid about $200,000 from personal account, her

5   personal accounts.

6   Q    From Korea?

7   A    I think so; I think so.

8   Q    She paid to her?

9   A    To the company.

10  Q    So Laura's French Bakery?

11  A    Right.  French -- the Laura French Bakery

12  company paid the lawyer the legal expenses.  So more

13  than $200,000.  Eventually, they -- the company won over

14  the case, but anyway, she had to the company had to pay

15  expense over $200,000 --

16  Q    So --

17  A    -- from Korea.

18  Q    So Laura took money from Korean bank

19  accounts --

20  A    Yeah.

21  Q    -- transferred it to United States bakery

22  accounts to pay for legal expenses?

23  A    Right.

24  Q    So you knew about the transaction?

25  A    Right.  I heard it.  I knew the transaction,

1    and as I said, that's why she couldn't get any rent,

2    couldn't get any rent from her.

3         Q    What year was that?  Was that 2009?  2010?

4         A    '09, '10.

5         Q    So if you knew that she had transferred money

6    from Korean bank accounts to bakery to pay for legal

7    expenses, have you ever asked her about what those

8    accounts were?

9         A    I don't know --

10        Q    Why is she not declaring anything financial on

11   her tax returns for her personal returns?

12        A    But I don't know about her account in Korea.  I

13   just heard about $200,000 from Korea by Laura, to this

14   business account, this Laura bakery business account.  I

15   just heard from Charlie Son.

16        Q    So you thought that the Laura's French Bakery

17   has a Korean bank accounts in Korea?

18        A    No, no.

19        Q    I'm sorry.  Can you repeat that statement?

20        A    You mean that -- you ask me --

21        Q    Where the 200,000 came from --

22             THE REPORTER:  I cannot take two people talking

23   at one time.

24   BY MS. CHERNYAK:

25        Q    Go ahead, please.

1        A       I just heard that the $200,000 came from Korea

2    by her, but I don't know - I think I don't know whether

3    the Korean account of Laura's Bakery company is in

4    Korea.  I think there's no --

5        Q       But you said --

6        A       -- no company accounts in Korea.

7        Q       Okay.  But you said that you think there was

8    business accounts.  What business do you think this was

9    for -- from?

10       A       Of the $200,000?

11       Q       Uh-huh.

12       A       I don't know.  I just heard the money came from

13   Korea.

14       Q       Okay.

15   BY MR. BONILLA:

16       Q       Let me get clarification:  So the money that

17   came from Korea to pay the $200,000, to pay the Laura's

18   Bakery account, Charlie Son mentioned to you that Laura

19   was sending the money?

20       A       Yeah.  As a loan.

21       Q       As a loan?

22       A       Yeah.

23       Q       Okay.  So you were aware in 2009 that Laura had

24   money in Korea that she sent to Laura's Bakery?

25       A       Yeah.

1    Q    Okay.

2    A    Because in the book there's a record of that.

3    Q    So why -- did you ask her -- you filed the

4    return?

5    A    Yeah.

6    Q    You filed the return in 2009?

7    A    Yeah.

8    Q    Why didn't you file a 5471 or 3520 or FBAR?

9    A    Okay.  As I explained to you, when I came to

10   know the financial interest, financial information in

11   Korea, I ask -- I explain those things, and she report

12   every year FBAR.  That's why I help her with first one

13   year, just one time.

14        With information from -- provide by her, that's

15   it.  And then after that, I ask her whether she filed -

16   I ask -- "You need to file the FBAR every year," but for

17   the second year, she said she someone else help me, and

18   then it already filed.

19   Q    What year was that?

20   A    I don't know; I don't know.  I look for what

21   year.

22   Q    What are you going to go look for?

23   A    What year?

24   Q    No.  What is it that you're going to go look

25   for?  What is going to go help you remember when you

1     asked her to file FBARs?

2         A      You mean which year?

3         Q      Let me go back to my original question or

4     original comment.

5                In 2009 you knew that Laura sent money from

6     Charlie to United States for her company?

7         A      (No audible response.)

8         Q      So at that the point in time, you were aware

9     that she had offshore accounts, that she had some

10    offshore account of some sort.  Did you ask her, or did

11    you inform her that she may have requirements to file

12    some sort of information?

13        A      At that time I didn't know.  I didn't know

14    whether she has foreign company, foreign accounts.  I

15    didn't know in 2009.

16        Q      So where did you think the money came from?

17        A      I don't know.  Because I just heard from --

18        Q      Charlie?

19        A      -- Charlie, yeah.

20        Q      So did you ask Charlie if she had offshore

21    account?

22        A      No. I think it wasn't necessary for me to ask

23    that point, and according to his explanation, I just

24    verified that the record that it is loan from

25    shareholder.  So people I -- $200,000 as a loan from

1    shareholder.

2        Q    I understand it.

3        A    I didn't ask further more.

4        Q    But you prepared the returns?

5        A    Yes.

6        Q    In 2009, 2010, 2011?

7        A    Yeah.

8        Q    And you knew money came from Korea?

9        A    Yeah.

10       Q    So didn't you realize you were required to ask

11   if there was offshore account for filing requirement?

12       A    No, I didn't ask at the time.

13       Q    Is that the normal way you work your business,

14   when someone tells you they're bringing money from

15   another country, do you never ask them?

16       A    If you -- I had her information that whether if

17   she had -- anyone else had business or financial

18   interest, then of course I will - I ask - I might ask

19   which account, or how you send this money from Korea,

20   which account, which source; but at the time I didn't

21   have any question, because normally at the time I didn't

22   know that she had -- she had not any company, any

23   interest, any bank account.  I didn't be suspicious

24   about that.

25       Q    Thank you.

*Gabe, Inc.®*
www.gabeinc.com · 855.385.85

# Exhibit 107



A. LAVAR TAYLOR*
LISA O NELSON
JONATHAN T. AMITRANO
CHRISTINA M LYNCH
CHARLES F ROSEN
LYNDA B. TAYLOR**

JAMES M. KAMMAN
OF COUNSEL

ALSO ADMITTED:
*DISTRICT OF COLUMBIA
**NEW YORK AND MASSACHUSETTS

LAW OFFICES OF
**A. LAVAR TAYLOR** LLP
A TAX CONTROVERSY LAW FIRM

3 Hutton Center Drive
Suite 500
Santa Ana, CA 92707

TELEPHONE: 714-546-0445
FACSIMILE: 714-546-2604

JOYCE E. CHENG, E.A./C.P.
ENROLLED AGENT/CERTIFIED PARALEGAL

MAGGIE ALLEN-REIMERS, AACP
LEGAL ASSISTANT/CERTIFIED PARALEGAL

FIRM WEBSITE WWW.TAYLORLAW.COM

April 23, 2018

*Via U.S. Certified Mail and Facsimile*
R.A. E. Chernyak
Internal Revenue Service
333 W Broadway
MS 4466
San Diego, CA 92101
Fax: (855) 251-9679 (Letter Only)

      Re:    Protest to Proposed FBAR Penalties
             Laura Kim
             SSN: ███-8486

Dear Sir/Madame,

      Our firm represents the above named taxpayer. Enclosed as **Exhibit 1** please find a power of attorney Form authorizing our representation. This protest letter is being filed by Ms. Laura Kim (hereafter "Laura") in response to the proposed FBAR penalty assessment letter sent by R.A. Chernyak on March 7, 2018. The deadline to submit a protest to the proposed FBAR penalty assessment is April 23, 2018, and as such this protest is timely. We request that this case be transferred to the Office of Appeals for a formal conference.

      Note that due to the voluminous nature of the Exhibits, all Exhibits are being provided electronically on the enclosed flash drive.

///

{00094316.DOCX}

USA - 003557

Monday, April 23
Laura Kim (SSN: ███-8486)
Protest to Proposed FBAR Penalty
2 | P a g e

## I. Taxpayer Name, Address, and Social Security Number

Laura Kim
c/o Law Offices of A. Lavar Taylor
3 Hutton Centre Drive
Suite 500
Santa Ana, CA 92707
(714) 546-0445
SSN: ███-8486

## II. Appeals Conference

The taxpayer wishes to appeal the SB&SE division findings to the Office of Appeals and requests an appeals conference with an Appeals Officer. Because the taxpayer's representative is located in Orange County, CA, we request that the appellate conference be held in the Laguna Niguel Appeals Office.

## III. Date and Symbols of Letters of Transmittal

The SB&SE division issued Letter 3709 for tax years 2009, 2010, 2011, and 2012, on March 7, 2018. Letter 3709 proposes to assess Laura with a penalty pursuant to 31 U.S.C. § 5321(a)(5). On January 31, 2018, the taxpayer's representative was provided with Form 13449 which purports to explain the proposed penalty amounts. Also attached is a set of Korean bank statements and an FBAR Explanation of Items letter dated April 21, 2017. A complete copy of Letter 3709, Form 13449, and an FBAR Explanation of Items letter is attached as **Exhibit 2**.

## IV. Tax Years Involved

The tax years at issue in this protest are tax years 2009, 2010, 2011 & 2012.

## V. Protested Penalties

Laura is protesting all of the penalties the IRS proposes to assess. These include the following penalty amounts:

///

{00094316.DOCX}                                                    USA - 003558

Monday, April 23, 2018
Laura Kim (SSN: ███-8486)
Protest to Proposed        R Penalty
3 | P a g e

| Tax Year | | Amount |
|----------|--|--------|
| 2009 | | $1,014,109.85 |
| 2010 | | $1,014,109.85 |
| 2011 | | $1,014,109.85 |
| 2012 | | $1,014,109.85 |
| | Total | $4,056,439.40 |

## VI. Overview

The proposed FBAR penalties are completely irrational and are unsupported by the facts of the case. It is unclear to us why the Revenue Agent assigned to this case has engaged in what appears to be misfeasance (or possibly even malfeasance—we hesitate to speculate on the motives behind the Revenue Agent's inappropriate conduct), and why this Revenue Agent has, among other things, chosen to (1) disregard key facts, (2) misstate other key facts, (3) invent bank accounts which never existed in the first place, (4) make arguments that are logically nonsensical, and (5) completely disregard the provisions of the Internal Revenue Manual ("IRM") governing the imposition of penalties relating to FBARs.

The Revenue Agent's pattern of inappropriate behavior was not limited to proposing completely irrational FBAR penalties. The Revenue Agent has also engaged in similar behavior in conducting the audit of Laura's federal income tax returns for the years 2010 through 2012. The Revenue Agent has tentatively proposed large income tax deficiencies, most of which are completely unsupported by the facts. The Revenue Agent's inappropriate assertion of large income tax deficiencies is relevant to the resolution of the present appeal. For that reason, we discuss in some detail the tentative income tax deficiencies proposed by the Revenue Agent.

Later in this letter, we outline the facts in detail. The key pertinent facts, however, can be summarized as follows. Laura, who is currently 73 years old, resides in Korea full time. She is a U.S. citizen but is a native of Korea. Laura had a considerable amount of Korean-source income during the four years in question. All of this income was reported on her Korean income tax returns, and Laura paid a considerable amount of tax to the Korean tax authorities on her Korean-source income.

{00094316.DOCX}

USA - 003559

Monday, April 23, 2018
Laura Kim (SSN: ███-8486)
Protest to Proposed FBAR Penalty
4 | P a g e

For the years at issue, Laura did not know that her Korean income was to be reported on her U.S. income tax return. Thus, from a technical standpoint, Laura's Korean-source income was "unreported" on her U.S. income tax returns for the years at issue. But because Laura is entitled to a foreign tax credit for the taxes she paid on this income in Korea, there is virtually no "net" U.S. income tax owed by Laura on her Korean-source income.

The Revenue Agent has previously asserted in a 10 Day Letter that there are large amounts of Korean-source "unreported income" in the years at issue based on a purported "bank deposits analysis" of Laura's Korean bank accounts. After receiving the 10 Day Letter our office, with the assistance of a CPA firm whose employees are fluent in Korean, met with the Agent (and the Agent's manager) and explained in excruciating detail why the Agent's so-called "bank deposits analysis" was grossly deficient. Most of the deposits that the Agent determined were "taxable income" were in fact inter-account transfers. A modest number of other deposits which the Agent determined were "taxable income" were in fact deposits from non-taxable sources. The analysis prepared by the CPA firm shows that, per a bank deposits analysis, there is no unreported income for two of the three years and that the total "unexplained deposits" for the third year are less than $70,000.00.

During our meeting with the Agent and her manager, her manager provided us with verbal assurances that he would review the analysis prepared by the CPAs who are fluent in Korean and take that analysis into account for purposes of issuing a 30 Day Letter for the years under audit. Our meeting with the Agent and her manager took place on April 2, 2018. We have yet to receive the 30 Day Letter for the years under audit.

The bottom line, however, is that Laura's failure to include her Korean-source income on her U.S. income tax returns was the result of Laura's misunderstanding of the law. Furthermore, Laura's unknowing omission of her Korean-source income from her U.S. Income Tax returns did not result in any understatement of tax owed to the IRS. There was no intentional misconduct of any kind whatsoever.

The same bottom line holds true with respect to Laura's failure to file FBARs for the years in question. Laura filed FBARs for all of the years in question herself, sometimes with the "assistance" of her staff in Korea. The FBARs, however, did not list all of the Korean accounts on which Laura had signatory authority. The FBARs were prepared without the assistance of any tax professionals here in the U.S. The filing of FBARs which did not list all foreign accounts over which Laura had signatory authority thus was due to misunderstandings and miscomprehensions. There were no "willful" violations whatsoever. Once Laura was advised by competent tax professionals here in the United States, Laura began filing FBARs which

USA - 003560

Monday, April 23
Laura Kim (SSN: ████-8486)
Protest to Proposed FBAR Penalty
5 | P a g e

included information on all foreign bank accounts over which she had signatory authority. Similarly, Laura, after receiving advice from competent U.S. tax professionals, also began filing U.S. income tax returns which reported all Korean-source income.

The Revenue Agent's omissions of key facts, misrepresentations of key facts, and deficient mental gymnastics which the Agent contends support wholly inappropriate FBAR penalties are explained in detail below. We note here, however, that Laura has been under IRS examination for approximately six years. During the course of the six year audit, Laura has voluntarily agreed to two separate interviews with the Agent. These include an interview which occurred on June 23, 2014 (Exhibit 3), and an interview which occurred on August 25, 2016 (Exhibit 4). Laura came to the United States from Korea to attend these interviews.

In addition, the Agent interviewed Laura's former accountant, Michael Khim, on three different occasions. (See Exhibit 5 for a copy of the transcript from the April 6, 2017 interview of Michael Khim.) The Agent also interviewed the former manager of Laura's U.S. based bakery, Charlie Son, who is Laura's brother-in-law. (See Exhibit 6 for a copy of the transcript from the May 11, 2017 interview of Charlie Son.) In the following section we outline many of the facts of this case based on the interview transcripts.

## VII. Facts & Discussion

### A. Factual Background

Laura was born on ████████ 1944. Exhibit 3, page 10. As of the date of this protest she is currently 73 years old. Laura was born and raised in Korea. Exhibit 4, page 5-6. Laura first came to the United States in 1968. Exhibit 4, page 7. She later returned to Korea where she went to college. Exhibit 4, pages 7-8.

Laura divorced her former husband in 1990, and in 1997 her former husband passed away. Exhibit 3, page 16, 42. After the death of her husband Laura suffered from severe depression. Exhibit 3, page 118. This led to Laura jumping off of a train, resulting in a severe head injury. *Id.*

Laura opened a U.S. based bakery in 1973. Exhibit 3, page 37. (This bakery was operated through a Subchapter S corporation, of which Laura is a 90% shareholder.) During tax years 2008 through 2010 Laura generally traveled to the U.S. from Korea for one to two months during the summer and one to two months during the winter, and therefore she had to rely on local managers to run the bakery operations. Exhibit 3, page 53, Exhibit 4, pages 9-10. During tax years 2011 through 2013 Laura came to the United States only two to four weeks a year.

USA - 003561

Monday, April 23, 20██
Laura Kim (SSN: ███8486)
Protest to Proposed ████ R Penalty
**6 |** P a g e

Exhibit 4, pages 11 and 12. Even though Laura tried to stay involved in the bakery operation, she was outside of the U.S. the majority of the time. Thus, she relied on the local managers to operate the bakery. As an example, Laura did not write a single check on behalf of the bakery from 2004 to 2012. Exhibit 3, page 58, Exhibit 6, page 33. The managers, including Charlie Son, handled everything including the signing of checks, payroll, and all other management duties. Exhibit 3, page 89, Exhibit 6, page 34. All of the evidence in the present case shows that Laura spent the vast majority of her time in Korea.

During the years at issue Laura owned a number of Korean based companies. These included Marina Enterprise. Marina Enterprise is a Korean based company which manufactured shoes. Exhibit 3, page 110 to 114.

Laura hired Mr. Michael Khim (no relation) to prepare her 2009, 2010, 2011, and 2012 income tax returns. Exhibit 3, page 11. Because Laura lives full time in Korea, her brother-in-law, Mr. Son (the manager of the bakery), handled all interactions with Mr. Khim as they related to the preparation of Laura's 2009 through 2011 Forms 1040. Exhibit 5, page 8. All of the information used to prepare Laura's tax returns for tax years 2009 through 2011 was provided to Mr. Khim by Charlie Son. Exhibit 5, page 8. Once Laura's income tax returns were complete, Mr. Khim forwarded the returns to Charlie Son for his review. Exhibit 5, page 9.

At the time Mr. Khim prepared Laura's 2010 income tax return, he had never met Laura. Exhibit 5, page 12. Mr. Khim did not have any communications with Laura regarding the preparation of her 2011 Form 1040 – as was the case with the preparation of Laura's Form 1040 for 2010. All communications were with Mr. Son. Exhibit 5, pages 12, 15.

Mr. Khim knew that Laura was residing in Korea at the time he prepared Laura's income tax returns for tax years 2009, 2010, 2011, and 2012. Exhibit 5, page 8. Mr. Khim was aware that Laura transferred money from her Korean account to the U.S. Bakery in 2009, since Mr. Khim served as the accountant for the U.S. Bakery. Exhibit 5, page 79. Despite knowing this fact, and knowing that Laura lived in Korea, Mr. Khim never inquired where Laura banked, and whether she had foreign bank accounts. Exhibit 5, page 29. When asked whether he was aware at that time that Laura had a Korean bank account, Mr. Khim indicated that he didn't ask her. Exhibit 5, page 80.

The 2012 Form 1040 was filed in approximately October of 2014, one year after the extended due date, and well after the due date of the 2012 FBAR. Exhibit 5, page 41. For the preparation of the 2012 Form 1040 Mr. Khim met with Laura and asked about her foreign businesses. Laura told Mr. Khim that she had three different companies which were operating in

USA - 003562

Monday, April 23, 2018
Laura Kim (SSN: ███-8486)
Protest to Proposed FBAR Penalty
**7 |** P a g e

Korea. Exhibit 5, page 39. During the preparation of the 2012 Form 1040 Mr. Khim was in
contact with Laura's Korean accountant. Exhibit 5, page 32-34. Laura's Korean tax accountant
provided Mr. Khim with a copy of Laura's Korean income tax return for tax year 2012. Exhibit
5, page 55.

Laura filed her first FBAR in 2009 (for tax year 2008) after learning of her FBAR filing
requirement from her sister. Exhibit 4, page 14. Laura's sister sent Laura a newspaper article
which discussed FBARs. Exhibit 4, pages 15-16. Because of Laura's very busy schedule, she
prepared her 2008 FBAR in the middle of the night. Exhibit 4, page 43. She did not understand
what she was supposed to do, and she assumed that if she did something wrong, she would be
contacted by the IRS. Exhibit 4, pages 41 to 42. She indicated that she was never contacted by
the IRS, prior to the current audit, after filing any of her FBARs. Exhibit 4, page 42.

The amounts reported on Laura's FBARs were provided to her by her office workers who
had access to her bank accounts. Exhibit 4, page 50, 63-64. The first time she saw the FBAR
Form she had a very difficult time understanding what was required – the Form confused her.
Exhibit 4, page 99. Laura believed that she was providing all of the information on her FBARs
that was required to be included. Exhibit 4, pages 101-102.

Laura's practice was to have one regular bank account, which did not earn interest, from
which she paid expenses. Exhibit 4, pages 26-28, 53-56. From this account she would transfer
funds to short-term accounts that were interest bearing so that she could earn income on the
funds held in her account. *Id.* This is why Laura had so many bank accounts during the years at
issue.

Note that, while Laura had a large number of bank accounts in Korea, she only had
accounts at two different banks in Korea. The FBARs filed by Laura for the years in question
listed accounts at both of the banks in Korea at which she had her various accounts. There was
no effort by Laura to conceal the fact that she had accounts at two banks in Korea.

Laura did not discuss her FBAR reporting requirement with Mr. Khim for tax year 2009
because she didn't understand that she should speak with him about her FBAR filing
requirement. Exhibit 4, pages 56-57. Laura rarely interacted with Michael Khim. Exhibit 4
page 58, 60. Up until the time Laura was audited, Laura did not receive any advice from Mr.
Khim regarding the preparation of her FBAR. Exhibit 4, pages 78, 80-81.

USA - 003563

Monday, April 23,
Laura Kim (SSN: ███-8486)
Protest to Proposed     R Penalty
**8 | P a g e**

Laura's U.S. income tax returns for tax years 2009 through 2012 reported only her U.S. sourced income. Laura thought that her Korean returns were to report her Korean income, and her U.S. returns were to report her U.S. income. Exhibit 4, page 57.

For tax year 2013 Michael Khim prepared her FBAR. Exhibit 4, pages 81-83. For the 2013 FBAR Laura connected Mr. Khim with her staff in Korea so that Mr. Khim could obtain the information he needed to complete the 2013 FBAR. Exhibit 4, page 85. Starting with tax year 2013, Laura's FBARs have been correctly filed.

## B. Audit Background

The IRS is proposing to assess Laura with very large willful FBAR penalties. The proposed penalties come after a nearly six year IRS audit. The audit included both an income tax audit and a foreign reporting compliance audit. Despite the fact that our office has repeatedly requested that the income tax audit and the FBAR penalty case be resolved concurrently, the IRS has refused to do so. Instead, the examination division issued a letter proposing a large FBAR penalty, based in part on a wholly deficient 10 Day Letter issued in the income tax audit. The deficient 10 Day Letter contains proposed adjustments based on the false premise that Laura has unreported Korean source income, based on a flawed "bank deposits analysis" of Laura's Korean bank accounts. As we mentioned previously, after our Firm's receipt of the 10 Day Letter, our Firm prepared an analysis showing that the Agent's so-called "bank deposits analysis" was fatally flawed, then met with the Agent and her supervisor, and provided our analysis at the meeting. Based on the verbal statements of the Agent's supervisor, we anticipate that the adjustments proposed in the forthcoming 30 Day Letter will be drastically lower than the adjustments that were proposed in the flawed 10 Day Letter.

The Agent sat through the meeting we held with the Agent and the Agent's supervisor after the issuance of the 10 Day Letter in the income tax audit, on April 2, 2018, and the Agent listened to a detailed explanation of why the so-called "bank deposits analysis," which formed the basis of most of the proposed "income" adjustments in the 10 Day Letter, was flawed. Yet the Agent is nevertheless persisting in proposing very large FBAR penalties. based on the what is clearly a flawed premise. Unfortunately, the Agent's failure to pay attention to the relevant facts is part of a pattern of conduct by the Agent, a pattern which illustrates why the proposed FBAR penalties should not be sustained.

Monday, April 23,
Laura Kim (SSN: ███-8486)
Protest to Propose ██ R Penalty
9 | P a g e

### C. Interactions With IRS Exam From 2016 Through 2018

On November 17, 2016, our office spoke with the Revenue Agent and her supervisor regarding Laura's income tax audit.  On this day our office was told by the Agent that the IRS had concluded the income tax portion of the audit.  Our office was also told that report setting forth the Agent's proposed income tax adjustments would be mailed to us in the coming days.  On November 21, 2016, our office received an incomplete Form 4549 setting forth the Agent's proposed audit changes, a copy of which is attached as **Exhibit 7**.  Note that our office was only provided with the first page of Form 4549 because, according to the Revenue Agent, the Agent had not made a decision as to which penalty should be proposed on the additional taxes which the Agent claimed were owed.

A review of the proposed income tax changes from November of 2016, shown on Exhibit 7, shows a total of seven adjustment items.  Of these seven adjustment items, five items relate to income actually or allegedly earned or received by Laura in Korea.  Of these five Korean-related proposed income adjustments, four of them (rent, dividends, interest, and wages) were based directly on the income reported on Laura's Korean income tax returns.

Laura failed to report these four Korean-related income items on her U.S. income tax returns, and she also failed to claim a foreign tax credit for the tax paid to Korea on these income items.  As is explained above, Laura did not report these income items because of Laura's lack of understanding that her income from Korea must be reported on her U.S. income tax returns.  In other words, this failure was NOT due to intentional disregard.

As is explained above, the foreign tax credit for tax paid by Laura on her Korean income completely eliminates the increased  federal income tax liability as it relates to all four of these items. .  Thus, the inclusion of these four items of  previously unreported Korean-source income on Laura's U.S. income tax return does not result in an increase in net tax owed.

The remaining adjustment from the November, 2016 incomplete audit report is titled "other income".  The "other income" adjustment consists of both domestic and foreign income adjustments.  The majority of the "other income" adjustments stems from the purported "bank deposit analysis" of Laura's Korean bank accounts conducted by the IRS.

In the incomplete November 2016 report, the IRS, based on the purported "bank deposits analysis," asserted that Laura underreported Korean source "other income" by the following amounts:

Monday, April 23, 2018
Laura Kim (SSN: ███-8486)
Protest to Proposed FBAR Penalty
10 | P a g e

| Year | Amount |
|------|--------|
| 2010 | $6,865,820 |
| 2011 | $4,325,686 |
| 2012 | $2,260,374 |
| Total | $13,451,880 |

Note that, of this $13,451,880 alleged "unreported income", $419,988 is domestic "other income", while the remaining amount ($13,031,892) is foreign "other income". Thus, the majority of the "other income" adjustment proposed in the November, 2016 report relates to foreign "other income."

By fax dated December 5, 2016, the Agent reduced the proposed Korean source "other income" adjustment to the following amounts (see **Exhibit 8**):

| Year | Amount |
|------|--------|
| 2010 | $5,931,777.94 |
| 2011 | $4,062,404.95 |
| 2012 | $1,801,482.79 |
| Total | $11,795,665.68 |

The domestic "other income" proposed   adjustment remained the same; the downward adjustment was only to the proposed adjustment for Korean source "other income".

On January 19, 2017, our office met with the Revenue Agent at her office in San Diego. During this meeting the Agent informed our office that IRS counsel, specifically Vladislav Rozenzhak and manager Miles Friedman, had approved the Agent's request to propose a willful FBAR penalty of $6,111,613 against Laura. At the conclusion of this meeting our office asked the Agent to wait to issue the FBAR penalty report until after the income tax case had concluded. This request was made because our office was certain that the proposed adjustment of Korean source "other income" was a gross error. We wanted IRS Counsel to have a complete

USA - 003566

Monday, April 23, 2018
Laura Kim (SSN: ███-8486)
Protest to Proposed FBAR Penalty
11 | P a g e

understanding of the correct facts relevant to the proposed adjustment for Korean source "other income" prior to advising the Agent whether she could assess a willful FBAR penalty.

On January 21, 2017, our office sent a fax (see **Exhibit 9**) to the Agent, in which we asked the IRS to refrain from issuing a 30-day letter for both the FBAR penalty and the income tax adjustments. We made this request because it was Laura's desire to resolve this case, in its entirety, at the examination level, if possible.

Our fax also discussed the fact that, pursuant to IRM 4.26.17.4.6, Laura should be afforded the opportunity to have any proposed FBAR penalty case heard, pre-assessment, by the IRS Office of Appeals. Prior to this date we had been told verbally by the Agent that Laura would not be afforded pre-assessment appeal rights with respect to proposed FBAR penalties. After we sent the January 21, 2017 fax requesting a pre-assessment opportunity to appeal any proposed FBAR penalty (assuming we could not reach a resolution with the Examination Division), we were never informed by the Agent that the IRS would in fact provide Laura with a pre-assessment appeal opportunity to challenge proposed FBAR penalties.

On March 8, 2017, we submitted an analysis of the "other income" adjustment prepared by our office, with the assistance of CPAs who are fluent in Korean. In our letter we conceded the proposed domestic "other income" adjustments of $148,383.50 for tax year 2010, and $271,604.75 for tax year 2011. Regarding the proposed foreign "other income" adjustments, adjustments which were used to support the Agent's erroneous assertion of a willful FBAR penalty, we found that the Agent had failed to remove any of the inter-account transfers from total "unexplained" (and thus potentially taxable) bank deposits when computing the proposed "other income" adjustments. Furthermore, some of the bank accounts were listed more than one time. As a result, supposedly "unexplained" deposits/transfers into various accounts were double counted for purposes of the Agent's so-called "bank deposits analysis." Even viewed in a light most favorable to the Agent, the Agent's work was incredibly sloppy.

Based on our firm's analysis of the "other income adjustment", a copy of which is attached as **Exhibit 10**, the foreign "other income" adjustment amounts were actually as follows:

///

{00094316.DOCX}

USA - 003567

Monday, April 23, 2018
Laura Kim (SSN: ███-8486)
Protest to Proposed ███R Penalty
12 | P a g e

| Year | Per Our Analysis | Per R.A. |
|------|------------------|----------|
| 2010 | $0 | $5,783,394.44[1] |
| 2011 | $75,594.37 | $3,790,800.20[2] |
| 2012 | $0 | $1,801,482.79 |
| Total | $75,594.37 | $11,375,677.43 |

By simply removing transfers between accounts, removing the duplicate accounts, and finding a few nontaxable deposits, the maximum possible proposed foreign "other income" adjustment was shown to be only $75,594.37, as opposed to $11,375,677.43.  Needless to say, there is quite a bit of difference between $75,000.00 and $11.38 million.

The Agent called our office after receiving our "other income" analysis.  She claimed that our analysis was "confusing" and it was "difficult to understand."  Our office walked her through the analysis.

Strangely, the Agent requested that we submit a formal protest to the proposed income tax exam changes set forth on the incomplete Form 4549 because, according to the Agent, she might not agree with our proposed numbers, and she might simply close the audit because the audit had been ongoing for too long, instead of responding to our analysis.  We urged her to spend time reviewing our analysis.  We also pointed out that we could not file a protest because the IRS had not yet issued a 30 Day Letter formally proposing adjustments to Laura's income tax returns.

Because the Agent's proposed foreign "other income" adjustment was fatally flawed, and because IRS counsel had approved a willful FBAR penalty based on a fatally flawed proposed "other income" adjustment, our firm repeatedly requested that the proposed FBAR penalties be reconsidered at the conclusion of the income tax case, in light of the apparent errors made by the Revenue Agent.  Thereafter, we were repeatedly told by the Revenue Agent that the proposed FBAR penalties would be held pending the outcome of the income tax audit.

---

[1]Pursuant to the fax dated December 5, 2016, the IRS proposed an "other income" adjustment of $5,931,77.94, of which $148,383.50 related to domestic "other income".
[2]Pursuant to the fax dated December 5, 2016, the IRS proposed an "other income" adjustment of $4,062,404.95, of which $271,604.75 related to domestic "other income".

USA - 003568

Monday, April 23, 2018
Laura Kim (SSN: ███-8486)
Protest to Proposed FBAR Penalty
13 | P a g e

Despite our multiple requests that this case be returned to counsel for counsel to review
the proposed FBAR penalties in light of the drastically reduced foreign "other income"
adjustment, so that counsel could base its legal opinion on the actual facts (as opposed to the
patently flawed Korean source "other income" adjustments proposed by the Agent), the IRS
refused to do so.

On April 19, 2017, our firm contacted IRS Attorney Rozenzhak to ask him if the FBAR
case had been returned to him for further review. During our conversation with Mr. Rozenzhak
we discussed three issues. First, we discussed the fact that we had asked the Agent to resubmit
the case to IRS Counsel because we felt it was important for IRS counsel to make a decision
based on the drastically reduced "other income" adjustments. Second, we discussed the fact that
our office had been verbally told by the Agent that Laura would not have pre-assessment appeal
rights as they relate to the proposed FBAR penalties. Third, we raised the issue that, because the
Agent's proposed Korean source "other income" adjustments included inter account transfers as
"taxable income" and contained other errors, we were concerned that the FBAR penalty
computations likely also double counted amounts in the various Korean accounts. Such a
"double counting" would artificially increase any proposed willful FBAR penalty. Attached as
**Exhibit 11** please find a letter to Mr. Rozenzhak which summarizes our conversation with him.

On April 26, 2017, unannounced, despite our repeated requests to the Agent that she
resubmit her proposed FBAR penalties to Area Counsel so that they could express their opinion
based on the actual facts, our firm received the first 30 Day letter setting forth proposed FBAR
penalties. The proposed penalty amounts were extremely large. On that same day our firm sent a
fax to R.A. Chernyak and Mr. Bonilla in which we explained that we were surprised to receive
the proposed FBAR penalty assessment because we had previously been told that the issuance of
proposed FBAR penalties would be delayed pending the outcome of the income tax audit. We
also explained that the refusal to resubmit the case to IRS Counsel with the correct information is
tantamount to misleading the IRS' own counsel. A copy of the fax sent on April 26, 2017 is
attached as **Exhibit 12**.

In response to our fax, the Agent's supervisor left our firm a voice message on April 27,
2017, in which he stated:

"Good Morning Mr. Amitrano, I got your fax, and, I agree with you, but, it is my
understanding on the 20[th] of April you spoke with Mr. Vlas...our attorney.. Vlow...
Vlad...and you mentioned that you didn't receive the 30 day letter, on the penalty case,
and I was meaning to give you a call before Ms. Chernyak sent you out this 30 day
letter..."

{00094316.DOCX}                                                                    USA - 003569

Monday, April 23, 2018
Laura Kim (SSN: ███-8486)
Protest to Proposed FBAR Penalty
14 | P a g e

When our office spoke with the Agent's supervisor on May 12, 2017, he explained that he received an email from Mr. Rozenzhak regarding issuing the 30-day FBAR letter. The Agent's supervisor stated that he would forward the email to our office, however we never received a copy of the email. Our office explained to the supervisor that, during our call to counsel, we raised the fact that we had been previously told that the IRS would not offer Laura a pre-assessment opportunity to challenge a proposed FBAR penalty. We further explained that we simply asked Mr. Rozenzhak to confirm that we would have a pre-assessment opportunity to challenge any proposed FBAR penalty. Because our firm does not have access to the email to supervisor, we cannot confirm what Mr. Rozenzhak told the supervisor.

On May 24, 2017, nearly one year ago, our office filed a protest to the proposed FBAR penalty (in response to the 30-day letter issued on April 26, 2017). A copy of our protest is attached as **Exhibit 13**. Around the time that we submitted the protest to the proposed FBAR penalty, the Agent's supervisor agreed to meet with our office in early June, 2017 to discuss the proposed income tax adjustments. The supervisor also agreed to "hold" the protest to the proposed FBAR penalties pending the outcome of the June meeting. The Supervisor indicated that, if at the end of the June meeting he felt that the FBAR penalty case should be sent back to counsel, he would rescind the April 24, 2017 letter.

Despite our repeated requests to meet with the IRS in the hopes that the case could be resolved by mid-2017, and despite our willingness to meet with the Agent and her supervisor in June of 2017, a meeting in June, 2017, never occurred. Instead, our office was told to "be patient." Eventually, we were asked to attend a meeting with the Agent and her supervisor on January 31, 2018.

During our meeting on January 31, 2018, we learned that the IRS had opened up new issues in the pending income tax audit, that the agent had rejected nearly all of our bank deposit analysis work, and that the IRS was reissuing the FBAR 30-day letter. The total FBAR penalties were being reduced to approximately $4.056M. A binder was provided to the undersigned counsel which contained all of the proposed IRS adjustments. A copy of the contents of that binder is being included as **Exhibit 14**.

A review of the contents of the binder will show that many glaring errors were made by the Agent. For example, Laura owns 90% of a domestic subchapter S corporation which operates a bakery in Los Angeles. Despite the fact that Laura owns only 90% of the shares of the subchapter S corporation, the IRS asserted that 100% of the proposed adjustments to the S corporation should flow through to Laura's income tax returns.

{00094316.DOCX}

USA - 003570

Monday, April 23, 2018
Laura Kim (SSN: ███████8486)
Protest to Proposed FBAR Penalty
**15 | P a g e**

It should also be noted that most of the income tax lead sheets provided to us do not have the same proposed adjustment amounts as the work papers included with the lead sheets.

Of most importance is the Agent's improper handling of the Korean source "other income" issue. Despite our firm (with the assistance of CPAs who are fluent in Korean) spending considerable time and effort to establish that the Agent's November 2016 IRS bank deposit analysis was fatally flawed, the Agent apparently chose to ignore nearly all of our work.

Further, the Agent took a number of positions that are baseless. For example, the taxpayer would often withdraw funds from one Korean bank account, and transfer the majority of those funds to a second Korean bank account, while keeping the remaining amounts to use as spending money. The IRS Agent reduced the amount of some (but not all) potentially taxable deposits by the amount transferred from one account to the other account, but the Agent included the amounts that were withdrawn in the total amount of allegedly "unreported income." Thus, if the taxpayer had a $92,000 deposit to account "X", and we provided proof that the taxpayer withdrew $100,000 from account "Y" on that same date and deposited $92,000 of that withdrawal into account X, while keeping $8,000 of the amount withdrawn to use as spending money, the Agent reduced the Agent's computation of potentially taxable deposits by $92,000, and then added $8,000 back to the total amount of alleged "unreported income." Treating amounts withdrawn from existing bank accounts in the taxpayer's name as unreported taxable income is the type of error that that not even a rookie revenue agent should make.

The Agent, in the 10 Day Letter discussed above, reached the conclusion that Laura had "unexplained taxable deposits" in her Korean bank accounts as follows:

| Year | Amount |
|------|--------|
| 2010 | $4,945,036.55 |
| 2011 | $6,433,438.10 |
| 2012 | $2,549,050.22 |
| Total | $13,927,524.87 |

The Agent, in the 10 Day Letter, also changed positions as it related to a number of items found in her prior incomplete exam report,

Monday, April 23, 2018
Laura Kim (SSN: ▓▓▓-8486)
Protest to Proposed FBAR Penalty
16 | P a g e

According to the proposed Revenue Agent's report accompanying the 10 Day Letter, the IRS believed that Laura owes the following amount of additional tax (not including penalties and interest):

| Year | Amount |
|------|--------|
| 2010 | $1,889,869 |
| 2011 | $2,342,491 |
| 2012 | $978,766 |

The proposed audit report accompanying the 10 Day Letter also proposed a 26 U.S.C. § 6663 fraud penalty against Laura for each of the years at issue.

In response to the meeting held on January 31, 2018, our firm requested time to respond to each and every adjustment found in the proposed January 2018 audit report accompanying the 10 Day Letter. Based on our analysis, which we presented to the Agent and her manager at the meeting held on April 2, 2018, we believe that Laura's audit for tax years 2010 and 2012 will result in Laura having a very small additional tax balance owed, or no balance owed. For tax year 2011 we anticipate that Laura will have a tax balance owed of less than $100,000, all of which, or nearly all of which, relates to domestic tax adjustments.

Regarding the Agent's so-called "bank deposit analysis" of Laura's Korean bank accounts, our firm (with the assistance of CPAs who are fluent in Korean), for the second time, spent a considerable amount of time preparing an ever more detailed analysis demonstrating why the IRS Agent's so-called "bank deposit analysis" was fatally flawed. In other words, even though we (with the assistance of CPAs who were fluent in Korean) had previously presented similar detailed information to the Agent, information which the Agent chose to ignore when she sent out the 10 Day Letter, we took the time to point out each and every page number of the bank statements for Laura's Korean bank accounts which contains the information needed to verify that the various deposits which the Agent treated as "taxable income" were in fact either inter-account transfers or deposits from non-taxable sources. The documents given to the Agent at our April 2, 2018 meeting, discussed immediately below, contains all of the mind-numbing details.

According to our bank deposits analysis, there was not any potential "unreported income" deposited into Laura's Korean bank accounts during tax years 2010 and 2012. For tax year 2011, the maximum "unexplained deposits," and thus the maximum possible amount of

USA - 003572

Monday, April 23, 2018
Laura Kim (SSN: ████-8486)
Protest to Proposed FBAR Penalty
17 | Page

"unreported income" deposited into Laura's Korean bank accounts, is approximately $61,000. This $61,000 difference is a small fraction of the inter-account transfers and other deposits made to Laura's Korean accounts in 2011. From a common sense standpoint, the bank deposits analysis demonstrates that there was no unreported income deposited into Laura's Korean bank accounts for any of the years at issue.

Our firm met with the Agent and her supervisor again on April 2, 2018. During our meeting we presented binders to the Service which outlined our positions as they relate to each of the proposed adjustments. A copy of the documents we provided to the Agent are included as **Exhibit 15**.

As of the date of this protest the IRS has still not issued a 30 day letter to Laura for the income tax years under audit. We have been repeatedly told that this audit will be closed soon. The agent has engaged in a pattern of conduct that is inexcusable. Based on the comments made by the Agent's supervisor at the April 2, 2018 meeting, however, we are hopeful that the anticipated 30 Day Letter will acknowledge that the Agent's prior so-called "bank deposits analysis" was fatally flawed.

Certainly there should be no adjustments that warrant the imposition of the fraud penalty. Simply put, this is not a case where there was any intentional misconduct. The domestic income tax adjustments, both agreed and unagreed adjustments, do not involve any intentional misconduct on the part of Laura. The Korean-related adjustments that have merit do not involve any intentional misconduct on the part of Laura and do not even result in any additional net tax owed. Any attempt to impose the fraud penalty in the anticipated 30 day letter will be the actions of an Agent who has no regard for the actual facts of the case. Similarly, should the Agent disregard the statements made by her manager in the April 2, 2018 meeting that the Agent will correct her errors in her so-called "bank deposits analysis," this will be an action made by an Agent who has no regard for the actual facts of the case.

The manner in which the Agent has handled the entire audit is extremely unfortunate, to say the least. The Agent ignored the evidence presented to her in March of last year which demonstrated that her so-called "bank deposits analysis" of Laura's Korean bank accounts was fatally flawed. The Agent repeatedly promised to resolve the income tax audit at the same time as the FBAR audit, yet she has refused to abide by this promise. This conduct is extremely problematic, given that the IRS is relying on the flawed results contained in the report accompanying the 10 Day Letter discussed above to support a willful FBAR penalty, when a proper analysis shows that the maximum possible amount of "unaccounted for deposits" into

Monday, April 23, 2018
Laura Kim (SSN: ▓▓▓-8486)
Protest to Proposed FBAR Penalty
**18** | P a g e

Laura's Korean bank accounts during the years in question, which is the maximum possible
"unreported income" adjustment related to Laura's Korean bank accounts, is only $61,000.

The second FBAR penalty 30 Day letter at issue in the present case was given to us on
January 31, 2018. The deadline to respond was extended to April 23, 2018. The extension was
given because, until recently, the Agent had failed to provide us with the majority of the
documents (including interview transcripts and notes) which the Agent relied on in concluding
that Laura had willfully failed to file her FBAR. Many of those documents were very recently
provided to us.

The Agent represented to us at the April 2, 2018 meeting that "we have what she has" as
far as documents in her files are concerned. As will be demonstrated below, that representation
was false.

In our prior FBAR protest letter, which was written without the benefit of a number of
documents that were recently provided to us by the Agent, we pointed out a number of
inaccuracies, misstatements, and misquotes by the IRS Agent in the prior FBAR 30 Day Letter.
It appears that the IRS Agent failed to even cursorily review the prior protest, because the
explanation included with the latest FBAR 30 Day Letter reads identically to the explanation
included with the prior FBAR 30 Day Letter, including all of the inaccuracies, misstatements and
misquotes identified in the protest to the prior FBAR 30 Day Letter sent in 2017. The only
substantive difference between the FBAR 30 Day Letter issued last year and the FBAR 30 Day
Letter issued this year is that the proposed total FBAR penalty amount was reduced from
$6,111,613.40 to $4,056,439.40. The Agent, in the new FBAR 30 Day Letter, completely
ignored our comments about her prior errors.

It is unknown to undersigned counsel whether the Agent sought approval of the new
proposed FBAR Penalty by IRS Counsel prior to the Agent issuing the new FBAR penalty
report. It appears to us that approval from IRS Counsel should have been obtained prior to
issuing the current 30-day FBAR letter.

### D. FBAR Explanation of Items

The position of the IRS regarding the amount of the proposed FBAR penalties, as
articulated in the latest FBAR Penalty 30 Day Letter, is completely without merit. The Revenue
Agent's report contain many errors – the agent regularly misstates testimony and makes up facts
in an effort to support a willful determination. Some of these "mistakes" were made previously
and pointed out by us in the prior protest, yet these "mistakes" were not corrected in the most

USA - 003574

Monday, April 23, 2018
Laura Kim (SSN: ████-8486)
Protest to Proposed FBAR Penalty
19 | P a g e

recently issued FBAR 30 Day Letter.   We have never before seen an Agent engage in such blatantly improper and inappropriate conduct.

In this section we will first discuss the mistakes and misstatements found in the FBAR Explanation of Items Report.

### I. Errors in Computing Foreign Income

As noted above, the IRS Agent made serious errors when computing the amount of foreign income that the taxpayer supposedly failed to report.   Laura is conceding the income adjustments for Korean source income that was reported on her Korean income tax returns (and on which she paid tax in Korea), given that the IRS is allowing a foreign tax credit based on the amount of tax Laura paid in Korea.   It appears that the foreign tax credit will completely eliminate any tax owed as the result of these adjustments.

The remaining item, the "other income" adjustment based on the fatally flawed, so-called "bank deposits analysis," is as fatally flawed as the so-called underlying "bank deposits analysis," as explained above.   It is apparent that the Agent made an FBAR penalty determination based on the Agent's faulty premise that Laura had underreported Korean source income of approximately $13.9M, over and above the Korean source income reported on Laura's Korean income tax returns. The highest amount of "unidentified deposits" to Laura's Korean bank accounts which could possibly consist of "unreported income" is only $61,000. This figure is a very small fraction of the total deposits into all of Laura's Korean bank accounts, which means that, as a practical matter, the Agent's so-called "bank deposits analysis" is completely worthless.   Thus, the IRS erred in relying on the purported "bank deposits analysis" to support a conclusion that Laura is liable for any FBAR penalty, let alone a willful FBAR penalty.

### ii. Income Tax Exam Penalty

The FBAR Explanation of Items repeatedly states that, since the IRS is assessing a civil fraud penalty on the tax resulting from the Agent's proposed income tax examination adjustments, a willful FBAR penalty should be assessed.   As of the date of this appeal the IRS has not issued a 30-day letter in the income tax case, despite the fact our office repeatedly request that the income tax audit and the FBAR audit be resolved together.

As is explained in detail above, an intellectually honest analysis of the agreed upon and potentially meritorious proposed adjustments to Laura's income tax returns for the years in question demonstrates that there is no basis for imposing a civil fraud penalty with respect to any

{00094316.DOCX}

USA - 003575

Monday, April 23, 2018
Laura Kim (SSN: ███-8486)
Protest to Proposed FBAR Penalty
**20 |** P a g e

of those proposed adjustments. In addition, we anticipate that the proposed adjustments contained in the report accompanying the 10 Day Letter discussed above will be drastically reduced, based on logic and on the comments made by the Agent's manager at the April 2, 2018 meeting discussed above. Thus, it is improper for the IRS to rely on the Agent's prior assertion of the civil fraud penalty in support of a willful FBAR penalty.

For tax years 2010 and 2012, it is quite possible that Ms. Kim will not owe any additional income taxes at all, even taking into account the agreed adjustments to her tax returns. Obviously, if there is no underpayment, no fraud penalty can be assessed. Of course, even there is an underpayment of taxes, no fraud occurred.

For tax year 2011 the undersigned counsel anticipates that Ms. Kim will have a tax bill of less than $100,000. Because there is absolutely no evidence that Ms. Kim engaged in fraud, and because we have proven to the IRS that the Agent's prior proposed adjustment for alleged Korean source "other income" adjustment is fatally flawed, it is not appropriate for the IRS to propose a fraud penalty for this year.

The IRS should not assess a willful FBAR penalty based on the possibility that the IRS Agent may disregard the objective evidence and seek to impose an unjustified fraud penalty against the taxes owed as the result of proposed income tax adjustments, particularly when the Agent has yet to issue a 30 Day Letter setting forth the actual adjustments proposed by the Agent.

### iii. Translator

The Agent cites to Laura's use of a translator at the interviews of her by the Agent as evidence of "willfulness." It takes a special kind of chutzpah to argue that our office's insistence that a certified translator be present for any interview of Ms. Kim somehow supports the assessment of a willful FBAR penalty.

In connection with the Agent's two interviews of Laura, we insisted that a certified Korean translator be present. We made this request because we wanted to make sure that the questions asked of Laura were properly understood by her and that the answers provided by Laura were properly understood by the Agent. We have never before seen an IRS agent argue that our efforts to ensure the accuracy of questions asked and answers given during an interview by an IRS Agent of a person whose native language is not English, who is unfamiliar with technical tax jargon, and who is likely to be unfamiliar with idiomatic English, supports the

Monday, April 23, 2018
Laura Kim (SSN:        8486)
Protest to Proposed FBAR Penalty
21 | P a g e

conclusion that the person being interviewed willfully failed to file an accurate FBAR.   Simply
stated, this argument is absurd.

Ironically, Laura was reluctant to have a certified Korean interpreter be present. Our
office absolutely insisted that a certified Korean translator be present. Any competent attorney
would have absolutely insisted that a certified Korean translator be present under these
circumstances.

The IRS provided a translator during the June 23, 2014 interview.   The first IRS
translator was completely incompetent.   As such, the IRS had to dismiss the first translator and
obtain a second translator.   That is why the interview did not start until later in the day.   The
second translator was not a certified translator, but instead a normal Revenue Agent.

Laura hired her own certified interpreter to attend this interview.   This was done out of an
abundance of caution by our office. We were concerned about the quality of the interpreter that
would be provided by the IRS.   As can be seen on the transcript of the June 23, 2014 interview,
the interpreter that Laura brought to the meeting repeatedly corrected the IRS interpreter.   See
pp. 63, 79, 80, 138, and 140.

During the second interview of Laura, we requested that our translator act as the official
interpreter for the interview.   The use of a translator is certainly not evidence of any wrongdoing
by Laura.

### iv. Forms 5471

The Agent regularly cites to the fact that Laura did not respond to a continuation letter
sent to her regarding the filing of Forms 5471 in support of the argument that Laura's failure to
file completely accurate FBARs was "willful." The Agent asserts that, as of today, Laura has still
not filed her past due Forms 5471.

Viewed in a light most favorable to the Agent, the Agent appears deliberately obtuse by
making this argument. Viewed in a light most favorable to our client, the Agent is attempting to
cover up what was either an egregious error or intentional misconduct on the part of the Agent.

The Agent sent out a Form 5471 continuation letter to Laura on April 9, 2013, before our
firm was retained by Laura.   The continuation letter requested that Laura file Forms 5471 for
years 2000 through 2012, going back some 13 years.   We have never before or since had a case
where the Agent requested Forms 5471 going back this far.   At the time the continuation letter

Monday, April 23, 2018
Laura Kim (SSN: ███-8486)
Protest to Proposed FBAR Penalty
22 | P a g e

was sent out, Laura had no idea what a Form 5471 was. While she had not previously filed any Forms 5471 prior to the date of the continuation letter, Laura's failure to file Forms 5471 was due solely to ignorance.

The Agent sent the Form 5471 continuation letter to the following address, which was a wrong address:



Los Angeles, CA ███

Laura's proper address at that time was:

Los Angeles, CA ███

Note that the continuation letter had both the incorrect street address number, and the incorrect zip code. The zip code is for an area in Irvine, CA. This letter was either delivered to someone other than Laura, constituting an illegal disclosure of return information in violation of section 6103 of the Code, or it was returned to the Agent as undeliverable. Given the circumstances, we believe that the letter was returned as undeliverable, placing the Agent on notice that the continuation letter was never delivered to Laura and that the Agent should have verified that the continuation letter was sent to a proper address.

In any event, Laura was oblivious to the existence of the continuation letter, and to her need to file Forms 5471 going back 13 years, for many months after the date on which the continuation letter was sent. The first inkling that something was amiss was when Laura received assessment notices for a total of $780,000.00 in penalties, $60,000.00 per year for each of the 13 years mentioned in the continuation letter.

Our office submitted a Freedom of Information Act request for the files relating to these assessments. We eventually received a copy of most of the file, with a number of pages redacted. Based on the redactions in the response to the FOIA request, it appears possible that the Revenue Agent sought to deliberately prevent us from learning about some of her actions in sending out the continuation letter. But the Revenue Agent could not hide the fact that she sent the continuation letter to the "wrong" address, an address that does not exist. The Agent, prior to us learning about the existence of the continuation letter, never brought to our attention that that the Agent had previously sent out a continuation letter for Forms 5471 for 13 years, and the Agent

Monday, April 23, 2018
Laura Kim (SSN: ███-8486)
Protest to Proposed FBAR Penalty
23 | P a g e

failed to advise our firm that the 150 day period set forth in that letter continued to run after our
firm was retained by Ms. Kim.

Once our firm became aware of the existence of the continuation letter and of the basis of
the penalty assessments against Ms. Kim, we challenged the penalty assessment through a
Collection Due Process Hearing. The IRS Office of Appeals decreased the total penalties from
$780,000, to $60,000. The amount was lowered to $60,000 to cover a $10,000 penalty per year,
for six years. Ms. Kim thereafter paid the reduced penalties in full.

In connection with the Collection Due Process Appeal, our firm, with the help of a CPA,
caused Forms 5471 to be prepared for all 13 years. Our firm then submitted these Forms 5471 to
the IRS as part of the Collection Due Process appeal on December 1, 2014. This fact has been
repeatedly conveyed to the Revenue Agent by our office.

It is unclear to us why the Agent makes this particular argument. The fact is that the
Agent made a reckless error in sending the continuation letter to the wrong address or,
alternatively, sent the letter to an incorrect address knowing that the letter would not be received
by Laura and that she would eventually be assessed many hundreds of thousands of dollars in
penalties. And it appears from the response to the FOIA request which was submitted by our
office that someone in the IRS did not want our office to know all of the true facts. The fact is
that Ms. Kim caused Forms 5471 for all of the years in question to be prepared and submitted to
the Office of Appeals after she learned that the IRS wanted her to submit these Forms to the IRS.
The argument by the Agent that Ms. Kim's failure to submit Forms 5471 supports the imposition
of willful FBAR penalties is completely contradicted by the facts and appears to be a clumsy
effort by the Agent to obfuscate the Agent's own improper conduct in sending out the
continuation letter to a wrong address.

### v. Mr. Khim's Culpability & Credibility

The Agent appears to believe that testimony supplied by Mr. Kim to the Agent supports
the imposition of willful FBAR penalties. Once again, the Agent is wrong.

Mr. Khim served as Laura's tax return preparer from 2009 through 2013. Mr. Khim
knew that Laura lived in Korea (see page 7 of the FBAR Explanation of Items), yet he failed to
advise Laura that she was required to report her Korean income on her U.S. income tax return.
This is clearly malpractice by Mr. Khim.

Monday, April 23, 2018
Laura Kim (SSN:        8486)
Protest to Proposed FBAR Penalty
24 | P a g e

Mr. Khim failed to advise Laura of her reporting responsibilities.   Because of his
mistakes, Mr. Khim could face preparer penalties and could otherwise suffer financially and/or
be subject to discipline under Circular 230.  Mr. Khim thus has a strong incentive to minimize
his own culpability in this matter.

Laura was ill served by Mr. Khim.  He took on the responsibility of being a trusted
professional, and he is culpable for his dereliction of duty.  Mr. Khim could have prevented this
entire situation by simply being diligent, informing Ms. Kim about the law, and assisting Ms.
Kim with her filing requirements.  Once Laura stopped using Mr. Khim, she no longer has had
any tax filing compliance problems.

The IRS has interviewed Mr. Khim on at least three separate occasions.  At this point Mr.
Khim is certainly aware that this case revolves around his mistakes.  Mr. Khim signed off on
Laura's tax returns, returns that failed to report Korean income tax, despite the fact that Mr.
Khim knew Laura lived in Korea.  Laura had no idea her Korean earned income should be
reported in the U.S., and she trusted Mr. Khim to properly advise her as to her responsibilities.

### vi. Alleged Interference with Summons

The FBAR Explanation of Items regularly asserts that our office interfered with the
enforcement of a summons served on Mr. Khim.  Since this assertion is directed at the conduct
of our office, our office is responding directly to this assertion as follows. This assertion by the
Agent is false.  As to whether the Agent is or is not intentionally making a false assertion, we
leave answering that question to others.  We merely explain here that the Agent's assertion is
false.

After we learned that the summons had been issued to Mr. Khim, we advised Mr. Khim
in writing that we did not object to him producing any non-privileged documents in his files that
were responsive to the summons.   We did, however, instruct him to not product certain
documents which we determined in good faith were privileged, namely, draft amended returns
that were prepared after the commencement of the audit.  That is all we did.

The agent's false assertion shows a total disregard of the privilege set forth in  26 U.S.C.
§ 7525.   Draft (unsigned) amended returns, prepared after the start of an audit, and not
previously turned over to the IRS, are subject to the accountant-client privilege and potentially
the work product privilege. Only Laura can waive this privilege, and she has not done so.

The Revenue Agent repeatedly tried to obtain privileged information both from our firm, and from Mr. Khim  Although our office did not file a petition to quash the summons issued to Mr. Khim, we did instruct him to not turn over to the IRS any documents which we believed were privileged. Mr. Khim apparently decided on his own to not respond to the summons at all. Eventually the IRS sought enforcement of its summons through the U.S. District Court.  Laura obtained notice of the enforcement, and Laura decided the best course of action was to merely instruct Mr. Khim to not product documents which we believed were privileged, while also  not objecting to Mr. Khim producing non-privileged documents in his file.

Our firm did not, and would not, improperly interfere with enforcement of a summons. Privileged documents are not required to be produced in response to a summons, and we simply exercised our client's right to maintain this privilege.  Our communications with Mr. Khim made clear that we did not object to him turning over non-privileged documents to the IRS in response to the summons. But we also made clear that Laura was not waiving any privileges and that he should not produce any documents which we believed were privileged.

The Agent's assertion that our office attempted to "interfere" in the enforcement of the summons issued to Mr. Khim is false and does not in any way support the Agent's improper conclusion that Laura is liable for a willful FBAR penalty.

We note that certain documents now in the IRS's possession, turned over by Mr. Khim, are privileged pursuant to 26 U.S.C. § 7525 and/or the work product privilege. These documents were obtained by the IRS in derogation and disregard of Ms. Kim's right to assert all valid privileges.  These privileged documents were obtained in violation of the law and should be immediately returned to Laura, care of our office. These documents  should not be relied upon by the IRS for any purpose.

### vii. Refusal to Answer Questions

The Agent asserts that Laura improperly refused to answer questions asked of her during her interview and that such a refusal supports the Agent's assertion of a willful FBAR penalty against Laura. The Agent's assertion is false.

A review of the June 23, 2014 interview transcript makes clear that Laura was instructed by our office to answer all questions which pertained to the subject matter of the summons, which was the audit of Laura's income tax returns for the years 2010 through 2012.

Monday, April 23, 2018
Laura Kim (SSN: ██████-8486)
Protest to Proposed FBAR Penalty
26 | P a g e

When Laura was asked questions about different taxpayers, questions which the agent admitted were clearly beyond the scope of the summons and beyond the scope of the examination of Laura's income tax returns for the years 2010 through 2012, our firm instructed Laura to not answer these questions. We objected to this line of questioning and instructed Laura to not answer these questions because: (a) the summons only related to Laura's taxes for 2010-2012 and Laura's appearance was in response to the summons; (b) we were given no advance warning that Laura would be asked questions relating to other taxpayers which were beyond the scope of the summons; (c) Laura was not given the opportunity to prepare for an interview which dealt with subject matters beyond the scope of the summons; and (d) the other taxpayers to which the questions related were not given any advance notice that Laura would be asked to give testimony regarding the audits of those other taxpayers as part of the summons appearance in Laura's own case.

It would have been inappropriate to permit the Agent to use a summons issued to Laura in connection with the pending audit of her income tax returns as a pretext for asking Laura questions regarding a pending audit of the returns of different taxpayers, particularly without first providing notice to the other taxpayers that the summons issued to Laura would be used for that purpose.

Any competent attorney would have interposed the same objections which were interposed by our office. It is completely inappropriate to cite to the valid objections made by our office as reasons for imposing an FBAR penalty against Laura.

### viii. Inconsistencies

In this section we will point out certain items from the Agent's FBAR audit report that are clearly incorrect. This is not intended to be a complete list of all of the Agent's inaccuracies and misstatements of fact. We urge the individual in the Office of Appeals who reviews this protest to read through the transcripts of the various interviews that have taken place in this case to get a full flavor of the Agent's continuous pattern of misstatements and in accuracies. For purposes of this section we have grouped the inaccuracies and misstatements into the following categories: (1) Fabrication of Facts; (2) Misquoting of Testimony; (3) Misstatement of Audit History; and (4) Statements Which Lack Evidentiary Support. We will discuss each in turn.

### a. Fabrication of Facts

**Page 4 of the report:** The agent asserts that, during the interview of Michael Khim, "POA Horowitz attempted to interfere with this interview by objecting to questions regarding Mrs.

Monday, April 23 2018
Laura Kim (SSN: ████-8486)
Protest to Proposed ▇▇ R Penalty
27 | P a g e

Kim's offshore accounts.  He said during the interview that they are not ready for offshore-type
questions."

Response: The Agent's notes from the interview of Mr. Khim on September 9, 2013, are
attached as **Exhibit 16**.  The Agent's notes do not reflect that Mr. Horowitz stated that "he was
not ready for offshore-type questions".  The Agent appears to have made up this purported
statement in an effort to dramatize the proposed penalty assessment.'

**Page 5 of report**: The Agent asserts that "Laura has admitted to having a bank account in Korea.
She said that one is an expense account and one general account"

Response: This statement by the Agent was fabricated.  A review of the word index of the
transcript of this interview will show that the word "general" appears four (4) times in the
transcript.  The phrase "general account" was never used by Laura.  The Agent appears to be
intentionally misstating the testimony found on pages 21 to 23 (Exhibit 3).  Laura was asked
where she had bank accounts and she indicated she had accounts at two banks.  She never
indicated that she only had two foreign bank accounts. As noted above, Laura listed both Korean
banks at which she had accounts on her FBARs for the years in question.

**Page 5 of report**: "The government translating agent also had difficulty understanding and
translating what Mrs. Kim said."

Response: The Revenue Agent repeatedly appears to infer that Laura speaks fluent English and
that she does not speak fluent Korean.  This is completely false.  The government translating
agent could not understand Laura because the translating agent was not a professional translator.
The translating agent was a Revenue Agent who was asked to serve as a translator.  On page 111
of the transcript (see Exhibit 3) the Agent handling Ms. Kim's audit told Revenue Agent Lee,
who was supposed to act as a translator, to "translate like that".  This comment was in reference
to the professional translator our firm hired for the meeting.  In response, the following exchange
occurred:

> Mr. Lee: She's a professional.
> Ms. Chernyak: You too.
> Mr. Lee: I was just brought in today.
> Ms. Chernyak: You're a revenue agent.  You're a professional.

The government translating agent had difficulty understanding what Laura said because the
government translating agent lacked sufficient fluency in Korean to be a certified translator.

{00094316.DOCX}

Monday, April 23,
Laura Kim (SSN: ███ -8486)
Protest to Proposed ███ R Penalty
28 | P a g e

**Page 6 of report**: "Laura said that she does not review the general ledger of the bakery. However, the examining agent found emails from Charlie Son and Michael Khim to Mrs. Kim where she is requesting emails with trial-balances and general ledgers and they are providing Mrs. Kim with that information. During the examining agent's tour of the bakery, Charlie Son said that he send the reports to Mrs. Kim with all transactions."

Response: Our office has requested a complete copy of all documents relied upon in determining that Laura should be held liable for a willful FBAR penalty. We have been verbally told by the Agent on multiple occasions that we have all of the documents that she has. We have not been provided with the alleged communications cited above, nor have we seen any notes from the Agent where she discusses this fact. The word "ledger" does not appear in the interview transcript of Mr. Son (see Exhibit 6). As such there is no evidence to substantiate this statement, and therefore it should not be relied upon for any purpose.

**Page 7 of report** "...since he knew that Mrs. Kim lived in Korea, he did not send her a questionnaire but instead he sent it to Charlie Son, her brother in law, who is in charge of Laura's Bakery in Los Angeles".

Response: The Agent indicated that Mr. Khim stated the information above during his interview conducted on July 15, 2015. Included as **Exhibit 17** are a copy of the Agent's notes from the July 15, 2015, interview of Mr. Khim. Page 4 of the notes provide that Mr. Khim never sent a questionnaire to Laura. There is no indication in the notes from the interview of Mr. Khim that he ever sent a questionnaire to Laura. Further, there is no evidence that Mr. Khim sent a questionnaire to Mr. Son. A review of the interviews of Laura, Mr. Khim, and Mr. Son, will show that not only did Mr. Khim not send a questionnaire to Laura, there is no indication that he sent a questionnaire to Mr. Son either.

**Page 7 of report**: "He did send returns to Mrs. Kim prior to filing business and personal returns with the IRS."

Response: The Agent's notes of this interview do not indicate that Mr. Khim ever stated this. As such this statement cannot be relied upon.

**Page 13 of report**: "Laura's Distributions is owned 50% by Mrs. Kim and the rest by her sister. According to the second interview this company was never operated; however according to the tax returns it was operating and Mrs. Kim received salary from it."

USA - 003584

Monday, April 23, 2018
Laura Kim (SSN: ██-8486)
Protest to Proposed FBAR Penalty
29 | P a g e

Response: The agent has fabricated this statement.  Laura indicated that this company was started in 2011, that the company operated, but that it was not operated for a long period of time, and was eventually closed in approximately 2014.  See pages 20-21 of Exhibit 4.

**Page 15 of report**: The auditor asserts that Laura was willful given that she has willfully "Unreported income from rental expense from bakery owned in Los Angeles"

Response: Laura's bakery in Los Angeles did not produce enough net income to pay rent to the property owner, who is Laura.  The bakery did not report a rent deduction during any of the years under audit.  In prior years the bakery claimed a rent deduction, and Laura reported rent received from the Bakery on her Form 1040 Schedule E.  This statement made by the agent is entirely without merit.  A review of the Agent's proposed adjustments accompanying the 10 Day Letter, Exhibit 14, will show that the only rent adjustment being proposed to the Form 1040 is related to Laura's Korean rental properties.

**Page 16 of report**: The report states that "Mrs. Kim had opportunities to disclose her foreign accounts, foreign businesses and foreign income through Mr. Khim's annual tax preparation questionnaires, which included questions about foreign accounts and foreign income.  Mr. Khim also asked Mrs. Kim every year whether she had foreign bank accounts.  Mrs. Kim never completed the questionnaires and always replied "No" when asked whether she had foreign accounts or foreign income."

Response: See page 7 of the report.  Page 7 of the report directly contradicts Page 16 of the report.   Page 7 provides that Mr. Khim told IRS exam that "He normally sends out questionnaires; however since he knew that Mrs. Kim lived in Korea, he did not send her a questionnaire but instead he sent it to Charlie Son, her brother in law, who is in charge of Laura's Bakery in Los Angeles."   To assert an FBAR penalty based on the fact that Laura never completed the questionnaires is preposterous.  Per Mr. Khim's testimony the questionnaire was never submitted to Laura.  Further, Mr. Khim repeatedly testified that he never asked Laura if she had a foreign bank account - when asked whether he was aware at that time that Laura had a Korean bank account, Mr. Khim indicated that he didn't ask her.  Exhibit 5, page 80.  As noted above, the evidence is clear that no questionnaire was sent to Laura.  Further, none of the other parties testified that a questionnaire was ever sent to Mr. Son.

**Page 16 of report**: "Mrs. Kim not only failed to disclose the existence of her foreign account, she also made false and/or misleading statements when directly asked about foreign accounts, foreign businesses and foreign income by Mr. Khim."

USA - 003585

Monday, April 23, 2018
Laura Kim (SSN: ███-8486)
Protest to Proposed FBAR Penalty
30 | P a g e

Response: This statement is an excellent example of facts which have been made up by the
Revenue Agent in an improper attempt to make Laura look willful.  Mr. Khim repeatedly
testified that he did not speak with Laura prior to completing tax returns for tax years 2009
through 2011, and that all of his communications when preparing these returns were with Mr.
Son.

**Page 17 of report:** "When asked if there were other sources of funds that she did not declare on
her personal return, Mrs. Kim claimed privilege (Page 20 of the interview).

Response: The Agent is citing to page 20 of Exhibit 3.  The discussion on page 20 is best
understood by reviewing pages 17 through 20.  The testimony on pages 18 and 19 provides:

> Q      From your understanding, is there any income or any additional earnings that you
> just made a mistake and forgot to report?
>
> MR. LEE [acting as interpreter]: She said CPA prepared the return, so hopefully
> everything reported.  There might be something missing.
>
> Q      Okay. All right. During your discussion with your tax attorney, have you found
> any mistakes on your return?
>
> MR. HORWITZ: Attorney-client privilege, if it's asking for what her discussions were
> with the tax attorney."

As is apparent from the testimony, Laura answered the question asked by the Agent, and only
claimed privilege (through her attorney) as it relates to attorney-client communications.  As such
this statement by the Agent is untrue.

### b. Misquoting of Testimony

**Page 4 of report:** The letter states "Mr. Khim said Mrs. Kim did not complete questionnaires"

Response: This statements misstates the facts.  Mr. Khim testified that he never sent Laura a
questionnaire.  As such it is inappropriate for the Agent to infer that Laura refused to fill out a
questionnaire – Laura was never asked to fill out a questionnaire.  The Agent admits that
questionnaires were never sent to Laura on page 7 of the report.

Monday, April 23,
Laura Kim (SSN: ███-8486)
Protest to Proposed FBAR Penalty
31 | P a g e

**Page 5 of report**: The report states that "when asked if she thinks there are any mistakes on the originally filed returns, Laura stated that she does not think there are any mistakes…After review of her Korean returns, it was found that the salaries from her 100 percent owned Korean corporations were over $600,000 – which was never claimed on the income tax returns."

Response: Page 18 and 19 of the June 23, 2014 (Exhibit 3) interview transcript provides that Laura stated: "CPA prepared the return, so hopefully everything reported. There might be something missing." Further, while Laura did fail to report her Korean earned income on her U.S. return, she also failed to claim a foreign tax credit which offsets the tax owed on her Korean earned income.

**Page 5 of report**: The agent stated "Mrs. Kim could not remember anything about operations of her business."

Response: This is untrue. A review of the transcript will show that Laura openly discussed the operation of her Korean businesses.

**Page 6 of report**: "Mrs. Kim said that she had 2 personal accounts: one at Woori Bank and one at Standard Chartered Bank". The agent cites to page 23.

Response: As discussed above, Laura indicated she had accounts at two banks, not that she only had two accounts. A review of pages 21 through 23 will clearly show that the Agent is misstating Laura's testimony.

**Page 6 of report**: "During the interview Mrs. Kim said that she visits the US two months in the winter and two months in the summer. The following interview she said she visits for 1 week for each trip – once or twice per year."

Response: The Revenue Agent asked Laura how often she traveled to the U.S. from 2004 to 2011. In response Laura said approximately twice a year, for two months at a time. As is explained in the fact section above, Laura traveled to the U.S. for a month or less during 2012 and 2013. As such the Agent's attempts to impeach the testimony of Laura are without merit.

**Page 7 of report**: "Interpreter hired by Mrs. Kim/POA said that Mrs. Kim understands English perfectly and wanted to know if she still needs to translate (pg 6 – 10)"

Response: On page five (5) of the transcript (see Exhibit 4) the translator stated that 'She seems to understand English quite well". The word "perfectly" was never used. As is discussed above,

USA - 003587

Monday, April 23, 2018
Laura Kim (SSN: ███ 8486)
Protest to Proposed      R Penalty
32 | P a g e

the Revenue Agent seems to be asserting that the use of a translator evidences willfulness. This
is a preposterous assertion, for reasons explained previously.

**Page 7 of report**: "Mrs. Kim stated that Laura's Distributions has been inactive since it opened
(pg 20)."

Response: The Agent misstates Laura's testimony. Laura indicated that the company was started
in 2011, that the company was operated, but that it was not operated for a long period of time,
and was eventually closed in approximately 2014. See pages 20-21 of Exhibit 4.

**Page 9 of report**: "Pg 34 - Mrs. Kim said that she has started to receive salary for the first time
from Marina Enterprise in 2000; however when she filed Form 5471 she said that this company
first started in 2010. Then she amended the answer to 2001 after the examining agent asked a
follow-up clarifying question."

Response: The cited page, page 34 (and page 35) of Exhibit 4, clearly provides that Laura stated
that she first received salary in 2000. The auditor is misstating Laura's testimony.

**Page 9 of report**: "Pg 35 – When Mrs. Kim was asked questions about LK Waters Company,
she said that this company was fraudulent and she was forbidden from operating it. It was
supposed to be a bottling company. According to the form 5471 filed in US this company has
been operating since 2011, has gross receipts and reports salary that was paid to Mrs. Kim"

Response: The Agent is misstating Laura's testimony and is attempting to assert that Laura
engaged in a fraudulent business practice. The agent is completely misstating the testimony in
an apparent effort to improperly impugn Laura. On the page cited by the Agent, page 35 of
Exhibit 4, Laura explains that the person she purchased the company from lied to her about the
customers and contracts of the company. The seller also lied about the condition of the bottling
equipment. Laura goes on to testify on page 36 and 37 that she received a salary from this
company for a few months, and that the business was still operating up until a few months before
the interview (i.e until mid-2016).

**Page 9 of report**: "Pg 61-62 – Mrs. Kim said that she has never received copy of the income tax
return from Mr. Khim. During Mr. Khim's interview, Mr. Khim presented copies of the emails
that he had sent to Mrs. Kim where she approved filing of the returns and agreed to the
numbers."

USA - 003588

Monday, April 23, 2018
Laura Kim (SSN: ████-8486)
Protest to Proposed FBAR Penalty
33 | P a g e

Response: If you review the cited pages you will see that Laura indicated that she did not recall ever receiving a copy of the 2009 tax return by email, and that she did not review the 2009 tax return prior to filing.   Note that Mr. Khim did not produce any emails which evidence him emailing Laura copies of her 2010 or 2011 tax return prior to filing.

**Page 9 of report**: "Pg 108 - Mrs. Kim said that return is completely correct filed in Korea for 2009 to 2014."
Response: A review of page 108 will clearly show that this is not what Laura said.  Instead she says that she hired professionals to handle her taxes and that she relied on them.  Further note that during the ongoing six year audit the IRS has never asserted that the tax returns filed by Laura in Korea omitted Korean income.

**Page 17 of report**: "During her interview on June 23, 2014, Mrs. Kim identified just two foreign bank accounts."

Response: The Agent appears to be intentionally misstating the testimony found on pages 21 to 23 of Exhibit 3.  Laura was asked where she had bank accounts and she indicated she had accounts at two banks.  She never indicated that she only had two foreign bank accounts.

**Page 17 of report**: "During that same interview, Mrs. Kim also stated that no money goes into her foreign account from other sources or countries"

Response: It is unclear why this statement is included in the FBAR penalty letter.  There has never been any allegation that Laura transferred any funds into her Korean account from any country other than the U.S.

### c. Misstatement of Audit History

**Page 1 of report**: The report states that "Pattern letter was sent to Mrs. Kim's address for the non-filing of Form 5471 for Marina Enterprise Corporation in Korea on 04/09/2013.  As of the date of this memo, Mrs. Kim has not filed these delinquent forms"

Response: The pattern letter cited by the Revenue Agent was sent to the incorrect address, and as such Laura never received this letter.  We discussed this in more detail above under the section titled "Forms 5471".  Please also note that Forms 5471 were provided to the Office of Appeals on or about December 1, 2014.  As such the Revenue Agent's statement is blatantly false.

{00094316.DOCX}

USA - 003589

Monday, April 23, 2018
Laura Kim (SSN: ███-8486)
Protest to Propose ███ R Penalty
34 | P a g e

**Page 2 to 3 of report:** The Agent is attempting to attack Laura's credibility by discussing the attempts made by the Service to interview Laura, and inferring that Laura intentionally avoided being interviewed by the Service.

Response: Laura resides in Korea.  Laura voluntarily appeared for two separate interviews. Laura did not attempt to avoid the IRS, and instead she voluntarily agreed to be interviewed.

**Page 2 of the report:** "RA sent out six Information Document Requests"

Response: As of the date of this letter the Revenue Agent continues to issue new information document requests.  With each proposed audit report the undersigned counsel has provided proof to the IRS that the proposed income tax audit report is hopelessly incorrect.  In response, the Agent has opened new audit issues, without any notice to the taxpayer, in an apparent attempt to hold Laura liable for taxes she does not owe.  As of the date of this letter the Agent has issued a total of nine (9) Information Documents Requests, with the most recent request being issued on March 7, 2018.

**Page 4 of report:** The Agent states that she attempted to schedule an interview with the taxpayers, and that she left POA Amitrano "a voice mail to call her back on 07/12/2016".  She goes on to state that "POA still has not contacted the examining agent regarding an appointment".

Response: Laura was interviewed by the IRS on August 25, 2016, approximately 45 days after the Revenue Agent left the July 12, 2016 voicemail.  Laura voluntarily appeared for this interview, which required her to fly to the United State from Korea.  As such the statement made by the Revenue Agent is untrue – an appointment was scheduled, and Laura appeared.  On page 7 of the report the agent discusses this interview.

**Page 6 of report:** "Mr. Taylor instructed Mr. Khim not to cooperate with the provision of the records and therefore currently the summons is with DOJ to be enforced."

Response: The Agent is obsessed with improperly asserting that our firm interfered with her investigation.  This is completely without merit.  Our firm sought to protect documents privileged pursuant to 26 U.S.C. § 7525.  We discussed this topic in more detail above.

**Page 7 of report:** The agent indicates that our firm has never represented Mr. Khim.

USA - 003590

Monday, April 23, 2018
Laura Kim (SSN: ████-8486)
Protest to Proposed FBAR Penalty
**35 |** P a g e

Response: The agent is absolutely correct, our firm has never represented Mr. Khim. The privilege that was cited by our firm, which is codified in 26 U.S.C. § 7525, belongs to Laura, as it relates to her communications with Mr. Khim. The Revenue Agent does not understand the accountant-client privilege, as evidenced by this statement.

**Page 7 of report**: "Letter also stated that they are working on gathering information according to the IDR dated September 21, 2015. Note: None of the records were ever provided to the examining agent."

Response: Since September 21, 2015, our firm has provided the government with thousands of pages of documents. These include, but are not limited to, the documents marked as Exhibit 15. Additionally, our firm provided the Service with nearly one thousand pages of documents on April 11, 2018. As such this statement is incorrect, unjust, blatantly false, and is clearly made to improperly impugn Laura.

**Page 9 of report**: As it relates to the FBARs filed for tax years 2009 through 2012, the Agent stated "IDR was issued previously for these records and Mrs. Kim did not provide anything."

Response: Our firm provided copies of Laura's FBARs to the Agent during the interview of Laura on August 25, 2016.

**Page 15 of report**: "Income tax audits are open from 2010 through 2012 years. Fraud-related penalties are being proposed regarding both foreign and domestic issues…"

Response: As of the date of this letter our firm is awaiting the issuance of an income tax 30-day letter. Whether a fraud penalty will be proposed is unknown. What is known at this time is that Laura did not report her Korean income in the U.S., nor did she claim a foreign tax credit. We anticipate that, when this matter is viewed by someone who is objective, no tax, or very little tax, will be owed because of her failure to report her Korean income. We further anticipate that the IRS will not assert a fraud penalty in the income tax case. There is no evidence to support the assertion of a civil fraud penalty

**Page 17 of report**: "As of the date of this memo, Mrs. Kim still has not filed delinquent Forms 5471 for her foreign entities until the audit. Her 2012 return was filed in 2015…"

Response: As noted above the delinquent Forms 5471 were provided to the service on or about December 1, 2014. Further, Laura's 2012 income tax return was filed in 2014, and not in 2015.

{00094316.DOCX}

Monday, April 23, 2018
Laura Kim (SSN: ███-8486)
Protest to Proposed FBAR Penalty
**36 |** P a g e

### d. Statements Which Lack Substantiation

**Page 4 of report**: The Revenue Agent states that "Mr. Taylor told [Michael Khim] that he (Mr. Taylor) would send the information to the IRS (See Exhibit 1, Letter from Mr. Taylor).

Response: There are no exhibits attached to the FBAR explanation of items letter. As such we cannot confirm what letter the Revenue Agent is referring to.

**Page 6 of report**: "The Exhibit F is the letter interfering with the summons to Mr. Khim"

Response: There are no exhibits attached to the proposed FBAR penalty letter.

### x. Error in Computing FBAR Penalty

The Agent made many errors in calculating the appropriate FBAR penalty. In this section we will discuss why the proposed willful penalty assessment should not be sustained, after which we will discuss the errors in the Agent's calculation of a willful penalty.

### a. Laura Acted Non-Willfully

All of the facts in the present case show that Laura acted non-willfully. While Laura failed to report her Korean income on her U.S. income tax return, Laura properly reported her foreign earned income on her Korean income tax return. This is unlike a case where a taxpayer has a foreign account and does not report the income to the country where the funds are held. Further, because Laura paid Korea a large amount of tax, Laura is receiving a foreign tax credit which will offset all, or nearly all, of her U.S. tax liability on her Korean income.

With respect to the FBARs, Laura listed both Korean banks at which she had foreign bank accounts on her FBARs. This is a clear indication of a lack of willfulness.

Internal Revenue Manual § 4.26.16.6.5.1 (11-06-2015) provides that the "test for willfulness is whether there was a voluntary, intentional violation of a known duty". Laura relied on her Korean accountant to report her Korean income to Korea, and her U.S. accountant to report her U.S. income to the U.S. Laura decided to take on the task of preparing the FBARs by herself. Based on her testimony Laura relied on the assistance of her Korean company's accounting department to provide her with her bank account information, the information she placed on her FBAR. Her FBARs listed both of her banks and merely failed to include all of her accounts at those two banks. Laura was not certain as to how the accounts were to be reported,

Monday, April 23, 2018
Laura Kim (SSN: ███████8486)
Protest to Proposed FBAR Penalty
37 | P a g e

and she believed that if she made a mistake the IRS would send her a notice of her mistake. Note that Laura reported all of her interest income, from all of her Korean accounts, on her Korean income tax return.

Laura is in her mid-70's. She previously suffered a traumatic head injury. She voluntarily agreed to be interviewed by the IRS on two separate occasions, and a review of her interview transcripts clearly show that she was truthful during the interviews, and that she did not hide anything from the Agent. The Agent has expended a great deal of energy in the present case, and all of the evidence, viewed objectively, demonstrates that Laura did not act willfully in filing incomplete FBARs for the years at issue. While Mr. Khim knew Laura had foreign accounts, he did not assist her with the filing of her FBARs, nor did he inquire into whether she had other filing requirements with respect to foreign assets.

In the case of *Marinello II v. U.S.*, the U.S. Supreme Court considered the meaning of the word "corruptly" as it related to a conviction pursuant to 26 U.S.C. § 7212(a). ___ U.S. ___, (2018). The Supreme Court, in reversing the defendant's conviction under section 7212(a), stated that ". . . practically speaking, we struggle to imagine a scenario where a taxpayer would "willfully" violate the Tax Code (the mens rea requirement of various tax crimes, including misdemeanors, see, e.g., 26 U. S. C. §§7203, 7204, 7207) without intending someone to obtain an unlawful advantage."

In the present case Laura has not received any meaningful "benefit" from filing incomplete FBARs or from not reporting her Korean income on her U.S. income tax returns, unless the definition of "benefit" is expanded to include being subjected to an IRS audit for six years by an Agent who seems determined to impose significant FBAR penalties and income tax deficiencies that are not warranted by the facts of the case. Laura did what she believed to be the proper thing. She properly reported all of her Korean income to Korea, and paid a large amount of Korean income tax to Korea. Laura is receiving a foreign tax credit for the amount of tax paid to Korea. The foreign tax credit will eliminate any tax liability owed to the U.S. for failure to report Korean income. As such Laura did not benefit by her mistakes; her mistakes are clearly nonwillful.

In the present matter Laura has not acted willfully, and therefore the penalty cannot exceed $10,000 per year. As such the penalty at issue must be reduced to an amount that does not exceed a total of $40,000, or a maximum of $10,000 for each of the four years at issue.

USA - 003593

Monday, April 23, 2018
Laura Kim (SSN: ██████-8486)
Protest to Proposed    R Penalty
**38 |** P a g e

### b. The IRS Has Not Properly Calculated the Penalty for a Willful Violation

While our firm remains confident that Laura will prevail in court if the IRS attempts to pursue willful FBAR penalties, it is important to note that the Agent's calculation of the willful penalty contains many errors and was made in violation of the Internal Revenue Manual.

The Revenue Agent's paperwork indicates that the Agent used the following methodology in determining the maximum willful FBAR penalty.  The Agent took all of the accounts that were opened during tax year 2011, and she looked to the June 30, 2012 balance for each of the accounts.  Next she took the higher of 50% of the June 30th account balance, or $100,000, on an account-by-account basis.  She then added the amounts to determine the appropriate penalty amount, which the Agent computed to be $4,056,439.40.  Finally, she took the penalty amount and she divided it by four (4) and proposed assessing a penalty of $1,014,109.85 for each of the four tax years, 2009 through 2012.

According to the Agent's work papers, the IRS is proposing to assess Laura with a willful penalty for each of the 38 accounts on which Laura purportedly was a signatory.  Note that the total balance in these purported 38 accounts as of June 30, 2012, according to the Revenue Agents paperwork, was $1,618,766.23.

Out of the purported 38 accounts, two accounts appear twice, three accounts do not exist, and three accounts were not open during tax year 2011 (they were opened during tax year 2012).

Additionally, the 30-day FBAR report contains bank account exhibits which do not coincide with the 2011 penalty calculation, and the report omits statements that are needed to confirm the FBAR penalty calculation.  The 30-day FBAR report contains a total of 14 bank account statements from tax year 2012.  As such the amounts found in the report cannot be verified using the statements included with the report.

Here is a list of the purported 2011 accounts which: (1) were double counted, (2) which do not actually exists, and (3) where were not open during tax year 2011:

///

{00094316.DOCX}

Monday, April 23, 2018
Laura Kim (SSN: ████-8486)
Protest to Proposed ████ R Penalty
39 | P a g e

| Account Number | Reason |
|---|---|
| 4681 | Appears Twice |
| 5417 | Appears Twice |
| 2-001 | No Such Account Exists |
| 1-003 | No Such Account Exists |
| 3-001 | No Such Account Exists |
| 8765 | Account Opened in 2012 |
| 9546 | Account Opened in 2012 |
| 6258 | Account Opened in 2012 |

It is very concerning that the IRS would propose a $4M+ penalty based on a faulty analysis done by the Revenue Agent. Anyone reviewing this case would notice within two minutes of picking up the case that two of the accounts were double counted. The Revenue Agent, among others, should have noticed this mistake.

Regarding the accounts that do not exist, the Agent includes account numbers that have never before been listed (they were not included in the Agent's Korean bank deposit analysis). The Agent cites to work papers, pages 400-7.14, 400-9.10, and 400-8.32, that are not included in the FBAR penalty package, nor are they included in the Korea "other income" adjustments (see Exhibit 14). Since the agent has repeatedly told us that all of the documents in her possession have been provided to us, we highly doubt that the cited pages exist. The Agent, as well as anyone who reviewed the Agent's work for accuracy, should have realized that these accounts do not exist. All one had to do was match up the exhibit pages to the account pages and it would have been apparent that these three accounts were fabricated.



Finally, as it relates to the accounts which were not opened in 2012, a review of the statements included with the FBAR report clearly shows that these accounts were not opened during 2011. The bank statement for the account ending in x8765 was included with the FBAR 30-day letter (Workpaper 400-10.80). This statement shows that this account was opened on February 13, 2012. The bank statement for the account ending in x9546 was included with the FBAR 30-day letter (Workpaper 400-10.81). This statement shows that this account was opened on February 13, 2012. The bank statement for the account ending in x6258 was included with the FBAR 30-day letter (Workpaper 400-10.85). This statement shows that this account was opened on January 16, 2012. The Agent, and anyone reviewing the Agent's work for accuracy, should have realized that these accounts were not opened until 2012, and therefore they should not be included in the penalty computation.

USA - 003595

Monday, April 23, 2018
Laura Kim (SSN: ███-8486)
Protest to Proposed FBAR Penalty
40 | P a g e

Regarding the duplicate accounts, for the account ending in x4681, the first time this account appears on the Agent's work paper, the Agent recorded a balance of zero as of June 30, 2012, while the second time the account appears she indicated the balance was $712,878.78. Regarding the second duplicate account, the account ending in x5417, the first time the account appears on the Agent's work paper the balance is zero, while the second time the account appears the balance is $450,683. Note that, as it relates to the account ending in x5417, neither balance is correct, the actual balance as of June 30, 2012 was $24,683.09. As such the overall account balance as of June 30, 2012 must be reduced by the net of $425,999.91 ($450,683 minus $24,683.09).

Regarding the three accounts which do not exist[3], the Agent lists the x2-001 account balance as of June 30, 2012 as $63,294, the x1-003 account balance as of June 30, 2012 as $0, and the x3-001 account balance as of June 30, 2012 as $7,919. As such the overall balance for June 30, 2012, must be reduced by $71,213 ($63,294 plus $0 plus $7,919).

Regarding the three accounts which were not opened in 2011, the auditor has the x8765 account balance as of June 30, 2012 as $631.80, the x9546 account balance as of June 30, 2012 as $2,792.25, and the x6258 account balance as of June 30, 2012 as $46,250. As such the overall balance for June 30, 2012, must be reduced by $49,674.05.

As such the June 30, 2012 balance for all of the accounts should be adjusted as follows:

| | |
|---|---|
| Balance per Auditor as of June 30, 2012 | $1,618,766.23 |
| Reduction for Double Booked Accounts | $425,999.91 |
| Reduction for Accounts That Do Not Exist | $71,213 |
| Reduction for Accounts Which Were Not Open | $49,674.05 |
| Total | $1,071,879.27[4] |

---

[3]Note that the three made up account numbers are not part of the accounts listed on page 10 and 11 of the FBAR Explanation of Items report. The exhibit pages cited by the Revenue Agent do not exist (copies of these workpapers cannot be located).
[4]It is believed that the agent made other errors when calculating the June 30, 2012 account balance.

USA - 003596

Monday, April 23, 2018
Laura Kim (SSN: ███-8486)
Protest to Proposed FBAR Penalty
**41 |** P a g e

The maximum willful FBAR penalty that may be assessed pursuant to 31 U.S.C. § 5321(a)(5)(C) is the greater of $100,000, or 50% of the account balance at the time of the violation (i.e. June 30th). As such the willful penalty in the present matter cannot exceed 50% of $1,071,879.29, or $535,936.64.

The Code does not allow for a penalty to be based on an account by account penalty computation. Explained differently, the IRS cannot assert that the penalty is $100,000 per account, for each account with less than $200,000 in it. The IRS must either assert a $100,000 penalty, or a penalty equal to 50% of the account balance of all accounts.

As it relates to the splitting of the penalty over all four years, the Revenue Agent's paperwork does not comply with the Internal Revenue Manual. Internal Revenue Manual § 4.26.16.6.5.3(2) (11-06-2015) provides that:

> "the total penalty amount for all years under examination will be limited to 50 percent of the highest aggregate balance of all unreported foreign financial accounts during the years under examination. In such cases, the penalty for each year will be determined by allocating the total penalty amount to all years for which the FBAR violations were willful based upon the ratio of the highest aggregate balance for each year to the total of the highest aggregate balances for all years combined, subject to the maximum penalty limitation in 31 USC 5321(a)(5)(C) for each year."

Interim Guidance Memorandum SBSE-04-0515-0025 provides the following example:

> "Assume highest aggregate balances of $50,000, $100,000, and $200,000 for 2010, 2011, and 2012, respectively. The total penalty amount is $100,000 (50 percent of the $200,000 highest aggregate balance during the years under examination). The total of the highest aggregate balances for all years combined is $350,000. The penalty for 2010 is $14,286 ($50,000/$350,000 x $100,000). The penalty for 2011 is $28,571 ($100,000/$350,000 x $100,000). The penalty for 2012 is $57,143 ($200,000/$350,000 x $100,000). The penalty amounts for each year are subject to the maximum penalty limitation in 31 U.S.C. § 5321(a)(5)(C)."

In the present case, the Revenue Agent did not determine the highest account balance during tax years 2009, 2010, and 2012, as of June 30th of the following year. The only work papers which indicate the amounts Laura had in her foreign bank accounts during all four years are found on page 10 of the FBAR Explanation of Items. The amounts found on page 10 cannot be relied upon. The agent shows the June 2012 balance as being $5,556,492.31, yet, as mentioned above,

Monday, April 23, 2018
Laura Kim (SSN: ████-8486)
Protest to Proposed FBAR Penalty
42 | P a g e

the agent found that the maximum value as of June 30, 2012 totaled only $1,618,766.23. As discussed above, the $1,618,766.23 amount includes double counted accounts and accounts that do not exist. As such the $5,556,492.31 amount is clearly incorrect.

Because the Agent has not provided any work papers to substantiate the amounts found in the chart on page 10, the penalty for tax years 2009, 2010, and 2012, cannot be substantiated. Further, even if the Agent could substantiate these amounts, she should have allocated the penalty based upon the ratio of the highest aggregate balance for each year to the total of the highest aggregate balances for all years combined. Since the Agent proposes to assess 25% of the computed penalty amount to each of the four tax years, the agent has clearly not complied with the Internal Revenue Manual.

   c.   **Because Laura's Lack of FBAR Compliance Was NonWillful, The Statutory Maximum Penalty For Each Year is $10,000**

The relevant statute provides that, for nonwillful violations, the maximum penalty per violation is $10,000. For each year there has been only one "violation," namely the filing of an incomplete FBAR. Since there was only one "violation" in each year, the maximum possible FBAR penalty for each year is $10,000.

**VIII. Conclusion**

This letter outlines just some of the many errors found in the report completed by the Revenue Agent. This case has been ongoing for six years. Laura has cooperated throughout the entirety of the examination. She has voluntarily subjected herself to two separate interviews, and she has provided the IRS with thousands of pages of documents.

The proposed FBAR penalty at issue is completely without merit. Laura's lack of compliance was non-willful. As a result, the statutory maximum penalty for each year is $10,000. Given the Agent's extensive improper conduct, no FBAR penalties should be imposed.

///

USA - 003598

Monday, April 23,   0
Laura Kim (SSN: ██ ███8486)
Protest to Proposed   R Penalty
**43 |** P a g e

If you have any questions or concerns please contact the undersigned counsel.  Thank you.

Sincerely,

A. LAVAR TAYLOR

Attachments: Exhibits as Listed Included on Flash Drive.

I declare, under penalty of perjury, that this protest was prepared by me.  Although I do not know of my own personal knowledge the facts contained herein, on the basis of information provided to me, I believe them to be true.

Dated: April 23, 2018

A. LAVAR TAYLOR

USA - 003599

# Exhibit 108

## Case Activity Record Print

| | | | | | | |
|---|---|---|---|---|---|---|
| **TP** | KIM, LAURA H | | **WUNO** | 6318320003 | **Source** OE | **DO** **Part** 1 |
| | ▮▮▮▮▮▮▮▮▮ | | **TIN** | ▮▮▮-8486 | **Group** | **AO** Binns, Duane D |
| | | | **MFT** | 00 | **Type** FBAR | **Assigned** 12/21/2018 |
| | LOS ANGELES, CA ▮▮▮ | | **Features** | AI,IC,IT,TR | | **Requested** 06/08/2018 |
| **DKTNO** | **DC** Office | | **Attorney** | | | **Received** 11/15/2018 |
| **KEYTNO** | | | **KEYTIN** | | | **Created** 11/16/2018 |
| **TP PHONE** | | | | | | **KEYPER** 200912 |
| **REP** | JONATHAN AMITRANO | | **REP PHONE** | 714.546.0445 | | |

Case Activity Records
**Total Time:  89.50**

| Date | Action | Hours | Follow-Up/ Completed | Notes |
|---|---|---|---|---|
| 02/01/2019 | CR - NR | 0.00 | | [SYSTEM] |
| 02/16/2019 | AN | 0.00 | | [McGeehan, Russell W (9588)] My work on this case is delayed due to several competing priorities that include my responsibilities as a technical guidance coordinator, the number of cases I am currently assigned, Tax Court calendars, post assessed and claims cases that require immediate review, among other matters. |
| 03/13/2019 | AN | 1.25 | | [McGeehan, Russell W (9588)] Due to 2 weeks military leave, ended 3/11/2019 and other competing priorities I was not able to begin my initial review on this case until today. Case was sent in 7 boxes which contained rubber band bound papers for at least 3 MFT's - 00, 02 and 30. Sorted through files, began to organize and identify issue, other initial review activities. |
| 03/22/2019 | VA | 0.00 | | [McGeehan, Russell W (9588)] TPName: KIM, LAURA H TIN: ▮▮▮-8486 MFT: 00 Tax Period: 200912N   STATDATE: '12/31/2019'   STATCODE: 'Blank' Tax Period: 201012N   STATDATE: '12/31/2019'   STATCODE: 'Blank' Tax Period: 201212N   STATDATE: '12/31/2019'   STATCODE: 'Blank' Tax Period: 201112N   STATDATE: '12/31/2019'   STATCODE: 'Blank' |
| 03/22/2019 | TC - SCM | 0.00 | | [McGeehan, Russell W (9588)] Received newly assigned case. |

In lieu of contact letter, I called POA Taylor to discuss the case. We agreed on contested issue(s) and plan for conference.

I explained my work on this case will be delayed by months due to other priority work.

He explained that their were various protest letters submitted for this case. He will have POA Armitrano review file and send me the latest protest info.

Form 2848 attached to 2011 Form 1040. Form 2848 and CFINK shows Lavar Taylor, Jonathan Amitrano, Lisa Nelson and Joyce Cheng given POA on 10/21/205. Taylor can receive correspondence, no correspondence for to others.

Per IDRS, there are no assessments for TP on MFT 30, so there are no premature assessments.

Checked CSC to ensure that no related cases are assigned to other AO's.

Checked CSC/AIVP for Taxpayer's name and address, TIN, MFT, IC Feature Code, Category, deficiencies, key period, POA info, phone numbers, tax return (should/should not have N modifier) as required, Deficiency/Penalty/Claim amounts.

IMFOLT shows refund requested on return was made.

USA - 004645

Form 13381 filled in via ACDS as required.

| | | | |
|---|---|---|---|
| 03/22/2019 | AN | 2.75 | 03/29/2019 [McGeehan, Russell W (9588)]<br>03/29/2019 2009-2012 statute verification and case organization. This is an FBAR penalty<br>case pursuant to 31 USC 5321(a)(5), for failing to file per 31 USC 5314.<br>For each calendar year a U.S. person with foreign accounts over $10,000 must<br>file TF F90-22.1 by 6/30 of the next year. In this case the filing deadline<br>was 6/30/2010(2009), and the ASED is 6 years after the filing deadline.<br>ASED = 6/30/2016. The file contained individual FBAR consents to extend<br>the 2009 , 2010, 2011 and 2012 year until 12/31/2019 (signed by rep on<br>4/23/2018). No earlier consents found. Appeals policy is to consider<br>consents signed after original ASED expired as valid to revive ASED. Will<br>e-mail RA to determine if other consents in file. |
| 03/22/2019 | VA | 0.00 | [McGeehan, Russell W (9588)] |
| 03/22/2019 | TG - IR | 0.00 | [McGeehan, Russell W (9588)]<br>Form 13381 Submitted to ATM |
| 04/09/2019 | CO - OT | 0.25 | [McGeehan, Russell W (9588)]<br>rec'd fax for TP, new 2848 - mostly the same POA's. I called POA Amirtano and<br>discussed the way ahead - sd will be reviewing files in more detail in a few weeks. |
| 04/14/2019 | MS | 0.00 | [McGeehan, Russell W (9588)]<br>My work on this case is delayed due to several competing priorities that include my<br>responsibilities as a technical guidance coordinator, the number of cases I am<br>currently assigned, Tax Court calendars, post assessed and claims cases that<br>require immediate review, among other matters. |
| 05/15/2019 | TC | 0.00 | [McGeehan, Russell W (9588)]<br>Decision was made to transfer case due to my other competing work priorities. I<br>called POA Amitrano and LMSG to update him. |
| 05/24/2019 | CR - RA | 0.00 | [SYSTEM] |
| 05/24/2019 | VA | 0.00 | [Binns, Duane D (8308)]<br>TPName: KIM, LAURA H TIN: ███-8486 MFT: 00 Tax Period: 200912N<br>    STATDATE: '12/31/2019'    STATCODE: 'Blank' Tax Period: 201012N<br>    STATDATE: '12/31/2019'    STATCODE: 'Blank' Tax Period: 201212N<br>    STATDATE: '12/31/2019'    STATCODE: 'Blank' Tax Period: 201112N<br>    STATDATE: '12/31/2019'    STATCODE: 'Blank' |
| 05/24/2019 | CO - CS | 1.50 | [Binns, Duane D (8308)]<br>Initial review of file. Confirm Statute is 12-31-19. Send Welcome letter to Tp, and<br>copy Rep, and enclosed Consent to extend statute for FBAR, with Pub 1035. |
| 05/30/2019 | VA | 0.00 | [Binns, Duane D (8308)] |
| 05/30/2019 | AN | 0.25 | [Binns, Duane D (8308)]<br>Call from Rep, Jonathan Amitrano, that he will get the extension signed for the<br>FBAR, and will provide whatever info I need. |
| 06/05/2019 | AN | 0.50 | [Binns, Duane D (8308)]<br>Further review of file |
| 06/28/2019 | AN | 4.00 | [Binns, Duane D (8308)]<br>Review file and draft ACM |
| 07/01/2019 | AN | 0.50 | [Binns, Duane D (8308)]<br>try to access electronic files, and send fax to Rep |
| 07/01/2019 | AN | 0.75 | [Binns, Duane D (8308)]<br>try to access Rep's electronic files |
| 07/24/2019 | VA | 0.00 | [Binns, Duane D (8308)]<br>TPName: KIM, LAURA H TIN: ███-8486 MFT: 00 Tax Period: 200912N<br>    STATDATE: From: '12/31/2019' To: '12/31/2020'    STATCODE: From: 'Blank'<br>To: 'Blank' Tax Period: 201012N    STATDATE: From: '12/31/2019' To:<br>'12/31/2020'    STATCODE: From: 'Blank' To: 'Blank' Tax Period: 201212N<br>    STATDATE: From: '12/31/2019' To: '12/31/2020'    STATCODE: From: 'Blank'<br>To: 'Blank' Tax Period: 201112N    STATDATE: From: '12/31/2019' To: |

USA - 004646

| | | | '12/31/2020'      STATCODE: From: 'Blank' To: 'Blank' |
|---|---|---|---|
| 07/24/2019 | AN | 0.75 | [Binns, Duane D (8308)]<br>Receive extension of statute with letter of conditions. Ask Butler for authority to assess penalty now. |
| 07/24/2019 | AN | 1.25 | [Binns, Duane D (8308)]<br>Discuss with Butler the extension issue<br>I called and left a message with the Rep, saying that because of his cover letter (attempting to put conditions on the validity of the FBAR extension) we are not sure we can rely on it.<br><br>So, I said he could either send us another writing making it clear that the extension was not conditional (in which case we will process the extension) or we will assess the penalties. |
| 07/25/2019 | AN | 3.75 | [Binns, Duane D (8308)]<br>Analyze Rep's letter in response to my earlier questions, complete draft ACM, fax my analysis to Rep and ask him to get back to me with any disputes he has with respect to the facts stated, or the legal analysis, with respect to either the income tax issues or the FBAR issues. |
| 07/29/2019 | AN | 2.25 | [Binns, Duane D (8308)]<br>Continue to look through Exam's developed case, and add paragraph to ACM re the fact that Tp did file timely FBARs but dramatically underreported the numbers and aggregate total of the foreign bank accounts---so tp cannot just say she did not know about FBARs. Send this additional paragraph to Rep. |
| 08/01/2019 | AN | 0.25 | [Binns, Duane D (8308)]<br>send Russell new extension |
| 08/12/2019 | AN | 0.75 | [Binns, Duane D (8308)]<br>Review letter from Rep, who continues to argue that the FBAR extension of the statute of limitations is not valid. I send an e-mail to Greg with 13449 asking him to sign it so we can assess the tax. |
| 08/12/2019 | AN | 0.75 | [Binns, Duane D (8308)]<br>More e-mails with Appeals management re statute of limitations |
| 08/13/2019 | AN | 0.50 | [Binns, Duane D (8308)]<br>e-mails with management re assessing the penalty. |
| 08/13/2019 | AN | 0.25 | [Binns, Duane D (8308)]<br>Send 13449 to Detroit for assessment of FBAR penalty |
| 08/16/2019 | AN | 1.25 | [Binns, Duane D (8308)]<br>Review Rep's letter, make changes to the draft ACM, and send fax back to Rep to show him my changes. |
| 08/26/2019 | AN | 0.25 | [Binns, Duane D (8308)]<br>Fax from Detroit that the FBAR penalty was assessed on 8-20-19 |
| 09/06/2019 | CO - OT | 0.75 | [Binns, Duane D (8308)]<br>Review Rep's fax to me, and my fax back to him:<br>In response to your fax dated 9-5-19:<br><br>Your 2nd paragraph: No need for you to file a new Protest. Your appeal continues. I continue to wait for you to respond to my legal analysis (which I faxed to you in my letter dated 7-25-19, and, as you know, I have modified with additional faxes since then).<br><br>3rd paragraph: IRS has not rejected your Consent to Extend. Appeals believes the odds are high that a court would find your Consent to Extend to be completely valid. However, when a Rep starts claiming a Consent to Extend is conditional or invalid, Appeals is not 100% sure Appeals can rely on it. So, why would Appeals take any risk that the Extension may not be valid? Appeals simply assesses the tax.<br><br>Still waiting for your response to my legal analysis of 7-25-19,<br><br>Duane Binns<br>708-848-5482<br><br>Fax 855-790-2978 |
| 09/10/2019 | AN | 2.00 | [Binns, Duane D (8308)]<br>Review letter from Rep, and fax back response, and continue to look over Protest. |

| | | | |
|---|---|---|---|
| 09/11/2019 | AN | 4.00 | [Binns, Duane D (8308)]<br>Work through Rep's 2nd Protest, and modify ACM |
| 09/12/2019 | CF - ML | 3.00 | [Binns, Duane D (8308)]<br>Continue working on draft ACM, to determine support for penalties, make<br>judgments on 1040 adjustments, send 1040 case to TCS for calculation,<br>prepare new draft of ACM & fax to Rep. |
| 09/17/2019 | AN | 0.75 | [Binns, Duane D (8308)]<br>Review Rep's letter and fax back answers |
| 09/24/2019 | CO - OT | 0.50 | [Binns, Duane D (8308)]<br>Review 1040 calcs from TCS and send to Rep with suggestion we split the 1040<br>fraud penalties 50/50 and close the case. |
| 10/09/2019 | AN | 3.00 | [Binns, Duane D (8308)]<br>Begin review of long response from Rep, begin adjustments to ACM, request APS<br>to get me tax manuscript for '89-'11. Many faxes with Rep re which items to adjust in<br>1040 calc if only foreign adjustments are made--submit a new 3608 to TCS |
| 10/10/2019 | AN | 4.00 | [Binns, Duane D (8308)]<br>Continue to work over the many arguments of Rep, and continue to update the<br>ACM. |
| 10/11/2019 | AN | 4.00 | [Binns, Duane D (8308)]<br>Continue to work over the many arguments of Rep, and continue to update the<br>ACM. |
| 10/14/2019 | AN | 6.00 | [Binns, Duane D (8308)]<br>Working on re-organizing ACM section re calculation of the FBAR penalty, to<br>respond to Rep's many arguments. |
| 10/15/2019 | AN | 2.00 | [Binns, Duane D (8308)]<br>Working on re-organizing ACM section re calculation of the FBAR penalty, to<br>respond to Rep's many arguments. |
| 10/16/2019 | AN | 3.50 | [Binns, Duane D (8308)]<br>Search file for evidence of which bank accounts were open in 2011, and send fax to<br>Rep that 1 of the accounts he claims was not then open was reported on an FBAR<br>for that year, and two others had a balance on 6-30-12, and I ask Rep if he has<br>evidence these 2 were opened after 2011. |
| 10/21/2019 | AN | 2.00 | [Binns, Duane D (8308)]<br>Review Rep's new fax re tracing accounts for penalty purposes |
| 10/22/2019 | AN | 1.50 | [Binns, Duane D (8308)]<br>Send my new bank acct analysis to Rep and counter his proposal for 1040<br>settlement |
| 11/01/2019 | AN | 0.50 | [Binns, Duane D (8308)]<br>Send FBAR package to FBAR coordinator for review |
| 11/01/2019 | TG - IR | 0.25 | [Binns, Duane D (8308)]<br>Form 13381 Submitted to ATM |
| 11/01/2019 | VA | 0.00 | [Binns, Duane D (8308)]<br>TPName: KIM, LAURA H TIN: ███-8486 MFT: 00 Tax Period: 201112N<br>   STATDATE: From: '12/31/2020' To: '08/20/2021'   STATCODE: From: 'Blank'<br>To: 'ASESD' Tax Period: 201212N   STATDATE: From: '12/31/2020' To:<br>'08/20/2021'   STATCODE: From: 'Blank' To: 'ASESD' Tax Period: 200912N<br>   STATDATE: From: '12/31/2020' To: '08/20/2021'   STATCODE: From: 'Blank'<br>To: 'ASESD' Tax Period: 201012N   STATDATE: From: '12/31/2020' To:<br>'08/20/2021'   STATCODE: From: 'Blank' To: 'ASESD' |
| 11/01/2019 | TG - RC | 0.25 | [Binns, Duane D (8308)]<br>Update statute on ACDS and submit 13381 |
| 11/05/2019 | VA | 0.00 | [Binns, Duane D (8308)]<br>TPName: KIM, LAURA H TIN: ███-8486 MFT: 00 Tax Period: 201112N<br>   STATDATE: From: '08/20/2021' To: '08/20/2021'   STATCODE: From: 'ASESD'<br>To: 'FBAR2' Tax Period: 201212N   STATDATE: From: '08/20/2021' To:<br>'08/20/2021'   STATCODE: From: 'ASESD' To: 'FBAR2' Tax Period: 200912N<br>   STATDATE: From: '08/20/2021' To: '08/20/2021'   STATCODE: From: 'ASESD'<br>To: 'FBAR2' Tax Period: 201012N   STATDATE: From: '08/20/2021' To:<br>'08/20/2021'   STATCODE: From: 'ASESD' To: 'FBAR2' |
| 01/06/2020 | VA | 0.00 | [Binns, Duane D (8308)]<br>TPName: KIM, LAURA H TIN: ███-8486 MFT: 00 Tax Period: 201112N<br>   STATDATE: '08/20/2021'   STATCODE: 'FBAR2' Tax Period: 201212N<br>   STATDATE: '08/20/2021'   STATCODE: 'FBAR2' Tax Period: 200912N<br>   STATDATE: '08/20/2021'   STATCODE: 'FBAR2' Tax Period: 201012N<br>   STATDATE: '08/20/2021'   STATCODE: 'FBAR2' |

USA - 004648

| Date | | Hours | Description |
|---|---|---|---|
| 01/06/2020 | AN | 0.50 | [Binns, Duane D (8308)]<br>review new case that supports denial of NOL and imposition of penalties |
| 01/17/2020 | AN | 0.25 | [Binns, Duane D (8308)]<br>Discussion with Russell, and review of ACM |
| 05/05/2020 | AN | 1.00 | [Binns, Duane D (8308)]<br>Review questions from Russell, review ACM and file, and send to Exam for spreadsheet. |
| 05/05/2020 | AN | 1.75 | [Binns, Duane D (8308)]<br>re-create FBAR penalty calc and send to Russell---look for evidence for predecessor/successor accounts |
| 05/06/2020 | AN | 2.25 | [Binns, Duane D (8308)]<br>review information on precursor accounts and send e-mail to Russell |
| 05/14/2020 | AN | 3.00 | [Binns, Duane D (8308)]<br>search massive pile of bank records from Exhange of Information treaty program to find evidence that Exam counted 3 accounts twice in their calculation of the FBAR penalty, and scan evidence so I can deliver this evidence to Russell |
| 05/18/2020 | AN | 2.50 | [Binns, Duane D (8308)]<br>search file to trace bank account info, and e-mail same to Russell, with explanation |
| 06/01/2020 | AN | 0.25 | [Binns, Duane D (8308)]<br>FOIA filed by Rep 5-23-20, and FOIA office requests me to ship the file |
| 06/22/2020 | AN | 0.50 | [Binns, Duane D (8308)]<br>review file, and fax exchange with Rep |
| 06/22/2020 | VA | 0.00 | [Binns, Duane D (8308)]<br>TPName: KIM, LAURA H TIN: ███-8486 MFT: 00 Tax Period: 201112N<br>　STATDATE: '08/20/2021'　STATCODE: 'FBAR2' Tax Period: 201212N<br>　STATDATE: '08/20/2021'　STATCODE: 'FBAR2' Tax Period: 200912N<br>　STATDATE: '08/20/2021'　STATCODE: 'FBAR2' Tax Period: 201012N<br>　STATDATE: '08/20/2021'　STATCODE: 'FBAR2' |
| 06/25/2020 | AN | 0.50 | [Binns, Duane D (8308)]<br>review file and ACM, and review amount of material that needs to be sent to FOIA---can't send now due to the pandemic |
| 07/15/2020 | AN | 0.50 | [Binns, Duane D (8308)]<br>Pack boxes for FOIA, but FOIA says not to ship |
| 08/05/2020 | AN | 0.50 | [Binns, Duane D (8308)]<br>Review file, pack 1 more box, and try to arrange shipping of 9 boxes to FOIA |
| 08/10/2020 | AN | 0.50 | [Binns, Duane D (8308)]<br>Review Rep's letter re the civil fraud approval form of Exam, and fax back my analysis that the approval form met all requirements. |
| 08/10/2020 | AN | 0.25 | [Binns, Duane D (8308)]<br>follow up on needed R&C, and send Russell new language |
| 08/11/2020 | AN | 0.75 | [Binns, Duane D (8308)]<br>Review Rep's letter re 6751(b) on 1040 fraud penalty, and send note to Russell re impact on FBAR |
| 08/12/2020 | AN | 1.50 | [Binns, Duane D (8308)]<br>review case, and consider various settlement options |
| 09/03/2020 | AN | 0.50 | [Binns, Duane D (8308)]<br>review new draft ACM and send back to Russell |
| 09/24/2020 | AN | 1.25 | [Binns, Duane D (8308)]<br>Appeals management gives tentative approval to reduction of FBAR penalties from $4,056,439 to $3,256,439. I draft proposal and fax to Rep, outlining commitments I would need from Tp, and by when, before this is sent to DOJ. |
| 10/08/2020 | AN | 0.25 | [Binns, Duane D (8308)]<br>re-fax letter of 9-24-20 |
| 10/08/2020 | AN | 0.75 | [Binns, Duane D (8308)]<br>review case, consider settlement options, include report in Quarterly Report |
| 10/09/2020 | AN | 0.25 | [Binns, Duane D (8308)]<br>e-mails with Russell re negotiations |
| 10/21/2020 | AN | 0.50 | [Binns, Duane D (8308)]<br>reading on per-account vs. per form court cases |
| 10/27/2020 | AN | 0.75 | [Binns, Duane D (8308)]<br>read court cases on FBAR |
| 11/06/2020 | AN | 0.50 | [Binns, Duane D (8308)]<br>Review file, consider time limits on acceptance of Appeals' offer, call Rep and leave |

USA - 004649

| | | | |
|---|---|---|---|
| | | | message to try to confirm he has received my letter of 9-24-20, which I re-faxed to him 10-8-20 |
| 11/16/2020 | AN | 1.00 | [Binns, Duane D (8308)]<br>prep closing package |
| 11/16/2020 | VA | 0.00 | [Binns, Duane D (8308)]<br>TPName: KIM, LAURA H TIN: ███-8486 MFT: 00 Tax Period: 201112N<br>    STATDATE: '08/20/2021'    STATCODE: 'FBAR2' Tax Period: 201212N<br>    STATDATE: '08/20/2021'    STATCODE: 'FBAR2' Tax Period: 200912N<br>    STATDATE: '08/20/2021'    STATCODE: 'FBAR2' Tax Period: 201012N<br>    STATDATE: '08/20/2021'    STATCODE: 'FBAR2' |
| 11/16/2020 | AN | 1.50 | [Binns, Duane D (8308)]<br>re-do ACM and Sch of Adj, prep 5143, send to Russell, prep 5402 |
| 11/16/2020 | TG - GC | 0.00 | [Binns, Duane D (8308)] |
| 11/17/2020 | TG - GC | 1.00 | [Binns, Duane D (8308)]<br>re-work ACM and 5143, per Russell, |
| 11/18/2020 | ** | 0.00 | [Polivick, Alan L (10397)]<br>Case has been added to the Area 11 50 Oldest Cases Listing |
| 11/19/2020 | AN | 0.25 | [Binns, Duane D (8308)]<br>tracking down the file with FOIA |
| 11/19/2020 | DM | 0.25 | [Binns, Duane D (8308)]<br>Uphold Penalties in full |
| 11/19/2020 | VA | 0.00 | [Binns, Duane D (8308)]<br>TPName: KIM, LAURA H TIN: ███-8486 MFT: 00 Tax Period: 201112N<br>    STATDATE: '08/20/2021'    STATCODE: 'FBAR2' Tax Period: 201212N<br>    STATDATE: '08/20/2021'    STATCODE: 'FBAR2' Tax Period: 200912N<br>    STATDATE: '08/20/2021'    STATCODE: 'FBAR2' Tax Period: 201012N<br>    STATDATE: '08/20/2021'    STATCODE: 'FBAR2' |
| 11/19/2020 | AC - FR | 0.50 | [Binns, Duane D (8308)]<br>Send Closing Package to Greg |
| 11/20/2020 | AN | 0.25 | [Binns, Duane D (8308)]<br>e-mails re shipping documents |
| 01/15/2021 | AN | 0.75 | [Binns, Duane D (8308)]<br>Discussion with Greg. Prep 866 with 20% misc penalty. Fax to Rep. |
| 01/27/2021 | AN | 1.00 | [Binns, Duane D (8308)]<br>final organization of file, transfer file to Chicago APS, and mail final letters to Rep and Tp |
| 05/03/2021 | AN | 0.00 | [Binns, Duane D (8308)]<br>update ECD---has been given to APS |

USA - 004650

# Exhibit 110

```
----------------------------------------------------------------------
                        DOCUMENT TRANSMITTAL                10-17-2018
----------------------------------------------------------------------
TO: IRS/ FIELD TECH SERVICE        |Release Date: 10-17-2018|Page 1 of 1
    GROUP 34 - LN FE               |-------------------------------------
    Attn:                          |Transmittal Code:
    24000 AVILA RD,M/S 5915        |-------------------------------------
    LAGUNA NIGUEL, CA 92677-3405   |Number: 18-822079
----------------------------------------------------------------------
Comments:

----------------------------------------------------------------------
              Returns Closed or Transferred to Review

QTY Form                  Case File Identification  ST        Disp Rec'd
----------------------------------------------------------------------
  7 1040    KIM              201012 xxx-xx-8486  30 21 Appealed  07  00-Unack
    1040                     201112              30 21 Appealed  07  00-Unack
    1040                     201212              30 21 Appealed  07  00-Unack
                             200912              Y0 21 Appealed  07  00-Unack
                             201012              Y0 21 Appealed  07  00-Unack
                             201112              Y0 21 Appealed  07  00-Unack
                             201212              Y0 21 Appealed  07  00-Unack
----------------------------------------------------------------------
  3 1120S  LAURAS FRENCH BAKIN 201012 ████0622  02 21 Appealed  07  00-Unack
    1120S                    201112              02 21 Appealed  07  00-Unack
    1120S                    201212              02 21 Appealed  07  00-Unack
----------------------------------------------------------------------

----------------------------------------------------------------------

----------------------------------------------------------------------

----------------------------------------------------------------------

----------------------------------------------------------------------

----------------------------------------------------------------------

----------------------------------------------------------------------

----------------------------------------------------------------------

----------------------------------------------------------------------

----------------------------------------------------------------------

----------------------------------------------------------------------
FROM:                              |Releasing Official:
       INTERNAL REVENUE SERVICE    |  SIMON BONILLA/ELLA CHERNYAK
       207:64000:1337 (MS 4466)    |-------------------------------------
       333 W. BROADWAY, MS 4466    |Received and verified:
       SAN DIEGO, CA 92101         |
                                   |-------------------------------------
                                   |Date Acknowledged:
----------------------------------------------------------------------
Form 3210       Part 1 - Recipient's Copy      Department of the Treasury
```

LHK_3941

```
------------------------------------------------------------------------
                       DOCUMENT TRANSMITTAL                   10-17-2018
------------------------------------------------------------------------
TO: IRS/ FIELD TECH SERVICE      |Release Date: 10-17-2018|Page 1 of 1
    GROUP 34 - LN FE             |--------------------------------------
    Attn:                        |Transmittal Code:
    24000 AVILA RD,M/S 5915      |--------------------------------------
    LAGUNA NIGUEL, CA 92677-3405 |Number: 18-822079
------------------------------------------------------------------------
Comments:

------------------------------------------------------------------------
                 Returns Closed or Transferred to Review

QTY Form                 Case File Identification  ST          Disp Rec'd
-----                    -------------------------             ----------
7 1040    KIM            201012 xxx-xx-8486  30 21 Appealed  07  00-Unack
  1040                   201112              30 21 Appealed  07  00-Unack
  1040                   201212              30 21 Appealed  07  00-Unack
                         200912              YO 21 Appealed  07  00-Unack
                         201012              YO 21 Appealed  07  00-Unack
                         201112              YO 21 Appealed  07  00-Unack
                         201212              YO 21 Appealed  07  00-Unack
----------------------------------------------------------
3 1120S   LAURAS FRENCH BAKIN 201012    ███ 0622  02 21 Appealed  07  00-Unack
  1120S                 201112              02 21 Appealed  07  00-Unack
  1120S                 201212              02 21 Appealed  07  00-Unack
------------------------------------------------------------------------
------------------------------------------------------------------------
------------------------------------------------------------------------
------------------------------------------------------------------------
------------------------------------------------------------------------
------------------------------------------------------------------------
------------------------------------------------------------------------
------------------------------------------------------------------------
------------------------------------------------------------------------
------------------------------------------------------------------------
------------------------------------------------------------------------
FROM:                            |Releasing Official:
    INTERNAL REVENUE SERVICE     |  SIMON BONILLA/ELLA CHERNYAK
    207:64000:1337 (MS 4466)     |--------------------------------------
    333 W. BROADWAY, MS 4466     |Received and verified:
    SAN DIEGO, CA 92101          |
                                 |--------------------------------------
                                 |Date Acknowledged:
------------------------------------------------------------------------
Form 3210      Part 2 - Acknowledgement Copy     Department of the Treasury
```

```
                                        Release Date: 10-17-2018 Page 1 of 1
GROUP 34 - LN FE                       ----------------------------------
Attn:                                  Transmittal Code:
24000 AVILA RD,M/S 5915                ----------------------------------
LAGUNA NIGUEL, CA 92677-3405           Number: 18-822079
---------------------------------------------------------------------
Comments:

---------------------------------------------------------------------
                     Returns Closed or Transferred to Review

QTY Form                    Case File Identification  ST        Disp Rec'd
---------------------------------------------------------------------
7 1040    KIM, LAURA H       201012      ▮-8486   30 21 Appealed  07  00-Unack
  1040                       201112              30 21 Appealed  07  00-Unack
  1040                       201212              30 21 Appealed  07  00-Unack
                             200912              Y0 21 Appealed  07  00-Unack
                             201012              Y0 21 Appealed  07  00-Unack
                             201112              Y0 21 Appealed  07  00-Unack
                             201212              Y0 21 Appealed  07  00-Unack
---------------------------------------------------------------------
3 1120S   LAURAS FRENCH BAKIN 201012    ▮0622   02 21 Appealed  07  00-Unack
  1120S                       201112            02 21 Appealed  07  00-Unack
  1120S                       201212            02 21 Appealed  07  00-Unack
---------------------------------------------------------------------
---------------------------------------------------------------------
---------------------------------------------------------------------
---------------------------------------------------------------------
---------------------------------------------------------------------
---------------------------------------------------------------------
---------------------------------------------------------------------
---------------------------------------------------------------------
---------------------------------------------------------------------
---------------------------------------------------------------------
---------------------------------------------------------------------
---------------------------------------------------------------------
FROM:                                  Releasing Official:
     INTERNAL REVENUE SERVICE           SIMON BONILLA/ELLA CHERNYAK
     207:64000:1337 (MS 4466)          ----------------------------------
     333 W. BROADWAY, MS 4466          Received and verified:
     SAN DIEGO, CA 92101
                                       ----------------------------------
                                       Date Acknowledged:
---------------------------------------------------------------------
Form 3210    Part 3 - To be Retained by Originator   Department of the Treasury
```

# Exhibit 111

```
                          DOCUMENT TRANSMITTAL              11-05-2018
```

TO: IRS: LAGUNA NIGUEL APPEALS     |Release Date: 11 05-2018|Page 1 of 1
    SUITE 4404, STOP 8500          |
    Attn:                          |Transmittal Code:
    24000 AVILA ROAD               |
    LAGUNA NIGUEL, CA 92677-0000   |Number: 18-834075

Comments: S BOXES - 3 TAXPAYER, 3 TO 4 YEARS EACH TAXPAYER - ALL RELATED
          1 TAXPAYER IS FLAGED AS FBAR.

                    Returns Closed or Transferred to Appeals

| QTY | Form | | Case File Identification | ST | | Disp | Rec'd |
|---|---|---|---|---|---|---|---|
| 7 | 1040 | KIM | 281012 XXX-XX-8486 | 30 | 81 | Appealed | 07 | 00-Unack |
| | 1040 | | 201112 | 30 | 81 | Appealed | 07 | 00-Unack |
| | 1040 | | 201212 | 30 | 81 | Appealed | 07 | 00-Unack |
| | | | 200912 | Y0 | 81 | Other | 12 | 00-Unack |
| | | | 201012 | Y0 | 81 | Other | 12 | 00-Unack |
| | | | 201112 | Y0 | 81 | Other | 12 | 00-Unack |
| | | | 201212 | Y0 | 81 | Other | 12 | 00-Unack |
| 3 | 1120S | LAURAS FRENCH BAKIN | 201012 ▮0622 | 02 | 81 | Appealed | 07 | 00-Unack |
| | 1120S | | 201112 | 02 | 81 | Appealed | 07 | 00-Unack |
| | 1120S | | 201212 | 02 | 81 | Other | 12 | 00-Unack |



FBAR

- FBAR -

1 BOX

FROM:
    IRS/ FIELD TECH SERVICE        |Releasing Official:
    GROUP 34 - LN FE               | R. WHITE - TERRITORY SECRETARY
    24003 AVILA RD,M/S 5515        |
    LAGUNA NIGUEL, CA 92677-3405   |Received and verified:
                                   |
                                   |Date Acknowledged:

Form 3210     Part 1 - Recipient's Copy          Department of the Treasury

USA - 012867

# Exhibit 114

**Internal Revenue Service**
Appeals Office
200 West Adams Street
Suite 600
Chicago, IL 60606

**Department of the Treasury**

**Person to Contact:**
Duane D Binns
Employee ID Number: ████6497
Tel: 312-582-6820
Fax: 855-790-2978

Date: May 24, 2019

**Refer Reply to:**
AP:SEPR:IL:CHI:DDB

**In Re:**
FBAR



Laura Kim
████████████

Los Angeles, CA ████████

**Tax Period(s) Ended:**
2009-2012

Dear Laura Kim:

The Office of Appeals has received the 2009-2012 FBAR penalty appeals of Laura Kim and it has been re-assigned to me (from Russell McGeehan). Appeals is an independent function within the IRS. Appeals reviews and resolves disputes in a fair and impartial manner by applying the law and court decisions to the facts of your case. I'll consider the facts of the case and try to resolve your dispute with the IRS. If you're new to Appeals, you should read the enclosed publications. Because of the short statute of limitations, I will be forced to assess the penalty unless you agree to extend the statute by signing and returning to me the enclosed "Consent to Extend."

Today, I am at 312-582-6820. I normally work from home, so feel free to call me at 708-848-5482, M-F 7:15-4:00 (Central time zone—i.e., Chicago). Thank you.

Sincerely,

*DDB*

Duane D Binns
Appeals Officer-International
Specialist

cc: Jonathan Amitrano, 3 Hutton Centre Dr., Suite 500, Santa Ana, CA 92707

Enclosures: Publication 1035 and "Consent to Extend" for FBAR statute
Publication 4227 Welcome to Appeals
Publication 4167 Introduction to Alternative Dispute Resolution
Notice 1016 How to Stop Interest on Your Account

USA - 021588

Exhibit 115

# CONSENT TO EXTEND THE TIME TO ASSESS CIVIL PENALTIES PROVIDED BY 31 U.S.C. § 5321 FOR FBAR VIOLATIONS

**WHEREAS,** the parties to this agreement desire to extend the time during which the penalties provided by 31 U.S.C. 5321 may be assessed and collected,

**WHEREAS,** the parties to this agreement are aware that they have the right to refuse to sign this consent,

Laura Kim SSN ▉▉▉-8486
(name and taxpayer identification number)

United States person, of ▉▉▉▉▉▉ ▉▉ Los Angeles, CA ▉▉▉▉▉
(address)

and the Commissioner of the Internal Revenue Service, hereby agree and consent to the following:

(1) For violations with respect to the requirement, established under 31 U.S.C. 5314, for a United States person to report having a financial interest in or signature authority, or other authority, over a financial account during the calendar years _____ 2009, 2010, 2011, 2012 _____ that was maintained with a financial institution located in a foreign country, the amount of any penalty provided by 31 U.S.C. 5321 may be assessed at any time on or before _____ 12/31/2020 _____.

(2) This consent does not reduce, waive, or extend any period of limitation under 26 U.S.C. 6501 for assessing or collecting tax. This consent also does not supersede or amend any other agreement between the United States person and the Internal Revenue Service.

Date _____

Signature of the United States Person _____

Date July 10, 2019

Signature of Authorized Representative _~signature~_

Date 4-24-19

Signature of the Commissioner's Delegate _~Duane Burns~_
APPEALS OFFICER
Title 4-24-19

# Exhibit 116



A. LAVAR TAYLOR LLP

3 Hutton Centre Drive
Suite 500
Santa Ana, CA 92707

A. LAVAR TAYLOR*
LISA O. NELSON
JONATHAN T. AMITRANO
ALEXANDER SCHINDLER
RAMI M. KHOURY
CHARLES G. ROSEN
LYNDA D. TAYLOR**

JAMES M. KAMMAN
OF COUNSEL

ALSO ADMITTED:
*DISTRICT OF COLUMBIA
**NEW YORK AND MASSACHUSETTS

TELEPHONE: 714-546-0445
FACSIMILE: 714-546-2604

JOYCE B. CHENG, E.A./C.P
ENROLLED AGENT/CERTIFIED PARALEGAL

MAGGIE ALLE, NUIMERS, AACP
LEGAL ASSISTANT/CERTIFIED PARALEGAL

FIRM WEBSITE:

July 10, 2019

*Via U.S. Certified Mail*
Internal Revenue Service
Attention: Office of Appeals
Appeals Officer D. Binns
200 West Adams Street
Suite 600
Chicago, IL 60606

Re:   Laura Kim ( ████-8486)
       FBAR Statute Extension
       Tax Years: 2009 through 2012

Dear Mr. Binns,

Enclosed with this letter please find the signed form titled Consent to Extend the Time to
Assess Civil FBAR Penalties for the tax years 2009 through 2012. The date of our signature on
behalf of our client is July 10, 2019.

Please understand that the enclosed Extension is conditional in nature. It operates to
extend the statute of limitations on assessment for FBAR penalties for the years 2009 through
2012 **only** if the prior Consent to Extend the Time to Assess Civil FBAR Penalties, sent in April
of 2018 to the Revenue Agent who conducted the audit, was valid. That particular Extension
stated that it extended the statute of limitations on assessing FBAR penalties for years 2009
through 2012 to December 31, 2019. But that particular Consent was accompanied by a letter
which imposed a condition on the Extension. Specifically, that condition was as follows:

Ms. Kim wishes to pursue a pre-assessment administrative appeal to challenge the
proposed FBAR penalty assessments which have been proposed by your office. **It is our
understanding that the FBAR penalty audit conducted by your office has now
concluded and that your office will be forwarding our protest of the proposed FBAR
penalty assessments against Ms. Kim, sent to you this same day, to the Office of**

{00117160.DOCX 1}

Wednesday, July 10, 2019
2 | Page

**Appeals in the very near future. The enclosed Consents are being submitted based
and conditioned upon these understandings and representations by your office.**

Our file copy of this letter, along with the certified mailing receipt and the receipt card verifying
that this letter was received by the IRS, are enclosed with this letter.

The condition imposed, that the protest of the proposed FBAR penalties be forwarded to
the Office of Appeals in the very near future, was breached by the IRS. In fact, the protest of
the proposed FBAR penalty assessments was not forwarded to the Office of Appeals by the
Examination Division until sometime after February 15, 2019, approximately 10 months after the
date on which the letter transmitting the conditional Consent to Extend the Time to Assess Civil
FBAR Penalties was sent in April of 2018.

Pursuant to the discussion our office had with the group manager of the Revenue Agent
who conducted the examination, the case was forwarded out of the group to others in the
Examination Division on or about October 17, 2018, approximately six months after the date on
which the conditional Consent to Extend the Time to Assess Civil FBAR Penalties was sent. As
of February 15, 2019 the case was "in review" in the Examination Division. Thus, the case was
forwarded to the Office of Appeals sometime after February 15, 2019 and prior to the date in
March, 2019 on which our office was first contacted by the Office of Appeals.

It took close to one year for the case to be forwarded to the Office of Appeals by the
Examination Division, and it took six months for the FBAR case to be closed out of the
Examination Group that conducted the audit. It is quite clear that the case was not forwarded to
the Office of Appeals in the very near future, as required by the conditional Consent to Extend
the Time to Assess Civil FBAR Penalties. Thus, the condition set forth in the Consent to extend
the Time to Assess Civil FBAR Penalties was breached, rendering the Consent invalid.

Where a taxpayer conditions an extension of the period of limitations, either by writing
on the face of the consent before it is returned to the IRS or in a cover letter transmitting the
consent, the consent is conditional. Failure of the IRS to comply with the condition renders the
consent invalid. *See Bellis v. Commissioner*, 67 TCM 2013 (1994) (cover letter requesting that
an open-ended extension "be restricted to a period not to exceed" a specified date barred
assessment after that date); *Hicks v. Commissioner*, 62 TCM 1234 (1991) (where letter from
revenue agent transmitting Form 872 stated that the examination would only cover specified
issue, the waiver was conditional so that expansion of the examination invalidated the waiver);
*Smith v. Commissioner*, 56 TCM 1373 (1989) (waiver held to be invalid where letter transmitting
waiver conditioned waiver on transfer of case to the Los Angeles district, and that district
declined to accept the transfer).

The fact that the conditional Consent to Extend the Time to Assess Civil FBAR Penalties
signed in April of 2018 is not valid means that all of the statute of limitations on assessing FBAR
penalties for the years 2009 through 2012 have now expired. We provide an explanation of this
fact on a year by year basis.

{00147160.DOCX 3}

Wednesday, July 10, 2019

3 | Page

2009

    The "normal" statute of limitations on assessing a civil FBAR penalty for the year 2009 would have expired on June 30, 2016. An initial Consent extending the statute of limitations expiration date to June 30, 2017 was signed and sent to the Revenue Agent on or about November 15, 2016. A second Consent extending the statute of limitations expiration date to June 30, 2018 was signed and sent to the Revenue Agent on or about January 30, 2017. A third Consent extending the statute of limitations expiration date to June 30, 2019 was signed and sent to the Revenue Agent on or about September 11, 2017. The final (conditional) Consent conditionally extending the statute of limitations on assessment to December 31, 2019 was signed and sent to the IRS agent on or about April 23, 2018. Since the IRS breached the condition associated with the April, 2018 conditional Consent, the statute of limitations on assessing a civil FBAR penalty expired on June 30, 2019 for the year 2009.

2010

    The "normal" statute of limitations on assessing a civil FBAR penalty for the year 2010 would have expired on June 30, 2017. An initial Consent extending the statute of limitations expiration date to June 30, 2018 was signed and sent to the Revenue Agent on or about January 30, 2017. A second Consent extending the statute of limitations expiration date to June 30, 2019 was signed and sent to the Revenue Agent on or about September 11, 2017. A third (conditional) Consent conditionally extending the statute of limitations on assessment to December 31, 2019 was signed and sent to the IRS agent on or about April 23, 2018. Since the IRS breached the condition associated with the April, 2018 conditional Consent, the statute of limitations on assessing a civil FBAR penalty expired on June 30, 2019 for the year 2010.

2011

    The "normal" statute of limitations on assessing a civil FBAR penalty for the year 2011 would have expired on June 30, 2018. An initial Consent extending the statute of limitations expiration date to June 30, 2019 was signed and sent to the Revenue Agent on or about September 11, 2017. A second (conditional) Consent conditionally extending the statute of limitations on assessment to December 31, 2019 was signed and sent to the IRS agent on or about April 23, 2018. Since the IRS breached the condition associated with the April, 2018 conditional Consent, the statute of limitations on assessing a civil FBAR penalty expired on June 30, 2019 for the year 2011.

2012

    The "normal" statute of limitations assessing a civil FBAR penalty for the year 2012 would have expired on June 30, 2019. A single (conditional) Consent conditionally extending the statute of limitations on assessment to December 31, 2019 was signed and sent to the IRS agent on or about April 23, 2018. Since the IRS breached the condition associated with the April, 2018 conditional Consent, the statute of limitations on assessing a civil FBAR penalty expired on June 30, 2019 for the year 2012.

Wednesday, July 10, 2019
4 | P a g e

So that you can better understand why our office made the April 23, 2018 Consent a conditional one, I direct your attention to the lengthy procedural history of the entire audit, along with the actions taken by the Revenue Agent during the course of the audit. Both of these topics are discussed in a fair amount of detail in the Protest filed on April 23, 2018 to the second FBAR 30 day letter issued by the Revenue Agent proposing FBAR penalties.

As of the date on which the conditional Consent was sent to the Revenue Agent in April of 2018, the audit had been ongoing for six years (since 2012). Laura Kim had traveled to the US from Korea twice to appear for two separate interviews. On November 17, 2016, our office had spoken with the Revenue Agent and her supervisor regarding Laura Kim's income tax audit. On this day our office was told by the Revenue Agent that the IRS had concluded the income tax portion of the audit. Our office was also told that report setting forth the Agent's proposed income tax adjustments would be mailed to us in the coming days. On November 21, 2016, our office received an incomplete Form 4549 setting forth the Agent's proposed audit changes. This draft audit report was seriously flawed, and our office thereafter provided significant evidence to the Revenue Agent which demonstrated these serious flaws.

An initial FBAR audit report was issued to Laura Kim on April 26, 2017, and we filed a Protest to this audit report on May 24, 2017. The income tax audit remained open, even though we had been told in late 2016 that the income tax audit was "over." Our efforts to formally close the income tax audit in 2017 were not successful.

Many months after we filed the protest to the April 26, 2017 FBAR 30 Day Letter, on January 31, 2018 a "revised" preliminary audit report (10 Day Letter) was issued by the Revenue Agent. This report ignored much of the evidence that we previously provided to the Revenue Agent. Eventually, we thereafter met with the Revenue Agent and her manager in early April of 2018 in an effort to resolve the income tax audit. At this point in time, 18 months had gone by since we were first told by the Revenue Agent that the income tax audit was "over." Yet the income tax audit in fact was not "over."

Even the FBAR audit was not actually "over," even though our office had filed a protest to the April 26, 2017 FBAR audit report nearly one year earlier. On March 7, 2018 the IRS issued a second "revised" FBAR report. This revised FBAR audit report suffered from many of the same flaws as the initial FBAR audit report sent by the Revenue Agent almost one year earlier. Our protest to the second FBAR report was submitted on April 23, 2018, along with the April 23, 2018 letter transmitting the conditional Consent relating to the FBAR penalty statute of limitations.

After enduring an audit that lasted many years, and after the Revenue Agent made repeated statements that the audit was "over"-- even though the audit was not "over," our client expressed to us that the mental and emotional distress caused by the lengthy audit was growing too much for her to bear. The Revenue Agent had acted in a manner that we perceived to be completely unprofessional in a number of respects, and the Revenue Agent's repeated

Wednesday, July 10, 2019
5 | Page

representations that the audit was "over" turned out to be false. This caused significant stress for
Ms. Kim.

We are not mental health professionals, but we became concerned about Ms. Kim's
health. Note that a number of years ago, after the death of her husband, Laura Kim attempted
suicide by jumping off of a train. This resulted in a severe head injury. (These facts were made
known to the Revenue Agent.) After repeatedly (and unconditionally) extending the FBAR
statute of limitations whenever requested to do so by the Revenue Agent, we wanted to take
some step to limit the ability of the IRS to continue with the audit, so that the case could move to
the Office of Appeals, in order to reduce the stress on Ms. Kim. The conditional Consent was
done to achieve the goal of lowering the stress level of our client by attaching significant adverse
consequences to the failure of the IRS to promptly forward the case to the Office of Appeals.

We anticipated that the IRS would promptly forward the FBAR case to the Office of
Appeals within 30 to 45 days after the date of our April 23, 2018 protest of the proposed FBAR
penalties. We also anticipated that the IRS would forward the income tax case to the Office of
Appeals sometime in July of 2018. The IRS finally issued a formal 30 Day Letter in the income
tax audit on May 1, 2018. We filed a protest in response to this 30 Day Letter on June 8, 2018.

Unfortunately, the income tax side of the audit dragged on even longer, much to the
dismay of both our office and Ms. Kim. The Revenue Agent ended up issuing multiple updated
audit reports on June 12, 2018, August 7, 2018, August 29, 2018, and again on September 5,
2018. Our office responded to each of these updated reports.

We have signed and submitted conditional consents in previous cases, although
submitting conditional consents is not our normal practice. Because of Ms. Kim's high level of
stress resulting from the prolonged audit and repeated false statements by the IRS Revenue
Agent, we believed that it was necessary to limit the ability of the Revenue Agent to continue
with the audit. Hence the submission of the conditional Consent relating to the assessment of
FBAR penalties.

The fact that the Revenue Agent failed to comply with the terms of the conditional
Consent means that the statute of limitations on assessment of FBAR penalties for the years 2009
through 2012 has expired. Again, the enclosed Consent is conditional. It operates to extend the
statute of limitations on assessment of FBAR penalties for the years 2009 through 2012 only in
the event that these statute of limitations did not expire prior to the date of the signature on the
Consent, July 10, 2019. The current conditional Consent is not intended to resurrect statutes of
limitation on assessment which have already expired. For the reasons set forth above, the statute
of limitations on assessment of FBAR penalties for all four of the years at issue expired prior to
July 10, 2019. The signed Consent thus does not operate to revive the previously expired statutes
of limitations for any of these years.

We anticipate that you may seek the opinion of IRS counsel on the legal question of
whether the statute of limitations on assessment of FBAR penalties for the years 2009 through

USA - 004600

Wednesday, July 10, 2019
6 | P a g e

2012 have now expired. We anticipate that, if you seek the opinion of IRS counsel, they will agree with our analysis.

If for any reason your office does not agree with our analysis and conclusions on the statute of limitations issue, however, we ask that you share with us your office's explanation as to why you believe that the statute of limitations on assessment of FBAR penalties remains open for any of the four years in question. If you believe that the statute of limitations on assessment has not expired, we want to meet with you to discuss our differences of opinion to see if the matter can be resolved without the need for litigation. We believe that the IRS faces significant litigating hazards regarding the proposed FBAR penalties, even ignoring the statute of limitations issue.

If you have any question sor concerns regarding the issues discussed in this letter please contact the undersigned counsel.  Thank you.

Best regards.

**Law Offices of A. Lavar Taylor** LLP

A. Lavar Taylor, Esq.

Enclosures as Listed.

Cc: Client

10111 12160.DOCX 31

# CONSENT TO EXTEND THE TIME TO
# ASSESS CIVIL PENALTIES PROVIDED BY
# 31 U.S.C. § 5321 FOR FBAR VIOLATIONS

**WHEREAS,** the parties to this agreement desire to extend the time during which the penalties provided by 31 U.S.C. 5321 may be assessed and collected,

**WHEREAS,** the parties to this agreement are aware that they have the right to refuse to sign this consent,

Laura Kim SSN ███ -8486
(name and taxpayer identification number)

United States person, of ███████████ Los Angeles, CA ███████
(address)

and the Commissioner of the Internal Revenue Service, hereby agree and consent to the following:

(1)  For violations with respect to the requirement, established under 31 U.S.C. 5314, for a United States person to report having a financial interest in or signature authority, or other authority, over a financial account during the calendar years _____ 2009, 2010, 2011, 2012 _____ that was maintained with a financial institution located in a foreign country, the amount of any penalty provided by 31 U.S.C. 5321 may be assessed at any time on or before _____ 12/31/2020

(2)  This consent does not reduce, waive, or extend any period of limitation under 26 U.S.C. 6501 for assessing or collecting tax.  This consent also does not supersede or amend any other agreement between the United States person and the Internal Revenue Service.

Date                          Signature of the United States Person

_____            _____

Date                          Signature of Authorized Representative

July 10, 2019                 _____

Date                          Signature of the Commissioner's Delegate

_____            _____

                              Title

# Exhibit 142

Fax 9/24/2020

**INTERNAL REVENUE SERVICE** 

## FAX TRANSMISSION
### Cover Sheet

Date: _September 24, 2020_

**SAVED TO WD**

## To: Jonathan Amitrano

Address/Organization: _____

Fax Number: __(714) 546-2604_____          Office Number: _____

## From: Binns Duane

Address/Organization: _____

Fax Number: _(855) 790-2978_____          Office Number: _____

Number of pages:  | 3 |   *Including cover page*

**Subject:** Chicago Appeals

Duane Binns
Fax 855-790-2978
Ph 630-926-6833

This communication is intended for the sole use of the individual to whom it is addressed and may contain confidential information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited by the provisions of the Internal Revenue code. If you have received this communication in error, please contact the sender immediately by telephone. Thank you.

**Internal Revenue Service**
Appeals Office
200 West Adams Street
Suite 600
Chicago, IL  60606

Date:  September 24, 2020

Jonathan Amitrano

3 Hutton Center Dr., Suite 500

Santa Ana, CA  92707

**Department of the Treasury**

**Person to Contact:**
 Duane D Binns
 Employee ID Number: ████6497
 Tel:  312-582-6820
 Fax: 855-790-2978
**Refer Reply to:**
 AP:SEPR:IL:CHI:DDB
**In Re:**
 FBAR & 1040– Laura Kim
**Tax Period(s) Ended:**
 2009-2012

Dear Mr. Amitrano:

Thank you for your letter of Sept 8.

Update on the FBAR issue:  Appeals management has tentatively approved my recommendation to reduce the FBAR penalty from $4,056,439 to $3,256,439.

However, this offer can only be made if this is also approved by the Dept of Justice.

Appeals management sees no reason to present this to the DOJ unless 1) Taxpayer agrees that she will settle the FBAR issue for this amount, and 2) Taxpayer agrees that she will immediately pay this amount (i.e., the DOJ's approval will, in all likelihood, be conditional on Taxpayer paying this amount upfront to secure the agreement).

If Taxpayer is not willing to make these two commitments, Appeals will close the case unagreed, and you can take the full amount (i.e., with no abatement) to trial.

Please note:  The FBAR penalties were assessed on 8-20-19.

IRM 8.11.6.12 (1) & (2) state:

   (1)  On post-assessed Appeals FBAR penalty cases over $100,000, Appeals will, . . . . provide a settlement proposal to DOJ no later than nine months prior to the date required to file a civil collection suit (i.e., the date upon which the collection statute expires).
   (2) If there is less than nine months remaining to file a civil collection suit, no settlement proposal shall be sent to DOJ for collection. Rather, the case will be closed and Appeals will send the case file to IRS Counsel to refer to DOJ.

1

This means that Appeals cannot present a settlement proposal to DOJ after 11-20-20 (and, with competing priorities, Appeals management may find it difficult to act on the drop of a hat----so, it may not be wise to send me a decision on 11-19-20).

So, if Taxpayer is going to commit Yes to this FBAR settlement, Taxpayer would be wise to say so in the near future.

I await your response.

Sincerely,

*Duane Binns*

Duane D Binns
Appeals Officer-International
Specialist

2

# Exhibit 144

**INTERNAL REVENUE SERVICE** 

## FAX TRANSMISSION
## Cover Sheet

Date: November 23, 2020

## To: Jonathan Amitrano

Address/Organization: _____

Fax Number: (714) 546-2604 _____ Office Number: _____

## From: Binns Duane

Address/Organization: _____

Fax Number: (855) 790-2978 _____ Office Number: _____

Number of pages: [ 3 ] *Including cover page*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Subject:** Chicago Appeals

The FBAR case has been closed in Appeals.

If I recall correctly, we had settled all of the 1040 issues except what to call the penalty (and I suggested calling it some miscellaneous penalty on an 866 Closing Agreement).

I would assume Taxpayer would like to get the 1040 issues resolved (as opposed to me having to issue a Statutory Notice of Deficiency, and you starting from square 1 on all of the 1040 issues in court).

Please get back to me soon if you think Taxpayer is willing to move forward to a 1040 settlement.

Duane Binns
Fax 855-790-2978
Ph 630-926-6833

This communication is intended for the sole use of the individual to whom it is addressed and may contain confidential information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited by the provisions of the Internal Revenue code. If you have received this communication in error, please contact the sender immediately by telephone. Thank you.



**Department of the Treasury**
**Internal Revenue Service**
**Independent Office of Appeals**
6th Floor, 200 W. Adams
Chicago, IL 60606

Date:

Person to contact:
Name: Duane Binns
Employee ID number: ████6497
Telephone: 312-582-6820
Fax: 855-7902978
Hours: 7:15-4:00 Central time

Laura Kim

██████████████

Los Angeles, CA ████████

Re:
Report of Foreign Bank and Financial
Accounts Penalties (FBAR)
Tax periods ended:
2009-2012
Amount of assessed penalties:
$4,056,439.40

Dear Laura Kim:

I completed my review of your request to adjust the Report of Foreign Bank and Financial Accounts (FBAR) penalties the IRS proposed and/or assessed against you. Based on the facts presented, I find no basis for removal of the penalties for the reasons I explain below. The Appeals Office has closed your case.

**Reason for sustained penalty**
Based on a review of Exam's administrative file, your protest, and your submissions to Appeals, Appeals sustained Exam's determination that you willfully failed to file FBAR reports for 2009, 2010, 2011, and 2012. You were required to disclose your accounts at foreign banks and file FBAR reports for 2009-2012. Affirmative actions that establish a willful violation include that you knew of the FBAR filing requirements because you filed FBAR reports for the periods at issue. The original FBAR's disclosed only a portion of your foreign accounts, and the accounts you disclosed held a fraction of the aggregate balances of your foreign accounts. Your U.S. tax preparer was not timely provided information about the foreign accounts and related foreign account income. The foreign account income generated from the undisclosed foreign accounts was not timely reported on your U.S. income tax returns. The arguments you presented verbally and in writing do not support a different determination. We could not reach an agreement with you about the assessment of the FBAR penalty. Exam calculated the penalty by taking every account that had some balance in 2011, and for each such account determined a penalty equal to the greater of $100,000 or 50% of the balance of that account on June 30, 2012. The 2011 penalty was spread out equally over the four years, or $1,014,109.85 for each year listed above. This penalty amount is less than the maximum penalty allowed by statute, which is the greater of 50% of the account balance or $100,000, for each violation.

**What to do if you don't agree**
If you don't agree with this determination, you may be able to seek recovery of FBAR penalties that were previously paid by filing suit in the United States District Court or the United States Court of Federal Claims. For information about procedures for filing suit, contact the clerk of your United States District Court or the United States Court of Federal Claims.

If you have additional questions, contact the person whose name and telephone number are shown above.

**Letter 5143 (Rev. 7-2020)**
Catalog Number 61856M

Thank you for your cooperation.

Sincerely,

**Gregory G. Butler** Digitally signed by Gregory G. Butler
Date: 2020.11.19 10:06:25 -06'00'

Gregory G. Butler
Appeals Team Manager

cc: Jonathan Amitrano, 3 Hutton Centre Dr., Suite 500, Santa Ana, CA 92707

**Letter 5143 (Rev. 7-2020)**
Catalog Number 61656M

# Exhibit 152

**Rozenzhak Vladislav M**

| | |
|---|---|
| **From:** | Binns Duane |
| **Sent:** | Wednesday, August 17, 2022 8:18 AM |
| **To:** | Rozenzhak Vladislav M |
| **Subject:** | FW: Kxx FBAR case |
| **Attachments:** | KimLauraDuplicatedAccounts.pdf |

**From:** Binns Duane
**Sent:** Wednesday, May 6, 2020 9:43 AM
**To:** McGeehan Russell W <Russell.W.McGeehan@irs.gov>
**Subject:** RE: Kxx FBAR case

No changes are needed to the spreadsheet.

I discovered I had scanned Exam's "FBAR Penalty Calc", and attach it hereto.  Note, I scanned this *with* 3 pages I had
found in the file, which is EOI pages *showing the Precursor/Successor accounts* (look at the heading).

In response to your second paragraph:  I raised all of these issues with Exam in October of 2019.  Specifically, I asked for
the Exhibits (see the far right column in the "FBAR Penalty Calc") to show the 6-30-12 balances of the 3 precursor
accounts.  Exam insisted all of the material was in the hard file, but after *much* searching I was unable to locate these 3
key Exhibits.

That is when I went back through the EOI material to find the Precursor/Successor accounts to be listed separately, but
with identical daily balances (the hard copy of this is in the office, so will have to wait for my return to the office).  In the
meantime, I am in contact with Exam, and they are going to Skype me material, and I will see what I can find in that.

Duane Binns
630-926-6833

**From:** McGeehan Russell W <Russell.W.McGeehan@irs.gov>
**Sent:** Tuesday, May 05, 2020 3:49 PM
**To:** Binns Duane <Duane.Binns@irs.gov>
**Subject:** RE: Kxx FBAR case

Duane,

Thanks for the response.  Maggie is requesting the info – I added two columns to the spreadsheet you sent to illustrate
which penalties are changed by your recommendation.  Please review the spreadsheet and let me know if changes are
needed – I'll then send it up the review chain.

Also, the info on the successor/predecessor accounts is confusing.  I read what you wrote about having evidence of the
relationship, but I expected that a predecessor account would be closed in 2011 (and have no balance by 6/30/2012),
yet for two of the sets of accounts this is not so.  Making it more confusing is the 23 April 2018 Protest letter that argues
the predecessor accounts "do not exist" (pg 39). They had balances on 6/30/2012 (one set highlighted in yellow, one in
blue on the attached spreadsheet).  The last set (highlighted in red) has balances that appear to fit the mold of the
preceding account assets being transferred entirely into the succeeding account (even though the succeeding account
had no reported 6/30 balance – which could be explained a number of ways, including the succeeding account was

opened in 2011 and closed prior to the 6/30/2012 reporting deadline) You wrote that the daily balances for the sets of predecessor/successor accounts were the same, but at least on 6/30/2012 this isn't so. Based on the above analysis – what can be sent to verify to the reviewers that the three preceding accounts should not be separately penalized?

Respectfully,

Russell McGeehan
IRS Appeals (International)
619.744.7153 (O)
855.528.0515 (F)

***Coordinator for the following Appeals Coordinated Issue: Report of Foreign Bank and Financial Accounts (FBAR) penalties (Form TD F 90-22.1 (obsolete)/FinCEN Form 114)

---

**From:** Binns Duane <Duane.Binns@irs.gov>
**Sent:** Tuesday, May 5, 2020 10:34 AM
**To:** McGeehan Russell W <Russell.W.McGeehan@irs.gov>
**Subject:** RE: Kxx FBAR case

I re-created Exam's FBAR penalty calc (attached), and I cut-and-paste from my ACM (p. 7):

As stated above, Exam took every account that had some balance in 2011, and determined a penalty (for that account) of the greater of $100,000 or 50% of the balance of that account on 6-30-12 (even if that account no longer had a balance on 6-30-12), which resulted in an aggregate penalty of ($100,000 x 37) + (1 x $356,439.39) = $4,056,439.

However, as Rep points out in the Protest (there were at least two letters that appear to be the Protest, but I am talking about pp. 38-40 of the 4-23-18 letter), accts # ▓▓▓▓▓4681 and # ▓▓▓▓▓5417 were counted twice (which is obvious from Exam's "FBAR Penalty Calculation" schedule). Rep also states there are 3 accounts (# ▓▓▓▓▓8765, # ▓▓▓▓▓9546, and # ▓▓▓▓▓6258) that were not opened until after 2011 (which statement agrees with Exam's supporting documentation—and also agrees with p. 11 of the "FBAR Explanation of Items" attached to Letter 3709 sent to Taxpayer 4-24-17 proposing the FBAR penalties, which shows these 3 accounts being opened 1-1-12).

Rep also pointed out that acct # ▓▓▓▓▓6411 was a successor account of # ▓▓▓▓▓3-001 (i.e., they are the same account, and so should not be charged two separate $100,000 penalties); and # ▓▓▓▓▓3441 was a successor account of # ▓▓▓▓▓2-001; and # ▓▓▓▓▓2033 was a successor account of # ▓▓▓▓▓1-003. And yes, a review of the bank information received from Exchange of Information does show these pairs to be successor/predecessor accounts. EOI had sent pages of detailed balance information on many accounts, and had listed each of these accounts separately, but the daily balances were the same, showing each pair was actually only one account.

*Adjusting the penalty down for these 8 account reduces the penalty by $800,000, to $3,256,439.*

*Duane*

*630-926-6833*

**From:** McGeehan Russell W <Russell.W.McGeehan@irs.gov>
**Sent:** Monday, May 04, 2020 4:18 PM
**To:** Binns Duane <Duane.Binns@irs.gov>
**Cc:** Golden Denise L <Denise.L.Golden@irs.gov>
**Subject:** RE: Kxx FBAR case

Duane,

Re: Kim FBAR

The ACM is still being reviewed.  We need a penalty calculation schedule that shows which foreign accounts were being penalized by Exam, how much of the penalty is attributable to each account, and which accounts your partial abatement recommendation involves.  I found Exam's penalty calculation schedule on the last page of the Counsel memo, however it is not readable.  Please send a chart that illustrates the penalty for the affected foreign accounts.  Thanks in advance.

Respectfully,

Russell McGeehan
IRS Appeals (International)
619.744.7153 (O)
855.528.0515 (F)

***Coordinator for the following Appeals Coordinated Issue: Report of Foreign Bank and Financial Accounts (FBAR) penalties (Form TD F 90-22.1 (obsolete)/FinCEN Form 114)

# Exhibit 153

| | |
|---|---|
| **From:** | Binns Duane |
| **To:** | Rozenzhak Vladislav M |
| **Subject:** | FW: Status Update?--Binns |
| **Date:** | Wednesday, August 17, 2022 11:27:03 AM |

---

**From:** Binns Duane
**Sent:** Monday, August 10, 2020 3:57 PM
**To:** McGeehan Russell W <Russell.W.McGeehan@irs.gov>
**Cc:** Golden Denise L <Denise.L.Golden@irs.gov>
**Subject:** RE: Status Update?--Binns

Ok

duane

**From:** McGeehan Russell W <Russell.W.McGeehan@irs.gov>
**Sent:** Monday, August 10, 2020 3:55 PM
**To:** Binns Duane <Duane.Binns@irs.gov>
**Cc:** Golden Denise L <Denise.L.Golden@irs.gov>
**Subject:** RE: Status Update?--Binns

Duane,

I will have to spend some time reviewing the ACM and file to determine what, if anything is needed, and how to get it approved for DoJ consumption.  Unfortunately, I have to work on other matters at present and my work will be delayed by a few weeks.  I'll update you as I progress.

Respectfully,

Russell McGeehan
IRS Appeals (International)
619.744.7153 (O)
855.528.0515 (F)

***Coordinator for the following Appeals Coordinated Issue: Report of Foreign Bank and Financial Accounts (FBAR) penalties (Form TD F 90-22.1 (obsolete)/FinCEN Form 114)

**From:** Binns Duane <Duane.Binns@irs.gov>
**Sent:** Monday, August 10, 2020 1:49 PM
**To:** McGeehan Russell W <Russell.W.McGeehan@irs.gov>
**Subject:** FW: Status Update?--Binns

I cut-and-paste from page 7 of the ACM I sent out 11-1-19:

As stated above, **Exam took every account that had some balance in 2011, and <u>determined a penalty (for that account) of</u> the greater of <u>$100,000</u> or 50% of the balance of that account on 6-30-12 (even if that account no longer had a balance on 6-30-12), which resulted in an aggregate penalty of ($100,000 x 37) + (1 x $356,439.39) = $4,056,439.**

However, as Rep points out in the Protest (there were at least two letters that appear to be the Protest, but I am talking about pp. 38-40 of the 4-23-18 letter), **accts #████████4681 and #████████5417 were counted twice** (which is obvious from Exam's "FBAR Penalty Calculation" schedule).  Rep also states there are **3 accounts (#████████8765, #████████9546, and #████████6258) that were not opened until after 2011** (which statement agrees with Exam's supporting documentation—and also agrees with p. 11 of the "FBAR Explanation of Items" attached to Letter 3709 sent to Taxpayer 4-24-17 proposing the FBAR penalties, which shows these 3 accounts being opened 1-1-12).

Rep also pointed out **that acct #████████6411 was a successor account of #████████3-001** (i.e., they are the same account, and so should not be charged two separate $100,000 penalties); and **#████████3441 was a successor account of #████████2-001;  and #████████2033 was a successor account of #████████1-003.**  And yes, a review of the bank information received from Exchange of Information does show these pairs to be successor/predecessor accounts.  EOI had sent pages of detailed balance information on many accounts, and had listed each of these accounts separately, but the daily balances were the same, showing each pair was actually only one account.
***Adjusting the penalty down for these 8 account reduces the penalty by $800,000, to $3,256,439.***

So, eight times Exam charged a $100,000 penalty (each time for an account that supposedly was open in 2011) that Exam should not have done so.  Two accounts were each counted twice.  Three accounts were not open in 2011 at all.  Three accounts were counted twice when a $100,000 penalty was charged per acct **number**, but they were actually the same account (just successor account **numbers** for the same account).

Duane
630-926-6833

---

**From:** Golden Denise L <Denise.L.Golden@irs.gov>
**Sent:** Monday, August 10, 2020 3:26 PM
**To:** McGeehan Russell W <Russell.W.McGeehan@irs.gov>
**Cc:** Binns Duane <Duane.Binns@irs.gov>
**Subject:** RE: Status Update?--Binns

Russell,

I talked to Maggie on Friday. Bottom line- the ACM is not ready for DOJ. She did not understand the way the penalty was computed or how it was being change. The ACM needs to be overhauled so that it is ready for DOJ consideration. She said she did not make any changes because she couldn't understand what was happening. Please put your efforts together to get this ready for DOJ. As you know, DOJ is very particular on what they will support.

Denise

**From:** McGeehan Russell W <Russell.W.McGeehan@irs.gov>
**Sent:** Monday, August 10, 2020 12:19 PM
**To:** Golden Denise L <Denise.L.Golden@irs.gov>
**Cc:** Binns Duane <Duane.Binns@irs.gov>
**Subject:** FW: Status Update?--Binns

Denise,

Re: Laura Kim FBAR

Follow up to our talk last week, Duane inquired on the status of the review.

Respectfully,

Russell McGeehan
IRS Appeals (International)
619.744.7153 (O)
855.528.0515 (F)

***Coordinator for the following Appeals Coordinated Issue: Report of Foreign Bank and Financial Accounts (FBAR) penalties (Form TD F 90-22.1 (obsolete)/FinCEN Form 114)

**From:** Binns Duane <Duane.Binns@irs.gov>
**Sent:** Monday, August 10, 2020 9:36 AM
**To:** McGeehan Russell W <Russell.W.McGeehan@irs.gov>
**Subject:** Status Update?--Binns

I think you still have the KIM file, right?

Is management still trying to figure out what position they are going to take?

Duane Binns
630-926-6833

Exhibit 155

| | |
|---|---|
| **From:** | Binns Duane |
| **To:** | Rozenzhak Vladislav M |
| **Subject:** | FW: Please assess FBAR penalty & return 13448 |
| **Date:** | Wednesday, August 17, 2022 9:08:49 AM |
| **Attachments:** | KimLaura13449 (003)-Approved GGB 08132019.pdf |

**From:** Binns Duane
**Sent:** Tuesday, August 13, 2019 1:56 PM
**To:** Darnell Onisha Y <Onisha.Y.Darnell@irs.gov>
**Subject:** Please assess FBAR penalty & return 13448

Duane Binns
Cell  630-926-6833

| Form **13449** (May 2015) | Department of the Treasury   Internal Revenue Service **Agreement to Assessment and Collection of Penalties Under 31 USC 5321(a)(5) and 5321(a)(6)** |
|---|---|

Name of account holder

Laura Kim

Social security number (SSN) or Employer identification number (EIN)

▮8486

Address of account holder *(Number, Street, City or Town, State, ZIP code)*

Los Angeles, CA ▮

## Definition of Penalty Statutes

**1. Foreign Financial Agency Transaction Violation — willful failure to meet recordkeeping requirements and/or report a foreign account on FinCEN Report 114, Report of Foreign Bank and Financial Accounts (FBAR):** 31 USC 5321(a)(5) and 31 CFR sections 1010.350, 1010.420 and 1010.820(g)(2)

**2. Foreign Financial Agency Transaction Violation — non-willful failure to meet recordkeeping requirements and/or report a foreign account on FinCEN Report 114, Report of Foreign Bank and Financial Accounts (FBAR):** 31 USC 5321(a)(5) and 31 CFR sections 1010.350, 1010.420 and 1010.820(g)(2)

**3. Negligent Failure to Report:** 31 USC 5321(a)(6) and 31 CFR sections 1010.350 and 1010.820(h)

**4. Negligent Failure to Meet Recordkeeping Requirements:** 31 USC 5321(a)(6) and 31 CFR sections 1010.420 and 1010.820(h)

**5. Pattern of Negligent Activity:** 31 USC section 5321(a)(6)(B)

| **TOTAL** proposed penalty *(from Page 2 of 2)* | $ 4056439.39 |
|---|---|

## Signature Authorization

I consent to the immediate assessment and collection of the penalty amount specified above plus any interest and penalty as provided by law.

| Your signature | Date signed |
|---|---|
| | |

| Representative's signature *(valid only with Power of Attorney attached)* | Date signed |
|---|---|
| | |

Name of entity *(for corporations, partnerships, trusts, etc., when EIN specified above)*

| Signature of authorized officer | Title | Date signed |
|---|---|---|
| Signature of authorized officer | Title | Date signed |
| Name of examiner | | Date *(mmddyyyy)* |

Office of examiner

| Name of supervisor Gregory G. **Butler** | Gregory G. Butler  Digitally signed by Gregory G. Butler  Date: 2019.08.13 13:50:27 -05'00' | | Date *(mmddyyyy)* 08/13/2019 |
|---|---|---|---|

Office of supervisor

**O**klahoma **Cit**y, OK

| Catalog Number 36612U | www.irs.gov | Form **13449** (Rev. 5 2015) |
|---|---|---|

## Foreign Account Penalty Information

| Name of account holder | Account holder ID *(EIN or SSN)* |
|---|---|
| Laura Kim | ▓ 8486 |

### Foreign Account 1

| Calendar year<br><br>2011 | Foreign Bank, Institution, or Agent(s)<br>Woori Bank and Standard Chartered Bank | Proposed penalty per "Definition of Penalty Statutes" *(Check applicable box(es))*<br>☒ (1)   ☐ (2)   ☐ (3)   ☐ (4)   ☐ (5) |
|---|---|---|
| Maximum value of account<br><br>$ various (see attached) | Foreign account number(s)<br>various ( see attached) | Amount of penalty<br><br>$ 1014109.85 |

### Foreign Account 2

| Calendar year<br><br>2010 | Foreign Bank, Institution, or Agent(s) | Proposed penalty per "Definition of Penalty Statutes" *(Check applicable box(es))*<br>☐ (1)   ☐ (2)   ☐ (3)   ☐ (4)   ☐ (5) |
|---|---|---|
| Maximum value of account<br><br>$ various (see attached) | Foreign account number(s) | Amount of penalty<br><br>$ 1014109.85 |

### Foreign Account 3

| Calendar year<br><br>2009 | Foreign Bank, Institution, or Agent(s) | Proposed penalty per "Definition of Penalty Statutes" *(Check applicable box(es))*<br>☐ (1)   ☐ (2)   ☐ (3)   ☐ (4)   ☐ (5) |
|---|---|---|
| Maximum value of account<br><br>$ various (see attached) | Foreign account number(s) | Amount of penalty<br><br>$ 1014109.85 |

### Foreign Account 4

| Calendar year<br><br>2012 | Foreign Bank, Institution, or Agent(s) | Proposed penalty per "Definition of Penalty Statutes" *(Check applicable box(es))*<br>☐ (1)   ☐ (2)   ☐ (3)   ☐ (4)   ☐ (5) |
|---|---|---|
| Maximum value of account<br><br>$ | Foreign account number(s) | Amount of penalty<br><br>$ 1014109.85 |

### Foreign Account 5

| Calendar year | Foreign Bank, Institution, or Agent(s) | Proposed penalty per "Definition of Penalty Statutes" *(Check applicable box(es))*<br>☐ (1)   ☐ (2)   ☐ (3)   ☐ (4)   ☐ (5) |
|---|---|---|
| Maximum value of account<br><br>$ | Foreign account number(s) | Amount of penalty<br><br>$ |

### Foreign Account 6

| Calendar year | Foreign Bank, Institution, or Agent(s) | Proposed penalty per "Definition of Penalty Statutes" *(Check applicable box(es))*<br>☐ (1)   ☐ (2)   ☐ (3)   ☐ (4)   ☐ (5) |
|---|---|---|
| Maximum value of account<br><br>$ | Foreign account number(s) | Amount of penalty<br><br>$ |

| **TOTAL** proposed penalty *(Enter here and on Page 1 of 2)* | $ 4056439.39 |
|---|---|

Exhibit 156

**Cotton Robert**

| | |
|---|---|
| **From:** | Binns Duane |
| **Sent:** | Tuesday, August 20, 2019 10:58 AM |
| **To:** | *SBSE BSA Compliance FBAR Penalty Coordinator |
| **Subject:** | RE: Please assess FBAR penalty & return 13448 |
| **Attachments:** | KimLauraExtension.pdf |

Duane Binns
312-582-6820

**From:** *SBSE BSA Compliance-FBAR Penalty Coordinator <sbse.bsa.compliance.fbar.penalty.coordinator@irs.gov>
**Sent:** Tuesday, August 20, 2019 9:54 AM
**To:** Binns Duane <Duane.Binns@irs.gov>
**Subject:** RE: Please assess FBAR penalty & return 13448

Hello,

Do you have a statute extension for Laura Kim? If so, can you please email it to me?

*Onisha Y. Darnell*
*FBAR Penalty Coordinator(TLS), Team 204*
*BSA/CTR Operations*
*Internal Revenue Service*
*Detroit Federal Building*
*985 Michigan Avenue, 4th Floor*
*Detroit, MI 48226*
*Phone: 313-234-1566*
*Fax: 313-234-2278*
*Email: onisha.y.darnell@irs.gov*

**From:** Binns Duane <Duane.Binns@irs.gov>
**Sent:** Tuesday, August 13, 2019 2:56 PM
**To:** Darnell Onisha Y <Onisha.Y.Darnell@irs.gov>
**Subject:** Please assess FBAR penalty & return 13448

Duane Binns
Cell 630-926-6833

Internal Revenue Service
RECEIVED
AUG 3 0 2019
FBAR Penalty
Detroit, MI

4891 5

# CONSENT TO EXTEND THE TIME TO
# ASSESS CIVIL PENALTIES PROVIDED BY
# 31 U.S.C. § 5321 FOR FBAR VIOLATIONS

**WHEREAS,** the parties to this agreement desire to extend the time during which the penalties provided by 31 U.S.C. 5321 may be assessed and collected,

**WHEREAS,** the parties to this agreement are aware that they have the right to refuse to sign this consent,

<u>Laura Kim SSN # ████ 8486</u>
(name and taxpayer identification number)

United States person, of ___██████__ ██ Los Angeles, CA ████___
(address)

and the Commissioner of the Internal Revenue Service, hereby agree and consent to the following:

(1)  For violations with respect to the requirement, established under 31 U.S.C. 5314, for a United States person to report having a financial interest in or signature authority, or other authority, over a financial account during the calendar years _____2009, 2010, 2011, 2012_____ that was maintained with a financial institution located in a foreign country, the amount of any penalty provided by 31 U.S.C. 5321 may be assessed at any time on or before _____12/31/2020_____.

(2)  This consent does not reduce, waive, or extend any period of limitation under 26 U.S.C. 6501 for assessing or collecting tax.  This consent also does not supersede or amend any other agreement between the United States person and the Internal Revenue Service.

<u>Date</u>                                        <u>Signature of the United States Person</u>

_____          _____

<u>Date</u>                                        <u>Signature of Authorized Representative</u>
July 10, 2019                                 *a my*

<u>Date</u>                                        <u>Signature of the Commissioner's Delegate</u>
4-24-19                                        *Duane Burns*
7-24-19                                        **APPEALS OFFICER**
                                                    Title

Internal Revenue Service
RECEIVED

AUG 3 0 2019

FBAR Penalty
Detroit, MI

# Exhibit 161

# Examining Officer's Activity Record

| | |
|---|---|
| Examining Officer<br>Chernyak, Elia | Date assigned/Opened<br>(11/20/2012) |

Taxpayer name and address (Use the preprinted label if possible)

KIM, LAURA H/Laura's French Bakery

Residence: ██████████
LOS ANGELES, CA ██████

Business: Alameda St, Los Angeles

Business name and address

Taxpayer's Representative name and address

Jonathan Amitrano
3 Hutton Center Dr Ste 500
Santa Ana, CA 92707

Representative has ('x proper box)

| x | Power of Attorney | | Taxpayer Authorization |
|---|---|---|---|

Residence telephone number   (213) 364-9797
Business telephone number   ( )
Fax telephone number   ( )

Representative's telephone number   (714) 546-0445
Fax telephone number   (714) 546-2604

## Contacts and Activities

| Date (mmddyyyy) | LOC | CONT | Time on Activity | Remarks, Notes, Actions Taken |
|---|---|---|---|---|
| 11/20/2012 | O | 3 / 4 | | Input information into RGS at POD also mailed to taxpayer IDR and initial appointment letter with Publication 1, Notice 609. |
| 11/26/2012 | O | 3 | | Mailed to taxpayer IDR requesting bank statements deposit slips and cancelled checks for personal. Mailed reschedule appointment letter set for January 8, 2013 10:00 am Conference Room D 3rd Floor 300 North Los Angeles Street Los Angeles, CA 90012. |
| 11/30/2012 | O | 2 | | Spoke with Ella Chernyak SEP RA concerning requesting ESTABDO for 201012, 201112 1040 returns. Also informed Ms. Chernyak that I am on a detail in SEP which will end 1/12/2013 and returning to General Program. I informed her that have not heard from taxpayer and going to contact her by phone to confirm receipt of letters, IDS sent to her. (b)(7)(C) |
| 11/30/2012 | O | 2 | | Called 213 388-8560 asked to speak to Laura Kim. The man that answered the phone stated no such person lives at this address. I verified the phone number to the man and again he stated Laura Kim is not at this address. I researched the reverse white page look up and the phone number. Researched Accruint for updated residential address and it still states ██████████ Los Angeles, CA ██████. Left voice mail message 323 957-9868 for Laura Kim to return phone call I only left my last and first name. |
| 11/30/2012 | O | 4 | | Requested DMV Locator second address found ██████ Angeles, CA ██████. I have already mailed reschedule appointment letter to this address 11/26/2012. Taxpayer vehicle address ██████████, Los Angeles, CA ██████, her driver's license address is ██████████ Los Angeles, CA ██████ |
| 11/30/2012 | O | 2 | | Received phone call back from Laura C. Kim ██████ but she stated she is not Laura H. Kim and has had this phone number for two years. |
| 12/4/2012 | O | 4 | | Submitted to manager Leon Finkel ESTABDO for 201012, 201112 1040 to sign. Manager signed ESTABDO gave to secretary Angela Hernandez to process. |

CONT = Type of Contact   1. Field Visit   2. Telephone   3. Correspondence   4. Other (explain in remarks)
LOC – Location of Activity   T = Taxpayer Residence/ Business   R = Representative Office   O = Other (explain in remarks)   **Workpaper#: 100-1.1**

USA - 013066

Taxpayer:                                                              TIN:

| Date (mmddyyyy) | LOC | CONT | Time on Activity | Remarks, Notes, Actions Taken |
|---|---|---|---|---|
| 12/31/2012 | O | 4 | 4 hours | Reviewed information provided by previous agent researched Accruint, Google and other websites. |
| 1/02/2013 | O | 2 | | Left voicemail message 213 364-9797 for Laura Kim to confirm appointment scheduled for 1/8/2013 10:00 AM. I just left my first and last name only. |
| 1/08/2013 | 4 | O | 4 hours | Power of Attorney POA Michael K. Khim present for initial audit appointment. POA provided signed 2848 and copies of 201012, 201112 1040 bank statements. Also provided by POA copies of requested K1's. |
| 1/08/2013 | O | 3 | | Faxed signed date stamped copy of 2848 to Ogden CAF. |
| 1/09/2013 | O | 3 | | Received e-mail from manager Leon Finkel to transfer case to San Diego SEP. |
| 1/10/2013 | O | 3 | | E-mailed Ella SEP agent San Diego transferring case to her group. |
| 1/10/2013 | O | 4 | | Gave case file to secretary Angela Hernandez to transfer case to San Diego SEP. |
| | | | | |
| | | | | ***NEW REVENUE AGNET ASSIGNED TO THIS CASE*** |
| 01/10/2013 | | | | RA Chernyak received this case for review.<br>Spoke with M. Khim and he said that he will get back to RA with scheduling the taxpayer to come for the interview. During the meeting with previous RA, POA and TP said that she will come back to the country for this audit.<br>RA reviewed records and found that pub 1 and notice 609 was send out to the taxpayer/POA. |
| 03/28/2013 | | | | RA received a POA form from Moss Adams for this taxpayer. The other POA never responded.<br>This same day, during the meeting of the manager and Moss Adams representatives; it was discussed to have a phone conference scheduled with Laura Kim. |
| 04/09/2013 | | 2 | | RA spoke with POA:<br>  o  POA said that she will follow up with the POA of Ms. Kim regarding scheduling a phone conference.<br>  o  She said that POA is still sick; RA said that POA is not the one under audit and therefore an appointment needs to be scheduled.<br>  o  RA said that she can not leave the audit open and that some actions need to be implemented; therefore POA needs to get back to RA within the next few days with scheduled phone conference.<br>  o  POA also asked for the IDR for Ms. Kim to be sand to her. RA said that is not a problem; printed all IDRs and send it to Moss Adams.<br>RA sand out offshore letter for 5471 to the taxpayer. POA was not notified because it is not part of their form 2848.<br>Later during the day Mrs. Willard called again and said that she has contacted the other POA, who is not on file yet, and he should be in touch with RA shortly regarding Ms. Kim. No definite response was received regarding setting up conference call with Ms. Kim. RA has decided if the conference call is not scheduled by 04/17; she will serve the summons to the taxpayer in Los |

CONT = Type of Contact   1. Field Visit   2. Telephone   3. Correspondence   4. Other (explain in remarks)
LOC – Location of Activity   T = Taxpayer Residence/ Business   R = Representative Office   O = Other (explain in remarks)    **Workpaper#: 100-1.2**

Form **9984** (Rev. 8-2005)      Catalog Number 92068W          publish.no.irs.gov          Department of the Treasury – Internal Revenue Service

USA - 013067

Taxpayer:                                                                 TIN:

| Date (mmddyyyy) | LOC | CONT | Time on Activity | Remarks, Notes, Actions Taken |
|---|---|---|---|---|
| | | | | Angeles. |
| 04/17/2013 | | | 3 | RA served the summons to the taxpayer with due date of 05/16 to meet at LA office. Summons was served at 12:10pm. |
| 04/18/2013 | | | | RA received a POA form and processed it. RA listened to the voice mail and found a voice mail from POA left on 04/17/2013 at 5:34pm. RA left a voice mail for POA at 8:44am to call her back. |
| 04/22/2013 | | | | RA received a voice mail from POA asking her to leave a voice mail for him for the appointment preferably 2-4 weeks away. RA called him back and said that she can not leave this type of information on his voice mail due to potential disclosure violation; therefore he needs to call her back and she is in the office the entire day. RA received a voice mail from Michael Khim telling her about the summons that he has received. The copy that he received is the one served on the taxpayer; since RA send a notice copy to POA Bruno. RA attempted to call him back to let him know that his POA form has been revoked, but when she was calling the phone on the other end never answered. |
| 05/14/2013 | | | 1 | RA spoke with POA regarding this case. RA walked him through the entire cases happening up to date. POA told RA that he will be in touch regarding on Thursday appointment ASAP. RA told POA that she would be flexible on the time and the location, just not the date. She must speak with taxpayer Thursday since there were multiple chances provided to schedule meeting previously. |
| 05/16/2013 | | | 2 | TP did not show for the appointment. RA filled out forms for enforcement and send it to counsel and manager for processing. |
| 07/18/2013 | | | | Counsel issued last chance letter |
| 07/25/2013 | | | | RA received a new POA form from Lavar Taylor and processed it. Had a discussion with counsel regarding letter that he has send and decided to give him few weeks to provide records. RA called him and he said that he will do his best to provide everything by 08/14, which is the date RA is scheduling for the documents to be submitted to her. POA also said that he will be out of town for 4 weeks after that date. RA repeated the request for the TP to be available for the interview and to set up a phone conference for that as soon as possible. RA explained to POA that it is easier to review records once the understanding exists for the financial situation of the taxpayer. RA told POA that she will send out detailed IDR on 07/29/2013. RA is concerned that POA said that they might possibly have bank records only on 8/14 and he will attempt to get everything else, but he is leaving town after that date for 4 weeks. |
| 07/26/2013 | | | 8 | RA reviewed the case and worked on creating IDR#4 to submit to POA. RA working on the tax return analysis in order to specify IDR. |
| 07/30/2013 | | | 3 | RA sand out summons for the taxpayer's bank accounts and preparer. Also, RA sand out an IDR. POA called with the few questions regarding IDR. He asked about additional POA form for 1120S. RA said that she is not opening that at the present time, but it affects current tax return therefore she auditing only that portion. POA for 1120S would be good to have, but RA is not |

CONT = Type of Contact   1. Field Visit   2. Telephone   3. Correspondence   4. Other (explain in remarks)
LOC – Location of Activity   T = Taxpayer Residence/ Business   R = Representative Office   O = Other (explain in remarks)          **Workpaper#: 100-1.3**

Form **9984** (Rev. 8-2005)      Catalog Number 92068W          publish.no.irs.gov          Department of the Treasury – Internal Revenue Service

USA - 013068

Taxpayer:                                                                                                     TIN:

| Date (mmddyyyy) | LOC | CONT | Time on Activity | Remarks, Notes, Actions Taken |
|---|---|---|---|---|
| | | | | requesting it at this point because she is not auditing 1120S as separate entity, but a flow-through. POA also asked if RA would send him 1120S for 2010 & 2011 tax years and RA agreed and mailed it to him. |
| 08/14/2013 | | | | RA received a voice mail from Robert Horowitz from this morning and Lavar Taylor from 08/13 after 4pm. He asked the agent to call him back between 9:30am to 10am. |
| | | | | Mr. Taylor said that is living down. They did got some records, but majority of it is in Korea. He said that they are having language barriers and that they are working on translating now and then they would provide those records. Also, he said that the computers at the bakery got corrupted and records might be destroyed and not available and that he would be back on 9/9, but Robert Horowitz will handle everything in his stad. |
| | | | | RA called Mr. Horowitz back at 9:36am and told him to send her everything by the deadline and that she will get it translated herself. Since this was a decision instead of enforcing summons. |
| | | | | POA Horowitz called again around 4:11pm and he said that he has received a message from RA and that his office is in the process of scanning documents and that RA will have these documents by Friday 16th. RA called POA back again at 4:36pm and left a message. |
| 08/15/2013 | | | | Summons were issued due to NOL over $500,000 on each year reviewed. |
| | | | | RA received a voice mail from POA from 7:45am said that he is out of the office for an appointment and will call RA back from 9am to 10am. |
| 08/26/2013 | | | 4 | RA received two discs with bank statements and tax returns and paper document. |
| | | | | RA requested an assistance of a person fluent in Korean. |
| 08/27/2013 | | | 2 | RA briefly reviewed records provided. Records provided were bank statements, tax returns, bakery - G/L, income statement and balance sheet. |
| | | | | RA had a conversation with M. Khim. He said that he does have some records and that he started working for Kim in 2009. He also said that he will bring these records to the tour that RA has scheduled at the bakery tomorrow morning. RA agreed and she said that once the records are reviewed, she will schedule a follow up interview appointment to answer questions at a later date and that summons will remain open till then. |
| 08/28/2013 | | | 8 | RA drove to bakery and had a tour. POA Horowitz was present and CPA Khim was present. Mr. Khim gave RA a disc in compliance with his summons and some statements. During the tour manager was present too. He said: 1. Payroll is done through Wells Fargo bank. There are currently 13 employees. 2. He said that main distributors are Sysco and US Foods. Sysco gets about $80,000 per month and US Foods about $3,000 per month. 3. there are also smaller distributors such as Chinese buffet – Grey Wall and Koon Pong 4. Laura's son Sterling Kim is a police officer in the area. 5. The last time Laura was at the bakery was in January or February. If she was in tow in July, she did not come to the bakery. 6. the manager is her brother-in-law. He does not live in the same house, but right next door. He said that in Laura's house there are way too many people, such as Laura's sisters, 2, and mother. He said that Laura is part of 5 sisters and 1 brother family. |

CONT = Type of Contact  1. Field Visit  2. Telephone  3. Correspondence  4. Other (explain in remarks)
LOC – Location of Activity  T = Taxpayer Residence/ Business  R = Representative Office  O = Other (explain in remarks)   **Workpaper#: 100-1.4**

Form **9984** (Rev. 8-2005)        Catalog Number 92068W         publish.no.irs.gov         Department of the Treasury – Internal Revenue Service

USA - 013069

Taxpayer:                                                             TIN:

| Date (mmddyyyy) | LOC | CONT | Time on Activity | Remarks, Notes, Actions Taken |
|---|---|---|---|---|
| | | | | RA observed different areas of production and employees working. There are some assets such as ovens and furniture, shelving for baked goods. There is also a loading dock. |
| | | | | POA said that the information that he has provided to RA so far is the information that he has received from the manager of the bakery. Manager said that he will provide all records necessary from the summons. RA gave him a summons with the due date of 09/30/2013. |
| 09/04/2013 | | | | RA has received a letter from Robert Horowitz stating that speaking with Michael Khim is privileged and that he wants to be present at the interview. RA called Mr. Horowitz and denied that request. then called Mr. Khim and left him a voice mail to call back. |
| | | | | RA received a letter from Lavar Taylor asking to reconsider the RA's position in allowing Mr. Horowitz to attend phone conference. RA called counsel for advice. |
| | | | | RA had a phone conference with M. Khim regarding his tax returns preparation and, after conversation with counsel, allowed POA Robert Horowitz to be present. After the conversation, RA asked M. Khim to submit QB back up for the corporation; M Khim said that he will do that prior to 09/25/2013. |
| | | | | After all the questions were asked, RA asked POA regarding beginning of the NOL date. POA said there are several file drawers at the corporation and that they are hiring a copying company to make copies and submit to RA. RA said that NOL schedule needs to be provided to her first so that they know the date to use for the beginning of the period so that no one wastes time. POA seem to agree. RA also said that if they give her a POA form starting with NOL period she might be able to tell POA regarding who the preparer was before 2009, prior to Michael Khim. |
| | | | | RA wrote up an interview with M. Khim and started to review records submitted by him to her at the tour of the business. |
| 09/09/13 | | | 8 | Had a discussion with counsel regarding this case and records to be obtained. |
| | | | | RA called Lavar Taylor asked for the phone conference with his client and left a voice mail. |
| | | | | RA did research for the properties owned by this taxpayer. She found: |
| | | | | o ▓▓▓▓▓▓▓▓▓▓ Los Angeles, ▓▓▓▓▓▓ |
| | | | | o 6721 Alameda St, Los Angeles, CA 90001 – this is a location for bakery 1120S |
| | | | | o ▓▓▓▓▓▓▓▓ Los Angeles, CA ▓▓▓ – this is 1040 address |
| | | | | o ▓▓▓▓▓▓ Los Angeles, CA ▓▓▓▓▓ |
| | | | | o ▓▓▓▓▓▓ Los Angeles, CA ▓▓▓▓▓ |
| | | | | o ▓▓ ▐ ▌▓▓ Los Angeles, CA ▓▓▓▓▓ |
| | | | | ● ▓▓▓▓▓▓ Savanna, GA – this property is owned by trust and Laura Kim is a trustee. Trust name is The Laura Chiyun Kim Trust with address |
| | | | | RA also started to review records received from Whilshire State Bank |
| 09/10/2013 | | | 5 | RA received a voice mail from Lavar Taylor asking to move the phone conference for Mrs. Kim for few weeks because he has a lot on his plate and he needs to accommodate schedules with Korea and translator. |
| | | | | RA called him back and said that she can not keep postponing this audit and that would be unreasonable and that she would be happy to schedule something for next week. POA said that he will attempt to accommodate that request. |

CONT = Type of Contact   1. Field Visit   2. Telephone   3. Correspondence   4. Other (explain in remarks)
LOC – Location of Activity   T = Taxpayer Residence/ Business   R = Representative Office   O = Other (explain in remarks)      **Workpaper#: 100-1.5**

Form **9984** (Rev. 8-2005)      Catalog Number 92068W         publish.no irs.gov         Department of the Treasury – Internal Revenue Service

USA - 013070

Taxpayer:                                                                 TIN:

| Date (mmddyyyy) | LOC | CONT | Time on Activity | Remarks, Notes, Actions Taken |
|---|---|---|---|---|
| | | | | RA started to work on bank deposit analysis. |
| 09/16/2013 | | | | RA received a voice mail from POA Horowitz regarding making copies of all the records there are at the corporation starting as far back as it is available. RA called him back on that date and left a voice mail |
| 09/17/2013 | | | | PO Horowitz called again and left a voice mail again. |
| 09/18/2013 | | 1 | | RA called him back and left a voice mail. RA has worked on various procedural forms for this case. |
| 01/07/2014 | | 2 | | RA called POA to discuss this case. RA downloaded QB program. RA talked to POA regarding submitting IDR#4 records to RA which still have not been submitted. Due date for that is set for 01/28/2014. However these are the things that must be provided asap:<br>1. QB password and user name<br>2. MAS90 vs QB the date the conversation happened<br>3 Start date for NOL<br>POA said that he will accomplish these goals. |
| 01/08/14 | | 5 | | RA received password from POA for QB. RA did research and reading for international requirements RA had a conversation with the 3rd party regarding Bakery and Real Estate owned by Laura Kim. |
| 2/3/2014 | | 8 | | RA called POA Horowitz and talked to him about QB data and attempted to open it. RA told POA that she will review all IDRs provided so far and issue a new one. POA said that they could not locate records from the beginning of NOL period however they will create schedules. RA said that schedules are great however she is interested in source documents. RA asked about rental expense and why did the taxpayer declared rental income and rental deductions. POA said that if he paid it they would be entitled to this deduction, where RA said that they would need to show how/where that was paid and if not then that would be another reason for NOL to be wrong. POA gave user name and password to RA for the disc. She has tried it several times, but it did not work. RA will contact specialist and try again. RA worked on the analysis of Whilshire bank account. |
| 3/12/2014 | | 8 | | RA reviewed QuickBooks records. Started reconciliation for the tax return, pulled sample for the detail transactions for IDR. |
| 03/13/2014 | | | | RA printed IDR#5 with all attachments and organized it for POA. Mailed a copy to taxpayer and POA. |
| 04/01/2014 | | 1 | | RA received a package from Lavar Taylor office with the attached letter. Majority of the responses were for the records that will be provided sometimes in the future without an exact time. RA called and spoke with Mr. Horowitz and he said that he is going out there to pick up records at the end of the following week and that they are waiting to hear from Ms. Kim to find out her hours of involvement in the business. After the discussion date that RA would need a date for the due date for 04/11/2014. Also, for the transcripts of the beginning of the NOL period, RA told POA to contact customer service to get these records however that does not fill the requirements for NOL. |

CONT = Type of Contact   1. Field Visit   2. Telephone   3. Correspondence   4. Other (explain in remarks)
LOC – Location of Activity   T = Taxpayer Residence/ Business   R = Representative Office   O = Other (explain in remarks)       **Workpaper#: 100-1.6**

Form **9984** (Rev. 8-2005)      Catalog Number 92068W      publish.no.irs.gov      Department of the Treasury – Internal Revenue Service

USA - 013071

Taxpayer:                                                                                              TIN:

| Date (mmddyyyy) | LOC | CONT | Time on Activity | Remarks, Notes, Actions Taken |
|---|---|---|---|---|
| 04/18/2014 | | | | RA received a call from POA Horowitz. He said that they will be sending more records according to IDR#5 and he asked if RA can fax him specific checks for Ms. Kim to review before they respond. Those check were for UBS account, Richard Kim and Jak Kim. He said that his paralegal is matching invoices to bank accounts and as soon as she is done with that they will mail RA the records. Most likely it will be Monday 04/21.<br>RA said that she will fax those check to POA on 04/21. |
| 04/21/2014 | | | 6 | RA started on the deposit analysis for WFB records.<br>RA received a call from POA's office and was asked about Edison's bills. She was asked if RA wants them to trace each payment when it exactly matches the bills that they have for Edison. RA said that as long as she has the statements from Edison she can track and review the statements to match that on her own as long as there is an account number for the statement where she can find that payment. |
| 05/01/2014 | | | 8 | RA worked on reviewing records and IDRs to make sure what records were provided.<br>RA started trace of employees to see if there are properly recorded.<br>RA issued a summons to prior accountant to verify her position on rental expense and the way it was deducted.<br>RA has contacted POA and scheduled a phone conference for 05/13 to review IDRs and to make sure that everything that she has requested so far has been provided and what is missing.<br>RA continued bank account analysis and input. |
| 05/002/2014 | | | 8 | RA continued to review records provided by POA. |
| 5/6/2014 | | | 4 | Continue working on the spread for the bank accounts |
| 05/13/2014 | | | 2 | RA had a phone conference with POA. The following was discussed:<br>I have reviewed each point of the IDRs from #3 to 4 and 5.<br>• POA will forward 2012 return for corporate and personal and in return RA will send the rest of the returns to POA.<br>• No NOL records or beginning of the period. QB records started in 2008 or 2009 but was not provided to RA, POA said that they will back up QB records from start<br>• All bank statements were summoned and some were provided<br>• RA asked POA if he has received some of the mail that was send directly to TP's house and he said no. RA said how is that possible when he was hired because of the notices received at that location. He said that he does not know but he will follow up with the person at the location. RA said that someone name Wha Ja Lim lives there and signs for everything received and sometimes chooses not to sign.<br>• 50%+ ownership was for Korean personal returns, Marina Enterprise and LK Waters. He believes that there is no other entity. RA asked about Footwear 88 and if that was given to TP by OSIRIS. POA said that he will investigate<br>• RA asked to interview the taxpayer again and POA said that he does not know when she will be in the country. RA said that she will be in July and they can hold an interview in Santa Ana office of POA. POA said that he will check into it and let her know.<br>• RA and POA discussed other properties that TP owned and that she has transferred with deeds in the past 10 years. POA said that he will |

CONT = Type of Contact   1. Field Visit   2. Telephone   3. Correspondence   4. Other (explain in remarks)
LOC – Location of Activity   T = Taxpayer Residence/ Business   R = Representative Office   O = Other (explain in remarks)   **Workpaper#: 100-1.7**

Form **9984** (Rev. 8-2005)          Catalog Number 92066W          publish.no.irs.gov          Department of the Treasury – Internal Revenue Service

USA - 013072

Taxpayer:                                                                         TIN:

| Date (mmddyyyy) | LOC | CONT | Time on Activity | Remarks, Notes, Actions Taken |
|---|---|---|---|---|
| | | | | check into it and let her know. RA asked who paid real estate taxes for the bakery property and POA said that most likely it was bakery. RA said that Rental Expense and Accrued Rent in liabilities are not right because the taxpayer has never intended to make those payments. She has claimed rental income 1 times over the past 10 years on her personal return, but that was it. POA said that rental expense was never paid so there was no rental cancelled checks.  Rental agreement was not provided and POA said that he will check into it.<br>• For passive activity there are no hours for the log and when RA asked about calendar, POA said that he will follow up on that.<br>• Auto expense and depreciation is another area of concern. It seems that cars were provided to everyone and not recorded business purchase and usage. POA will need to research further. |
| 06/02/2014 | | | 8 | RA continued to review bank accounts and working on spread on the bank accounts for bakery.<br>RA received a call from POA scheduling an interview with Laura Kim on 06/17/2014 at 2pm in Santa Ana location. |
| 06/03/2014 | | | | RA called and left a voice mail for Robert Horowitz. RA wanted to speak regarding statute. |
| 06/06/2014 | | | 6 | RA continued to work on bank spread.<br>Also worked on questions for the interview. |
| 06/09/2014 | | | 8 | RA continued review the records that been provided so far in the audit in order to prepare for interview. |
| 06/10/2014 | | | 8 | RA continued to review records provided so far in the audit.<br>RA saw W-4 provided and found most of the SSN was false and decided to expand that issue all the way through NOL period. RA left a voice mail for POA to get all the W-4th, ask about W-2s and 1099s filled and issued to be submitted for entire NOL period.<br>RA continues to work on input as well.<br>Updated some more questions on questionnaire as well. |
| 06/11/2014 | | | | RA had a conversation with the POA. She verified that they were ready for the interview on 17th.<br>Also, RA said that she would like to get all payroll information from 2004 to present. Since POA cannot identify when NOL begins, she will pick 2004 to present to audit for payroll. POA said why don't RA put that on her IDR and RA said that she already has. This was already requested at prior time and then she narrowed it down to the sample, but when it did not satisfy her questions she wants to expand that expense to more records. She also said that there was no W-2s or 1099s provided so far in the audit either for NOL period, so she wants to get that. POA said that he will follow up with the staff member of Laura's bakery and let RA know when this will be available.<br>POA asked why the sample did not satisfy RA, she said that she could not find the people's records in IRS system so if there are social security cards on file she would like to get that as well. POA asked what would be a requirement for the records and RA said that once the employees' fills out W-4 form there should be either social security card or driver license or identification card attached to it. |
| 06/13/2014 | | | 3 | RA continued to work on the questionnaire and reviewing more records to create more questions.<br>RA had a discussion with Lavar Taylor about this interview. He has |

CONT= Type of Contact   1. Field Visit   2. Telephone   3. Correspondence   4. Other (explain in remarks)
LOC – Location of Activity   T = Taxpayer Residence/ Business   R = Representative Office   O = Other (explain in remarks)   **Workpaper#: 100-1.8**

Form **9984** (Rev. 8-2005)        Catalog Number 92068W        publish.no.irs.gov        **Department of the Treasury – Internal Revenue Service**

USA - 013073

Taxpayer:                                                                                                              TIN:

| Date (mmddyyyy) | LOC | CONT | Time on Activity | Remarks, Notes, Actions Taken |
|---|---|---|---|---|
| | | | | rescheduled for 06/23 at 12noon because he said that the taxpayer wants to prepare for that meeting. He asked what the questions that I will be asking and to send him something on it; RA said that this will not work and the interview will be 3 parts. First part will be on her personal information; second is bakery and 3rd is Marina and CBSI. POA said that he understands and confirmed the meeting. |
| 06/17/2014 | | | 4 | Continued to work on detail for the account spreads. |
| 06/20/2014 | | | 7 | RA continued to work on the spread for the bank accounts. |
| 06/23/2014 | | | 12 | RA went to the meeting at POA's office in Santa Ana. When she got there, it turned out that 1st translator did not work out because he could not translated in the non-slang language. Before he left, Ms. Kim told him that she understand the agent perfectly she just wanted to get this over with. A bit later a 2nd translator showed up. Court reporter was also present at the interview. This translator was Stanley W Lee, RA from general program group. After the interview was over and prior to the discussion of the outstanding records with the POA; taxpayer started to speak to revenue agent in English and she told her that it's her fault that the bakery is not working properly financially. RA has advised TP not to speak with her regarding her business without her attorney present. POA presented RA with additional POA forms but that was not completed. They said that completed once will be provided in a few days. The RA said that she wants QB back up as far as at least 2007. Then, POAs said that they will just give up on NOL; however RA told them that she would not be doing diligent audit if she just makes an adjustment for the NOL and closes the cases; therefore there will be some accounts that she will look into further such as payroll and gross receipts. POA said that they will issue FOIA request and RA said that they are welcome to do so. POA Horowitz said that he will provide QB and payroll info shortly with additional POA forms. During the interview, TP and POA refused to answer questions about payments made by TP to shareholders of the CBSI. They said that they will get back with RA about these things. At the end of the appointment, RA and POA agreed to follow up the next day with some answers. |
| 06/24/2014 | | | | POA called and left a voice mail |
| 06/25/2014 | | | | RA called POA back and left a voice mail |
| 07/03/2014 | | | | RA spoke with POA Horowitz. He said that Ms. Kim needs to discuss her answers with Mr. Taylor and he is out on vacation till July 14th. Mr. Horowitz said that they will get back to RA before 07/18.  He wanted 07/23; but RA said that would be too much time and not reasonable. He asked what format does RA want answers. Can it be written or does she want that in person. If she wants that in person then she would have to wait till December because that is when TP will come back from Korea. RA said that we can start with written response and then see what happens. Also, RA asked POA to get her a letter request a.s.a.p. for the transcript since POAs have mentioned that they want that information. POA said that they will get that to RA asap. RA said that they would need to reimburse IRS for the |

CONT = Type of Contact  1. Field Visit  2. Telephone  3. Correspondence  4. Other (explain in remarks)
LOC – Location of Activity  T = Taxpayer Residence/ Business  R = Representative Office  O = Other (explain in remarks)      **Workpaper#: 100-1.9**

Form **9984** (Rev. 8-2005)       Catalog Number 92068W          publish.no.irs.gov          Department of the Treasury – Internal Revenue Service

USA - 013074

Taxpayer:                                                              TIN:

| Date (mmddyyyy) | LOC | CONT | Time on Activity | Remarks, Notes, Actions Taken |
|---|---|---|---|---|
| | | | | transcripts in order to get that, but she will verify that with procurement department before letting POA know for sure. |
| 07/07/2014 | | | 2 | RA continued to review records for bank analysis |
| 07/14/2014 | | | 8 | RA continued to review records for bank analysis |
| 07/18/2014 | | | 2 | RA had a contact with POA. |
| 07/25/2014 | | | 8 | RA continued to review records for bank analysis |
| 07/26/2014 | | | | Summons was served for LK regarding CBSI. |
| 08/07/2014 | | | | RA mentioned to POA that the summons was served on the TP residence for her appearance. POA said that she lives in Korea and not LA; RA said that she is a US citizen with an active involvement in US business and said that she receives her mail at the US address and therefore the enforcement is being pursued for non-compliance.<br>POA called and said that Ms. Jackson has quit working for the bakery and therefore they could not get the records necessary till recently. She was a bookkeeper and she does not work there any longer.<br>Records were submitted for enforcement after the due date of the summons and no show. |
| 08/11/2014 | | | 8 | RA continued to review records for bank analysis |
| 08/18/2014 | | | 5 | RA continued to review records for bank analysis |
| 09/10/2014 | | | | RA created F872 and letter 907 and send it to each taxpayer and their POA. |
| 10/06/2014 | | | 2 | RA was reviewing more records for the bakery |
| 10/07/2014 | | | 4 | RA received a call from Lavar Taylor and he asked if the statute extension was for processes change reasons or something else. RA said due to the fact that appeals processes changed and there is less than 1 year on the statute; this is why extension went out.<br>He said that on most other cases his clients decide not to sign till they know that they need to go to appeals.<br>RA continued to work on the bank documents. |
| 10/9/2014 | | | | POA called and said that he did not send her W-9 and he will follow up with corporation and let RA know by Tuesday. |
| 10/10/2014 | | | | RA continued working on the deposit detail. |
| 10/15/2014 | | | | POA Horowitz called and said that he has asked Mr. Sung at the bakery regarding W-9s and he did not know what that was. POA said that happened because of Mr. Khim, preparer. He never told them that they need to keep those records.<br>RA called Mr. Khim at 213-736-6789:<br>1. Not involved with payroll because Wells Fargo Bank handled payroll<br>2. Never questioned payroll and never handled it<br>3. Looked at general ledger and took numbers; never questioned the numbers or the records kept |

CONT = Type of Contact   1. Field Visit   2. Telephone   3. Correspondence   4. Other (explain in remarks)
LOC – Location of Activity   T = Taxpayer Residence/ Business   R = Representative Office   O = Other (explain in remarks)   **Workpaper#: 100-1.10**

Form **9984** (Rev. 8-2005)      Catalog Number 92068W          publish.no.irs.gov        Department of the Treasury – Internal Revenue Service

USA - 013075

Taxpayer:                                                                TIN:

| Date (mmddyyyy) | LOC | CONT | Time on Activity | Remarks, Notes, Actions Taken |
|---|---|---|---|---|
| 10/21/2014 | | 3 | | RA spoke with POA Horowitz and asked him:<br>• QB backup from the inception. POA said that he thought that was provided. RA said it was provided for 2009 to 2012 but they started paying for it in 2008. POA said that he will look into it.<br>• RA asked POA to find out how much wage did Laura received from Marina Enterprise and how much tax was paid on it. POA said that he will look into it and get back to RA.<br>RA and POA set up to let her know by Friday the answer or at least keep her posted on when the answer will be received.<br><br>RA also reviewed the interview and found 3rd contacts that will be made shorty. |
| 10/24/2014 | | | | POA called and said that he spoke with the taxpayer regarding QB backup for 2007 and 2008 years and she said that they will provide and that he will get response by Monday if the back up even available. |
| 10/27/2014 | | 4 | | Continue to work on the bank review for the accounts |
| 11/06/2014 | | 4 | | Continue to work on the bank review for the accounts |
| 11/26/2014 | | 4 | | Continue to work on the bank review for the accounts |
| 12/03/2014 | | 7 | | Continue to work on the bank review for the accounts |
| 12/19/2014 | | 8 | | Continue to work on the bank review for the accounts |
| | | | | POA called and wanted to know how the case was going since he heard that other shareholders have received some results. RA spoke with POA. POA asked about the status of the case. RA said that she is working on the report and that she is not issuing another IDR if the POA wants to provide more records he can. POA said that he will review his notes and let the RA know.<br>(b)(3)26 U.S.C. § 6103 |
| 03/18/2015 | | | | Started review and closure process for the case |
| 03/25/2015 | | | | RA bumped into Lavar Taylor and he asked about report. He said that they are willing to sign extension in order to go to appeals.<br>RA said that they have provided no source documents and that if they want a final chance, it's 1 weeks and that's it. |
| 03/26/2015 | | | | RA called POA and left him a voice mail. |
| 03/30/2015 | | 4 | | RA spoke with POA and said that she is willing to give him another opportunity to provide records. He said that he thought that she did not need any other records. RA reviewed the prior conversation with POA and he did not agree to what was said before. POA said that he will get back to RA by mid-week to let her know if there are more records. RA said that they have not provided logs, 2012 records or substantiation for large number of expenses.<br>RA reviewed the records provided before for property tax, legal expenses and vehicle purchase documents. No logs were found in the records. |
| 3/31/2015 | | 8 | | RA called Michael Khim regarding 2012 return. He forwarded the call to Grace Wang. She said that the information that she has placed on the tax return is from the bank statements from Korea and financial statements of those |

CONT = Type of Contact  1. Field Visit  2. Telephone  3. Correspondence  4. Other (explain in remarks)<br>LOC – Location of Activity  T = Taxpayer Residence/Business  R = Representative Office  O = Other (explain in remarks)  **Workpaper#: 100-1.11**

Form **9984** (Rev. 8-2005)      Catalog Number 92068W      publish.no.irs.gov      Department of the Treasury – Internal Revenue Service

USA - 013076

Taxpayer:                                                                                     TIN:

| Date (mmddyyyy) | LOC | CONT | Time on Activity | Remarks, Notes, Actions Taken |
|---|---|---|---|---|
| | | | | companies. RA asked her to send that information to her and she said that she will within a week.<br>RA also attempted to reconcile tax returns to the QB data and financial statements provided.<br>RA also reviewed the detail transactions from the QB for purchases and reviewed the records received previously from POA. |
| 04/02/2012 | | | | RA send a letter to get statute extension consent for each of the years. |
| 04/08/2015 | | | | RA received 48 page letter from POA. See comments section for each of the POA's points. RA does not agreed with many statements made by POA. |
| 05/27/2015 | O | 4 | 8 | RA met with FTA and Manager regarding potential fraudulent aspect of this case.<br>Manager has advices revenue agent not to contact representative nor the taxpayer and longer, but to use other ways to proof our position.<br>Discussion was held about international aspect of this case and Rent, which are potentially fraudulent issues.<br>The RA has to do the following:<br>  a.  Summary spreadsheets for the domestic accounts<br>  b.  EOI request for taxpayer to Korea<br>  c.  Rent expense summary package for this issue<br>  d.  Go to interview preparer again about 2012 return filling.<br>  e.  Research Korean corporate law<br>  f.  Check filling of 2013 return and if it's not filed pick it up<br>  g.  Check out filling for siblings and see if there are any interviews that must be done in LA<br>RA worked on the above to do list. |
| 08/02/2015 | | 3 | 4 | Ra finished EOI request and submitted to the manager.<br>Checked filling for taxpayer. 2013 return was filled 10/21/2014; 2014 has an extension filled for 10/15/2015.<br>Researched Korean tax laws to see what is their rate of tax and what is their corporate structure. |
| 08/09/2015 | O | 3 | 3 | RA decided to expand this audit to 2013 year. Filled out 5345D and gave it to the manager to approve.<br>Also:<br>  •  Send out 2205A for 2013 year to the last INOLES abode which is Los Angeles<br>  •  Completed 4 summons to WFB and Wilshire Bank for 2012 and 2013 years<br>  •  Prepared analysis year to year for 1040 from 2005 to 2012 years |
| 07/14/2015 | | | 4 | RA prepared for the interview with M. Khim and his preparer next day.<br>  •  Updated questions<br>  •  Prepared returns and tabbed questioned sections<br>  •  Send an update to the Monica Polo.<br>  • |
| 07/15/2015 | | | 3 | RA and Monica Polo, counsel, had an interview with Michael Khim and his preparer Ms. Wang. See summary of the interview.<br>RA prepared a detail summons for Michael Khim and his records. Send this summons to counsel, Monica Polo, for review and input. |

CONT = Type of Contact   1. Field Visit   2. Telephone   3. Correspondence   4. Other (explain in remarks)
LOC – Location of Activity   T = Taxpayer Residence/ Business   R = Representative Office   O = Other (explain in remarks)   **Workpaper#: 100-1.12**

Form **9984** (Rev. 8-2005)      Catalog Number 92068W      publish.no.irs.gov      Department of the Treasury – Internal Revenue Service

USA - 013077

Taxpayer:                                                    TIN:

| Date (mmddyyyy) | LOC | CONT | Time on Activity | Remarks, Notes, Actions Taken |
|---|---|---|---|---|
| 07/28/2015 | | | | RA emailed Monica Polo to follow up on the summons for M Khim |
| 07/29/2015 | | | | RA did not hear anything back from counsel, so called her and left her a voice mail. |
| 08/03/2015 | | | | RA send a summons to M Khim |
| 08/24/2015 | O | O | 2 | RA reviewed the detail for Korean withdrawal and converted amounts from Korean money to US dollars. |
| 08/27/2015 | | | | M Khim called and asked for the extension of time on the summons for 09/18/2015. |
| 09/10/2015 | | | | RA received a letter from POA's office from Lisa. She said that they want to get records form M Khim 1ˢᵗ and he claims privilege and then they will provide those records. RA called and left her a voice mail saying that she does not agree with that and she will not allow that to happen and that she will pursue this to the full extent of the law allowed and if necessary they can get attorneys involved.<br>RA left a voice mail for Monica Polo regarding this letter. |
| 09/29/2015 | | | | Package was received from POA's office in reference to IDR#6 that was issued 04/22/2015.<br>No records have been received from M. Khim. |
| 10/16/2015 | | | | RA received a call from J Vetrana. He said that he is trying to catch up on the case and wants to work with RA to close this case.<br>RA called him back and said that he needs to send her a POA form updated for 1040 and offshore. Also he needs to get filled in on the case with other attorneys and that she will not start the case over again. |
| 10/23/2015 | | | 8 | RA worked on reviewing records received from POA on 09/29/2015. The letter attached to that package repeated the statement that the offshore records will be provided at the later point.<br>POA called on 10/18/2015 and appointment scheduled for 11/09/2015. He is coming in to discuss the case and what it would take to get this resolved.  At this point of the audit every letter received from POA state that something will be provided at the later point. |
| 11/09/0215 | O | O | 6 | POA came out to meet with RA.<br>RA reviewed the past out with him including adjustments to be made for 1120S and 1040. The discussion was held regarding FBARs and how POA thinks it's non-willful and why RA thinks that it would be:<br>   a.  Lack of cooperation for the records providing<br>   b.  The only year filed 2012 and nothing before or after<br>   c.  Taxpayer lives mostly offshore and never told CPA about her accounts or companies<br>RA asked POA if they will sign a statute extension for 2009 FBAR and he said that most likely yes they will.<br>Also, RA said that she will mail out bank analysis today with spread-sheet of records provided versus asked. no more IDRS will be issued.<br>RA said that POA can review it and get back to RA to schedule a final appointment for the records and explanations.<br>POA asked if RA would create a final IDR and RA said no. She and counsel, Monica Polo, told him to concentrate on the proposed adjustments for the company and additional income being proposed. After that meeting RA will issue 30 day letter with final report. RA had a discussion with the manager on |

CONT = Type of Contact   1. Field Visit   2. Telephone   3. Correspondence   4. Other (explain in remarks)

LOC – Location of Activity   T = Taxpayer Residence/ Business   R = Representative Office   O = Other (explain in remarks)   **Workpaper#: 100-1.13**

Form **9984** (Rev. 8-2005)      Catalog Number 92068W      publish.no.irs.gov      Department of the Treasury – Internal Revenue Service

USA - 013078

Taxpayer:                                                                                        TIN:

| Date (mmddyyyy) | LOC | CONT | Time on Activity | Remarks, Notes, Actions Taken |
|---|---|---|---|---|
| | | | | this and he agreed that final report with 30 days should be sent after the final meeting.<br>RA send:<br> a. Bank deposit analysis for corporation and the personal account to explain unreported and unexplained deposits<br> b. Payments from CBSI to the taxpayer<br> c. Index of records received and not received<br><br>RA scanned the Korean records received from M Khim and send it for translation. |
| 11/13/2015 | | | | POA Jonathan called and said that he is working on gathering information for the company's adjustments. He said that he did receive reconciliations RA send and he is also recommending taxpayer to sign FBAR statute extension. He said that he will check to see if there are records for these adjustments before he confirms the appointment with RA.<br>Appointment scheduled for 12/14 at 11am in Santa Ana office. This will need to be confirmed. |
| 12/10/2015 | | | | Spoke with Jonathan POA. He cancelled appointment for Monday.<br>He said that he was able to reconcile wages to the return for the company and that he will show that to revenue agent.<br>Then he said that the commissions are on the transaction journal and he can document those. RA said sand her a journal and she will pick a sample and will get back to POA tomorrow.<br>He said that the cost of labor is divided in 2 parts: office and bakery. He said that everyone receives W-2 for these individuals and he will send RA reconciliation. |
| 12/11/2015 | | | | RA spoke with POA and pick a sample from commission expense since POA wants to pull records to substantiate this deduction. |
| 1/27/2016 | | | | Had a discussion with the manager regarding statute for Laura's French baking company for 2012. Was informed to wait till March to statute the statute to alpha code and to solicit extension of time from POA/taxpayer |
| 03/14/2016 | | | 4 | RA had a discussion with the manager regarding changing statute for Laura's French Baking company to GG statute.<br>RA started to work on the work-papers for the case closure |
| 04/13/2016 | | | 4 | RA worked on the bakery and preparing of the meeting with counsel regarding fraud penalty on this case. |
| 05/10/2016 | | | 6 | RA has received records from Korea. Scanned it and send it in for translation. Also:<br> a. Continued to work on the civil fraud write up<br> b. Continued to pull the attachments for the fraud write up<br> c. Emailed counsel again regarding legal standing for real estate properties and other expenses position.<br> d. |
| 05/11/2016 | | | | RA received a call from POA<br>RA called him back and left a voice mail |
| 07/14/2016 | | | | RA received a call from POA. |
| 05/16/2016 | | | | Called POA and left him a voice mail. |

CONT= Type of Contact  1. Field Visit  2. Telephone  3. Correspondence  4. Other (explain in remarks)
LOC – Location of Activity  T = Taxpayer Residence/ Business  R = Representative Office  O = Other (explain in remarks)  **Workpaper#: 100-1.14**

Form **9984** (Rev. 8-2005)        Catalog Number 92068W        publish.no.irs.gov        Department of the Treasury – Internal Revenue Service

USA - 013079

Taxpayer:                                                    TIN:

| Date (mmddyyyy) | LOC | CONT | Time on Activity | Remarks, Notes, Actions Taken |
|---|---|---|---|---|
| 06/02/2016 | | | 4 | RA continued to work on the write up for the case (LAUR1120S) |
| | | | | RA received records from Korea and submitted it for translation |
| 10/11/2016 | | | | RA received records from EOI Korea translation |
| 10/12/2016 | | | 3 | RA started review of the received records and case closure |
| 10/18/2016 | | | 6 | RA started working on case closure and adjustments for the bakery |
| 10/19/2016 | | | 8 | RA worked on lead-sheets and adjustments for the bakery. RA met with the manager and discussed the detail for each adjustment and the documentation present: For the bakery: ❖ Payroll is correctly adjusted ❖ Commission is correct when it comes to percentage used ❖ Unreported income is properly adjusted<br><br>For Personal 1040: ❖ Wages are properly adjusted ❖ Interest and dividend is good according to Korean returns ❖ Take the deposits in the offshore accounts and subtract reported amounts on Korean returns and tax the difference at other income level<br>Once the reports are completed, manager will call POA to discuss adjustments and then issue 30 day letter to close the case.<br><br>Also 2010 should be placed into YY because of the non-filling of 5471 forms. |
| 10/20/2016 | | | 8 | RA worked on lead-sheets and work-paper for case closure |
| 10/21/2016 | | | 8 | RA worked on lead-sheets and work-paper for case closure |
| 11/03/2016 | | | | POA Amitrano called and asked about the progress of the case. RA told him that she is discussing the case with the manager on Tuesday and that FBAR portion already went to the council for review. |
| 11/08/2016 | | | 2 | RA met with manager and gave him all the completed lead-sheets and work papers to be discussed with POA in order to see whether they are agreeing or not with the adjustments. |
| 11/17/2016 | | | 3 | POA and Manager spoke regarding the case. Manager said that RA will send POA lead-sheets and 1st page of the RAR. He also said that penalties will be reviewed at the later date and that FBAR has not come back from council yet. POA asked if fraud was approved by council and manager said that council wants us to see if we can get this case agreed prior to finalizing that part. Manager told RA to send 10 day letter to POA with lead-sheets and 1st page of the RAR.<br><br>RA has sent that to POA today. RA made copies of all work-papers and reports and prepared the mailing package consisting of 4 envelops. The package is sent out on 11/18/2016. |

CONT = Type of Contact   1. Field Visit   2. Telephone   3. Correspondence   4. Other (explain in remarks)
LOC – Location of Activity   T = Taxpayer Residence/ Business   R = Representative Office   O = Other (explain in remarks)        **Workpaper#: 100-1.15**

Form **9984** (Rev. 8-2005)        Catalog Number 92068W        publish.no.irs.gov        Department of the Treasury – **Internal Revenue Service**

USA - 013080

Taxpayer:                                                                      TIN:

| Date (mmddyyyy) | LOC | CONT | Time on Activity | Remarks, Notes, Actions Taken |
|---|---|---|---|---|
| 12/05/2016 | | | | Manager received a call from POA asking for the backup records to see the source for the adjustment for "other income". Manager called back and said that RA will look into getting records to the POA for review. |
| 12/06/2016 | | | | RA called Floyd Penn Jr, EOI manager.  She send him all the Korean documents to review and to give the approval to provide to that taxpayer. He said that it should not be a problem once we get a written request from POA. RA called POA and asked for a written request and POA said that it will be done today. |
| 12/07/2016 | | | | RA received an approval from EOI manager to provide records to the POA for the adjustment . RA sand a thumb drive to POA with applicable records to "Other income" adjustment. |
| 12/14/2016 | | | | RA received a call from POA stating that the thumb drive got lost and if she could send another. RA sent another thumb drive to POA. |
| 10/19/2016 | | | | RA received a message from POA at 5:30pm from Saturday on 10/17/2016. RA called POA back and left him a voice mail to call back. |
| 12/21/2016 | | | | RA received a message from POA from 12/20/16 at 4:40pm. RA called the POA back and he asked what was the source of her numbers on the spreadsheet and he is getting statements he received translated now. RA said that once these are translated then he will see the numbers on the statements. POA said that he understood and that he is working on getting this all translated and reviewed. RA has verified that council has all the records for the reviewing of fraud memo. Spoke with council and she was reviewing records to let RA know if she is on the right path. Per manager's request the response from POA is due on 01/05/2017. |
| 12/29/2016 | | | | RA had a phone conversation with council regarding FBAR memo. |
| 01/04/2017 | | | 2 | Organizing and printing work-papers for the operational review |
| 01/05/2017 | | | | RA received a fax from POA asking for more records to substantiate the adjustments. RA had a discussion with the manager and discussion was reached to send out 30 day letter and close the case. RA sent out a follow up to council to see if she is on the right track with this case for fraud. RA called POA and left him a voice mail to call back. RA wanted to tell him that either he signed statute extension and get another 3-4 weeks to review records or RA will issue 30 day letter and then case will be stat noticed. This was agreed upon with manager. |
| 01/09/2017 | | | 4 | RA worked on updating the fraud memo and emailed it to council. RA also updated the calculation and made sure that the numbers can traced to original records. |
| 01/10/2017 | | | | RA called POA again and left him a voice mail stated that he either calls her back today or she will make a decision for him. This was about 30 day letter. |

CONT = Type of Contact   1. Field Visit  2. Telephone   3. Correspondence  4. Other (explain in remarks)
LOC – Location of Activity   T = Taxpayer Residence/ Business   R = Representative Office   O = Other (explain in remarks)   **Workpaper#: 100-1.16**

Form **9984** (Rev. 8-2005)       Catalog Number 92068W        publish no.irs.gov        Department of the Treasury -- Internal Revenue Service

USA - 013081

Taxpayer:                                                                                      TIN:

| Date (mmddyyyy) | LOC | CONT | Time on Activity | Remarks, Notes, Actions Taken |
|---|---|---|---|---|
| | | | | RA spoke with POA and he is coming to see RA on 01/19 at 10:30am to get all the missing documents for the case. RA said that she will send out the statute extension today. RA sent out F872 to POA and told him to bring it back with him on the 19ᵗʰ meeting. |
| 01/19/2017 | | | 3 | RA met with POA. She gave him/copied on thumb drive all the information that he said that he needs for the "other income" adjustment. Those records included all translated and not translated records, Korean tax returns, FBAR calculations, analysis work paper for the other income adjustment. The agreement was reached that the response will be due from POA on 02/02/2017. |
| 01/23/2017 | | | | RA spoke with POA and he said that he is reviewing records provided and he said that he sees the wages, dividends and interest from Korea returns and they concede to NOL adjust; therefore the only adjust that they have an issue with is other income and he is working on that now. |
| 02/03/2017 | | | 8 | RA received a voice mail and a fax from POA. He requested additional 4 weeks and conceded to the adjustments sourced from Korean tax returns. He requested the due date for the information to be 3/3/2017. RA spoke with the manager and he said that he would approve 4 days unless RA has objection but the condition is to receive F872 as appropriate. He called POA and left him a voice mail. RA worked on all the applicable exhibits for the case and referencing exhibits. Manager said that he left a voice mail for POA. |
| 02/06/2017 | | | 8 | RA worked on foreign tax credit and spreadsheet. Researched on how it works and created spreadsheet converting WON into $ for each of the Korean source of income. |
| 02/10/2017 | | | | POA called again and left a message for RA regarding request for more time. RA called him back and left him a voice mail. RA spoke with POA and he agreed to wages from Korean tax returns. Also, he asked if more records were received from Michael Khim. RA told him that he needs to provide whatever necessary to show his position. The due date of the records that needs to provide is 3/3. POA agreed. |
| 02/17/2017 | | | 3 | RA spoke with: a. Ben Thomkins AUSA b. Monica Polo c. Michael Khim d. Jonathan Amitrano RA received contact from AUSA asking about interviewing M Khim once more. RA spoke with council, Monica Polo and was advised to speak with him again since this is from the summons enforcement. RA called M Khim and scheduled an appointment for 3/21 at 10:30am. Also, asked Monica to have an appointment prior to the meeting on 3/14 to review questions prior to the meeting. Mr. Amitrano asked to attend the interview and RA referred him back |

CONT = Type of Contact   1. Field Visit   2. Telephone   3. Correspondence   4. Other (explain in remarks)
LOC – Location of Activity   T = Taxpayer Residence/ Business   R = Representative Office   O = Other (explain in remarks)   **Workpaper#: 100-1.17**

Form **9984** (Rev. 8-2005)        Catalog Number 92068W              publish.no irs.gov          Department of the Treasury – Internal Revenue Service

USA - 013082

Taxpayer:                                                          TIN:

| Date (mmddyyyy) | LOC | CONT | Time on Activity | Remarks, Notes, Actions Taken |
|---|---|---|---|---|
| | | | | to AUSA to discuss that. AUSA and RA has discussed this and decided that it would not be reasonable for POA to attend this meeting. RA contacted GSA in Los Angeles to get room for the meeting and left a voice mail at 213-894-3742 - GSA Front Office, 4th Floor, Room 4300 – to pick up the key. This correspondence has been forwarded to the manager for information purposes. |
| 02/27/2017 | | | | RA received a voice mail from POA. |
| 02/28/2017 | | | 2 | RA spoke with POA and he asked for the extension of time till 3/8. RA said that is the final reschedule and POA agreed. RA followed up on the FBAR memo with council. |
| 03/10/2017 | | | 8 | RA started to review records that were received from POA. Spoke with POA and he said that: <br> a. Other income number that RA gave the summarized numbers are the once that they agree is taxable and the rest are non-taxable and the source documents are attached just need to be translated. <br> b. He said that he will discuss FBAR with manager <br> c. He also said that except for the flow-through they agree with other numbers. RA said that since she was selected for jury duty now he got two more weeks for the flow-through and for protest letter regarding income and FBARs. <br> d. RA also said that once she translates attached records and find all the source explanations for the "other income" portion then decision will be made at that point. <br><br> RA worked on exhibiting all the documents for the case closure and for the review to be able to have all the documents appropriate for each adjustment. The translation request will be submitted shortly as well. <br><br> RA spoke with the manager and advised to: <br> a. Review records and have POA translated <br> b. Review each point with POA after translation is done to understand every adjustment and every number <br><br> RA left a message for POA: <br> a. Get translation urgently <br> b. Also get her calculation for FTC. RA was working on getting this calculated as well. |
| 03/24/2017 | | | 4 | RA worked on preparing for the interview for M. Khim that is scheduled for 4/6. This interview was due to summons enforcement through AUSA Ben Thomkins. It is scheduled in LA's office with Monica Polo and Simon Bonilla to be present. |
| 03/29/2017 | | | | POA Amitrano called and asked for another extension of time to provide records in response documents provided to him in order to explain "other income" adjustment. |
| 03/30/2017 | | | | RA received a package from POA with short stack and nothing regarding FBARs. |

CONT= Type of Contact  1. Field Visit  2. Telephone  3. Correspondence  4. Other (explain in remarks)
LOC – Location of Activity  T = Taxpayer Residence/ Business  R = Representative Office  O = Other (explain in remarks)     **Workpaper#: 100-1.18**

Form **9984** (Rev 8-2005)     Catalog Number 92068W          publish no.irs.gov          Department of the Treasury – Internal Revenue Service

USA - 013083

Taxpayer:                                                                                              TIN:

| Date (mmddyyyy) | LOC | CONT | Time on Activity | Remarks, Notes, Actions Taken |
|---|---|---|---|---|
| | | | | RA asked a Korean RA to translate and to explain what was presented. Both RAs agreed that there is nothing in those records that explain why "other Income" is not taxable. |
| | | | | The records received were in Korean and not translated. |
| 04/05/2017 | | | 4 | RA was preparing for the meeting including printing and copying all necessary records. |
| 04/06/2017 | | | 10 | RA was in LA with manager and council interviewing M. Khim. The memorandum of this interview is in the 3rd parties interviews section. |
| | | | | RA updated fraud memo and discussed the previous appointment with manager. |
| | | | | It would be case efficient to interview Charlie Son and to get his interview memorialized. |
| 04/07/2017 | | | 8 | The final steps for this case: a. To get interview with Charlie Son b. Get final records translated c. Receive a court reported memorandum for M. Khim. |
| 04/12/2017 | | | | RA, Sandy Lee, from LA contacted RA regarding serving the summons to Charlie Son. She will be serving this summons either on 13th or 14th. The summons will be due on 5/4 and the meeting will be held in Los Angeles POD. |
| 04/26/2017 | | | | RA received a voice mail from POA asking for the name of the TM since he said that he cannot reach GM. RA went into manager's office and manager said that he called him twice and no response. RA did not call the POA back because manager did. |
| 04/28/2017 | | | 8 | RA started to work on exhibits for this case and to reference and trace each transaction to have source documents for the upcoming meetings. |
| 05/11/2017 | | | 8 | Manager received a called from POA asking about 30 day letter agreement RA and Manager interviewed Charlie Son. Please see interview for the detail. |
| | | | | Gap in time due to acting assignment for the revenue agent and the work on FBAR case. |
| 06/23/2017 | | | | RA left a voice mail for POA per instructions from manager and told him that the she will work on FBAR 1st because of his appeals letter and then income portion and the appointment will be scheduled with him about income case. |
| 06/26/2017 | | | | Manager called POA and left him a voice mail after receiving response from his manager. Apparently POA recently has contacted territory manager as well. |
| | | | | Manager has told POA that we are waiting for the records to be translated before we wrap things up. |
| 07/05/2017 | | | | Records received from POA was sent for the translation to the Korean agent |
| 07/19/2017 | | | | RA reviewed returns, IMFOLTs and fraud memo according to manager's request. Reviewed alpha code statute for this case. |
| 08/08/2017 | | | | RA received records from FTA with form and send him lead-sheet and work paper for fraud |
| 08/15/2017 | | | 1 | RA had a 4502 review and the recommendations from the manager was: a. This case is priority for closure |
| 08/16/2017 | | | 7 | Laura's bakery work on closing the case |

CONT= Type of Contact   1. Field Visit   2. Telephone   3. Correspondence   4. Other (explain in remarks)
LOC – Location of Activity   T = Taxpayer Residence/ Business   R = Representative Office   O = Other (explain in remarks)      **Workpaper#: 100-1.19**

Form **9984** (Rev. 8-2005)      Catalog Number 92068W      publish.no.irs.gov      Department of the Treasury – Internal Revenue Service

USA - 013084

Taxpayer:                                                    TIN:

| Date (mmddyyyy) | LOC | CONT | Time on Activity | Remarks, Notes, Actions Taken |
|---|---|---|---|---|
| 08/17/2017 | | | 4 | Continue on working on case closure |
| 09/12/2017 | | | 6 | Continue to work on the case closure |
| 09/13/2017 | | | 6 | Final touch ups to close the case. |
| | | | | |
| | | | 99 | 2010 case time |
| | | | 97 | 2011 case time |
| | | | 88 | 2012 case time |
| | | | 281 | Total case time for bakery |
| | | | | |
| 09/25/2017 | | | 6 | RA worked on 1040 closure; including all lead-sheets and exhibiting documents |
| 10/04/2017 | | | 4 | RA continued to work on the case closure. |
| 10/05/2017 | | | 8 | RA continued to work on the case closure. |
| 10/19/2017 | | | | RA continued to work on the case closure. |
| 11/06/2017 | | | 8 | RA continued to work on the case closure. |
| 11/15/2017 | | | 7 | a.  Met with manager to review "other income" adjustment and workpapers that attached to that adjustment<br>b.  Continued to put the case together and fixing issues<br>c.  Reviewed FTC and started to review if the adjustment would be allowed<br>d.  Reconciliation of the issues to the summary page |
| 11/16/2017 | | | 4 | Continued to put the case together and to reconcile missing issues. Tracing down all the translations and finding that no more official translation would be allowed for this case.<br><br>Researching insurance proceeds legal information |
| 11/30/2017 | | | 3 | Continue to put the case together. |
| 12/07/2017 | | | | RA called POA Amitrano to set up an appointment and left a voice mail. |
| 12/14/2017 | | | | Emailed the manager with the contact for POA since no call was received. |
| 12/18/2017 | | | | RA reviewed IMFOLT per manager's instructions for the statutes.<br>The email received from the manager:<br>"I'm left a message on his voice mail. His voicemail stated was out of the country, and would return on December 4th.  The receptionist stated he was in a meeting. The message I left stated I was calling because you had not received a return call. You had |

CONT = Type of Contact   1. Field Visit   2. Telephone   3. Correspondence   4. Other (explain in remarks)
LOC – Location of Activity   T = Taxpayer Residence/ Business   R = Representative Office   O = Other (explain in remarks)   **Workpaper#: 100-1.20**

Form **9984** (Rev. 8-2005)       Catalog Number 92068W       publish.no.irs.gov       Department of the Treasury – Internal Revenue Service

USA - 013085

Taxpayer:                                             TIN:

| Date (mmddyyyy) | LOC | CONT | Time on Activity | Remarks, Notes, Actions Taken |
|---|---|---|---|---|
| | | | | called him to setup a closing conference. This was the commitment made to him some time ago. I asked him to call you (Ella) to setup an appointment. I stated he should let you know if he would like me to be present. If not, you and another agent will be present, if he so chooses to have the closing conference. Please document you case history. We will wait until Wednesday morning. If he has not return the call I will inform the acting TM, and you can commence closure of the case., Or if it is ready to close, then you can turn it in for closure. I will be out of office for two weeks. You can either close it while I'm gone, or hold it until my return. Whichever way is your choice." |
| 12/19/2017 | | | | RA heard the voice mail from J. Amitrano left on 12/18/2017 at 5:04pm. He requested manager to be present at he interview and asked for the details. |
| | | | | Closing conference scheduled for 01/31/2018 in San Diego location. |
| 01/08/2018 | | | 5 | Closed 1040 and 1120S to the manager. Printed closing reports and IDRS and completed labeling binders. |
| 01/30/2018 | | | 4 | RA prepared for the closing conference. |
| 01/31/2018 | | | 4 | RA and manager met with POAs and the following has occurred:<br>a. RA has reviewed every adjustment made on report for this taxpayer. She has reviewed every work paper and every attachment with the POA except for the once that they have waived their rights to review.<br>b. The following things were discussed:<br>  1. Started with salary adjustment and traced to tax returns and reviewed the increase from previous adjustment due to pension. POA said that they will review Korean returns and figure out whether $50,582,415 should be adjusted out of total salary on Korean returns. POA said that there is no issue with this adjustment.<br>  2. Interest income – POA said that there is no issue with this adjustment and they are conceding to this adjustment<br>  3. NOL is the issue that is conceded<br>  4. Passive activity adjustment<br>    a. COG adjustment probably will concede to this adjustment<br>    b. Auto expense – not sure about this expense since they have provided logs; they have to review the records and figure that out.<br>    c. POA said that they will not be making final decision during this day and will need time to figure it out.<br>    d. Commissions – POA said that they will provide more information<br>    e. Other expense adjustment – will review and possibly provide more information<br>    f. Gross receipts – reviewed this adjustment. POA's position is |

CONT = Type of Contact   1. Field Visit   2. Telephone   3. Correspondence   4. Other (explain in remarks)
LOC – Location of Activity   T = Taxpayer Residence/ Business   R = Representative Office   O = Other (explain in remarks)   **Workpaper#: 100-1.21**

Form **9984** (Rev. 8-2005)      Catalog Number 92068W      publish.no.irs.gov      Department of the Treasury – Internal Revenue Service

USA - 013086

Taxpayer:                                                    TIN:

| Date (mmddyyyy) | LOC | CONT | Time on Activity | Remarks, Notes, Actions Taken |
|---|---|---|---|---|
| | | | | that bakery maintained books and records and receipts could have been off by 1.5% and not sure why that would be |
| | | | | g. Tax – adjusted for real estate tax but thinks that this might be deductible on schedule A however more records will be provided |
| | | | | h. Gifts – POA will review the detail |
| | | | | i. Consulting fees – RA said that there was no 1099s filled but POA said that they will need to review for more records |
| | | | | j. Attorney said that personal and Korean records are separate and that taxpayer was not there to oversee the bakery and she was not aware of operations. She might have negligence for not overseeing the business. If the returns were prepared wrong she would not know about it. |
| | | | | 5. Dividend Income - POA said that there is no issue with this adjustment and they are conceding to this adjustment |
| | | | | 6. Rental Income - POA said that there is no issue with this adjustment and they are conceding to this adjustment |
| | | | | 7. adjustment and they are conceding to this adjustment |
| | | | | 8. FTC allowed – agreement on that |
| | | | | 9. Construction dividend – 2010 and 2011 amounts and POA has no issue with these funds but they don't know about 2012 and will have to review it |
| | | | | 10. Refunds – most likely will agree but have to review records to confirm |
| | | | | 11. CPA firm prepared numbers and translated things from Korean. POA would need to review records in detail. They rely on translation provided. |
| | | | | 12. Fraud penalty – they don't agree with this penalty |
| | | | | 13. Other income – reviewed record previously provided. B3 page showed deposit for 2,072,549 and the funds that were taken out and redeposited; however, revenue agent already allowed it as nontaxable income. The funds originated from prior year and therefore the agent allowed it as nontaxable. POA said that they will get more records for the transaction that appeared as funds taken out. POA claimed that they were withdrawn and then redeposited. However, POA will get more records to show that transaction and proof. |
| | | | | c. At the end of the meeting, RA have provided POA with stature extension for 2012 year and 10-day letter that is due back on 2/12. |
| | | | | d. Also, the following records were requested: |
| | | | | 1. Statute extension for FBARs |
| | | | | 2. Interview of M. Khim and all applicable notes |
| | | | | 3. Interview of Laura Kim |
| | | | | 4. All 3rd parties interviews |
| | | | | RA has called council and emailed her to get assistance on: |
| | | | | a. Should the interview of 3rd parties be provided |
| | | | | b. Also, because the POA will agree to some adjustment however there is a fraud penalty should the case be split. Manager concurred that it should not be because of the fraud penalty and the fact that POA will not agree to that penalty. |

CONT = Type of Contact   1. Field Visit   2. Telephone   3. Correspondence   4. Other (explain in remarks)
LOC – Location of Activity   T = Taxpayer Residence/ Business   R = Representative Office   O = Other (explain in remarks)   **Workpaper#: 100-1.22**

USA - 013087

Taxpayer:                                                          TIN:

| Date (mmddyyyy) | LOC | CONT | Time on Activity | Remarks, Notes, Actions Taken |
|---|---|---|---|---|
| 02/01/2018 | | | 3 | RA worked on writing the above summary of the prior day meeting Speaking with manager regarding split the case or not. Manager said since there is a fraud penalty the case should not split since POA will not agree to fraud. |
| 02/08/2018 | | | 2 | RA received a call from the manager. POA called the manager to discuss reports. Manager said that POA should be calling the agent to discuss adjustments and for agent to call him to let him know and to schedule an appointment to discuss these adjustments.<br>RA called the POA and left him a voice mail to schedule a meeting with all the adjustments<br>POA called back and the appointment was scheduled for 2/28 in Santa Ana office of the POA. Council Monica Polo and manager Simon Bonilla are scheduled to attend that meeting.<br>2pm manager received a call again from POA. Manager called RA back and said that he wants to be present for the meeting with council to be sure that we have enough for fraud. Manager said to invite him to the meeting with council on 12th.<br>RA discussed alternative numbers without income adjustment and discussed with the manager about the meeting with council and Korean accountant/RA. |
| 02/12/2018 | | | 4 | RA met with council, translating agent and manager. The issue discussed was "other income adjustment".<br>Additional analysis to do:<br>   a.   List of precise unagreed deposits<br>   b.   List of the accounts processed by IRS vs POA<br>   c.   Match the balances of their accounts and figure out exactly which translation are not agreed with<br>RA started working on the above suggested analysis. |
| 02/14/2018 | | | | RA received a call from POA asking whether to send in statute extension for 2012 or hold it till their meeting. RA called back and said to mail it or will pick it up on 28th. POA said that they will mail it. |
| 02/26/2018 | | | 8 | RA had a discussion with the manager regarding this case:<br>   a.   Could not reach council to answer question about interviews and provision of the 3rd party notes/interviews. Manager called and left a voice mail. Waiting for response.<br>   b.   Letter from POA regarding interviews for the FBAR – pertaining to reaching council<br>   c.   Interpreter said that he will not be able to attend the meeting due to family illness<br>   d.   Manager said to reschedule an appointment so that council and interpreter was able to be involved in the meeting.<br>   e.   RA emailed interpreter per manager's instructions and got the range of dates for the meeting.<br><br>RA called POA:<br>   a.   Informed POA about reschedule of the meeting and told him that she will send him detail on the "other income" adjustment. POA said that he does not care about her spreadsheets and the since the other income adjustment included business accounts and transfers. He said that he worked an entire weekend to prepare for the meeting and to |

CONT = Type of Contact   1. Field Visit   2. Telephone   3. Correspondence   4. Other (explain in remarks)
LOC – Location of Activity   T = Taxpayer Residence/ Business   R = Representative Office   O = Other (explain in remarks)      **Workpaper#: 100-1.23**

Form **9984** (Rev. 8-2005)      Catalog Number 92068W      publish.no.irs.gov      Department of the Treasury – Internal Revenue Service

USA - 013088

Taxpayer:                                                          TIN:

| Date (mmddyyyy) | LOC | CONT | Time on Activity | Remarks, Notes, Actions Taken |
|---|---|---|---|---|
| | | | | reconcile the differences and be able to present to the agent. RA said send it to her and he said that he would rather walk through it with the agent. |
| | | | | b. POA said that his FBAR 30 day letter is expiring soon and he cannot seem to get interviews from the agent and RA said that manager will be willing to give him more time for that 30 day letter because we are waiting for response from council on these interviews. |
| | | | | RA worked on updating spreadsheets and creating reconciliations for the deposits. |
| 02/27/2018 | | | | RA spoke with manager regarding counsel. He has received a call back but no answers at this time. Manager has instructed an RA to wait for response from counsel prior to reschedule final closing conference. |
| 02/28/2018 | | | 8 | RA updated all "other adjustments" spreadsheets. Updated and reconciled funds received into the accounts.<br><br>Discussed this adjustment with counsel. She wanted to see all the deposits and the decision made regarding each.<br>Counsel said that it was ok to provide all the interviews and notes. |
| 03/01/2018 | | | | RA discussed the case with the manager and the counsel. Manager has suggested to summarize account to be attached to the IDR#9 in the precise format to include the accounts that are available and that RA has in her procession.<br>RA discussed the case with the counsel and she has asked for the precise production of the differences that exist between RA's records for he deposits and POA's records for the deposits. |
| 03/07/2018 | | | 4 | Manager signed an updated FBAR 30-day letter because the package is being send to POA with all the requested interviews and notes<br><br>RA organized the package and send it to POA with all the interviews, notes, list of all accounts that we have in our procession and the IDR#9.<br><br>RA worked on the account listing by reviewing all the statements in the procession and updating the spreadsheet and IDR#9.<br><br>Send the package to the POA. |
| 03/08/2018 | | | | Manager called RA and asked her to call POA because POA left a voice mail for the manager and he can only call him back on Monday.<br>RA called the POA and wrote this email to manager, counsel and translator:<br><br>"I spoke with POA and he wants to present everything in the concise matter for all deposits and transactions and nontaxable. Therefore, I have decided to go to meet him and to see his presentation to make sure if we are on the same track or not. He said that he has created a package of everything and will walk us through all the details and he really wants to get this wrapped up. We did send him another IDR and he said that if we do decide to go that route then he just wants 30-day letter to get the case closed so that he can go to appeals. |

CONT= Type of Contact  1. Field Visit  2. Telephone  3. Correspondence  4. Other (explain in remarks)
LOC – Location of Activity   T = Taxpayer Residence/ Business   R = Representative Office   O = Other (explain in remarks)   **Workpaper#: 100-1.24**

Form **9984** (Rev. 8-2005)     Catalog Number 92068W     publish.no.irs.gov     Department of the Treasury – Internal Revenue Service

USA - 013089

Taxpayer:                                                                 TIN:

| Date (mmddyyyy) | LOC | CONT | Time on Activity | Remarks, Notes, Actions Taken |
|---|---|---|---|---|
| | | | | I have scheduled a tentative meeting on April 2nd at 10:30am in Santa Ana office. I hope you are all available to attend that meeting. Monica, I am working on what we have discussed and will be sending that to you shortly. |
| | | | | Please let me know if you have questions or concerns about this meeting, hopefully you can all attend. If not please let me know your schedule of availability. POA is very insistent to get this closed and done and I think we want the same thing. I will have 30-day letter available for that appointment to be signed". |
| 03/28/2018 | | | | Manager called POA and confirmed appointment for 4/2 and discussed nontaxable vs taxable deposits. Manager told POA that if they don't have any more records then the case will be closed as it is now. |
| 03/29/2018 | | | | RA prepared for the meeting scheduled on 4/2 in Santa Ana. |
| 04/02/2018 | | | 8 | RA, manager and Korean agent Young Shin went out to meet POA attorneys in their Santa Ana office.<br>The meeting was held regarding two main topics; one is Other income adjustment and second is the business adjustments.<br>For the other income adjustments; POA updated the binder that revenue agent provided at the previous meeting and added the statements that track transfers. According to the records provided by POA; taxpayer has large done large number of transfers between all the accounts to earn additional interest income. This shows her involvement with all the accounts. Please see fraud write up for the detail on this topic. POA has walked everything thought each transaction and showed the statement for each and how it was transferred.<br>For the business adjustments, POA still have not provided receipts or invoices. They have provided method of adjustment with receivable and payment for the gross receipt because of the accrual method of accounting that the taxpayer using.<br>Manager has agreed to provided 4/23 deadline to POA for the FBAR part of the examination. |
| | | | | Left for this case:<br>Updated and Re-print updated lead-sheets and workpapers for the business and other income adjustments.<br>Updated and Re-print report and submit 30-day letter to POA. |
| 04/10/2018 | | | | RA called the POA to follow upon the purchase journals and general ledgers that he was supposed to send to RA since it was not received at this time. RA left a voice mail for the POA. |
| 04/12/2018 | | | | RA discussed the case with the manager. Manager said to call POA once more and if he does not respond schedule to issue 30-day letter within few days. RA left a voice mail for the POA. |
| 04/16/2018 | | | | RA received a voice mail from the POA from 04/12/2018 8pm stating that he does not know why RA needs GL when, supposedly, it was provided to RA previously; however they have send out a package recently. |
| 04/23/2018 | | | | RA received a call from POA asking if she has received general ledger and asking when 30 day letter will be issued. |

CONT = Type of Contact   1. Field Visit   2. Telephone   3. Correspondence   4. Other (explain in remarks)
LOC– Location of Activity   T = Taxpayer Residence/ Business   R = Representative Office   O = Other (explain in remarks)   **Workpaper#: 100-1.25**

Form **9984** (Rev. 8-2005)     Catalog Number 92068W     publish.no.irs.gov     Department of the Treasury – Internal Revenue Service

USA - 013090

Taxpayer:                                                    TIN:

| Date (mmddyyyy) | LOC | CONT | Time on Activity | Remarks, Notes, Actions Taken |
|---|---|---|---|---|
| | | | | I have scheduled a tentative meeting on April 2nd at 10:30am in Santa Ana office. I hope you are all available to attend that meeting. Monica, I am working on what we have discussed and will be sending that to you shortly. |
| | | | | Please let me know if you have questions or concerns about this meeting, hopefully you can all attend. If not please let me know your schedule of availability. POA is very insistent to get this closed and done and I think we want the same thing. I will have 30-day letter available for that appointment to be signed". |
| 03/28/2018 | | | | Manager called POA and confirmed appointment for 4/2 and discussed nontaxable vs taxable deposits. Manager told POA that if they don't have any more records then the case will be closed as it is now. |
| 03/29/2018 | | | | RA prepared for the meeting scheduled on 4/2 in Santa Ana. |
| 04/02/2018 | | | 8 | RA, manager and Korean agent Young Shin went out to meet POA attorneys in their Santa Ana office. The meeting was held regarding two main topics; one is Other income adjustment and second is the business adjustments. For the other income adjustments; POA updated the binder that revenue agent provided at the previous meeting and added the statements that track transfers. According to the records provided by POA; taxpayer has large done large number of transfers between all the accounts to earn additional interest income. This shows her involvement with all the accounts. Please see fraud write up for the detail on this topic. POA has walked everything thought each transaction and showed the statement for each and how it was transferred. For the business adjustments, POA still have not provided receipts or invoices. They have provided method of adjustment with receivable and payment for the gross receipt because of the accrual method of accounting that the taxpayer using. Manager has agreed to provided 4/23 deadline to POA for the FBAR part of the examination.<br><br>Left for this case: Updated and Re-print updated lead-sheets and workpapers for the business and other income adjustments. Updated and Re-print report and submit 30-day letter to POA. |
| 04/10/2018 | | | | RA called the POA to follow upon the purchase journals and general ledgers that he was supposed to send to RA since it was not received at this time. RA left a voice mail for the POA. |
| 04/12/2018 | | | | RA discussed the case with the manager. Manager said to call POA once more and if he does not respond schedule to issue 30-day letter within few days. RA left a voice mail for the POA. |
| 04/16/2018 | | | | RA received a voice mail from the POA from 04/12/2018 8pm stating that he does not know why RA needs GL when, supposedly, it was provided to RA previously; however they have send out a package recently. |
| 04/23/2018 | | | | RA received a call from POA asking if she has received general ledger and asking when 30 day letter will be issued. |

CONT = Type of Contact   1. Field Visit   2. Telephone   3. Correspondence   4. Other (explain in remarks)
LOC – Location of Activity   T = Taxpayer Residence/ Business   R = Representative Office   O = Other (explain in remarks)   **Workpaper#: 100-1.25**

Form **9984** (Rev. 8-2005)      Catalog Number 92068W      publish.no.irs.gov      Department of the Treasury – Internal Revenue Service

USA - 013091

Taxpayer:                                                    TIN.

| Date (mmddyyyy) | LOC | CONT | Time on Activity | Remarks, Notes, Actions Taken |
|---|---|---|---|---|
| | | | | |
| 04/25/2018 | | | | RA received a call from POA at 5pm on 04/23/2018 stating that the appeals letter was send out this day in hard copy and electronic copy is faxed. RA worked on closing that part of the case to the manager. |
| 05/02/2018 | | | 8 | RA prepared 30-day letter and send it out to POA and taxpayer. The due date of the letter is 06/08/2018. |
| 05/30/2018 | | | | RA received a call from POA asking to confirm statutes. RA confirmed that they are all with over 365 days. |
| 06/12/2018 | | | 3 | RA received appeals letter and saw that some items were agreed to, therefore, created a partial assessment report with form 870 and mailed it to the taxpayer/POA to sign. RA send two first pages to POA.<br><br>Once that form is received:<br>    a.  Partial assessment for the agreed portion<br>    b.  Close the rest of the case to technical services. |
| 06/18/2018 | | | 1 | RA received a call from POA stating that he needs the rest of the report to check the calculations since RA only send him first two pages of 4549A. RA printed the complete report and send it to him with due date of 06/25/2018. |
| 06/25/2018 | | | | RA received call from POA regarding 870 and report. |
| 06/26/2018 | | | | RA received a call from the manager telling her that POA called him to discuss the report and was advised to call the agent. RA called the POA back and left him a voice mail. RA received a fax from POA stating that he wants to go to appeals because he has issues with reports and form 870. RA discussed the following situation with manager. Manager spoke with POA and he was not happy with the service received from the agent. He said that he received report on 6/22 with the due date of 6/25. He also said that he does not agree with RA's calculations. He said that he wants to have a meeting with the manager and TM regarding RA's conduct. Manager told POA that he will review the report and the lead-sheets and that he did not close FBAR report separately and it will be closed together with the income case. POA did not call the agent back. |
| 08/07/2018 | | | 2 | RA finished AMT update and adjustment. Send an updated report to the POA with the due date of 08/17/2018. |
| 08/15/2018 | | | 3 | Prepared return for closure and send it to the manager. |
| 08/22/2018 | | | | Received letter from POA regarding 6,200 pages of evidence provided in this case mentioned. There was no evidence in this volume provided on this case according to RA's records. Taxpayer has provided several items and it's detailed in the fraud section of the case filed and then after 30 day letter was issued, POA has provided two binders of the information for this case to substantiate income and explain some other adjustments. |
| 08/29/2018 | | | 4 | RA made all corrections made by the manager and send an updated report to the POA with 6 months extension RA called POA and left a voice mail |
| 08/31/18 | | | | RA received a voice mail from POA and call him back and left a voice mail. |

CONT = Type of Contact   1. Field Visit   2. Telephone   3. Correspondence   4. Other (explain in remarks)
LOC – Location of Activity   T = Taxpayer Residence/Business   R = Representative Office   O = Other (explain in remarks)   **Workpaper#: 100-1.26**

Form **9984** (Rev. 8-2005)      Catalog Number 92068W          publish.no.irs.gov          Department of the Treasury – Internal Revenue Service

USA - 013092

Taxpayer:                                                                    TIN:

| Date (mmddyyyy) | LOC | CONT | Time on Activity | Remarks, Notes, Actions Taken |
|---|---|---|---|---|
| 09/04/2018 | | | | RA spoke with POA and told him that the report keeps getting reissued every time there is a change with the numbers since it's procedure. POA demanded the case to be closed. He said that he will review the FTC one more time and that schedule E passive loss should not be 100% and therefore is not correct. RA said that she will review Schedule E. POA said that he will send the 872s back to RA signed. |
| 09/07/2018 | | | | RA sent an updated report to the POA with the corrected numbers. |
| 09/11/2018 | | | | POA Amitrano called manager and spoke regarding 100% error for the shareholder and FTC correction. Manager brought that up to RA and RA said that the updated report was sent to POA last week. |
| 09/12/2018 | | | | Case returned back to the manager |
| | | | | |
| | | | 295 hrs | 2010 time |
| | | | 958 hrs | 2011 time |
| | | | 175 hrs | 2012 time |
| | | | 1428 | Total time |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

CONT = Type of Contact   1. Field Visit   2. Telephone   3. Correspondence   4. Other (explain in remarks)
LOC – Location of Activity   T = Taxpayer Residence/ Business   R = Representative Office   O = Other (explain in remarks)   **Workpaper#: 100-1.27**

Form **9984** (Rev. 8-2005)      Catalog Number 92068W      publish.no.irs.gov      Department of the Treasury – Internal Revenue Service

Taxpayer:                                                TIN:

| Date (mmddyyyy) | LOC | CONT | Time on Activity | Remarks, Notes, Actions Taken |
|---|---|---|---|---|
| | | | | |

CONT= Type of Contact  1. Field Visit  2. Telephone  3. Correspondence  4. Other (explain in remarks)
LOC – Location of Activity   T = Taxpayer Residence/ Business   R = Representative Office   O = Other (explain in remarks)   **Workpaper#: 100-1.28**

Form **9984** (Rev. 8-2005)        Catalog Number 92068W        publish.no irs gov        Department of the Treasury – Internal Revenue Service

USA - 013094

Taxpayer:                                                         TIN:

| Date (mmddyyyy) | LOC | CONT | Time on Activity | Remarks, Notes, Actions Taken |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

CONT = Type of Contact   1. Field Visit   2. Telephone   3. Correspondence   4. Other (explain in remarks)
LOC -- Location of Activity   T = Taxpayer Residence/ Business   R = Representative Office   O = Other (explain in remarks)   **Workpaper#: 100-1.29**

Form **9984** (Rev. 8-2005)        Catalog Number 92068W           publish.no irs.gov           Department of the Treasury – Internal Revenue Service

USA - 013095

# Exhibit 177

Page 1

1              UNITED STATES DISTRICT COURT

2             CENTRAL DISTRICT OF CALIFORNIA

3                   WESTERN DIVISION

4     _____

5     UNITED STATES OF AMERICA

6             Plaintiff

7        v.                        Case No.

8     LAURA KIM                    2:21-cv-06746-FMO-KS

9             Defendant

10    _____

11             VIDEOCONFERENCE DEPOSITION OF

12                  ELLA CHERNYAK

13    DATE:          Friday, August 5, 2022

14    TIME:          8:07 a.m. PDT/11:07 a.m. EDT

15    LOCATION:      Remote Proceeding

16                   Washington, DC 20005

17    REPORTED BY:   Irene Gray, Notary Public

18    JOB NO.:       5336912

19

20

21

22

Page 2

1                    A P P E A R A N C E S

2     ON BEHALF OF PLAINTIFF UNITED STATES OF AMERICA:

3          GAVIN L. GREENE, ESQUIRE (by videoconference)

4          United States Attorney's Office

5          300 North Los Angeles Street, Suite 7211

6          Los Angeles, CA 90012

7          gavin.greene@usdoj.gov

8          (213) 894-4600

9

10    ON BEHALF OF DEFENDANT LAURA KIM:

11         CAROLINE D. CIRAOLO, ESQUIRE (by videoconference)

12         Kostelanetz & Fink, LLP

13         601 New Jersey Avenue, Northwest, Suite 260

14         Washington, DC 20001

15         cciraolo@kflaw.com

16         (202) 875-8000

17

18

19

20

21

22

Page 3

1           A P P E A R A N C E S (Cont'd)

2        WILLIAM G. GRECO, ESQUIRE (by videoconference)

3        Kostelanetz & Fink, LLP

4        601 New Jersey Avenue, Northwest, Suite 260

5        Washington, DC 20001

6        wgreco@kflaw.com

7        (202) 875-8000

8

9        DANIEL C. DAVIDSON, ESQUIRE (by videoconference)

10       Kostelanetz & Fink, LLP

11       601 New Jersey Avenue, Northwest, Suite 260

12       Washington, DC 20001

13       ddavidson@kflaw.com

14       (202) 875-8000

15

16       A. LAVAR TAYLOR, ESQUIRE (by videoconference)

17       Law Offices of A. Lavar Taylor, LLP

18       3 Hutton Centre Drive, Suite 500

19       Santa Ana, CA 92707

20       ltaylor@taylorlaw.com

21       (714) 546-0445

22

```
                                                          Page 4

1              A P P E A R A N C E S (Cont'd)

2         JONATHAN T. AMITRANO, ESQUIRE (by

3         videoconference)

4         Law Offices of A. Lavar Taylor, LLP

5         3 Hutton Centre Drive, Suite 500

6         Santa Ana, CA 92707

7         jamitrano@taylorlaw.com

8         (714) 546-0445

9

10   ON BEHALF OF INTERNAL REVENUE SERVICE:

11        VLADISLAV M. ROZENZHAK, ESQUIRE (by

12        videoconference)

13        Office of Chief Counsel, Internal Revenue Service

14        24000 Avila Road, Suite 4404

15        Laguna Niguel, CA 92677

16        vladislav.m.rozenzhak@irscounsel.treas.gov

17        (949) 575-6538

18

19   ALSO PRESENT:

20        Mahima Chaudary, Paralegal, Kostelanetz & Fink

21        (by videoconference)

22
```

```
1                        I N D E X

2      EXAMINATION:                                    PAGE

3           By Ms. Ciraolo                             10

4

5                      E X H I B I T S

6      NO.            DESCRIPTION                       PAGE

7      Exhibit 77     Officer's Activity Record        27

8      Exhibit 78     Examining Officer's Activity

9                     Report (FBAR report)             107

10     Exhibit 79     Chernyak/McGeehan e-mail exchange

11                    3/2019                           119

12     Exhibit 80     Form 13535 6/3/15                170

13     Exhibit 82     Chernyak/Binns e-mail exchange

14                    10/2019                          127

15     Exhibit 83     Notice of Proposed FBAR Penalties

16                    1/31/18                          208

17     Exhibit 84     Letter 3709 4/24/17              191

18     Exhibit 85     Letter 4/23/18                   214

19     Exhibit 86     Form 13536                       223

20     Exhibit 87     Chernyak letter 1/31/18          88

21     Exhibit 88     Chernyak handwritten note 8/7/18 98

22     Exhibit 91     Chernyak letter 8/29/18          101
```

Page 6

1                    E X H I B I T S (Cont'd)

2     NO.              DESCRIPTION                      PAGE

3     Exhibit 92       Chernyak letter 9/5/18           104

4     Exhibit 100      Chernyak letter 5/1/18           91

5     Exhibit 101      Form 870 with Form 4549 6/12/18  95

6     Exhibit 104      Interview transcript of Michael

7                      Khim 4/6/17                      230

8     Exhibit 105      Form 4549, Income Tax Examination

9                      Changes                          83

10              (Exhibits retained by counsel.)

11

12                    E X H I B I T S

13    NO.              DESCRIPTION                      PAGE

14    Exhibit 67       Kim/Khim e-mail exchange 9/5/09  248

15    Exhibit 69       Notice of Proposed FBAR Penalties

16                     3/7/18                           209

17              (Exhibits retained by counsel.)

18

19

20

21

22

Page 7

1                   P R O C E E D I N G S

2                   THE REPORTER:  Good morning.  My name

3       is Irene Gray; I am the reporter assigned by Veritext

4       to take the record of this proceeding.  We are now on

5       the record at 11:07 a.m. Eastern Time.

6                   This is the deposition of Ella Chernyak

7       taken virtually in the matter of The U.S. vs. Kim on

8       Friday, the 5th of August, 2022.

9                   I am a notary authorized to take

10      acknowledgments and administer oaths in the District

11      of Columbia.  Parties agree that I will swear in the

12      witness remotely, outside of her presence.

13                  Additionally, absent an objection on

14      the record before the witness is sworn, all parties

15      and the witness understand and agree that any

16      certified transcript produced from the recording

17      virtually of this proceeding:

18                          - is intended for all uses permitted

19                          under applicable procedural and

20                          evidentiary rules and laws in the same

21                          manner as a deposition recorded by

22                          stenographic means; and

Page 154

1        A     No.

2        Q     Did you ever come to learn that she filed

3    FBARs for years other than 2012?

4        A     We do not continue our examination once the

5    case is closed.

6        Q     Okay.  So prior to closing your case, you

7    never discovered that she filed FBARs for 2009, '10,

8    '11, or '13, '14, thereafter, correct?

9        A     I do not recall.

10       Q     You don't recall?  Okay.

11       A     I don't recall.

12       Q     You say that taxpayer lives mostly offshore

13   and never told CPA about her accounts or companies.

14             Do you know if her accountant ever asked her

15   about her foreign accounts prior to 2012?

16       A     I don't recall without looking at more

17   documents.

18       Q     And then you say:  Never declared on

19   Schedule B until the taxpayer was audited.

20             Do you see that?

21       A     I do see that.

22       Q     Okay.  Is it your recollection that

Page 189

1     issue a 30-day letter, is that penalty approved by

2     your supervisor before you propose it?

3          A    Yes.  That's a legal requirement from my

4     recollection.

5          Q    Okay.  And so in this case, you proposed a

6     penalty.  It would have been approved, right, before

7     it went to the taxpayer or the taxpayer's

8     representative, correct?

9          A    I do not remember the detail of this case.

10    I closed it in 2018.  It's been a while.

11         Q    But you issued the proposed 30-day letter on

12    May 24, 2017, correct?

13         A    That's what the -- that's what the activity

14    record indicates.

15         Q    So at that point when you proposed it, you

16    would have had to have supervisory approval, correct?

17         A    That would be normal procedure, yes.

18         Q    Okay.  And not only just normal procedure.

19    That would have been the law, right, under

20    Section 6751(b) of the Code?

21         A    Okay.  I don't know it off the top of my

22    head.  I would have to review it.

Page 199

1          Q     Attached to the proposed FBAR -- the better

2     proposing the FBAR penalty dated April 24th on

3     USA -- I'm reading the Bates number now -- 3525,

4     there's an explanation of items.

5                Do you see that?

6          A     I do.

7          Q     Okay.  Did you draft this document?

8          A     It would appear so, yes.

9          Q     Okay.  And before we started on this, I

10    asked you to flip through this.  There are 20 pages in

11    this explanation of items.

12               Did you skim that?

13         A     I did.

14         Q     Does that refresh your recollection as to

15    having drafted that document?

16         A     No, it does not.

17         Q     Okay.  So sitting here today, you have no

18    specific recollection of drafting this document?

19         A     I have no specific recollection of the

20    entire case besides the couple things that you

21    reminded me during the deposition.

22         Q     Okay.  All right.

Page 266

1    the report.  You'll see that in this case, the maximum

2    possible FBAR penalty was computed as follows.

3              Do you see that chart?

4         A    I do.

5         Q    If you scroll down to the next page?  Okay.

6              Do you see under the 2011 column, the total

7    is $2,339,475?

8         A    I do.

9         Q    And am I correct in that in this case, you

10   calculated the 2011 penalty -- willful FBAR penalty,

11   and you spread it across four years, correct?

12        A    I don't remember exactly.  But from

13   everything I've seen, I believe so.

14        Q    Okay.  And let me just be clear that we're

15   all looking at the same page.  There's an account

16   listed here.  It's on this last page, page 20.  It's

17   got a balance on the violation date of $202, and you

18   are proposing a penalty of $100,000, correct?

19        A    The account 9676 -- 75?

20        Q    Yep.

21        A    Yes.

22        Q    And the one above it has $2,722 in it, and

1    on purpose?

2         A    I don't remember.  I have no memory.  It's

3    been too long.  No idea.

4         Q    We can agree that generally, you're required

5    to put some information into those boxes, correct?

6         A    I would have to look at the required

7    procedures for the form to see if these were actually

8    required to be completed.

9         Q    Okay.  But if it were required to be

10   completed, and you failed to complete it, your

11   testimony is that it was a mistake, correct?

12        A    If I was required to complete it and I

13   failed to copy and paste over, then yes, that would

14   have been my mistake.

15        Q    Okay.  Is this the first FBAR case you ever

16   worked on?

17        A    No, it was not.

18        Q    Okay.  All right.  And you wouldn't

19   characterize your conduct as reckless, would you?

20        A    I would not, no.

21        Q    Okay.  And you certainly didn't fail to do

22   something that was required intentionally, correct?

Page 277

1          Q    Correct.  Okay.  Now, if we can go back and

2    scroll up to the top of the first page?  Do you see,

3    if you scroll in the top of the first grayed-in

4    column, it says 2011 high aggregate balance?  Do you

5    see that?

6          A    I do.

7          Q    Okay.  Looking at this chart, is it your

8    understanding that you were calculating the 2011

9    willful FBAR penalty?

10         A    I don't know what I was thinking when I was

11   doing the calculation.

12         Q    Well, can we agree that you were calculating

13   the willful penalty for the calendar year of 2011?

14         A    It did look like I was using 2011 high as

15   the balances.

16         Q    And then you have the second column that

17   says balance at 6/30/2012.  That would be the date of

18   violation, correct?

19         A    That would be the date that the FBAR tax

20   return should have been filed for those particular

21   accounts.

22         Q    Okay.  So scrolling back down to the page 2,

Page 291

1      the 2011 willful FBAR penalty?

2           A      All of the statements that I had for all of

3      the accounts would go on the spreadsheet.

4           Q      Okay.  Would you include an account on this

5      spreadsheet that was not open between January 1, 2011,

6      and December 31, 2011?

7           A      I believe that's possible if they had some

8      activity prior to June, but I don't remember exactly.

9      It's been a while since I did an FBAR case.

10          Q      Prior to June of what year?

11          A      The following year, 2012.

12          Q      So if an account was opened, let's say, on

13     January 2, 2012, and there was activity in that

14     account, you would include it in this 2011 FBAR

15     penalty calculation?

16          A      I believe that's correct.  I don't remember

17     for sure.  It's been a while since I've done an FBAR

18     case.

19          Q      Okay.  So it is possible that this

20     spreadsheet, Exhibit 69-6 and Exhibit 69-7, includes

21     accounts that were not open during the 2011 calendar

22     year, correct?

# Exhibit 178



A. LAVAR TAYLOR*
LISA O. NELSON
JONATHAN T. AMITRANO
CHRISTINA M. LYNCH
CHARLES F. ROSEN
LYNDA B. TAYLOR**

JAMES M. KAMMAN
OF COUNSEL

ALSO ADMITTED:
*DISTRICT OF COLUMBIA
**NEW YORK AND MASSACHUSETTS

LAW OFFICES OF
**A. LAVAR TAYLOR** LLP
A TAX CONTROVERSY LAW FIRM

3 Hutton Centre Drive
Suite 500
Santa Ana, CA 92707

TELEPHONE: 714-546-0445
FACSIMILE: 714-546-2604

JOYCE E. CHENG, E.A./C.P.
ENROLLED AGENT/CERTIFIED PARALEGAL

MAGGIE ALLEN-REIMERS, AACP
LEGAL ASSISTANT/CERTIFIED PARALEGAL

FIRM WEBSITE: WWW.TAYLORLAW.COM

June 8, 2018

*Via Facsimile and USPS Certified Mail*
Internal Revenue Service
Manager Simon Bonilla
333 Broadway
Mail Stop 4466
San Diego, CA 92101
Fax: (619) 615-3720 (Letter Only – No Exhibits)

    Re:    Laura H. Kim
           SSN: ████ 8486
           Formal Protest to 30-day Letter Issued on May 1, 2018

Dear Sir/Madam:

    Our office is authorized to represent the above named taxpayer as evidenced by the power of attorney Form (Form 2848) enclosed as **Exhibit A**. We are submitting this letter to protest the proposed adjustment to income tax for Ms. Laura Kim (hereafter "Laura") for the tax years ending December 31, 2010, December 31, 2011 & December 31, 2012.

    Because of the voluminous nature of the exhibits in the present matter, all Exhibits may be found on the enclosed flash drive.

I    Taxpayer Name, Address and SSN

       Laura H. Kim
       ████████████
       Los Angeles, CA ████
       SSN: ████ 8486

{00096382.DOCX 2}

Friday, June 8, 2018
Protest to 30 Day Letter Issued by IRS
Laura H. Kim
**2** | P a g e

2       Appeals Conference

The taxpayer wishes to appeal the SB&SE division findings to the Appeals Office and requests an appellate conference with an Appeals Officer. Because the taxpayer's representative is located in Orange County, CA, we request that the appellate conference be held in the Laguna Niguel Appeals Office.

3       Date and Symbols of Letters of Transmittal

The SB&SE division issued a Letter 950 (Rev. 4-2017) for the tax years in issue (2010, 2011 & 2012) on May 1, 2018, with a stated deadline of June 8, 2018. The Revenue Agent and his manager agreed to extend the deadline to February 23, 2018. A copy of the May 1, 2018, 30-day letter is attached as **Exhibit B**.

This letter constitutes our response to Letter 950. We request that this case be transferred to the Office of Appeals (undocketed) for consideration.

4       Tax Year Involved

The years involved are the taxable years ending December 31, 2010, December 31, 2011 & December 31, 2012.

5       Proposed Deficiencies

The adjustment letter proposes the following deficiencies in income tax, together with a fraud penalty, for 2010:

| Item | 2010 |
|------|------|
| Tax | $434,539 |
| 6663 Penalty | $325,904.25 |

The adjustment letter proposes the following deficiencies in income tax, together with a fraud penalty, for 2011.

| Item | 2011 |
|------|------|
| Tax | $161,612 |
| 6663 Penalty | $121,209 |

{00096382.DOCX 2}

Friday, June 8, 2018
Protest to 30 Day Letter Issued by IRS
Laura H. Kim
**3 | P a g e**

The adjustment letter proposes the following deficiencies in income tax, together with a fraud penalty and a late filing penalty, for 2012

| Item | 2012 |
|---|---|
| Tax | $130,454 |
| 6663 Penalty | $97,840 50 |
| 6651(a)(1) Penalty | $34,972 |

6. Protested Adjustments

The adjustment letter and Income Tax Examination Changes Form issued with respect to Laura proposes the following adjustments to income for 2010:

| Item | 2010 |
|---|---|
| Schedule E2 – Rents Received | $9,690 30 |
| Qualified Dividends | $1,281.82 |
| Taxable Interest | $267,721 15 |
| Other Income | $783,152 07 |
| NOL Carryforward | $546,719 |
| Sch E-Inc/Loss-Prtnrship/S Corps-Passve/Non-Passve | $272,780 80 |
| Wages, Salaries and Tips, etc. | $699,489 78 |
| Qualified Dividends | $148,383 50 |
| Total | $2,729,218.42 |

Of the proposed adjustments, the following amounts are at issue in this protest: (1) Other Income adjustment of $783,152.07; and (2) Sch E-Inc/Loss-Prtnrship/S Corps-Passve/Non-Passve adjustment of $272 780.80. The proposed fraud penalty for 2010 is also at issue in the present appeal. Additionally, Laura challenges the IRS' refusal to allow additional rental income and expenses on her Schedule E.

To the extent there are any taxes owed for any of the three years at issue, interest on the deficiency in tax is suspended pursuant to 26 U.S.C. § 6404(g)(1), starting from the date that was three years from the later of the "due date" of the return or the filing of the return, until 21 days after a proper notice of the proposed adjustment which forms the basis of the deficiency was provided to Laura. Because the suspension period is applied on an "adjustment by adjustment" basis, computation of the suspension period cannot be done until such time as it is known what

Friday, June 8, 2018
Protest to 30 Day Letter Issued by IRS
Laura H. Kim
**4 | P a g e**

adjustments, if any, are sustained by the Office of Appeals. We acknowledge that this provision does not apply to cases involving fraud, but, for reasons explained below, the present case does not involve fraud. Thus, the interest suspension provisions of section 6404(g) will apply to the extent there is a deficiency owed.

The adjustment letter and Income Tax Examination Changes Form issued with respect to Laura proposes the following adjustments to income for 2011:

| Item | 2011 |
|------|------|
| Schedule E2 – Rents Received | $20,763 74 |
| Qualified Dividends | $15,260 21 |
| Taxable Interest | $72,927 94 |
| Other Income | $78,451.95 |
| NOL Carryforward | $582,635 |
| Sch E-Inc/Loss-Prtnrship/S Corps-Passve/Non-Passve | $31,961 |
| Wages, Salaries and Tips, etc. | $172,078 59 |
| Qualified Dividends | $271,604 75 |
| State Refund, Credits, or Offsets | $3,060 |
| Total | $1,248,743 18 |

Of the proposed adjustments, the following amounts are at issue in this protest: (1) Other Income adjustment of $78,451.94; and (2) Sch E-Inc/Loss-Prtnrship/S Corps-Passve/Non-Passve adjustment of $31,961   The proposed fraud penalty for 2011 is also at issue in the present appeal.  Additionally, Laura challenges the IRS' refusal to allow additional rental income and expenses on her Schedule E, and also alleges that pursuant to 26 U.S.C § 6404(g)(1), the interest related to tax period 2011 is suspended as discussed above.

The adjustment letter and Income Tax Examination Changes Form issued with respect to Laura proposes the following adjustments to income for 2012:

///

{00096382 DOCX 2}

USA - 015970

Friday, June 8, 2018
Protest to 30 Day Letter Issued by IRS
Laura H. Kim
5 | P a g e

| Item | 2012 |
|---|---|
| Schedule E2 – Rents Received | $3,337 53 |
| Qualified Dividends | $10,500 57 |
| Taxable Interest | $5,190 70 |
| Sch E-Inc/Loss-Prtnrship/S Corps-Passve/Non-Passve | $220,487 70 |
| Wages, Salaries and Tips, etc | $161,411 91 |
| Qualified Dividends | $120,431 |
| State Refund, Credits, or Offsets | $465 |
| Total | $521,824 41 |

Of the proposed adjustments, the following amount is at issue in this protest: Sch E-Inc/Loss-Prtnrship/S Corps-Passve/Non-Passve adjustment of $220,487.70. The proposed fraud penalty for 2012 is also at issue in the present appeal, along with the delinquent filing penalty. Additionally, Laura challenges the IRS' refusal to allow additional rental income and expenses on her Schedule E, and also alleges that pursuant to 26 U.S.C. § 6404(g)(1), the interest related to tax period 2012 is suspended as discussed above

As is explained in greater detail below, a significant portion of the adjustments for all of the years consists of Korean-source income that was reported on Laura's Korean income tax returns and on which tax was paid in Korea. For this Korean-source income, there is an increase in tax owed to the IRS – since Laura was unaware that she was required to report her Korean-source income on her U.S. income tax return, with a corresponding foreign tax credit for taxes paid by Laura on her Korea – since Laura was unaware that she was entitled to a foreign tax credit.

7       Facts, Discussion, and Legal Analysis

    A       Preliminary Statement

        Prior to outlining the specific arguments against the proposed adjustments at issue, it is important to understand the history of the present audit. It is also important to note that Laura filed a protest in response to a FBAR 30-day letter which proposed FBAR penalties for tax years 2009, 2010, 2011, 2012  The protest to the proposed FBAR penalty was mailed to the Service on April 23, 2018. A copy of the protest, along with the exhibits submitted with the protest, are included on the enclosed flash drive as **Exhibit C**. Note that this exhibit has been bookmarked to allow the reader to easily access the various documents contained in Exhibit C

{00096382.DOCX 2}

Friday, June 8, 2018
Protest to 30 Day Letter Issued by IRS
Laura H. Kim
6 | P a g e

The FBAR penalty case is very relevant to the pending income tax case  The proposed income tax adjustments for the years at issue are in some instances completely irrational and are unsupported by the facts of the case.  The errors, misstatements of fact, and mistakes made by the agent in connection with the income tax examination are similar to the errors, misstatements of fact, and mistakes made by the agent in connection with the FBAR penalty case  We strongly urge the reader of this appeal to review the FBAR protest in detail.  The FBAR protest is very important to the present case since the agent appears to be basing the assertion of fraud in the income tax audit report on the so-called "facts" recited in the FBAR 30-day letter.[1]  Because the undersigned counsel does not wish to rehash all of the arguments founds in the FBAR 30-day letter  which is 43 pages in length (not including exhibits), we are simply attaching the letter as an Exhibit C

B.    Audit & Factual Background

The IRS is proposing to assess very large income tax deficiencies and related penalties against Laura.  The proposed deficiencies come after a nearly six year IRS audit.  The audit included both an income tax audit and a foreign reporting compliance audit.

A review of the proposed income tax changes at issue in the present appeal show a total of nine adjustment items.  Of these nine adjustment items, five items relate to income actually or allegedly earned or received by Laura in Korea.  Of these five Korean-related proposed income adjustments, four of them (rent, dividends, interest, and wages) are based  directly on the income reported on Laura's Korean income tax returns.  Laura is not challenging the proposed adjustments for income reported on her Korean income tax returns.

While Laura reported all of her Korean-source income on her Korean income tax returns, Laura did not report the four types of Korean-source income (rent, dividends, interest, and wages) on her U.S. income tax returns.  Laura also did not claim a foreign tax credit for the tax paid to Korea on these income items on her U S income tax returns.  As is explained in detail in the FBAR protest package, Laura did not report these Korean-source income items on her U.S. income tax returns because Laura was unaware that her income from Korea must be reported on her U.S. income tax returns.  In other words, Laura's omission of her Korean-source income from her U.S. income tax returns, like her failure to claim a foreign tax credit for taxes she paid to the Korean tax agencies, was not intentional

---

[1] As will be discussed later in this protest, the 30-day letter does not even contain a lead sheet for the proposed Fraud Penalty   Thus, it is apparent that the IRS cannot sustain its heavy burden of proving fraud by clear and convincing evidence in this case.

USA - 015972

Friday, June 8, 2018
Protest to 30 Day Letter Issued by IRS
Laura H. Kim
7 | P a g e

The remaining adjustment based on (alleged) Korean-source income found in the 30-day letter at issue in this appeal is titled "other income"   The "other income" adjustment consists of proposed foreign income adjustments, and stems from a "bank deposit analysis" of Laura's Korean bank accounts conducted by the IRS.  The proposed "other income" adjustments contain errors which our firm has repeatedly brought to the attention of the Agent.  The IRS originally asserted "other income" adjustments in excess of $13.4 million for all three tax years.  For tax year 2012, the IRS originally claimed the taxpayer had an "other income" adjustment in excess of $2 26 million.  The IRS has now recognized that there is no "other income" adjustment for 2012.  As will be discussed below, the "other income" adjustments for both years 2010 and 2011 should be conceded in full by the government

On January 31, 2018, we learned that after auditing Laura for approximately five and a half years, the IRS had opened up new issues in the pending income tax audit, that the agent had ignored nearly all of our bank deposit analysis work, and that the IRS was issuing a FBAR 30-day letter, for the second time (see the protest to the 30-day FBAR penalty for a further discussion)  During the meeting on January 31, 2018, a binder was provided to the undersigned counsel which contained all of the proposed IRS adjustments   A copy of the contents of that binder is being included as **Exhibit D**.

In response to the meeting held on January 31, 2018, our firm requested time to respond to each and every adjustment found in the proposed January 2018 audit report accompanying the 10 Day Letter.  Our firm met with the Agent and her supervisor again on April 2, 2018   During our meeting we presented binders to the Service which outlined our positions as they relate to each of the proposed adjustments.  A copy of the documents we provided to the Agent are included as **Exhibit E**.

The 30-day letter at issue in the present protest was issued to us on May 1, 2018.  The 30-day letter contains a variety of errors.  The IRS has, however, acknowledged that the 10-day letter issued on January 31, 2018, was materially incorrect   The 30-day letter at issue in the current appeal reflects a tax liability that is roughly 14% of the tax liability shown on the 10-day letter.

C.      Items At Issue In The Current Appeal

At this time Laura does not challenge any of the items which were reported on her Korean income tax returns.  These include the items labeled: (1) Sch E2 -- Rents Received; (2) Qualified Dividends; (3) Taxable Interest, and (4) Wages, Salaries and Tips, etc   Additionally,

USA - 015973

Friday, June 8, 2018
Protest to 30 Day Letter Issued by IRS
Laura H. Kim
8 | P a g e

Lauara does not challenge the disallowance of the Net Operating Loss. Laura is also not challenging the adjustment to domestic qualified dividends or to the state refund amounts.

The items that are at issue in this appeal are: (1) the other income adjustments, (2) the Schedule E flow through adjustment; (3) the IRS' refusal to allow additional rental income and expenses on Laura's Schedule E; (4) the proposed fraud penalty for all years at issue; (5) the delinquent filing penalty for tax year 2012; and (6) suspension of interest under section 6404(g). We will discuss each in turn.

D.    "Other Income" Adjustments

During the six year audit of Laura the assigned Revenue Agent took a variety of improper and unjustified positions in an effort to support a willful FBAR penalty. These included, but were not limited to, double counting accounts, ignoring accounts from which transfers were made, including corporate accounts when computing personal income, and adding to taxable income amounts that were withdrawn but were not redeposited.

The IRS originally asserted that the total "other income" adjustments for tax years 2010, 2011, and 2012, totaled in excess of $13.4 million. Our firm, with assistance from a local CPA firm, tracked every single deposit made during tax years 2010, 2011, and 2012, in an effort to show to the IRS that all of the bank deposits could be accounted for, and as such there was no bank deposit analysis issue. Note that the total deposits in tax years 2010, 2011, and 2012, totaled $45,524,035.69.

As it relates to tax year 2010, the Revenue Agent's work papers state that the total deposits were $27,077,728.95. The IRS acknowledges that of this amount, all but $783,152.07 was either nontaxable transfers, or taxable deposits that are already included on the examination report (i.e. wages, dividends, interest, and rent deposited into Laura's Korean accounts). As it relates to the $783,152.07 discrepancy, the lead sheet provides:

"Additional income increased because of the deposits in the personal accounts in Korea. Cancellation of insurance in 2010 is additional income to the taxpayer since no proof was presented that Mrs. Kim has personally paid for this insurance to begin with and no proof of the origination of that account. Similar pattern exists in 2011."

A review of the Revenue Agent's paperwork will show that on October 5, 2010, a deposit of $892,000 (1,000,000,000 Won) was made into one of Laura's Korean accounts. On that same day a deposit in the amount of $14,932.99 (16,741,017 Won) was also deposited into that

USA - 015974

Friday, June 8, 2018
Protest to 30 Day Letter Issued by IRS
Laura H. Kim
9 | P a g e

account. These two deposits were made as the result of a cancellation of a life insurance policy. Our firm agrees that the smaller deposit is taxable. The larger deposit however represent the return of the premium paid when the policy was acquired, and therefore the larger deposit is a non-taxable deposit and must be removed from the "other income" adjustment.

Attached as **Exhibit F**, please find a copy of the paperwork received from the insurance company upon the cancellation of the insurance policy. We are including the original document, which is in Korean, along with a copy of the document translated by Laura's Korean speaking accountant. A review of the Exhibit will show the following:

- On March 24, 2008, Laura purchased a life insurance policy with a premium of 1,000,000,000 Won. *2.5 YR. OF COVERAGE*

- On October 5, 2010, the insurance policy was rescinded. At the time of rescission the balance of the policy was 1,019,788,417 Won.

- The insurance company withheld tax of 3,047,400 Won, leaving a net amount payable to Laura of 1,016,741,017 Won. *FX on 3-24-08 & 10-5-10*

- The insurance company deposited the net proceeds in two deposits, the first was the original premium amount of 1,000,000,000 Won, while the second was the income generated by the insurance policy, net of taxes, which totaled 16,741,017 Won

For tax purposes Laura has income on the income generated by the insurance policy in the amount of 19,788,417 Won, and should receive a foreign tax credit for the 3,047,400 Won that was withheld.

In Korea the withholding rate for the above described transaction is 15.4%.[2] The insurance company withheld 15.4% of the income generated by the policy, hence the withholding amount of 3,047,400 Won. The policy statement clearly indicates that Laura's original premium was 1,000,000,000 Won. Because the deposit of 1,000,000,000 Won was a return of Laura's initial premium, this is a non-taxable deposit. Removing this deposit from the bank deposit analysis completely eliminates the other income adjustment for tax year 2010.

The remaining other income adjustment issue is for tax year 2011. The income lead sheet provides that the IRS is proposing an adjustment of $78,451.95. The explanation included on the

[2] See: https://www2.deloitte.com/content/dam/Deloitte/global/Documents/Tax/dttl-tax-koreahighlights-2018.pdf

{00096382.DOCX 2}

USA - 015975

Friday, June 8, 2018
Protest to 30 Day Letter Issued by IRS
Laura H. Kim
**10** | P a g e

lead sheet provides that a "similar pattern exists in 2011". This reference to a so-called "pattern" is completely without a factual basis. No adjustment has been proposed for 2012, and the (almost completely erroneous) adjustment for 2010 was the result of a single (mostly non-taxable) item – the return of the insurance policy premium as discussed immediately above.

The work papers included in the 30-day letter (see the worksheet labeled "Detail Deposits 2011 Year") show a total taxable deposit amount of $326,829.59 for tax year 2011 (for ease of reference please see **Exhibit G**). This is the amount computed by the Revenue Agent. The Revenue Agent subtracted from this amount the amounts reported on Laura's 2011 Korean income tax return. As can be seen on her worksheet titled "Calculation of all case adjustments" (see **Exhibit ◼**), the following amounts were deposited into Laura's Korean accounts and must be subtracted when computing the bank deposit analysis:

| | |
|---|---|
| Korea Wages | $154,329.16 |
| Korean Interest | $72,927.94 |
| Korean Dividends | $15,260.21 |
| Korean Rental Income | $20,763.74 |
| Total | $263,281.05 |

Note that in November of 2016 the IRS asserted that Laura's unreported Korean wages for tax year 2011 totaled $154,329.16. As can be seen by the audit report, this amount was later increased to $172,078.59. As such the bank deposit analysis calculation should be as follows:

| | |
|---|---|
| Korea Wages | $172,078.59 |
| Korean Interest | $72,927.94 |
| Korean Dividends | $15,260.21 |
| Korean Rental Income | $20,763.74 |
| Total | $281,030.48 |

Subtracting this amount from the taxable deposits results in the following:

| | |
|---|---|
| Total Taxable Deposits: | $326,829.59 |
| Amounts Reported on Korean Returns: | $281,030.48 |
| Net Difference | $45,799.11 |

{00096382.DOCX 2}

USA - 015976

USA - 015977

Friday, June 8, 2018
Protest to 30 Day Letter Issued by IRS
Laura H. Kim
11 | P a g e

As such, the auditors calculation of purported unreported income is incorrect, and the maximum possibly bank deposit discrepancy is only $45,799.11

The entire proposed "other income" adjustment should be reduced to zero for all of the years at issue. As noted above, a total of $45,524,035.69 of deposits were made during tax years 2010, 2011, and 2012. Of this amount, the taxpayer has proven that the total maximum possible bank deposit analysis discrepancy is $45,799.11 This means that for every $1,000 deposited, the taxpayer has shown that $999 was either non-taxable or already reported, while only $1 of every $1,000 has been untraceable. The discrepancy is one-tenth of one percent. Because the discrepancy is so small, and because of potential timing issues as they relate to when income was earned versus when income was deposited, the entire bank deposit analysis discrepancy must be reduced to zero.

E.      Schedule E Flow Through Items

The IRS is proposing adjustments to Laura's French Baking Company, Inc. Laura owns 90% of this corporation. This corporation is on the accrual method of accounting  As will be explained in detail, the entire proposed adjustment relating to this entity should be reduced to zero. After a six year audit where thousands of pages of documents were submitted, and where the auditor reviewed every line item, the remaining adjustments are either de minimis and a result of timing issues relating to the accrual method of accounting, or the amounts are demonstrably incorrect.

As noted above, our firm drafted a thorough response to the 10-day letter issue in the present matter. This response, which totals 1,272 pages, is included as **Exhibit E**.

The IRS is proposing the following adjustments to the Bakery:

///

Friday, June 8, 2018
Protest to 30 Day Letter Issued by IRS
Laura H. Kim
**12 | P a g e**

| Item | 2010 | 2011 | 2012 |
|---|---|---|---|
| Cost of Labor | $1,689 | $3,645 | $4,424 |
| Taxes & Licenses | $18,266 | $18,338 | $18,934 |
| Automobile Expenses | $9,130 | $13,529 | $22,293 |
| Commissions | $178,915 | N/A | N/A |
| Other Expenses | $95,090 | N/A | N/A |
| Gifts & Awards | N/A | N/A | $4,261 |
| Consulting Fees | N/A | N/A | $190,068 |
| | | | |
| Total | $303,090 | $35,512 | $239,979 |
| | | | |
| Laura 90% Owner | $272,781 | $31,960 80 | $215,981.10[3] |

*(handwritten annotations: 110,247; 9758; = 53,538; = 44,851)*

Below we will discuss each item in turn.

        a.      Cost of Labor

      The 2010 Form 1120S reported a total Cost of Labor of $392,046. Of this amount the IRS has allowed $390,356.91. The remaining discrepancy of $1,689, or .4%, is the result of the taxpayer being on the accrual method of accounting. As such the entire amount should be allowed.

      The 2011 Form 1120S reported a total Cost of Labor of $392,913. Of this amount the IRS has allowed $389,268.41. The remaining discrepancy of $3,644 59, or 9%, is the result of the taxpayer being on the accrual method of account. As such the entire amount must be allowed.

      The 2012 Form 1120S reported a total Cost of Labor of $482,493. Of this amount the IRS has allowed $478,068 68. The remaining discrepancy of $4,424.32, or 9%, is the result of the taxpayer being on the accrual method of account. As such the entire amount must be allowed.

---

[3] Note that the 30-day letter incorrectly states that the adjustment for 2012 should be $220,487 70.

{00096382.DOCX 2}

Friday, June 8, 2018
Protest to 30 Day Letter Issued by IRS
Laura H. Kim
**13 | P a g e**

b        Taxes & Licenses

During the tax years at issue, Laura owned the building the bakery operated out of, and the bakery paid the property taxes for the building. The auditor acknowledges that the bakery has in fact paid the property taxes for the building, however the auditor contends that the bakery is not eligible for an expense of the paid property tax amounts. Included as **Exhibit I** is a copy of the auditor's work papers from October 19, 2016, since they contain everything needed to substantiate the claimed expense.

The IRS should allow the taxes & license expense as a rent expense. By paying the property tax on behalf of Ms. Kim, Ms. Kim has effectively received rent for the premises on which the bakery operated. As such the bakery should be eligible for a rent expense equal to the property tax payment, and Ms. Kim's Schedule E should include the payment as rent. Ms. Kim should also be allowed a property tax deduction, and depreciation on the property. Ms. Kim has a basis in the property of $760,599. Allocating 81.55% of the purchase price to the building, and applying a 39 year useful life, results in annual depreciation of $15,904.

As such, the bakery should be allowed the deduction as rent, and Laura should be allowed a $15,904 net Schedule E loss. The amounts on the Schedule E should be as follows:

| | |
|---|---|
| Rent: | Equal to property tax payment |
| Property Tax Expense | Equal to property tax payment |
| Depreciation | $15,904 |
| | |
| Net: | ($15,904) |

We also want to point out a misstatement found in the IRS audit work papers. The auditor states:

"RA has interviewed 3 different preparers for the rent issue and was told the same story that they objected to rent being treated and deducted on the return, however, Laura Kim 90% shareholder insisted. They all said that they have advised this taxpayer to claim the rental income which in return she did not."

USA - 015979

Friday, June 8, 2018
Protest to 30 Day Letter Issued by IRS
Laura H. Kim
**14** | P a g e

The bakery did not claim a rent expense for tax year 2010, 2011 or 2012.  As such the statement made by the auditor is untrue – rent was not deducted by the bakery during the years under audit.[4]

The lead sheets provided in the 30-day letter indicate that the agent agrees that the payment for property tax is rental income to Laura, and that Laura receives a Schedule E deduction for the taxes paid.  The agent disallowed Laura's request that depreciation on the property be allowed.  While the agent agrees that the amounts paid by the corporation for property tax is income to Laura, the agent has not proposed to allow the amounts paid as a rental deduction by the corporation.  As such the full amount proposed to be disallowed by the agent must be allowed as either a tax expense, or a rental expense.  As such the proposed adjustment will either be zero, or will be zeroed out by the rental expense deduction.

   c  Automobile Expense

    i.  2010

For tax year 2010 the Form 1120S claimed an Automobile and Truck deduction of $9,130.  The IRS is proposing to disallow all of the claimed Auto & Truck expense.

A copy of the general ledger for the bakery was provided to the IRS during the audit.  The Auto & Truck expense in the general ledger is clearly labeled, and includes:

| | |
|---|---|
| Gas: | $2,236.05 |
| Insurance: | $3,069.80 |
| Registration: | $370.00 |
| Repair & Maintenance: | $3,256.51 |
| Parking | $198 |
| | |
| Total | $9,130.36 |

The bakery reported three different vehicles as assets.  These vehicles were all placed in to service on or before 2003.  Vehicles were needed for travel to potential clients, local transportation of goods, trips to pick up supplies, trips to trade shows, etc.

---

[4] It is worth noting that the revenue agent, in the 10 Day Letter mentioned previously, allocated 100% of the flow through adjustments for Laura's Bakery to Laura, even while acknowledging that Laura was only a 90% owner of the company.

{00096382.DOCX 2}

Friday, June 8, 2018
Protest to 30 Day Letter Issued by IRS
Laura H. Kim
15 | P a g e

Attached as **Exhibit J**, please find substantiation for this expense. Our office is providing proof of every 15th item on the attached transactio n detail. The Service has copies of all corporate bank statements and a copy of the general ledger if further sampling is deemed necessary. This expense should be allowed in full.

ii.    2011

For tax year 2011 the Form 1120S claimed an Automobile and Truck deduction of $13,529. The IRS is proposing to disallow all of the claimed Auto & Truck expense.

A copy of the general ledger for the bakery was provided during the audit. The Auto & Truck expense in the general ledger is clearly labeled, and includes:

| | |
|---|---|
| Gas: | $3,868.05 |
| Insurance: | $3,333.20 |
| Parking Fees: | $37.00 |
| Registration: | $399.00 |
| Repair & Maintenance: | $1,495.78 |
| Subtotal | $9,133.03 |
| Sales Department Auto: | $4,412.83 |
| Total: | $13,545.86 |

In tax year 2011 the auto expense for Dianne Marti was reported separately from the other auto expense. Dianne Marti turned in a mileage log at the end of each month, and she was reimbursed for her mileage. Copies of the mileage logs have been previously provided to the service.

In the binder at **Exhibit J** you will find a copy of the transaction details for the Auto & Truck Expense. Our office is providing proof of every 15th item on the attached transaction detail. The Service has copies of all corporate bank statements if further sampling is deemed necessary. This expense should be allowed in full.

iii.    2012

For tax year 2012 the Form 1120S claimed an Automobile and Truck deduction of $32,527. The IRS is proposing to disallow $22,292.07 of the claimed Auto & Truck expense.

{00096382.DOCX 2}

Friday, June 8, 2018
Protest to 30 Day Letter Issued by IRS
Laura H Kim
**16** | P a g e

A copy of the general ledger for the bakery was provided during the audit   The Auto & Truck expense in the general ledger is clearly labeled, and includes

| | |
|---|---|
| Gas: | $3,774 00 |
| Insurance: | $3,451 70 |
| Registration: | $121 |
| Repair & Maintenance: | $19,236 21 |
| Auto – Other | $2 462.70 |
| Total: | $29,045.61 |
| Sales Department Auto | $4 412 83 |
| | |
| Total: | $33,458.44 |

Based on a review of the general ledger entries for auto repair and maintenance, it is clear that some of the repair items were inadvertently miscategorized.  Repairs to equipment of the company appear to have been inadvertently recorded as auto repairs.  This explains why the amount of the deduction for auto expense drastically increased from the amount of the auto expense deduction for the prior two years   The auditor has allowed the amounts inadvertently recorded as auto repairs.   The remaining amount of $22,292 07 which is being disallowed consists of auto and truck expenses for the business.

In the binder at **Exhibit J** you will find a copy of the transaction details for the Auto & Truck Expense.  Our office is providing proof of every 15th item on the attached transaction detail   The Service has copies of all corporate bank statements if further sampling is deemed necessary.  This expense should be allowed in full.

d      Commissions       *CONSULTING – DIF ?*

The IRS is proposing an adjustment to the Commissions expense for tax year 2010   The lead sheets indicate that the taxpayer has failed to substantiate this expense   The statements in the lead sheets are false   We previously provided the government with substantiation for each and every expense item for this deduction

For tax year 2010 the Form 1120S claimed commissions expenses of $223,644   The IRS proposes to disallow 80% of this amount, or $1 78,915

USA - 015982

Friday, June 8, 2018
Protest to 30 Day Letter Issued by IRS
Laura H. Kim
17 | P a g e

The commissions expenses has been repeatedly explained to the IRS (see letters dated March 20, 2015, and December 31, 2015.) The payment of this expenses is clearly laid out in the general ledger. As explained by Robert Horwitz, in his March 20, 2015, letter:

> " ...the highlighted entries "Accounts Receivable" or "Undeposited Checks/Cash" are for monies owed by Sysco to LFBC for LBFC product. The highlighted entries for Sysco marked as "Accounts Payable" are rebates paid by LBFC to Sysco"

The general ledger (see **Exhibit K**) reflects the incurring of $223,644 of broker and account management fees. In the "split" column you will see items have been marked as (1) Accounts Receivable, (2) Undeposited Checks/Cash, (3) Accounts Payable; or (4) Checking in Wells Fargo.

All items marked as "Accounts Payable", or marked as "Checking in Wells Fargo", were paid out to vendors. The remaining amounts, which are marked as "Accounts Receivable" or "Undeposited Checks/Cash", represent discounts applied to outstanding invoices. These amounts were credited against Accounts Receivable.

The amounts paid out can all be substantiated using the general ledger and the bank statements. The amounts which were credited against accounts receivable were not physically paid out and thus will not show up on the company's bank statements. Nevertheless, the amounts that were credited against accounts receivable can be substantiated, as is discussed below.

To prove up the amounts that were paid out, the included exhibit provides proof of each and every payment. To prove up the amounts that were discounted against accounts receivable, we have conducted a bank deposit analysis, which is included as **Exhibit L**. The reason for the bank account analysis is because the company overstated gross receipts by the amount credited against accounts receivable. Explained differently, the business claimed gross receipts of the gross invoice amounts, not including any discounts, and the business took a deduction for the discount. The company only received the net amount.

Included as **Exhibit K** please find a copy of the ledger for this expense item. For each individual vendor, we have marked the items which were paid out (these are the items marked as either "Accounts Receivable" or "Undeposited Checks/Cash"). Next to each vendor we have indicated the amounts which were paid, and the amounts which were credited against accounts receivable. Here is an overview:

USA - 015983

Friday, June 8, 2018
Protest to 30 Day Letter Issued by IRS
Laura H. Kim
**18 | P a g e**

| Vendor | Amount Per G/L | Amount Paid | Amount Credited to A/R |
|---|---|---|---|
| Goldberg | $11,218.69 | $5,863.90 | $5,354.79 |
| Other Marketing | $1,135.62 | $1,042 | $93.62 |
| Show Booth | $758.85 | $758.85 | $0 |
| SoCal Food Source | $12,077.93 | $12,077.93 | $0 |
| Sysco – L.A. | $82,476.27 | $38,849.57 | $43,626.70 |
| Sysco – S.D. | $50,280.67 | $27,666.37 | $22,614.30 |
| Sysco – Ventura | $60,657.76 | $35,034.99 | $25,622.77 |
| Trade Shows | $882.35 | $882.35 | $0 |
| USFood – L.A. | $2,819.15 | $0 | $2,819.15 |
| USFood – SD | $336.40 | $0 | $336.40 |
| Other | $1,000 | $0 | $1,000 |
| Total | $223,643.69 | $122,175.96 | $101,467.73 |

This means that, out of the $223,643.69 booked to broker and account management fees, $122,175.96 was paid out, while $101,467.73 was credited towards accounts receivable.

Regarding the amounts which were paid out, the attached exhibit provides proof of $121,684.26 of the amount claimed. The small discrepancy of $491.70 was paid to Dianne Marti and was grouped with other reimbursements owed to her.

The auditor completed a bank deposit analysis for 2011 and 2012, and in the 10-day letter that was issued the Service asserted income adjustments for both years. The IRS did not follow proper procedures for conducting a bank deposits analysis for a taxpayer on the accrual method of accounting (this is why an adjustment to the bakery gross receipts is not claimed on the tax

Friday, June 8, 2018
Protest to 30 Day Letter Issued by IRS
Laura H. Kim
**19 | P a g e**

return).   For tax year 2010, the auditor did not provide our firm with a bank deposits analysis.
This is likely because the bank deposit analysis would show that gross receipts were overstated
on the Form 1120S

For purposes of completing a bank deposits analysis for an accrual method taxpayer, IRM
§ 4.10.4.6.4.6.2 provides that you take the gross deposits, and you adjust the amount based on
any increase or decrease in accounts receivable and accounts payable   Specifically

1) If there is an increase in receivables you add it to the gross receipts.
2) If there is a decrease in receivables you subtract it from gross receipts.
3) If there is an increase in accounts payable you subtract it from gross receipts.
4) If there is a decrease in accounts payable you add it to gross receipts.

In the present matter, the Bakery reported gross receipts of $1,715,367 for the year 2010.
A review of the corporate bank statements will show $1,624,943.54 in gross deposits for the year
2010   Of this amount, $72,826.10 were transfers. (We have included this information in **Exhibit
L**).  This means total sales deposits were $1,552,117.44

As of 1/1/2010, the bakery had accounts receivable of $92,069  (See the previously
provided balance sheet and the Form 1120S.)  As of 12/31/2010, the bakery had accounts
receivable of $143,810.  This means accounts receivable increased by $51,741, and therefore this
amount must be added to the gross deposits.

As of 1/1/2010, the bakery had accounts payable of $66,916   As of 12/31/2010, the
bakery had accounts payable of $55,845.  This means accounts payable decreased by $11,071,
and therefore this amount must be added to the gross deposits.

Therefore, for purposes of computing the bank deposits analysis for tax year 2010, the
calculation would be as follows:

| | |
|---|---|
| Gross Deposits: | $1,552,117.44 |
| Plus A/R change | $51,741 |
| Plus A/P change | $11,071 |
| | |
| Taxable Deposits | $1,614,929.44 |

{00096382.DOCX 2}

USA - 015985

Friday, June 8, 2018
Protest to 30 Day Letter Issued by IRS
Laura H. Kim
**20** | P a g e

As noted above, the 2010 Form 1120S reported gross receipts of $1,715,367. Subtracting this amount from the taxable deposit amount results in an overstatement of gross receipts of $100,437.56.

As discussed above, $101,467.73 was credited against accounts receivable, and this amount has been substantiated by the fact that gross receipts were overstated by $100,437.56.

All evidence in this case shows that the general ledger is accurate, and should be relied on. Because the company has substantiated this expense, the entire expense should be allowed.

Please note that all of the substantiation for this expense, along with the explanation above, was previously provided to the auditor on April 2, 2018.

### e.    Other Expenses

For tax year 2010 the Form 1120S claimed a deduction of $95,090 for "reconciliation discrepancies". As has been previously explained, this deduction was for an inventory adjustment. Reconciliation of the inventory adjustment is being provided as **Exhibit M**. These documents were previously provided to the IRS. This proposed adjustment should not be sustained.

### f.    Gifts and Awards

The IRS proposes to disallow all of the claimed gifts and awards expense, an amount that totals $4,261. The auditor acknowledges that the expenses were incurred. Please see the letter from our office dated March 30, 2015, that provides additional information regarding who the gifts were given to, which is included as **Exhibit N**. Based on the evidence provided, the entire amount claimed should be allowed.

### g.    Consulting Fees

For tax year 2012 the IRS is proposing to disallow all of the taxpayer's claimed "consulting fees" totaling $190,068. The 2012 Form 1120S does not have a line item labeled "consulting fees". Instead, there is a line item titled "Broker Fee" in the amount of $190,068.

For tax year 2012 the deduction for "Broker Fee" includes amounts paid, and discounts applied, to the following customers, in the following amounts.

USA - 015986

Friday, June 8, 2018
Protest to 30 Day Letter Issued by IRS
Laura H. Kim
21 | P a g e

| Customer | Amount |
|---|---|
| SoCal FoodSource | $1293.00 |
| Sysco – Las Vegas | $1,835.37 |
| Sysco – Los Angeles | $114,505.40 |
| Sysco – San Diego | $34,475.26 |
| Sysco – Ventura | $35,764.33 |
| USFood – Los Angeles | $1,180.08 |
| USFood – San Diego | $1,014.31 |
| Total | $190,067.75 |

Note that this amount matches the amount reported on the Form 1120S

During tax year 2012 the bakery overstated income by $28,125.37 (see **Exhibit O** – this exhibit consists of documents submitted to the IRS in response to the 10-day letter challenging the proposed adjustment to gross receipts for tax year 2012). As with tax year 2010, some of the amounts booked as broker fees were actually paid out, while other amounts were booked against accounts receivable. The latter amounts would not have been paid – instead gross receipts was booked for the entire invoice amount, and a deduction was claimed for the discount amount, with the taxpayer collecting the net amount from the customer.

As explained by Mr. Horwitz in his March 20, 2015, letter:

" the highlighted entries "Accounts Receivable" or "Undeposited Checks/Cash" are for monies owed by Sysco to LFBC for LBFC product  The highlighted entries for Sysco marked as "Accounts Payable" are rebates paid by LBFC to Sysco"

The general ledger entries for the seven customers above, included as **Exhibit P**, show that the total amount booked to broker fees totals $190,067.75  This is the same amount claimed as a deduction on the 2012 Form 1120S  In the "split" column you will see items have been marked as: (1) Accounts Receivable, (2) Undeposited Checks/Cash, (3) Accounts Payable; or (4) Checking in Wells Fargo.

All items marked as "Accounts Payable", or marked as "Checking in Wells Fargo", were paid out to vendors. The remaining amounts which are marked as "Accounts Receivable" or "Undeposited Checks/Cash", represent discounts applied to outstanding invoices, and therefore they were credited against Accounts Receivable

{00096382.DOCX 2}

Friday, June 8, 2018
Protest to 30 Day Letter Issued by IRS
Laura H. Kim
**22 | P a g e**

The amounts paid out can all be substantiated using the general ledger and the bank statements, which are contained in the included exhibit. The amounts which were credited against accounts receivable would not have been paid.

To prove up the amounts that were paid out, **Exhibit P** contains proof of each and every payment. To prove up the amounts that were discounted against accounts receivable we conducted a bank deposit analysis (see **Exhibit O**). The reason for the bank deposit analysis is because the company would overstate gross receipts by the amount credited against accounts receivable. Explained differently, the business included in its gross receipts the gross invoice amount, without any discounts, and the business took a deduction for the discount. The company only received the net amount, the gross invoice minus the discount provided by the company.

Within the included exhibit, please find a copy of the ledger for this expense item. For each individual vendor we have marked the items which were paid out. Next to each vendor we have indicated the amounts which were paid ("A/P"), and the amounts which were credited against accounts receivable ("A/R"). Here is an overview:

| Vendor | Amount Per G/L | Amount Paid | Amount Credited to A/R |
|---|---|---|---|
| SoCal FoodSource | $1,293.00 | $1,293.00 | $0 |
| Sysco – Las Vegas | $1,835.37 | $1,006.62 | $828.75 |
| Sysco – Los Angeles | $114,505.40 | $98,385.50 | $16,119.87 |
| Sysco – San Diego | $34,475.26 | $30,816.03 | $3,659.23 |
| Sysco – Ventura | $35,764.33 | $35,281.60 | $482.73 |
| USFood – L.A. | $1,180.08 | $0 | $1,180.08 |
| USFood – SD | $1,014.30 | $0 | $1,014.30 |
| Total | $190,067.74 | $166,782.75 | $23,284.96 |

{00096382.DOCX 2}

Friday, June 8, 2018
Protest to 30 Day Letter Issued by IRS
Laura H. Kim
**23** | P a g e

This means that, of the $190,067.74 booked to broker fee, $166,782.75 was paid out, while $23,284.96 was credited towards accounts receivable

As discussed in detail in **Exhibit O**, the bakery reported gross receipts of $1,583,217, which was $28,125.37 more than the taxable receipts pursuant to the BDA conducted above As such, the amounts allocated to accounts receivable must be allowed.

Regarding the amounts that were actually paid out, within **Exhibit P** you will find proof of payment for $167,395.01 of the $166,782.75 claimed expense amount. Because the bakery is on the accrual method of accounting, the amounts will not match exactly. This is because a few of the included payments were paid in 2012, but deducted in tax year 2011, while some of the claimed 2012 deductions would have been paid in early 2013.

As has been repeatedly explained, and shown, the general ledger is substantially correct As such the government should not propose any adjustments to the bakery – all proposed adjustments have been proven to be incorrect.

Please note that all of the substantiation for this expense, along with the explanation above, was previously provided to the auditor on April 2, 2018.

> h Conclusion

All of the claimed adjustments as they relate to the bakery are either de minimis in nature and the result of timing, or can be proven to the dollar. The Revenue Agent in the present matter audited every item on the tax return. The tax returns have been proven to be substantially correct, and as such the IRS should not make any adjustments to the bakery.

> F. Additional Rental Income & Expenses

As noted in the Bakery taxes and license adjustment section above, the bakery paid the property tax for the building it occupied This building is owned personally by Laura. Because the payments made by the corporation are tantamount to rent paid to Laura personally, the amounts paid should be considered a rental deduction by the corporation, and Laura should be allowed to report the amounts paid as rental income. In turn, Laura should be allowed a deduction for the taxes paid, and for the building depreciation The net result will be that Laura is entitled to a Schedule E loss equal to $15,904 for each of the years at issue.

Friday, June 8, 2018
Protest to 30 Day Letter Issued by IRS
Laura H. Kim
24 | P a g e

The lead sheets provided in the 30-day letter indicate that the agent agrees that the payment for property tax is rental income to Laura, and that Laura receives a Schedule E deduction for the taxes paid  In addition to the rental income and tax expense, Laura should be allowed a depreciation expense  As such Laura should be allowed a net rental loss equal to the depreciation amount of $15,904 for each of the years at issue

G    Fraud Penalty

Although the Revenue Agent is asserting a fraud penalty in this case, the 30-day letter does not contain a penalty lead sheet. The IRS has the burden of proof by clear and convincing evidence to establish that the fraud penalty applies. Code section 7454.  If the IRS carries that burden as to a particular item, the taxpayer can eliminate the application of the fraud penalty as to a particular adjustment by showing by a preponderance of the evidence that the fraud penalty does not apply to that particular adjustment  Code section 6663

Because the agent has not laid out any reasons or explanations in support of the assertion of the fraud penalty, this penalty cannot be sustained.  Simply put, there is no explanation at all in support of the assertion of the fraud penalty.

The complete absence of any discussion of what evidence might support the assertion of the fraud penalty is not a surprise.  Reviewing at the facts of the case, it is apparent that the fraud penalty cannot be sustained   Simply put, this is not a case where there was any intentional misconduct.  The domestic income tax adjustments, both agreed and unagreed adjustments, do not involve any intentional misconduct on the part of Laura.  The Korean-related adjustments that have merit do not involve any intentional misconduct on the part of Laura and do not even result in any additional net tax owed.  Any attempt to impose the fraud penalty will be the actions of an Agent who has no regard for the actual facts of the case.

We strongly urge the reviewer of this appeal to thoroughly review our 30-day FBAR protest, which is included as **Exhibit C**.  This Exhibit contains a detailed narrative of the facts in the present matter.  A review of these facts will clearly show that the government cannot support a fraud penalty in the present matter.

H.    Delinquent Filing Penalty

The IRS is asserting that Laura should be held liable for a delinquent filing penalty.  The penalty at issue should not be assessed since the taxpayer is eligible for a first time abatement. Additionally, the taxpayer can demonstrate reasonable cause for the failure to file.

{00096382 DOCX 2}

Friday, June 8, 2018
Protest to 30 Day Letter Issued by IRS
Laura H. Kim
25 | P a g e

IRM § 20.1.1.3.3.2.1 (11-21-2017) provides that a taxpayer is eligible for a first time abatement if: (1) the taxpayer has filed all returns legally required to be filed, (2) the taxpayer has paid, or arranged to pay, any tax currently due, and (3) the taxpayer has not been penalized for late-filing in the three years prior to the year at issue.

In the present matter Laura has filed all of her tax returns, she does not have any outstanding balances owed, and she was not penalized during tax years 2009 through 2011. As such she meets the requirements for a first time abatement, and the penalty at issue should not be assessed.

Additionally and in the alternative, Laura can demonstrate reasonable cause for the late filing of the return. Laura received poor advice as it relates to the filing of her 2012 Form 1040. This advice meets the reasonable cause requirements as found in IRM § 20.1.1.3.3.4.3 (11-21-2017).

      I.     Interest

To the extent there are any taxes owed for any of the three years at issue, interest on the deficiency in tax is suspended pursuant to 26 U.S.C. § 6404(g)(1), starting from the date that was three years from the later of the "due date" of the return or the filing of the return, until 21 days after a proper notice of the proposed adjustment which forms the basis of the deficiency was provided to Laura. Because the suspension period is applied on an "adjustment by adjustment" basis, computation of the suspension period cannot be done until such time as it is known what adjustments, if any, are sustained by the Office of Appeals. We acknowledge that this provision does not apply to cases involving fraud, but, for reasons explained above, the present case does not involve fraud. Thus, the interest suspension provisions of section 6404(g) will apply to the extent there is a deficiency owed.

8     Conclusion

Based on the foregoing, the proposed adjustments which are disputed in this protest, including the fraud penalty and failure to file penalty, should not be sustained.

///

{00096382.DOCX 2}

Friday, June 8, 2018
Protest to 30 Day Letter Issued by IRS
Laura H. Kim
**26** | P a g e

Thank you for your time and consideration.

Very truly yours,

**Law Offices of A. Lavar Taylor, LLP**

A. Lavar Taylor

I declare, under penalty of perjury, that this protest was prepared by me. Although I do not know of my own personal knowledge the facts contained herein, on the basis of the information provided to me, I believe them to be true

Dated: June 8, 2018

A. Lavar Taylor

{00096382.DOCX 2}

USA - 015992

Exhibit 179

Caroline D. Ciraolo
Email: cciraolo@kflaw.com
William G. Greco
Email: wgreco@kflaw.com
Telephone: (202) 875-8000
Fax: (917) 677-5013
Kostelanetz & Fink, LLP
601 New Jersey Ave, NW, Ste. 260
Washington, DC 20001

A. Lavar Taylor (CA Bar No. 129512)
Email: ltaylor@taylorlaw.com
Jonathan T. Amitrano (CA Bar No. 283389)
Email: jamitrano@taylorlaw.com
Telephone: (714) 546-0445, ext. 116
Fax: (714) 546-2604
Law Offices of A. Lavar Taylor, LLP
3 Hutton Centre Drive, Ste. 500
Santa Ana, CA 92707

Attorneys for Laura Kim

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| United States of America, | No. 2:21-cv-06746-FMO-KS |
|---|---|
| Plaintiff, | |
| v. | Defendant Laura Kim's Response to United States' First Request for Admissions |
| Laura Kim, | |
| Defendant. | |

1

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Defendant Laura Kim responds to the requests for admission by Plaintiff the United States of America. In accordance with Local Rule 36-2, Defendant has quoted each request in full and provides her response immediately thereafter.

These responses and objections are based upon information reasonably available and specifically known to the Defendant and her attorneys as of the date of service. Defendant reserves the right to supplement, amend, modify, or correct her responses and/or objections after considering information obtained through further investigation. Defendant further reserves the right to use or rely on, at any time, subsequently discovered and produced information omitted from these responses and objections as a result of mistake, error, oversight, or inadvertence. No response made herein, or lack thereof, shall be deemed a statement by Defendant as to the existence or non-existence of any information. Defendant's responses herein are not intended to convey agreement with any factual assumptions, definitions, implications or any explicit or implicit characterization of facts, events, circumstances or issues in the Requests, and are without prejudice to any rights to dispute facts and legal conclusions assumed in the Requests.

## **GENERAL OBJECTIONS**

Defendant asserts the following general objections with respect to each and every Request:

1.      Defendant objects to all definitions, instructions, and requests to the extent that they require the disclosure of: (i) information subject to the attorney-client privilege; (ii) information subject to the work product doctrine; or (iii) information that is otherwise privileged and/or protected from disclosure. Any inadvertent disclosure of information protected by the attorney-client privilege, the work product doctrine, and/or any other applicable privilege or protection from discovery is not intended and should

2

1  not be construed or deemed to constitute a waiver, either generally or

2  specifically, in whole or in part, with respect to such material or the subject

3  matter thereof.

4       2.     Defendant objects to all definitions, instructions, and requests to

5  the extent that they impose obligations different from or beyond those

6  imposed by the Federal Rules of Civil Procedure, the Local Civil Rules,

7  and/or the prior orders of the Court in this litigation.

8       3.     Defendant objects to all definitions, instructions, and requests to

9  the extent that they call for the production or identification of information

10 that is not relevant to the subject matter of the issues in this litigation and

11 not reasonably calculated to lead to the discovery of admissible evidence.

12      4.     Defendant objects to all definitions, instructions, and requests to

13 the extent that they seek disclosure of information that is overly broad,

14 unreasonably cumulative and/or duplicative and/or is obtainable from other

15 sources that are more convenient, less burdensome, or less expensive.

16      5.     Defendant objects to any request to the extent it seeks publicly

17 available information or information that is already in the possession,

18 custody or control of Plaintiff.

19      6.     Defendant objects to any request to the extent it seeks

20 information beyond the time period relevant to this litigation.  Unless

21 otherwise stated herein, the relevant period (the "Period at Issue") is

22 January 1, 2009 to June 30, 2013.

23      7.     Nothing in Defendant's responses, at the time such are provided,

24 shall be construed as an admission regarding the admissibility or relevance

25 of any fact or document, or of the truth or accuracy of any characterization of

26 any kind contained in the requests.

27      8.     Defendant incorporates by reference every general objection set

28 forth above into each response and specific objection set forth below. A

3

specific objection may repeat a general objection for emphasis or other reason. The failure to include any general objections in any response or specific objection does not waive any general objection to that request. Further, Defendant does not waive the right to amend Defendant's objections.

9.     Defendant's decision to provide a response notwithstanding the objectionable nature of a Request, at the time such response is provided, should not be deemed an admission, concession, or acquiescence as to any characterization contained in the Request or the propriety or accuracy of the terminology used by Plaintiff therein. Defendant reserves the right to object to the use of such information at any hearing or trial in this litigation.

10.     At the time such responses are provided, Defendant reserves the right to supplement, amend, clarify or correct Defendant's responses and objections to the Requests.

## **Specific Objections and Responses**

**A. Background**

1.     Defendant was born in 1944.

     **Response to Request No. 1**: Admits.

2.     Defendant immigrated to the United States in 1968.

     **Response to Request No. 2**: Admits.

3.     Defendant is a United States citizen.

     **Response to Request No. 3**: Admits.

4.     Defendant speaks English.

     **Response to Request No. 4**: Defendant has limited proficiency in English. She does not understand idioms, colloquialisms, or legal or technical terms.

5.     Defendant has a Ph.D. in ecological engineering.

     **Response to Request No. 5**: Admits.

4

6.    Defendant operates multiple businesses in the United States and the Republic of Korea (South Korea).

**Response to Request No. 6**: Admits.

7.    Defendant is the 100% owner of Laura's Distribution Company.

**Response to Request No. 7**: Denies.

8.    Laura's Distribution Company is incorporated in South Korea.

**Response to Request No. 8**: Denies.

9.    Defendant is the 100% owner of LK Waters.

**Response to Request No. 9**: Admits.

10.   LK Waters is incorporated in South Korea.

**Response to Request No. 10**: Admits.

11.   Defendant is the 100% owner of Marina Enterprises.

**Response to Request No. 11**: Denies.

12.   Marina Enterprises is incorporated in South Korea.

**Response to Request No. 12**: Denies.

13.   Defendant is the 90% owner of Laura's French Baking Company.

**Response to Request No. 13**: Denies.

14.   Laura's French Baking Company is in Los Angeles, California.

**Response to Request No. 14**: Denies.

**B. Foreign Bank Accounts**

**Foreign Bank Accounts in 2009**

15.   During the period between January 1, 2009 and December 31, 2009, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 0302.

**Response to Request No. 15**: Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing

available records. When the information sought is known, Defendant will supplement this response.

16. During the period between January 1, 2009 and December 31, 2009, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 0361.

**Response to Request No. 16**: Admits.

17. During the period between January 1, 2009 and December 31, 2009, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 0365.

**Response to Request No. 17**: Admits.

18. During the period between January 1, 2009 and December 31, 2009, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 0368.

**Response to Request No. 18**: Admits.

19. During the period between January 1, 2009 and December 31, 2009, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 0758.

**Response to Request No. 19**: Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

20. During the period between January 1, 2009 and December 31, 2009, Defendant had a financial interest in, or signature or other authority

over, a bank account with Woori Bank in South Korea with an account number ending in 1017.

**Response to Request No. 20**: Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

21.   During the period between January 1, 2009 and December 31, 2009, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 1478.

**Response to Request No. 21**: Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

22.   During the period between January 1, 2009 and December 31, 2009, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 1926.

**Response to Request No. 22**: Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

23.   During the period between January 1, 2009 and December 31, 2009, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 2001.

**Response to Request No. 23**: Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing

available records. When the information sought is known, Defendant will supplement this response.

24. During the period between January 1, 2009 and December 31, 2009, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 2033.

**Response to Request No. 24**: Admits.

25. During the period between January 1, 2009 and December 31, 2009, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 2274.

**Response to Request No. 25**: Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

26. During the period between January 1, 2009 and December 31, 2009, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 2308.

**Response to Request No. 26:** Admits.

27. During the period between January 1, 2009 and December 31, 2009, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 2323.

**Response to Request No. 27:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

1    28.   During the period between January 1, 2009 and December 31, 2009,

2          Defendant had a financial interest in, or signature or other authority

3          over, a bank account with Woori Bank in South Korea with an account

4          number ending in 2567.

5          **Response to Request No. 28:** Defendant cannot truthfully admit or

6          deny at this time and therefore, denies. Defendant is reviewing

7          available records. When the information sought is known, Defendant

8          will supplement this response.

9    29.   During the period between January 1, 2009 and December 31, 2009,

10         Defendant had a financial interest in, or signature or other authority

11         over, a bank account with Woori Bank in South Korea with an account

12         number ending in 2748.

13         **Response to Request No. 29:** Defendant cannot truthfully admit or

14         deny at this time and therefore, denies. Defendant is reviewing

15         available records. When the information sought is known, Defendant

16         will supplement this response.

17    30.   During the period between January 1, 2009 and December 31, 2009,

18         Defendant had a financial interest in, or signature or other authority

19         over, a bank account with Woori Bank in South Korea with an account

20         number ending in 3001.

21         **Response to Request No. 30:** Defendant cannot truthfully admit or

22         deny at this time and therefore, denies. Defendant is reviewing

23         available records. When the information sought is known, Defendant

24         will supplement this response.

25    31.   During the period between January 1, 2009 and December 31, 2009,

26         Defendant had a financial interest in, or signature or other authority

27         over, a bank account with Woori Bank in South Korea with an account

28         number ending in 3441.

**Response to Request No. 31:** Admits.

**Foreign Bank Accounts in 2010**

32. During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 0207.

**Response to Request No. 32:** Denies.

33. During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 0302.

**Response to Request No. 33:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

34. During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 0361.

**Response to Request No. 34:** Admits.

35. During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 0365.

**Response to Request No. 35:** Admits.

36. During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority

over, a bank account with Woori Bank in South Korea with an account
number ending in 0368.

**Response to Request No. 36:** Admits.

37.   During the period between January 1, 2010 and December 31, 2010,
Defendant had a financial interest in, or signature or other authority
over, a bank account with Woori Bank in South Korea with an account
number ending in 2001.

**Response to Request No. 37:** Defendant cannot truthfully admit or
deny at this time and therefore, denies. Defendant is reviewing
available records. When the information sought is known, Defendant
will supplement this response.

38.   During the period between January 1, 2010 and December 31, 2010,
Defendant had a financial interest in, or signature or other authority
over, a bank account with Woori Bank in South Korea with an account
number ending in 2323.

**Response to Request No. 38:** Admits.

39.   During the period between January 1, 2010 and December 31, 2010,
Defendant had a financial interest in, or signature or other authority
over, a bank account with Woori Bank in South Korea with an account
number ending in 3001.

**Response to Request No. 39:** Defendant cannot truthfully admit or
deny at this time and therefore, denies. Defendant is reviewing
available records. When the information sought is known, Defendant
will supplement this response.

40.   During the period between January 1, 2010 and December 31, 2010,
Defendant had a financial interest in, or signature or other authority
over, a bank account with Woori Bank in South Korea with an account
number ending in 3558.

**Response to Request No. 40:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

41.  During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 3570.

**Response to Request No. 41:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

42.  During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 3626.

**Response to Request No. 42:** Admits.

43.  During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 3627.

**Response to Request No. 43:** Denies.

44.  During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 3908.

**Response to Request No. 44:** Denies.

45. During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 4186.

**Response to Request No. 45:** Admits.

46. During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 4207.

**Response to Request No. 46:** Admits.

47. During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 4317.

**Response to Request No. 47:** Admits.

48. During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 4681.

**Response to Request No. 48:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

49. During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 4765.

**Response to Request No. 49:** Admits.

13

50. During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 4889.

**Response to Request No. 50:** Admits.

51. During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 5282.

**Response to Request No. 51:** Denies.

52. During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 5293.

**Response to Request No. 52:** Denies.

53. During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 5301.

**Response to Request No. 53:** Denies.

54. During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 5417.

**Response to Request No. 54:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

14

55.   During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 5711.

**Response to Request No. 55:** Admits.

56.   During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 5806.

**Response to Request No. 56:** Admits.

57.   During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 6005.

**Response to Request No. 57:** Admits.

58.   During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 6258.

**Response to Request No. 58:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

59.   During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 6397.

**Response to Request No. 59:** Admits.

15

60.   During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 6411.

**Response to Request No. 60:** Admits.

**Foreign Bank Accounts in 2011**

61.   During the period between January 1, 2011 and December 31, 2011, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 0302.

**Response to Request No. 61:** Admits.

62.   During the period between January 1, 2011 and December 31, 2011, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 0361.

**Response to Request No. 62:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

63.   During the period between January 1, 2011 and December 31, 2011, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 0365.

**Response to Request No. 63:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

64.     During the period between January 1, 2011 and December 31, 2011, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 0368.

**Response to Request No. 64:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

65.     During the period between January 1, 2011 and December 31, 2011, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 2567.

**Response to Request No. 65:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

66.     During the period between January 1, 2011 and December 31, 2011, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 3001.

**Response to Request No. 66:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

67.     During the period between January 1, 2011 and December 31, 2011, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 3558.

**Response to Request No. 67:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

68.  During the period between January 1, 2011 and December 31, 2011, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 3627.

**Response to Request No. 68:** Denies.

69.  During the period between January 1, 2011 and December 31, 2011, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 3908.

**Response to Request No. 69:** Denies.

70.  During the period between January 1, 2011 and December 31, 2011, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 4765.

**Response to Request No. 70:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

71.  During the period between January 1, 2011 and December 31, 2011, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 5711.

**Response to Request No. 71:** Admits.

72. During the period between January 1, 2011 and December 31, 2011, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 5806.

**Response to Request No. 72:** Admits.

73. During the period between January 1, 2011 and December 31, 2011, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 6005.

**Response to Request No. 73:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

74. During the period between January 1, 2011 and December 31, 2011, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 6048.

**Response to Request No. 74:** Admits.

75. During the period between January 1, 2011 and December 31, 2011, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 6258.

**Response to Request No. 75:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

76. During the period between January 1, 2011 and December 31, 2011, Defendant had a financial interest in, or signature or other authority

19

over, a bank account with Woori Bank in South Korea with an account number ending in 6397.

**Response to Request No. 76:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

77. During the period between January 1, 2011 and December 31, 2011, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 6539.

**Response to Request No. 77:** Admits.

78. During the period between January 1, 2011 and December 31, 2011, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 6658.

**Response to Request No. 78:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

79. During the period between January 1, 2011 and December 31, 2011, Defendant had a financial interest in, or signature or other authority over, a bank account with Standard Chartered First Bank Korea Limited in South Korea with an account number ending in 6699.

**Response to Request No. 79:** Admits.

80. During the period between January 1, 2011 and December 31, 2011, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 6817.

**Response to Request No. 80:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

81. During the period between January 1, 2011 and December 31, 2011, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 7795.

**Response to Request No. 81:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

82. During the period between January 1, 2011 and December 31, 2011, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 7808.

**Response to Request No. 82:** Admits.

83. During the period between January 1, 2011 and December 31, 2011, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 8740.

**Response to Request No. 83:** Admits.

84. During the period between January 1, 2011 and December 31, 2011, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 9362.

**Response to Request No. 84:** Admits.

85. During the period between January 1, 2011 and December 31, 2011,
Defendant had a financial interest in, or signature or other authority
over, a bank account with Woori Bank in South Korea with an account
number ending in 9368.

**Response to Request No. 85:** Admits.

86. During the period between January 1, 2011 and December 31, 2011,
Defendant had a financial interest in, or signature or other authority
over, a bank account with Woori Bank in South Korea with an account
number ending in 9689.

**Response to Request No. 86:** Admits.

**Foreign Bank Accounts in 2012**

87. During the period between January 1, 2012 and December 31, 2012,
Defendant had a financial interest in, or signature or other authority
over, a bank account with Woori Bank in South Korea with an account
number ending in 0302.

**Response to Request No. 87:** Admits.

88. During the period between January 1, 2012 and December 31, 2012,
Defendant had a financial interest in, or signature or other authority
over, a bank account with Woori Bank in South Korea with an account
number ending in 0361.

**Response to Request No. 88:** Defendant cannot truthfully admit or
deny at this time and therefore, denies. Defendant is reviewing
available records. When the information sought is known, Defendant
will supplement this response.

89. During the period between January 1, 2012 and December 31, 2012,
Defendant had a financial interest in, or signature or other authority
over, a bank account with Woori Bank in South Korea with an account
number ending in 2001.

22

1    **Response to Request No. 89:** Defendant cannot truthfully admit or
2    deny at this time and therefore, denies. Defendant is reviewing
3    available records. When the information sought is known, Defendant
4    will supplement this response.

5    90.    During the period between January 1, 2012 and December 31, 2012,
6           Defendant had a financial interest in, or signature or other authority
7           over, a bank account with Woori Bank in South Korea with an account
8           number ending in 2567.

9           **Response to Request No. 90:** Defendant cannot truthfully admit or
10          deny at this time and therefore, denies. Defendant is reviewing
11          available records. When the information sought is known, Defendant
12          will supplement this response.

13   91.    During the period between January 1, 2012 and December 31, 2012,
14          Defendant had a financial interest in, or signature or other authority
15          over, a bank account with Woori Bank in South Korea with an account
16          number ending in 3001.

17          **Response to Request No. 91:** Defendant cannot truthfully admit or
18          deny at this time and therefore, denies. Defendant is reviewing
19          available records. When the information sought is known, Defendant
20          will supplement this response.

21   92.    During the period between January 1, 2012 and December 31, 2012,
22          Defendant had a financial interest in, or signature or other authority
23          over, a bank account with Woori Bank in South Korea with an account
24          number ending in 3558.

25          **Response to Request No. 92:** Admits.

26   93.    During the period between January 1, 2012 and December 31, 2012,
27          Defendant had a financial interest in, or signature or other authority

28

over, a bank account with Woori Bank in South Korea with an account number ending in 3627.

**Response to Request No. 93:** Denies.

94. During the period between January 1, 2012 and December 31, 2012, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 3908.

**Response to Request No. 94:** Denies.

95. During the period between January 1, 2012 and December 31, 2012, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 4708.

**Response to Request No. 95:** Admits.

96. During the period between January 1, 2012 and December 31, 2012, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 4765.

**Response to Request No. 96:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

97. During the period between January 1, 2012 and December 31, 2012, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 5183.

**Response to Request No. 97:** Denies.

98. During the period between January 1, 2012 and December 31, 2012, Defendant had a financial interest in, or signature or other authority

24

over, a bank account with Woori Bank in South Korea with an account number ending in 5711.

**Response to Request No. 98:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

99.   During the period between January 1, 2012 and December 31, 2012, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 5806.

**Response to Request No. 99:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

100.   During the period between January 1, 2012 and December 31, 2012, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 6817.

**Response to Request No. 100:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

101.   During the period between January 1, 2012 and December 31, 2012, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 7795.

**Response to Request No. 101:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing

available records. When the information sought is known, Defendant will supplement this response.

102. During the period between January 1, 2012 and December 31, 2012, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 8740.

**Response to Request No. 102:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

103. During the period between January 1, 2012 and December 31, 2012, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 8765.

**Response to Request No. 103:** Admits.

104. During the period between January 1, 2012 and December 31, 2012, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 9362.

**Response to Request No. 104:** Admits.

105. During the period between January 1, 2012 and December 31, 2012, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 9368.

**Response to Request No. 105:** Admits.

106. During the period between January 1, 2012 and December 31, 2012, Defendant had a financial interest in, or signature or other authority

over, a bank account with Woori Bank in South Korea with an account number ending in 9534.

**Response to Request No. 106:** Admits.

107. During the period between January 1, 2012 and December 31, 2012, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 9546.

**Response to Request No. 107:** Admits.

108. During the period between January 1, 2012 and December 31, 2012, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 9676.

**Response to Request No. 108:** Admits.

109. During the period between January 1, 2012 and December 31, 2012, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 9689.

**Response to Request No. 109:** Admits.

**C. Foreign Bank Account Balances in South Korean Won (₩)**
**Foreign Bank Accounts in 2009**

110. During the period between January 1, 2009 and December 31, 2009, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 0361 with a maximum value during that period of ₩1,488,737,170 in the month of July.

**Response to Request No. 110:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing

available records. When the information sought is known, Defendant will supplement this response.

111. During the period between January 1, 2009 and December 31, 2009, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 0365 with a maximum value during that period of ₩323,048,770 in the month of July.

**Response to Request No. 111:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

112. During the period between January 1, 2009 and December 31, 2009, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 0368 with a maximum value during that period of ₩325,708,240 in the month of July.

**Response to Request No. 112:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

113. During the period between January 1, 2009 and December 31, 2009, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 2033 with a maximum value during that period of ₩1,965,863,320 in the month of March.

**Response to Request No. 113:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing

available records. When the information sought is known, Defendant will supplement this response.

114.    During the period between January 1, 2009 and December 31, 2009, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 2308 with a maximum value during that period of ₩655,968,310 in the month of July.

**Response to Request No. 114:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

115.    During the period between January 1, 2009 and December 31, 2009, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 3441 with a maximum value during that period of ₩2,144,283,978 in the month of April.

**Response to Request No. 115:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

116.    During the period between January 1, 2009 and December 31, 2009, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 3626 with a maximum value during that period of ₩2,000,000,000 in the month of May.

**Response to Request No. 116:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing

available records. When the information sought is known, Defendant will supplement this response.

117. During the period between January 1, 2009 and December 31, 2009, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 4317 with a maximum value during that period of ₩556,160,910 in the month of September.

**Response to Request No. 117:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

118. During the period between January 1, 2009 and December 31, 2009, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 5806 with a maximum value during that period of ₩215,106,880 in the month of July.

**Response to Request No. 118:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

119. During the period between January 1, 2009 and December 31, 2009, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 6005 with a maximum value during that period of ₩1,971,097,260 in the month of September.

**Response to Request No. 119:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing

available records. When the information sought is known, Defendant will supplement this response.

120. During the period between January 1, 2009 and December 31, 2009, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 6411 with a maximum value during that period of ₩672,750,390 in the month of June.

**Response to Request No. 120:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

121. During the period between January 1, 2009 and December 31, 2009, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 6658 with a maximum value during that period of ₩2,372,626,980 in the month of December.

**Response to Request No. 121:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

122. During the period between January 1, 2009 and December 31, 2009, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 6817 with a maximum value during that period of ₩511,156,980 in the month of December.

**Response to Request No. 122:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing

available records. When the information sought is known, Defendant will supplement this response.

**Foreign Bank Accounts in 2010**

123. During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 1017 with a maximum value during that period of ₩2,000,000,000 in the month of July.

**Response to Request No. 123:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

124. During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 1478 with a maximum value during that period of ₩560,401,450 in the month of January.

**Response to Request No. 124:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

125. During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 2033 with a maximum value during that period of ₩1,122,797,220 in the month of May.

**Response to Request No. 125:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing

available records. When the information sought is known, Defendant will supplement this response.

126. During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 2274 with a maximum value during that period of ₩5,914,248,940 in the month of July.

**Response to Request No. 126:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

127. During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 2323 with a maximum value during that period of ₩9,130,610,760 in the month of November.

**Response to Request No. 127:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

128. During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 2567 with a maximum value during that period of ₩665,368,730 in the month of January.

**Response to Request No. 128:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing