1    available records. When the information sought is known, Defendant
2    will supplement this response.

3    129.   During the period between January 1, 2010 and December 31, 2010,
4          Defendant had a financial interest in, or signature or other authority
5          over, a bank account with Woori Bank in South Korea with an account
6          number ending in 2748 with a maximum value during that period of
7          ₩500,000,000 in the month of October.

8    **Response to Request No. 129:** Defendant cannot truthfully admit or
9    deny at this time and therefore, denies. Defendant is reviewing
10   available records. When the information sought is known, Defendant
11   will supplement this response.

12   130.   During the period between January 1, 2010 and December 31, 2010,
13         Defendant had a financial interest in, or signature or other authority
14         over, a bank account with Woori Bank in South Korea with an account
15         number ending in 3441 with a maximum value during that period of
16         ₩159,108,667 in the month of June.

17   **Response to Request No. 130:** Defendant cannot truthfully admit or
18   deny at this time and therefore, denies. Defendant is reviewing
19   available records. When the information sought is known, Defendant
20   will supplement this response.

21   131.   During the period between January 1, 2010 and December 31, 2010,
22         Defendant had a financial interest in, or signature or other authority
23         over, a bank account with Woori Bank in South Korea with an account
24         number ending in 4207 with a maximum value during that period of
25         ₩2,393,868,200 in the month of July.

26   **Response to Request No. 131:** Defendant cannot truthfully admit or
27   deny at this time and therefore, denies. Defendant is reviewing

28

1
2

available records. When the information sought is known, Defendant
will supplement this response.

3   132.   During the period between January 1, 2010 and December 31, 2010,
4          Defendant had a financial interest in, or signature or other authority
5          over, a bank account with Woori Bank in South Korea with an account
6          number ending in 4765 with a maximum value during that period of
7          ₩5,392,472,090 in the month of March.

8          **Response to Request No. 132:** Defendant cannot truthfully admit or
9          deny at this time and therefore, denies. Defendant is reviewing
10         available records. When the information sought is known, Defendant
11         will supplement this response.

12   133.   During the period between January 1, 2010 and December 31, 2010,
13         Defendant had a financial interest in, or signature or other authority
14         over, a bank account with Woori Bank in South Korea with an account
15         number ending in 4889 with a maximum value during that period of
16         ₩906,297,396 in the month of December.

17         **Response to Request No. 133:** Defendant cannot truthfully admit or
18         deny at this time and therefore, denies. Defendant is reviewing
19         available records. When the information sought is known, Defendant
20         will supplement this response.

21   134.   During the period between January 1, 2010 and December 31, 2010,
22         Defendant had a financial interest in, or signature or other authority
23         over, a bank account with Woori Bank in South Korea with an account
24         number ending in 6397 with a maximum value during that period of
25         ₩1,164,831,183 in the month of November.

26         **Response to Request No. 134:** Defendant cannot truthfully admit or
27         deny at this time and therefore, denies. Defendant is reviewing

28

available records. When the information sought is known, Defendant will supplement this response.

135. During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 7795 with a maximum value during that period of ₩295,872,030 in the month of July.

**Response to Request No. 135:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

136. During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 9362 with a maximum value during that period of ₩1,405,261,630 in the month of September.

**Response to Request No. 136:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

137. During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 9368 with a maximum value during that period of ₩501,072,295 in the month of October.

**Response to Request No. 137:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing

1  available records. When the information sought is known, Defendant
2  will supplement this response.

3  **Foreign Bank Accounts in 2011**

4  138.  During the period between January 1, 2011 and December 31, 2011,
5  Defendant had a financial interest in, or signature or other authority
6  over, a bank account with Woori Bank in South Korea with an account
7  number ending in 0302 with a maximum value during that period of
8  ₩2,180,516,420 in the month of July.

9  **Response to Request No. 138:** Defendant cannot truthfully admit or
10  deny at this time and therefore, denies. Defendant is reviewing
11  available records. When the information sought is known, Defendant
12  will supplement this response.

13  139.  During the period between January 1, 2011 and December 31, 2011,
14  Defendant had a financial interest in, or signature or other authority
15  over, a bank account with Woori Bank in South Korea with an account
16  number ending in 0758 with a maximum value during that period of
17  ₩3,000,000,000 in the month of July.

18  **Response to Request No. 139:** Defendant cannot truthfully admit or
19  deny at this time and therefore, denies. Defendant is reviewing
20  available records. When the information sought is known, Defendant
21  will supplement this response.

22  140.  During the period between January 1, 2011 and December 31, 2011,
23  Defendant had a financial interest in, or signature or other authority
24  over, a bank account with Woori Bank in South Korea with an account
25  number ending in 2033 with a maximum value during that period of
26  ₩196,284,110 in the month of February.

27  **Response to Request No. 140:** Defendant cannot truthfully admit or
28  deny at this time and therefore, denies. Defendant is reviewing

available records. When the information sought is known, Defendant will supplement this response.

141. During the period between January 1, 2011 and December 31, 2011, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 2323 with a maximum value during that period of ₩9,144,218,750 in the month of April.

**Response to Request No. 141:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

142. During the period between January 1, 2011 and December 31, 2011, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 3441 with a maximum value during that period of ₩163,637,765 in the month of May.

**Response to Request No. 142:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

143. During the period between January 1, 2011 and December 31, 2011, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 3570 with a maximum value during that period of ₩878,049,687 in the month of April.

**Response to Request No. 143:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing

available records. When the information sought is known, Defendant
will supplement this response.

144. During the period between January 1, 2011 and December 31, 2011,
Defendant had a financial interest in, or signature or other authority
over, a bank account with Woori Bank in South Korea with an account
number ending in 4681 with a maximum value during that period of
₩2,443,030,079 in the month of June.

**Response to Request No. 144:** Defendant cannot truthfully admit or
deny at this time and therefore, denies. Defendant is reviewing
available records. When the information sought is known, Defendant
will supplement this response.

145. During the period between January 1, 2011 and December 31, 2011,
Defendant had a financial interest in, or signature or other authority
over, a bank account with Woori Bank in South Korea with an account
number ending in 4889 with a maximum value during that period of
₩906,297,396 in the month of July.

**Response to Request No. 145:** Defendant cannot truthfully admit or
deny at this time and therefore, denies. Defendant is reviewing
available records. When the information sought is known, Defendant
will supplement this response.

146. During the period between January 1, 2011 and December 31, 2011,
Defendant had a financial interest in, or signature or other authority
over, a bank account with Woori Bank in South Korea with an account
number ending in 5417 with a maximum value during that period of
₩582,542,380 in the month of July.

**Response to Request No. 146:** Defendant cannot truthfully admit or
deny at this time and therefore, denies. Defendant is reviewing

available records. When the information sought is known, Defendant will supplement this response.

147. During the period between January 1, 2011 and December 31, 2011, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 6411 with a maximum value during that period of ₩199,558,191 in the month of April.

**Response to Request No. 147:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

148. During the period between January 1, 2011 and December 31, 2011, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 9362 with a maximum value during that period of ₩841,187,510 in the month of March.

**Response to Request No. 148:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

**Foreign Bank Accounts in 2012**

149. During the period between January 1, 2012 and December 31, 2012, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 2001 with a maximum value during that period of ₩140,335,746 in the month of October.

**Response to Request No. 149:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing

available records. When the information sought is known, Defendant will supplement this response.

150. During the period between January 1, 2012 and December 31, 2012, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 3441 with a maximum value during that period of ₩140,335,746 in the month of October.

**Response to Request No. 150:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

151. During the period between January 1, 2012 and December 31, 2012, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 3558 with a maximum value during that period of ₩3,240,583,021 in the month of December.

**Response to Request No. 151:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

152. During the period between January 1, 2012 and December 31, 2012, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 3908 with a maximum value during that period of ₩110,023,721 in the month of January.

**Response to Request No. 152:** Denies.

153. During the period between January 1, 2012 and December 31, 2012, Defendant had a financial interest in, or signature or other authority

over, a bank account with Woori Bank in South Korea with an account number ending in 4681 with a maximum value during that period of ₩1,030,076,740 in the month of February.

**Response to Request No. 153:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

154. During the period between January 1, 2012 and December 31, 2012, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 4889 with a maximum value during that period of ₩1,001,030,833 in the month of September.

**Response to Request No. 154:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

155. During the period between January 1, 2012 and December 31, 2012, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 5183 with a maximum value during that period of ₩110,911,770 in the month of February.

**Response to Request No. 155:** Denies.

156. During the period between January 1, 2012 and December 31, 2012, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 5417 with a maximum value during that period of ₩331,855,999 in the month of February.

**Response to Request No. 156:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

157. During the period between January 1, 2012 and December 31, 2012, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 8765 with a maximum value during that period of ₩683,085,380 in the month of November.

**Response to Request No. 157:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

158. During the period between January 1, 2012 and December 31, 2012, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 9362 with a maximum value during that period of ₩681,541,120 in the month of May.

**Response to Request No. 158:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

159. During the period between January 1, 2012 and December 31, 2012, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 9546 with a maximum value during that period of ₩3,006,985,340 in the month of February.

1
2
3
4

**Response to Request No. 159:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

5
6
7
8
9

160. During the period between January 1, 2012 and December 31, 2012, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 9689 with a maximum value during that period of ₩128,257,690 in the month of January.

10
11
12
13

**Response to Request No. 160:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

14 **D. Currency Exchange Rates**

15
16

161. For the year 2009, the exchange rate to convert South Korean Won to United States Dollars at the end of each month was as follows:

17

| 2009 | |
|---|---|
| January | 0.00072485 |
| February | 0.00065007 |
| March | 0.00072778 |
| April | 0.00078247 |
| May | 0.00079729 |
| June | 0.00078536 |
| July | 0.00081786 |
| August | 0.00080418 |
| September | 0.00084955 |

28

| October | 0.00084417 |
|---|---|
| November | 0.00086007 |
| December | 0.00085758 |

**Response to Request No. 161:** Denies.

162. For the year 2010, the exchange rate to convert South Korean Won to United States Dollars at the end of each month was as follows:

| 2010 | |
|---|---|
| January | 0.00086992 |
| February | 0.00086239 |
| March | 0.00094280 |
| April | 0.00092913 |
| May | 0.00086148 |
| June | 0.00085651 |
| July | 0.00091488 |
| August | 0.00088671 |
| September | 0.00081697 |
| October | 0.00084716 |
| November | 0.00091339 |
| December | 0.00093714 |

**Response to Request No. 162:** Denies.

163. For the year 2011, the exchange rate to convert South Korean Won to United States Dollars at the end of each month was as follows:

| 2011 | |
|---|---|
| January | 0.00095942 |
| February | 0.00082871 |

| March | 0.00084988 |
|---|---|
| April | 0.00088510 |
| May | 0.00086440 |
| June | 0.00087002 |
| July | 0.00100700 |
| August | 0.00100660 |
| September | 0.00080323 |
| October | 0.00083119 |
| November | 0.00087737 |
| December | 0.00093713 |

**Response to Request No. 163:** Denies.

164. For the year 2012, the exchange rate to convert South Korean Won to United States Dollars at the end of each month was as follows:

| 2012 | |
|---|---|
| January | 0.00088807 |
| February | 0.00089290 |
| March | 0.00088304 |
| April | 0.00088483 |
| May | 0.00084722 |
| June | 0.00087281 |
| July | 0.00088426 |
| August | 0.00088108 |
| September | 0.00089849 |
| October | 0.00091692 |
| November | 0.00092347 |
| December | 0.00094085 |

**Response to Request No. 164:** Denies.

**E. Foreign Bank Accounts in US Dollars**

**Foreign Bank Accounts in 2009**

165. During the period between January 1, 2009 and December 31, 2009, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 0361 with a maximum value during that period of approximately $1,217,582 in the month of July.

**Response to Request No. 165:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

166. During the period between January 1, 2009 and December 31, 2009, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 0365 with a maximum value during that period of approximately $264,209 in the month of July.

**Response to Request No. 166:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

167. During the period between January 1, 2009 and December 31, 2009, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 0368 with a maximum value during that period of approximately $266,384 in the month of July.

1
2
3
4

**Response to Request No. 167:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

5
6
7
8
9

168.   During the period between January 1, 2009 and December 31, 2009, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 2033 with a maximum value during that period of approximately $1,430,707 in the month of March.

10
11
12
13

**Response to Request No. 168:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

14
15
16
17
18

169.   During the period between January 1, 2009 and December 31, 2009, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 2308 with a maximum value during that period of approximately $536,492 in the month of July.

19
20
21
22

**Response to Request No. 169:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

23
24
25
26
27

170.   During the period between January 1, 2009 and December 31, 2009, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 3441 with a maximum value during that period of approximately $1,677,843 in the month of April.

28

1
2
3
4

**Response to Request No. 170:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

5
6
7
8
9

171.  During the period between January 1, 2009 and December 31, 2009, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 3626 with a maximum value during that period of approximately $1,594,578 in the month of May.

10
11
12
13

**Response to Request No. 171:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

14
15
16
17
18

172.  During the period between January 1, 2009 and December 31, 2009, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 4317 with a maximum value during that period of approximately $472,484 in the month of September.

19
20
21
22

**Response to Request No. 172:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

23
24
25
26
27

173.  During the period between January 1, 2009 and December 31, 2009, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 5806 with a maximum value during that period of approximately $175,928 in the month of July.

28

**Response to Request No. 173:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

174.   During the period between January 1, 2009 and December 31, 2009, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 6005 with a maximum value during that period of approximately $1,674,537 in the month of September.

**Response to Request No. 174:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

175.   During the period between January 1, 2009 and December 31, 2009, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 6411 with a maximum value during that period of approximately $528,352 in the month of June.

**Response to Request No. 175:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

176.   During the period between January 1, 2009 and December 31, 2009, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 6658 with a maximum value during that period of approximately $2,034,712 in the month of December.

1
2
3
4

**Response to Request No. 176:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

5
6
7
8
9

177. During the period between January 1, 2009 and December 31, 2009, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 6817 with a maximum value during that period of approximately $438,357 in the month of December.

10
11
12
13

**Response to Request No. 177:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

14

**Foreign Bank Accounts in 2010**

15
16
17
18
19

178. During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 1017 with a maximum value during that period of approximately $1,829,760 in the month of July.

20
21
22
23

**Response to Request No. 178:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

24
25
26
27
28

179. During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 1478 with a maximum value during that period of approximately $487,504 in the month of January.

1

**Response to Request No. 179:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

180. During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 2033 with a maximum value during that period of approximately $967,267 in the month of May.

**Response to Request No. 180:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

181. During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 2274 with a maximum value during that period of approximately $5,410,828 in the month of July.

**Response to Request No. 181:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

182. During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 2323 with a maximum value during that period of approximately $8,339,809 in the month of November.

**Response to Request No. 182:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

183. During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 2567 with a maximum value during that period of approximately $578,818 in the month of January.

**Response to Request No. 183:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

184. During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 2748 with a maximum value during that period of approximately $423,580 in the month of October.

**Response to Request No. 184:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

185. During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 3441 with a maximum value during that period of approximately $136,278 in the month of June.

1   **Response to Request No. 185:** Defendant cannot truthfully admit or
2   deny at this time and therefore, denies. Defendant is reviewing
3   available records. When the information sought is known, Defendant
4   will supplement this response.
5   186.   During the period between January 1, 2010 and December 31, 2010,
6   Defendant had a financial interest in, or signature or other authority
7   over, a bank account with Woori Bank in South Korea with an account
8   number ending in 4207 with a maximum value during that period of
9   approximately $2,190,102 in the month of July.
10   **Response to Request No. 186:** Defendant cannot truthfully admit or
11   deny at this time and therefore, denies. Defendant is reviewing
12   available records. When the information sought is known, Defendant
13   will supplement this response.
14   187.   During the period between January 1, 2010 and December 31, 2010,
15   Defendant had a financial interest in, or signature or other authority
16   over, a bank account with Woori Bank in South Korea with an account
17   number ending in 4765 with a maximum value during that period of
18   approximately $5,084,023 in the month of March.
19   **Response to Request No. 187:** Defendant cannot truthfully admit or
20   deny at this time and therefore, denies. Defendant is reviewing
21   available records. When the information sought is known, Defendant
22   will supplement this response.
23   188.   During the period between January 1, 2010 and December 31, 2010,
24   Defendant had a financial interest in, or signature or other authority
25   over, a bank account with Woori Bank in South Korea with an account
26   number ending in 4889 with a maximum value during that period of
27   approximately $849,328 in the month of December.
28

54

**Response to Request No. 188:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

189. During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 6397 with a maximum value during that period of approximately $1,063,945 in the month of November.

**Response to Request No. 189:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

190. During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 7795 with a maximum value during that period of approximately $270,687 in the month of July.

**Response to Request No. 190:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

191. During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 9362 with a maximum value during that period of approximately $1,148,057 in the month of September.

**Response to Request No. 191:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

192. During the period between January 1, 2010 and December 31, 2010, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 9368 with a maximum value during that period of approximately $424,488 in the month of October.

**Response to Request No. 192:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

**Foreign Bank Accounts in 2011**

193. During the period between January 1, 2011 and December 31, 2011, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 0302 with a maximum value during that period of approximately $2,195,780 in the month of July.

**Response to Request No. 193:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

194. During the period between January 1, 2011 and December 31, 2011, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 0758 with a maximum value during that period of approximately $3,021,000 in the month of July.

56

1
2
3
4

**Response to Request No. 194:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

5
6
7
8
9

195.   During the period between January 1, 2011 and December 31, 2011, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 2033 with a maximum value during that period of approximately $162,663 in the month of February.

10
11
12
13

**Response to Request No. 195:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

14
15
16
17
18

196.   During the period between January 1, 2011 and December 31, 2011, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 2323 with a maximum value during that period of approximately $8,093,548 in the month of April.

19
20
21
22

**Response to Request No. 196:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

23
24
25
26
27

197.   During the period between January 1, 2011 and December 31, 2011, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 3441 with a maximum value during that period of approximately $141,448 in the month of May.

28

1
2
3
4

**Response to Request No. 197:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

5
6
7
8
9

198.  During the period between January 1, 2011 and December 31, 2011, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 3570 with a maximum value during that period of approximately $777,162 in the month of April.

10
11
12
13

**Response to Request No. 198:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

14
15
16
17
18

199.  During the period between January 1, 2011 and December 31, 2011, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 4681 with a maximum value during that period of approximately $2,125,485 in the month of June.

19
20
21
22

**Response to Request No. 199:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

23
24
25
26
27

200.  During the period between January 1, 2011 and December 31, 2011, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 4889 with a maximum value during that period of approximately $912,641 in the month of July.

28

**Response to Request No. 200:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

201.   During the period between January 1, 2011 and December 31, 2011, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 5417 with a maximum value during that period of approximately $586,620 in the month of July.

**Response to Request No. 201:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

202.   During the period between January 1, 2011 and December 31, 2011, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 6411 with a maximum value during that period of approximately $176,629 in the month of April.

**Response to Request No. 202:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

203.   During the period between January 1, 2011 and December 31, 2011, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 9362 with a maximum value during that period of approximately $714,908 in the month of March.

1   **Response to Request No. 203:** Defendant cannot truthfully admit or
2   deny at this time and therefore, denies. Defendant is reviewing
3   available records. When the information sought is known, Defendant
4   will supplement this response.

5   **Foreign Bank Accounts in 2012**

6   204.   During the period between January 1, 2012 and December 31, 2012,
7   Defendant had a financial interest in, or signature or other authority
8   over, a bank account with Woori Bank in South Korea with an account
9   number ending in 2001 with a maximum value during that period of
10  approximately $128,677 in the month of October.

11  **Response to Request No. 204:** Defendant cannot truthfully admit or
12  deny at this time and therefore, denies. Defendant is reviewing
13  available records. When the information sought is known, Defendant
14  will supplement this response.

15  205.   During the period between January 1, 2012 and December 31, 2012,
16  Defendant had a financial interest in, or signature or other authority
17  over, a bank account with Woori Bank in South Korea with an account
18  number ending in 3441 with a maximum value during that period of
19  approximately $128,677 in the month of October.

20  **Response to Request No. 205:** Defendant cannot truthfully admit or
21  deny at this time and therefore, denies. Defendant is reviewing
22  available records. When the information sought is known, Defendant
23  will supplement this response.

24  206.   During the period between January 1, 2012 and December 31, 2012,
25  Defendant had a financial interest in, or signature or other authority
26  over, a bank account with Woori Bank in South Korea with an account
27  number ending in 3558 with a maximum value during that period of
28  approximately $3,048,903 in the month of December.

1
2
3
4

**Response to Request No. 206:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

5
6
7
8
9

207. During the period between January 1, 2012 and December 31, 2012, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 3908 with a maximum value during that period of approximately $97,709 in the month of January.

10

**Response to Request No. 207:** Denies.

11
12
13
14
15

208. During the period between January 1, 2012 and December 31, 2012, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 4681 with a maximum value during that period of approximately $919,756 in the month of February.

16
17
18
19

**Response to Request No. 208:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

20
21
22
23
24

209. During the period between January 1, 2012 and December 31, 2012, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 4889 with a maximum value during that period of approximately $899,416 in the month of September.

25
26
27
28

**Response to Request No. 209:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

210. During the period between January 1, 2012 and December 31, 2012, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 5183 with a maximum value during that period of approximately $99,033 in the month of February.

**Response to Request No. 210:** Denies.

211. During the period between January 1, 2012 and December 31, 2012, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 5417 with a maximum value during that period of approximately $296,314 in the month of February.

**Response to Request No. 211:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

212. During the period between January 1, 2012 and December 31, 2012, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 8765 with a maximum value during that period of approximately $630,809 in the month of November.

**Response to Request No. 212:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

213. During the period between January 1, 2012 and December 31, 2012, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account

number ending in 9362 with a maximum value during that period of approximately $577,415 in the month of May.

**Response to Request No. 213:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

214.  During the period between January 1, 2012 and December 31, 2012, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 9546 with a maximum value during that period of approximately $2,684,937 in the month of February.

**Response to Request No. 214:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

215.  During the period between January 1, 2012 and December 31, 2012, Defendant had a financial interest in, or signature or other authority over, a bank account with Woori Bank in South Korea with an account number ending in 9689 with a maximum value during that period of approximately $113,902 in the month of January.

**Response to Request No. 215:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

**F. FBAR Filings**

**Combined foreign assets**

216. In 2009, Defendant had a financial interest in, or signature or other authority over foreign bank accounts that had combined monthly foreign bank account balances that averaged over $5,000,000.

**Response to Request No. 216:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

217. In 2010, Defendant had a financial interest in, or signature or other authority over foreign bank accounts that had combined monthly foreign bank account balances that averaged over $8,000,000.

**Response to Request No. 217:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

218. In 2011, Defendant had a financial interest in, or signature or other authority over foreign bank accounts that had combined monthly foreign bank account balances that averaged over $7,000,000.

**Response to Request No. 218:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

219. In 2012, Defendant had a financial interest in, or signature or other authority over foreign bank accounts that had combined monthly foreign bank account balances that averaged over $4,000,000.

**Response to Request No. 219:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

**FBAR filing requirement**

220.  Defendant was required to file a Report of Foreign Bank and Financial Accounts (Form TD F 90-22.1) by June 30, 2010 and report all foreign bank accounts that she had a financial interest in, or signature or other authority over that exceeded $10,000 between January 1, 2009 and December 31, 2009.

**Response to Request No. 220:** Admits.

221.  Defendant was required to file a Report of Foreign Bank and Financial Accounts (Form TD F 90-22.1) by June 30, 2011 and report all foreign bank accounts that she had a financial interest in, or signature or other authority over that exceeded $10,000 between January 1, 2010 and December 31, 2010.

**Response to Request No. 221:** Admits.

222.  Defendant was required to file a Report of Foreign Bank and Financial Accounts (Form TD F 90-22.1) by June 30, 2012 and report all foreign bank accounts that she had a financial interest in, or signature or other authority over that exceeded $10,000 between January 1, 2011 and December 31, 2011.

**Response to Request No. 222:** Admits.

223.  Defendant was required to file a Report of Foreign Bank and Financial Accounts (Form TD F 90-22.1) by June 30, 2013 and report all foreign bank accounts that she had a financial interest in, or signature or other authority over that exceeded $10,000 between January 1, 2012 and December 31, 2012.

**Response to Request No. 223:** Admits.

**Knowledge of FBAR filing requirement**

224.  As of June 30, 2010, Defendant knew that she was required to file by June 30, 2010, a Report of Foreign Bank and Financial Accounts (Form

65

TD F 90-22.1) and report all foreign bank accounts that she had a financial interest in, or signature or other authority over that exceeded $10,000 between January 1, 2009 and December 31, 2009.

**Response to Request No. 224:** Denies.

225. As of June 30, 2011, Defendant knew that she was required to file by June 30, 2010, a Report of Foreign Bank and Financial Accounts (Form TD F 90-22.1) by June 30, 2011 and report all foreign bank accounts that she had a financial interest in, or signature or other authority over that exceeded $10,000 between January 1, 2010 and December 31, 2010.

**Response to Request No. 225:** Denies.

226. As of June 30, 2012, Defendant knew that she was required to file by June 30, 2012, a Report of Foreign Bank and Financial Accounts (Form TD F 90-22.1) by June 30, 2012 and report all foreign bank accounts that she had a financial interest in, or signature or other authority over that exceeded $10,000 between January 1, 2011 and December 31, 2011.

**Response to Request No. 226:** Denies.

227. As of June 30, 2013, Defendant knew that she was required to file by June 30, 2010, a Report of Foreign Bank and Financial Accounts (Form TD F 90-22.1) by June 30, 2013 and report all foreign bank accounts that she had a financial interest in, or signature or other authority over that exceeded $10,000 between January 1, 2012 and December 31, 2012.

**Response to Request No. 227:** Denies.

**Filed FBARs**

228. Defendant filed a Report of Foreign Bank and Financial Accounts (Form TD F 90-22.1) for the year 2009.

66

1    **Response to Request No. 228:** Admits.

2    229.  The following is a summary of the foreign bank accounts reported by

3          Defendant on her 2009 Report of Foreign Bank and Financial Accounts

4          (Form TD F 90-22.1):

| Foreign Bank Listed by Defendant on FBAR | Last 4 of Account Number | Maximum Value Reported |
|---|---|---|
| Standard Chartered First Bank Korea Limited | 2994 | $ 79,953 |
| Standard Chartered First Bank Korea Limited | 3627 | $ 7,180 |
| Standard Chartered First Bank Korea Limited | 0218 | $ 85,872 |
| Woori Bank | 6411 | $ 319,716 |
| Total Reported on FBAR for 2009 | | $ 492,721 |

13   **Response to Request No. 229:** Denies.

14   230.  Defendant filed a Report of Foreign Bank and Financial Accounts

15         (Form TD F 90-22.1) for the year 2010.

16         **Response to Request No. 230:** Admits.

17   231.  The following is a summary of the foreign bank accounts reported by

18         Defendant on her 2010 Report of Foreign Bank and Financial Accounts

19         (Form TD F 90-22.1):

| Foreign Bank Listed by Defendant on FBAR | Last 4 of Account Number | Maximum Value Reported |
|---|---|---|
| Laura Hija J Kim (Savings) | N/A | $ 90,417 |
| Woori Bank | 1003 | $ 211,471 |
| Woori Bank | 9362 | $ 305,885 |
| Total Reported on FBAR for 2010 | | $ 607,773 |

27   **Response to Request No. 231:** Denies.

67

232. Defendant filed a Report of Foreign Bank and Financial Accounts (Form TD F 90-22.1) for the year 2011.

**Response to Request No. 232:** Admits.

233. The following is a summary of the foreign bank accounts reported by Defendant on her 2011 Report of Foreign Bank and Financial Accounts (Form TD F 90-22.1):

| Foreign Bank Listed by Defendant on FBAR | Last 4 of Account Number | Maximum Value Reported |
|---|---|---|
| Woori Bank | 5527 | $ 88,811 |
| Standard Chartered First Bank Korea Limited | 1528 | $ 175,000 |
| Total Reported on FBAR for 2011 | | $ 263,811 |

**Response to Request No. 233:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

234. Defendant filed a Report of Foreign Bank and Financial Accounts (Form TD F 90-22.1) for the year 2012.

**Response to Request No. 234:** Admits.

235. The following is a summary of the foreign bank accounts reported by Defendant on her 2012 Report of Foreign Bank and Financial Accounts (Form TD F 90-22.1):

| Foreign Bank Listed by Defendant on FBAR | Last 4 of Account Number | Maximum Value Reported |
|---|---|---|
| Woori Bank | 61AB | $ 435,389 |
| Standard Chartered First Bank Korea Limited | 7610 | $ 59,627 |
| Total Reported on FBAR for 2012 | | $ 495,016 |

1   **Response to Request No. 235:** Defendant cannot truthfully admit or
2   deny at this time and therefore, denies. Defendant is reviewing
3   available records. When the information sought is known, Defendant
4   will supplement this response.

5   **G. Income Tax Returns**

6   236.   For tax years 2009 through 2012, Defendant's federal income tax
7          returns were prepared by Michael Khim, CPA.

8          **Response to Request No. 236:** Admits.

9   237.   For tax years 2009 through 2012, Defendant's federal income tax
10         returns were prepared by the Michael K. Khim Accountancy
11         Corporation.

12         **Response to Request No. 237:** Admits.

13  **Tax Year 2009**

14  238.   For tax year 2009, some or all of the foreign bank accounts for which
15         Defendant had a financial interest in, or signature or other authority
16         over earned interest income.

17         **Response to Request No. 238:** Admit.

18  239.   For tax year 2009, Defendant did not disclose all the foreign bank
19         accounts for which she had a financial interest in, or signature or other
20         authority over to Michael Khim before her income tax return was filed.

21         **Response to Request No. 239:** Admits.

22  240.   For tax year 2009, Defendant understated her interest income on her
23         U.S. Individual Income Tax Return (Form 1040) from the foreign bank
24         accounts for which she had a financial interest in, or signature or other
25         authority over.

26         **Response to Request No. 240:** Denies.

27  241.   For tax year 2009, Defendant understated her tax liability on her U.S.
28         Individual Income Tax Return (Form 1040).

69

1    **Response to Request No. 241:** Denies.

2    242.   For tax year 2009, Defendant reviewed her U.S. Individual Income Tax

3    Return (Form 1040) before it was filed with the IRS.

4    **Response to Request No. 242:** Admits.

5    243.   For tax year 2009, Defendant signed her U.S. Individual Income Tax

6    Return (Form 1040) under penalties of perjury affirming that she had

7    examined her tax returns and accompanying schedules and to the best

8    of her knowledge and belief, they were true, correct, and complete.

9    **Response to Request No. 243:** Admits.

10   244.   For tax year 2009, Defendant authorized the filing of her U.S.

11   Individual Income Tax Return (Form 1040) before it was filed with the

12   IRS.

13   **Response to Request No. 244:** Admits.

14   **Tax Year 2010**

15   245.   For tax year 2010, some or all of the foreign bank accounts for which

16   Defendant had a financial interest in, or signature or other authority

17   over earned interest income.

18   **Response to Request No. 245:** Admits.

19   246.   For tax year 2010, Defendant did not disclose all the foreign bank

20   accounts for which she had a financial interest in, or signature or other

21   authority over to Michael Khim before her income tax return was filed.

22   **Response to Request No. 246:** Admits.

23   247.   For tax year 2010, Defendant understated her interest income on her

24   U.S. Individual Income Tax Return (Form 1040) from the foreign bank

25   accounts for which she had a financial interest in, or signature or other

26   authority over.

27   **Response to Request No. 247:** Admits.

28

70

248. For tax year 2010, Defendant understated her tax liability on her U.S. Individual Income Tax Return (Form 1040).

**Response to Request No. 248:** Admits.

249. For tax year 2010, Defendant reviewed her U.S. Individual Income Tax Return (Form 1040) before it was filed with the IRS.

**Response to Request No. 250:** Admits.

250. For tax year 2010, Defendant signed her U.S. Individual Income Tax Return (Form 1040) under penalties of perjury affirming that she had examined her tax returns and accompanying schedules and to the best of her knowledge and belief, they were true, correct, and complete.

**Response to Request No. 251:** Admits.

251. For tax year 2010, Defendant authorized the filing of her U.S. Individual Income Tax Return (Form 1040) before it was filed with the IRS.

**Response to Request No. 251:** Admits.

**Tax Year 2011**

252. For tax year 2011, some or all of the foreign bank accounts for which Defendant had a financial interest in, or signature or other authority over earned interest income.

**Response to Request No. 252:** Admits.

253. For tax year 2011, Defendant did not disclose all the foreign bank accounts for which she had a financial interest in, or signature or other authority over to Michael Khim before her income tax return was filed.

**Response to Request No. 253:** Admits.

254. For tax year 2011, Defendant understated her interest income on her U.S. Individual Income Tax Return (Form 1040) from the foreign bank accounts for which she had a financial interest in, or signature or other authority over.

1    **Response to Request No. 254:** Admits.

2    255. For tax year 2011, Defendant understated her tax liability on her U.S.

3    Individual Income Tax Return (Form 1040).

4    **Response to Request No. 255:** Admits.

5    256. For tax year 2011, Defendant reviewed her U.S. Individual Income Tax

6    Return (Form 1040) before it was filed with the IRS.

7    **Response to Request No. 256:** Admits.

8    257. For tax year 2011, Defendant signed her U.S. Individual Income Tax

9    Return (Form 1040) under penalties of perjury affirming that she had

10   examined her tax returns and accompanying schedules and to the best

11   of her knowledge and belief, they were true, correct, and complete.

12   **Response to Request No. 257:** Admits.

13   258. For tax year 2011, Defendant authorized the filing of her U.S.

14   Individual Income Tax Return (Form 1040) before it was filed with the

15   IRS.

16   **Response to Request No. 258:** Admits.

17   **Tax Year 2012**

18   259. For tax year 2012, some or all of the foreign bank accounts for which

19   Defendant had a financial interest in, or signature or other authority

20   over earned interest income.

21   **Response to Request No. 259:** Admits.

22   260. For tax year 2012, Defendant did not disclose all the foreign bank

23   accounts for which she had a financial interest in, or signature or other

24   authority over to Michael Khim before her income tax return was filed.

25   **Response to Request No. 260:** Defendant cannot truthfully admit or

26   deny at this time and therefore, denies. Defendant is reviewing

27   available records. When the information sought is known, Defendant

28   will supplement this response.

72

261. For tax year 2012, Defendant understated her interest income on her U.S. Individual Income Tax Return (Form 1040) from the foreign bank accounts for which she had a financial interest in, or signature or other authority over.

**Response to Request No. 261:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

262. For tax year 2012, Defendant understated her tax liability on her U.S. Individual Income Tax Return (Form 1040).

**Response to Request No. 262:** Admits.

263. For tax year 2012, Defendant reviewed her U.S. Individual Income Tax Return (Form 1040) before it was filed with the IRS.

**Response to Request No. 263:** Admits.

264. For tax year 2012, Defendant signed her U.S. Individual Income Tax Return (Form 1040) under penalties of perjury affirming that she had examined her tax returns and accompanying schedules and to the best of her knowledge and belief, they were true, correct, and complete.

**Response to Request No. 264:** Admits.

265. For tax year 2012, Defendant authorized the filing of her U.S. Individual Income Tax Return (Form 1040) before it was filed with the IRS.

**Response to Request No. 265:** Admits.

**H. Defendant did not report all of her foreign bank accounts**

266. The following is a summary for 2009 of foreign bank accounts that Defendant had a financial interest in, or signature authority over, with a maximum value over $90,000 during the year, the amount she did report, the value of the account on the date the FBAR was due to be

73

filed if it was over $200,000, and the maximum willful FBAR penalty that could have been assessed on those accounts:

| Foreign Bank | Last 4 of Account Number | Maximum Value in 2009 | Maximum Value Reported by Defendant on FBAR | Value on June 30, 2010 (if over $200,000) | Maximum Willful FBAR Penalty |
|---|---|---|---|---|---|
| Woori Bank | 0361 | $ 1,217,582 | $ - | | $ 100,000 |
| Woori Bank | 0365 | $ 264,209 | $ - | | $ 100,000 |
| Woori Bank | 0368 | $ 266,384 | $ - | | $ 100,000 |
| Woori Bank | 2033 | $ 1,430,707 | $ - | | $ 100,000 |
| Woori Bank | 2308 | $ 536,492 | $ - | | $ 100,000 |
| Woori Bank | 3441 | $ 1,677,843 | $ - | | $ 100,000 |
| Woori Bank | 3626 | $ 1,594,578 | $ - | | $ 100,000 |
| Woori Bank | 4317 | $ 472,484 | $ - | | $ 100,000 |
| Woori Bank | 5806 | $ 175,928 | $ - | | $ 100,000 |
| Woori Bank | 6005 | $ 1,674,537 | $ - | | $ 100,000 |
| Woori Bank | 6411 | $ 528,352 | $ 319,716 | | $ 100,000 |
| Woori Bank | 6658 | $ 2,034,712 | $ - | | $ 100,000 |
| Woori Bank | 6817 | $ 438,357 | $ - | | $ 100,000 |
| | | | | Total Maximum Penalty | $ 1,300,000 |

**Response to Request No. 266:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

267. The following is a summary for 2010 of foreign bank accounts that Defendant had a financial interest in, or signature authority over, with a maximum value over $90,000 during the year, the amount she did report, the value of the account on the date the FBAR was due to be filed if it was over $200,000, and the maximum willful FBAR penalty that could have been assessed on those accounts:

| Foreign Bank | Last 4 of Account Number | Maximum Value in 2010 | Maximum Value Reported by Defendant on FBAR | Value on June 30, 2011 (if over $200,000) | Maximum Willful FBAR Penalty |
|---|---|---|---|---|---|
| Woori Bank | 1017 | $ 1,829,760 | $ - | | $ 100,000 |
| Woori Bank | 1478 | $ 487,504 | $ - | | $ 100,000 |
| Woori Bank | 2033 | $ 967,267 | $ - | | $ 100,000 |
| Woori Bank | 2274 | $ 5,410,828 | $ - | | $ 100,000 |
| Woori Bank | 2323 | $ 8,339,809 | $ - | | $ 100,000 |
| Woori Bank | 2567 | $ 578,818 | $ - | | $ 100,000 |
| Woori Bank | 2748 | $ 423,580 | $ - | | $ 100,000 |
| Woori Bank | 3441 | $ 136,278 | $ - | | $ 100,000 |
| Woori Bank | 4207 | $ 2,190,102 | $ - | | $ 100,000 |
| Woori Bank | 4765 | $ 5,084,023 | $ - | | $ 100,000 |
| Woori Bank | 4889 | $ 849,328 | $ - | $ 788,497 | $ 394,248 |
| Woori Bank | 6397 | $ 1,063,945 | $ - | | $ 100,000 |
| Woori Bank | 7795 | $ 270,687 | $ - | | $ 100,000 |
| Woori Bank | 9362 | $ 1,148,057 | $ 305,885 | $ 204,453 | $ 102,226 |
| Woori Bank | 9368 | $ 424,488 | $ - | | $ 100,000 |
| | | | Total Maximum Penalty | | $ 1,796,474 |

**Response to Request No. 267:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

268. The following is a summary for 2011 of foreign bank accounts that Defendant had a financial interest in, or signature authority over, with a maximum value over $90,000 during the year, the amount she did report, the value of the account on the date the FBAR was due to be filed if it was over $200,000, and the maximum willful FBAR penalty that could have been assessed on those accounts:

| Foreign Bank | Last 4 of Account Number | Maximum Value in 2011 | Maximum Value Reported by Defendant on FBAR | Value on June 30, 2012 (if over $200,000) | Maximum Willful FBAR Penalty |
|---|---|---|---|---|---|
| Woori Bank | 0302 | $ 2,195,780 | $ - | | $ 100,000 |
| Woori Bank | 0758 | $ 3,021,000 | $ - | | $ 100,000 |
| Woori Bank | 2033 | $ 162,663 | $ - | | $ 100,000 |
| Woori Bank | 2323 | $ 8,093,548 | $ - | | $ 100,000 |
| Woori Bank | 3441 | $ 141,448 | $ - | | $ 100,000 |
| Woori Bank | 3570 | $ 777,162 | $ - | | $ 100,000 |
| Woori Bank | 4681 | $ 2,125,485 | $ - | $ 672,656 | $ 336,328 |
| Woori Bank | 4889 | $ 912,641 | $ - | $ 830,069 | $ 415,035 |
| Woori Bank | 5417 | $ 586,620 | $ - | | $ 100,000 |
| Woori Bank | 6411 | $ 176,629 | $ - | | $ 100,000 |
| Woori Bank | 9362 | $ 714,908 | $ 305,885 | | $ 100,000 |
| | | | | Total Maximum Penalty | $ 1,651,363 |

**Response to Request No. 268:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

269. The following is a summary for 2012 of foreign bank accounts that Defendant had a financial interest in, or signature authority over, with a maximum value over $90,000 during the year, the amount she did report, the value of the account on the date the FBAR was due to be filed if it was over $200,000, and the maximum willful FBAR penalty that could have been assessed on those accounts:

| Foreign Bank | Last 4 of Account Number | Maximum Value in 2012 | Maximum Value Reported by Defendant on FBAR | Value on June 30, 2013 (if over $200,000) | Maximum Willful FBAR Penalty |
|---|---|---|---|---|---|
| Woori Bank | 2001 | $ 128,677 | $ - | | $ 100,000 |
| Woori Bank | 3441 | $ 128,677 | $ - | | $ 100,000 |
| Woori Bank | 3558 | $ 3,048,903 | $ - | $ 2,780,514 | $ 1,390,257 |
| Woori Bank | 3908 | $ 97,709 | $ - | | $ 100,000 |
| Woori Bank | 4681 | $ 919,756 | $ - | | $ 100,000 |
| Woori Bank | 4889 | $ 899,416 | $ - | $ 930,959 | $ 465,480 |
| Woori Bank | 5183 | $ 99,033 | $ - | | $ 100,000 |
| Woori Bank | 5417 | $ 296,314 | $ - | | $ 100,000 |
| Woori Bank | 8765 | $ 630,809 | $ - | | $ 100,000 |
| Woori Bank | 9362 | $ 577,415 | $ - | $ 550,437 | $ 275,219 |
| Woori Bank | 9546 | $ 2,684,937 | $ - | | $ 100,000 |
| Woori Bank | 9689 | $ 113,902 | $ - | | $ 100,000 |
| | | | | Total Maximum Penalty | $ 3,030,955 |

**Response to Request No. 269:** Defendant cannot truthfully admit or deny at this time and therefore, denies. Defendant is reviewing available records. When the information sought is known, Defendant will supplement this response.

**I. FBAR Penalty Assessment**

270.  On August 20, 2019, the IRS assessed willful FBAR penalties against Defendant for tax years 2009 through 2012 in the amount of $1,014,109.85 per year for a total of $4,056,439.40.

**Response to Request No. 270:** Defendant does not have access to the government's internal records, lacks sufficient information to admit or deny, and therefore denies.

271.  On August 26, 2019, notice and demand for payment was sent to Defendant for tax years 2009 through 2012.

**Response to Request No. 271:** Defendant does not have access to the government's internal records, lacks sufficient information to admit or deny, and therefore denies.

77

272. Despite timely notice and demand for payment of the FBAR
assessment, Defendant has failed to pay the FBAR and late payment
penalties assessed against him for tax years 2009 through 2012.

**Response to Request No. 272:** Denies.

273. Interest and penalties have accrued on the assessed FBAR penalties as
provided by law.

**Response to Request No. 273:** Defendant does not have access to the
government's internal records, lacks sufficient information to admit or
deny, and therefore denies.

274. As of August 6, 2020, Defendant was liable to the United States for
$4,330,276.85, which is comprised of the FBAR penalty, interest, and
penalties for late payment under 31 U.S.C. § 3717(e)(2) for tax years
2009 through 2012.

**Response to Request No. 274:** Denies.

April 25, 2022

 *s/ Caroline D. Ciraolo*
Caroline D. Ciraolo
William G. Greco
Kostelanetz & Fink, LLP
601 New Jersey Ave, NW, Ste. 260
Washington, DC 20001
Telephone: (202) 875-8000
cciraolo@kflaw.com
wgreco@kflaw.com

*Attorneys for Defendant Laura Kim*

1

2

## **<u>VERIFICATION</u>**

3        I am the Defendant in the above-captioned matter. I verify that I have

4  read the foregoing Response to United States' First Request for Admissions

5  to Laura Kim, and I believe, based upon reasonable inquiry, that the

6  answers contained therein are true and correct to the best of my information,

7  knowledge, and belief. I do not necessarily have direct personal knowledge of

8  every fact contained herein. These responses were prepared with the

9  assistance of my counsel and are based on information currently available to

10 me. I reserve the right to make changes or additions to any of these answers

11 if it appears at any time that errors or omissions have been made or if more

12 accurate or complete information becomes available. I declare under penalty

13 of perjury that the foregoing is true and correct.

14

15 I verify under penalty of perjury that the foregoing is true and correct.

16

17 April 25, 2022

18

19                                DocuSigned by:
                                 *Laura Kim*
                                 _____
                                 D531C6DFD8844CF...
20                                        Laura Kim

21

22

23

24

25

26

27

28

79

# Exhibit 180

Caroline D. Ciraolo
Email: cciraolo@kflaw.com
William G. Greco
Email: wgreco@kflaw.com
Telephone: (202) 875-8000
Fax: (917) 677-5013
Kostelanetz & Fink, LLP
601 New Jersey Ave, NW, Ste. 260
Washington, DC 20001

A. Lavar Taylor (CA Bar No. 129512)
Email: ltaylor@taylorlaw.com
Jonathan T. Amitrano (CA Bar No. 283389)
Email: jamitrano@taylorlaw.com
Telephone: (714) 546-0445, ext. 116
Fax: (714) 546-2604
Law Offices of A. Lavar Taylor, LLP
3 Hutton Centre Drive, Ste. 500
Santa Ana, CA 92707

Attorneys for Laura Kim

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| United States of America, | No. 2:21-cv-06746-FMO-KS |
|---|---|
| Plaintiff, | Defendant Laura Kim's Responses to United States' First Set of Interrogatories |
| v. | |
| Laura Kim, | |
| Defendant. | |

1

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Laura Kim responds to the interrogatories by Plaintiff the United States of America. In accordance with Local Rule 33-2, Defendant has quoted each request in full and provides her response immediately thereafter.

These responses and objections are based upon information reasonably available and specifically known to the Defendant and her attorneys as of the date of service. Defendant reserves the right to supplement, amend, modify, or correct her responses and/or objections after considering information obtained through further investigation. Defendant further reserves the right to use or rely on, at any time, subsequently discovered and produced information omitted from these responses and objections as a result of mistake, error, oversight, or inadvertence. No response made herein, or lack thereof, shall be deemed a statement by Defendant as to the existence or non-existence of any information. Defendant's responses herein are not intended to convey agreement with any factual assumptions, definitions, implications or any explicit or implicit characterization of facts, events, circumstances or issues in the Requests, and are without prejudice to any rights to dispute facts and legal conclusions assumed in the Requests.

## **GENERAL OBJECTIONS**

Defendant asserts the following general objections with respect to each and every Interrogatory:

1.      Defendant objects to all definitions, instructions, and Interrogatories to the extent that they require the disclosure of: (i) information subject to the attorney-client privilege; (ii) information subject to the work product doctrine; or (iii) information that is otherwise privileged and/or protected from disclosure. Any inadvertent disclosure of information protected by the attorney-client privilege, the work product doctrine, and/or any other applicable privilege or protection from discovery is not intended

1  and should not be construed or deemed to constitute a waiver, either

2  generally or specifically, in whole or in part, with respect to such material or

3  the subject matter thereof.

4      2.   Defendant objects to all definitions, instructions, and

5  Interrogatories to the extent that they impose obligations different from or

6  beyond those imposed by the Federal Rules of Civil Procedure, the Local

7  Civil Rules, and/or the prior orders of the Court in this litigation.

8      3.   Defendant objects to all definitions, instructions, and

9  Interrogatories to the extent that they call for the production or

10 identification of information that is not relevant to the subject matter of the

11 issues in this litigation and not reasonably calculated to lead to the discovery

12 of admissible evidence.

13     4.   Defendant objects to all definitions, instructions, and

14 Interrogatories to the extent that they seek disclosure of information that is

15 overly broad, unreasonably cumulative and/or duplicative and/or is

16 obtainable from other sources that are more convenient, less burdensome, or

17 less expensive.

18     5.   Defendant objects to any Interrogatory to the extent the

19 Interrogatory seeks information beyond the time period relevant to this

20 litigation. Unless otherwise stated herein, the relevant period (the "Period at

21 Issue") is January 1, 2009 to June 30, 2013.

22     6.   Defendant objects to any Interrogatory to the extent it seeks

23 publicly available information or information that is already in the

24 possession, custody, or control of Plaintiff.

25     7.   Nothing in Defendant's responses, at the time such are provided,

26 shall be construed as an admission regarding the admissibility or relevance

27 of any fact or document, or of the truth or accuracy of any characterization of

28 any kind contained in the Interrogatories.

8.     Defendant incorporates by reference every general objection set forth above into each answer and specific objection set forth below.  A specific objection may repeat a general objection for emphasis or other reason. The failure to include any general objections in any answer or specific objection does not waive any general objection to that Interrogatory. Further, Defendant does not waive the right to amend Defendant's objections.

9.     Defendant's decision to provide a response notwithstanding the objectionable nature of an Interrogatory, at the time such response is provided, should not be deemed an admission, concession, or acquiescence as to any characterization contained in the Interrogatory or the propriety or accuracy for the terminology used by Plaintiff therein. Defendant reserves the right to object to the use of such information at any hearing or trial in this litigation.

10.    At the time such responses are provided, Defendant reserves the right to supplement, amend, clarify or correct Defendant's responses and objections to the Interrogatories.

## RESPONSES TO THE INTERROGATORIES

**Interrogatory No. 1:** For each statement in the United States' First Request for Admissions for Laura Kim that you did not fully admit, please state why and identify all documents which support your position.

**Response to Interrogatory No. 1:** Defendant objects to Interrogatory No. 1 on the grounds that it is an attempt to circumvent the limitation on the number of interrogatories a party may propound under Federal Rule of Civil Procedure 33(a)(1). Defendant further objects to Request No. 1 on the grounds that it seeks to impose obligations beyond Federal Rule of Civil Procedure 36.

**Interrogatory No. 2:** For the period January 1, 2009 through June 30, 2013, identify all foreign bank accounts for which Defendant had a financial

4

interest in, or signature or other authority over at any time during that period, and the dates that each such account was opened and closed.

**Response to Interrogatory No. 2:** Defendant objects to Interrogatory No. 2 to the extent it seeks information regarding accounts not identified in the complaint and not the basis for the civil penalty assessments against Defendant, and therefore beyond the scope of discovery permitted under Federal Rule of Civil Procedure 33(b). Without waiving this objection, Defendant is reviewing the accounts identified and available account statements and, at this time, can identify the accounts disclosed on Attachment A to these Reponses. Defendant will supplement this response as needed.

**Interrogatory No. 3:** For the period January 1, 2009 through June 30, 2013, for each foreign bank account for which Defendant had a financial interest in, or signature or other authority over at any time during that period, explain why each account was opened and closed.

**Response to Interrogatory No. 3:** Defendant objects to Interrogatory No. 3 to the extent it seeks information regarding accounts not identified in the complaint and not the basis for the civil penalty assessments against Defendant, and therefore beyond the scope of discovery permitted under Federal Rule of Civil Procedure 33(b). Without waiving this objection, Defendant is reviewing the accounts identified and available account statements and, at this time, can identify the accounts disclosed on Attachment A to these Reponses. Defendant will supplement this response as needed.

**Interrogatory No. 4:** For the period January 1, 2009 through June 30, 2013, for each foreign bank account for which Defendant had a financial interest in, or signature or other authority over at any time during that

1    period, list the ending monthly account balance for each account in South
2    Korean won.

3    **Response to Interrogatory No. 4:** Defendant objects to Interrogatory
4    No. 4 to the extent it seeks information regarding accounts not identified in
5    the complaint and information that is not the basis for the civil penalty
6    assessments against Defendant, and therefore beyond the scope of discovery
7    permitted under Federal Rule of Civil Procedure 33(b). Without waiving this
8    objection, pursuant to Federal Rule of Civil Procedure 33(d), Defendant
9    further refers Plaintiff to the account statements produced in response to the
10   Request for Production of Documents.

11   **Interrogatory No. 5:** For each month in the years 2009 through 2012,
12   identify the exchange rate from South Korean won to United States dollars
13   at the end of the month.

14   **Response to Interrogatory No. 5:** Defendant objects to Interrogatory
15   No. 5 on the grounds that it is ambiguous in that it fails to identify the
16   purpose for which the exchange rate is requested. Without waiving this
17   objection, Defendant asserts that the following exchange rates are applicable
18   in this case:

19             0.00085758 USD to 1 KRW on 12/31/2009
20             0.00081843 USD to 1 KRW on 06/30/2010
21             0.0008929 USD to 1 KRW on 12/31/2010
22             0.00087002 USD to 1 KRW on 06/30/2011
23             0.0008627 USD to 1 KRW on 12/31/2011
24             0.00087281 USD to 1 KRW on 06/30/2012
25             0.00093674 USD to 1 KRW on 12/31/2012
26             0.00087535 USD to 1 KRW on 06/30/2013

27   **Interrogatory No. 6:** For the period January 1, 2009 through June 30,
28   2013, for each foreign bank account for which Defendant had a financial

6

interest in, or signature or other authority over at any time during that period, list the ending monthly account balance for each account in both United States dollars.

**Response to Interrogatory No. 6:** Defendant objects to Interrogatory No. 6 to the extent it seeks information regarding accounts not identified in the complaint and information that is not the basis for the civil penalty assessments against Defendant, and therefore beyond the scope of discovery permitted under Federal Rule of Civil Procedure 33(b). Without waiving this objection, pursuant to Federal Rule of Civil Procedure 33(d), Defendant further refers Plaintiff to the account statements produced in response to the Request for Production of Documents.

**Interrogatory No. 7:** For each year from 2009 through 2012, identify the average combined monthly account balance for all the foreign bank accounts for which she had a financial interest in, or signature or other authority over.

**Response to Interrogatory No. 7:** Defendant objects to Interrogatory No. 7 to the extent it seeks information regarding accounts not identified in the complaint and information that is not the basis for the civil penalty assessments against Defendant, and therefore beyond the scope of discovery permitted under Federal Rule of Civil Procedure 33(b). Notwithstanding and without waiving this objection, pursuant to Federal Rule of Civil Procedure 33(d), Defendant further refers Plaintiff to the account statements produced in response to the Request for Production of Documents.

**Interrogatory No. 8:** During the period January 1, 2009 through June 30, 2013, describe Defendant's level of English proficiency.

**Response to Interrogatory No. 8:** During the period January 1, 2009 through June 30, 2013, and continuing to the present day, Defendant

1  understands, reads, and speaks English with limited proficiency. She does
2  not understand idioms, colloquialisms, or technical or legal terms.

3      **Interrogatory No. 9:** For the years 2009 through 2012, identify by
4  year all corporations, LLCs, and partnerships for which Defendant had an
5  interest and the percentage of her ownership interest.

6      **Response to Interrogatory No. 9:** Defendant objects to Interrogatory
7  No. 9 to the extent it seeks information not relevant and/or not likely to lead
8  to relevant information in this matter. Without waiving that objection, upon
9  information and belief, Defendant provides the following information:

| Entity | Ownership | Years |
|---|---|---|
| Laura's French Baking Co. | 90% | 2009-2012 |
| Marina Enterprise Co., Ltd. | 100% | 2009-2012 |
| LK Water Corp. | 100% | 2011-2012 |
|   (a/k/a Jirisan Chamsaeme Co., Ltd.) | | |
| Laura's Distribution Co., Ltd. | 100% | 2011-2012 |
| California Board Sports, Inc. | Unknown | Unknown |

17  Defendant is reviewing her records and will amend or supplement this
18  response to the extent necessary.

19      **Interrogatory No. 10:** For the period January 1, 2009 through
20  December 31, 2013, identify when Michael Khim inquired about whether
21  Defendant had a financial interest in, or signature or other authority over at
22  any time during that period.

23      **Response to Interrogatory No. 10:** During the period at issue,
24  Defendant does not recall Michael Khim asking whether she had a financial
25  interest in, or signature or other authority over any particular foreign bank
26  accounts. Defendant did exchange emails with Michael Khim regarding the
27  FBAR filing deadline.

28

1   **Interrogatory No. 11:** For the period January 1, 2009 through
2   December 31, 2013, for each foreign bank account for which Defendant had a
3   financial interest in, or signature or other authority over at any time during
4   that period, identify when Defendant informed Michael Khim about each
5   account.

6   **Response to Interrogatory No. 11:** During the period at issue,
7   Defendant does not recall informing Michael Khim about her foreign
8   accounts. Defendant did exchange emails with Michael Khim regarding the
9   FBAR filing deadline.

10   **Interrogatory No. 12:** For each Report of Foreign Bank and Financial
11   Accounts (Form TD F 90-22.1) prepared for Defendant for the years 2009
12   through 2012, identify who prepared the form, and who was consulted as
13   part of preparing the form.

14   **Response to Interrogatory No. 12:** Defendant prepared the Forms
15   TD 90-22.1 for 2009 through 2011, and believes she prepared the Form TD
16   90-22.1 for 2012. She obtained information regarding the accounts from her
17   employees. She also asked Michael Khim for a blank copy of the Form TD 90-
18   22.1 and the form's due date in 2010.

19   **Interrogatory No. 13:** For each bank account that Defendant had a
20   financial interest in, or signature or other authority over during the year
21   2009, explain why she included or excluded it on the Report of Foreign Bank
22   and Financial Accounts (Form TD F 90-22.1) she filed in 2010.

23   **Response to Interrogatory No. 13:** Defendant reported accounts
24   based on her understanding at that time of what needed to be reported.

25   **Interrogatory No. 14:** For each bank account that Defendant had a
26   financial interest in, or signature or other authority over during the year
27   2010, explain why she included or excluded it on the Report of Foreign Bank
28   and Financial Accounts (Form TD F 90-22.1) she filed in 2011.

9

1   **Response to Interrogatory No. 14:** See Response to Interrogatory

2   No. 13.

3   **Interrogatory No. 15:** For each bank account that Defendant had a

4   financial interest in, or signature or other authority over during the year

5   2011, explain why she included or excluded it on the Report of Foreign Bank

6   and Financial Accounts (Form TD F 90-22.1) she filed in 2012.

7   **Response to Interrogatory No. 15:** See Response to Interrogatory

8   No. 13.

9   **Interrogatory No. 16:** For each bank account that Defendant had a

10  financial interest in, or signature or other authority over during the year

11  2012, explain why she included or excluded it on the Report of Foreign Bank

12  and Financial Accounts (Form TD F 90-22.1) she filed in 2013.

13  **Response to Interrogatory No. 16:** See Response to Interrogatory

14  No. 13.

15  **Interrogatory No. 17:** To the extent that you contend that Defendant

16  suffered a traumatic brain injury, please describe the injury and the effect on

17  her mental capacity during the period January 1, 2009 through June 30,

18  2013.

19  **Response to Interrogatory No. 17:** After her husband died in 1997,

20  Defendant experienced substantial depression and attempted suicide by

21  jumping off a moving train. She suffered physical injuries, including a

22  traumatic brain injury. Defendant continues to struggle with depression and

23  anxiety.

24  **Interrogatory No. 18:** Identify all positions, by year, that Defendant

25  held as either an officer, director, or chairwoman for any corporation during

26  the period January 1, 2009 through June 30, 2013.

27  **Response to Interrogatory No. 18:** Defendant objects to

28  Interrogatory No. 18 to the extent it seeks information not relevant and/or

10

1  not likely to lead to relevant information in this matter, and therefore

2  beyond the scope of discovery permitted under Federal Rule of Civil

3  Procedure 33(b). Notwithstanding and without waiving that objection,

4  Defendant served in the following positions:

5
| Entity | Position | Year(s) |
| --- | --- | --- |
| California Board Sports, Inc. | Director | 2010-2013 |
| Laura's French Baking Co. | President | 2009-2013 |
| Marina Enterprise Co., Ltd. | President | 2009-2012 |
| LK Water Corp. | President | 2011-2012 |
| (a/k/a Jirisan Chamsaeme Co., Ltd.) | | |
| Laura's Distribution Co., Ltd. | Unknown | 2011-2012 |

12  Defendant is reviewing her records and will amend or supplement this

13  response to the extent necessary.

14

15  April 25, 2022                    *s/Caroline D. Ciraolo*

16                                   Caroline D. Ciraolo
17                                   William G. Greco
                                     Kostelanetz & Fink, LLP
18                                   601 New Jersey Ave, NW, Ste. 260
19                                   Washington, DC 20001
                                     Telephone: (202) 875-8000
20                                   cciraolo@kflaw.com
21                                   wgreco@kflaw.com

22                                   Attorneys for Defendant Laura Kim

23

24

25

26

27

28

DocuSign Envelope ID: 0516F59B-8A9D-4D49-A1B1-3D56F24403A1

## **VERIFICATION**

I am the Defendant in the above-captioned matter. I verify that I have read the foregoing Defendant Laura Kim's Responses to United States' First Set of Interrogatories, and I believe, based upon reasonable inquiry, that the answers contained therein are true and correct to the best of my information, knowledge, and belief. I do not necessarily have direct personal knowledge of every fact contained herein. These responses were prepared with the assistance of my counsel and are based on information currently available to me. I reserve the right to make changes or additions to any of these answers if it appears at any time that errors or omissions have been made or if more accurate or complete information becomes available. I declare under penalty of perjury that the foregoing is true and correct.

I verify under penalty of perjury that the foregoing is true and correct.

April 25, 2022

*Laura Kim*

Laura Kim

Attachment A

| Last 4 Digits of Account Number | Full Account Number | Bank | Account Holder | Date Opened | Date Closed | Reason Opened | Reason Closed |
|---|---|---|---|---|---|---|---|
| 0207 | | Standard Chartered | Unknown | ** | ** | ** | ** |
| 0218 | | Standard Chartered | Unknown | ** | ** | ** | ** |
| 0302 | | Woori | Laura Kim | ** | ** | ** | ** |
| 0361 | | Woori | Laura Kim | ** | ** | ** | ** |
| 0365 | | Woori | Laura Kim | ** | ** | ** | ** |
| 0368 | | Woori | Laura Kim | ** | ** | ** | ** |
| 0758 | | Woori | Laura Kim | ** | ** | ** | ** |
| 1003 | | Woori | Unknown | ** | ** | ** | ** |
| 1017 | | Woori | Laura Kim | ** | ** | ** | ** |
| 1478 | | Woori | Laura Kim | ** | ** | ** | ** |
| 1926 | | Woori | Laura Kim | ** | ** | ** | ** |
| 2001 | | Woori | Unknown | ** | ** | ** | ** |
| 2033 | | Woori | Marina Enterprise | ** | ** | ** | ** |
| 2274 | | Woori | Laura Kim | ** | ** | ** | ** |
| 2308 | | Woori | Laura Kim | ** | ** | ** | ** |
| 2323 | | Woori | Laura Kim | ** | ** | ** | ** |
| 2505 | | Standard Chartered | Unknown | ** | ** | ** | ** |
| 2567 | | Woori | Laura Kim | ** | ** | ** | ** |
| 2748 | | Woori | Laura Kim | ** | ** | ** | ** |
| 2983 | | Standard Chartered | Unknown | ** | ** | ** | ** |
| 2994 | | Standard Chartered | Unknown | ** | ** | ** | ** |
| 3001 | | Woori | Unknown | ** | ** | ** | ** |
| 3441 | | Woori | Laura Kim | ** | ** | ** | ** |
| 3558 | | Woori | Marina Enterprise | ** | ** | ** | ** |
| 3570 | | Woori | Laura Kim | ** | ** | ** | ** |
| 3626 | | Woori | Laura Kim | ** | ** | ** | ** |

| | | | | |
|---|---|---|---|---|
| 3627 | Standard Chartered | Laura Kim | ** | ** | ** | ** |
| 3908 | Standard Chartered | Laura Kim | ** | ** | ** | ** |
| 4186 | Woori | Laura Kim | ** | ** | ** | ** |
| 4207 | Woori | Laura Kim | ** | ** | ** | ** |
| 4317 | Woori | Laura Kim | ** | ** | ** | ** |
| 4681 | Woori | Laura Kim | ** | ** | ** | ** |
| 4708 | Woori | Marina Enterprise | ** | ** | ** | ** |
| 4765 | Woori | Laura Kim | ** | ** | ** | ** |
| 4889 | Woori | Marina Enterprise | ** | ** | ** | ** |
| 5183 | Standard Chartered | Laura Kim | ** | ** | ** | ** |
| 5207 | Standard Chartered | Unknown | ** | ** | ** | ** |
| 5282 | Standard Chartered | Laura Kim | ** | ** | ** | ** |
| 5293 | Standard Chartered | Laura Kim | ** | ** | ** | ** |
| 5301 | Standard Chartered | Laura Kim | ** | ** | ** | ** |
| 5417 | Woori | LK Water | ** | ** | ** | ** |
| 5711 | Woori | Laura Kim | ** | ** | ** | ** |
| 5806 | Woori | Laura Kim | ** | ** | ** | ** |
| 6005 | Woori | Laura Kim | ** | ** | ** | ** |
| 6048 | Woori | Marina Enterprise | ** | ** | ** | ** |
| 6258 | Woori | Laura Kim | ** | ** | ** | ** |
| 6397 | Woori | Laura Kim | ** | ** | ** | ** |
| 6411 | Woori | Marina Enterprise | ** | ** | ** | ** |
| 6539 | Woori | LK Water | ** | ** | ** | ** |
| 6658 | Woori | Laura Kim | ** | ** | ** | ** |
| 6699 | Standard Chartered | Laura Kim | ** | ** | ** | ** |
| 6817 | Woori | Laura Kim | ** | ** | ** | ** |
| 7795 | Woori | Laura Kim | ** | ** | ** | ** |
| 7808 | Woori | Laura Kim | ** | ** | ** | ** |

| 8740 | | Woori | Laura Kim | ** | ** | ** |
| 8765 | | Woori | Laura Kim | ** | ** | ** |
| 9362 | | Woori | Marina Enterprise | ** | ** | ** |
| 9368 | | Woori | Laura Kim | ** | ** | ** |
| 9534 | | Woori | Laura Kim | ** | ** | ** |
| 9546 | | Woori | Laura Kim | ** | ** | ** |
| 9676 | | Woori | LK Water | ** | ** | ** |
| 9689 | | Woori | Laura Distribution | ** | ** | ** |

** Defendant is reviewing available records and contacting the financial institutions to obtain the information requested, and will supplement this response.

# Exhibit 181

Caroline D. Ciraolo
Email: cciraolo@kflaw.com
William G. Greco
Email: wgreco@kflaw.com
Telephone: (202) 875-8000
Fax: (917) 677-5013
Kostelanetz & Fink, LLP
601 New Jersey Ave, NW, Ste. 260
Washington, DC 20001

A. Lavar Taylor (CA Bar No. 129512)
Email: ltaylor@taylorlaw.com
Jonathan T. Amitrano (CA Bar No. 283389)
Email: jamitrano@taylorlaw.com
Telephone: (714) 546-0445, ext. 116
Fax: (714) 546-2604
Law Offices of A. Lavar Taylor, LLP
3 Hutton Centre Drive, Ste. 500
Santa Ana, CA 92707

Attorneys for Laura Kim

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| United States of America,<br><br>             Plaintiff,<br><br>                  v.<br><br>Laura Kim,<br><br>             Defendant. | No. 2:21-cv-06746-FMO-KS<br><br>Defendant Laura Kim's Responses to United States' First Set of Requests for Production of Documents |

1

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant Laura Kim responds to the Requests for Production of Documents by Plaintiff the United States of America. In accordance with Local Rule 34-2, Defendant has quoted each request in full and provides her response immediately thereafter.

These objections and responses are based upon information reasonably available and specifically known to Defendant and her attorneys as of the date of service. Defendant reserves the right to supplement, amend, modify, or correct her objections and/or responses after considering information obtained through further investigation. Defendant further reserves the right to use or rely on, at any time, subsequently discovered and produced information omitted from these responses and objections as a result of mistake, error, oversight, or inadvertence. No response made herein, or lack thereof, shall be deemed a statement by Defendant as to the existence or non-existence of any information. Defendant's responses herein are not intended to convey agreement with any factual assumptions, definitions, implications or any explicit or implicit characterization of facts, events, circumstances or issues in the Requests, and are without prejudice to any rights to dispute facts and legal conclusions assumed in the Requests.

## GENERAL OBJECTIONS

Defendant asserts the following general objections with respect to each and every request:

1.     Defendant objects to all definitions, instructions, and requests to the extent that they require the disclosure of: (i) information subject to the attorney-client privilege; (ii) information subject to the work product doctrine; or (iii) information that is otherwise privileged and/or protected from disclosure. Any inadvertent disclosure of information protected by the attorney-client privilege, the work product doctrine, and/or any other

2

applicable privilege or protection from discovery is not intended and should not be construed or deemed to constitute a waiver, either generally or specifically, in whole or in part, with respect to such material or the subject matter thereof.

2.      Defendant objects to all definitions, instructions, and requests to the extent that they impose obligations different from or beyond those imposed by the Federal Rules of Civil Procedure, the Local Civil Rules, and/or the prior orders of the Court in this litigation.

3.      Defendant objects to all definitions, instructions, and requests to the extent that they call for the production or identification of information that is not relevant to the subject matter of the issues in this litigation and not reasonably calculated to lead to the discovery of admissible evidence.

4.      Defendant objects to all definitions, instructions, and requests to the extent that they seek disclosure of information that is overly broad, unreasonably cumulative and/or duplicative and/or is obtainable from other sources that are more convenient, less burdensome, or less expensive.

5.      Defendant objects to any request to the extent it seeks information beyond the time period relevant to this litigation. Unless otherwise stated herein, the relevant period (the "Period at Issue") is January 1, 2009 to June 30, 2013.

6.      Defendant objects to any request to the extent it seeks publicly available information or information that is already in the possession, custody or control of Plaintiff.

7.      Nothing in Defendant's responses, at the time such are provided, shall be construed as an admission regarding the admissibility or relevance of any fact or document, or of the truth or accuracy of any characterization of any kind contained in the requests.

8.      Defendant incorporates by reference every general objection set

forth above into each response and specific objection set forth below. A response or specific objection may repeat a general objection for emphasis or other reason. The failure to include any general objections in any response or specific objection does not waive any general objection to that request. Further, Defendant does not waive her right to amend her objections.

9.    Defendant's decision to provide information notwithstanding the objectionable nature of a request, at the time such information is provided, should not be deemed an admission, concession, or acquiescence as to any characterization contained in the request or the propriety or accuracy for the terminology used by Plaintiff therein. Defendant reserves the right to object to the use of such information at any hearing or trial in this litigation.

10.    At the time such responses are provided, Defendant reserves the right to supplement, amend, clarify or correct her responses and objections to the requests.

### RESPONSES TO THE REQUESTS FOR PRODUCTION

**A. Bank Statements**

**Request No. 1:** All bank statements for all foreign bank accounts that Laura Kim had a financial interest in, or signature or other authority over, with a value that exceeded $10,000 between January 1, 2009 and December 31, 2009, in both English and Korean.

**Response to Request No. 1:** Defendant objects to this request to the extent it seeks information regarding accounts not identified in the Complaint and not the basis for the civil penalty assessments against Defendant, and therefore beyond the scope of discovery permitted under Federal Rule of Civil Procedure 34. Without waiving this objection, Defendant has searched records that are reasonably accessible to her and is producing responsive documents. Our review of documents is ongoing and Defendant will amend or supplement this response to the extent necessary.

4

**Request No. 2:** All bank statements for all foreign bank accounts that Laura Kim had a financial interest in, or signature or other authority over, with a value that exceeded $10,000 between January 1, 2010 and December 31, 2010, in both English and Korean.

**Response to Request No. 2:** See Response to Request No. 1.

**Request No. 3:** All bank statements for all foreign bank accounts that Laura Kim had a financial interest in, or signature or other authority over, with a value that exceeded $10,000 between January 1, 2011 and December 31, 2011, in both English and Korean.

**Response to Request No. 3:** See Response to Request No. 1.

**Request No. 4:** All bank statements for all foreign bank accounts that Laura Kim had a financial interest in, or signature or other authority over, with a value that exceeded $10,000 between January 1, 2012 and December 31, 2012, in both English and Korean.

**Response to Request No. 4:** See Response to Request No. 1.

**Request No. 5:** All bank statements for all foreign bank accounts that Laura Kim had a financial interest in, or signature or other authority over, with a value that exceeded $10,000 between January 1, 2013 and June 30, 2013, in both English and Korean.

**Response to Request No. 5:** See Response to Request No. 1.

**Request No. 6:** Documents demonstrating that funds in one sub-account assigned a specific number were transferred to a sub-account with a different number.

**Response to Request No. 6:** Defendant is reviewing records reasonably accessible to her and will produce responsive documents to the extent available.

**B. Conversion Rate**

**Request No. 7:** Documents identifying the exchange rate to convert South Korean Won to United States Dollars at the end of each month for the year 2009.

**Response to Request No. 7:** Defendant objects to this request on the grounds that it is ambiguous in that it fails to identify the purpose for which the exchange rates are requested. Defendant further objects to this request to the extent it seeks information not relevant and/or not likely to lead to the discovery of relevant information in this matter. Without waiving these objections, Defendant refers Plaintiff to the exchange rates reflected at the following website: https://www.poundsterlinglive.com/bank-of-england-spot/historical-spot-exchange-rates/usd/USD-to-KRW-2009.

**Request No. 8:** Documents identifying the exchange rate to convert South Korean Won to United States Dollars at the end of each month for the year 2010.

**Response to Request No. 8:** Defendant objects to this request on the grounds that it is ambiguous in that it fails to identify the purpose for which the exchange rates are requested. Defendant further objects to this request to the extent it seeks information not relevant and/or not likely to lead to the discovery of relevant information in this matter. Without waiving these objections, Defendant refers Plaintiff to the exchange rates reflected at the following website: https://www.poundsterlinglive.com/bank-of-england-spot/historical-spot-exchange-rates/usd/USD-to-KRW-2010.

**Request No. 9:** Documents identifying the exchange rate to convert South Korean Won to United States Dollars at the end of each month for the year 2011.

**Response to Request No. 9:** Defendant objects to this request on the grounds that it is ambiguous in that it fails to identify the purpose for which the exchange rates are requested. Defendant further objects to this request

to the extent it seeks information not relevant and/or not likely to lead to the discovery of relevant information in this matter. Without waiving these objections, Defendant refers Plaintiff to the exchange rates reflected at the following website: https://www.poundsterlinglive.com/bank-of-england-spot/historical-spot-exchange-rates/usd/USD-to-KRW-2011.

**Request No. 10:** Documents identifying the exchange rate to convert South Korean Won to United States Dollars at the end of each month for the year 2012.

**Response to Request No. 10:** Defendant objects to this request on the grounds that it is ambiguous in that it fails to identify the purpose for which the exchange rates are requested. Defendant further objects to this request to the extent it seeks information not relevant and/or not likely to lead to the discovery of relevant information in this matter. Without waiving these objections, Defendant refers Plaintiff to the exchange rates reflected at the following website: https://www.poundsterlinglive.com/bank-of-england-spot/historical-spot-exchange-rates/usd/USD-to-KRW-2012.

**C. Tax Returns**

**Michael Khim, CPA**

**Request No. 11:** All documents and correspondence that Defendant provided to Michael Khim, to prepare her federal income tax return and related schedules for tax year 2009.

**Response to Request No. 11:** Defendant objects to this request to the extent it seeks information and documents in the possession of Plaintiff as a result of the summons issued to Michael Khim and therefore, are a part of the Internal Revenue Service administrative file. Without waiving this objection, Defendant has searched records that are reasonably accessible to her and is producing responsive documents.. Defendant will continue her

1   review of the records reasonably accessible to her and will supplement or

2   amend her response to this request as necessary.

3       **Request No. 12:** All documents and correspondence that Defendant

4   provided to Michael Khim, to prepare her amended federal income tax return

5   and related schedules for tax year 2009.

6       **Response to Request No. 12:** Defendant objects to this request on the

7   ground that she did not file an amended federal income tax return for tax

8   year 2009.

9       **Request No. 13:** All documents and correspondence that Defendant

10  provided to Michael Khim, to prepare her federal income tax return and

11  related schedules for tax year 2010.

12      **Response to Request No. 13:** See Response to Request No. 11.

13      **Request No. 14:** All documents and correspondence that Defendant

14  provided to Michael Khim, to prepare her amended federal income tax return

15  and related schedules for tax year 2010.

16      **Response to Request No. 14:** Defendant objects to this request on

17  the ground that she did not file an amended federal income tax return for tax

18  year 2010.

19      **Request No. 15:** All documents and correspondence that Defendant

20  provided to Michael Khim, to prepare her federal income tax return and

21  related schedules for tax year 2011.

22      **Response to Request No. 15:** See Response to Request No. 11.

23      **Request No. 16:** All documents and correspondence that Defendant

24  provided to Michael Khim, to prepare her amended federal income tax return

25  and related schedules for tax year 2011.

26      **Response to Request No. 16:** Defendant objects to this request on

27  the ground that she did not file an amended federal income tax return for tax

28  year 2011.

**Request No. 17:** All documents and correspondence that Defendant provided to Michael Khim, to prepare her federal income tax return and related schedules for tax year 2012.

**Response to Request No. 17:** Defendant objects to this request to the extent it seeks documents produced after the Period at Issue and, as such, responsive documents are not relevant to the present litigation or reasonably likely to lead to the discovery of relevant information. Without waiving this objection, Defendant has searched records that are reasonably accessible to her and is producing responsive documents.

**Request No. 18:** All documents and correspondence that Defendant provided to Michael Khim, to prepare her amended federal income tax return and related schedules for tax year 2012.

**Response to Request No. 18:** Defendant objects to this request on the ground that she did not file an amended federal income tax return for tax year 2012.

**Tax Returns and Amended Tax Returns**

**Request No. 19:** Defendant's federal income tax return and schedules for tax year 2009.

**Response to Request No. 19:** Defendant has searched records that are reasonably accessible to her and is producing responsive documents.

**Request No. 20:** Defendant's amended federal income tax return and schedules for tax year 2009.

**Response to Request No. 20:** Defendant objects to this request on the ground that she did not file an amended federal income tax return for tax year 2009.

**Request No. 21:** Defendant's federal income tax return and schedules for tax year 2010.

9

**Response to Request No. 21:** Defendant has searched records that are reasonably accessible to her and is producing responsive documents.

**Request No. 22:** Defendant's amended federal income tax return and schedules for tax year 2010.

**Response to Request No. 22:** Defendant objects to this request on the ground that she did not file an amended federal income tax return for tax year 2010.

**Request No. 23:** Defendant's federal income tax return and schedules for tax year 2011.

**Response to Request No. 23:** Defendant has searched records that are reasonably accessible to her and is producing responsive documents.

**Request No. 24:** Defendant's amended federal income tax return and schedules for tax year 2011.

**Response to Request No. 24:** Defendant objects to this request on the ground that she did not file an amended federal income tax return for tax year 2011.

**Request No. 25:** Defendant's federal income tax return and schedules for tax year 2012.

**Response to Request No. 25:** Defendant has searched records that are reasonably accessible to her and is producing responsive documents.

**Request No. 26:** Defendant's amended federal income tax return and schedules for tax year 2012.

**Response to Request No. 26:** Defendant objects to this request on the ground that she did not file an amended federal income tax return for tax year 2012.

**D. FBARs**

**Request No. 27:** Defendant's Report of Foreign Bank and Financial Accounts (Form TD F 90-22.1) for the year 2009.

10

**Response to Request No. 27:** Defendant has searched records that are reasonably accessible to her and is producing responsive documents.

**Request No. 28:** Defendant's amended Report of Foreign Bank and Financial Accounts (Form TD F 90-22.1) for the year 2009 and related correspondence.

**Response to Request No. 28:** Defendant objects to this request on the ground that she did not file an amended Form TD F 90-22.1 for the year 2009.

**Request No. 29:** Defendant's Report of Foreign Bank and Financial Accounts (Form TD F 90-22.1) for the year 2010.

**Response to Request No. 29:** Defendant has searched records that are reasonably accessible to her and is producing responsive documents.

**Request No. 30:** Defendant's amended Report of Foreign Bank and Financial Accounts (Form TD F 90-22.1) for the year 2010 and related correspondence.

**Response to Request No. 30:** Defendant objects to this request on the ground that she did not file an amended Form TD F 90-22.1 for the year 2010.

**Request No. 31:** Defendant's Report of Foreign Bank and Financial Accounts (Form TD F 90-22.1) for the year 2011.

**Response to Request No. 31:** Defendant has searched records that are reasonably accessible to her and is producing responsive documents.

**Request No. 32:** Defendant's amended Report of Foreign Bank and Financial Accounts (Form TD F 90-22.1) for the year 2011 and related correspondence.

**Response to Request No. 32:** Defendant objects to this request on the ground that she did not file an amended Form TD F 90-22.1 for the year 2011.

**Request No. 33:** Defendant's Report of Foreign Bank and Financial Accounts (Form TD F 90-22.1) for the year 2012.

**Response to Request No. 33:** Defendant has searched records that are reasonably accessible to her and is producing responsive documents.

**Request No. 34:** Defendant's amended Report of Foreign Bank and Financial Accounts (Form TD F 90-22.1) for the year 2012 and related correspondence.

**Response to Request No. 34:** Defendant objects to this request on the ground that she did not file an amended Form TD F 90-22.1 for the year 2012.

**Traumatic Head Injury**

**Request No. 35:** Documents establishing the date, circumstances and effect of Defendant's traumatic brain injury.

**Response to Request No. 35:** Defendant is reviewing records reasonably accessible to her and will produce any responsive documents.

April 25, 2022

*s/Caroline D. Ciraolo*

Caroline D. Ciraolo
William G. Greco
Kostelanetz & Fink, LLP
601 New Jersey Ave, NW, Ste. 260
Washington, DC 20001
Telephone: (202) 875-8000
cciraolo@kflaw.com
wgreco@kflaw.com

Attorneys for Defendant Laura Kim

12

# Exhibit 182

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

--oOo--

UNITED STATES OF AMERICA,      )
                               )
                Plaintiff,     )
                               )
                vs.            )   No. 2:21-cv-06746-FMO-KS
                               )
LAURA KIM,                     )
                               )
                Defendant.     )
                               )


Deposition of LAURA KIM, commencing at 1:16 p.m., Monday,

July 18, 2022, before Jolyne R. Simler, CSR No. 10902,

via WebEx videoconferencing.


Pages 1 - 90

```
 1    APPEARANCES OF COUNSEL:

 2
          For the Plaintiff:
 3
              UNITED STATES ATTORNEY'S OFFICE
 4            300 North Los Angeles Street
              Federal Building, Suite 7211
 5            Los Angeles, California 90012
              By:  GAVIN L. GREENE, ATTORNEY AT LAW
 6            213.894.4600
              Gavin.greene@usdoj.gov
 7

 8       For the Defendant:

 9            KOSTELANETZ & FINK
              601 New Jersey Avenue, NW, Suite 260
10            Washington D.C. 20001
              By:  CAROLINE CIRAOLO, ATTORNEY AT LAW
11            443.845.4898
              Cciraolo@kflaw.com
12

13    For the Defendant:

14            LAW OFFICES OF A. LAVAR TAYLOR
              3 Hutton Centre Drive, Suite 500
15            Santa Ana, California 92707
              By:  JONATHAN AMITRANO, ATTORNEY AT LAW
16               LAVAR TAYLOR, ATTORNEY AT LAW
              714.546.0445
17            Jamitrano@taylorlaw.com

18
      Also Present:  Annie Lee, Korean Interpreter
19                    Will Greco

20

21

22

23

24

25
```

**Ben Hyatt Certified Deposition Reporters**
**888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com**

Laura Kim - 7/18/2022

1    given you?

2    A.      Yes.

3    Q.      Is there any reason that you are impaired or

4    unable to respond accurately and truthfully today?

5    A.      Can you repeat that again?  What was that?

6    Q.      Is there any reason that you are impaired or

7    unable to respond accurately or truthfully today?

8    A.      I will do my best to record whatever the question

9    is in response to it.

10   Q.      Are you under any drugs or medication that would

11   affect your ability to testify?

12   A.      I'm a long time diabetes.  I have medication that

13   I need break at 8:00 o'clock I need to take it.  I can

14   handle it.  I'm not a hundred percent normal.  I had an

15   accident that's a couple years since, but I can handle

16   it.  I'll try my best.

17   Q.      Okay.  When were you born?

18   A.      ███████████ 1944.

19   Q.      And where were you born?

20   A.      Thoongnam, Korea.

21   Q.      When did you come to the United States the first

22   time?

23   A.      1968.

24   Q.      And when did you become a United States citizen?

25   A.      1974.

Page 5

Laura Kim - 7/18/2022

```
1    Q.      What educational degrees have you obtained?

2    A.      I graduated from nursing school as a registered

3    nurse.  And then in the United States I was late starter.

4    I went to school at 2004.  You want the location?

5    Q.      I just want the name of the school that you went

6    to in 2004.

7    A.      Thoongnam University.  It's National University

8    in Thoongnam.

9    Q.      And that's in Korea?

10   A.      Yes.

11   Q.      What degree did you get?

12   A.      Ecological engineering.

13   Q.      And did you get your Ph.D. in ecological

14   engineering in 2011?

15   A.      2011.

16   Q.      How many different languages do you speak?

17   A.      Not that good, but I can speak Korean and

18   English.  And I've been away for over 20 years; so in and

19   out, but I'm okay.  And then a little bit of Spanish.

20   And other than that -- German.  That's about it.

21   Q.      And how would you characterize your level of

22   English proficiency in 2009?

23   A.      On a scale of one to ten?

24   Q.      Sure.

25   A.      2009?
```

Page 6

Laura Kim - 7/18/2022

1    Q.      Yeah.

2    A.      I would say about seven or eight.

3    Q.      With ten being --

4    A.      Ten being a hundred percent right.

5    Q.      And how would you characterize your level of

6    English proficiency today on that same ten-point scale?

7    A.      Now it's probably six.

8    Q.      Down to six.  Okay.

9            In 2009, approximately how many weeks did you

10   spend in the United States?

11   A.      How many weeks?

12   Q.      Yes.

13   A.      2009?  I stayed the summer vacation and winter

14   vacation.  So summer normally 30 to 60 days and winter it

15   was a short vacation, about three weeks.  So I think

16   that's all I stayed most of the time.

17   Q.      And so in total, about how many weeks would that

18   have been in 2009?

19   A.      I have to guess.  Best estimate -- I can't

20   remember.  Three or four weeks -- about 11 to 12 weeks.

21   Q.      So in 2009, you spent approximately 11 to 12

22   weeks in the United States?

23   A.      Yes.

24   Q.      And would you have spent the remaining time that

25   year in Korea?

Ben Hyatt Certified Deposition Reporters
888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com

**Laura Kim - 7/18/2022**

1   A.      Yes.  I went to school in 2004 and I -- I

2   attended a hundred percent in school; so it's a long

3   time.  I left the school at earlier age; so I had to

4   concentrate a hundred percent.  I went to school three to

5   five days a week.

6   Q.      And in 2010, would you have spent the same 11 to

7   12 weeks in the United States?

8   A.      I saw the -- it could have been more than 11

9   weeks.  I don't know if it -- my estimate is not

10  accurate.  But it's more than 11 weeks.  I was -- I came

11  to see my dad.  He was in the hospital.  And so I came

12  very often, maybe two to three months.  In school -- I

13  was -- I was in graduate school; so I wasn't able to

14  leave when I had to come here.  So it could have been

15  more than 11 weeks.

16  Q.      What's your best estimate, either in terms of

17  weeks or in months, the amount of time you were in the

18  United States in 2010?

19  A.      2010?  I don't know.  Maybe four.  Maybe four

20  months.

21  Q.      Four months?

22          And what's your best estimate for the number of

23  months you were in the United States in 2011?

24  A.      Excuse me.  What was that?  What was that?  I

25  didn't -- I didn't get the first part of it.

**Ben Hyatt Certified Deposition Reporters**
888.272.0022  818.343.7040  Fax 818.343.7119  www.benhyatt.com

Laura Kim - 7/18/2022

```
 1   Q.        In 2011 --

 2   A.        Yes.

 3   Q.        -- approximately how many months were you in the

 4   United States?

 5   A.        That's the year I graduated.  It looks like, to

 6   me, it's approximately the same.

 7   Q.        Approximately four months?

 8   A.        About -- approximately four months.

 9   Q.        And finally in 2012, approximately how many

10   months were you in the United States?

11   A.        Well, four times a year.  And then each time I

12   stayed about three to four weeks.

13   Q.        Have you had any head injuries?

14   A.        Yes.  I had in 1994 -- no -- '93 -- 1997.  Not

15   '94.

16   Q.        And as a result of the head injury, did it affect

17   you cognitively?

18   A.        It affected my memory not a hundred percent.  I

19   can still remember.  And I have some dizziness sometimes,

20   and then I do this spinning, like a dizziness, and -- and

21   the minor headache I have.  Did I answer?

22   Q.        Is there -- are there any other symptoms

23   associated with your head injury?

24   A.        Besides -- any other injuries?

25   Q.        Any other symptoms associated with that head
```

1    injury?

2    A.     Well, the symptoms have -- the dizziness is quite

3    often.  And the world is spinning.  Like, when I'm laying

4    down and when I get up, I get up slowly because it is

5    spinning.  So I have to close my eyes and stay in bed for

6    awhile.  And I don't think that I had that -- that is

7    that -- that has been going about ten years.  So the last

8    six years I'm suffering from that.  That's not -- but

9    that's not affected me, the injury.

10   Q.     Okay.  In 2009, what businesses did you have an

11   ownership in?

12   A.     What -- which business?

13   Q.     Yes.

14   A.     Yes.  In 2009 I had a Marina Enterprise.  It is a

15   corporation.  And then Laura's French Baking Company in

16   U.S.A.

17   Q.     Any others?

18   A.     2009.  CBSI.

19   Q.     And would you spell that.

20   A.     CBSI.  California -- California Board -- S-I --

21   Sports, Incorporated.

22   Q.     Okay.  And how about LK Water or Laura's

23   Distribution Company?

24   A.     That was from 2011.

25   Q.     So LK Water was formed in 2011?

Ben Hyatt Certified Deposition Reporters
888.272.0022  818.343.7040  Fax 818.343.7119  www.benhyatt.com

Laura Kim - 7/18/2022

1    A.      Yes.

2    Q.      And how about Laura's Distribution Company?

3    A.      Laura's Distribution Company.  Yes.  My sister

4    ran it.  I was owner for that.  She didn't do a good job;

5    so I sold.  I didn't do any activity from that.

6    Q.      But when was that company formed?

7    A.      I think 2011.

8    Q.      Okay.

9    A.      Yes.

10   Q.      Okay.  Was Marina Enterprises, Inc., open from

11   2009 through 2012?

12   A.      Marina Enterprise was open earlier than that.  It

13   was already there to supply shoes.  I was an agent.  I

14   was an agent.  And I let it go because I was -- I was an

15   agent with CBSI.  So -- but I let them run it.  I was

16   always -- I love to work; so I work seven days.  Probably

17   did it over the weekend.  But I had to go to school for

18   four or five days full-time.

19           THE REPORTER:  Excuse me.

20           MS. CIRAOLO:  Let's go off the record.

21               (Off-the-record discussion.)

22           MS. CIRAOLO:  Let's go back on the record.

23           MR. GREENE  Q:  So was Marina Enterprises, Inc.,

24   in operation in 2009?

25   A.      Yes.

Page 11

Laura Kim - 7/18/2022

```
1    Q.      Was it still in operation in 2010?

2    A.      Yes.

3    Q.      Was it still in operation in 2011?

4    A.      Yes.

5    Q.      Was it still in operation in 2012?

6    A.      What was that?  2012?

7    Q.      That was my question.

8    A.      Okay.  Yes.

9    Q.      Was LK Water Company in operation in 2011?

10   A.      Yes.

11   Q.      Was it in operation in 2012?

12   A.      Yes.

13   Q.      Was Laura's Distribution Company in operation in

14   2011?

15   A.      Well, that --

16   Q.      Say again.

17   A.      The corporation was bonded and no activity.

18   Q.      Oh.  I see.

19           Was there any activity from Laura's Distribution

20   Company in 2012?

21   A.      No.

22   Q.      Laura's French Baking Company, was it in

23   operation in 2009?

24   A.      Yes.

25   Q.      Was it in operation in 2010?
```

Page 12

Laura Kim - 7/18/2022

1    A.      Yes.

2    Q.      Was it in operation in 2011?

3    A.      Yes.

4    Q.      Was it in operation in 2012?

5    A.      Yes.

6    Q.      Was California Board Sports, Incorporated, CBSI,

7    in operation in 2009?

8    A.      Yes.

9    Q.      2010?

10   A.      Yes.

11   Q.      2011?

12   A.      Yes.

13   Q.      2012?

14   A.      Yes.

15   Q.      Were you the owner of Marina Enterprises, Inc.?

16   A.      Yes.

17   Q.      Were you the owner of Laura's French Baking

18   company?

19   A.      Yes.  90 percent.

20   Q.      90 percent.

21           Were you the owner of LK Water Company?

22   A.      Yes.  A hundred percent.

23   Q.      100 percent?

24   A.      Yes.

25   Q.      Were you the owner of California Board Sports,

Ben Hyatt Certified Deposition Reporters
888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com

1    Incorporated?

2    A.      40 percent share.

3    Q.      When did you first open a bank account outside of

4    the United States?

5    A.      '99.  Yes.  Can't be after that.  1999.

6    Q.      Your best estimate is that you first opened a

7    bank account outside of the United States in 1999?

8    A.      Yes.

9    Q.      Was that a corporate account or a personal

10   account?

11   A.      Personal account.

12   Q.      Do you recall when you first opened a corporate

13   bank account outside of the United States?

14   A.      Would you like to know when?

15   Q.      Yes.  Your best estimate.

16   A.      Best estimate.  I think it is 2000 or 2001.

17   Q.      During the years 2009 through 2012, did you have

18   one or more bank accounts at Woori Bank?  W-O-O-R-I.

19   A.      Yes.  More than one.

20   Q.      More than one?

21   A.      Yes.

22   Q.      And during that same period, did you have one or

23   more accounts at Standard Chartered First Bank Korea

24   Limited?

25   A.      I think the account was opened earlier and then

Ben Hyatt Certified Deposition Reporters
888.272.0022  818.343.7040  Fax 818.343.7119  www.benhyatt.com

Laura Kim - 7/18/2022

1    Q.      Is -- how long have you known Mr. Khim?

2    A.      Mr. Khim was introduced by Ty, my brother-in-law,

3    from 2009.  And from there -- from then on.  And then --

4    then this audit started, and he got dismissed, and

5    Mr. Chee came in in 2003 -- 2013, I mean.

6    Q.      And so Mr. Khim -- did he prepare your tax

7    returns in the United States between 2009 and 2012?

8    A.      Yes.  2009 to 2013.  Anyways, for four, maybe --

9    at least four years.

10   Q.      For at least four years.

11           And then you started using --

12   A.      Mr. Chee of the -- Hunee Chee.  He was brought in

13   to -- and having depositions.  And he was brought in, and

14   so then ever since -- then since the lawyer's office

15   introduced me to him.  I didn't know him.

16           MS. CIRAOLO:  Objection.  Gavin, can we go off

17   the record for a second?

18           MR. GREENE:  Sure.  That's fine.  Off the record.

19           (Off-the-record discussion.)

20           MR. GREENE:  Back on the record.

21   Q.      So Mr. Khim prepared your personal income tax

22   returns in the United States for 2009 to 2012; correct?

23   A.      Yes.

24   Q.      And did he also prepare any business tax returns

25   for you during that time?

**Laura Kim - 7/18/2022**

1    A.      1040.  That's the business tax return, isn't it?

2    1040.

3    Q.      Did your corporation have tax returns?

4    A.      Yes.  That was he was doing.

5    Q.      Okay.  And -- and did any -- did you have any

6    foreign businesses during 2009 through 2012?

7    A.      I had foreign businesses.  Marina Enterprise.

8    Q.      Was Marina Enterprise the only foreign business?

9    A.      No.  No.  I did have the water company too.

10   Q.      Were Marina and the water company the only two

11   foreign businesses?

12   A.      Yes.  And then Laura Distribution, which is

13   nothing, didn't have any activity.  I told you earlier.

14   Q.      Okay.  And so just to make sure I'm clear, Marina

15   Enterprises, LK Water Company, and Laura's Distribution

16   Company were all foreign businesses; is that correct?

17   A.      Right.

18   Q.      And did all -- did Marina Enterprises have

19   foreign tax returns that needed -- that were prepared

20   during 2009?

21   A.      This was in -- in Korea.

22   Q.      So just to be clear, for 2009 through 2012,

23   Marina Enterprise had Korean tax returns that were

24   prepared; correct?

25   A.      That's correct.

**Ben Hyatt Certified Deposition Reporters**
**888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com**

Laura Kim - 7/18/2022

1   Q.      And who prepared those foreign tax returns?

2   A.      It's Korean accountant.  Not a CPA.  Accountant.

3   It's -- they don't have CPA in Korea.  And those names

4   are Korean name -- would it be okay if I say in Korea?  I

5   can't remember the Korean name.  I'm bad to remember the

6   Korean name.  Mr. Lee, Mr. Khim, Mr. Chong.  I believe

7   Chong.  It was three.  I couldn't find the -- the right

8   one; so I kept moving almost every year over there.

9   Q.      Okay.  And just, again, to be clear, the three

10  foreign companies that you had between 2009 and 2012 --

11  A.      Uh-huh.

12  Q.      -- that filed foreign tax returns, those foreign

13  tax returns were prepared by foreign accountants; is that

14  correct?

15  A.      Foreign accounts?  Foreign accountants?

16  Q.      They were prepared by accountants in Korea?

17  A.      Yes.

18  Q.      And Mr. Michael Khim, your CPA in the United

19  States, did not prepare the tax returns that -- that were

20  filed in Korea between 2009 and 2012; correct?

21  A.      I cannot recall.  But it looks like -- I don't

22  think he did.  He did the U.S. tax returns but not the

23  Korean.

24  Q.      Okay.  Other than preparing tax returns, did

25  Mr. Khim provide any other services to you?

Ben Hyatt Certified Deposition Reporters
888.272.0022  818.343.7040  Fax 818.343.7119  www.benhyatt.com

Laura Kim - 7/18/2022

1   A.      He might have asked me, but I don't remember
2   seeing any list.
3   Q.      Do you remember if he ever asked you if you had
4   foreign bank accounts?
5   A.      Never did.
6   Q.      He -- he did not ask you?
7   A.      No.
8   Q.      Did he ask you if you earned any interest?
9   A.      No.  Not that -- I don't know.  I didn't hear
10  from him about that.
11  Q.      So Mr. Khim, when he was preparing your tax
12  returns for 2009 through 2012, never asked you if you
13  earned interest?
14  A.      From the United States, yes.  I gave him all from
15  the United States.  It was right -- my understanding that
16  I had nothing to do with the Korean.  So it could have
17  been my side didn't give it to him, but he didn't ask for
18  it.  I was thinking he just did it for U.S.A.
19          And I had Korean CPA -- the accountant to do
20  business for the Korean report, you know, tax report.  So
21  I had no knowledge of what I had to combine it.  I
22  learned it now after the audit that was not the right way
23  I do it.  You got to combine it.  But at that time, I
24  didn't do it that way.
25  Q.      My question to you is:

Ben Hyatt Certified Deposition Reporters
888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com

**Laura Kim - 7/18/2022**

```
 1              Go ahead.  You can answer.
 2              THE WITNESS:  I involuntary told him.  I don't
 3      remember telling him.  But he never asked me.
 4              MR. GREENE  Q:  For 2010, did Michael Khim ask
 5      you if you had foreign bank accounts?
 6      A.      Same way.
 7      Q.      For 2011, did Michael Khim ask you if you had
 8      foreign bank accounts?
 9      A.      Up to '12 -- up to '12, year '12, I don't
10      remember asking me.
11      Q.      So does that mean in 2012 -- did he ask you in
12      2012?
13      A.      No.  Up to -- he did up to '12; so he didn't ask
14      me.  Same thing.
15      Q.      Same thing.
16              So for all four years:  2009, '10, '11, '12.
17      A.      That's right.  In '13 -- year '13, I found out
18      that's not right.
19      Q.      Okay.  When did you first find out about the FBAR
20      filing requirement?
21      A.      19- -- 2009.
22      Q.      2009 was the first time?
23      A.      Yes.  I left.  Didn't say anything.  Nobody told
24      me anything.  My sister is the one that told me.
25      Q.      And what is your sister's name?
```

Page  41

```
1    A.      Carol.  Caroline.  I call her Carol.

2    Q.      And what is her last name?

3    A.      Carol Son.  S-O-N.

4    Q.      S-O-N.  Okay.

5            So did she tell you about the FBAR filing

6    requirement in 2009 so that you filed your first FBAR

7    in -- for 2008?  Is that correct?

8    A.      For 2008 is 2009.  I filed this in 2009 because

9    she told me I had to do it right away.  So she send me

10   the clip from the newspaper.  It's a Korean newspaper

11   with all the information; so she clipped it, and

12   immediately she sent it to me.  I believe she sent it fax

13   or whatever, by email.

14           So I never heard of FBAR.  You know, I didn't

15   even know what that meant.  Right now of course I know

16   for the bank account.  But at the time, I thought that it

17   was some special, you know, name and never heard of it

18   for tax before.  All I know is 1040 as the corporation.

19   And, for me, I have not pay attention.  No one told me.

20           IRS didn't send me anything.  They should have

21   send to everybody in contact of people that are -- if

22   they should have -- are doing business in overseas.  They

23   should -- should have been known, you know.  The IRS

24   should let them know.  I hope the attorney -- are you --

25   are you an attorney?
```

**Ben Hyatt Certified Deposition Reporters**
888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com

**Laura Kim - 7/18/2022**

1    Q.      Yes, I am an attorney.  Yes.

2    A.      But not from IRS; right?

3    Q.      I'm with the Department of Justice.  But hold on.

4    Let me get back to asking you questions.

5            MS. CIRAOLO:  And, Laura, I'm just going to

6    interject.  Listen to the question, and just answer the

7    question.

8            THE WITNESS:  Okay.  Okay.  I keep forgetting.

9            MR. GREENE  Q:  So for the year 2009, which --

10   A.      Yes.

11   Q.      -- you filed and reported in 2010, is -- is that

12   correct?

13   A.      No.  In 2009 I reported for 2008 FBAR.

14   Q.      Okay.  And for the year 2009, did you file a

15   report, then, in 2010?

16   A.      2010 I reported 2009 FBAR.  You do a year later.

17   That's what I do for.

18   Q.      Agreed.

19           So when you were filing for 2009 --

20   A.      Yes.

21   Q.      -- what did you understand you were required to

22   report?

23   A.      That I was -- I didn't -- I don't know what I

24   understood.  The fact of my ability was limited at that

25   time.  I didn't understand the -- one time I put the

Page  43

**Laura Kim - 7/18/2022**

1    individual check box and the corporation check box

2    because I -- I didn't quite understand that format.  And

3    I just tried to do -- that's why I sent the letter to the

4    IRS.  It was a cover letter.  If I was wrong, please let

5    me know, and could I do...

6    Q.      And I'm pulling up what I've marked as Exhibit

7    59.  Is this the cover letter you're referring to?

8    A.      No.  No.  No.  One in 2009.  I sent it -- the

9    very first one I did for 2008.  That's the one I sent

10   with the cover letter.  And I think the next one I did

11   too but just saying I'm sending -- you know, this is my

12   taxes.

13   Q.      Okay.  So going back to the FBAR you filed for

14   2009, what I'm asking you is:

15           What did you understand at the time you were

16   required to report?

17   A.      What did I understand?

18   Q.      This -- to be clear, this isn't a reading

19   question.  This is a memory question.

20   A.      Yes.  I can't recall what I was thinking.  I

21   was -- I was -- so many things going at the same time.  I

22   had -- I was not organized.

23   Q.      Did you ever ask anyone for assistance in

24   completing the FBAR for 2009?

25   A.      2009?  No, I didn't.  Nobody knows in Korea.

**Ben Hyatt Certified Deposition Reporters**
**888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com**

Laura Kim - 7/18/2022

1    Never heard of it.  I asked Korean people do you know

2    anything, and nobody understand it.  So I had to call IRS

3    to give me the form -- to send me the form; so I download

4    it, and I did it myself and paid off.  If I thought it

5    should have been, you know, related with the regular tax

6    return, I couldn't have done it.  But I thought it was

7    totally different.  FBAR?  Never seen it before.  So that

8    was my mistake at that time.

9    Q.      So just to be clear, for -- when you recorded the

10   FBAR for 2009, you prepared it yourself without any

11   assistance?

12   A.      That's right.

13   Q.      And did you ask anyone -- did you ask your CPA,

14   Michael Khim, to assist you?

15   A.      No.

16   Q.      And why not?

17   A.      He -- I -- I didn't think it didn't matter with

18   the U.S.A. tax.  I thought it was only foreign people and

19   overseas; so I didn't ask him.  But he just joined the

20   company in 2009.  But that's not the point.  I was just

21   summarizing it has nothing to do with U.S.A. before this.

22   People who stay in Korea or in India, whatever, I didn't

23   even know that -- that law becomes, you know,

24   worldwide -- this kind of law that became worldwide.

25   Q.      Okay.  So this -- as I said, Exhibit 59 is your

Ben Hyatt Certified Deposition Reporters
888.272.0022  818.343.7040  Fax 818.343.7119  www.benhyatt.com

Laura Kim - 7/18/2022

1    FBAR for 2009.

2    A.      Exhibit 59?  Which one is that?  59?  Is this the

3    one that's 59?

4    Q.      So this is for tax year 2009.  It's Exhibit 59.

5    A.      Exhibit 59.  You see because it was Woori Bank

6    financial account, do not file with the -- with your

7    federal tax return.  It says there.  It has nothing to do

8    with U.S. tax.  And that was mistake.  I should have

9    asked somebody.  I didn't get that.

10           And I was given -- given the numbers from my

11   office.  And, you know, someone in office came to my

12   house and typed it and -- or over the phone.  But most

13   likely someone from the office came over and was typed it

14   in for me because I wasn't too good at it on the form --

15   typing it on the form in the computer.

16   Q.      So you directed the typist what to type?

17   A.      They did it for me.

18   Q.      Who was making the decision about what letters

19   and numbers to type on this form?

20   A.      I was -- they must have gave me the account

21   number and the balances; so I must have say what to put

22   that in there.  I didn't think it was that serious

23   because it was -- I didn't think it was that serious at

24   that time.

25           MS. CIRAOLO:  I'm sorry.  I'm sorry to interrupt.

Ben Hyatt Certified Deposition Reporters
888.272.0022  818.343.7040  Fax 818.343.7119  www.benhyatt.com

Laura Kim - 7/18/2022

1    Q.      When did you -- you said you learned that you had

2    more bank accounts than were reported on the FBAR.

3            When did you learn that you had more accounts?

4    A.      I told you.  I found out when you did the

5    audit -- what they started doing audit and asked me to

6    provide all the banks.  So I simply asked them, you know.

7    I can't do it without the bank.  I asked the bank, and

8    they did that.  That was assigned.  I don't know it was

9    2014 or recent.  I can't remember.

10   Q.      I'm sorry.  What was your best estimate for the

11   date?

12   A.      2014 --

13   Q.      Okay.

14   A.      -- when they -- when the IRS start auditing,

15   investigating or auditing.  That was 2014 or -- recent.

16   I don't know.  I don't know.

17           MR. GREENE:  Okay.  Why don't we -- how long do

18   you need for a break to -- to get medication?

19           THE WITNESS:  That's -- my medication time is not

20   yet.  In an hour I have to take it.

21           MR. GREENE:  Okay.

22           MS. CIRAOLO:  Right.  We're going to take --

23   let's take a quick ten-minute break.

24           MR. GREENE:  Ten-minute break.  Sounds great.

25           MS. CIRAOLO:  Okay.

Page 52

Laura Kim - 7/18/2022

```
 1   Q.      That's my question.

 2   A.      Yes.  I don't know if call it review.  I did it

 3   myself first year.  That's what -- my sister told me to

 4   do it.

 5   Q.      When you say "first year," was that 2008 or 2009?

 6   A.      2008.

 7   Q.      Okay.  So for 2008, you did it all by yourself?

 8   A.      Right.

 9   Q.      And so for 2009, did you have help doing it?

10   A.      I don't have help doing.  I still did the same

11   way because I was thinking I had to do it.

12          MS. CIRAOLO:  Objection.  Asked and answered.

13   Gavin, I would just say that she's repeatedly said that

14   she had employees help her.

15          THE WITNESS:  I had employees.  Yes.  Employees

16   helped me to type up.

17          MR. GREENE  Q:  Do you recall if the employees

18   answered questions for you or just carried out your

19   direction?

20   A.      I can't recall on that.

21   Q.      And can you recall for any of the years at

22   issue -- for 2009, 2010, 2011, and 2012 -- did you have

23   employees helping you complete the return -- the FBAR for

24   each of those years?

25          MS. CIRAOLO:  Objection to form.
```

Page 56

Laura Kim - 7/18/2022

1          THE WITNESS:  They -- I could have -- I told you

2    that I was -- I had them come type the form -- because I

3    didn't know at the time -- type it into the form.  You

4    know, I can type letters and email stuff, but I didn't

5    know how to use the form to type it.  So I did ask for

6    help from her.  And, you know, I told her what to write,

7    or she just put it down, the amount.  That's, you know,

8    so long ago I cannot recall.

9          MR. GREENE  Q:  So does that mean for 2009

10   through 2012, you can't recall whether or not the person

11   assisting you with the form was just taking direction or

12   providing additional assistance?

13         MS. CIRAOLO:  Objection to form.

14         THE WITNESS:  I don't know what to say right now.

15   I said what I just said.  And I couldn't say whether I

16   give direction or she did it on her own.  I know she

17   typed it, but I can't recall how I told it to her.

18         MR. GREENE  Q:  And do you remember the name of

19   the person that was helping you prepare -- to type the

20   FBAR form in -- for 2009?

21   A.     Her name was Barbara.  I think it was Barbara.

22   Or -- or -- I don't know.  There was a lot of changes

23   around that time.  I was having kind of rough time.  They

24   all gone for long time; so that's -- I do remember her

25   name was Barbara, I think.

Ben Hyatt Certified Deposition Reporters
888.272.0022  818.343.7040  Fax 818.343.7119  www.benhyatt.com

Laura Kim - 7/18/2022

```
 1          MS. CIRAOLO:  If you recall.

 2          THE WITNESS:  I -- if I recall?  I thought I

 3   handwrite it, but I don't think.  Yeah.  I'm sure she

 4   did.  Yeah.

 5          MR. GREENE:  Okay.

 6          MS. CIRAOLO:  Hold on.  I'm sorry, Gavin.  I

 7   don't think she answered the question that you just

 8   posed.  I think she was asking who -- answering who typed

 9   the form as opposed to your question, which was

10   different.

11          MR. GREENE:  Let's try it again from the

12   beginning.

13   Q.     Someone helped you type the 2009 FBAR; correct?

14   A.     Yes.

15   Q.     Did that same person bring bank statements to

16   help fill out the --

17   A.     Yes.

18   Q.     -- FBAR?

19   A.     Yes.

20   Q.     Did you review those bank statements to complete

21   the FBAR?

22   A.     Not that I remember at this time.

23   Q.     Did the person assisting you review the bank

24   statements to complete the FBAR for 2009?

25   A.     She did.  But the -- she knows what to do with
```

Page 60

Laura Kim - 7/18/2022

1    it.  I was relying on her on anything to do with the bank

2    since I don't got to bank.  She goes to the bank or

3    banker comes to the office.  That's how they operate over

4    here.  And I'm -- I'm not sure about the bank statements;

5    so I have to rely on them to do it.

6    Q.      And when the 2009 FBAR was being typed up, was it

7    typed up at the office or somewhere else?

8    A.      It's typed at my house.

9    Q.      Okay.  And -- so let's try for 2010.  For 2010,

10   did someone come to assist you in typing up the FBAR?

11   A.      I'm sure of that.  Yes.

12          MS. CIRAOLO:  If you recall.  If you recall.

13          And, Gavin, I'm sorry.  I just want to clarify.

14          Just answer if you recall.  Don't guess.

15          THE WITNESS:  Yes.  It's 50/50.  You know, I

16   don't know what to say right now.  His question is very,

17   you know, confusing for me.  I don't have a clear --

18   clear memory at this time; so it's hard to tell you what

19   exactly happened.

20          MR. GREENE  Q:  So for 2010, we also have that

21   FBAR.  That one's also typed.

22          Did you ever type -- fill out an FBAR by using a

23   typewriter and typing an FBAR?

24   A.      Typewriter?  I didn't have a typewriter.  That

25   was a computer.

Page 61

Laura Kim - 7/18/2022

1   Q.      Oh, it was a computer.

2           Did you ever fill out an FBAR by yourself other

3   than 2008?

4   A.      I think I did.  I asked my employees to do it.

5   As I said, I was heavily involved with the graduate in

6   2008 and so it -- there was a lot of paper to be

7   submitted; so there was a lot of pressure on me, and I

8   wanted to graduate on time.  And so it would be -- so I

9   shouldn't have done it.  But I went to school for

10  full-time.

11          And a hundred percent for that reason, I kind of

12  left alone -- left most of time to my employee to accept

13  approval for payment.  That's how I ran the company for a

14  while.

15  Q.      So my question is --

16  A.      Yes.

17  Q.      -- did someone assist you in completing the FBAR

18  form for 2010?

19  A.      I think -- I believe that the office did it --

20  office person.

21  Q.      So the answer is yes?

22  A.      Yes.

23  Q.      And did that occur at your home?

24  A.      She might have asked me something, but I can't

25  remember what she asked.

Page  62

Laura Kim - 7/18/2022

```
 1              MS. CIRAOLO:  I'm going to object.  That was not
 2    her testimony.
 3              MR. GREENE  Q:  Okay.  I'm asking if that's your
 4    testimony now.
 5              Sometime in 2010 or 2011, did you ask your CPA,
 6    Michael Khim, for the FBAR form?
 7    A.    I think I sent an email asking for it.  Before I
 8    cannot remember all this stuff, but now I remember I may
 9    have been asking him to send me the form.  Just asking
10    IRS takes too long and you miss the date; so that's why I
11    asked if he had it.  Yes.  If he didn't have it, I have
12    to go ahead and ask IRS.  But that -- I think he had it.
13    I believe.
14    Q.    Okay.  Now, for 2011, what is that?
15    A.    That -- I didn't see this form.  I can't remember
16    this.
17    Q.    This is a transcript of the FBAR form --
18    A.    This is me?
19    Q.    -- for you -- for Laura Kim, and this is the FBAR
20    for 2011.
21              MS. CIRAOLO:  Objection.
22              MR. GREENE  Q:  Do you remember filing an FBAR
23    for 2011?
24    A.    In this format?  I never seen it before.
25    Q.    My question is:
```

Ben Hyatt Certified Deposition Reporters
888.272.0022  818.343.7040  Fax 818.343.7119  www.benhyatt.com

Laura Kim - 7/18/2022

1    Q.     And did that occur in your home?

2    A.     Yes.

3    Q.     And did that person either bring the bank

4    statements or notes summarizing the bank statements to

5    complete the form?

6    A.     Yes.

7    Q.     And did you review the completed FBAR for 2012

8    before it was submitted?

9    A.     Yes.

10          MS. CIRAOLO:  Gavin?

11          MR. GREENE:  Yes.

12          MS. CIRAOLO:  Just one second.

13          MR. GREENE:  Yes.  Do you need to go off the

14   record?

15          MS. CIRAOLO:  Yeah.  Off the record just one

16   second.

17              (Off-the-record discussion.)

18          MR. GREENE:  Back on the record.

19   Q.     So is it accurate that for 2009, '10, '11, and

20   '12, someone assisted you in filling out the FBAR forms

21   on the computer?

22   A.     Yes.

23   Q.     So for 2009, '10, '11, and '12, did that person

24   bring either bank statements or notes summarizing the

25   bank statements to assist in completing the FBAR forms?

Ben Hyatt Certified Deposition Reporters
888.272.0022  818.343.7040  Fax 818.343.7119  www.benhyatt.com

Laura Kim - 7/18/2022

```
1    A.       Yes, sir.

2    Q.       And for 2009, '10, '11, and '12, were the FBAR

3    forms filled out in your home?

4    A.       Yes.

5    Q.       And for 2009, '10, '11, and '12, did you review

6    the completed FBAR form before it was filed?

7    A.       Yes.

8    Q.       Okay.  And just to make sure we're all on the

9    same page, for 2009, '10, '11, and '12, the person

10   helping you was an accountant at your business; is that

11   correct?

12   A.       Bookkeeper.

13   Q.       A bookkeeper in your business?

14   A.       Yes.

15   Q.       One of your employees?

16   A.       Yes.

17   Q.       It was not your CPA?

18   A.       No.  No.  That -- none of the Korean CPAs or

19   accountant knows about the FBAR.  They didn't understand

20   that.  I did ask sometimes later, but nobody understood.

21   They really didn't understand English; so...

22   Q.       Okay.  And we're getting to a little summary here

23   to make sure I understand what you've testified to.

24           Why didn't you tell your CPA about your foreign

25   bank accounts for 2009, '10, '11, and '12?
```

Ben Hyatt Certified Deposition Reporters
888.272.0022  818.343.7040  Fax 818.343.7119  www.benhyatt.com

Exhibit 183



**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

DEPUTY COMMISSIONER

JUL 08 2015

MEMORANDUM FOR COMMISSIONER, LARGE BUSINESS & INTERNATIONAL
COMMISSIONER, SMALL BUSINESS/SELF-EMPLOYED
COMMISSIONER, TAX EXEMPT/GOVERNMENT ENTITIES

FROM:                  John M. Dalrymple
                       Deputy Commissioner, Services and Enforcement

SUBJECT:               Delegation Order 25-13, Enforcement of Report of Foreign Bank
                       and Financial Accounts (FBAR) Requirements

Effective immediately, this memorandum modifies items (3) and (9) of Delegation Order
25-13 (effective April 11, 2012), pending a revision of the order. The modification
updates the titles of officials who may exercise the following authority:

(2) **Authority**. Except as otherwise set forth in this order, to take any action the
Commissioner is authorized to take under the Memorandum of Agreement and
Delegation of Authority for Enforcement of FBAR Requirements with respect to the
enforcement of 31 USC § 5314, 31 CFR § 1010.350, 31 CFR § 1010.306, and 31 CFR
§ 1010.420, including, with respect to these provisions, the authority to assess and
collect civil penalties under 31 USC § 5321 and 31 CFR § 1010.820 and to take any
other action reasonably necessary for the enforcement of these and related provisions.

(3) **Delegated to:** The Department Manager, Examination, Specialty Examination, BSA
[Bank Secrecy Act] Examination, CTR [Currency Transaction Reports] Operations, BSA
Compliance; the Chief, Specialty Examination, BSA Examinations; and the Program
Manager, Specialty Examination Policy and Quality, BSA Policy.

(8) **Authority:** To issue, serve, and recommend enforcement of summonses pursuant
to the summons power of 31 CFR Chapter X, Subpart I.

(9) **Delegated to:** Directors, Specialty Examination and Specialty Examination Policy
and Quality; Chief, BSA Examination and Program Manager, BSA Policy (Small
Business/Self-Employed); Directors, Field Operations (Large Business & International
and Tax Exempt and Government Entities); Area and Program Managers, Field
Operations, Compliance (Tax Exempt and Government Entities); and Territory
Managers (Small Business/Self-Employed and Large Business & International).

2

The D.O. 25-13 (April 2012) is available at http://www.irs.gov/pub/foia/ig/spder/do-25-13.pdf.

The authorities captured in this memorandum will remain in effect until Delegation Order 25-13 is revised. You may direct questions concerning this memorandum to Barbara J. Fiebich, Director, Specialty Examination Policy and Quality, or to Sandra L. Stolt, Program Manager, BSA Policy.

cc:  Chief Counsel
cc:  Chief, Appeals

USA - 004859

# Exhibit 184

| Form **13449**<br>(May 2015) | Department of the Treasury - Internal Revenue Service<br>**Agreement to Assessment and Collection of Penalties Under 31 USC 5321(a)(5) and 5321(a)(6)** |
|---|---|

Name of account holder

Laura Kim

Social security number (SSN) or Employer identification number (EIN)

F████8486

Address of account holder *(Number, Street, City or Town, State, ZIP code)*

Los Angeles, CA 90027

---

**Definition of Penalty Statutes**

1. **Foreign Financial Agency Transaction Violation — willful failure to meet recordkeeping requirements and/or report a foreign account on FinCEN Report 114, Report of Foreign Bank and Financial Accounts (FBAR):** 31 USC 5321(a)(5) and 31 CFR sections 1010.350, 1010.420 and 1010.820(g)(2)

2. **Foreign Financial Agency Transaction Violation — non-willful failure to meet recordkeeping requirements and/or report a foreign account on FinCEN Report 114, Report of Foreign Bank and Financial Accounts (FBAR):** 31 USC 5321(a)(5) and 31 CFR sections 1010.350, 1010.420 and 1010.820(g)(2)

3. **Negligent Failure to Report:** 31 USC 5321(a)(6) and 31 CFR sections 1010.350 and 1010.820(h)

4. **Negligent Failure to Meet Recordkeeping Requirements:** 31 USC 5321(a)(6) and 31 CFR sections 1010.420 and 1010.820(h)

5. **Pattern of Negligent Activity:** 31 USC section 5321(a)(6)(B)

| **TOTAL** proposed penalty *(from Page 2 of 2)* | $ 4056439.3999999999 |
|---|---|

**Signature Authorization**

I consent to the immediate assessment and collection of the penalty amount specified above plus any interest and penalty as provided by law.

| Your signature | Date signed |
|---|---|

| Representative's signature *(valid only with Power of Attorney attached)* | Date signed |
|---|---|

Name of entity *(for corporations, partnerships, trusts, etc., when EIN specified above)*

| Signature of authorized officer | Title | Date signed |
|---|---|---|

| Signature of authorized officer | Title | Date signed |
|---|---|---|

| Name of examiner<br>Ella Chernyak | Employee ID number<br>524322 | Date *(mmddyyyy)*<br>01/30/2017 |
|---|---|---|

Office of examiner

333 W Broadway MS 4466, San Diego, CA 92101

| Name of supervisor<br>Simon Bonilla | Employee ID number<br>1000621764 | Date *(mmddyyyy)*<br>01/31/2018 |
|---|---|---|

Office of supervisor

333 W Broadway MS 4466, San Diego, CA 92101

---

USA - 004688

Page 2

## Foreign Account Penalty Information

| Name of account holder | Account holder ID *(EIN or SSN)* |
|---|---|
| Laura Kim | ▓▓▓8486 |

### Foreign Account 1

| Calendar year | Foreign Bank, Institution, or Agent(s) | Proposed penalty per "Definition of Penalty Statutes" *(Check applicable box(es))* |
|---|---|---|
| 2011 | Woori Bank and Standard Chartered Bank | [X] (1)  [ ] (2)  [ ] (3)  [ ] (4)  [ ] (5) |
| Maximum value of account | Foreign account number(s) | Amount of penalty |
| $ various (see attached) | various ( see attached) | $ 1014109.85 |

### Foreign Account 2

| Calendar year | Foreign Bank, Institution, or Agent(s) | Proposed penalty per "Definition of Penalty Statutes" *(Check applicable box(es))* |
|---|---|---|
| 2010 | | [ ] (1)  [ ] (2)  [ ] (3)  [ ] (4)  [ ] (5) |
| Maximum value of account | Foreign account number(s) | Amount of penalty |
| $ various (see attached) | | $ 1014109.85 |

### Foreign Account 3

| Calendar year | Foreign Bank, Institution, or Agent(s) | Proposed penalty per "Definition of Penalty Statutes" *(Check applicable box(es))* |
|---|---|---|
| 2009 | | [ ] (1)  [ ] (2)  [ ] (3)  [ ] (4)  [ ] (5) |
| Maximum value of account | Foreign account number(s) | Amount of penalty |
| $ various (see attached) | | $ 1014109.85 |

### Foreign Account 4

| Calendar year | Foreign Bank, Institution, or Agent(s) | Proposed penalty per "Definition of Penalty Statutes" *(Check applicable box(es))* |
|---|---|---|
| 2012 | | [ ] (1)  [ ] (2)  [ ] (3)  [ ] (4)  [ ] (5) |
| Maximum value of account | Foreign account number(s) | Amount of penalty |
| $ | | $ 1014109.85 |

### Foreign Account 5

| Calendar year | Foreign Bank, Institution, or Agent(s) | Proposed penalty per "Definition of Penalty Statutes" *(Check applicable box(es))* |
|---|---|---|
| | | [ ] (1)  [ ] (2)  [ ] (3)  [ ] (4)  [ ] (5) |
| Maximum value of account | Foreign account number(s) | Amount of penalty |
| $ | | $ |

### Foreign Account 6

| Calendar year | Foreign Bank, Institution, or Agent(s) | Proposed penalty per "Definition of Penalty Statutes" *(Check applicable box(es))* |
|---|---|---|
| | | [ ] (1)  [ ] (2)  [ ] (3)  [ ] (4)  [ ] (5) |
| Maximum value of account | Foreign account number(s) | Amount of penalty |
| $ | | $ |

| | |
|---|---|
| **TOTAL** proposed penalty *(Enter here and on Page 1 of 2)* | $ 4056439.3999999999 |

USA - 004689

**SMALL BUSINESS/SELF-EMPLOYED DIVISION**
SOUTHWEST EXAMINATION AREA

| | |
|---|---|
| **Taxpayer:** | **Examining Agent:** |
| Laura Kim | Ella Chernyak |
| SSN: ▮▮▮▮8486 | |
| | **Years:** |
| Los Angeles, CA ▮▮▮ | 2009, 2010, 2011, 2012 |

# FBAR
## EXPLANATION OF ITEMS
April 21, 2017

## ISSUE

Whether Lara Kim is liable for the willful FBAR penalty per 31 U.S.C. §5321(a)(5) for the years 2009 through 2012.

## BACKGROUND, HISTORY AND FACTS

### Initial Contact & Power of Attorneys Identified
The initial examination letter was mailed (by prior examiner Kathleen Ledbetter) to Laura Kim (Mrs. Kim):
- November 20, 2012 - In that letter, Mrs. Kim was asked to contact examiner and the date of the appointment was scheduled for December 18, 2012.
- November 26, 2012 – Mrs. Kim was sent an Information Document Request and appointment re-scheduled for January 8, 2013

The other letters and requests for testimony and records that were sent to Mrs. Kim by the current examining agent (RA Ella Chernyak) prior to her ultimately appearing in June 2014 include the following:
- Summons served on 04/17/2013 for Mrs. Kim to personally appear with the requested records.
- Pattern letter was sent to Mrs. Kim's address for the non-filling of Form 5471 for Marina Enterprise Corporation in Korea on 04/09/2013. As of the date of this memo, Mrs. Kim has not filed these delinquent forms.
  Mrs. Kim has included these forms beginning with her 2012 income tax return. When Mrs. Kim submitted the 2012 return to the IRS, the dates the corporation started were questioned based on the following:

USA - 004690

- o California Board Sports Inc. (CBSI) has had vendor relationship with Marina Enterprise since 2000. Mrs. Kim stated during her interview that she has been supplying CBSI since 2000.
  - o Marina Enterprise was established in 2000 year per Internet research.
  The POA has subsequently provided an amended 2012 income tax return.
- RA sent out six Information Document Requests
  - o 07/25/2013
  - o 07/30/2013
  - o 03/13/2014
  - o 04/09/2015
  - o 04/22/2015

The actions taken by the examining agents to obtain an interview with Mrs. Kim:
- 1st examiner (Kathleen Ledbetter set up an appointment with Mrs. Kim and her former POA Michael Khim appeared without Mrs. Kim.
- 2nd examiner (Ella Chernyak) contacted Mr. Khim and asked to interview Mrs. Kim. Mr. Khim said that he would provide a response by 03/28/2013.
- On 04/09/2013, examining agent contacted POA again.
- No response was received. Examining agent issued a summons on 04/17/2013 for Mrs. Kim to appear for testimony with records.
- POA Villanueva from Moss Adams attempted to get the examining agent (Chernyak) removed from the case because they did not like the length of the interview of a related entity and each of its shareholders including Mrs. Kim. Laura Kim was only interviewed on her audit; she refused to answer questions about her relationship with CBSI and its shareholders.
- On 04/22/2013, POA attempted to reschedule an appointment for 2-4 weeks later.
- On 05/14/2013, POA said that he will get back to the examining agent ASAP regarding appointment scheduled per the summons.
- On 05/16/2013, Mrs. Kim did not appear for her scheduled appointment.
- On 07/25/2013, new POA received. POA left town for 4 weeks and examining agent asked for Mrs. Kim to appear for interview again either in the office or by phone.
- On 04/17/2013, 04/22/2013, 07/30/2013, 08/28/2013, 05/01/2014, 06/09/2015, 07/15/2015 – examining agent issued summons to various banks.
- On 08/14/2013, examining agent spoke with POA who stated that he is sending her records
- On 08/26/2013, examining agent received some records in Korean.
- On 08/28/2013, examining agent scheduled tour of the business and bakery as well as a meeting with POA, accountant and controller.
- On 07/14/2015 - examining agent requested a conference call with Mrs. Kim's preparer. POA Horowitz wanted to be present at that conversation and claimed privilege for the accountant. Counsel allowed POA to be present at first interview with accountant.
- On 09/10/2013, POA called to reschedule interview with Mrs. Kim.

Page 2

USA - 004691

- From 01/07/2014 to present, examining agent consistently communicating with the POA regarding the case and summoning records that still have not been provided.
- On 06/23/2014, examining agent met Mrs. Kim for an interview

Since Mrs. Kim failed to respond to letters mailed to her last known address, Mrs. Kim's tax return preparer, Michael Khim (Mr. Khim) was contacted and interviewed (by prior examiner). Mr. Khim was subsequently interviewed again because he prepared returns for 2009 to 2013 and recent FBARs.

During the course of the examination the Powers of Attorney were as follows:

| From | To | POA |
|------------|------------|-----------------------------------------------------|
| 01/10/2013 | 03/28/2013 | Michael Khim |
| 03/28/2013 | 07/28/2013 | Alan Villanueva (Moss Adams Company) |
| 04/18/2013 | 07/28/2013 | Nicola Bruno Attorney |
| 07/25/2013 | Present | A. Lavar Taylor (A. Lavar Taylor Law Firm) |
| 06/30/2014 | Present | A. Lavar Taylor (A. Lavar Taylor Law Firm) for FBAR |

## Summons for Testimony and Records
- Mr. Villanueva failed to provide records requested per IDRs dated 11/20/2012 and 11/26/2012 and also failed to follow through with requests to schedule an appointment to interview Mrs. Kim.
- The Next POA, Michael Khim, also failed to present Mrs. Kim to the interview even though he told the examining agent that he would set that up.
- Finally, the last POA, Lavar Taylor, attempted to quash the summons to appear for Mrs. Kim and then scheduled appointment with Mrs. Kim anyway. As a result, a summons for testimony and records was issued on April 17, 2013. The summons was served at Mrs. Kim's last known place of residence in Los Angeles, California. The summons requested that Mrs. Kim appear before the examiner and provide testimony and records on May 16, 2013

Mrs. Kim failed to make contact and did not appear for the appointment as requested per the summons. IRS Counsel mailed a "last chance letter" to Mrs. Kim on July 13, 2013. Mrs. Kim failed to respond again.

Based on the belief that Mrs. Kim was often in Korea and was no longer residing at her last known place of abode, IRS Counsel did not take additional summons enforcement actions. A subsequent review of IDRS indicated that though prior tax returns showed an address in Los Angeles, in 2015 the address changed to a location in Korea.

## No-show for the appointments and attempt to hinder investigation
Mrs. Kim did not appear at an interview scheduled for 01/08/2013
Mrs. Kim did not appear at an interview until 06/23/2014.

USA - 004692

~~Mrs. Kim did not show up to the 05/16/2013 scheduled appointment by the summons.~~
NOTE:

a. The case was reviewed several times with different POAs.
b. Two examining agents have scheduled three different appointments for Mrs. Kim.
   Mrs. Kim did not appear for the appointments and she did not make any contact
   with the examining agent to change the appointment dates.
c. Revenue Agent Chernyak has issued four Information Document Requests
   (IDRs) and Revenue Agent Ledbetter has issued two.
d. Taxpayer has attempted to quash two summonses: one for appearance and one
   for her accountant providing offshore records to the examining agent.
e. POA has sent a letter to examining agent to interfere with production of the
   offshore records according to the summons issued to the accountant

The examining agent called POA Amitrano, from Lavar Taylor office, and left him a
voice mail to call her back on 07/12/2016. This attempt was made to schedule
appointment with Mrs. Kim for the interview regarding FBARs.

During an interview with Richard Lim and his spouse, who are friends of Mrs. Kim, the
examining agent learned that Mrs. Kim should be "coming to town shortly" and therefore
an interview would be possible. POA still has not contacted the examining agent
regarding an appointment.

**Interview – September 9, 2013**
Mr. Khim was interviewed on September 9, 2013.  Also present at the interview was the
examining agent.  The following are statements made by Mr. Khim that are relevant to
the FBAR examination

- He has been Mrs. Kim's return preparer since 2009 and continued to prepare her
  returns until 2013.
- He first learned about Mrs. Kim's offshore accounts in either October or
  November of 2012.
- Every time records were requested from him by the IRS, he would first send the
  records to Mrs. Kim's POA, Mr. Taylor.  Mr. Taylor told him that he (Mr. Taylor)
  would send the information to the IRS (See Exhibit 1, Letter from Mr. Taylor).
- He had no knowledge about other offshore assets (such as real properties) of
  Mrs. Kim until early 2013.
- Mr. Khim said Mrs. Kim did not complete questionnaires.  He has communicated
  with Charlie Son from Laura's Bakery to gather any records necessary to prepare
  returns.
- POA Horowitz attempted to interfere with this interview by objecting to the
  questions regarding Mrs. Kim's offshore accounts.  He said during the interview
  that they are not ready for offshore-type questions.

USA - 004693

**Interview – June 23, 2014**

Mrs. Kim was interviewed on June 23, 2014.  The interview was transcribed by a court
reporter.  Also present at the interview were Mrs. Kim's POAs – Mr. Taylor and Robert
Horowitz, a Korean translator (name unknown – refused to provide any assistance with
translating) who came with Mrs. Kim and her POAs, the examining agent and a Korean
translator provided by the IRS.

The following are statements made by Mrs. Kim, via the IRS-provided Korean translator,
which are relevant to the FBAR examination (See transcript for complete interview):

- She is a U.S. citizen and not Korea citizen.
- She does not have any missing any income on her tax returns for years 2009
  through 2013.
    - When asked if she thinks there were any mistakes on the originally filed
      returns, Mrs. Kim stated that she does not think there are any mistakes.
    - After review of her Korean returns, it was found that the salaries from her
      100 percent owned Korean corporations were over $600,000 – which was
      never claimed on the income tax returns.
- When asked about how many foreign and domestic bank accounts she owned,
  Mrs. Kim identified an account at Wilshire Bank in the U.S., an account at Woori
  Bank in Korea and an account at Chartered Bank in Korea.
- She owns three real estate properties.  Two are in the U.S. and three are in
  Korea.  One was sold about a month ago.
    - After the investigation was completed, additional facts revealed that Mrs.
      Kim owns three rental properties in Korea, farmland property and a real
      estate property in Los Angeles where her mother currently resides.
- Charlie Son is her sister's husband.
    - Charlie Son runs the bakery.  He told the examining agent that everything
      gets reviewed by Mrs. Kim and he sends her reports all the time.
    - Mrs. Kim said that she rarely gets any reports from Charlie and that he is
      doing everything without her approval (See details in the interview memo).
- She earned wages from Marina Enterprise in Korea, interest income from bank
  accounts, dividends and rental income. All of the above are shown on her Korean
  tax returns. She has verified that Korean tax returns are accurate and correct to
  extend of her knowledge during 2nd interview.
- Marina Enterprise is located in Pusan, Korea.  It operates as a trading company.
  It is an agent for CBSI and takes care of production, shipping, etc.
- CBSI would send the design to Marina, and based on the design would make
  samples.

**Interview – June 23, 2014 (Discussion and Analysis)**

- Mrs. Kim has admitted to having a bank account in Korea. She said that one is
  an expense account and one general account.
- Mrs. Kim did not speak English and appeared to have difficulty answering
  questions.  The government translating agent also had difficulty understanding
  and translating what Mrs. Kim said.
- Mrs. Kim could not remember anything about operations of her businesses

USA - 004694

- **Pg 23** – Mrs. Kim said that she had 2 personal accounts: one at Woori Bank and one at Standard Chartered Bank
  - She also said that she has 5 properties in Korea and during the second interview she said she has 1 property in Korean in 2009 and then various up to 4 up to the year 2013.
- **Pg 53** – During this interview Mrs. Kim said that she visits the US two months in the winter and two months in the summer. The following interview she said she visits for 1 week for each trip – once or twice per year.
- **Pg 88** – Mrs. Kim said that she does not review the general ledger of the bakery. However, the examining agent found emails from Charlie Son and Michael Khim to Mrs. Kim where she is requesting emails with trial balances and general ledgers and they are providing Mrs. Kim with that information. During the examining agent's tour of the bakery, Charlie Son said that he send the reports to Mrs. Kim with all transactions.
- **Pg 125** – Mrs. Kim said that Marina Enterprise started to have a business relationship with CBSI in 1999; but during the second interview she said that Marina did not start to operate until the 2001 tax year.

## Interview – July 15, 2015

A second interview was conducted with Mr. Khim on July 15, 2015. Also present at the interview were IRS Counsel Attorney Monica Polo and the examining agent.

The following are statements made by Mr. Khim that are relevant to the FBAR examination (See MOI for complete summary):
- He was contacted by Charlie Son to preparer Mrs. Kim's personal and business tax returns in 2009.
- He was asked by Mrs. Kim's POA, Mr. Taylor, to prepare amended returns for each year under audit.
  - These returns were never filed with the IRS but Mr. Taylor instructed Mr. Khim not to cooperate with that provision of the records and therefore currently the summons is with DOJ to be enforced.
  - The Exhibit F is the letter interfering with the summons to Mr. Khim
- He sent all of the requested records to Mr. Taylor, so he does not know why the IRS did not receive everything he provided to Mr. Taylor.
  - The examining agent did not received records from Mr. Taylor; the examining agent asked Mr. Khim to submit records to her again but it went through Mr. Taylor again and some of the records were not provided.
- He knows that Mrs. Kim is 100% owner and shareholder of Laura's Distribution Company. He has used tax returns filed in Korea to come up with the numbers provided to the IRS and placed on amended returns. The amended returns were not provided to the IRS per instruction of power of attorney.
- He knows that Mrs. Kim is 100% owner and a shareholder of LK Waters. This was also part of the records he received from Mrs. Kim on July 22, 2013.
- He knows that Laura Kim is 100% owner and shareholder of Marina Enterprise.

USA - 004695

- He normally sends out questionnaires; however since he knew that Mrs. Kim lived in Korea, he did not send her a questionnaire but instead he sent it to Charlie Son, her brother in law, who is in charge of Laura's Bakery in Los Angeles.
- He did send returns to Mrs. Kim prior to filing business and personal returns with the IRS.
- He has been preparing tax returns for 25 years and he does not have any other clients with offshore activities.

## Letter from POA, Mr. Taylor, dated September 3, 2015 (Faxed on September 4) Exhibit F.

- Lavar Taylor's office received summons issued to Mr. Khim.
- They are admitting to receiving the records from him as well.
- They are claiming privilege information on the some of the records that were requested.
  - o Note: they have never represented Mr. Khim.
- They requested extension of time to comply with the summons that was not issued to them and to some that they do not represent. They stated that the information was not received yet – which contradicts the statement above where they stated that they had the information.
- Letter also stated that they are working on gathering information according to the IDR dated September 21, 2015
  - o Note: None of the records were ever provided to the examining agent.

## Interview – August 25, 2016

- Interpreter hired by Mrs. Kim /POA said that Mrs. Kim understands English perfectly and wanted to know if she still needs to translate.(pg 6 – 10)
  - o Mrs. Kim said that she came to US in 1968 and lives there till present time
  - o Mrs. Kim has received some of her education in US
  - o Mrs. Kim held various jobs in US such as nursing

- During the interview, Mrs. Kim was answering questions without the interpreter but her attorney interrupted Mrs. Kim's answers and had the interpreter translate before Mrs. Kim gave the response (pg 5).

- During the interview, Mrs. Kim was asked whether she has received wages from LK Waters, Marina Enterprise and Laura's Distributions. She said that she did not/never received any salary (pg 20) from Laura's distributions. However, the financial statement and Korean tax return for Laura's distributions showed that Mrs. Kim did receive salary from this company.
- Mrs. Kim stated that Laura's Distributions has been inactive since it opened (pg 20). However the financial statements show different story. It shows gross receipts and salary paid.

USA - 004696

- **Accounts**: During the beginning of the interview, Mrs. Kim said that she does not remember how many accounts there are in each company; but then she said that she thinks there is one account. She also stated that she has rolling accounts when one would close and the other one would open. The closed account would zero out and funds transfer to other new account. This would happen within 6 months to a year period. When asked about the accounts having the balances for several years and not zeroed out, Mrs. Kim could not answer that question. The following are statements Mrs. Kim made:
  - o **Pg 28** – Mrs. Kim said that she is the only one with access to the accounts but her employees do all the work. When she was asked in detail, she said that they (employees) only do accounting for these accounts.
  - o **Pg 38** – Mrs. Kim said that she has two accounts for LK Waters and opened the first account in 2011 and not closed currently. The second account is also currently opened. Her FBAR returns for the current years do not reflect any of these accounts. Mrs. Kim also mentioned that the second account has no money in it. According to bank statements provided taxpayer has three accounts for LK Waters (Exhibit M) and each account has balances.
  - o **Pg 44** – Mrs. Kim said that she picked main account to be reported on FBAR return but she does not remember how she decided which one is main account.
  - o **Pg 49** – Mrs. Kim said that she calls her employees and asks about specific accounts and they would provide it. In previous pages of the interview she said that employees just give the balance of main accounts to her for FBAR preparation and she does not know which ones are main (pg 44).
  - o **Pg 50** – Mrs. Kim said that she does not know if the employees at her company have access to her personal bank accounts; however on prior pages of the interview she said that her employees give her balance information for the preparation of FBAR returns.
  - o **Pg 51 – 53** – Mrs. Kim said that she has revolving accounts that would last for 3 to 6 months in addition to 4 to 5 accounts that she has admitted to having. These accounts would be open and then closed in 3 to 6 months and another one would be opened with the same money. The funds would be transferred to another account while the old account closed; therefore the balance in old account would be zero.
  - o **Pg 54** – when Laura Kim called her company for the accounts, she said that she requested current accounts balances before she completed her FBAR returns.

- **Pg 31** – Mrs. Kim said that the salary was determined according to the instructions provided by CPA. She also said that she has changed CPAs five times and she does not remember which one told her/gave her instructions for the salary. Her statements and explanations were unclear regarding the system that advised her on what salary to take, but then she could not say what that system was or how it worked.

USA - 004697

- **Pg 34** – Mrs. Kim said that she has started to receive salary for the first time from Marina Enterprise in 2000; however when she filed Form 5471 she said that this company first started in 2010.  Then she amended the answer to 2001 after the examining agent asked a follow-up/clarifying question.

- **Pg 35** – When Mrs. Kim was asked questions about LK Waters Company, she said that this company was fraudulent and she was forbidden from operating it. It was supposed to be a bottling company. According to the form 5471 filed in US this company has been operating since 2011, has gross receipts and reports salary that was paid to Mrs. Kim.

- **Pg 41** – Mrs. Kim has verified her signature and her handwritten notes on the FBAR returns filed.

- **Pg 61-62** – Mrs. Kim said that she has never received copy of the income tax return from Mr. Khim.  During Mr. Khim's interview, Mr. Khim presented copies of the emails that he had sent to Mrs. Kim where she approved filling of the returns and agreed to the numbers.

- **Pg 71** – Mrs. Kim said that she has never asked any additional tax questions from Mr. Khim.  She would call her brother-in-law because he is friends with Mr. Khim.  According to the interview with Mr. Khim, he was in touch with Mrs. Kim's brother-in-law but he did send her tax return over the email and he did communicate with her sometimes.

- **Pg 104** – Mrs. Kim said that she has a return for each FBAR she has filed. IDR was issued previously for these records and Mrs. Kim did not provide anything.

- **Pg 108** – Mrs. Kim said that return is completely correct filed in Korea for 2009 to 2014

- **Pg 111** – Mrs. Kim said that she did not have any dividends that she has received; however her Korean tax returns show differently.

**Laura Kim education:**
- Nursing
- PhD in engineering

**Income per Korean Tax Returns Not Reflected on U.S. Tax Returns (Exhibit H):**

| Year | Amount |
|------|--------|
| 2010 | $934,042.06 |
| 2011 | $248,020.84 |
| 2012 | $458,891.22 |

Page 9

USA - 004698

**Month-End Aggregate Foreign Account Balances**

|       | 2009 | 2010 | 2011 | 2012 |
|-------|------|------|------|------|
| Jan | $ 8,285,335.38 | $ 8,652,373.53 | $ 11,795,015.19 | $ 5,613,428.65 |
| Feb | 8,413,124.31 | 8,474,190.07 | 11,627,074.27 | 6,372,926.25 |
| Mar | 9,830,406.26 | 11,342,803.13 | 12,223,226.80 | 6,357,925.96 |
| Apr | 10,506,000.88 | 11,069,454.79 | 11,849,554.71 | 5,845,925.96 |
| May | 10,235,728.78 | 11,362,510.92 | 10,742,607.39 | 5,910,046.53 |
| Jun | 11,129,977.99 | 10,944,849.29 | 9,071,753.49 | 5,556,492.31 |
| Jul | 11,469,906.66 | 11,377,492.09 | 7,861,433.61 | 5,773,953.51 |
| Aug | 11,276,039.13 | 11,512,578.96 | 7,592,808.57 | 5,903,245.81 |
| Sep | 10,907,261.86 | 11,899,190.11 | 7,387,580.86 | 5,686,138.94 |
| Oct | 10,995,231.95 | **12,730,930.90** | 7,123,534.52 | 5,363,816.09 |
| Nov | 11,039,451.27 | 12,013,522.54 | 7,107,659.92 | 5,602,548.43 |
| Dec | 10,648,496.38 | 11,825,994.76 | 6,286,295.54 | 1,494,562.23 |

**Note**:   The highest aggregate balance based on month-end balances was $12,730,930.90. This figure likely does not include double-counting.

**Foreign Bank Records**

Mrs. Kim provided the following on August 15, 2013:

- Personal returns filed in Korean from 2009 to 2012
- Standard Chartered Bank statements personal accounts
- Laura's Distribution company statements from 01/01/2011 to 01/01/2012
- LK Water statements from 01/01/2011 to 12/26/2012
- Marina Enterprise statements from 01/01/2009 to 01/01/2012
- Bank statements for the personal accounts at Woori Bank:

| Account # | Period |
|-----------|--------|
| 5711 | 10/13/2009 – 10/13/2010 |
| 4317 | 04/08/2008 – 04/08/2010 |
| 6658 | 01/01/2009 – 12/31/2010 |
| 6817 | 01/01/2009 – 12/31/2010 |
| 6005 | 01/01/2009 – 12/31/2010 |
| 2308 | 01/01/2009 – 12/31/2010 |
| 0365 | 01/01/2009 – 12/31/2010 |
| 0368 | 01/01/2009 – 12/31/2010 |
| 0361 | 01/01/2009 – 12/31/2010 |
| 5806 | 01/01/2009 – 12/31/2010 |

USA - 004699

| Account # | Period |
|---|---|
| 5053 | 01/01/2009 – 12/31/2010 |
| 5711 | 01/01/2009 – 12/31/2010 |
| 4186 | 01/01/2009 – 12/31/2010 |
| 9166 | 01/01/2009 – 12/31/2010 |
| 0405 | 01/01/2009 – 12/31/2010 |
| 0362 | 01/01/2009 – 12/31/2010 |
| 3441 | 01/01/2009 – 12/31/2010 |
| 1478 | 01/01/2010 – 12/31/2010 |
| 2567 | 01/01/2010 – 12/31/2010 |
| 4765 | 01/01/2010 – 12/31/2010 |
| 2274 | 01/01/2010 – 12/31/2010 |
| 4207 | 01/01/2010 – 12/31/2010 |
| 2748 | 01/01/2010 – 12/31/2010 |
| 2323 | 01/01/2010 – 12/31/2011 |
| 7795 | 01/01/2010 – 12/31/2010 |
| 4317 | 01/01/2010 – 12/31/2010 |
| 9368 | 01/01/2010 – 12/31/2012 |
| 6397 | 01/01/2010 – 12/31/2011 |
| 1017 | 01/01/2010 – 12/31/2010 |
| 3626 | 01/01/2009 – 12/31/2010 |
| 7808 | 01/01/2010 – 12/31/2012 |
| 3020 | 01/01/2011 – 12/31/2012 |
| 4813 | 01/01/2011 – 12/31/2012 |
| 0758 | 01/01/2011 – 12/31/2012 |
| 5806 | 01/01/2011 – 12/31/2011 |
| 4681 | 01/01/2011 – 12/31/2012 |
| 9534 | 01/01/2011 – 12/31/2012 |
| 5711 | 01/01/2011 – 12/31/2011 |
| 8740 | 01/01/2011 – 12/31/2011 |
| 1926 | 01/01/2011 – 12/31/2011 |
| 3570 | 01/01/2011 – 12/31/2011 |
| 9166 | 01/01/2011 – 12/31/2011 |
| 0405 | 01/01/2011 – 12/31/2012 |
| 0362 | 01/01/2011 – 12/31/2012 |
| 3441 | 01/01/2011 – 12/31/2012 |
| 8765 | 01/01/2012 – 12/31/2012 |
| 9546 | 01/01/2012 – 12/31/2012 |
| 6258 | 01/01/2012 – 12/31/2012 |

USA - 004700

In complying with the summons, Mr. Khim provided the following records:
- Personal foreign tax returns filed by Laura Kim in Korea
- Corporate returns filed by Marina Enterprise, LK Waters and Laura's distributions.
- Financial statements that was received by him from Korea for the 3 corporations.
- All the documents received were in Korean language and submitted for translation to English.

## Summary of Foreign Financial Accounts
- The accounts listed on the spreadsheet are sourced from FBARs filed
- Each of these accounts has been traced/reconciled to the statements provided on FBAR tax returns.
- In the beginning of the audit, Mrs. Kim provided some bank statements for Woori Account in Korea and Standard Chartered Bank in Korea as well as tax returns filed in Korea from 2009 to 2012
- Examining agent has issued a summons to Mr. Khim and received more information from him. Information received: financial statements, Korean tax returns for the corporations and personal returns.

The rest of the records that were not provided are now the subject of summons enforcement.
- Examining agent received records from EOI request submitted to Korea. Received 475 pages and submitted that for translation.
- Examining agent has the following information for Marina Enterprise, LK Waters and Laura's Distribution Company:
  - Account statements
  - Financial statements for each of the companies
  - Tax returns filed
  - Rental properties information
  - More records will be known once EOI-requested documents received are translated.

## FBAR Filing History and Analysis
Mrs. Kim filed FBARs for the years 2008 through 2013. No record of FBARs filed for earlier years.

When filing the 2009 FBAR, she amended her original submission and included the following comment:
> I'm resubmitting forms due to an error found after mailed. Corrected where highlighted in yellow. Please discard originals were sent after dated Oct 14 – 09. Sorry for inconvenience caused you. Sincerely, Hija Kim"

Based on foreign bank records received, the actual number of accounts owned by Mrs. Kim were analyzed and compared to the FBARs filed by Mrs. Kim…

Page 12

USA - 004701

| Year | Filing Date | Per FBARs | | Actual | |
| | | # of Accts | Aggregate Balances | Pers. Accts | Aggregate Balances |
|---|---|---|---|---|---|
| * | None | | | | Not provided |
| 1999 | None | | | | Not provided |
| 2000 | None | | | | Not provided |
| 2001 | None | | | | Not provided |
| 2002 | None | | | | Not provided |
| 2003 | None | | | | Not provided |
| 2004 | None | | | | Not provided |
| 2005 | None | | | | Not provided |
| 2006 | None | | | | Not provided |
| 2007 | None | | | | Not provided |
| 2008 | 06/20/09 | 5 | $928,420.00 | | Not provided |
| 2009 | 06/28/10 | 4 | 492,721.00 | 14 | $11,469,906.66 |
| 2010 | 07/08/11 | 3 | 607,773.00 | 20 | 12,730,930.90 |
| 2011 | 07/07/12 | 2 | 263,811.00 | 18 | 12,223,226.80 |
| 2012 | 07/12/13 | 2 | 495,016.00 | 14 | 6,372,926.25 |
| 2013 | 06/26/14 | 12 | 5,370,470.00 | | |

* No record of any FBAR Filings prior to 1999.

## Background regarding Mrs. Kim's foreign corporations

Laura Kim is 100% owner of:
  a.  Marina Enterprise
  b.  LK Waters

Each of these corporations is located in Korea. Marina Enterprise has been in business the longest. They had relationship with CBSI back in 1995; other corporations are more recent from 2010 to present. Each of these corporations are multi-million dollar companies. Marina Enterprise is a wholesaler for shoes and CBSI is a major client. The attached financial statements show gross receipts for each of these corporations. Marina Enterprise and LK Waters is 100% owned by Laura Kim. Laura's Distributions is owned 50% by Mrs. Kim and the rest by her sister. According to the second interview, this company was never operated; however according to the tax returns it was operating and Mrs. Kim received salary from it. Also according to the Korean tax returns, this company is 100% owned by Mrs. Kim; her sister is not mentioned for this company. According to the second interview, Marina Enterprise has been operated since 2001 and LK Waters since 2011 as well as Laura's Distributions.

USA - 004702

According to the Korean tax returns received from CPA and Mrs. Kim, she has received salary for each year from each company.

Financial statements also were received that show operations for each of these companies. According to the second interview, there were only two bank accounts for Marina and one account for each other company; however the statements show different story. Mrs. Kim said that some of these accounts are flowing accounts, meaning the funds would accumulate and then zero out after 3 to 6 months and transfer to different account; however the statements show different story. They statements show that there were no flowing accounts and that Mrs. Kim has a large number for personal and business accounts. See attached for details.

**Income Tax Reporting History and Analysis**
According to IRS records, the following is a summary of income and taxes reported compared to actual/corrected income:

| Year | Wages | Interest Income | Total Pos. Inc. | AGI | Taxable Income | Total Tax | Actual Income |
|------|-------|-----------------|-----------------|-----|----------------|-----------|---------------|
| 1989 | $ 0 | $ 300 | $ 300 | $ (1,001,109) | $ 0 | $ 0 | Not provided |
| 1990 | 0 | 100 | 868,006 | (1,237,839) | 0 | 0 | Not provided |
| 1991 | 0 | 100 | 3,100 | (1,314,454) | 0 | 0 | Not provided |
| 1992 | 0 | 0 | 0 | (1,329,196) | 0 | 0 | Not provided |
| 1993 | 0 | 23 | 10,218 | (1,319,698) | 0 | 1,440 | Not provided |
| 1994 | 0 | 0 | 27,868 | (1,293,822) | 0 | 3,937 | Not provided |
| 1995 | No Rtn | | | | | | Not provided |
| 1996 | 0 | 0 | 124,877 | (1,057,077) | 0 | 11,119 | Not provided |
| 1997 | 0 | 0 | 160,192 | (901,941) | 0 | 10,112 | Not provided |
| 1998 | 0 | 0 | 21,215 | (925,950) | 0 | 0 | Not provided |
| 1999 | 0 | 0 | 46,732 | (896,448) | 0 | 0 | Not provided |
| 2000 | 0 | 320 | 92,984 | (812,487) | 0 | 0 | Not provided |
| 2001 | 0 | 1,227 | 45,728 | (810,279) | 8,878 | 0 | Not provided |
| 2002 | 0 | 7,567 | 77,142 | (792,395) | 0 | 0 | Not provided |
| 2003 | 0 | 18 | 27,823 | (836,386) | 0 | 0 | Not provided |
| 2004 | 17,942 | 2 | 24,663 | (811,741) | 0 | 0 | Not provided |
| 2005 | 39,313 | 1,595 | 93,480 | (725,183) | 0 | 0 | Not provided |
| 2006 | 70,000 | 0 | 118,000 | (613,322) | 0 | 0 | Not provided |
| 2007 | 70,000 | 0 | 166,000 | (565,699) | 0 | 0 | Not provided |
| 2008 | 75,871 | 0 | 222,884 | (499,140) | 0 | 0 | Not provided |
| 2009 | 70,767 | 1 | 74,991 | (542,495) | 0 | 0 | Not provided |
| 2010 | 55,000 | 32 | 55,032 | (582,603) | 0 | 0 | 1,207,953.00 |
| 2011 | 55,000 | 5 | 65,992 | (516,643) | 0 | 3,729 | 303,020.84 |
| 2012 | 290,158 | 22,432 | 363,044 | 322,485 | 311,285 | 17,726 | 513,891.22 |

USA - 004703

**Other Items**
Income tax audits are open from 2010 through 2012 years.  Fraud-related penalties are
being proposed regarding both foreign and domestic issues as follows:
   a. Unreported income from worldwide sources such as Korean Corporations and 4
      rental properties and offshore bank account interest.
   b. Unreported income from rental expense from bakery owned in Los Angeles.
   c. Disallowance of NOL from bakery (issue already conceded by POA - no attempt
      made by Mrs. Kim to provide any substantiation).

Related statute memorandums were properly secured for the years at issue.

The FBAR statute for the 2009 year has been extended to June 30, 2017 – which is the
earliest statute date.  The remaining FBAR years at issue have their normal six-year
statutes, which are either the same as the 2009 year or later dates.

RSM was approved 2009, 2010, 2011 and 2012 tax years.

## LAW

**31 USC § 5314** – Records and reports on foreign financial agency transactions
**31 USC § 5321** – Civil Penalties

**31 CFR 1010.350** – Reports of foreign financial accounts.
**31 CFR 1010.420** – Records to be made and retained by persons having financial
                      interests in foreign financial accounts

## ANALYSIS

Based on a review and analysis of the available evidence secured during the course of
this examination, FBAR filing requirements and FBAR penalties will be addressed.

**Filing Requirement**
For each of the years at issue, Mrs. Kim had an FBAR filing requirement based on the
following facts:
   - Mrs. Kim is a U.S. person.
   - Mrs. Kim had financial accounts in a foreign country that were personal and
     Korean corporations' accounts
   - Mrs. Kim had a financial interest in the account or signature or other authority
     over the foreign financial account; and
   - The aggregate amount in the foreign financial accounts exceeded $10,000 in
     U.S. currency at any time during the year.

Since Mrs. Kim does not have reasonable cause (as discussed later in this Memo),
FBAR penalty types and amounts will be considered.

USA - 004704

**Analysis of Actions, Conduct, Facts and Circumstances**
In reviewing and analyzing the evidence in this case, the following factors were
considered in evaluating the type and extent of FBAR penalties that are appropriate.


Knowledge of Foreign Accounts
Mrs. Kim opened these foreign accounts, which were held in her name or in the name of
businesses with which she had 100 percent ownership.  She interacted with these
accounts directly or indirectly by making deposits, withdrawals and other investment
decisions.  She also frequently opened and closed accounts.  Mrs. Kim was fully and
completely aware of the existence of her foreign accounts and their account balances
and values from the time she opened the accounts.  At least 43 foreign accounts were
opened at different times from 2009 through 2012.


Foreign Accounts and Foreign Income Concealed from U.S. Return Preparer
Mrs. Kim has gone to the same U.S. income tax preparer since at least 2009.  During
each of those years, Mrs. Kim failed to initiate any discussion with her return preparer,
Mr. Khim, regarding the existence of her foreign accounts.  Mrs. Kim had opportunities
to disclose her foreign accounts, foreign businesses and foreign income through Mr.
Khim's annual tax preparation questionnaires, which included questions about foreign
accounts and foreign income.  Mr. Khim also asked Mrs. Kim every year whether she
had foreign bank accounts.  Mrs. Kim never completed the questionnaires and always
replied "No" when asked whether she had foreign accounts or foreign income.

Mrs. Kim not only failed to disclose the existence of her foreign account, she also made
false and/or misleading statements when directly asked about foreign accounts, foreign
businesses and foreign income by Mr. Khim.

Foreign Accounts, Foreign Businesses and Foreign Income Concealed from Internal
Revenue Service
Mrs. Kim's failure to make full disclosure of relevant facts to her return preparer as well
as her false and/or misleading statements regarding the existence of her foreign
accounts, foreign businesses and foreign income directly resulted in causing her U.S.
return preparer to both falsely prepare her tax returns and falsely believe that she (Mrs.
Kim) did not have an FBAR filing requirement.
  - In preparing Part III of Form 1040 Schedule B for the years at issue, Mr. Khim
    falsely checked the box "No" – indicating that Mrs. Kim did not have an interest in
    or signature or other authority over a foreign financial account.
  - Mr. Khim falsely excluded income of approximately $1,624,706 during the period
    2010 through 2012.  Mrs. Kim should have reported $2,024,864 in income but
    only reported $400,158.  The full extent of unreported foreign income covering
    prior years is now known.  What is known is that Mrs. Kim **never** reported her
    foreign wages and **never** reported her foreign portfolio income.
  - Mr. Khim falsely excluded Forms 5471 for all three of Mrs. Kim's foreign
    businesses – not only for the years at issue but for all prior years during which

Page 16

USA - 004705

Mrs. Kim's entities have been operating in Korea as far back as the year 2000, if not earlier.

- No FBARs were filed prior to 2008. Incomplete FBARs were filed for the years 2008 through 2012. As many as 17 foreign accounts were excluded from filed FBARs, thereby concealing aggregate foreign bank account balances that exceeded $12 million (based on month-end balances from 2009 through 2012).
- Mr. Khim sent Mrs. Kim the tax returns prior to filing them. Mrs. Kim signed each of the tax returns under penalty of perjury. This was done for each return from 2009 to 2013.

## Repeated Delays during the Examination

The examining agent had to wait over a year to interview Mrs. Kim. The follow-up interview was equally difficult to schedule. Mrs. Kim has claimed the delays were due to the fact that she lives in Korea. However, while the examining agent was waiting, Mrs. Kim would visit the United States on multiple occasions without contacting the examining agent.

## False and/or Misleading Statements during the FBAR Examination

- During her interview on June 23, 2014, Mrs. Kim identified just two foreign bank accounts.
- During that same interview, Mrs. Kim also stated that no money goes into her foreign account from other sources or countries.

## Continued Non-Compliance

As of the date of this memo, Mrs. Kim still has not filed delinquent Forms 5471 for her foreign entities until the audit. Her 2012 return was filled in 2015 and it included 5471 with wrong dates and wrong information according to financial statements.

## Additional Efforts to Conceal Relevant Information during Examination

When asked if there were other sources of funds that she did not declare on her personal return, Mrs. Kim claimed privilege (Page 20 of interview).

POA limited Mrs. Kim's answers to years under audit purposefully – not allowing her to answer questions about years that included additional income and additional assets such as 2009 (Page 21 of interview).

- The relevance of this information is significant because it is helpful in determining the extent of non-compliance and whether or not it was truly egregious.
- The fact that Mrs. Kim was not willing to disclose those relevant facts forces the examining agent to rely on speculation and circumstantial evidence. For example, (a) what was the actual amount of non-compliance and (b) why does the person choose to conceal those facts.

For the 23 year period from 1989 through 2011:

- Mrs. Kim paid zero income taxes.

Page 17

USA - 004706

- Mrs. Kim paid zero total taxes in 18 years and a cumulative total of $30,337 in self-employment taxes for the other 5 years. The NOL that had been offsetting her taxable income was disallowed and the issue was conceded by Mrs. Kim.
- During the same period, Mrs. Kim was accumulating significant wealth in Korea. The exact amount is not known, but the fact that she was not willing to disclose it is an indication that it was material and significant.

Knowledge of FBAR Filing Requirements

Mrs. Kim had first-hand knowledge of the FBAR filing requirements by the mere fact that she personally filed FBARs for the years 2008 through 2012.

**Reasonable Cause**

If the failure to timely file FBARs was not willful and was due to reasonable cause, then no penalty will be asserted.

Reasonable cause relief is generally granted when a person exercises ordinary business care and prudence. Other considerations include whether the person acted in good faith as well as the person's experience, knowledge, and education. Good faith means no deception, and good faith reliance upon the advice of a tax professional means the following must have occurred:

- The tax professional was a qualified professional.
- The existence of the foreign account was fully disclosed.
- All relevant facts regarding the foreign account were fully disclosed.

In this case, Mrs. Kim has not provided any explanation for failing to timely file complete and accurate FBARs. She did not seek the advice of a qualified tax professional. On the contrary, she failed to make any disclosure of as many as 43 foreign financial accounts, 3 foreign businesses, over $1.6 million in unreported income from 2009 through 2012 and additional unreported income in prior years that resulted in foreign account balances exceeding $12 million.

As a result of her failure to disclose all relevant facts, Mrs. Kim does not have a good-faith reliance defense. Therefore, Mrs. Kim does not have reasonable cause for failing to timely file FBARs for the years at issue.

## CONCLUSION

Since Mrs. Kim does not qualify for full penalty relief based on reasonable cause, FBAR penalties are recommended.

The following factors were considered when evaluating the appropriate FBAR penalty amount.

USA - 004707

## Mitigation Guidelines

Mrs. Kim does not qualify for the mitigation guidelines for the following reasons:

- She did not cooperate during the entire course of the examination. A summons had to be issued for records and testimony. Mrs. Kim did not consent to the follow-up interview and she did not cooperate with multiple requests for specific offshore records. A summons was not able to be issued because of the Place of Abode argument in the original summons.
- The fraud penalty is also being considered for the income tax case.
- The balances in her unreported foreign bank accounts exceeded $1 million. The mitigation guidelines only provide relief when the aggregate balance of all unreported accounts is less than $1 million.

## Maximum FBAR Penalty per Violation

After considering mitigation guidelines and penalty ceilings per the IRM, FBAR penalties per violation cannot exceed these amounts:

| Willful | Greater of: <br> • $100,000 – or <br> • 50 percent of the balance in the account at the time of the violation. | 31 USC §5321(a)(5)(C) <br> 31 USC §5321(a)(5)(D)(ii) |
|---------|---------------------------------------------------------------------------------------------------------------|-------------------------------------------------------|

## Computation of FBAR Penalty - Summary: attached

In an effort to be conservative and safe regarding statute, the examining agent is assessing $4,056,439.39 per the attached penalty calculation for the total FBAR penalty for the years 2009 through 2012.

In accordance with Internal Revenue Manual 4.26.17.4.3, this FBAR penalty has been reviewed and approved by the SB/SE Counsel Area FBAR Coordinator.

USA - 004708

# Information on Making FBAR Penalty Payment by Check

### Required Disclosure to be Provided with Invoice or Remittance Instructions
### Accounts Receivable Check Conversion

**Authorization to convert your check:** If you send us a check to make your payment, your check will be converted into an electronic fund transfer. "Electronic fund transfer" is the term used to refer to the process in which we electronically instruct your financial institution to transfer funds from your account to our account, rather than processing your check. By sending your completed, signed check to us, you authorize us to copy your check and to use the account information from your check to make an electronic fund transfer from your account for the same amount as the check. If the electronic fund transfer cannot be processed for technical reasons, you authorize us to process the copy of your check.

**Insufficient funds:** The electronic fund transfer from your account will usually occur within 24 hours, which is faster than a check is normally processed. Therefore, make sure there are sufficient funds available in your checking account when you send us your check. If the electronic fund transfer cannot be completed because of insufficient funds, we may try to make the transfer up to two times [and we will charge you a one-time fee of $20.00 which we will also collect by electronic fund transfer].

**Transaction information:** The electronic fund transfer from your account will be on the account statement you receive from your financial institution. However, the transfer may be in a different place on your statement than the place where your checks normally appear. For example, it may appear under "other withdrawals" or "other transactions." You will not receive your original check back from your financial institution. For security reasons, we will destroy your original check, but we will keep a copy of the check for recordkeeping purposes.

**Your rights:** You should contact your financial institution immediately if you believe that the electronic fund transfer reported on your account statement was not properly authorized or is otherwise incorrect. Consumers have protections under a Federal law called the Electronic Fund Transfer Act for an unauthorized or incorrect electronic fund transfer.



IRS

Department of the Treasury
Internal Revenue Service

www.irs.gov

Notice 1330 (4-2004)
Catalog Number 38436W

USA - 004709

# Exhibit 185



A. LAVAR TAYLOR*
LISA O. NELSON
JONATHAN T. AMITRANO
ROBERT DEL JUNCO, JR.
CHARLES F. ROSEN
LYNDA B. TAYLOR**

JAMES M. KAMMAN
OF COUNSEL

ALSO ADMITTED:
*DISTRICT OF COLUMBIA
**NEW YORK AND MASSACHUSETTS

LAW OFFICES OF
**A. LAVAR TAYLOR** LLP
A TAX CONTROVERSY LAW FIRM

3 Hutton Centre Drive
Suite 500
Santa Ana, CA 92707

TELEPHONE: 714 546 0445
FACSIMILE: 714 546-2604

JOYCE E. CHENG, E.A./C.P.
ENROLLED AGENT/CERTIFIED PARALEGAL

MAGGIE ALLEN-REIMERS, AACP
LEGAL ASSISTANT/CERTIFIED PARALEGAL

FIRM WEBSITE: WWW.TAYLORLAW.COM

September 11, 2017

*Via U.S. Certified Mail*
R.A. Chernyak
Internal Revenue Service
333 Broadway
Mail Stop 4466
San Diego, CA 92101

Re:     Laura Kim
        FBAR Assessment Statute Extension

Dear R.A. Cherynak,

        Thank you for taking the time last week to discuss Ms. Kim's pending FBAR audit.  As we discussed, our office received three Forms requesting that Ms. Kim extend the time to assess civil penalties for FBAR violations.  The Forms we received cover tax years 2009, 2010, and 2011.  When we spoke last week I explained to you that the cover letter which accompanied these Forms, a letter which is dated August 28, 2017, indicates that the FBAR statute was set to expire on June 30, 2017, a date which predates the extension request.  During our conversation last week you indicated that this was a misprint and that the 2009 and 2010 FBAR assessment statute had previously been extended and as such the 2009 and 2010 FBAR assessment deadline was set to expire on June 30, 2018, not June 30, 2017.  You further explained that you were requesting that Ms. Kim agree to extend the FBAR assessment statute through June 30, 2019, for tax years 2009, 2010, and 2011,

        Enclosed with this letter please find the execut~~ed~~ tax years 2009, 2010, and 2011.  Please note that if the statute has already expired, Ms. Kim does not agree to year(s) which the assessment statute of limitations has representations that the assessment statute for tax years 2018, we are agreeing to extend the statute for 2009 an~~d 2010 through~~ June 30, 2019.

{00081486.DOCX}



A. LAVAR TAYLOR*
LISA O. NELSON
JONATHAN T. AMITRANO
ROBERT DEL JUNCO. JR.
CHARLES F. ROSEN
LYNDA B. TAYLOR**

JAMES M. KAMMAN
OF COUNSEL

ALSO ADMITTED:
*DISTRICT OF COLUMBIA
**NEW YORK AND MASSACHUSETTS

LAW OFFICES OF
**A. LAVAR TAYLOR** LLP
A TAX CONTROVERSY LAW FIRM

3 Hutton Centre Drive
Suite 500
Santa Ana, CA 92707

TELEPHONE: 714 546 0445
FACSIMILE: 71 4546 2604

JOYCE E. CHENG, E.A./C.P.
ENROLLED AGENT/CERTIFIED PARALEGAL

MAGGIE ALLEN REIMERS. AACP
LEGAL ASSISTANT/CERTIFIED PARALEGAL

FIRM WEBSITE: WWW.TAYLORLAW.COM

September 11, 2017

*Via U.S. Certified Mail*
R.A. Chernyak
Internal Revenue Service
333 Broadway
Mail Stop 4466
San Diego, CA 92101

Re:     Laura Kim
        FBAR Assessment Statute Extension

Dear R.A. Cherynak,

Thank you for taking the time last week to discuss Ms. Kim's pending FBAR audit.  As we discussed, our office received three Forms requesting that Ms. Kim extend the time to assess civil penalties for FBAR violations.  The Forms we received cover tax years 2009, 2010, and 2011.  When we spoke last week I explained to you that the cover letter which accompanied these Forms, a letter which is dated August 28, 2017, indicates that the FBAR statute was set to expire on June 30, 2017, a date which predates the extension request.  During our conversation last week you indicated that this was a misprint and that the 2009 and 2010 FBAR assessment statute had previously been extended and as such the 2009 and 2010 FBAR assessment deadline was set to expire on June 30, 2018, not June 30, 2017.  You further explained that you were requesting that Ms. Kim agree to extend the FBAR assessment statute through June 30, 2019, for tax years 2009, 2010, and 2011,

Enclosed with this letter please find the executed FBAR assessment extension Forms for tax years 2009, 2010, and 2011.  Please note that if the 2009 and/or 2010 FBAR assessment statute has already expired, Ms. Kim does not agree to extend the assessment statute for the year(s) which the assessment statute of limitations has already passed.  Based on your representations that the assessment statute for tax years 2009 and 2010 are open until June 30, 2018, we are agreeing to extend the statute for 2009 and 2010, along with tax year 2011, through June 30, 2019.

{00081486.DOCX}

USA - 003546

Monday, September 11, 2017
2 | P a g e

     Please let me know if you have any questions or concerns regarding this letter. Thank
you.

                      Sincerely,

                      Law Offices of A. Lavar Taylor, LLP

                      Jonathan T. Amitrano
                      Attorney

{00081486.DOCX}

# CONSENT TO EXTEND THE TIME TO ASSESS CIVIL PENALTIES PROVIDED BY 31 U.S.C. § 5321 FOR FBAR VIOLATIONS

**WHEREAS,** the parties to this agreement desire to extend the time during which the penalties provided by 31 U.S.C. 5321 may be assessed and collected,

**WHEREAS,** the parties to this agreement are aware that they have the right to refuse to sign this consent,

Laura Kim SSN ███ -8 ▓ 6
(name and taxpayer identification number)

United States person, of _____████_____, Los Angeles, CA ████
(address)

and the Commissioner of the Internal Revenue Service, hereby agree and consent to the following:

(1) For violations with respect to the requirement, established under 31 U.S.C. 5314, for a United States person to report having a financial interest in or signature authority, or other authority, over a financial account during the calendar years _____2009_____ that was maintained with a financial institution located in a foreign country, the amount of any penalty provided by 31 U.S.C. 5321 may be assessed at any time on or before ___06/30/2019___.

(2) This consent does not reduce, waive, or extend any period of limitation under 26 U.S.C. 6501 for assessing or collecting tax. This consent also does not supersede or amend any other agreement between the United States person and the Internal Revenue Service.

<u>Date</u>                                    Signature of the United States Person
_____          _____

<u>Date</u>                                    Signature of Authorized Representative
9/11/17                                  _____

<u>Date</u>                                    Signature of the Commissioner's Delegate
_____          _____

                                          _____
                                          Title

USA - 003548

# CONSENT TO EXTEND THE TIME TO ASSESS CIVIL PENALTIES PROVIDED BY 31 U.S.C. § 5321 FOR FBAR VIOLATIONS

**WHEREAS,** the parties to this agreement desire to extend the time during which the penalties provided by 31 U.S.C. 5321 may be assessed and collected,

**WHEREAS,** the parties to this agreement are aware that they have the right to refuse to sign this consent,

Laura Kim SSN # ███ -8486
(name and taxpayer identification number)

United States person, of ___███___ ███████████ , Los Angeles, CA ████████
(address)

and the Commissioner of the Internal Revenue Service, hereby agree and consent to the following:

(1) For violations with respect to the requirement, established under 31 U.S.C. 5314, for a United States person to report having a financial interest in or signature authority, or other authority, over a financial account during the calendar years _____ 2010 _____ that was maintained with a financial institution located in a foreign country, the amount of any penalty provided by 31 U.S.C. 5321 may be assessed at any time on or before ___06/30/2019___.

(2) This consent does not reduce, waive, or extend any period of limitation under 26 U.S.C. 6501 for assessing or collecting tax. This consent also does not supersede or amend any other agreement between the United States person and the Internal Revenue Service.

Date _____

Signature of the United States Person _____

Date 9/11/17

Signature of Authorized Representative _____

Date _____

Signature of the Commissioner's Delegate _____

Title _____

USA - 003549

# CONSENT TO EXTEND THE TIME TO ASSESS CIVIL PENALTIES PROVIDED BY 31 U.S.C. § 5321 FOR FBAR VIOLATIONS

**WHEREAS,** the parties to this agreement desire to extend the time during which the penalties provided by 31 U.S.C. 5321 may be assessed and collected,

**WHEREAS,** the parties to this agreement are aware that they have the right to refuse to sign this consent,

Laura Kim S S N # ▓▓▓486
(name and taxpayer identification number)

United States person, of ▓▓▓▓▓▓▓▓ Los Angeles, CA ▓▓▓▓▓
(address)

and the Commissioner of the Internal Revenue Service, hereby agree and consent to the following:

(1) For violations with respect to the requirement, established under 31 U.S.C. 5314, for a United States person to report having a financial interest in or signature authority, or other authority, over a financial account during the calendar years _____ 2011 _____ that was maintained with a financial institution located in a foreign country, the amount of any penalty provided by 31 U.S.C. 5321 may be assessed at any time on or before __06/30/2019__.

(2) This consent does not reduce, waive, or extend any period of limitation under 26 U.S.C. 6501 for assessing or collecting tax. This consent also does not supersede or amend any other agreement between the United States person and the Internal Revenue Service.

Date _____

Signature of the United States Person _____

Date
9/11/17

Signature of Authorized Representative _____

Date _____

Signature of the Commissioner's Delegate _____

Title _____

USA - 003550

# Exhibit 186

## <u>Declaration of Gavin Greene</u>

I, Gavin Greene, declare as follows:

1.      I am an Assistant United States Attorney for the Central District of California. I am the attorney responsible for representing the government in the case of *United States v. Laura Kim*, case number 2:21-cv-06746-FMO-KS. I make this declaration based on personal knowledge, where indicated specifically, and the files and records of this case. I could and would testify to those facts fully and truthfully if called and sworn as a witness.

**A. Discovery Responses**

2.      Attached as Exhibit 179 is a true and correct copy of Defendant Laura Kim's Response to United States' First Request for Admissions.

3.      Attached as Exhibit 180 is a true and correct copy of Defendant Laura Kim's Responses to United States' First Set of Interrogatories.

4.      Attached as Exhibit 181 is a true and correct copy of Defendant Laura Kim's Responses to United States' First Set of Requests for Production of Documents.

**B. Bank Statements**

5.      Attached as Exhibit 1 is a true and correct copy of Defendant's bank statement for the account number ending in 3441 produced by Defendant and Bates numbered LK-15 to 29.

6.      Attached as Exhibit 2 is a true and correct copy of Defendant's bank statement for the account number ending in 6699 produced by Defendant and Bates numbered LK-1 to 3.

7.      Attached as Exhibit 3 is a true and correct copy of Defendant's bank statement for the account number ending in 2033 produced by Defendant and Bates numbered LK-232 to 244.

8.      Attached as Exhibit 4 is a true and correct copy of Defendant's bank statement for the account number ending in 5806 produced by Defendant and Bates numbered LK-229 to 231.

9.      Attached as Exhibit 5 is a true and correct copy of Defendant's bank statement for the account number ending in 6658 produced by Defendant and Bates numbered LK-198 to 199.

10.      Attached as Exhibit 6 is a true and correct copy of Defendant's bank statement for the account number ending in 6817 produced by Defendant and Bates numbered LK-195 to 196.

11.      Attached as Exhibit 7 is a true and correct copy of Defendant's bank statement for the account number ending in 6005 produced by Defendant and Bates numbered LK-207 to 208.

12.      Attached as Exhibit 8 is a true and correct copy of Defendant's bank statement for the account number ending in 0368 produced by Defendant and Bates numbered LK-211 to 212.

13.      Attached as Exhibit 9 is a true and correct copy of Defendant's bank statement for the account number ending in 0361 produced by Defendant and Bates numbered LK-209 to 210.

14.      Attached as Exhibit 10 is a true and correct copy of Defendant's bank statement for the account number ending in 2308 produced by Defendant and Bates numbered LK-205 to 206.

15.      Attached as Exhibit 11 is a true and correct copy of Defendant's bank statement for the account number ending in 4317 produced by Defendant and Bates numbered LK-200 to 201.

16.      Attached as Exhibit 12 is a true and correct copy of Defendant's bank statement for the account number ending in 0365 produced by Defendant and Bates numbered LK-213.

2

17.     Attached as Exhibit 13 is a true and correct copy of Defendant's bank statement for the account number ending in 6411 produced by Defendant and Bates numbered LK-123 to 164.

18.     Attached as Exhibit 14 is a true and correct copy of Defendant's bank statement for the account number ending in 3626 produced by Defendant and Bates numbered LK-173 to 174.

19.     Attached as Exhibit 15 is a true and correct copy of Defendant's bank statement for the account number ending in 5711 produced by Defendant and Bates numbered LK-185 to 187.

20.     Attached as Exhibit 16 is a true and correct copy of Defendant's bank statement for the account number ending in 4186 produced by Defendant and Bates numbered LK-188 to 189.

21.     Attached as Exhibit 17 is a true and correct copy of Defendant's bank statement for the account number ending in 7795 produced by Defendant and Bates numbered LK-197.

22.     Attached as Exhibit 18 is a true and correct copy of Defendant's bank statement for the account number ending in 1478 produced by Defendant and Bates numbered LK-190.

23.     Attached as Exhibit 19 is a true and correct copy of Defendant's bank statement for the account number ending in 2567 produced by Defendant and Bates numbered LK-202.

24.     Attached as Exhibit 20 is a true and correct copy of Defendant's bank statement for the account number ending in 4765 produced by Defendant and Bates numbered LK-191.

25.     Attached as Exhibit 21 is a true and correct copy of Defendant's bank statement for the account number ending in 1017 produced by Defendant and Bates numbered LK-180.

26.     Attached as Exhibit 22 is a true and correct copy of Defendant's bank statement for the account number ending in 9362 produced by Defendant and Bates numbered LK-219 to 226.

27.     Attached as Exhibit 23 is a true and correct copy of Defendant's bank statement for the account number ending in 2274 produced by Defendant and Bates numbered LK-194.

28.     Attached as Exhibit 24 is a true and correct copy of Defendant's bank statement for the account number ending in 4207 produced by Defendant and Bates numbered LK-203 to 203.

29.     Attached as Exhibit 25 is a true and correct copy of Defendant's bank statement for the account number ending in 4889 produced by Defendant and Bates numbered LK-247 to 249.

30.     Attached as Exhibit 26 is a true and correct copy of Defendant's bank statement for the account number ending in 7808 produced by Defendant and Bates numbered LK-90 to 93.

31.     Attached as Exhibit 27 is a true and correct copy of Defendant's bank statement for the account number ending in 9368 produced by Defendant and Bates numbered LK-250 to 253.

32.     Attached as Exhibit 28 is a true and correct copy of Defendant's bank statement for the account number ending in 2748 produced by Defendant and Bates numbered LK-227 to 227.

33.     Attached as Exhibit 29 is a true and correct copy of Defendant's bank statement for the account number ending in 2323 produced by Defendant and Bates numbered LK-215 to 216.

34.     Attached as Exhibit 30 is a true and correct copy of Defendant's bank statement for the account number ending in 6397 produced by Defendant and Bates numbered LK-176 to 177.

1    35.    Attached as Exhibit 31 is a true and correct copy of Defendant's
2    bank statement for the account number ending in 8740 produced by
3    Defendant and Bates numbered LK-178.

4    36.    Attached as Exhibit 32 is a true and correct copy of Defendant's
5    bank statement for the account number ending in 0302 produced by
6    Defendant and Bates numbered LK-245 to 246.

7    37.    Attached as Exhibit 33 is a true and correct copy of Defendant's
8    bank statement for the account number ending in 3570 produced by
9    Defendant and Bates numbered LK-83.

10    38.    Attached as Exhibit 34 is a true and correct copy of Defendant's
11    bank statement for the account number ending in 4681 produced by
12    Defendant and Bates numbered LK-84 to 89.

13    39.    Attached as Exhibit 35 is a true and correct copy of Defendant's
14    bank statement for the account number ending in 5417 produced by
15    Defendant and Bates numbered LK-94 to 120.

16    40.    Attached as Exhibit 36 is a true and correct copy of Defendant's
17    bank statement for the account number ending in 0758 produced by
18    Defendant and Bates numbered LK-192 to 193.

19    41.    Attached as Exhibit 37 is a true and correct copy of Defendant's
20    bank statement for the account number ending in 9534 produced by
21    Defendant and Bates numbered LK-183 to 184.

22    42.    Attached as Exhibit 38 is a true and correct copy of Defendant's
23    bank statement for the account number ending in 9676 produced by
24    Defendant and Bates numbered LK-165 to 166.

25    43.    Attached as Exhibit 39 is a true and correct copy of Defendant's
26    bank statement for the account number ending in 9689 produced by
27    Defendant and Bates numbered LK-167 to 172.

28

44.     Attached as Exhibit 40 is a true and correct copy of Defendant's bank statement for the account number ending in 6539 produced by Defendant and Bates numbered LK-121 to 122.

45.     Attached as Exhibit 41 is a true and correct copy of Defendant's bank statement for the account number ending in 6258 produced by Defendant and Bates numbered LK-179.

46.     Attached as Exhibit 42 is a true and correct copy of Defendant's bank statement for the account number ending in 9546 produced by Defendant and Bates numbered LK-204.

47.     Attached as Exhibit 43 is a true and correct copy of Defendant's bank statement for the account number ending in 1926 produced by Defendant and Bates numbered LK-82.

48.     Attached as Exhibit 44 is a true and correct copy of Defendant's bank statement for the account number ending in 8765 produced by Defendant and Bates numbered LK-228.

49.     Attached as Exhibit 45 is a true and correct copy of Defendant's bank statement for the account number ending in 5282 produced by Defendant and Bates numbered LK-11.

50.     Attached as Exhibit 46 is a true and correct copy of Defendant's bank statement for the account number ending in 3627 produced by Defendant and Bates numbered LK-4.

51.     Attached as Exhibit 47 is a true and correct copy of Defendant's bank statement for the account number ending in 0207 produced by Defendant and Bates numbered LK-6.

52.     Attached as Exhibit 48 is a true and correct copy of Defendant's bank statement for the account number ending in 3908 produced by Defendant and Bates numbered LK-14.

53.     Attached as Exhibit 49 is a true and correct copy of Defendant's bank statement for the account number ending in 5183 produced by Defendant and Bates numbered LK-8.

54.     Attached as Exhibit 50 is a true and correct copy of Defendant's bank statement for the account number ending in 5293 produced by Defendant and Bates numbered LK-12.

55.     Attached as Exhibit 51 is a true and correct copy of Defendant's bank statement for the account number ending in 5301 produced by Defendant and Bates numbered LK-13.

56.     Attached as Exhibit 52 is a true and correct copy of Defendant's bank statement for the account number ending in 3558 produced by Defendant and Bates numbered LK-217 to 218.

57.     Attached as Exhibit 53 is a true and correct copy of Defendant's bank statement for the account number ending in 6048 produced by Defendant and Bates numbered LK-181 to 182.

**C. FBARs**

58.     Attached as Exhibit 59 is a true and correct copy of Defendant's Report of Foreign Bank and Financial Accounts (Form TD F 90-22.1) for the year 2009 produced by Defendant and Bates numbered LK-277 to 280.

59.     Attached as Exhibit 60 is a true and correct copy of Defendant's Report of Foreign Bank and Financial Accounts (Form TD F 90-22.1) for the year 2010 produced by Defendant and Bates numbered LK-281 to 282.

60.     Attached as Exhibit 61 is a true and correct copy of Defendant's FBAR Transcript for the year 2011 produced by Defendant and Bates numbered LK-283 to 284.

61.     Attached as Exhibit 62 is a true and correct copy of Defendant's FBAR Transcript for the year 2012 produced by Defendant and Bates numbered LK-285 to 287.

## D. Email Correspondence

62.    Attached as Exhibit 67 is a true and correct copy of Defendant's email correspondence produced by Defendant and Bates numbered LK-267 to 276.

## E. Deposition of Laura Kim

63.    Attached as Exhibit 182 is a true and correct copy of excerpts from the Deposition of Laura Kim on July 18, 2022.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 18, 2023

Gavin Greene
Assistant United States Attorney

8

Exhibit 188

1

<u>**Declaration of IRS Appeals Officer Duane Binns**</u>

2

I, Duane Binns, pursuant to 28 U.S.C. § 1746, declare as follows:

3

    1.    I am employed as an Appeals Office for the IRS Office of Appeals.

4

    2.    As part of my duties, I investigated whether the willful FBAR

5

penalty should be imposed against Laura Kim for the years 2009 through

6

2012. I make this declaration based on personal knowledge, where indicated

7

specifically, and the files and records of this case. I could and would testify to

8

those facts fully and truthfully if called and sworn as a witness.

9

**A. Assessment of FBAR Penalties**

10

    3.    Laura Kim's FBAR case was originally assigned to Appeals

11

Officer Russell McGeehan on December 21, 2018.

12

    4.    On March 22, 2019, Appeals Officer McGeehan contacted

13

Defendant's counsel and agreed on the contested issues and plan for a

14

conference.

15

    5.    Appeals Officer McGeehan was delayed in working the case due

16

to competing priorities, so as of May 15, 2019, the decision was made to

17

reassign the case to me.

18

    6.    On May 24, 2019, I sent a letter to Laura Kim's attorney and

19

enclosed a Consent to Extend the Time to Assess Civil Penalties Provided by

20

31 U.S.C. § 5321 for FBAR Violations for the years 2009 through 2012.

21

    7.    On May 30, I received a call from Laura Kim's attorney Jonathan

22

Amitrano who informed me that he would get the Consent to Extend the

23

Time to Assess Civil Penalties Provided by 31 U.S.C. § 5321 for FBAR

24

Violations for the years 2009 through 2012 signed by his client

25

    8.    On July 24, 2019, I received a signed Consent to Extend the Time

26

to Assess Civil Penalties Provided by 31 U.S.C. § 5321 for FBAR Violations

27

for the years 2009 through 2012, conditionally extending the statute of

28

limitations for assessing the FBAR penalty for tax years 2009 through 2012.

1

1       9.    On July 24, 2019, I left a voicemail message for Laura Kim's

2    attorney explaining that he could send the IRS another letter consenting to

3    extend the statute of limitations without conditions, or the IRS would assess

4    the FBAR penalty against Laura Kim for the years 2009 through 2012.

5       10.   Defendant's counsel refused to unconditionally extend the statute

6    of limitations for assessing the FBAR penalty for tax years 2009 through

7    2012.

8       11.   On August 13, 2019, a request was sent to SBSE BSA

9    Compliance-FBAR Penalty Coordinator in Detroit, Michigan, to assess the

10   FBAR penalty against Laura Kim for the years 2009 through 2012.

11      I declare under penalty of perjury that the foregoing is true and correct.

12

13  Dated: January 6, 2023

**Duane D. Binns** — Digitally signed by Duane D. Binns. Date: 2023.01.06 13:36:57 -06'00'

14                Duane Binns

15                Appeals Officer

                  Internal Revenue Service

2

Exhibit 189

## Declaration of Kathy Mitchell

I, Kathy Mitchell, pursuant to 28 U.S.C. § 1746, declare as follows:

1.    I am employed as a Supervisory Tax Law Specialist for the Internal Revenue Service and I work in Currency Transaction Reporting (CTR) Operations. I make this declaration based on personal knowledge, where indicated specifically, and the files and records of this case. I could and would testify to those facts fully and truthfully if called and sworn as a witness.

2.    In August 2019, Leah Smith-Pope was the Department Manager of Currency Transaction Reporting (CTR) Operations.

3.    In August 2019, Kathy Mitchell was a Supervisory Tax Law Specialist in CTR Operations and reported directly to Leah Smith-Pope.

4.    In 2019, the general procedure in CTR Operations regarding the FBAR Penalty Assessment Certification (Form 13448) was as follows: first it was reviewed by Kathy Mitchell, and once her review was complete, she would give it to Leah Smith-Pope for signature so that one person was not both the initial reviewer and final signatory authorizing assessment.

5.    During the week of August 20, 2019 to August 26, 2019, Leah Smith-Pope was on leave, and I was the Acting Department Manager, CTR Operations.

6.    Attached as **Exhibit 68** is a true and correct copy of the memorandum authorizing me to act as Acting, Department Manager, CTR Operations.

7.    During the week of August 20, 2019, Cesilee Graves was on detail as a frontline manager with the title Supervisory Tax Examiner in CTR Operations.

8.    I reviewed the Penalty Assessment Certification (Form 13448) for Defendant for the years 2009, 2010, 2011, and 2012.

1

9.      After reviewing Form 13448, I gave the form to Cesilee Graves and verbally requested that she sign the Form 13448 for Leah Smith-Pope so that I was not both the reviewer and signatory on the Form 13448.

10.     Form 13448 for Defendant dated August 20, 2019, was signed by Cesilee Graves for Leah Smith-Pope.

11.     Attached as **Exhibit 70** is a true and correct copy of the Form 13448 Penalty Assessment Certification (Title 31 "FBAR") for Laura Kim for the years 2009 through 2012 signed by Cesilee Graves for Leah Smith-Pope.

12.     On August 20, 2019, the IRS assessed willful FBAR penalties against Defendant for the years 2009 through 2012 in the amount of $1,014,109.85 for each year, for a total of $4,056,439.40.

13.     On August 26, 2019, the IRS sent Letter 3708 to Laura Kim.

14.     Attached as **Exhibit 71** is a true and correct copy of Letter 3708 sent to Laura Kim on August 26, 2019.

15.     As of September 2, 2022, the balance due for the FBAR penalties assessed against Laura Kim for the years 2009 through 2012 was $4,914,515.25, consisting of the FBAR penalties of $4,056,439.40, interest of $122,582.26, and additional penalties of $735,493.59.

16.     Interest and penalties continue to accrue as allowed by law.

17.     In July 2015, Delegation Order 25-13 was modified, and authority for FBAR enforcement was delegated to the Department Manager of CTR Operations.

///
///
///

2

1    18.    Attached as **Exhibit 183** is a true and correct copy of the

2    memorandum dated July 8, 2015, modifying Delegation Order 25-13.

3         I declare under penalty of perjury that the foregoing is true and correct.

4

5    Dated: _____01/19/2023_____

6                                    *Kathy A. Mitchell*

7                                    Kathy Mitchell
                                     Supervisory Tax Law Specialist
8                                    Internal Revenue Service

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 190

DECLARATION OF A. LAVAR TAYLOR

I, A. Lavar Taylor, hereby declare as follows:

1.  I am an attorney admitted to practice before the bar of this Court. I have personal
    knowledge of the matters set forth herein. If called to testify my testimony would be
    the same.

2.  I am the managing partner for the Law Offices of A. Lavar Taylor, LLP. I and the
    attorneys in my office have represented defendant Laura H. Kim in her dealings with
    the IRS since June of 2013.

3.  At the time our office began representing Ms. Kim, the IRS was auditing her federal
    income tax returns for the years 2010 and 2011 for approximately 8 months.

4.  Our office represented Ms. Kim throughout the remainder of the IRS audit of Ms.
    Kim's federal income tax returns. During the IRS audit, the IRS agent expanded the
    scope to include her federal income tax return for the year 2012.

5.  In 2015, the IRS also opened an audit of the Reports of Foreign Bank and Financial
    Accounts ("FBARs") filed by Ms. Kim for the years 2009 through 2012.

6.  IRS Revenue Agent Ella Chernyak ("RA Chernyak"), who conducted the income tax
    and FBAR audits, waited more than four years before she issued in November 2016
    an incomplete, preliminary revenue agent report ("RAR #1"), in which she proposed
    an increase in Ms. Kim's taxable income for the years 2010, 2011, and 2012 by an
    aggregate of more than $13.4 million based on a category labeled "other income."

7.  In response to RAR #1, my office advised RA Chernyak that her proposed
    adjustments were grossly mistaken and had no basis in fact.

8. In December 2016, RA Chernyak advised our office that she was reducing the total adjustments in the "other income" category to approximately $11.8 million combined for the years 2010 through 2012.

9. In January 2017, we met with RA Chernyak to discuss her proposed adjustments to Ms. Kim's income tax returns for years 2010, 2011, and 2012. At that meeting, RA Chernyak advised us that she had requested that in-house IRS attorneys approve the assertion of a large willful FBAR penalty and that an IRS attorney had approved a large willful FBAR penalty for the years 2009 through 2012. At this time, RA Chernyak had not issued any report with respect to proposed FBAR penalties.

10. On March 8, 2017, our office sent a letter to RA Chernyak explaining that we disagreed with the proposed adjustments of approximately $11.8 million and that, according to our analysis, "other income" adjustments for 2010, 2011, and 2012 would amount to no more than roughly $76,000.

11. On April 19, 2017, we contacted Vlad Rozenzhak, the IRS attorney with whom RA Chernyak was consulting, to express our concern that RA Chernyak's grossly inflated proposed adjustments were the basis for any decision to propose willful FBAR penalties.

12. On April 24, 2017, RA Chernyak issued a letter proposing more than $6 million of willful FBAR penalties against Ms. Kim for the years 2009 through 2012.

13. On May 24, 2017, in response to the proposed FBAR penalties, we filed a timely appeal and request for an administrative hearing with the IRS Office of Appeals ("Appeals"). We expected the matter to be transferred promptly to Appeals.

14. During May of 2017, we spoke with Simon Bonilla, the immediate supervisor of RA Chernyak, regarding Ms. Kim's desire to resolve the pending income tax audit. Mr. Bonilla told us that RA Chernyak would meet with us the following month to discuss a possible resolution of the income tax audit.

15. RA Chernyak did not meet with us in June 2017. Instead, she told us to be patient and that a meeting would be scheduled at a future date.

16. RA Chernyak did not meet with us until January 2018, at which time we learned that RA Chernyak had not forwarded our protest of the proposed FBAR penalties for years 2009 through 2012, which we filed on April 24, 2017, to Appeals.

17. The substantial delays in resolving the income tax and FBAR audits, along with the failure of RA Chernyak to forward our protest of the proposed FBAR penalties to Appeals, were of significant concern to Ms. Kim and our office. As the audit dragged on without a resolution, Ms. Kim stated to me repeatedly that the audits were causing her a significant amount of stress and emotional distress. Given that Ms. Kim had attempted suicide in Korea by jumping off a train and seriously injuring her head, we were concerned about her mental health and were sensitive to her complaints.

18. At the same time, we wanted to attempt to reach a consensual resolution of all issues at the audit level to avoid a long, drawn-out legal battle, which would cause Ms. Kim additional stress. To this end, we initially cooperated with RA Chernyak when she requested extensions of the statute of limitations on assessment of FBAR penalties.

19. In late 2015, RA Chernyak requested that Ms. Kim extend the statute of limitations on assessing FBAR penalties for the year 2009, which was set to expire on June 30, 2016. On November 16, 2015, our office sent RA Chernyak a signed extension of the

statute of limitations on assessment for 2009, extending the deadline to assess an FBAR penalty for 2009 to June 30, 2017. A true and correct copy of that document is attached hereto as Exhibit 56.

20. In January 2017, again at the request of RA Chernyak, our office sent RA Chernyak a second signed extension of the statute of limitations on assessment of FBAR penalties extending the deadline to assess FBAR penalties for 2009   as well as an extension to assess FBAR penalties for 2010--from June 30, 2017, to June 30, 2018. True and correct copies of those extensions are attached hereto as Exhibit 57.

21. In September 2017, again at the request of RA Chernyak, our office sent RA Chernyak a third batch of signed extensions of the statute of limitations on assessment of FBAR penalties, extending the deadline to assess FBAR penalties for 2009, 2010, and 2011 from June 30, 2018, to June 30, 2019. True and correct copies of those extensions are attached hereto as Exhibit 58. As result, the deadline to assess FBAR penalties for all years at issue   2009 through 2012   was June 30, 2019.

22. On January 31, 2018, we finally met again with RA Chernyak, at which time she issued a notice of revised, proposed FBAR penalties totaling approximately $4 million against Ms. Kim for the years 2009 through 2012.

23. On January 31, 2018, RA Chernyak also issued revised, proposed income tax adjustments for years 2010 through 2012. At this time, RA Chernyak advised us that she was rejecting our analysis of the "other income" adjustment, and that her total proposed "other income" adjustment for the three years was $13,927,525. She also advised us that she was going to raise new issues in the income tax audit.

24. As a result of RA Chernyak's actions on January 31, 2018, Ms. Kim's mental health further deteriorated and she complained to us about the stress she was undergoing because the audit was taking so long, with no apparent resolution in sight.

25. RA Chernyak agreed to extend our deadline to submit a protest to the revised, proposed FBAR penalties to April 23, 2018.

26. On April 2, 2018, we met with RA Chernyak and her immediate supervisor, Simon Bonilla, and explained again why the proposed "other income" adjustments were completely wrong. We advised that we would file our protest to the proposed FBAR penalties by April 23, 2018. RA Chernyak stated that she would issue a report of proposed income adjustments for the years 2010, 2011, and 2012, and that we would have the opportunity to file a protest and request for hearing.

27. During the meeting on April 2, 2018, RA Chernyak requested that Ms. Kim agree to another extension of the statute of limitations on assessment of FBAR penalties for all four years (2009-2012) from June 30, 2019, to December 31, 2019, so that Appeals would have at least one year to consider the protest before the time to assess expired, in accordance with IRS administrative requirements. It was our understanding that RA Chernyak would promptly close the FBAR audit and forward the case to Appeals upon receipt of our protest of the proposed FBAR penalties. Similarly, we understood that RA Chernyak would promptly close the income tax audit and forward the case to Appeals upon receipt of our protest of the anticipated proposed income adjustments for years 2010, 2011, and 2012.

28. On April 23, 2018, we filed the protest of the proposed FBAR penalties and request

for hearing with Appeals. On the same day, under separate cover and via certified

mail-return receipt, we sent RA Chernyak a letter stating:

> It is our understanding that the FBAR penalty audit conducted by your
> office has now concluded and that your office will be forwarding our
> protest of the proposed FBAR penalty assessments against Ms. Kim, sent
> to you this same day, to the Office of Appeals in the very near future. The
> enclosed Consents are being submitted based and conditioned upon these
> understandings and representations by your office.

Enclosed with the letter were the signed conditional consents to extend the statute of

limitations on assessment of FBAR penalties for the years 2009 through 2012 to

December 31, 2019 ("April 2018 Conditional Consents"). *See* Exhibit 28.

29. Ms. Kim imposed the conditions under the April 2018 Conditional Consents because

she was under tremendous stress as result of the continuing audit – which, at this

point had been pending for approximately 6 years   and because Chernyak had

continued to incorrectly and improperly assert that Ms. Kim owed millions of dollars

of additional income taxes and related penalties based on what we had concluded

were specious proposed "other income" adjustments. In addition, the conditions were

designed to require RA Chernyak to close the audit and forward the case to Appeals,

which she had failed to do in 2017.

30. The IRS did not object to the April 2018 Conditional Consents or respond to the

cover letter included with them.

31. On May 1, 2018, RA Chernyak issued yet another report of income adjustments for

years 2010, 2011, and 2012, proposing revised total "other income" adjustments of

$861,604.02 for years 2010 and 2011 and no "other income" adjustment for year

2012. Once again, we disagreed with the proposed adjustments. As explained *infra*,

Appeals later agreed with our position that RA Chernyak's proposed "other income"

adjustments lacked merit.

32. On June 8, 2018, we filed the protest to the May 1, 2018 income tax audit report. Our

protest consisted of over 6,720 pages of arguments and exhibits, including a detailed

explanation of why RA Chernyak's proposed "other income" adjustments were

incorrect.

33. On June 12, 2018, RA Chernyak issued yet another revised "final" income tax audit

report for the years 2010, 2011, and 2012 and asked us to respond by June 25, 2018.

We promptly advised RA Chernyak that we disagreed with her revised report.

34. On August 7, 2018, RA Chernyak issued yet another revised "final" income tax audit

report for the years 2010, 2011, and 2012. Again, we disagreed with the report.

35. On August 29, 2018, RA Chernyak issued yet another revised "final" income tax

audit report for the years 2010, 2011, and 2012. Again, we disagreed with the report.

36. On September 5, 2018, RA Chernyak issued yet another revised "final" income tax

audit report for the years 2010, 2011, and 2012. Again, we disagreed with the report.

37. On September 17, 2018, we sent RA Chernyak a Protest and request for a hearing

with Appeals in response to the September 5, 2018 income tax report.

38. In March 2019, we received our first communication from Appeals Officer Russell

McGeehan, advising that Ms. Kim's cases had been received by Appeals. Thereafter,

we were advised that the cases were being assigned to Appeals Officer Duane Binns

("AO Binns").

39. By letter dated May 24, 2019, AO Binns requested that Ms. Kim further extend the

statute of limitations on assessment of the FBAR penalties to December 31, 2020. By

this time, we believed that the IRS had breached the conditions of the April 2018 Conditional Consents and therefore, the time to assess FBAR penalties for years 2009 through 2012 had expired.

40. On July 10, 2019, we sent a letter to AO Binns imposing conditions on the enclosed extensions of the statute of limitations to assess FBAR penalties for 2009 through 2012 ("the July 2019 Conditional Consent"). The letter stated that the extensions were operative only if the statute of limitations on assessment of the FBAR penalties had not expired on June 30, 2019, and further set forth our view that the period of limitations had in fact expired on June 30, 2019.

41. We provided the July 2019 Conditional Consent to preserve our position that the FBAR penalty assessment statutes of limitations had in fact expired on June 30, 2019. If AO Binns agreed that the deadline to assess the FBAR penalties expired on June 30, 2019, he could have (and should have) closed the FBAR penalties appeal file without assessing any FBAR penalties. If he disagreed, the July 2019 Conditional Consent allowed him sufficient time to work on the FBAR penalties appeal without immediately assessing any FBAR penalties.

42. In response to the July 2019 Conditional Consent, AO Binns promptly caused the assessment of the proposed FBAR penalties.

43. Appeals ultimately rejected RA Chernyak's grossly inflated proposed "other income" adjustments, which had likely prompted IRS counsel's approval of the proposed willful FBAR penalties in 2017. In early 2021, Appeals entered into an agreement with Ms. Kim that fixed the amounts of additional tax due for the years 2010, 2011, and 2012 at the substantially reduced amounts of $47,029, $54,435, and $46,248.64,

respectively, plus accuracy-related penalties equal to 20% of these totals. These additional taxes and penalties were a small fraction of the millions of dollars of proposed taxes and civil fraud penalties that RA Chernyak initially proposed near the time she proposed the large willful FBAR penalties. Much of the additional income taxes owed was due to adjustments unrelated to Ms. Kim's foreign income, such as the disallowance of an old domestic net operating loss carryover that could not be proven due to the passage of time and increased "flow through" income resulting from the disallowance of expenses claimed on the return of a Subchapter S corporation partially owned by Ms. Kim.

44. [end]

Signed,

_____        January 11, 2023

A. Lavar Taylor                 Date

# Exhibit 191

## DECLARATION OF LAURA KIM

I, Laura Kim, hereby declare as follows:

1. I was born in Thoongnam (also called "Choong Nam"), Republic of Korea ("Korea"), on ▮▮▮▮▮▮ 1944.

2. My native language is Korean.

3. I learned English in school, but I have limited proficiency.

4. I married my first husband in or around 1969. We were divorced in or around 1990.

5. As a result of the divorce, I suffered significant financial difficulties and declared bankruptcy in or around 1991.

6. I remarried in or around 1994. My second husband tragically passed away in or around 1997, and this led to my severe depression and attempted suicide. I suffered serious head injuries that continue to cause me difficulties, including debilitating dizziness and headaches.

7. While I was recuperating in Korea, I formed Marina Enterprise, my first business outside the United States.

8. I have lived in Korea continuously since at least 1999.

9. In 2004, I returned to school in Korea and studied ecological engineering full time. I earned a bachelor's degree, a master's degree, and eventually a doctorate degree in 2011.

10. While I was in school, I bought LK Water Corp, an environmental company.

11. I have never had any training in finance, tax, or accounting.

12. I have always relied on accountants, employees, and family to assist me in matters relating to bookkeeping, accounting, and tax return preparation.

13. After I moved to Korea, I hired Korean accountants to prepare my Korean tax returns and American accountants to prepare my U.S. tax returns.

14. I paid my taxes to the Korean government for 2009 through 2012.

15. Prior to being audited by the IRS, I believed that I only needed to report my U.S. income on my U.S. tax returns and my Korean income on my Korean tax returns.

16. My accountants never told me that I needed to report my Korean income or my Korean accounts to the United States.

17. I read the instructions for the FBAR before preparing my FBAR for 2008.

18. When I prepared my 2008 FBAR, I followed the instructions as I understood them to the best of my ability.

19. When I mailed my 2008 FBAR to the IRS, I included a note asking the IRS to tell me if anything was incorrect. The IRS did not contact me in response to my note or 2008 FBAR.

20. After I mailed my 2008 FBAR to the IRS, I found what I thought were errors on the form, so I mailed a revised 2008 FBAR to the IRS. The IRS did not contact me in response to my revised 2008 FBAR.

21. Based on my belief that I correctly prepared and mailed my 2008 FBAR, I prepared and mailed my FBARs for years 2009, 2010, 2011, and 2012 in the same manner.

22. I first learned that my FBARs may be incorrect after I prepared and mailed my 2012 FBAR.

23. During the IRS audit of my income tax returns, I repeatedly complained to my attorney, Lavar Taylor, and others in his office because the IRS audit was causing substantial stress and taking an extreme physical and mental toll on me. This strain

only increased as time went by because (1) the IRS audit was ongoing for years, with

no resolution in sight; (2) RA Chernyak repeatedly claimed that I owed millions in

tax, even after my attorneys repeatedly provided her with clear evidence to the

contrary; and (3) IRS agent Chernyak claimed that I owed millions in FBAR

penalties, even though I timely filed my FBARs as soon as I learned that I was

required to file those forms, and I tried my very best to follow the instructions.

24. [end]

Signed,

Laura Kim                                JAN/12/2023

Laura Kim                                Date

Exhibit 192

1

2

3

4

5

6

7

8

9

10

11

12        INVESTIGATIVE INTERVIEW OF LAURA HIJA J. KIM

13                    Santa Ana, California

14                  Monday, June 23, 2014

15

16

17

18

19

20

21

22

23

      Reported by:
24    TERESA ANN BUTLER
      CSR No. 4642
25    Job No. 140623TB

1

USA - 007181

1

2

3

4

5

6

7

8

9

10

11

12          Investigative Interview of

13       LAURA HIJA J. KIM, taken on behalf

14       of the Internal Revenue Service, at

15       6 Hutton Centre Drive, Suite 880,

16       Santa Ana, California, beginning at

17       12:13 p.m. and ending at 6:08 p.m.

18       on Monday, June 23, 2014, before

19       TERESA ANN BUTLER, Certified

20       Shorthand Reporter No. 4642.

21

22

23

24

25

```
 1   APPEARANCES:

 2

 3   For Taxpayer Laura Hija J. Kim:

 4        LAW OFFICES OF A. LAVAR TAYLOR
          BY:  A. LAVAR TAYLOR
 5        Attorney at Law
          BY:  ROBERT S. HORWITZ
 6        Attorney at Law
          6 Hutton Centre Drive, Suite 880
 7        Santa Ana, California  92707
          (714) 546-0445
 8
     For The Internal Revenue Service:
 9
          INTERNAL REVENUE SERVICE
10        BY:  ELLA CHERNYAK, CFE
          Internal Revenue Agent
11        333 Broadway
          Mail Stop 4466
12        San Diego, California  92101
          (619) 615-7750
13
     Also Present:
14
          HYON RO
15        JOOSUB KIM
          STANLEY LEE
16

17

18

19

20

21

22

23

24

25
```

3

USA - 007183

```
 1                            INDEX

 2   INTERVIEWEE:                      EXAMINATION

 3   LAURA HIJA J. KIM

 4

 5                  BY MS. CHERNYAK          7, 8

 6

 7

 8
                           EXHIBITS
 9
                           (None)
10

11

12              INSTRUCTION NOT TO ANSWER

13                    Page  Line

14                    145    22

15                    147    10

16

17

18

19

20

21

22

23

24

25
```

```
 1   first.  Start with   , then      --

 2              THE TAXPAYER:  (In English) No.      first.

 3              MS. CHERNYAK:  So            1551?

 4              MR. LEE:  That's correct.

 5   BY MS. CHERNYAK:

 6      Q    Let's talk about the preparation of your tax

 7   returns.

 8              MR. TAYLOR:  And you're talking about

 9              MR. HORWITZ:  The 2010 and '11 or --

10              MS. CHERNYAK:  Yes.  For now, yes.

11              Translate, please.

12              MR. LEE:  She said CPA prepared it, but she

13   confused, April or May or --

14   BY MS. CHERNYAK:

15      Q    Which CPA prepared your returns?

16      A    (In English) Michael Kim.

17      Q    So Michael Kim prepared 2010, 2011 and 2012?

18      A    Uh-huh.

19              MR. LEE:  Five years.

20   BY MS. CHERNYAK:

21      Q    So he has been preparing your returns for the

22   last five years, approximately?

23      A    (In English)  Four, maybe.

24              MR. HORWITZ:  You know, I know we have -- you

25   sent me copies of the returns.  And I don't know whether
```

11

USA - 007191

 1   it was '08 or '09, but somewhere in the last four or

 2   five years he began preparing them.

 3           MR. LEE:   She said she wasn't -- she wasn't in

 4   America; seems like she had somebody she had who talked

 5   to the CPA who prepared the return -- brother-in-law.

 6   Brother-in-law talked to CPA, prepared the return.   He

 7   knew her.

 8   BY MS. CHERNYAK:

 9       Q    But you asked your brother-in-law to pick a CPA

10   to prepare the return; do I have it right?

11           MR. LEE:   Yes.

12           MS. RO:   For the baking company.

13           MS. CHERNYAK:   For the baking company.

14       Q    What about personal?   We're talking about

15   personal for right now.

16           What we're going to do is split this interview.

17   We're going to have a personal section, the bakery

18   section, and then Marina and CBSI section.

19           For right now we're discussing strictly your

20   personal matters, so your personal returns.

21           MR. LEE:   The brother-in-law introduced Michael

22   Kim, who prepared the return for her.

23   BY MS. CHERNYAK:

24       Q    What kind of records did you provide to Mr. Kim

25   to prepare your returns?

                                                          1?

USA - 007192

```
1      A      (In English) My personal?  Oh, personal, W-2,
2   the CBSI --
3              MS. CHERNYAK:  Translate.
4              MR. LEE:  She said W-2 from CBSI.
5   BY MS. CHERNYAK:
6      Q      That's it?  W-2 from CBSI, that's it?
7      A      (In English) Yeah.
8      Q      That's it?  Nothing else?
9      A      (In English) That's it.  Nothing else.
10     Q      Now, how did he create a rental schedule for
11  you if you did not provide him with anything else?
12             MR. TAYLOR:  That assumes she knows how he did
13  it.
14             MR. HORWITZ:  Yeah.
15             MS. CHERNYAK:  Well, she provided him records.
16  So I want to know what she provided him.  How would he
17  know to put that on her return if she did not tell him
18  anything?  That's what I want to know.
19             MR. HORWITZ:  You mean on the rental of the
20  bakery building?
21             THE TAXPAYER:  (In English) Oh, the
22  brother-in-law.
23  BY MS. CHERNYAK:
24     Q      So your sister provided Mr. Kim with records
25  for the rental property?
```

13

**GRADILLAS COURT REPORTERS**
**(310) 859 6677**

USA - 007193

```
 1              MR. TAYLOR:  Why don't you translate that.
 2              MS. CHERNYAK:  It's a question.
 3              MR. LEE:  She said her younger sister give it
 4    to the -- record to the husband, and then he handed it
 5    over to Michael Kim.
 6    BY MS. CHERNYAK:
 7        Q    What kind of record was it?
 8              Wait.  Wait --
 9              MR. LEE:  She said house and Wilshire State
10    Bank.  Her residency imformation and the bank
11    information was the record.
12    BY MS. CHERNYAK:
13        Q    What kind of record was it?
14              MR. LEE:  Her property and her own home she
15    live in --
16              THE TAXPAYER:  (In English) Property tax.
17              MR. LEE:  She providing the property tax and
18    bank statements and her personal residency information
19    to the CPA.
20    BY MS. CHERNYAK:
21        Q    Okay.  What is personal residence information?
22              MR. LEE:  She said ███████████      That's
23    the property information.
24              She said, the address, she's not sure.
25    BY MS. CHERNYAK:
```

1⁴

```
 1              Are you married?

 2              MR. LEE:  Her husband is deceased.

 3   BY MS. CHERNYAK:

 4       Q      When was he deceased?

 5              MR. LEE:  1997.

 6   BY MS. CHERNYAK:

 7       Q      Do you have any children?

 8       A      (In English) Two.

 9       Q      Two children?

10       A      (In English) Yeah.

11       Q      What are their names?

12       A      (In English) My son --

13       Q      Both your children.

14       A      (In English) Sterling Kim, Amy Kim.

15       Q      Do they both live here?

16       A      (In English) Yes.

17       Q      Do they live in Los Angeles, L.A. -- I mean the

18   U.S.?

19       A      (In English) Somewhere around here, yeah.

20       Q      So L.A.?

21       A      (In English) Yeah.

22       Q      Okay.  What is the date of birth for Sterling

23   Kim?

24       A      (In English) Sterling --

25       Q      Date of birth.
```

16

**GRADILLAS COURT REPORTERS**
**(310) 859-6677**

USA - 007196

```
 1      A     --  (In English) '69.
 2      Q     1969, okay.  And Amy Kim?
 3      A     (In English) ▮▮▮▮▮▮▮  I think.
 4      Q     That's fine.  I just need a year, a year.  Just
 5   a year.
 6            And Amy Kim?
 7      A     (In English) '73.
 8      Q     1973?
 9      A     (In English) Yeah.
10      Q     Are they both U.S. citizens?
11      A     (In English) Yes.
12      Q     All right.  What is your level of education?
13            MR. LEE:  She graduated grad school.
14   BY MS. CHERNYAK:
15      Q     In what?
16      A     (In English) Ecological engineering.
17      Q     What about your bachelor's degree, what is it?
18            MR. LEE:  Same.
19   BY MS. CHERNYAK:
20      Q     Is that it?  Is that all?
21      A     (In English) Nursing college.  Nurse.
22      Q     All right.  Good.  Good.
23            Is there any income that you forgot to report
24   on your personal tax return for these three years?  It's
25   a general question.
```

17

```
 1      A    (In English) Yeah.  And then, 2011, that was --
 2      Q    So during '10, '11 and '12, it went from Randy
 3  Lattimer to Charlie Song?
 4      A    (In English) Yes.
 5           MR. LEE:  She said Randy embezzled that money.
 6           MS. CHERNYAK:  Say it louder for the reporter.
 7           MR. LEE:  She got it.
 8  BY MS. CHERNYAK:
 9      Q    For the bakery, since you have a fairly
10  voluminous NOL, which is a net operating loss, we're
11  going to talk -- I have decided to go back to 2004.
12           MR. TAYLOR:  Do you want to tell her now about
13  the NOL, about what we can tell her?
14           MR. LEE:  She answer it, as far as I know.
15  BY MS. CHERNYAK:
16      Q    How do you know?
17           MR. LEE:  She didn't know about NOLs.
18  BY MS. CHERNYAK:
19      Q    When did you start accumulating a loss with
20  your bakery?
21           MR. LEE:  A little bit of her family
22  background:  Her husband, who is deceased, she had --
23  first one?  First one, her ex-husband, had a girlfriend,
24  and it was some other family problems, so she -- you
25  guys did a bankruptcy?
```

40

USA - 007220

1          THE TAXPAYER:  (In English) I did, because --

2          MR. LEE:  The ex-husband just left.  So that's

3   why she had to do bankruptcy.

4   BY MS. CHERNYAK:

5      Q    When?  What year?

6          MR. LEE:  Maybe 1991.

7          MS. CHERNYAK:  Then what else did she say?

8          MR. LEE:  That's it.

9          MR. TAYLOR:  But understand that we're not

10  going to be fighting you over the NOL deductio    this

11  point in time.

12         MS. CHERNYAK:  I understand that.  But, for me

13  to take the deduction, I need reasons of what was going

14  on there.  I can't just say okay, well, you don't have

15  it, so forget it.

16         MR. TAYLOR:  No.  But we can say we're giving

17  up.

18         THE TAXPAYER:  (In English) Oh, no.

19         MS. CHERNYAK:  I understand that.  But I still

20  need to understand, as far as we can go.

21         MR. LEE:  She said her ex-husband merely left;

22  that's why she doesn't have enough skill to manage it.

23  That's why it's one of the reasons to the loss.

24  BY MS. CHERNYAK:

25     Q    What year?

41

**GRADILLAS COURT REPORTERS**
**(310) 859-6677**

USA - 007221

```
 1      A    (In English) 1992 -- 1991 bankruptcy happen.
 2  Ex-husband --
 3           MR. LEE:  1991, they divorced, and bankrupt,
 4  too.
 5           THE TAXPAYER:  (In English) In '91.
 6           MR. LEE:  '91.
 7           THE TAXPAYER:  Divorce happen 1990.
 8  BY MS. CHERNYAK:
 9      Q    So, as far as you know, your business started
10  to lose money since that time?
11      A    (In English) Yes.
12      Q    Is that a "yes"?
13      A    (In English) Yes.  Bankruptcy, Chapter 11 --
14           MR. LEE:  Seems like she filed Chapter 11;
15  paying back a little bit, and, 2005, it is gone.  2005,
16  the bankruptcy and payment, everything is done.
17           MR. TAYLOR:  You mean 1995?
18           THE TAXPAYER:  (In English) 1995.
19           MR. LEE:  1995.
20           THE TAXPAYER:  (In English) Yes.
21  BY MS. CHERNYAK:
22      Q    So, 1995, the bankruptcy was over and
23  everything was paid off?
24      A    (In English) '95 or '97.
25      Q    I need an estimate.  I don't need an exact
```

42

USA - 007222

```
1       A     (In English) I was there, in Korea.  My
2  deceased husband got --
3            MR. LEE:  She was in Korea, and her husband,
4  ex-husband, who is deceased --
5            THE TAXPAYER:  (In English) Mental problems.
6            MR. LEE:  He had mental problems, depressed at
7  that time.  She says he jumped from the train, hit
8  the -- he had the mental problems, he had stitches.
9  Luckily, he survived.
10           She's trying to be working hard and back to
11 work.  She was hospitalized.  And then ex-husband --
12           THE TAXPAYER:  (In English) Not ex.
13           MR. LEE:  Husband's friend is doctor.  So she
14 got recovered and get well.
15 BY MR. CHERNYAK:
16       Q    Okay.
17       A    (In English) So -- just a minute.
18       Q    That's fine.  Take your time.
19            -- Do you have some tissue for your client?
20           MR. LEE:  She was in hotel.  At that time,
21 Korea had an IMF crisis -- I think 1997, around that
22 time.  She saw the news, and then some company exporting
23 thing, which is
24           THE TAXPAYER:  (In English) It was a shoe
25 company -- yes, shoe company.  And then exporting which
```

11P

USA - 007298

# Exhibit 193

1

2

3

4

5

6

7

8

9

10        INVESTIGATIVE INTERVIEW OF LAURA HIJA J. KIM

11                    Santa Ana, California

12                  Thursday, August 25, 2016

13

14

15

16

17

18

19

20

21

22

23

    Reported by:
24  TERESA ANN BUTLER
    CSR No. 4642
25  Job No. 160825TB

                                                              1

USA - 007377

1

2

3

4

5

6

7

8

9

10

11          Investigative Interview of

12          LAURA HIJA J. KIM, taken on behalf

13          of the Internal Revenue Service, at

14          3 Hutton Centre Drive, Suite 500,

15          Santa Ana, California, beginning at

16          9:29 a.m. and ending at 1:06 p.m.

17          on Thursday, August 25, 2016, before

18          TERESA ANN BUTLER, Certified

19          Shorthand Reporter No. 4642.

20

21

22

23

24

25

```
 1   APPEARANCES:
 2
 3   For Taxpayer Laura Hija J. Kim:
 4       LAW OFFICES OF A. LAVAR TAYLOR
         BY:  A. LAVAR TAYLOR
 5       Attorney at Law
         BY:  JONATHAN T. AMITRANO
 6       Attorney at Law
         3 Hutton Centre Drive, Suite 500
 7       Santa Ana, California  92707
         (714) 546-0445
 8
     For The Internal Revenue Service:
 9
         INTERNAL REVENUE SERVICE
10       BY:  ELLA CHERNYAK, CFE
         Internal Revenue Agent
11       333 Broadway
         Mail Stop 4466
12       San Diego, California  92101
         (619) 615-7750
13          and
         INTERNAL REVENUE SERVICE
14       OFFICE OF THE CHIEF COUNSEL
         BY:  MONICA D. POLO
15       701 B Street, Suite 901
         San Diego, California  92101
16       (619) 744 7114
            and
17       INTERNAL REVENUE SERVICE
         BY:  DAVID WEST
18       Internal Revenue Agent
         300 North Los Angeles Street
19       Mail Stop 4505
         Los Angeles, California  90012
20
     Also Present:
21
         HYON RO
22
23
24
25
```

3

USA - 007379

```
 1                      INDEX

 2  INTERVIEWEE                        EXAMINATION

 3  LAURA HIJA J. KIM

 4

 5                BY MS. CHERNYAK             5

 6

 7

 8                     ATTACHMENTS

 9  NUMBER      PAGE     DESCRIPTION

10  1           40       Packet of documents regarding
                         the taxpayer
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    A    (In English) Choong Nam, Korea.

2    Q    Where were you raised?

3    A    (In English) Right there, when I was young.

4    Q    Where did you go to school?

5         MR. TAYLOR:  Let the translator say it.

6         THE INTERVIEWEE:  (Through Interpreter) Which

7    school are you referring to?

8    BY MS. CHERNYAK:

9    Q    From kindergarten all the way to Ph.D., to the

10   graduate.

11   A    (In English) In English, so you can understand,

12   okay.

13        When I was young, I went to school in Korea,

14   high school; then afterwards I came back here, and I

15   went to Germany and Canada, and over here, got married;

16   and then I went back to Korea, age of 61, and I

17   reentered undergraduate school for ecology; graduated,

18   got the master's and Ph.D., 2011.

19   Q    Okay.  So when did you come here the first

20   time?

21        THE REPORTER:  I'm sorry.  You're all talking

22   at the same time, and I can't hear you.

23   BY MS. CHERNYAK:

24   Q    When you came to the United States the first

25   time, what city did you come to?


**GRADILLAS COURT REPORTERS**
**(310) 859-6677**

USA - 007382

```
 1      A    (In English) Los Angeles.

 2           MR. TAYLOR:  Objection.  Let's stop.  Let's let

 3  the interpreter, just so -- because she may ask

 4  questions that you -- where you don't understand

 5  everything, and I would rather it go through the

 6  interpreter.  I think we're safer that way.

 7           THE INTERVIEWEE:   (Through Interpreter)

 8  Los Angeles.

 9  BY MS. CHERNYAK:

10      Q    And what year was this?

11      A    '68.

12      Q    And, from '68, how long did you stay in

13  Los Angeles?

14      A    Up until now.

15           (In English) Except the -- except the period

16  that I stayed in Korea.

17      Q    When was this?

18      A    1999 -- well, I was in and out of -- to and

19  from Korea due to school.  So how do I say?

20      Q    Which school?

21      A    Bukyong University.

22           THE INTERPRETER:  B-o-o-k-y-o-n-g (sic) is the

23  interpreter's phonetic spelling.

24  BY MS. CHERNYAK:

25      Q    So was this for your undergrad degree?
```

7

USA - 007383

```
 1   believe.  That was a long time ago.

 2          Then I went in business.  So

 3      Q    What year was this?

 4      A    (In English)  The school?

 5      Q    No.  The hospital.

 6          MR. TAYLOR:  Let the translator ask you.

 7          THE INTERVIEWEE:  (In English) 1969 or '71.  70

 8   or '71.  In 1973 I opened here bakery.

 9          (Through Interpreter)  In 1973, I opened a

10   bakery here.

11   BY MS. CHERNYAK:

12      Q    So in -- in 2008, where did you live?

13      A    (In English)  2008 -- this is 2016; right?

14   2008, I live had in Korea.

15          (Through Interpreter)  I lived in Korea.

16          (In English)  From 19- -- 19999 (sic) --

17   right -- and then I went to school, 2004, to get the

18   master's, to go -- ecology, to learn the ecology.

19          So I came here only two months for summer, two

20   months, winter, for vacation.

21      Q    In 2008?

22      A    (In English)  Yes.

23      Q    What about 2009?

24      A    (In English) Same.

25      Q    Two months in the summer and two months in the
```

                                                              9

```
 1   winter?

 2   A     (In English) Yes.  Yes.

 3   Q     What about 2010?

 4   A     (In English) Same.  Same.

 5   Q     2011?

 6   A     (In English) 2011, I graduate, got the Ph.D.,

 7   August 26th.

 8   Q     Does that mean you came here for some time,

 9   too, or did you the majority of the time live in Korea?

10         MR. TAYLOR:  Let the translator -- I want to

11   make sure that when she asks you questions that she --

12   that you don't understand, so there's no issue, even

13   though you understand -- or you think you understand the

14   English, I want to make sure it goes through the

15   interpreter.

16         THE INTERVIEWEE:  (Through Interpreter) No.  In

17   2011, I graduated.  Graduated school, Ph.D.,

18   August 26th.  So, for both, graduate degree and Ph.D.,

19   on August 26th --

20         (In English)  No.  No.  Ph.D.  The master's,

21   two years earlier.

22         (Through Interpreter) Not two degrees at the

23   same time.  But master's degree two years earlier.

24   BY MS. CHERNYAK:

25   Q     So, in 2011, did you come back to the United
```

USA - 007386

1    Korea?

2        A    (In English)  1919 (sic) or 2000, somewhere

3    around there.  1919, 2000.

4        Q    Do you mean 1999 or 2000?

5        A    (In English)  1999.

6        Q    1919, you weren't even born then.

7        A    (In English) My dad was born in 1919.

8        Q    So '99, 2000, that was your first --

9        A    (In English) Yes, somewhere around there.

10       Q    How did it happen that you opened that account?

11       A    (In English) What does that mean?

12       Q    Who advised you?  Why did you open that

13   account?

14       A    (In English) Because I was residing there, you

15   know, I had to open up account.

16            (Through Interpreter) I had to open one

17   account.  But I don't quite understand why you are

18   asking me that question.

19       Q    I am asking that question to figure out why you

20   opened an account in Korea.

21       A    (In English)  Why?  Was it 1919 (sic), 2000,

22   that I have -- the country put out an IMF; I had to

23   export some shoes for them.

24            (Through Interpreter)  It was personal use.

25            And also, during that time, Korea was

13

USA - 007389

```
 1   experiencing some IMF crisis, so I wanted to help the
 2   country by exporting shoes.
 3        Q    When did you start filing your first FBAR
 4   return?
 5        A    (In English) I believe the first one was
 6   199- -- I mixed up the numbers.
 7             2008; is that correct --
 8        Q    That was your very first FBAR you ever filed,
 9   was 2008?
10        A    (In English) 2008 or '9.  '9 -- you had to
11   file for the year before.  So I think it's 2009.  '9,
12   did it for '8, I believe.
13        Q    That was the very first ever FBAR?
14        A    (In English) Very first.
15        Q    And who advised you to file the FBAR return?
16             (In English) One of my sisters.
17             (Through Interpreter) One of my sisters.
18        Q    What was the name?
19        A    (In English) Caroline.
20        Q    Last name?
21        A    Son.
22             THE INTERPRETER:  S-o-n.
23   BY MR. CHERNYAK:
24        Q    Did she also assist you to prepare -- in
25   preparing the return?
```

1      A      (In English) No.

2      Q      That was a -- I'm sorry -- a "no"?

3      A      No.  She lives here, and she somehow got the

4  information that that has to be done for the foreigners.

5  And she gave me that.

6      Q      "Somehow" would be how?

7      A      (In English) Newspaper, through somewhere.  I

8  believe that's it.  She clipped the newspaper, that

9  time, either fax me -- I can't remember -- that fax me

10  the clips -- I don't -- she got the IRS number --

11         (Through Interpreter) Anyway, she got the IRS

12  number, something like that.

13     Q      Okay.

14     A      (In English) Downloaded --

15     Q      "She," you mean Caroline Son, or "she" as in

16  you?

17     A      (In English) Gave it to me.

18         MR. TAYLOR:  Run it through the interpreter.

19         THE INTERVIEWEE:  My younger sister gave it to

20  me.

21  BY MS. CHERNYAK:

22     Q      Gave you what?

23     A      (In English) The information about the FBAR.  I

24  didn't know what FBAR meant.  So she got it somewhere in

25  the newspaper, learned about it.  And I didn't know what

                                                          15

**GRADILLAS COURT REPORTERS**
**(310) 859-6677**

USA - 007391

1  the FBAR meant.

2           (Through Interpreter)  That's how it happened.

3      Q   That was 2008?  I mean 2008 for 2009?

4      A   (In English) Yes.

5      Q   Do you remember, what was the information she

6  gave you?

7      A   (In English) The contact number of the IRS or

8  something.  I can't remember how I got that.  But very

9  short information, yeah.

10     Q   So she gave you a contact phone number?

11     A   (In English) Yes.

12     Q   Did you call the number?

13     A   (In English) I think I did.

14     Q   So you called the number.  What did you find

15  out?  What did you ask and what did you find out?

16     A   I think I asked if they have such a thing as

17  FBAR.

18           (In English) And then I download.

19           (Through Interpreter) And I don't remember

20  where I downloaded it from.

21     Q   And when you say "it," what do you mean by

22  "it"?

23     A   (In English) FBAR.

24     Q   Like a form, or the information on how to file

25  it?

```
 1 | LK Water?
 2 |      A    (In English)  July 15th.
 3 |      Q    2011?
 4 |      A    (In English) Yes.
 5 |      Q    What about 2012?
 6 |      A    (In English) Same.
 7 |      Q    So you had Marina and LK Water?
 8 |      A    (In English) Yes.
 9 |      Q    What about 2013?
10 |      A    (In English) Same.
11 |      Q    2014?
12 |      A    (In English) Same.
13 |      Q    And 2015?
14 |      A    (In English)  Same.
15 |      Q    What about Laura's Distributions?
16 |      A    (In English) Oh, that was --
17 |           (Through Interpreter) I did have -- I did
18 | operate it, but it become -- it became frozen.  So it
19 | was just name only.
20 |      Q    So when did you start this company?
21 |      A    (In English) 2011.
22 |      Q    And in the beginning?  The end?  In the middle?
23 |      A    (In English) In the late part.
24 |      Q    Later part?
25 |      A    (In English) Yeah, later part.
```

21

USA - 007397

```
 1   while I find something.
 2              (Discussion off the record.)
 3   BY MS. CHERNYAK:
 4       Q    So did you ever have salary from Laura's
 5   Distribution?
 6       A    (In English)  I don't remember.  I don't have
 7   it.  I don't think so.
 8       Q    So never?
 9       A    (In English)  I never received it.  And I don't
10   remember at all.
11       Q    Did Laura's Distributions ever earn any money?
12       A    (In English) No.
13       Q    Now we can talk about Marina.
14            When did you start Marina Enterprise?
15       A    It would have been 1999.
16            (In English) Or 2000.
17            (Through Interpreter) Or 2000.
18       Q    So you didn't have any transactions with Marina
19   prior to 1999?
20       A    (In English) It didn't.
21       Q    And who are the owners of Marina Enterprise?
22       A    (In English) Just I was the only one.
23       Q    So, during 2009, were you the owner of Marina
24   Enterprise?
25       A    (In English) Uh-huh.
```

25

USA - 007401

```
 1      Q    If you could say "yes" or "no," so the court
 2  reporter can record it.
 3      A    (In English)  Okay.  Yes.
 4      Q    Okay.  Thank you.
 5           2010?
 6      A    (In English) Yes.
 7      Q    2011?
 8      A    (In English) Yes.
 9      Q    2012?
10      A    (In English) Yes.
11      Q    2013?
12      A    (In English) Yes.
13      Q    2014?
14      A    (In English) Yes.
15      Q    And 2015?
16      A    (In English) Yes.
17      Q    Did Marina Enterprise have a bank account?
18      A    (In English) Yes.
19      Q    How many accounts did Marina Enterprise have,
20  bank accounts?
21           MR. TAYLOR:  What year?
22           MS. CHERNYAK:  We'll, we're going to go year by
23  year.
24      Q    In 2009, how many accounts did Marina
25  Enterprise have?
```

```
 1      A      (In English) I can't remember.  But --
 2             (Through Interpreter) This is how it worked:
 3   In Korea, there was one account.  It's not quite a
 4   checking account, but it's a daily payable account.  And
 5   it did not earn any interest.  So there was one account
 6   like that.
 7             (In English) That's for sure.
 8             (Through Interpreter) That's for sure.
 9         The rest of the -- regarding the rest of the
10   accounts, I had an account in which you can earn
11   interest.  So maybe interest is savings account.  But
12   you cannot hold that account for that long -- long time,
13   so maybe it's a short time, for a three-month period of
14   time.  So, shall I say, it had to be extended or
15   renewed.  So every time it was extended or renewed you
16   would have a different account number.
17         That's why it appeared that there were many
18   accounts.
19      Q      That's it?  Is that all?
20      A      (In English) Yes.
21      Q      What about in 2010?
22      A      (In English)  Same.
23             (Through Interpreter) So that's -- that's been
24   the way up until now.
25      Q      Okay.  So, from 2009, 2010, 2011, 2012, 2013,
```

27

1   2014 --

2        A    (In English) Yes.

3        Q    -- it's been the same?

4        A    (In English) Yes.

5             (Through Interpreter) So this is how I did it:

6   I -- sometimes I had to draw the money from that

7   interest-earning account if there was no money available

8   at the checking account or daily payable account.  And

9   then so, if I get more money, then I put the money back.

10  And if the interest was good, I would put for about six

11  months, and, otherwise, I would just make it into

12  short-term account.

13       Q    Okay.  Do you remember the account number for

14  your daily account?

15       A    (In English) I never touched any account.  I

16  never sit down -- I don't remember the number, because I

17  am a physical worker, so I never touch the account.  And

18  it was handled by the office clerks.  And how did it do

19  that?  I mean, how long have I been doing, and -- that,

20  and it's been the same way for U.S. account, as well.

21       Q    Okay.  So, for those two accounts, were you the

22  only one with the signature authority on these accounts?

23       A    (In English) Yes.

24       Q    So when you say you have never touched those

25  accounts, does that mean you never paid expenses out of

```
 1   those accounts?

 2        A    That's not what I meant.

 3        Q    What did you mean?

 4        A    What I meant to say was that I do not sit down

 5   and do the accounting for my account.

 6        Q    Okay.  We're not talking about an accounting at

 7   the moment.  We're talking about you using these

 8   accounts.

 9        A    As to the use of the account, I would tell my

10   guys that I need -- I need certain so and so, and then

11   they would make it available so that I could use it.

12             (In English) What I have to pay for this week.

13             (Through Interpreter) So what they did was they

14   would prepare a weekly payable ledger which is given to

15   me.  They will tell me that these are the things that we

16   have to pay on certain week end by Friday, and I would

17   work accordingly.

18             So I would review that, and the expenses would

19   be paid on the following Monday.

20        Q    Okay.  When you say the "guys," who do you

21   mean?

22        A    (In English) Guys, employees.

23             (Through Interpreter) Employees.

24        Q    So would you tell them what to pay or what not

25   to pay out of these accounts?
```

29

USA - 007405

```
 1              (Through Interpreter) I don't know if I used
 2   the U.S. taxpayer I.D. in America.  I didn't know that
 3   Korea had it.  So I don't know how I did the taxpayer
 4   I.D.
 5        Q    Did somebody help you prepare this tax return?
 6        A    According to my recollection now, I did things
 7   usually at night, around 1:30 at night, so I would have
 8   done so by myself.
 9        Q    Okay.  So you said that the -- the address on
10   this return is correct?
11        A    (In English) Yes.
12             (Through Interpreter) Yes.
13        Q    Why would you use your Korean address for this
14   return?
15        A    I thought I was supposed to put down Korean
16   address because I was living in Korea.
17        Q    But your income-tax return at this time was
18   filed under the Los Angeles address.
19        A    (In English) CPA did it, so I don't know.
20   Might have done it because it's U.S. tax return.
21        Q    I didn't understand the answer.
22        A    It was for the U.S. tax return, so I might have
23   done so.  And also, it was done by the CPA.
24        Q    How did you decide which bank accounts to put
25   on this return?
```

43

USA - 007419

1     A     I thought I was supposed to put down the main
2  account.

3     Q     How did you decide which one is the main
4  account?

5     A     At this time, I cannot remember as to how I did
6  it.

7     Q     How did you determine the balances in these
8  accounts to be placed on this tax return?

9     A     Where is the balance?

10    Q     There's on Page 2, Line 15, and then line --
11  the next section, Line 15.  Each section, Line 15 has a
12  value of the account.

13          There's a Line 15 -- I can't see upside down --
14  yeah, right there, and then the one below that, too.

15          How did you come up with these numbers?

16    A     I might have called the office and received it
17  from the office on the following day.

18    Q     What office?

19    A     (In English) Marina office.

20    Q     According to this, this is your personal
21  account.  So what would that be in connection to Marina?

22    A     (In English) Everything is in the office.

23          (Through Interpreter) Since I didn't even know
24  how to handle my account, the Marina office took care of
25  everything.

1     Q     They took care of your personal and your

2   corporate accounts?

3     A     (In English) Yes.

4           (Through Interpreter) Yes.  It's been the way

5   up until now.

6     Q     So, in 2009, Marina was taking care of your

7   bank -- your personal bank accounts?

8     A     (In English) Not by the Marina.  But the

9   employee at the Marina -- at Marina.

10    Q     Okay.  So when you prepared this tax return, on

11  Page 2, on Line 15, there's a -- the amount printed is

12  crossed out and the number is written in.

13          Can you explain to me who did that?

14    A     It appears to be that it was rounded up.

15    Q     But who made that correction?

16          MR. TAYLOR:  If you know.

17  BY MS. CHERNYAK:

18    Q     If you know.

19          MS. POPE:  They're all if you know.

20          MS. CHERNYAK:  Everything is about her knowing.

21          THE INTERVIEWEE:  (Through Interpreter) I might

22  have done so.

23  BY MS. CHERNYAK:

24    Q     Why did do you that?

25    A     (In English) I don't know.  Maybe someone else

45

USA - 007421

```
 1   weren't sure, and you did the best you can.

 2            THE INTERVIEWEE: (In English) Right; best.

 3            MR. WEST:  But you are saying it never crossed

 4   your mind to ask your US CPA, Mr. Khim to help you or --

 5            THE INTERVIEWEE: (In English) My brother-in-law

 6   is a friend.  So I don't deal with him.  I was too busy

 7   studying, so I might have overlooked it.

 8            MS. POLO:  By the way, Khim is spelled K-h-i-m,

 9   for the reporter.

10            THE INTERVIEWEE: (In English) K-h-i-m?  I

11   thought it was K-i-m, oh -- I'm sorry.

12            MS. POLO:  No.  That's okay.

13            MR. WEST:  Anyway -- that's all.

14   BY MS. CHERNYAK:

15      Q   So you said that you didn't even sign your 2009

16   income-tax return?

17            MR. TAYLOR:  That's not what she said.  She

18   said she didn't sign some of the returns.

19   BY MS. CHERNYAK:

20      Q   Do you remember signing the 2009 income-tax

21   return?

22      A   (In English) I can't remember.  Sometimes they

23   file it with his name on it.  I might have, I might not.

24   So I don't know if I signed it.

25      Q   Do you remember reviewing that tax return?
```

1          MR. TAYLOR:  Ask --

2          THE INTERVIEWEE: (In English) My brother-in-law

3  kept them.  I should have done that.  I didn't even do

4  that.

5  BY MS. CHERNYAK:

6     Q    So you never had a communication with Mr. Khim

7  regarding a 2009 tax return?

8     A    (In English) Not about the tax return.  I

9  talked to him.

10     Q    So you never sent him a copy of your 2009 tax

11  return to review?

12     A    (In English) I think --

13          MR. TAYLOR:  Wait.  I think your question

14  here --

15          MS. CHERNYAK:  Income-tax return.  Thank you.

16          MR. TAYLOR:  Your question is -- I think she

17  may have misunderstood you on that.

18  BY MS. CHERNYAK:

19     Q    For the U.S. income-tax return, did you review

20  that return?

21     A    I didn't do that, which was my mistake.  I just

22  left my company in the hands of my brother-in-law.  And

23  I was just busy studying.

24          (In English) I didn't get any income either.

25     Q    So Mr. Khim, the CPA here, has never E-mailed

                                                          61

USA - 007437

```
 1      Q     Yes, 2011 FBAR return.

 2      A     (In English) So if I filed FBAR myself, I would

 3   have done the same thing, although I haven't looked at

 4   it yet.

 5      Q     The same thing as --

 6      A     (In English) The previous year.  I was still

 7   going to school then, '12 -- '12 -- 2011, '12.  And I

 8   was -- I was teaching.  I was a professor there at the

 9   school.  And I graduated -- immediately graduated, got

10   the Ph.D., they gave me the title of professor.

11      Q     So when did you graduate?

12      A     2011.

13      Q     The specific date?

14      A     (In English) August 26th.

15            In September, new semester starts -- right --

16   Korea.  So, immediately, I had to teach undergraduates.

17      Q     So for 2011 -- and I understand that I am

18   repeating the same questions, but I need you to repeat

19   your answers for each year.

20      A     (In English) Yeah.

21      Q     So did anything change in the way you prepared

22   2011 from 2009 and '10?

23      A     Nothing had changed for those years.  And, once

24   the audit started, I didn't touch it.  CPA did it.

25      Q     CPA in Korea?
```

1    then we came on board.

2            And my guess is that, when she says, "when the

3    audit started," she's thinking about when we came on

4    board, because I don't think a whole lot started until

5    that time.

6            MS. CHERNYAK:  It was still after June 29th.

7    I'm pretty sure the audit didn't start until the end of

8    the year, like past October.

9            MR. TAYLOR:  I just --

10           MS. CHERNYAK:  I'd have to check the date.

11           MR. TAYLOR:  Right.  I'm just -- based on what

12   she is saying, I think that's what she's thinking when

13   she talks about the audit taking place.  I'm fairly

14   certain that nothing happened until -- I mean, Michael

15   Khim was representing her, and I don't think a lot

16   happened there.

17           And I don't think they were even dealing with

18   you.  I think they were dealing with --

19           MS. CHERNYAK:  They were dealing with an agent

20   in L.A.  And I believe there was an interview.

21           MS. POLO:  But do they know -- I mean, she

22   knows what returns would have -- she's saying that

23   starting at some point they were filed by who?

24           MR. TAYLOR:  By a CPA.

25           MS. POLO:  Who was the CPA?

1           THE INTERVIEWEE:  (In English) Mr. Henry Chi,

2     C-h-i, did it last year.

3           MS. POLO:  Do we now what years?

4           THE INTERVIEWEE:  (In English) Last year, I'm

5     sure did he.  So Mr. Chi, C-h-i; Henry, first name.

6           THE INTERPRETER:  May I possibly have five

7     minutes to go to the bathroom.

8           MR. TAYLOR:  By all means, please.

9           (Recess.)

10    BY MS. CHERNYAK:

11      Q    I believe we were on 2011; correct?

12           So did the process change in preparing the

13    return for 2011?

14      A    No.

15      Q    So you still called your employees at Marina to

16    get this information?

17      A    Right.

18      Q    Your 2011 FBAR tax return reflects two bank

19    accounts.  Do you remember specifics for this -- for

20    these accounts?

21      A    (In English) No, I don't.

22      Q    Okay.  Do you know if you had any other

23    accounts that are not on this tax return?

24      A    (In English) May have.  But I can't remember

25    that.  I may have.  I mean, according to what this says,

                                                              77

1   2014 FBAR return than prior years?

2        A    (In English) I don't know who did it.  I don't

3   know who did it.

4             (Through Interpreter) I don't know who did it.

5        Q    According to this, Henry Chi prepared this.

6        A    (In English) Henry Chi is some -- who I rely

7   on.  He's more accurate than the other guy.  So he might

8   have done it.  I believe -- I didn't review it.  But he

9   did it.

10       Q    So why did you change Mr. Michael Khim for

11  Henry Chi?

12       A    Michael Khim -- supposedly, Michael Khim --

13            (Through Interpreter) I was told that he did

14  not do it correctly in many aspects.

15       Q    Told by who?

16       A    (In English) You're not happy with him; right?

17       Q    So was that by Lavar Taylor?

18       A    (In English) I think, according to what I

19  heard, he left -- he was -- incomplete tax return,

20  something like that.  It was not good.  So I asked to

21  hire a new CPA.

22            So I found this Henry Chi.  He is very

23  honorable and he got a good reputation, I think.  I

24  check around, and he was referred by somebody that I

25  know.  And I am happy.  He's expensive but I am happy.

1  from earlier.

2         So, from 2008 to 2011, you were preparing the

3  FBAR, you actually wrote the numbers?

4         THE INTERVIEWEE:  (In English) They give me the

5  number, I write it and sign it.  So I did it myself.

6         MR. WEST:  And that was based on the employees

7  of Marina -- so you asked the employees from Marina to

8  give you the accounts and the balances for all of your

9  business and personal accounts?

10         THE INTERVIEWEE:  (Through Interpreter) yes.

11         MR. TAYLOR:  Before, I don't think the way you

12  phrased it is quite the way she said, in terms of

13  answering it.  But, again, that's not quite what she

14  said.

15         There were a series of questions about what she

16  said to the employees, the accountant, how she said.

17  And she said that she would ask for the current balance

18  of the current accounts, and things like that.

19         MR. WEST:  Okay.

20         MR. TAYLOR:  So, I mean, I think you are

21  misstating what she said before.

22         MR. WEST:  Let me back up.

23         So what did you ask them for?

24         THE INTERVIEWEE:  (Through Interpreter) I will

25  look at the form, and it's asking for the sources of the

95

# Exhibit 194

# Interview Charlie Son

SMALL BUSINESS & SELF-EMPLOYED DIVISION

GENERAL PROGRAM GROUP EGC 1611

THIRD-PARTY INTERVIEW OF CHARLIE SON

IN RE: LAURA KIM

THURSDAY, MAY 11, 2017

300 North Los Angeles Street, Room D

Los Angeles, California 90012

REPORTED BY:
Kristin Lynette Cyphers
CSR No. 13518
Job No. 26028



*Gabe, Inc.*®
www.gabeinc.com  855.389.6555

125-6.1

USA - 007335

1          SMALL BUSINESS & SELF-EMPLOYED DIVISION

2             GENERAL PROGRAM GROUP EGC 1611

3

4

5

6

7

8

9         THIRD-PARTY INTERVIEW OF CHARLIE SON

10                IN RE: LAURA KIM

11              THURSDAY, MAY 11, 2017

12

13

14        300 North Los Angeles Street, Room D

15            Los Angeles, California 90012

16

17

18

19

20

21

22

23
    REPORTED BY:
24  Kristin Lynette Cyphers
    CSR No. 13518
25  Job No. 26028

# Interview Charlie Son

IN RE: LAURA KIM
Charlie Son

Job 26028
Page 2

```
 1    APPEARANCES:

 2            INTERNAL REVENUE SERVICE
              BY:   ELLA CHERNYAK CFE, MBA
 3            Internal Revenue Agent
              333 West Broadway
 4            Mail Stop 4466
              San Diego, California 92101
 5            (619) 615-7750
              ella.chernyak@irs.gov
 6

 7            INTERNAL REVENUE SERVICE
              BY:   SIMON BONILLA
 8            Special Enforcement Program
              Group Manager Internal Revenue Agent
 9            333 West Broadway
              Mail Stop 4466
10            San Diego, California 92101
              (619) 615-7745
11

12

13
      Also Present:
14
              JOY SMITH, Korean Interpreter
15

16

17

18

19

20

21

22

23

24

25
```



Gabe Inc.®
www.gabeinc.com
125-6-3

USA - 007337

# Interview Charlie Son

IN RE: LAURA KIM
Charlie Son

Job 26028
Page 3

```
 1                    I N D E X
      WITNESS:   CHARLIE SON
 2
      EXAMINATION BY                           PAGE
 3
         Ms. Chernyak. . . . . . . . . .4, 19, 24, 28, 31, 34
 4
         Mr. Bonilla. . . . . . . . . . .17, 24, 27, 30, 33
 5

 6

 7
                     E X H I B I T S
 8
                     (None Entered)
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



USA - 007338

# Interview Charlie Son

1       Q       When.

2       A       First time meet?

3       Q       Yes.

4       A       I remember probably 1992 or 1993.

5       Q       Okay.  So can you tell me a little bit

6   about the relationship.

7       A       She's my sister-in-law.

8       Q       And you are married to her --

9       A       Her sister.

10      Q       -- to her sister?  Okay.  How often do you

11  communicate with Laura Kim?

12      A       Probably almost nothing.  She was living

13  in -- I don't know.  She was living in L.A. or -- but

14  mostly she doesn't call me.  We didn't talk to each

15  other in a long time, year, two year.  We do not

16  communicate.

17      Q       Are you talking about now, or are you

18  talking about since 1990?

19      A       Yeah, since 1990.

20      Q       Okay.  So that's when Laura lived in Korea,

21  but when --

22      A       No.  Laura lived in -- I think it was

23  somewhere around -- Laura lived in the United States at

24  that time, 1993, 1994.  Something like that.  I don't

25  know what day or what year she moved to Korea.  I don't

```
 1    2009, end of August.

 2             Q        Are you still working for the bakery?

 3             A        No.  Bakery sold.

 4             Q        When was it sold?

 5             A        Sold last year.

 6             Q        2016?

 7             A        Yeah.  2016.

 8             Q        Okay.  So you worked for the bakery from

 9    2008 to 2016?

10             A        I'm not sure if 2008, 2009.  Yes.  But

11    first time, I don't know nothing about bakery, nothing,

12    and just go back to work.  I say, "Laura, I don't know

13    anything about bakery.  I cannot work."

14                      "Go back to work."

15                      "Okay."  So I start work.

16             Q        Okay.  So what exactly were your

17    responsibilities?

18             A        Mostly, I am the VP -- do you understand

19    what I'm talking about?

20             Q        I do.  I was just looking at her to make

21    sure you understand what I'm asking.

22             A        Okay.  And mostly I work for sales, because

23    sales really -- good sales.  Okay.  And I have a product

24    manager.  He does all the product and take care of that,

25    so my focus is sale.  But at that time, it's horrible
```

# Exhibit 195

**CHI & NAM LLP, CERTIFIED PUBLIC ACCOUNTANTS**
3731 WILSHIRE BLVD. STE 777 LOS ANGELES, CA 90010
PHONE: 213-381 3239
FAX: 213 381 5152

Caroline D. Ciraolo
KOSTELANETZ & FINK, LLP
601 New Jersey Avenue, Suite 260
Washington, D.C. 20001

<u>**Expert Report**</u>

**Re:** *United States v. Laura Kim*, No. 2:21-cv-06746-FMO-KS(C.D. Cal.)

## I.        Introduction and Professional Qualifications

My name is Henry Chi. I am a partner of Chi & Nam, LLP. I have attached my CV stating my
professional qualifications at the end of this report at Exhibit VI.

I have been a CPA for over 26 years, certified by the California Board of Accountancy. I have
prepared and reviewed numerous personal and business income tax returns during that time. Chi
& Nam, LLP has numerous clients who are connected with South Korea. As a result, we have
prepared numerous income tax returns which deal not only with U.S. source income but also
with Korean source income. Among other things, we are familiar with U.S. - Korea tax issues
including the application of foreign tax credits resulting from income taxes paid to the Korean
Government by U.S. taxpayers.

## II.        Scope of Engagement

Chi & Nam, LLP has been retained to perform the following: calculate the amount of U.S.
income tax liability attributable to Laura Kim's foreign source incom; prepare draft U.S. income
tax returns for Laura Kim for the tax years 2010, 2011, and 2012, excluding any foreign source
income and foreign tax credits; compare the tax liabilities calculated without foreign source
income and credits to her U.S. tax liabilities based on her worldwide income; present the results
in an expert report; and, if needed, give testimony in support of our report.

In addition, Chi & Nam, LLP has been retained to provide our experience with and our
understanding of Korean banking practices. Specifically, we will share our knowledge that

1

Korean banks roll over certain short-term deposit accounts to new accounts with new account numbers.

A summary of my opinion as to the results is included in Section III of this report. A more detailed overview of how we have calculated as well as specific items of income and credits is further elaborated in Section IV for each year 2010, 2011, and 2012.

Samuel Nam, CPA, a partner at Chi & Nam, LLP, has assisted me by conducting the preparation of the tax returns and analyzed the results. Chi & Nam, LLP is being compensated for our time at hourly rates of $225 per hour.

In reaching my opinion expressed herein, I and Samuel Nam, CPA have read and considered various documents produced by the parties to this dispute and available to the public domain.

I respectfully reserve the right to review any additional information that may become available prior to any court hearing and to amend my opinions and report, and to provide rebuttal testimony, if necessary.


### III.    Summary of Opinions

1. For tax year 2010, Laura Kim's U.S. income tax liability attributable to her foreign source income, after taking into account her allowed foreign tax credit, is - $10,118.

2. For tax year 2011, Laura Kim's U.S. income tax liability attributable to her foreign source income, after taking into account her allowed foreign tax credit, is zero. In fact, her allowed foreign tax credit exceeds her income tax liability attributable to her foreign source income by $30,308.

3.  For tax year 2012, Laura Kim's U.S. income tax liability attributable to her foreign source income, after taking into account her allowed foreign tax credit, is $39,425.

4. Therefore, for the tax years 2010, 2011, and 2012, the  net aggregate tax due attributable to Laura Kim's unreported foreign source income and unclaimed foreign tax credit is $19,235.

5. Korean banks often roll over certain short-term deposit bank accounts to accounts with new account numbers, creating multiple account numbers on the surface while the funds within those accounts are in effect identical.

**IV.** **Basis of Opinions**

1. Year 2010

Chi and Nam LLP prepared an income tax return for Laura Kim using only her U.S. source income. The data we used came from her filed 2010 Form 1040 and the Form 4549B, Income Tax Examination Changes, shown on Exhibit IV-B as attached. We attributed the adjustments on the Form 4549B for "Sch E-Inc/Loss   Depreciation Expense," "NOL Carryforward," "Sch E-Inc/Loss-Prtnrship/S Corps-Passive/Non-Passve," and "Qualified dividends" to U.S. source income. We attributed the adjustments for "Sch E2   Rents Received," "Qualified Dividends From Korea," "Taxable Interest," and "Wages, Salaries and Tips, etc." to foreign source income.

We also attributed all of the income reported on her 2010 Form 1040 to U.S. source income. Laura Kim's total U.S. source income was $170,506. Deductions and exemptions attributable to her U.S. source income added up to be $17,643. The taxable U.S. source income, therefore, was $152,863, which resulted in a tax liability of $36,511.

We then prepared a second income tax return for Laura Kim using her worldwide income, which totaled $1,148,689. Her total deductions and exemptions for her worldwide income was $17,643. The taxable worldwide income, therefore, was $1,131,046, resulting in an initial tax liability of $343,834. After applying the Foreign Tax Credit of $297,205, the final tax liability becomes $46,629.

Therefore, the inclusion of foreign income and credits on Laura Kim's 2010 tax return increased her U.S. income tax liability by $10,118.

Please refer to the attached Exhibits as follows:

Exhibit I-A and Exhibit I-B show the above in a table format.

Exhibit I-C and Exhibit 1-D show the above results in tax form 1040.

Exhibit IV-A, Form 5278, Statement   Income Tax Changes for 2010, 2011, and 2012

Exhibit IV-B, Form 4549B, Income Tax Examination Changes for 2010, 2011, and 2012

Exhibit V-A, Form 1040, U.S. Individual Income Tax Return, for 2010, filed by Laura Kim

2. Year 2011

Chi and Nam LLP prepared an income tax return for Laura Kim using only her U.S. source income. The data we used came from her filed 2011 Form 1040 and the Form 4549B, shown on Exhibit IV-B as attached. We attributed the adjustments on the Form 4549B for "Sch E-Inc/Loss   Depreciation Expense," "NOL Carryforward," "Sch E-Inc/Loss-Prtnrship/S Corps-Passive/Non-Passve," "Qualified dividends," and "State Refunds, Credits, or Offsets" to U.S. source income. We attributed the adjustments for "Sch E2   Rents Received," "Qualified Dividends From Korea," "Taxable Interest," and "Wages, Salaries and Tips, etc." to foreign

3

source income. We also attributed all of the income reported on her 2011 Form 1040 to U.S. source income. Laura Kim's total U.S. source income was $334,101. Deductions and exemptions attributable to her U.S. source income added up to be $17,965. The taxable U.S. sourced income, therefore, was $316,136. After applying the $750 credit for the elderly, the resulting tax liability is $88,472.

We then prepared a second income tax return for Laura Kim using her worldwide income, which totaled $615,131. Her total deductions and exemptions for her worldwide income was $17,965. The taxable worldwide income, therefore, was $597,166, resulting in an initial tax liability of $133,340. After applying the Foreign Tax Credit of $74,426, the final tax liability becomes $58,164.

Therefore, the inclusion of foreign income and credits on Laura Kim's 2011 tax return decreased her U.S. income tax liability by $30,308.

Please refer to the attached Exhibits as follows:

Exhibit II-A and Exhibit II-B show the above in a table format.

Exhibit II-C and Exhibit II-D show the above results in tax form 1040.

Exhibit IV-A, Form 5278, Statement    Income Tax Changes for 2010, 2011, and 2012

Exhibit IV-B, Form 4549B, Income Tax Examination Changes for 2010, 2011, and 2012

Exhibit V-B, Form 1040, U.S. Individual Income Tax Return, for 2011, filed by Laura Kim


3.   Year 2012

Chi and Nam LLP prepared an income tax return for Laura Kim using only her U.S. source income. The data we used came from her filed 2012 Form 1040 and the Form 4549B, shown on Exhibit IV-B as attached. We attributed the adjustments on the Form 4549B for "Sch E-Inc/Loss    Depreciation Expense," "Sch E-Inc/Loss-Prtnrship/S Corps-Passive/Non-Passve," "Qualified dividends," and "State Refunds, Credits, or Offsets" to U.S. source income. We attributed the adjustments for "Sch E2    Rents Received," "Qualified Dividends From Korea," "Taxable Interest," and "Wages, Salaries and Tips, etc." to foreign source income. We also attributed all of the income reported on her 2012 Form 1040 to U.S. source income. Laura Kim's total U.S. source income was $122,234. Deductions and exemptions attributable to her U.S. source income added up to be $11,200. The taxable U.S. source income, therefore, was $111,034, which resulted in a tax liability of $24,550.

We then prepared a second income tax return for Laura Kim using her worldwide income, which totaled $610,718. Her total deductions and exemptions for her worldwide income was $11,200. The taxable worldwide income, therefore, was $599,518, resulting in an initial tax liability of $159,584. After applying the Foreign Tax Credit of $95,609, the final tax liability becomes $63,975.

Therefore, the inclusion of foreign income and credits on Laura Kim's 2012 tax return increased her U.S. income tax liability by $39,425.

Please refer to the attached Exhibits as follows:

Exhibit III-A and Exhibit II-B show the above in a table format.

Exhibit III-C and Exhibit II-D show the above results in tax form 1040.

Exhibit IV-A, Form 5278, Statement   Income Tax Changes for 2010, 2011, and 2012

Exhibit IV-B, Form 4549B, Income Tax Examination Changes for 2010, 2011, and 2012

Exhibit V-C, Form 1040, U.S. Individual Income Tax Return, for 2012, filed by Laura Kim

4.   Years 2010, 2011, 2012

The net aggregate tax due attributable to Laura Kim's foreign source income and allowed foreign tax credit for the tax years 2010, 2011, and 2012 - is $19,235.

5.   Practice of Account Rollover by Korean Banks

Certain Korean banks traditionally offer short-term deposit accounts in which higher interests are paid compared to the regular savings account. The terms depend on the specific banks, but usually range 6 months to 1 year. At the time of maturity, customers have the option of cashing out or extending the term for a new period. Often times, the contracts for these deposits include a standard provision of automatic renewal unless the account owners explicitly request to cash out the balance.  Due to the assignment of new bank account numbers to the renewed accounts, they appear to be separate accounts on the surface, but the source of the funds is generated from an identical source.

As stated in Introduction and Qualifications, I have been exposed to numerous Korean banks and accounts owned by U.S. and Korean taxpayers in the past. My understanding on the matter has been obtained through my dealings with and review of the actual bank statements that I have worked on for my clients, as well as the clients and the banks themselves.

**V.    Summary**

As noted in Summary of Opinions, the inclusion of foreign source income and foreign tax credits on Laura Kim's U.S. tax returns would increase Laura Kim's 2010 U.S. income tax by $10,118, decrease her 2011 tax by $30,308, and increase her 2012 income tax by $39,425.

The net aggregate tax due attributable to Laura Kim's foreign source income and allowed foreign tax credit for the tax years 2010, 2011, and 2012 is $19,235.

Certain short-term deposit bank accounts offered by Korean banks often get rolled over to accounts with new account numbers creating multiple account numbers on the surface while the funds within those accounts are in effect identical.

Opinion

August 26, 2022

EXHIBIT I-A

## 2010 Income Tax Return - Laura Kim
## without Foreign Income / Foreign Tax Credit

| | | |
|---|---|---:|
| Wages, Salaries and Tips, etc. | (U.S.) | 55,000 |
| Wages, Salaries and Tips, etc. | (Foreign) | - |
| | | |
| Taxable Interest | (U.S.) | 32 |
| Taxable Interest | (Foreign) | - |
| | | |
| Qualified Dividends | (U.S.) | 148,383 |
| Qualified Dividends | (Foreign) | - |
| | | |
| Sch E    S Corps | (U.S.) | (32,909) |
| Sch E    Rent Received | (Foreign) | - |
| | | |
| Total Income | | 170,506 |
| | | |
| Itemized Deductions | (U.S) | 13,993 |
| Exemptions | (U.S) | 3,650 |
| | | |
| Taxable Income | | 152,863 |
| | | |
| Tax | | 36,511 |
| | | |
| Foreign Tax Credit | (Foreign) | - |
| | | |
| Total Tax Balance | | 36,511 |

EXHIBIT I-B

## 2010 Income Tax Return - Laura Kim

| | | |
|---|---|---:|
| Wages, Salaries and Tips, etc. | (U.S.) | 55,000 |
| Wages, Salaries and Tips, etc. | (Foreign) | 699,490 |
| | | |
| Taxable Interest | (U.S.) | 32 |
| Taxable Interest | (Foreign) | 267,721 |
| | | |
| Qualified Dividends | (U.S.) | 148,383 |
| Qualified Dividends | (Foreign) | 1,282 |
| | | |
| Sch E    S Corps | (U.S.) | (32,909) |
| Sch E    Rent Received | (Foreign) | 9,690 |
| | | |
| Total Income | | 1,148,689 |
| | | |
| Itemized Deductions | (U.S) | 13,993 |
| Exemptions | (U.S) | 3,650 |
| | | |
| Taxable Income | | 1,131,046 |
| | | |
| | | |
| Tax | | 343,834 |
| | | |
| Foreign Tax Credit | (Foreign) | 297,205 |
| | | |
| Total Tax Balance | | 46,629 |

# Form 1040

**U.S. Individual Income Tax Return** **2010**

Department of the Treasury   Internal Revenue Service   (99)

OMB No. 1545-0074

IRS Use Only—Do not write or staple in this space.

For the year Jan. 1 Dec. 31, 2010, or other tax year beginning _____ , 2010, ending _____ , 20 ___

| Name, Address, and SSN | | |
|---|---|---|
| Your first name and initial: **LAURA H.** | Last name: **KIM** | Your social security number: ████ 8486 |
| If a joint return, spouse's first name and initial | Last name | Spouse's social security number |
| Home address (number and street). If you have a P O box, see instructions. | Apt. no | ▲ Make sure the SSN(s) above and on line 6c are correct. |
| City, town or post office, state, and ZIP code. If you have a foreign address, see instructions.  **LOS ANGELES** **CA** ████ | | Checking a box below will not change your tax or refund. |

See separate instructions.

**Presidential Election Campaign** ▶ Check here if you, or your spouse if filing jointly, want $3 to go to this fund ▶     You ☐  Spouse ☐

**Filing Status**

Check only one box.

1. ☒ Single
2. ☐ Married filing jointly (even if only one had income)
3. ☐ Married filing separately. Enter spouse's SSN above and full name here. ▶
4. ☐ Head of household (with qualifying person). (See instructions.) If the qualifying person is a child but not your dependent, enter this child's name here. ▶
5. ☐ Qualifying widow(er) with dependent child

**Exemptions**

6a ☒ Yourself. If someone can claim you as a dependent, **do not** check box 6a
b ☐ Spouse

Boxes checked on 6a and 6b: **1**

c Dependents:

| (1) First name  Last name | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✓ if qual. child for child tax cr. (see page 15) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

No. of children on 6c who:
- lived with you ___
- did not live with you due to divorce or separation (see instructions) ___

Dependents on 6c not entered above ___

If more than four dependents, see instructions and check here ▶ ☐

d Total number of exemptions claimed

Add numbers on lines above ▶ **1**

**Income**

Attach Form(s) W-2 here. Also attach Forms W-2G and 1099-R if tax was withheld.

If you did not get a W 2, see page 20.

Enclose, but do not attach, any payment. Also, please use Form 1040-V.

| | | | |
|---|---|---|---|
| 7 | Wages, salaries, tips, etc. Attach Form(s) W 2 | 7 | 55,000 |
| 8a | Taxable interest. Attach Schedule B if required | 8a | 32 |
| b | Tax-exempt interest. Do not include on line 8a | 8b | |
| 9a | Ordinary dividends. Attach Schedule B if required | 9a | 148,383 |
| b | Qualified dividends | 9b | 148,383 |
| 10 | Taxable refunds, credits, or offsets of state and local income taxes | 10 | |
| 11 | Alimony received | 11 | |
| 12 | Business income or (loss). Attach Schedule C or C EZ | 12 | |
| 13 | Capital gain or (loss) Attach Schedule D if required. If not required, check here ▶ ☐ | 13 | |
| 14 | Other gains or (losses). Attach Form 4797 | 14 | |
| 15a | IRA distributions   15a ___   b Taxable amount | 15b | |
| 16a | Pensions and annuities   16a ___   b Taxable amount | 16b | |
| 17 | Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E | 17 | −32,909 |
| 18 | Farm income or (loss) Attach Schedule F | 18 | |
| 19 | Unemployment compensation | 19 | |
| 20a | Social security benefits   20a ___   b Taxable amount | 20b | |
| 21 | Other income List type and amount | 21 | |
| 22 | Combine the amounts in the far right column for lines 7 through 21. This is your **total income** ▶ | 22 | 170,506 |

**Adjusted Gross Income**

| | | | |
|---|---|---|---|
| 23 | Educator expenses | 23 | |
| 24 | Certain business expenses of reservists, performing artists, and fee basis government officials. Attach Form 2106 or 2106-EZ | 24 | |
| 25 | Health savings account deduction. Attach Form 8889 | 25 | |
| 26 | Moving expenses. Attach Form 3903 | 26 | |
| 27 | One half of self employment tax. Attach Schedule SE | 27 | |
| 28 | Self employed SEP, SIMPLE, and qualified plans | 28 | |
| 29 | Self employed health insurance deduction | 29 | |
| 30 | Penalty on early withdrawal of savings | 30 | |
| 31a | Alimony paid   b Recipient's SSN ▶ | 31a | |
| 32 | IRA deduction | 32 | |
| 33 | Student loan interest deduction | 33 | |
| 34 | Tuition and fees. Attach Form 8917 | 34 | |
| 35 | Domestic production activities deduction. Attach Form 8903 | 35 | |
| 36 | Add lines 23 through 31a and 32 through 35 | 36 | |
| 37 | Subtract line 36 from line 22. This is your **adjusted gross income** ▶ | 37 | 170,506 |

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see separate instructions.

DAA

Form **1040** (2010)

| Tax and Credits | 38 | Amount from line 37 (adjusted gross income) | | | 38 | 170,506 |
|---|---|---|---|---|---|---|
| | 39a | Check if: [X] You were born before January 2, 1946, ☐ Blind. ☐ Spouse was born before January 2, 1946, ☐ Blind. Total boxes checked ▶ 39a | | 1 | | |
| | b | If your spouse itemizes on a separate return or you were a dual-status alien, check here ▶ 39b | | | | |
| | 40 | Itemized deductions (from Schedule A) or your standard deduction (see instructions) | | | 40 | 13,993 |
| | 41 | Subtract line 40 from line 38 | | | 41 | 156,513 |
| | 42 | Exemptions. Multiply $3,650 by the number on line 6d | | | 42 | 3,650 |
| | 43 | Taxable income. Subtract line 42 from line 41. If line 42 is more than line 41, enter -0- | | | 43 | 152,863 |
| | 44 | Tax (see instr.). Check if any tax is from: a ☐ Form(s) 8814 b ☐ Form 4972 | | | 44 | 36,511 |
| | 45 | Alternative minimum tax (see instructions). Attach Form 6251 | | | 45 | |
| | 46 | Add lines 44 and 45 ▶ | | | 46 | 36,511 |
| | 47 | Foreign tax credit. Attach Form 1116 if required | 47 | | | |
| | 48 | Credit for child and dependent care expenses. Attach Form 2441 | 48 | | | |
| | 49 | Education credits from Form 8863, line 23 | 49 | | | |
| | 50 | Retirement savings contributions credit. Attach Form 8880 | 50 | | | |
| | 51 | Child tax credit (see instructions) | 51 | | | |
| | 52 | Residential energy credits. Attach Form 5695 | 52 | | | |
| | 53 | Other credits from Form: a ☐ 3800 b ☐ 8801 c ☐ | 53 | | | |
| | 54 | Add lines 47 through 53. These are your total credits | | | 54 | |
| | 55 | Subtract line 54 from line 46. If line 54 is more than line 46, enter -0- ▶ | | | 55 | 36,511 |
| Other Taxes | 56 | Self employment tax. Attach Schedule SE | | | 56 | |
| | 57 | Unreported social security and Medicare tax from Form: a ☐ 4137 b ☐ 8919 | | | 57 | |
| | 58 | Additional tax on IRAs, other qualified retirement plans, etc. Attach Form 5329 if required | | | 58 | |
| | 59 | a ☐ Form(s) W-2, box 9 b ☐ Schedule H c ☐ Form 5405, line 16 | | | 59 | |
| | 60 | Add lines 55 through 59. This is your total tax ▶ | | | 60 | 36,511 |
| Payments | 61 | Federal income tax withheld from Forms W-2 and 1099 | 61 | | | |
| | 62 | 2010 estimated tax payments and amount applied from 2009 return | 62 | | | |
| | 63 | Making work pay credit. Attach Schedule M | 63 | | | |
| If you have a qualifying child, attach Schedule EIC. | 64a | Earned income credit (EIC) | 64a | | | |
| | b | Nontaxable combat pay election 64b | | | | |
| | 65 | Additional child tax credit. Attach Form 8812 | 65 | | | |
| | 66 | American opportunity credit from Form 8863, line 14 | 66 | | | |
| | 67 | First-time homebuyer credit from Form 5405, line 10 | 67 | | | |
| | 68 | Amount paid with request for extension to file | 68 | | | |
| | 69 | Excess social security and tier 1 RRTA tax withheld | 69 | | | |
| | 70 | Credit for federal tax on fuels. Attach Form 4136 | 70 | | | |
| | 71 | Credits from Form: a ☐ 2439 b ☐ 8839 c ☐ 8801 d ☐ 8885 | 71 | | | |
| | 72 | Add lines 61, 62, 63, 64a, and 65 through 71. These are your total payments ▶ | | | 72 | |
| Refund | 73 | If line 72 is more than line 60, subtract line 60 from line 72. This is the amount you overpaid | | | 73 | |
| | 74a | Amount of line 73 you want refunded to you. If Form 8888 is attached, check here ▶ ☐ | | | 74a | |
| Direct deposit? See instructions. | ▶ b | Routing number | ▶ c Type: ☐ Checking ☐ Savings | | | |
| | ▶ d | Account number | | | | |
| | 75 | Amount of line 73 you want applied to your 2011 estimated tax ▶ | 75 | | | |
| Amount You Owe | 76 | Amount you owe. Subtract line 72 from line 60. For details on how to pay, see instructions ▶ | | | 76 | 36,511 |
| | 77 | Estimated tax penalty (see instructions) | 77 | | | |

| Third Party Designee | Do you want to allow another person to discuss this return with the IRS (see instructions)? ☐ Yes. Complete below. [X] No | | |
|---|---|---|---|
| | Designee's name ▶ | Phone no. ▶ | Personal identification number (PIN) ▶ |

**Sign Here**
Joint return?
See page 12.
Keep a copy for your records.

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

| Your signature | Date | Your occupation | Daytime phone number |
|---|---|---|---|
| Spouse's signature. If a joint return, both must sign. | Date | Spouse's occupation | |

| Paid Preparer Use Only | Print/Type preparer's name HENRY S. CHI | Preparer's signature | Date | Check [X] if self-employed | PTIN 1805 |
|---|---|---|---|---|---|
| | Firm's name ▶ Henry S. Chi, CPA | | | Firm's EIN ▶ ■■■ 9209 | |
| | Firm's address ▶ 3731 Wilshire Blvd Ste 777 Los Angeles CA 90010-2811 | | | Phone no. 213-381-3239 | |

Form **1040** (2010)

DAA

| Form **1040** | Department of the Treasury—Internal Revenue Service **U.S. Individual Income Tax Return** **2010** | (99) | IRS Use Only | OMB No. 1545-0074 |

For the year Jan. 1–Dec. 31, 2010, or other tax year beginning _____, 2010, ending _____, 20___

**Name, Address, and SSN**

See separate instructions.

P R I N T C L E A R L Y

Your first name and initial: **LAURA H.**  Last name: **KIM**

Your social security number: ████ **8486**

If a joint return, spouse's first name and initial _____ Last name _____

Spouse's social security number: _____

Home address (number and street). If you have a P.O. box, see instructions. _____ Apt. no. _____

City, town or post office, state, and ZIP code. If you have a foreign address, see instructions. **LOS ANGELES CA** ████

Make sure the SSN(s) above ▲ and on line 6c are correct.

**Presidential Election Campaign** ► Check here if you, or your spouse if filing jointly, want $3 to go to this fund ►

Checking a box below will not change your tax or refund.   You ☐  Spouse ☐

**Filing Status**

Check only one box.

1 ☒ Single
2 ☐ Married filing jointly (even if only one had income)
3 ☐ Married filing separately. Enter spouse's SSN above and full name here ►
4 ☐ Head of household (with qualifying person). (See instructions.) If the qualifying person is a child but not your dependent, enter this child's name here ►
5 ☐ Qualifying widow(er) with dependent child

**Exemptions**

6a ☒ Yourself. If someone can claim you as a dependent, do not check box 6a
b ☐ Spouse

Boxes checked on 6a and 6b: **1**

c Dependents:

| (1) First name   Last name | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✓ if qual. child for child tax cr. (see page 15) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

No. of children on 6c who:
• lived with you
• did not live with you due to divorce or separation (see instructions)

Dependents on 6c not entered above

If more than four dependents, see instructions and check here ►

d Total number of exemptions claimed

Add numbers on lines above ► **1**

**Income**

Attach Form(s) W-2 here. Also attach Forms W-2G and 1099-R if tax was withheld.

If you did not get a W-2, see page 20.

Enclose, but do not attach, any payment. Also, please use Form 1040-V.

| | | | | |
|---|---|---|---|---|
| 7 | Wages, salaries, tips, etc. Attach Form(s) W-2 | | 7 | 754,490 |
| 8a | Taxable interest. Attach Schedule B if required | | 8a | 267,753 |
| b | Tax-exempt interest. Do not include on line 8a | 8b | | |
| 9a | Ordinary dividends. Attach Schedule B if required | | 9a | 149,665 |
| b | Qualified dividends | 9b | 149,665 | |
| 10 | Taxable refunds, credits, or offsets of state and local income taxes | | 10 | |
| 11 | Alimony received | | 11 | |
| 12 | Business income or (loss). Attach Schedule C or C-EZ | | 12 | |
| 13 | Capital gain or (loss). Attach Schedule D if required. If not required, check here ► ☐ | | 13 | |
| 14 | Other gains or (losses). Attach Form 4797 | | 14 | |
| 15a | IRA distributions | 15a | b Taxable amount | 15b |
| 16a | Pensions and annuities | 16a | b Taxable amount | 16b |
| 17 | Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E | | 17 | −23,219 |
| 18 | Farm income or (loss). Attach Schedule F | | 18 | |
| 19 | Unemployment compensation | | 19 | |
| 20a | Social security benefits | 20a | b Taxable amount | 20b |
| 21 | Other income. List type and amount | | 21 | |
| 22 | Combine the amounts in the far right column for lines 7 through 21. This is your **total income** ► | | 22 | 1,148,689 |

**Adjusted Gross Income**

| | | | | |
|---|---|---|---|---|
| 23 | Educator expenses | 23 | | |
| 24 | Certain business expenses of reservists, performing artists, and fee-basis government officials. Attach Form 2106 or 2106-EZ | 24 | | |
| 25 | Health savings account deduction. Attach Form 8889 | 25 | | |
| 26 | Moving expenses. Attach Form 3903 | 26 | | |
| 27 | One-half of self-employment tax. Attach Schedule SE | 27 | | |
| 28 | Self-employed SEP, SIMPLE, and qualified plans | 28 | | |
| 29 | Self-employed health insurance deduction | 29 | | |
| 30 | Penalty on early withdrawal of savings | 30 | | |
| 31a | Alimony paid   b Recipient's SSN ► | 31a | | |
| 32 | IRA deduction | 32 | | |
| 33 | Student loan interest deduction | 33 | | |
| 34 | Tuition and fees. Attach Form 8917 | 34 | | |
| 35 | Domestic production activities deduction. Attach Form 8903 | 35 | | |
| 36 | Add lines 23 through 31a and 32 through 35 | | 36 | |
| 37 | Subtract line 36 from line 22. This is your **adjusted gross income** ► | | 37 | 1,148,689 |

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see separate instructions.
DAA

Form **1040** (2010)

| Tax and Credits | 38 | Amount from line 37 (adjusted gross income) | | | | | 38 | 1,148,689 |
|---|---|---|---|---|---|---|---|---|
| | 39a | Check if: ☒ You were born before January 2, 1946, ☐ Blind. ☐ Spouse was born before January 2, 1946, ☐ Blind. Total boxes checked ▶ 39a | | | | 1 | | |
| | b | If your spouse itemizes on a separate return or you were a dual-status alien, check here ▶ 39b | | | | | | |
| | 40 | Itemized deductions (from Schedule A) or your standard deduction (see instructions) | | | | | 40 | 13,993 |
| | 41 | Subtract line 40 from line 38 | | | | | 41 | 1,134,696 |
| | 42 | Exemptions. Multiply $3,650 by the number on line 6d | | | | | 42 | 3,650 |
| | 43 | Taxable income. Subtract line 42 from line 41. If line 42 is more than line 41, enter -0- | | | | | 43 | 1,131,046 |
| | 44 | Tax (see instr.). Check if any tax is from: a ☐ Form(s) 8814 b ☐ Form 4972 | | | | | 44 | 343,834 |
| | 45 | Alternative minimum tax (see instructions). Attach Form 6251 | | | | | 45 | |
| | 46 | Add lines 44 and 45 ▶ | | | | | 46 | 343,834 |
| | 47 | Foreign tax credit. Attach Form 1116 if required | | 47 | 297,205 | | | |
| | 48 | Credit for child and dependent care expenses. Attach Form 2441 | | 48 | | | | |
| | 49 | Education credits from Form 8863, line 23 | | 49 | | | | |
| | 50 | Retirement savings contributions credit. Attach Form 8880 | | 50 | | | | |
| | 51 | Child tax credit (see instructions) | | 51 | | | | |
| | 52 | Residential energy credits. Attach Form 5695 | | 52 | | | | |
| | 53 | Other credits from Form: a ☐ 3800 b ☐ 8801 c ☐ | | 53 | | | | |
| | 54 | Add lines 47 through 53. These are your total credits | | | | | 54 | 297,205 |
| | 55 | Subtract line 54 from line 46. If line 54 is more than line 46, enter -0- ▶ | | | | | 55 | 46,629 |
| Other Taxes | 56 | Self employment tax. Attach Schedule SE | | | | | 56 | |
| | 57 | Unreported social security and Medicare tax from Form: a ☐ 4137 b ☐ 8919 | | | | | 57 | |
| | 58 | Additional tax on IRAs, other qualified retirement plans, etc. Attach Form 5329 if required | | | | | 58 | |
| | 59 | a ☐ Form(s) W-2, box 9 b ☐ Schedule H c ☐ Form 5405, line 16 | | | | | 59 | |
| | 60 | Add lines 55 through 59. This is your total tax ▶ | | | | | 60 | 46,629 |
| Payments | 61 | Federal income tax withheld from Forms W-2 and 1099 | | 61 | | | | |
| | 62 | 2010 estimated tax payments and amount applied from 2009 return | | 62 | | | | |
| | 63 | Making work pay credit. Attach Schedule M | | 63 | | | | |
| If you have a qualifying child, attach Schedule EIC. | 64a | Earned income credit (EIC) | | 64a | | | | |
| | b | Nontaxable combat pay election 64b | | | | | | |
| | 65 | Additional child tax credit. Attach Form 8812 | | 65 | | | | |
| | 66 | American opportunity credit from Form 8863, line 14 | | 66 | | | | |
| | 67 | First-time homebuyer credit from Form 5405, line 10 | | 67 | | | | |
| | 68 | Amount paid with request for extension to file | | 68 | | | | |
| | 69 | Excess social security and tier 1 RRTA tax withheld | | 69 | | | | |
| | 70 | Credit for federal tax on fuels. Attach Form 4136 | | 70 | | | | |
| | 71 | Credits from Form: a ☐ 2439 b ☐ 8839 c ☐ 8801 d ☐ 8885 | | 71 | | | | |
| | 72 | Add lines 61, 62, 63, 64a, and 65 through 71. These are your total payments ▶ | | | | | 72 | |
| Refund | 73 | If line 72 is more than line 60, subtract line 60 from line 72. This is the amount you overpaid | | | | | 73 | |
| | 74a | Amount of line 73 you want refunded to you. If Form 8888 is attached, check here ▶ | | | | | 74a | |
| Direct deposit? See instructions. | b | Routing number ▶ c Type: ☐ Checking ☐ Savings | | | | | | |
| | d | Account number ▶ | | | | | | |
| | 75 | Amount of line 73 you want applied to your 2011 estimated tax ▶ | | 75 | | | | |
| Amount You Owe | 76 | Amount you owe. Subtract line 72 from line 60. For details on how to pay, see instructions ▶ | | | | | 76 | 46,629 |
| | 77 | Estimated tax penalty (see instructions) | | 77 | | | | |

**Third Party Designee**
Do you want to allow another person to discuss this return with the IRS (see instructions)? ☐ Yes. Complete below. ☒ No

| Designee's name ▶ | Phone no. ▶ | Personal identification number (PIN) ▶ |
|---|---|---|

**Sign Here**
Joint return? See page 12. Keep a copy for your records.

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

| Your signature | Date | Your occupation | Daytime phone number |
|---|---|---|---|
| Spouse's signature. If a joint return, both must sign. | Date | Spouse's occupation | |

**Paid Preparer Use Only**

| Print/Type preparer's name | Preparer's signature | Date | Check ☒ if self-employed | PTIN |
|---|---|---|---|---|
| HENRY S. CHI | | | | 1805 |
| Firm's name ▶ Henry S. Chi, CPA | | Firm's EIN ▶ ███ | | 9209 |
| Firm's address ▶ 3731 Wilshire Blvd Ste 777 | Los Angeles CA 90010-2811 | Phone no. 213-381-3239 | | |

Form **1040** (2010)

DAA

EXHIBIT II-A

**2011 Income Tax Return - Laura Kim**
**without Foreign Income / Foreign Tax Credit**

| | | |
|---|---|---:|
| Wages, Salaries and Tips, etc. | (U.S.) | 55,000 |
| Wages, Salaries and Tips, etc. | (Foreign) | - |
| | | |
| Taxable Interest | (U.S.) | 5 |
| Taxable Interest | (Foreign) | |
| | | |
| Qualified Dividends | (U.S.) | 271,605 |
| Qualified Dividends | (Foreign) | - |
| | | |
| Taxable Refunds | (U.S.) | 3,060 |
| | | |
| Sch E    S Corps | (U.S.) | 4,431 |
| Sch E    Rent Received | (Foreign) | - |
| | | |
| Total Income | | 334,101 |
| | | |
| Itemized Deductions | (U.S) | 14,265 |
| Exemptions | (U.S) | 3,700 |
| | | |
| Taxable Income | | 316,136 |
| | | |
| | | |
| Tax | | 89,222 |
| | | |
| Foreign Tax Credit | (Foreign) | - |
| Credit for Elderly | (U.S.) | 750 |
| | | |
| Total Tax Balance | | 88,472 |

**EXHIBIT II-B**

### 2011 Income Tax Return - Laura Kim

| | | |
|---|---|---:|
| Wages, Salaries and Tips, etc. | (U.S.) | 55,000 |
| Wages, Salaries and Tips, etc. | (Foreign) | 172,078 |
| | | |
| Taxable Interest | (U.S.) | 5 |
| Taxable Interest | (Foreign) | 72,928 |
| | | |
| Qualified Dividends | (U.S.) | 271,605 |
| Qualified Dividends | (Foreign) | 15,260 |
| | | |
| Taxable Refunds | (U.S.) | 3,060 |
| | | |
| Sch E -  S Corps | (U.S.) | 4,431 |
| Sch E -  Rent Received | (Foreign) | 20,764 |
| | | |
| Total Income | | 615,131 |
| | | |
| Itemized Deductions | (U.S) | 14,265 |
| Exemptions | (U.S) | 3,700 |
| | | |
| Taxable Income | | 597,166 |
| | | |
| Tax | | 133,340 |
| | | |
| Foreign Tax Credit | (Foreign) | 74,426 |
| Credit for Elderly | (U.S.) | 750 |
| | | |
| Total Tax Balance | | 58,164 |

PREPARED FOR EXPERT OPINION EXHIBIT DC

Form **1040** Department of the Treasury Internal Revenue Service (99)

**U.S. Individual Income Tax Return** **2011** OMB No. 1545-0074

For the year Jan. 1–Dec. 31, 2011, or other tax year beginning _____, 2011, ending _____, 20___ | See separate instructions.

| Your first name and initial | Last name | | Your social security number |
|---|---|---|---|
| LAURA H. | KIM | | 8486 |
| If a joint return, spouse's first name and initial | Last name | | Spouse's social security number |

Home address (number and street). If you have a P.O. box, see instructions. | Apt. no. | ▲ Make sure the SSN(s) above and on line 6c are correct.

City, town or post office, state, and ZIP code. If you have a foreign address, also complete spaces below (see instructions).
LOS ANGELES CA

Foreign country name | Foreign province/county | Foreign postal code

**Presidential Election Campaign**
Check here if you, or your spouse if filing jointly, want $3 to go to this fund. Checking a box below will not change your tax or refund.
You ☐ Spouse ☐

**Filing Status**
Check only one box.

1 ☒ Single
2 ☐ Married filing jointly (even if only one had income)
3 ☐ Married filing separately. Enter spouse's SSN above and full name here ►
4 ☐ Head of household (with qualifying person). (See instructions.) If the qualifying person is a child but not your dependent, enter this child's name here ►
5 ☐ Qualifying widow(er) with dependent child

**Exemptions**

| | | | | | | | Boxes checked on 6a and 6b | 1 |
|---|---|---|---|---|---|---|---|---|
| 6a | ☒ Yourself. If someone can claim you as a dependent, do not check box 6a | | | | | | | |
| b | ☐ Spouse | | | | | | No. of children on 6c who: | |
| c | Dependents: | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✓ if child under age 17 qualifying for child tax credit (see instr.) | | | • lived with you | |

| (1) First name | Last name | | | | | • did not live with you due to divorce or separation (see instructions) | |
|---|---|---|---|---|---|---|---|

If more than four dependents, see instructions and check here ► ☐

Dependents on 6c not entered above

| d | Total number of exemptions claimed | | Add numbers on lines above ► | 1 |
|---|---|---|---|---|

**Income**

Attach Form(s) W-2 here. Also attach Forms W-2G and 1099-R if tax was withheld.

If you did not get a W-2, see instructions.

Enclose, but do not attach, any payment. Also, please use Form 1040-V.

| 7 | Wages, salaries, tips, etc. Attach Form(s) W-2 | | 7 | 55,000 |
|---|---|---|---|---|
| 8a | Taxable interest. Attach Schedule B if required | | 8a | 5 |
| b | Tax-exempt interest. Do not include on line 8a | 8b | | |
| 9a | Ordinary dividends. Attach Schedule B if required | | 9a | 271,605 |
| b | Qualified dividends | 9b | 271,605 | |
| 10 | Taxable refunds, credits, or offsets of state and local income taxes | | 10 | 3,060 |
| 11 | Alimony received | | 11 | |
| 12 | Business income or (loss). Attach Schedule C or C-EZ | | 12 | |
| 13 | Capital gain or (loss). Attach Schedule D if required. If not required, check here ► ☐ | | 13 | |
| 14 | Other gains or (losses). Attach Form 4797 | | 14 | |
| 15a | IRA distributions | 15a | | b Taxable amount | 15b | |
| 16a | Pensions and annuities | 16a | | b Taxable amount | 16b | |
| 17 | Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E | | 17 | 4,431 |
| 18 | Farm income or (loss). Attach Schedule F | | 18 | |
| 19 | Unemployment compensation | | 19 | |
| 20a | Social security benefits | 20a | | b Taxable amount | 20b | |
| 21 | Other income. List type and amount | | 21 | |
| 22 | Combine the amounts in the far right column for lines 7 through 21. This is your **total income** ► | | 22 | 334,101 |

**Adjusted Gross Income**

| 23 | Educator expenses | 23 | | | |
|---|---|---|---|---|---|
| 24 | Certain business expenses of reservists, performing artists, and fee-basis government officials. Attach Form 2106 or 2106-EZ | 24 | | | |
| 25 | Health savings account deduction. Attach Form 8889 | 25 | | | |
| 26 | Moving expenses. Attach Form 3903 | 26 | | | |
| 27 | Deductible part of self-employment tax. Attach Schedule SE | 27 | | | |
| 28 | Self-employed SEP, SIMPLE, and qualified plans | 28 | | | |
| 29 | Self-employed health insurance deduction | 29 | | | |
| 30 | Penalty on early withdrawal of savings | 30 | | | |
| 31a | Alimony paid b Recipient's SSN ► | 31a | | | |
| 32 | IRA deduction | 32 | | | |
| 33 | Student loan interest deduction | 33 | | | |
| 34 | Tuition and fees. Attach Form 8917 | 34 | | | |
| 35 | Domestic production activities deduction. Attach Form 8903 | 35 | | | |
| 36 | Add lines 23 through 35 | | 36 | | |
| 37 | Subtract line 36 from line 22. This is your **adjusted gross income** ► | | 37 | 334,101 |

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see separate instructions.
DAA
Form **1040** (2011)

| Tax and Credits | 38 | Amount from line 37 (adjusted gross income) | | | | 38 | 334,101 |
|---|---|---|---|---|---|---|---|
| | 39a | Check if: ☒ You were born before January 2, 1947, ☐ Blind. ☐ Spouse was born before January 2, 1947, ☐ Blind. Total boxes checked ▶ | | 39a | 1 | | |
| | b | If your spouse itemizes on a separate return or you were a dual-status alien, check here ▶ 39b | | | | | |
| Standard Deduction for— | 40 | Itemized deductions (from Schedule A) or your standard deduction (see left margin) | | | | 40 | 14,265 |
| • People who check any box on line 39a or 39b or who can be claimed as a dependent, see instructions. | 41 | Subtract line 40 from line 38 | | | | 41 | 319,836 |
| | 42 | Exemptions. Multiply $3,700 by the number on line 6d | | | | 42 | 3,700 |
| | 43 | Taxable income. Subtract line 42 from line 41. If line 42 is more than line 41, enter -0- | | | | 43 | 316,136 |
| | 44 | Tax (see instr.). Check if any from: a ☐ Form(s) 8814 b ☐ Form 4972 c ☐ 962 elec. | | | | 44 | 89,222 |
| • All others | 45 | Alternative minimum tax (see instructions). Attach Form 6251 | | | | 45 | |
| Single or Married filing separately, $5,800 | 46 | Add lines 44 and 45 | | | ▶ | 46 | 89,222 |
| | 47 | Foreign tax credit. Attach Form 1116 if required | 47 | | | | |
| Married filing jointly or Qualifying widow(er), $11,600 | 48 | Credit for child and dependent care expenses. Attach Form 2441 | 48 | | | | |
| | 49 | Education credits from Form 8863, line 23 | 49 | | | | |
| | 50 | Retirement savings contributions credit. Attach Form 8880 | 50 | | | | |
| Head of household, $8,500 | 51 | Child tax credit (see instructions) | 51 | | | | |
| | 52 | Residential energy credits Attach Form 5695 | 52 | | | | |
| | 53 | Other credits from Form: a ☐ 3800 b ☐ 8801 c ☒ Sch R | 53 | 750 | | | |
| | 54 | Add lines 47 through 53. These are your total credits | | | | 54 | 750 |
| | 55 | Subtract line 54 from line 46. If line 54 is more than line 46, enter -0- | | | ▶ | 55 | 88,472 |
| Other Taxes | 56 | Self-employment tax. Attach Schedule SE | | | | 56 | |
| | 57 | Unreported social security and Medicare tax from Form: a ☐ 4137 b ☐ 8919 | | | | 57 | |
| | 58 | Additional tax on IRAs, other qualified retirement plans, etc. Attach Form 5329 if required | | | | 58 | |
| | 59a | Household employment taxes from Schedule H | | | | 59a | |
| | b | First-time homebuyer credit repayment. Attach Form 5405 if required | | | | 59b | |
| | 60 | Other taxes. Enter code(s) from instructions | | | | 60 | |
| | 61 | Add lines 55 through 60. This is your total tax | | | ▶ | 61 | 88,472 |
| Payments | 62 | Federal income tax withheld from Forms W-2 and 1099 | 62 | | | | |
| | 63 | 2011 estimated tax payments and amount applied from 2010 return | 63 | | | | |
| If you have a qualifying child, attach Schedule EIC. | 64a | Earned income credit (EIC) | 64a | | | | |
| | b | Nontaxable combat pay election 64b | | | | | |
| | 65 | Additional child tax credit. Attach Form 8812 | 65 | | | | |
| | 66 | American opportunity credit from Form 8863, line 14 | 66 | | | | |
| | 67 | First-time homebuyer credit from Form 5405, line 10 | 67 | | | | |
| | 68 | Amount paid with request for extension to file | 68 | | | | |
| | 69 | Excess social security and tier 1 RRTA tax withheld | 69 | | | | |
| | 70 | Credit for federal tax on fuels. Attach Form 4136 | 70 | | | | |
| | 71 | Credits from Form: a ☐ 2439 b ☐ 8839 c ☐ 8801 d ☐ 8885 | 71 | | | | |
| | 72 | Add lines 62, 63, 64a, and 65 through 71. These are your total payments | | | ▶ | 72 | |
| Refund | 73 | If line 72 is more than line 61, subtract line 61 from line 72. This is the amount you overpaid | | | | 73 | |
| | 74a | Amount of line 73 you want refunded to you. If Form 8888 is attached, check here ▶ | | | | 74a | |
| Direct deposit? See instructions | ▶ b | Routing number | ▶ c Type: ☐ Checking ☐ Savings | | | | |
| | ▶ d | Account number | | | | | |
| | 75 | Amount of line 73 you want applied to your 2012 estimated tax ▶ 75 | | | | | |
| Amount You Owe | 76 | Amount you owe. Subtract line 72 from line 61. For details on how to pay, see instructions ▶ | | | | 76 | 88,472 |
| | 77 | Estimated tax penalty (see instructions) | 77 | | | | |

| Third Party Designee | Do you want to allow another person to discuss this return with the IRS (see instructions)? ☐ Yes. Complete below. ☐ No | | |
|---|---|---|---|
| | Designee's name ▶ | Phone no. ▶ | Personal identification number (PIN) ▶ |

**Sign Here**
Joint return? See instr
Keep a copy for your records.

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge

| Your signature | Date | Your occupation | Daytime phone number |
|---|---|---|---|
| Spouse's signature. If a joint return, both must sign | Date | Spouse's occupation | If the IRS sent you an Identity Protection PIN, enter it here (see instr.) |

| Paid Preparer Use Only | Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|---|
| | Firm's name ▶ Henry S. Chi, CPA | | | Firm's EIN ▶ ████9209 | |
| | Firm's address ▶ 3731 Wilshire Blvd Ste 777 Los Angeles CA 90010-2811 | | | Phone no. 213-381-3239 | |

Form **1040** (2011)

DAA

PREPARED FOR EXPERT OPINION

EXHIBIT II-D

LAURAKIM

Form **1040** Department of the Treasury—Internal Revenue Service (99)

**U.S. Individual Income Tax Return** 2011 OMB No. 1545-0074 IRS Us

For the year Jan. 1–Dec. 31, 2011, or other tax year beginning , 2011, ending , 20

See separate instructions.

| Your first name and initial | Last name | Your social security number |
|---|---|---|
| LAURA H. | KIM | 8486 |

| If a joint return, spouse's first name and initial | Last name | Spouse's social security number |
|---|---|---|

Home address (number and street). If you have a P.O. box, see instructions | Apt. no. | ▲ Make sure the SSN(s) above and on line 6c are correct

City, town or post office, state, and ZIP code. If you have a foreign address, also complete spaces below (see instructions)
LOS ANGELES     CA

Foreign country name | Foreign province/county | Foreign postal code

**Presidential Election Campaign**
Check here if you, or your spouse if filing jointly, want $3 to go to this fund. Checking a box below will not change your tax or refund
☐ You  ☐ Spouse

**Filing Status**

Check only one box.

1. ☒ Single
2. ☐ Married filing jointly (even if only one had income)
3. ☐ Married filing separately. Enter spouse's SSN above and full name here. ▶
4. ☐ Head of household (with qualifying person). (See instructions.) If the qualifying person is a child but not your dependent, enter this child's name here. ▶
5. ☐ Qualifying widow(er) with dependent child

**Exemptions**

6a ☒ Yourself. If someone can claim you as a dependent, **do not** check box 6a
b ☐ Spouse

| c Dependents: | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✓ if Child under age 17 qual. for child tax credit (see instr.) |
|---|---|---|---|
| (1) First name   Last name | | | |

If more than four dependents, see instructions and check here ▶ ☐

| Boxes checked on 6a and 6b | 1 |
| No. of children on 6c who: |
| • lived with you |
| • did not live with you due to divorce or separation (see instructions) |
| Dependents on 6c not entered above |
| Add numbers on lines above ▶ | 1 |

d Total number of exemptions claimed

**Income**

Attach Form(s) W-2 here. Also attach Forms W-2G and 1099-R if tax was withheld.

If you did not get a W-2, see instructions.

Enclose, but do not attach, any payment. Also, please use Form 1040-V.

| 7 | Wages, salaries, tips, etc. Attach Form(s) W-2 | 7 | 227,078 |
|---|---|---|---|
| 8a | Taxable interest. Attach Schedule B if required | 8a | 72,933 |
| b | Tax-exempt interest. Do **not** include on line 8a | 8b | |
| 9a | Ordinary dividends. Attach Schedule B if required | 9a | 286,865 |
| b | Qualified dividends | 9b | 286,865 |
| 10 | Taxable refunds, credits, or offsets of state and local income taxes | 10 | 3,060 |
| 11 | Alimony received | 11 | |
| 12 | Business income or (loss). Attach Schedule C or C-EZ | 12 | |
| 13 | Capital gain or (loss). Attach Schedule D if required. If not required, check here ▶ ☐ | 13 | |
| 14 | Other gains or (losses). Attach Form 4797 | 14 | |
| 15a | IRA distributions | 15a | | b Taxable amount | 15b | |
| 16a | Pensions and annuities | 16a | | b Taxable amount | 16b | |
| 17 | Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E | 17 | 25,195 |
| 18 | Farm income or (loss). Attach Schedule F | 18 | |
| 19 | Unemployment compensation | 19 | |
| 20a | Social security benefits | 20a | | b Taxable amount | 20b | |
| 21 | Other income. List type and amount | 21 | |
| 22 | Combine the amounts in the far right column for lines 7 through 21. This is your **total income** ▶ | 22 | 615,131 |

**Adjusted Gross Income**

| 23 | Educator expenses | 23 | |
|---|---|---|---|
| 24 | Certain business expenses of reservists, performing artists, and fee-basis government officials. Attach Form 2106 or 2106 EZ | 24 | |
| 25 | Health savings account deduction. Attach Form 8889 | 25 | |
| 26 | Moving expenses. Attach Form 3903 | 26 | |
| 27 | Deductible part of self-employment tax. Attach Schedule SE | 27 | |
| 28 | Self-employed SEP, SIMPLE, and qualified plans | 28 | |
| 29 | Self-employed health insurance deduction | 29 | |
| 30 | Penalty on early withdrawal of savings | 30 | |
| 31a | Alimony paid  b Recipient's SSN ▶ | 31a | |
| 32 | IRA deduction | 32 | |
| 33 | Student loan interest deduction | 33 | |
| 34 | Tuition and fees. Attach Form 8917 | 34 | |
| 35 | Domestic production activities deduction. Attach Form 8903 | 35 | |
| 36 | Add lines 23 through 35 | 36 | |
| 37 | Subtract line 36 from line 22. This is your **adjusted gross income** ▶ | 37 | 615,131 |

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see separate instructions.
DAA

Form **1040** (2011)

LAURA KIM
Form 1040 (2011)

8486 Page 2

| Tax and Credits | 38 | Amount from line 37 (adjusted gross income) | | | | 38 | 615,131 |
|---|---|---|---|---|---|---|---|
| | 39a | Check if: [X] You were born before January 2, 1947, [ ] Blind. [ ] Spouse was born before January 2, 1947, [ ] Blind. } Total boxes checked ▶ | | 39a | 1 | | |
| | b | If your spouse itemizes on a separate return or you were a dual-status alien, check here ▶ | | 39b | [ ] | | |
| Standard Deduction for— | 40 | Itemized deductions (from Schedule A) or your standard deduction (see left margin) | | | | 40 | 14,265 |
| | 41 | Subtract line 40 from line 38 | | | | 41 | 600,866 |
| • People who check any box on line 39a or 39b or who can be claimed as a dependent, see instructions. | 42 | Exemptions. Multiply $3,700 by the number on line 6d | | | | 42 | 3,700 |
| | 43 | Taxable income. Subtract line 42 from line 41. If line 42 is more than line 41, enter -0- | | | | 43 | 597,166 |
| | 44 | Tax (see instr.) Check if any from: a [ ] Form(s) 8814 b [ ] Form 4972 c [ ] 962 elec. | | | | 44 | 133,073 |
| | 45 | Alternative minimum tax (see instructions). Attach Form 6251 | | | | 45 | 267 |
| • All others: | 46 | Add lines 44 and 45 | | | ▶ | 46 | 133,340 |
| Single or Married filing separately, $5,800 | 47 | Foreign tax credit. Attach Form 1116 if required | 47 | 74,426 | | | |
| | 48 | Credit for child and dependent care expenses. Attach Form 2441 | 48 | | | | |
| Married filing jointly or Qualifying widow(er), $11,600 | 49 | Education credits from Form 8863, line 23 | 49 | | | | |
| | 50 | Retirement savings contributions credit. Attach Form 8880 | 50 | | | | |
| | 51 | Child tax credit (see instructions) | 51 | | | | |
| Head of household, $8,500 | 52 | Residential energy credits. Attach Form 5695 | 52 | | | | |
| | 53 | Other credits from Form: a [ ] 3800 b [ ] 8801 c [X] Sch R | 53 | 750 | | | |
| | 54 | Add lines 47 through 53. These are your total credits | | | | 54 | 75,176 |
| | 55 | Subtract line 54 from line 46. If line 54 is more than line 46, enter -0- | | | ▶ | 55 | 58,164 |
| Other Taxes | 56 | Self-employment tax. Attach Schedule SE | | | | 56 | |
| | 57 | Unreported social security and Medicare tax from Form: a [ ] 4137 b [ ] 8919 | | | | 57 | |
| | 58 | Additional tax on IRAs, other qualified retirement plans, etc. Attach Form 5329 if required | | | | 58 | |
| | 59a | Household employment taxes from Schedule H | | | | 59a | |
| | b | First-time homebuyer credit repayment. Attach Form 5405 if required | | | | 59b | |
| | 60 | Other taxes. Enter code(s) from instructions | | | | 60 | |
| | 61 | Add lines 55 through 60. This is your total tax | | | ▶ | 61 | 58,164 |
| Payments | 62 | Federal income tax withheld from Forms W-2 and 1099 | 62 | | | | |
| | 63 | 2011 estimated tax payments and amount applied from 2010 return | 63 | | | | |
| If you have a qualifying child, attach Schedule EIC. | 64a | Earned income credit (EIC) | 64a | | | | |
| | b | Nontaxable combat pay election | 64b | | | | |
| | 65 | Additional child tax credit. Attach Form 8812 | 65 | | | | |
| | 66 | American opportunity credit from Form 8863, line 14 | 66 | | | | |
| | 67 | First-time homebuyer credit from Form 5405, line 10 | 67 | | | | |
| | 68 | Amount paid with request for extension to file | 68 | | | | |
| | 69 | Excess social security and tier 1 RRTA tax withheld | 69 | | | | |
| | 70 | Credit for federal tax on fuels. Attach Form 4136 | 70 | | | | |
| | 71 | Credits from Form: a [ ] 2439 b [ ] 8839 c [ ] 8801 d [ ] 8885 | 71 | | | | |
| | 72 | Add lines 62, 63, 64a, and 65 through 71. These are your total payments | | | ▶ | 72 | |
| Refund | 73 | If line 72 is more than line 61, subtract line 61 from line 72. This is the amount you overpaid | | | | 73 | |
| | 74a | Amount of line 73 you want refunded to you. If Form 8888 is attached, check here ▶ | | | [ ] | 74a | |
| Direct deposit? See instructions. | b | Routing number [                    ] ▶ c Type: [ ] Checking [ ] Savings | | | | | |
| | d | Account number [                    ] | | | | | |
| | 75 | Amount of line 73 you want applied to your 2012 estimated tax ▶ | 75 | | | | |
| Amount You Owe | 76 | Amount you owe. Subtract line 72 from line 61. For details on how to pay, see instructions ▶ | | | | 76 | 58,164 |
| | 77 | Estimated tax penalty (see instructions) | 77 | | | | |

| Third Party Designee | Do you want to allow another person to discuss this return with the IRS (see instructions)? [ ] Yes. Complete below. [ ] No | | | |
|---|---|---|---|---|
| | Designee's name ▶ | Phone no. ▶ | Personal identification number (PIN) ▶ | |

| Sign Here | Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge. | | | |
|---|---|---|---|---|
| Joint return? See instr. Keep a copy for your records. | Your signature | Date | Your occupation | Daytime phone number |
| | Spouse's signature. If a joint return, both must sign. | Date | Spouse's occupation | If the IRS sent you an Identity Protection PIN, enter it here (see instr.) |

| Paid Preparer Use Only | Print/Type preparer's name | Preparer's signature | Date | Check [ ] if self-employed | PTIN |
|---|---|---|---|---|---|
| | Firm's name ▶ Henry S. Chi, CPA | | | Firm's EIN ▶ | ███ 9209 |
| | Firm's address ▶ 3731 Wilshire Blvd Ste 777 Los Angeles CA 90010-2811 | | | Phone no. | 213-381-3239 |

DAA

Form 1040 (2011)

EXHIBIT III-A

## 2012 Income Tax Return - Laura Kim
## without Foreign Income / Foreign Tax Credit

| | | |
|---|---|---:|
| Wages, Salaries and Tips, etc. | (U.S.) | 55,000 |
| Wages, Salaries and Tips, etc. | (Foreign) | - |
| | | |
| Taxable Interest | (U.S.) | - |
| Taxable Interest | (Foreign) | - |
| | | |
| Qualified Dividends | (U.S.) | 120,431 |
| Qualified Dividends | (Foreign) | - |
| | | |
| Taxable Refunds | (U.S.) | 465 |
| | | |
| Sch E    S Corps | (U.S.) | (53,662) |
| Sch E    Rent Received | (Foreign) | - |
| | | |
| Total Income | | 122,234 |
| | | |
| Standard Deduction | (U.S) | 7,400 |
| Exemptions | (U.S) | 3,800 |
| | | |
| Taxable Income | | 111,034 |
| | | |
| Tax | | 24,550 |
| | | |
| Foreign Tax Credit | (Foreign) | - |
| | | |
| Total Tax Balance | | 24,550 |

**EXHIBIT III-B**

### 2012 Income Tax Return - Laura Kim

| | | |
|---|---|---:|
| Wages, Salaries and Tips, etc. | (U.S.) | 55,000 |
| Wages, Salaries and Tips, etc. | (Foreign) | 396,570 |
| | | |
| Taxable Interest | (U.S.) | |
| Taxable Interest | (Foreign) | 27,623 |
| | | |
| Qualified Dividends | (U.S.) | 120,431 |
| Qualified Dividends | (Foreign) | 25,111 |
| | | |
| Taxable Refunds | (U.S.) | 465 |
| | | |
| Sch E - S Corps | (U.S.) | (53,662) |
| Sch E - Rent Received | (Foreign) | 39,180 |
| | | |
| Total Income | | 610,718 |
| | | |
| Standard Deduction | (U.S) | 7,400 |
| Exemptions | (U.S) | 3,800 |
| | | |
| Taxable Income | | 599,518 |
| | | |
| Tax | | 159,584 |
| | | |
| Foreign Tax Credit | (Foreign) | 95,609 |
| | | |
| Total Tax Balance | | 63,975 |

PREPARED FOR EXPERT OPINION

EXHIBIT III-C

LAURAKIM

Form **1040** Department of the Treasury—Internal Revenue Service (99)

**U.S. Individual Income Tax Return** **2012** OMB No. 1545-0074

For the year Jan. 1–Dec. 31, 2012, or other tax year beginning , 2012, ending , 20 | See separate instructions.

| Your first name and initial | Last name | Your social security number |
|---|---|---|
| LAURA H. | KIM | |
| If a joint return, spouse's first name and initial | Last name | Spouse's social security number |

Home address (number and street). If you have a P.O. box, see instructions. | Apt. no.

▲ Make sure the SSN(s) above and on line 6c are correct

City, town or post office, state, and ZIP code. If you have a foreign address, also complete spaces below (see instructions).

**Presidential Election Campaign**
Check here if you, or your spouse if filing jointly, want $3 to go to this fund. Checking a box below will not change your tax or refund ☐ You ☐ Spouse

| Foreign country name | Foreign province/state/county | Foreign postal code |

**Filing Status**

Check only one box.

1. [X] Single
2. ☐ Married filing jointly (even if only one had income)
3. ☐ Married filing separately. Enter spouse's SSN above and full name here ▶
4. ☐ Head of household (with qualifying person). (See instructions.) If the qualifying person is a child but not your dependent, enter this child's name here ▶
5. ☐ Qualifying widow(er) with dependent child

**Exemptions**

6a [X] Yourself. If someone can claim you as a dependent, **do not** check box 6a
b ☐ Spouse

Boxes checked on 6a and 6b **1**

| c Dependents: | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✓ if child under age 17 qualifying for child tax credit (see instr.) |
|---|---|---|---|
| (1) First name    Last name | | | |

No. of children on 6c who:
• lived with you
• did not live with you due to divorce or separation (see instructions)

Dependents on 6c not entered above

If more than four dependents, see instructions and check here ▶ ☐

Add numbers on lines above ▶ **1**

d Total number of exemptions claimed

**Income**

Attach Form(s) W-2 here. Also attach Forms W-2G and 1099-R if tax was withheld.

If you did not get a W-2, see instructions.

Enclose, but do not attach, any payment. Also, please use Form 1040-V.

| 7 | Wages, salaries, tips, etc. Attach Form(s) W-2 | | 7 | 55,000 |
|---|---|---|---|---|
| 8a | Taxable interest. Attach Schedule B if required | | 8a | |
| b | Tax-exempt interest. **Do not** include on line 8a | 8b | | |
| 9a | Ordinary dividends. Attach Schedule B if required | | 9a | 120,431 |
| b | Qualified dividends | 9b | 120,431 | |
| 10 | Taxable refunds, credits, or offsets of state and local income taxes | | 10 | 465 |
| 11 | Alimony received | | 11 | |
| 12 | Business income or (loss). Attach Schedule C or C-EZ | | 12 | |
| 13 | Capital gain or (loss). Attach Schedule D if required. If not required, check here ▶ ☐ | | 13 | |
| 14 | Other gains or (losses). Attach Form 4797 | | 14 | |
| 15a | IRA distributions | 15a | b Taxable amount | 15b |
| 16a | Pensions and annuities | 16a | b Taxable amount | 16b |
| 17 | Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E | | 17 | −53,662 |
| 18 | Farm income or (loss). Attach Schedule F | | 18 | |
| 19 | Unemployment compensation | | 19 | |
| 20a | Social security benefits | 20a | b Taxable amount | 20b |
| 21 | Other income. List type and amount | | 21 | |
| 22 | Combine the amounts in the far right column for lines 7 through 21. This is your **total income** ▶ | | 22 | 122,234 |

**Adjusted Gross Income**

| 23 | Educator expenses | 23 | | |
|---|---|---|---|---|
| 24 | Certain business expenses of reservists, performing artists, and fee-basis government officials. Attach Form 2106 or 2106-EZ | 24 | | |
| 25 | Health savings account deduction. Attach Form 8889 | 25 | | |
| 26 | Moving expenses. Attach Form 3903 | 26 | | |
| 27 | Deductible part of self-employment tax. Attach Schedule SE | 27 | | |
| 28 | Self-employed SEP, SIMPLE, and qualified plans | 28 | | |
| 29 | Self-employed health insurance deduction | 29 | | |
| 30 | Penalty on early withdrawal of savings | 30 | | |
| 31a | Alimony paid b Recipient's SSN ▶ | 31a | | |
| 32 | IRA deduction | 32 | | |
| 33 | Student loan interest deduction | 33 | | |
| 34 | Tuition and fees. Attach Form 8917 | 34 | | |
| 35 | Domestic production activities deduction. Attach Form 8903 | 35 | | |
| 36 | Add lines 23 through 35 | | 36 | |
| 37 | Subtract line 36 from line 22. This is your **adjusted gross income** ▶ | | 37 | 122,234 |

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see separate instructions.

DAA

Form **1040** (2012)

| | 38 | Amount from line 37 (adjusted gross income) | | 38 | 122,234 |
|---|---|---|---|---|---|
| **Tax and Credits** | 39a | Check if: ☒ You were born before January 2, 1948,  ☐ Blind. ☐ Spouse was born before January 2, 1948,  ☐ Blind. } Total boxes checked ► 39a | | 1 | |
| | b | If your spouse itemizes on a separate return or you were a dual-status alien, check here ► 39b | | | |
| **Standard Deduction for—** | 40 | Itemized deductions (from Schedule A) or your standard deduction (see left margin) | | 40 | 7,400 |
| • People who check any box on line 39a or 39b or who can be claimed as a dependent, see instructions. | 41 | Subtract line 40 from line 38 | | 41 | 114,834 |
| | 42 | Exemptions. Multiply $3,800 by the number on line 6d | | 42 | 3,800 |
| | 43 | Taxable income. Subtract line 42 from line 41. If line 42 is more than line 41, enter -0- | | 43 | 111,034 |
| | 44 | Tax (see instr.). Check if any from: a ☐ Form(s) 8814  b ☐ Form 4972  c ☐ 962 elec. | | 44 | 24,550 |
| • All others | 45 | Alternative minimum tax (see instructions). Attach Form 6251 | | 45 | |
| Single or Married filing separately, $5,950 | 46 | Add lines 44 and 45 ► | | 46 | 24,550 |
| Married filing jointly or Qualifying widow(er), $11,900 | 47 | Foreign tax credit. Attach Form 1116 if required | 47 | | |
| | 48 | Credit for child and dependent care expenses. Attach Form 2441 | 48 | | |
| | 49 | Education credits from Form 8863, line 19 | 49 | | |
| Head of household, $8,700 | 50 | Retirement savings contributions credit. Attach Form 8880 | 50 | | |
| | 51 | Child tax credit. Attach Schedule 8812, if required | 51 | | |
| | 52 | Residential energy credits. Attach Form 5695 | 52 | | |
| | 53 | Other credits from Form: a ☐ 3800  b ☐ 8801  c ☐ | 53 | | |
| | 54 | Add lines 47 through 53. These are your total credits | | 54 | |
| | 55 | Subtract line 54 from line 46. If line 54 is more than line 46, enter -0- ► | | 55 | 24,550 |
| **Other Taxes** | 56 | Self-employment tax. Attach Schedule SE | | 56 | |
| | 57 | Unreported social security and Medicare tax from Form: a ☐ 4137  b ☐ 8919 | | 57 | |
| | 58 | Additional tax on IRAs, other qualified retirement plans, etc. Attach Form 5329 if required | | 58 | |
| | 59a | Household employment taxes from Schedule H | | 59a | |
| | b | First-time homebuyer credit repayment. Attach Form 5405 if required | | 59b | |
| | 60 | Other taxes. Enter code(s) from instructions | | 60 | |
| | 61 | Add lines 55 through 60. This is your total tax ► | | 61 | 24,550 |
| **Payments** | 62 | Federal income tax withheld from Forms W-2 and 1099 | 62 | | |
| | 63 | 2012 estimated tax payments and amount applied from 2011 return | 63 | | |
| If you have a qualifying child, attach Schedule EIC. | 64a | Earned income credit (EIC) | 64a | | |
| | b | Nontaxable combat pay election | 64b | | |
| | 65 | Additional child tax credit. Attach Schedule 8812 | 65 | | |
| | 66 | American opportunity credit from Form 8863, line 8 | 66 | | |
| | 67 | Reserved | 67 | | |
| | 68 | Amount paid with request for extension to file | 68 | | |
| | 69 | Excess social security and tier 1 RRTA tax withheld | 69 | | |
| | 70 | Credit for federal tax on fuels. Attach Form 4136 | 70 | | |
| | 71 | Credits from Form: a ☐ 2439  b ☐ Reserved  c ☐ 8801  d ☐ 8885 | 71 | | |
| | 72 | Add lines 62, 63, 64a, and 65 through 71. These are your total payments ► | | 72 | |
| **Refund** | 73 | If line 72 is more than line 61, subtract line 61 from line 72. This is the amount you overpaid | | 73 | |
| | 74a | Amount of line 73 you want refunded to you. If Form 8888 is attached, check here ► ☐ | | 74a | |
| Direct deposit? See instructions. | ► b | Routing number | ► c | Type: ☐ Checking ☐ Savings | |
| | ► d | Account number | | | |
| | 75 | Amount of line 73 you want applied to your 2013 estimated tax ► | 75 | | |
| **Amount You Owe** | 76 | Amount you owe. Subtract line 72 from line 61. For details on how to pay, see instructions ► | | 76 | 24,550 |
| | 77 | Estimated tax penalty (see instructions) | 77 | | |

| **Third Party Designee** | Do you want to allow another person to discuss this return with the IRS (see instructions)? ☐ Yes. Complete below. ☒ No | |
|---|---|---|
| | Designee's name ► | Phone no. ► | Personal identification number (PIN) ► |

**Sign Here**
Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge

| | | |
|---|---|---|
| Joint return? See instr. Keep a copy for your records. | Your signature | Date | Your occupation | Daytime phone number |
| | Spouse's signature. If a joint return, both must sign. | Date | Spouse's occupation | If the IRS sent you an Identity Protection PIN, enter it here (see instr.) |

| **Paid Preparer Use Only** | Print/Type preparer's name | Preparer's signature | Date | Check ☒ if self-employed | PTIN 1805 |
|---|---|---|---|---|---|
| | HENRY S. CHI | | | | |
| | Firm's name ► Henry S. Chi, CPA | | | Firm's EIN ► ███ | 9209 |
| | Firm's address ► 3731 Wilshire Blvd Ste 777  Los Angeles  CA 90010-2811 | | | Phone no. 213-381-3239 | |

Form **1040** (2012)

DAA

**EXHIBIT III-D**

**PREPARED FOR EXPERT OPINION**

LARAHKIM

Form **1040** | Department of the Treasury—Internal Revenue Service (99)

**U.S. Individual Income Tax Return** | **2012** | OMB No. 1545-0074 | See separate instructions.

For the year Jan. 1–Dec. 31, 2012, or other tax year beginning , 20 , ending , 20

| | |
|---|---|
| Your first name and initial | Last name | Your social security number |
| LAURA H. | KIM | |
| If a joint return, spouse's first name and initial | Last name | Spouse's social security number |
| Home address (number and street). If you have a P.O. box, see instructions. | Apt. no. | ▲ Make sure the SSN(s) above and on line 6c are correct. |
| City, town or post office, state, and ZIP code. If you have a foreign address, also complete spaces below (see instructions). | | |
| Foreign country name | Foreign province/state/county | Foreign postal code |

**Presidential Election Campaign**
Check here if you, or your spouse if filing jointly, want $3 to go to this fund. Checking a box below will not change your tax or refund. ▶ ☐ You ☐ Spouse

**Filing Status**
Check only one box.

1 ☒ Single
2 ☐ Married filing jointly (even if only one had income)
3 ☐ Married filing separately. Enter spouse's SSN above and full name here. ▶
4 ☐ Head of household (with qualifying person). (See instructions.) If the qualifying person is a child but not your dependent, enter this child's name here. ▶
5 ☐ Qualifying widow(er) with dependent child

**Exemptions**

6a ☒ Yourself. If someone can claim you as a dependent, do not check box 6a
b ☐ Spouse

Boxes checked on 6a and 6b: **1**

c Dependents:

| (1) First name Last name | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✓ if child under age 17 qualifying for child tax credit (see instr.) |
|---|---|---|---|

No. of children on 6c who:
• lived with you
• did not live with you due to divorce or separation (see instructions)
Dependents on 6c not entered above

If more than four dependents, see instructions and check here ▶ ☐

d Total number of exemptions claimed | Add numbers on lines above ▶ | **1**

**Income**

Attach Form(s) W-2 here. Also attach Forms W-2G and 1099-R if tax was withheld.

If you did not get a W-2, see instructions.

Enclose, but do not attach, any payment. Also, please use Form 1040-V.

| | | | |
|---|---|---|---|
| 7 | Wages, salaries, tips, etc. Attach Form(s) W-2 | 7 | 451,570 |
| 8a | Taxable interest. Attach Schedule B if required | 8a | 27,623 |
| b | Tax-exempt interest. Do not include on line 8a | 8b | |
| 9a | Ordinary dividends. Attach Schedule B if required | 9a | 145,542 |
| b | Qualified dividends | 9b | 145,542 |
| 10 | Taxable refunds, credits, or offsets of state and local income taxes | 10 | 465 |
| 11 | Alimony received | 11 | |
| 12 | Business income or (loss). Attach Schedule C or C-EZ | 12 | |
| 13 | Capital gain or (loss). Attach Schedule D if required. If not required, check here ▶ ☐ | 13 | |
| 14 | Other gains or (losses). Attach Form 4797 | 14 | |
| 15a | IRA distributions | 15a | | b Taxable amount | 15b | |
| 16a | Pensions and annuities | 16a | | b Taxable amount | 16b | |
| 17 | Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E | 17 | −14,482 |
| 18 | Farm income or (loss). Attach Schedule F | 18 | |
| 19 | Unemployment compensation | 19 | |
| 20a | Social security benefits | 20a | | b Taxable amount | 20b | |
| 21 | Other income. List type and amount | 21 | |
| 22 | Combine the amounts in the far right column for lines 7 through 21. This is your total income ▶ | 22 | 610,718 |

**Adjusted Gross Income**

| | | |
|---|---|---|
| 23 | Educator expenses | 23 | |
| 24 | Certain business expenses of reservists, performing artists, and fee-basis government officials. Attach Form 2106 or 2106-EZ | 24 | |
| 25 | Health savings account deduction. Attach Form 8889 | 25 | |
| 26 | Moving expenses. Attach Form 3903 | 26 | |
| 27 | Deductible part of self-employment tax. Attach Schedule SE | 27 | |
| 28 | Self-employed SEP, SIMPLE, and qualified plans | 28 | |
| 29 | Self-employed health insurance deduction | 29 | |
| 30 | Penalty on early withdrawal of savings | 30 | |
| 31a | Alimony paid   b Recipient's SSN ▶ | 31a | |
| 32 | IRA deduction | 32 | |
| 33 | Student loan interest deduction | 33 | |
| 34 | Tuition and fees. Attach Form 8917 | 34 | |
| 35 | Domestic production activities deduction. Attach Form 8903 | 35 | |
| 36 | Add lines 23 through 35 | 36 | |
| 37 | Subtract line 36 from line 22. This is your adjusted gross income ▶ | 37 | 610,718 |

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see separate instructions.

DAA

Form **1040** (2012)

LAURA KIM
Form 1040 (2012)   LAURA Y. KIM   PREPARED FOR EXPERT OPINION   Page 2

| Tax and Credits | 38 | Amount from line 37 (adjusted gross income) | | | | 38 | 610,718 |
|---|---|---|---|---|---|---|---|
| | 39a | Check if: [X] You were born before January 2, 1948, ☐ Blind. ☐ Spouse was born before January 2, 1948, ☐ Blind. } Total boxes checked ▶ 39a | | | 1 | | |
| | b | If your spouse itemizes on a separate return or you were a dual-status alien, check here ▶ 39b | | | | | |
| **Standard Deduction for—** • People who check any box on line 39a or 39b or who can be claimed as a dependent, see instructions. • All others: Single or Married filing separately, $5,950 Married filing jointly or Qualifying widow(er), $11,900 Head of household, $8,700 | 40 | Itemized deductions (from Schedule A) or your standard deduction (see left margin) | | | | 40 | 7,400 |
| | 41 | Subtract line 40 from line 38 | | | | 41 | 603,318 |
| | 42 | Exemptions. Multiply $3,800 by the number on line 6d | | | | 42 | 3,800 |
| | 43 | Taxable income. Subtract line 42 from line 41. If line 42 is more than line 41, enter -0- | | | | 43 | 599,518 |
| | 44 | Tax (see instr.). Check if any from: a ☐ Form(s) 8814 b ☐ Form 4972 c ☐ 962 elec. | | | | 44 | 159,584 |
| | 45 | Alternative minimum tax (see instructions). Attach Form 6251 | | | | 45 | |
| | 46 | Add lines 44 and 45 | | | ▶ | 46 | 159,584 |
| | 47 | Foreign tax credit. Attach Form 1116 if required | 47 | 95,609 | | | |
| | 48 | Credit for child and dependent care expenses. Attach Form 2441 | 48 | | | | |
| | 49 | Education credits from Form 8863, line 19 | 49 | | | | |
| | 50 | Retirement savings contributions credit. Attach Form 8880 | 50 | | | | |
| | 51 | Child tax credit. Attach Schedule 8812, if required | 51 | | | | |
| | 52 | Residential energy credits. Attach Form 5695 | 52 | | | | |
| | 53 | Other credits from Form: a ☐ 3800 b ☐ 8801 c ☐ | 53 | | | | |
| | 54 | Add lines 47 through 53. These are your total credits | | | | 54 | 95,609 |
| | 55 | Subtract line 54 from line 46. If line 54 is more than line 46, enter -0- | | | ▶ | 55 | 63,975 |
| **Other Taxes** | 56 | Self-employment tax. Attach Schedule SE | | | | 56 | |
| | 57 | Unreported social security and Medicare tax from Form: a ☐ 4137 b ☐ 8919 | | | | 57 | |
| | 58 | Additional tax on IRAs, other qualified retirement plans, etc. Attach Form 5329 if required | | | | 58 | |
| | 59a | Household employment taxes from Schedule H | | | | 59a | |
| | b | First-time homebuyer credit repayment. Attach Form 5405 if required | | | | 59b | |
| | 60 | Other taxes. Enter code(s) from instructions | | | | 60 | |
| | 61 | Add lines 55 through 60. This is your total tax | | | ▶ | 61 | 63,975 |
| **Payments** If you have a qualifying child, attach Schedule EIC. | 62 | Federal income tax withheld from Forms W-2 and 1099 | 62 | | | | |
| | 63 | 2012 estimated tax payments and amount applied from 2011 return | 63 | | | | |
| | 64a | Earned income credit (EIC) | 64a | | | | |
| | b | Nontaxable combat pay election | 64b | | | | |
| | 65 | Additional child tax credit. Attach Schedule 8812 | 65 | | | | |
| | 66 | American opportunity credit from Form 8863, line 8 | 66 | | | | |
| | 67 | Reserved | 67 | | | | |
| | 68 | Amount paid with request for extension to file | 68 | | | | |
| | 69 | Excess social security and tier 1 RRTA tax withheld | 69 | | | | |
| | 70 | Credit for federal tax on fuels. Attach Form 4136 | 70 | | | | |
| | 71 | Credits from Form: a ☐ 2439 b ☐ Reserved c ☐ 8801 d ☐ 8885 | 71 | | | | |
| | 72 | Add lines 62, 63, 64a, and 65 through 71. These are your total payments | | | ▶ | 72 | |
| **Refund** Direct deposit? See instructions | 73 | If line 72 is more than line 61, subtract line 61 from line 72. This is the amount you overpaid | | | | 73 | |
| | 74a | Amount of line 73 you want refunded to you. If Form 8888 is attached, check here ▶ ☐ | | | | 74a | |
| | ▶ b | Routing number ___ ▶ c Type: ☐ Checking ☐ Savings | | | | | |
| | ▶ d | Account number ___ | | | | | |
| | 75 | Amount of line 73 you want applied to your 2013 estimated tax ▶ | 75 | | | | |
| **Amount You Owe** | 76 | Amount you owe. Subtract line 72 from line 61. For details on how to pay, see instructions ▶ | | | | 76 | 63,975 |
| | 77 | Estimated tax penalty (see instructions) | 77 | | | | |

**Third Party Designee**
Do you want to allow another person to discuss this return with the IRS (see instructions)? ☐ Yes. Complete below. [X] No
Designee's name ▶ ___   Phone no. ▶ ___   Personal identification number (PIN) ▶ ___

**Sign Here**
Joint return? See instr. Keep a copy for your records
Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

| Your signature | Date | Your occupation | Daytime phone number |
|---|---|---|---|
| | | | |
| Spouse's signature. If a joint return, both must sign. | Date | Spouse's occupation | If the IRS sent you an Identity Protection PIN, enter it here (see instr.) |

**Paid Preparer Use Only**

| Print/Type preparer's name | Preparer's signature | Date | Check [X] if self-employed | PTIN 1805 |
|---|---|---|---|---|
| HENRY S. CHI | | | | |

Firm's name ▶ Henry S. Chi, CPA   Firm's EIN ▶ ____9209
Firm's address ▶ 3731 Wilshire Blvd Ste 777   Phone no. 213-381-3239
Los Angeles   CA 90010-2811

Form **1040** (2012)

DAA

12/02/2020 4:58:58 PM   0500 IRS

**EXHIBIT IV-A**

| | | |
|---|---|---|
| | | Page 1 of 1 |

| Form **5278** (Rev. June 2011) | **Statement - Income Tax Changes** | Schedule |
|---|---|---|

| 1. Name(s) of taxpayer(s) <br> LAURA H KIM | 2. ☐ Notice of Deficiency    ☐ Other <br> ☐ Settlement Computation |
|---|---|

| 3. Taxpayer Identification Number <br> ▮▮-8486 | 4. Form number <br> 1040 | 5. Docket number <br> N/A | 6. Office symbols <br> AP:SEP:IL:CHI:DDB:DM |
|---|---|---|---|

|  | Tax Year(s) Ended | | |
|---|---|---|---|
| **7. Adjustments to income** | Year: 12/31/2010 | Year: 12/31/2011 | Year: 12/31/2012 |
| a. Total from Form 45498 | 1,731,292.35 | 1,131,774.23 | 288,233.41 |
| b. | | | |
| c. | | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g | | | |
| h | | | |
| **8. Total adjustments** | 1,731,292.35 | 1,131,774.23 | 288,233.41 |
| **9. Taxable income as shown in** <br>   ☐ Preliminary letter dated _____ <br>   ☐ Notice of deficiency dated _____ <br>   ☐ Return as filed | (600,246.00) | (534,608.00) | 311,285.00 |
| **10. Taxable income as revised** | 1,131,046.00 | 597,166.00 | 599,518.00 |
| **11. Tax**    Tax Method _____    Filing Status _____ | 343,834.00 <br> SCHEDULE D <br> Single | 133,073.00 <br> SCHEDULE D <br> Single | 159,584.00 <br> SCHEDULE D <br> Single |
| **12. Alternative tax, if applicable** | | | |
| **13. Alternative minimum tax** *(Starting in tax year 2000)* | | 267.00 | 0.00 |
| **14. Corrected tax liability** - *(lesser of line 11 or 12 plus line 13)* | 343,834.00 | 133,340.00 | 159,584.00 |
| **15. Less credits**   a. Foreign Tax Credit | 297,205.00 | 74,426.00 | 95,609.36 |
|   b. Credit for Elderly | | 750.00 | |
|   c. | | | |
| **16. Balance** *(line 14 less total of lines 15a - 15c)* | 46,629.00 | 58,164.00 | 63,974.64 |
| **17. Plus other**   a. | | | |
| **taxes**   b. | | | |
|   c. | | | |
| **18. Total corrected tax liability** - *(line 16 plus lines 17a - 17c)* | 46,629.00 | 58,164.00 | 63,974.64 |
| **19. Total tax shown on return or as previously adjusted** | 0.00 | 3,729.00 | 17,726.00 |
| **20. Adjustments:**   a. See Attached | (400.00) | | |
| **increase or**   b. | | | |
| **(decrease) to:**   c. | | | |
| **21. Deficiency - Increase in tax** *(overassessment - decrease in tax)* <br> *(line 18 less line 19 adjusted by lines 20a   20c)* | 47,029.00 | 54,435.00 | 46,248.64 |
| **22. Adjustments to prepayment credits - Increase** *(decrease)* | | | |
| **23. Balance due or (Overpayment) excluding interest and penalties** <br> *(line 21 adjusted by line 22)* | 47,029.00 | 54,435.00 | 46,248.64 |
| **24. Penalties and/or Additions to Tax** *(listed below)* | | | |
| Fraud-IRC 6663 | 35,271.75 | 40,826.25 | 34,686.48 |
| Delq-IRC 6651(a)(1) | | | 11,562.16 |

Form **5278** (Rev. 6-2011)   Catalog Number 23735U    publish.no.irs.gov    Department of the Treasury   Internal Revenue Service

**EXHIBIT IV -B**

| Form **4549B** | Department of the Treasury - Internal Revenue Service **Income Tax Examination Changes** | | Page 1 of 1 |
|---|---|---|---|

| Name and Address of Taxpayer | SS or EI Number ▇8486 | Return Form No: 1040 |
|---|---|---|
| LAURA H KIM ▇▇ ▇ LOS ANGELES CA ▇ | Person with whom examination changes were discussed. | Name and Title: LAURA H KIM |

| | 1. Adjustments to Income | Year End: 12/31/2010 | Year End: 12/31/2011 | Year End: 12/31/2012 |
|---|---|---|---|---|
| A | Sch E-Inc/Loss – Depreciation Expense | (15,904.00) | (15,904.00) | (15,904.00) |
| B | Sch E2 Rents Received | 9,690.30 | 20,763.74 | 3,337.53 |
| C | Qualified Dividends From Korea | 1,281.82 | 15,260.21 | 10,500.57 |
| D | Taxable Interest | 267,721.15 | 72,927.94 | 5,190.70 |
| E | NOL Carryforward | 546,719.00 | 582,635.00 | |
| F | Sch E-Inc/Loss-Prtnrship/S Corps-Passve/Non-Passve | 73,910.80 | 9,348.00 | 2,800.70 |
| G | Wages, Salaries and Tips, etc. | 699,489.78 | 172,078.59 | 161,411.91 |
| H | Qualified dividends | 148,383.50 | 271,604.75 | 120,431.00 |
| I | State Refunds, Credits, or Offsets | | 3,060.00 | 465.00 |

| | 2. Total Adjustments | 1,731,292.35 | 1,131,774.23 | 288,233.41 |
|---|---|---|---|---|

RGS Version 20.20.00

Form CG-4549-B

**EXHIBIT V-A**

Form **1040**    Department of the Treasury — Internal Revenue Service
**U.S. Individual Income Tax Return 2010**    (99)    IRS Use Only — Do not write or staple in this space.

| Name, Address, and SSN | For the year Jan 1 - Dec 31, 2010, or other tax year beginning , 2010, ending , 20 | | | OMB No. 1545-0074 |
|---|---|---|---|---|

Your first name: **LAURA**    MI: **H**    Last name: **KIM**
Your social security number: ▮▮▮ - **8486**

See separate instructions.

If a joint return, spouse's first name    MI    Last name
Spouse's social security number

Home address (number and street). If you have a P.O. box, see instructions.    Apartment no.

City, town or post office [...] a foreign address, see instructions.    **LOS ANGELES**    State **CA**    ZIP code ▮▮

Make sure the SSN(s) above and on line 6c are correct.

**Presidential Election Campaign** ▶ Check here if you, or your spouse if filing jointly, want $3 to go to this fund?
Checking a box below will not change your tax or refund. [X] You  [ ] Spouse

**Filing Status**
Check only one box.
1 [X] Single
2 [ ] Married filing jointly (even if only one had income)
3 [ ] Married filing separately. Enter spouse's SSN above & full name here ▶
4 [ ] Head of household (with qualifying person). (See instructions.) If the qualifying person is a child but not your dependent, enter this child's name here ▶
5 [ ] Qualifying widow(er) with dependent child

**Exemptions**
6a [X] Yourself. If someone can claim you as a dependent, do not check box 6a
b [ ] Spouse

Boxes checked on 6a and 6b: **1**

c Dependents:

| (1) First name    Last name | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✓ if child under age 17 qualifying for child tax cr (See instrs) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

If more than four dependents, see instructions and check here ... ▶ [ ]

No. of children on 6c who:
• lived with you
• did not live with you due to divorce or separation (see instrs)
Dependents on 6c not entered above

d Total number of exemptions claimed
Add numbers on lines above ▶ **1**

**Income**

Attach Form(s) W-2 here. Also attach Forms W-2G and 1099-R if tax was withheld.

If you did not get a W-2, see instructions.

Enclose, but do not attach, any payment. Also, please use Form 1040-V.

| | | | |
|---|---|---|---|
| 7 Wages, salaries, tips, etc. Attach Form(s) W-2 | | 7 | 55,000. |
| 8a Taxable interest. Attach Schedule B if required | | 8a | 32. |
| b Tax-exempt interest. Do not include on line 8a | 8b | | |
| 9a Ordinary dividends. Attach Schedule B if required | | 9a | |
| b Qualified dividends | 9b | | |
| 10 Taxable refunds, credits, or offsets of state and local income taxes | | 10 | 0. |
| 11 Alimony received | | 11 | |
| 12 Business income or (loss). Attach Schedule C or C-EZ | | 12 | |
| 13 Capital gain or (loss). Att Sch D if reqd. If not reqd, ck here ▶ [ ] | | 13 | |
| 14 Other gains or (losses). Attach Form 4797 | | 14 | |
| 15a IRA distributions | 15a | b Taxable amount | 15b | |
| 16a Pensions and annuities | 16a | b Taxable amount | 16b | |
| 17 Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E | | 17 | -90,916. |
| 18 Farm income or (loss). Attach Schedule F | | 18 | |
| 19 Unemployment compensation | | 19 | |
| 20a Social security benefits | 20a | b Taxable amount | 20b | |
| 21 Other income NET OPERATING LOSS - SEE STMT | | 21 | -546,719. |
| 22 Combine the amounts in the far right column for lines 7 through 21. This is your total income ▶ | | 22 | -582,603. |

**Adjusted Gross Income**

| | | | |
|---|---|---|---|
| 23 Educator expenses | 23 | | |
| 24 Certain business expenses of reservists, performing artists, and fee-basis government officials. Attach Form 2106 or 2106 EZ | 24 | | |
| 25 Health savings account deduction. Attach Form 8889 | 25 | | |
| 26 Moving expenses. Attach Form 3903 | 26 | | |
| 27 One-half of self-employment tax. Attach Schedule SE | 27 | | |
| 28 Self-employed SEP, SIMPLE, and qualified plans | 28 | | |
| 29 Self-employed health insurance deduction | 29 | | |
| 30 Penalty on early withdrawal of savings | 30 | | |
| 31a Alimony paid  b Recipient's SSN ▶ | 31a | | |
| 32 IRA deduction | 32 | | |
| 33 Student loan interest deduction | 33 | | |
| 34 Tuition and fees. Attach Form 8917 | 34 | | |
| 35 Domestic production activities deduction. Attach Form 8903 | 35 | | |
| 36 Add lines 23 - 31a and 32 - 35 | | 36 | |
| 37 Subtract line 36 from line 22. This is your adjusted gross income ▶ | | 37 | -582,603. |

BAA **For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see separate instructions.**    FDIA0112  12/22/10    Form **1040** (2010)

Form 1040 (2010)   LAURA H KIM                                        ▮▮-8486   Page 2

| | | | | |
|---|---|---|---|---|
| **Tax and Credits** | 38 Amount from line 37 (adjusted gross income) | | 38 | -582,603. |
| | 39a Check if: [X] You were born before January 2, 1946, ☐ Blind. **Total boxes** | | | |
| | ☐ Spouse was born before January 2, 1946, ☐ Blind. checked ► 39a | 1 | | |
| | b If your spouse itemizes on a separate return, or you were a dual-status alien, check here ► 39b | | | |
| | 40 Itemized deductions (from Schedule A) or your standard deduction (see instructions) | | 40 | 13,993. |
| | 41 Subtract line 40 from line 38 | | 41 | -596,596. |
| | 42 Exemptions. Multiply $3,650 by the number on line 6d | | 42 | 3,650. |
| | 43 Taxable income. Subtract line 42 from line 41. If line 42 is more than line 41, enter -0- | | 43 | 0. |
| | 44 Tax (see instrs). Check if any tax is from: a ☐ Form(s) 8814 b ☐ Form 4972 | | 44 | 0. |
| | 45 Alternative minimum tax (see instructions). Attach Form 6251 | | 45 | 0. |
| | 46 Add lines 44 and 45 | | 46 | 0. |
| | 47 Foreign tax credit. Attach Form 1116 if required | 47 | | |
| | 48 Credit for child and dependent care expenses. Attach Form 2441 | 48 | | |
| | 49 Education credits from Form 8863, line 23 | 49 | | |
| | 50 Retirement savings contributions credit. Attach Form 8880 | 50 | | |
| | 51 Child tax credit (see instructions) | 51 | | |
| | 52 Residential energy credits. Attach Form 5695 | 52 | | |
| | 53 Other crs from Form: a ☐ 3800 b ☐ 8801 c ☐ | 53 | | |
| | 54 Add lines 47 through 53. These are your **total credits** | | 54 | |
| | 55 Subtract line 54 from line 46. If line 54 is more than line 46, enter -0- ► | | 55 | 0. |
| **Other Taxes** | 56 Self-employment tax. Attach Schedule SE | | 56 | |
| | 57 Unreported social security and Medicare tax from Form: a ☐ 4137 b ☐ 8919 | | 57 | |
| | 58 Additional tax on IRAs, other qualified retirement plans, etc. Attach Form 5329 if required | | 58 | |
| | 59a ☐ Form(s) W-2, box 9 b ☐ Schedule H c ☐ Form 5405, line 16 | | 59 | |
| | 60 Add lines 55-59. This is your total tax ► | | 60 | 0. |
| **Payments** | 61 Federal income tax withheld from Forms W-2 and 1099 | 61 | 8,596. | |
| | 62 2010 estimated tax payments and amount applied from 2009 return | 62 | | |
| | 63 Making work pay credit. Attach Schedule M | 63 | 400. | |
| If you have a qualifying child, attach Schedule EIC. | 64a Earned income credit (EIC) No | 64a | | |
| | b Nontaxable combat pay election ► 64b | | | |
| | 65 Additional child tax credit. Attach Form 8812 | 65 | | |
| | 66 American opportunity credit from Form 8863, line 14 | 66 | | |
| | 67 First-time homebuyer credit from Form 5405, line 10 | 67 | | |
| | 68 Amount paid with request for extension to file | 68 | | |
| | 69 Excess social security and tier 1 RRTA tax withheld | 69 | | |
| | 70 Credit for federal tax on fuels. Attach Form 4136 | 70 | | |
| | 71 Credits from Form: a ☐ 2439 b ☐ 8839 c ☐ 8801 d ☐ 8885 | 71 | | |
| | 72 Add lns 61-63, 64a, & 65-71. These are your total pmts ► | | 72 | 8,996. |
| **Refund** | 73 If line 72 is more than line 60, subtract line 60 from line 72. This is the amount you overpaid | | 73 | 8,996. |
| | 74a Amount of line 73 you want refunded to you. If Form 8888 is attached, check here ► | | 74a | 8,996. |
| Direct deposit? See instructions. | ► b Routing number 122038251 ► c Type: [X] Checking ☐ Savings | | | |
| | ► d Account number 001684892 | | | |
| | 75 Amount of line 73 you want applied to your 2011 estimated tax ► | 75 | | |
| **Amount You Owe** | 76 Amount you owe. Subtract line 72 from line 60. For details on how to pay see instructions | | 76 | |
| | 77 Estimated tax penalty (see instructions) | 77 | | |

**Third Party Designee** Do you want to allow another person to discuss this return with the IRS (see instructions)? ☐ Yes. Complete below.   [X] No

| Designee's name ► | Phone no. ► | Personal identification number (PIN) ► |
|---|---|---|

**Sign Here**
Joint return? See instructions.
Keep a copy for your records.

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

| Your signature | Date | Your occupation C.E.O. | Daytime phone number |
|---|---|---|---|
| Spouse's signature. If a joint return, both must sign. | Date | Spouse's occupation | |

**Paid Preparer's Use Only**

| Print/Type preparer's name MICHAEL K. KHIM | Preparer's signature | Date 09/28/2011 | Check [X] if self-employed | PTIN ▮▮7069 |
|---|---|---|---|---|
| Firm's name ► MICHAEL K. KHIM ACCOUNTANCY CORPORATION | | | Firm's EIN ► ▮▮7994 | |
| Firm's address ► 3250 WILSHIRE BLVD STE 1705 LOS ANGELES   CA 90010 | | | Phone no. ( 36-6789 | |

FDIA0112  12/22/10

Form 1040 (2010)

**Form 1040** Department of the Treasury — Internal Revenue Service (99)
**U.S. Individual Income Tax Return** **2011** OMB No. 1545-0074 IRS Use Only — Do not write or staple in this space.

For the year Jan 1 - Dec 31, 2011, or other tax year beginning , 2011, ending , 20

Your first name: LAURA  MI: H  Last name: KIM

Your social security number: -8486

See separate instructions.

Home address (number and street). If you have a P.O. box, see instructions.

City, town or post office. If you have a foreign address, also complete spaces below (see instructions).
LOS ANGELES   State: CA   ZIP code:

**Presidential Election Campaign** — Check here if you, or your spouse if filing jointly, want $3 to go to this fund? Checking a box below will not change your tax or refund.  [X] You  [ ] Spouse

## Filing Status

1. [X] Single
2. [ ] Married filing jointly (even if only one had income)
3. [ ] Married filing separately. Enter spouse's SSN above & full name here.
4. [ ] Head of household (with qualifying person). (See instructions.) If the qualifying person is a child but not your dependent, enter this child's name here.
5. [ ] Qualifying widow(er) with dependent child

Check only one box.

## Exemptions

6a [X] Yourself. If someone can claim you as a dependent, do not check box 6a
b [ ] Spouse

Boxes checked on 6a and 6b: 1
No. of children on 6c who:

d Total number of exemptions claimed ........... 1

## Income

| | | | |
|---|---|---|---|
| 7 | Wages, salaries, tips, etc. Attach Form(s) W-2 | 7 | 55,000. |
| 8a | Taxable interest. Attach Schedule B if required | 8a | 5. |
| b | Tax-exempt interest. Do not include on line 8a | 8b | |
| 9a | Ordinary dividends. Attach Schedule B if required | 9a | |
| b | Qualified dividends | 9b | |
| 10 | Taxable refunds, credits, or offsets of state and local income taxes | 10 | 0. |
| 11 | Alimony received | 11 | |
| 12 | Business income or (loss). Attach Schedule C or C-EZ | 12 | |
| 13 | Capital gain or (loss). Att Sch D if reqd. If not reqd, ck here | 13 | |
| 14 | Other gains or (losses). Attach Form 4797 | 14 | |
| 15a | IRA distributions / 15a / b Taxable amount | 15b | |
| 16a | Pensions and annuities / 16a / b Taxable amount | 16b | |
| 17 | Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E | 17 | 10,987. |
| 18 | Farm income or (loss). Attach Schedule F | 18 | |
| 19 | Unemployment compensation | 19 | |
| 20a | Social security benefits / 20a / b Taxable amount | 20b | |
| 21 | Other income NET OPERATING LOSS - SEE STMT | 21 | -582,635. |
| 22 | Combine the amounts in the far right column for lines 7 through 21. This is your total income | 22 | -516,643. |

## Adjusted Gross Income

| | | | |
|---|---|---|---|
| 23 | Educator expenses | 23 | |
| 24 | Certain business expenses of reservists, performing artists, and fee basis government officials. Attach Form 2106 or 2106-EZ | 24 | |
| 25 | Health savings account deduction. Attach Form 8889 | 25 | |
| 26 | Moving expenses. Attach Form 3903 | 26 | |
| 27 | Deductible part of self-employment tax. Attach Schedule SE | 27 | |
| 28 | Self employed SEP, SIMPLE, and qualified plans | 28 | |
| 29 | Self employed health insurance deduction | 29 | |
| 30 | Penalty on early withdrawal of savings | 30 | |
| 31a | Alimony paid b Recipient's SSN | 31a | |
| 32 | IRA deduction | 32 | |
| 33 | Student loan interest deduction | 33 | |
| 34 | Tuition and fees. Attach Form 8917 | 34 | |
| 35 | Domestic production activities deduction. Attach Form 8903 | 35 | |
| 36 | Add lines 23 through 35 | 36 | |
| 37 | Subtract line 36 from line 22. This is your adjusted gross income | 37 | -516,643. |

BAA For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see separate instructions.   FDIA0112  11/07/11   Form 1040 (2011)

Form 1040 (2011)   LAURA H KIM                                                     -8486   Page 2

**Tax and Credits**

| | | | |
|---|---|---|---|
| 38 | Amount from line 37 (adjusted gross income) | 38 | -516,643. |
| 39a | Check if: [X] You were born before January 2, 1947, ☐ Blind. Spouse was born before January 2, 1947, ☐ Blind. Total boxes checked ▶ 39a | | |
| b | If your spouse itemizes on a separate return or you were a dual-status alien, check here ▶ 39b | | |
| 40 | Itemized deductions (from Schedule A) or your standard deduction (see instructions) | 40 | 14,265. |
| 41 | Subtract line 40 from line 38 | 41 | -530,908. |
| 42 | Exemptions. Multiply $3,700 by the number on line 6d | 42 | 3,700. |
| 43 | Taxable income. Subtract line 42 from line 41. If line 42 is more than line 41, enter -0- | 43 | 0. |
| 44 | Tax (see instrs). Check if any from: a ☐ Form(s) 8814  c ☐ 962 election  b ☐ Form 4972 | 44 | 0. |
| 45 | Alternative minimum tax (see instructions). Attach Form 6251 | 45 | 4,479. |
| 46 | Add lines 44 and 45 ▶ | 46 | 4,479. |
| 47 | Foreign tax credit. Attach Form 1116 if required | 47 | |
| 48 | Credit for child and dependent care expenses. Attach Form 2441 | 48 | |
| 49 | Education credits from Form 8863, line 23 | 49 | |
| 50 | Retirement savings contributions credit. Attach Form 8880 | 50 | |
| 51 | Child tax credit (see instructions) | 51 | |
| 52 | Residential energy credits. Attach Form 5695 | 52 | |
| 53 | Other crs from Form: a ☐ 3800  b ☐ 8801  c [X] Sch R | 53 | 750. |
| 54 | Add lines 47 through 53. These are your total credits | 54 | 750. |
| 55 | Subtract line 54 from line 46. If line 54 is more than line 46, enter -0- ▶ | 55 | 3,729. |

**Other Taxes**

| | | | |
|---|---|---|---|
| 56 | Self-employment tax. Attach Schedule SE | 56 | |
| 57 | Unreported social security and Medicare tax from Form: a ☐ 4137 b ☐ 8919 | 57 | |
| 58 | Additional tax on IRAs, other qualified retirement plans, etc. Attach Form 5329 if required | 58 | |
| 59a | Household employment taxes from Schedule H | 59a | |
| b | First-time homebuyer credit repayment. Attach Form 5405 if required | 59b | |
| 60 | Other taxes. Enter code(s) from instructions | 60 | |
| 61 | Add lines 55-60. This is your total tax ▶ | 61 | 3,729. |

**Payments** (If you have a qualifying child, attach Schedule EIC.)

| | | | |
|---|---|---|---|
| 62 | Federal income tax withheld from Forms W-2 and 1099 | 62 | 9,311. |
| 63 | 2011 estimated tax payments and amount applied from 2010 return | 63 | |
| 64a | Earned income credit (EIC) ☐ No | 64a | |
| b | Nontaxable combat pay election ▶ 64b | | |
| 65 | Additional child tax credit. Attach Form 8812 | 65 | |
| 66 | American opportunity credit from Form 8863, line 14 | 66 | |
| 67 | First-time homebuyer credit from Form 5405, line 10 | 67 | |
| 68 | Amount paid with request for extension to file | 68 | |
| 69 | Excess social security and tier 1 RRTA tax withheld | 69 | |
| 70 | Credit for federal tax on fuels. Attach Form 4136 | 70 | |
| 71 | Credits from Form: a ☐ 2439 b ☐ 8839 c ☐ 8801 d ☐ 8885 | 71 | |
| 72 | Add lns 62, 63, 64a, & 65-71. These are your total pmts ▶ | 72 | 9,311. |

**Refund**

| | | | |
|---|---|---|---|
| 73 | If line 72 is more than line 61, subtract line 61 from line 72. This is the amount you overpaid | 73 | 5,582. |
| 74a | Amount of line 73 you want refunded to you. If Form 8888 is attached, check here ▶ ☐ | 74a | 5,582. |
| ▶ b | Routing number 122038251  ▶ c Type: [X] Checking ☐ Savings | | |
| ▶ d | Account number 001684892 | | |
| 75 | Amount of line 73 you want applied to your 2012 estimated tax ▶ 75 | | |

**Amount You Owe**

| | | | |
|---|---|---|---|
| 76 | Amount you owe. Subtract line 72 from line 61. For details on how to pay see instructions ▶ | 76 | |
| 77 | Estimated tax penalty (see instructions) 77 | | |

**Third Party Designee** — Do you want to allow another person to discuss this return with the IRS (see instructions)? ☐ Yes. Complete below. [X] No

**Sign Here** — Joint return? See instructions. Keep a copy for your records.

Your occupation: C.E.O.

**Paid Preparer's Use Only**

Print/Type preparer's name: MICHAEL K. KHIM   Date 09/12/2012  Check [X] if self-employed  PTIN 7069

Firm's name ▶ MICHAEL K. KHIM ACCOUNTANCY CORPORATION   Firm's EIN ▶ 7994

Firm's address ▶ 3250 WILSHIRE BLVD STE 1705  LOS ANGELES  CA  90010   Phone no. (213) 736-6789

Form 1040 (2011)

FDIA0112  11/07/11

# Form 1040   U.S. Individual Income Tax Return   2012

Department of the Treasury — Internal Revenue Service   (99)

OMB No. 1545-0074   IRS Use Only — Do not write or staple in this space.

For the year Jan 1 - Dec 31, 2012, or other tax year beginning ____, 2012, ending ____, 20____

See separate instructions.

| | |
|---|---|
| Your first name and initial: LAURA   Last name: H  KIM | Your social security number: ___-__-8486 |
| If a joint return, spouse's first name and initial   Last name | Spouse's social security number |
| Home address (number and street). If you have a P.O. box, see instructions.   Apartment no. | ▲ Make sure the SSN(s) above and on line 6c are correct. |
| City, town or post office, state, and ZIP code. If you have a foreign address, also complete spaces below (see instructions). | Presidential Election Campaign |
| HAEUNDAE-GU, BUSAN | Check here if you, or your spouse if filing jointly, want $3 to go to this fund? Checking a box below will not change your tax or refund.   You   Spouse |
| Foreign country name: Korea, Republic of (South)   Foreign province/state/county: BUSAN   Foreign postal code | |

## Filing Status

Check only one box.

1. ☒ Single
2. ☐ Married filing jointly (even if only one had income)   **NH**
3. ☐ Married filing separately. Enter spouse's SSN above & full name here. ►
4. ☐ Head of household (with qualifying person). (See instructions.) If the qualifying person is a child but not your dependent, enter this child's name here. ►
5. ☐ Qualifying widow(er) with dependent child

## Exemptions

6a ☒ Yourself. If someone can claim you as a dependent, do not check box 6a .............

b ☐ Spouse ................................................

c Dependents:

POSTMARK 004 RECEIVED
LB NC
OCT 15 2014   OCT 21 2014
IRS Austin, TX SPC, Charlotte, NC

| (1) First name   Last name | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✓ child under age 17 qualifying for child tax cr (see instrs) |
|---|---|---|---|
| | | | |

If more than four dependents, see instructions and check here ... ► ☐

d Total number of exemptions claimed .........................................

Boxes checked on 6a and 6b .... **1**
No. of children on 6c who:
• lived with you ....
• did not live with you due to divorce or separation (see instrs) ...
Dependents on 6c not entered above .
Add numbers on lines above .... ► **1**

## Income

Attach Form(s) W-2 here. Also attach Forms W-2G and 1099-R if tax was withheld.

If you did not get a W-2, see instructions.

Enclose, but do not attach, any payment. Also, please use Form 1040-V.

| | | | |
|---|---|---|---|
| 7 | Wages, salaries, tips, etc. Attach Form(s) W-2 ...................... | 7 | 290,158. |
| 8a | Taxable interest. Attach Schedule B if required ...................... | 8a | 22,432. |
| b | Tax-exempt interest. Do not include on line 8a ...... 8b | | |
| 9a | Ordinary dividends. Attach Schedule B if required ................... | 9a | 14,611. |
| b | Qualified dividends ...................... 9b | 14,611. | |
| 10 | Taxable refunds, credits, or offsets of state and local income taxes .......... | 10 | 0. |
| 11 | Alimony received .......................................... | 11 | |
| 12 | Business income or (loss). Attach Schedule C or C-EZ ................. | 12 | |
| 13 | Capital gain or (loss). Att Sch D if reqd. If not reqd, ck here ..... ► ☐ | 13 | |
| 14 | Other gains or (losses). Attach Form 4797 ....................... | 14 | |
| 15a | IRA distributions ......... 15a | b Taxable amount ...... | 15b |
| 16a | Pensions and annuities .... 16a | b Taxable amount ...... | 16b |
| 17 | Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E .. | 17 | -4,716. |
| 18 | Farm income or (loss). Attach Schedule F ....................... | 18 | |
| 19 | Unemployment compensation .............................. | 19 | |
| 20a | Social security benefits ...... 20a | b Taxable amount ...... | 20b |
| 21 | Other income ........................................... | 21 | |
| 22 | Combine the amounts in the far right column for lines 7 through 21. This is your total income ..... ► | 22 | 322,485. |

## Adjusted Gross Income

| | | | |
|---|---|---|---|
| 23 | Educator expenses ............................ 23 | | |
| 24 | Certain business expenses of reservists, performing artists, and fee-basis government officials. Attach Form 2106 or 2106-EZ ...... 24 | | |
| 25 | Health savings account deduction. Attach Form 8889 ... 25 | | |
| 26 | Moving expenses. Attach Form 3903 ............ 26 | | |
| 27 | Deductible part of self-employment tax. Attach Schedule SE ... 27 | | |
| 28 | Self-employed SEP, SIMPLE, and qualified plans ... 28 | | |
| 29 | Self-employed health insurance deduction ......... 29 | | |
| 30 | Penalty on early withdrawal of savings .......... 30 | | |
| 31a | Alimony paid  b Recipient's SSN ... ► 31a | | |
| 32 | IRA deduction ............................. 32 | | |
| 33 | Student loan interest deduction ............... 33 | | |
| 34 | Tuition and fees. Attach Form 8917 ............. 34 | | |
| 35 | Domestic production activities deduction. Attach Form 8903 ... 35 | | |
| 36 | Add lines 23 through 35 ...................................... | 36 | |
| 37 | Subtract line 36 from line 22. This is your adjusted gross income ........... ► | 37 | 322,485. |

BAA For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see separate Instructions.   FDIA0112  01/11/13   Form 1040 (2012)

Form 1040 (2012)    LAURA H KIM                                                    ███████-3486    Page **2**

| | | | | | |
|---|---|---|---|---|---|
| **Tax and Credits** | **38** | Amount from line 37 (adjusted gross income) | | **38** | 322,485. |

**39 a** Check   [X] You were born before January 2, 1948,   [ ] Blind.   **Total boxes**
if:   [ ] Spouse was born before January 2, 1948,   [ ] Blind.   checked ▶ **39a**  1

**b** If your spouse itemizes on a separate return or you were a dual-status alien, check here ... ▶ **39b**

**Standard Deduction for —**
• People who check any box on line 39a or 39b or who can be claimed as a dependent, see instructions.
• All others:
Single or Married filing separately, $5,950
Married filing jointly or Qualifying widow(er), $11,900
Head of household, $8,700

| | | | |
|---|---|---|---|
| **40** | Itemized deductions (from Schedule A) or your standard deduction (see left margin) | **40** | 7,400. |
| **41** | Subtract line 40 from line 38 | **41** | 315,085. |
| **42** | Exemptions. Multiply $3,800 by the number on line 6d | **42** | 3,800. |
| **43** | Taxable income. Subtract line 42 from line 41. If line 42 is more than line 41, enter -0- | **43** | 311,285. |
| **44** | Tax (see instrs). Check if any from:  a [ ] Form(s) 8814   b [ ] Form 4972   c [ ] 962 election | **44** | 84,622. |
| **45** | Alternative minimum tax (see instructions). Attach Form 6251 | **45** | 1,841. |
| **46** | Add lines 44 and 45 ▶ | **46** | 86,463. |

| | | | | |
|---|---|---|---|---|
| **47** | Foreign tax credit. Attach Form 1116 if required | **47** | 68,737. | |
| **48** | Credit for child and dependent care expenses. Attach Form 2441 | **48** | | |
| **49** | Education credits from Form 8863, line 19 | **49** | | |
| **50** | Retirement savings contributions credit. Attach Form 8880 | **50** | | |
| **51** | Child tax credit. Attach Schedule 8812, if required | **51** | | |
| **52** | Residential energy credits. Attach Form 5695 | **52** | | |
| **53** | Other crs from Form: a [ ] 3800  b [ ] 8801  c [ ] | **53** | | |

| | | | |
|---|---|---|---|
| **54** | Add lines 47 through 53. These are your total credits | **54** | 68,737. |
| **55** | Subtract line 54 from line 46. If line 54 is more than line 46, enter -0- ▶ | **55** | 17,726. |

**Other Taxes**

| | | | |
|---|---|---|---|
| **56** | Self-employment tax. Attach Schedule SE | **56** | |
| **57** | Unreported social security and Medicare tax from Form: a [ ] 4137  b [ ] 8919 | **57** | |
| **58** | Additional tax on IRAs, other qualified retirement plans, etc. Attach Form 5329 if required | **58** | |
| **59 a** | Household employment taxes from Schedule H | **59 a** | |
| **b** | First-time homebuyer credit repayment. Attach Form 5405 if required | **59 b** | |
| **60** | Other taxes. Enter code(s) from instructions | **60** | |
| **61** | Add lines 55-60. This is your total tax ▶ | **61** | 17,726. |

**Payments**
If you have a qualifying child, attach Schedule EIC.

| | | | | |
|---|---|---|---|---|
| **62** | Federal income tax withheld from Forms W-2 and 1099 | **62** | 8,292. | |
| **63** | 2012 estimated tax payments and amount applied from 2011 return | **63** | | |
| **64 a** | Earned income credit (EIC) | **64 a** | | |
| **b** | Nontaxable combat pay election ▶ | **64 b** | | |
| **65** | Additional child tax credit. Attach Schedule 8812 | **65** | | |
| **66** | American opportunity credit from Form 8863, line 8 | **66** | | |
| **67** | Reserved | **67** | | |
| **68** | Amount paid with request for extension to file | **68** | | |
| **69** | Excess social security and tier 1 RRTA tax withheld | **69** | | |
| **70** | Credit for federal tax on fuels. Attach Form 4136 | **70** | | |
| **71** | Credits from Form: a [ ] 2439  b [ ] Reserved  c [ ] 8801  d [ ] 8885 | **71** | | |

| | | | |
|---|---|---|---|
| **72** | Add lns 62, 63, 64a, & 65-71. These are your total pmts ▶ | **72** | 8,292. |

**Refund**
Direct deposit? See instructions.

| | | | |
|---|---|---|---|
| **73** | If line 72 is more than line 61, subtract line 61 from line 72. This is the amount you overpaid | **73** | |
| **74 a** | Amount of line 73 you want refunded to you. If Form 8888 is attached, check here ... ▶ | **74 a** | |
| **b** | Routing number  XXXXXXXXX  ▶ c Type:  [ ] Checking  [ ] Savings | | |
| **d** | Account number  XXXXXXXXXXXXXXXXX | | |
| **75** | Amount of line 73 you want applied to your 2013 estimated tax ▶ | **75** | |

**Amount You Owe**

| | | | |
|---|---|---|---|
| **76** | Amount you owe. Subtract line 72 from line 61. For details on how to pay see instructions | **76** | 9,434. |
| **77** | Estimated tax penalty (see instructions) | **77** | |

**Third Party Designee**

Do you want to allow another person to discuss this return with the IRS (see instructions)? ....... [ ] Yes. Complete below.   [X] No.

Designee's name ▶                Phone no. ▶                Personal identification number (PIN) ▶

**Sign Here**
Joint return? See instructions.
Keep a copy for your records.

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Your signature _[signature]_  Date 10/06/14  Your occupation C.E.O.   Daytime phone number

Spouse's signature. If a joint return, both must sign.  Date   Spouse's occupation   If the IRS sent you an Identity Protection PIN, enter it here (see instrs)

**Paid Preparer Use Only**

Print/Type preparer's name MICHAEL K. KHIM   Preparer's signature _[signature]_   Date 10/07/2014   Check [X] if self-employed   PTIN 7069

Firm's name ▶ MICHAEL K. KHIM ACCOUNTANCY CORPORATION   Firm's EIN ▶ ████7994

Firm's address ▶ 3250 WILSHIRE BLVD STE 1705   LOS ANGELES   CA  90010   Phone no. (213) 736-6789

FDIA0112  01/11/13

Form **1040** (2012)

**CHI & NAM, LLP**                                        **EXHIBIT VI**
3731 WILSHIRE BLVD., SUITE 777   LOS ANGELES, CA 90010
TEL: 213-381-3239   FAX: 213-381-5152

*HENRY S. CHI*, CPA

Henry has 35 years of various accounting and taxation experiences including over 30 years in public accounting. He started his career as an auditor at Arthur Andersen & Co., after graduated from California State University, Los Angles.  He has been managing partner of Chi & Nam, LLP (formerly Henry S. Chi & Co.) for 26 years and has been working in accounting and audit, business and personal taxation, and consulting services.  Henry has been an active columnist in the Korea Daily mostly on the international taxation issues.

## EXPERIENCE:

### Chi & Nam, LLP (Formerly Henry S. Chi & Co.)

1996 ~Present
Founder & Managing Partner
Small and Large Business Accounting, taxation, business consulting.

### George S. Bay and Company

1995~1996
Audit Partner

### Pacific Holding Company

1991~1995
Controller
Manager of Financial Reporting
Manager of Internal Audit
Pacific Holding Company was the parent company of over 20 subsidiaries including Dole Food Co. Inc.

### Arthur Andersen & Co.

1987~1991
Senior Auditor

## EDUCATION:

Golden Gate University    M.S. in Taxation
California State Univ. at Los Angeles – B.S in Accounting
Korea University – B.S. in Business Administration

## ORGANIZATIONS:

Director – Korean-American CPA Society
Member – California Society of Certified Public Accountant

**CHI & NAM, LLP**
3731 WILSHIRE BLVD., SUITE 777   LOS ANGELES, CA 90010
TEL: 213-381-3239   FAX: 213-381-5152

**EXPERT WITNESS ENGAGEMENTS:**

Chung v. Miracle Restaurants [18STCV05982] (LASC)
Chang v. Park, [78M6493] (LASC)

# Exhibit 196

# *In The Matter Of:*

### *United States of America*
### *v.*
### *Laura Kim*

---

### *Michael K. Khim, CPA VOL I*

### *July 20, 2022*

---



**BENHYATT**
Certified Deposition Reporters

17835 Ventura Blvd. Suite 310 Encino, CA 91316
P 888.272.0022 F 818.343.7119
www.benhyatt.com

BH CDR Job # **1143403**
number of pages 54

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

---oOo---

_____

UNITED STATES OF AMERICA,            )
                                     )Case No.
                    Plaintiff,       )2:21-cv-06746-FMO-KS
                                     )
v.                                   )
                                     )
LAURA KIM,                           )
                                     )
                    Defendant.       )
_____)

DEPOSITION OF MICHAEL K. KHIM, CPA

VIA VIDEOCONFERENCE, LOS ANGELES, CALIFORNIA

WEDNESDAY, JULY 20, 2022

REPORTED BY:
CHRISTINA MONTANA, CSR NO. 11884
JOB NO. 1143403

Michael K. Khim, CPA - 7/20/2022

```
 1                    UNITED STATES DISTRICT COURT

 2                 FOR THE CENTRAL DISTRICT OF CALIFORNIA

 3                             ---oOo---

 4    _____
      UNITED STATES OF AMERICA,        )
 5                                      )Case No.
                     Plaintiff,        )2:21-cv-06746-FMO-KS
 6                                      )
      v.                               )
 7                                      )
      LAURA KIM,                        )
 8                                      )
                     Defendant.         )
 9    _____)

10

11

12

13

14

15

16

17          DEPOSITION OF MICHAEL K. KHIM, CPA, taken on

18    behalf of Plaintiff, via videoconference in Los Angeles,

19    California, commencing at 1:10 p.m., Wednesday, July 20,

20    2022, before CHRISTINA MONTANA, CSR Number 11884.

21

22

23

24

25
```

**Ben Hyatt Certified Deposition Reporters**
888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com

Michael K. Khim, CPA - 7/20/2022

```
 1    APPEARANCES OF COUNSEL:

 2

 3       FOR PLAINTIFF:

 4          UNITED STATES DEPARTMENT OF JUSTICE
            U.S. ATTORNEY'S OFFICE
 5          BY: GAVIN GREENE, ESQ.
            (Appearing via videoconference)
 6          300 North Los Angeles Street
            Federal Building, Room 7516
 7          Los Angeles, California  90012
            213.894.2879
 8          gavin.greene@usdoj.gov

 9

10       FOR DEFENDANT:

11          KOSTELANETZ & FINK, LLP
            BY: CAROLINE CIRAOLO, ESQ.
12          (Appearing via videoconference)
            BY: WILLIAM GRECO, ESQ.
13          (Appearing via videoconference)
            601 New Jersey Avenue NW, Suite 260
14          Washington, D.C.  20001
            202.875.8000
15          cciraolo@kflaw.com
            wgreco@kflaw.com
16

17          LAW OFFICES OF A. LAVAR TAYLOR
            BY: A. LAVAR TAYLOR, ESQ.
18          (Appearing via videoconference)
            BY: JONATHAN AMITRANO, ESQ.
19          (Appearing via videoconference)
            3 Hutton Center Drive, Suite 500
20          Santa Ana, California  92707
            ltaylor@taylorlaw.com
21          jamitrano@taylorlaw.com

22

23       Also present:  Mahima Chaudhary, Kostelanetz & Fink
                         Mia Bailey, Kostelanetz & Fink
24

25
```

Page 3

Michael K. Khim, CPA - 7/20/2022

```
 1   BY MR. GREENE:
 2        Q.   Speak clearly so the court reporter can hear
 3   you.
 4        A.   Okay.  These are the documents which in here
 5   there's supporting documents so --
 6             THE COURT REPORTER:  Counsel, can we go off
 7   the record?
 8             MR. GREENE:  Sure.  We're off the record.
 9             (Whereupon, a brief recess was taken.)
10   BY MR. GREENE:
11        Q.   Back on the record.
12             Mr. Khim, are you a certified public
13   accountant?
14        A.   Yes.  Correct.
15        Q.   How long have you been a CPA?
16        A.   It's going to be -- it's going to be over 30
17   years, 30 years.
18        Q.   Do you work for a CPA firm?
19        A.   No.  For myself.
20        Q.   You work for yourself?
21        A.   Yes.
22        Q.   And how long have you worked for yourself?
23        A.   About 30 years, 30 years, since 1997, I think,
24   1990.
25        Q.   Do you speak Korean?
```

Michael K. Khim, CPA - 7/20/2022

```
1              THE WITNESS:  Right.  Yes.  Yes.
2   BY MR. GREENE:
3       Q.   And it got an address with a city in
4   Los Angeles?
5       A.   Right.  They provide an address at Los Angeles
6   city.
7       Q.   And if I scroll down to Page 2, is that your
8   signature at the bottom?
9       A.   That's correct.
10      Q.   And so you -- you prepared her tax return for
11  2009; is that correct?
12      A.   That's correct.
13      Q.   And to be clear, it's her Form 1040 U.S.
14  individual income tax for 2009; correct?
15      A.   That's correct, yeah.  With Form W-2 and K-1
16  schedule and yeah, K-1 schedule -- K-1 schedule.
17      Q.   And you prepared her 1040 for the years 2009
18  through 2012; correct?
19      A.   2000 -- '13, through 2013.
20      Q.   Through 2013?
21      A.   Yeah.
22      Q.   Did you prepare any corporate returns at her
23  request?
24      A.   Yes.  She request me to prepare the corporate
25  tax return.  The corporate name was Laura bakers --
```

Ben Hyatt Certified Deposition Reporters
888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com

Michael K. Khim, CPA - 7/20/2022

```
 1   return for 2010?

 2        A.   I remember, but I don't know whether I could

 3   contact directly her, but I'm not sure.  I was not sure.

 4        Q.   Okay.  And so --

 5        A.   He was not here.

 6        Q.   I understand.

 7        A.   He was -- okay.  Usually and she was not here

 8   in Los Angeles so...

 9        Q.   Is that the end?

10        Did you say that usually she was not in

11   Los Angeles?

12        A.   Actually, she was not here.  She lived in

13   Korea, but usually we couldn't see her.

14        Q.   Does that mean that sometimes you could see

15   her?

16        A.   She was not here at the time.

17        Q.   Okay.

18        A.   She lived there.  She lived in Korea.

19        Q.   And how about for 2011?

20        What material did you receive to prepare for

21   income tax return for 2011?

22        A.   As the same time in 2009 and '10, I prepared

23   her income tax from W-2 from a San Diego corporation.  I

24   don't know the name of her -- I don't recall the name of

25   the corporation in San Diego -- and the Schedule K-1
```

Ben Hyatt Certified Deposition Reporters
888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com

Michael K. Khim, CPA - 7/20/2022

1    didn't make any question to her.

2         Q.   Okay.  So for tax years '09, '10, and 11 --

3         A.   Uh-huh.

4         Q.   -- you didn't know whether she had foreign

5    bank accounts and you didn't discuss with her?

6         A.   No, I think --

7         Q.   Hold on, hold on.

8         A.   Yeah.

9         Q.   So for tax years 2009, '10, and '11 --

10        A.   Uh-huh.

11        Q.   -- you didn't talk to her about the return was

12   prepared to discuss whether or not to include foreign

13   interest on her tax return; correct?

14        A.   No.  Actually, as I said, I just contact

15   Charlie Son.  She's sister-in-law -- sister-in-law at

16   the time.  I could get any information from him, not --

17   not Mrs. Kim.  I did not contact -- I could not

18   contact -- contact her directly.

19        Q.   Okay.  So for tax years 2009 through 2011,

20   when you needed information regarding Laura Kim, you

21   contacted her brother-in-law, Charlie Son; is that

22   correct?

23        A.   Yeah.  Right.

24        Q.   But for 2012 you had direct contact with Laura

25   Kim; correct?

Ben Hyatt Certified Deposition Reporters
888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com

Michael K. Khim, CPA - 7/20/2022

1           But you would have seen that deposit on the
2    account statements; correct?
3       A.   Yeah, yes.
4       Q.   And you prepared Laura's French bakery returns
5    starting in 2000 -- for tax year 2008 through tax year
6    2012; correct?
7       A.   Yes.
8       Q.   So you had access to Laura's French bakery
9    bank account information and books and records,
10   QuickBooks, for each year from 2009 through 2013,
11   correct, as you prepared those returns?
12      A.   Yeah.  2009, '10, '11, '12, '13, yes, yes.
13      Q.   And you prepared Laura Kim's personal returns
14   for 2009 through 2013; correct?
15      A.   Yes.
16      Q.   At the same time you had full access to the
17   company records; correct?
18      A.   You know that, actually, even though I
19   prepared those tax returns everywhere, I was not the
20   company accountant all the time.  Because sometimes I
21   was cut and somebody else -- some other accountant was
22   managing the funds or account in the company.  And I
23   think every year they came back to me to prepare income
24   tax return.  That's why I did not serve all years from
25   2009 through 2012, 2013.  Sometimes I was cut, but

Ben Hyatt Certified Deposition Reporters
888.272.0022  818.343.7040  Fax 818.343.7119  www.benhyatt.com

# Exhibit 197

Form **1120S**

Department of the Treasury
Internal Revenue Service

# U.S. Income Tax Return for an S Corporation

► Do not file this form unless the corporation has filed or is attaching Form 2553 to elect to be an S corporation.
► See separate Instructions.

OMB No. 1545-0130

**2008**

For calendar year 2008 or tax year beginning , 2008, ending .

| | | | | | |
|---|---|---|---|---|---|
| **A** S election effective date 04/17/97 | Use the IRS label. Other- wise, print or type. | **Name** LAURA'S FRENCH BAKING COMPANY, INC. | | **D** Employer identification number | 0 622 |
| **B** Business activity code number (see instrs) 311800 | | Number, street, and room or suite no. If a P.O. box, see instructions. 6721 ALAMEDA STREET | | **E** Date incorporated 04/17/97 | |
| **C** Check if Sch M-3 attached ☐ | | City or town, state, and ZIP code LOS ANGELES          CA 90001 | | **F** Total assets (see instructions) $ 317,671. | |

**G** Is the corporation electing to be an S corporation beginning with this tax year?   ☐ Yes  ☒ No   If 'Yes,' attach Form 2553 if not previously filed

**H** Check if:   (1) ☐ Final return   (2) ☐ Name change   (3) ☐ Address change   (4) ☐ Amended return   (5) ☐ S election termination or revocation

**I** Enter the number of shareholders who were shareholders during any part of the tax year ........................ ► 2

Caution. Include only trade or business income and expenses on lines 1a through 21. See the Instructions for more information.

| | | | | |
|---|---|---|---|---|
| **I N C O M E** | 1a Gross receipts or sales .. 1,860,311. | b Less returns and allowances .. 1,261. | c Bal ► | 1c 1,859,050. |
| | 2 Cost of goods sold (Schedule A, line 8) ........................... | | | 2 1,142,754. |
| | 3 Gross profit. Subtract line 2 from line 1c ........................... | | | 3 716,296. |
| | 4 Net gain (loss) from Form 4797, Part II, line 17 (attach Form 4797) .... | | | 4 |
| | 5 Other income (loss) (attach statement) ........................... | | | 5 |
| | 6 Total income (loss). Add lines 3 through 5 ........................ ► | | | 6 716,296. |
| **D E D U C T I O N S   S E E   I N S T R U C T I O N S** | 7 Compensation of officers ........................... | | | 7 |
| | 8 Salaries and wages (less employment credits) ........................ | | | 8 245,420. |
| | 9 Repairs and maintenance ........................... | | | 9 86,778. |
| | 10 Bad debts ........................... | | | 10 |
| | 11 Rents ........................... | | | 11 143,040. |
| | 12 Taxes and licenses ........................... | | | 12 56,720. |
| | 13 Interest ........................... | | | 13 6,557. |
| | 14 Depreciation not claimed on Schedule A or elsewhere on return (attach Form 4562) .. | | | 14 27,521. |
| | 15 Depletion (Do not deduct oil and gas depletion.) ........................ | | | 15 |
| | 16 Advertising ........................... | | | 16 585. |
| | 17 Pension, profit-sharing, etc, plans ........................... | | | 17 |
| | 18 Employee benefit programs ........................... | | | 18 374. |
| | 19 Other deductions (attach statement) ► STMT ................. | | | 19 308,835. |
| | 20 Total deductions. Add lines 7 through 19 ........................ ► | | | 20 875,830. |
| | 21 Ordinary business income (loss). Subtract line 20 from line 6 ............ | | | 21 -159,534. |
| **T A X   A N D   P A Y M E N T S** | 22a Excess net passive income or LIFO recapture tax (see instructions) ........ | 22a | | |
| | b Tax from Schedule D (Form 1120S) ........................... | 22b | | |
| | c Add lines 22a and 22b (see instructions for additional taxes) ............ | | | 22c |
| | 23a 2008 estimated tax payments and 2007 overpayment credited to 2008 ....... | 23a | | |
| | b Tax deposited with Form 7004 ........................... | 23b | | |
| | c Credit for federal tax paid on fuels (attach Form 4136) ................ | 23c | | |
| | d Add lines 23a through 23c ........................... | | | 23d |
| | 24 Estimated tax penalty (see instructions). Check if Form 2220 is attached ........ ► ☐ | | | 24 |
| | 25 Amount owed. If line 23d is smaller than the total of lines 22c and 24, enter amount owed .. | | | 25 |
| | 26 Overpayment. If line 23d is larger than the total of lines 22c and 24, enter amount overpaid .. | | | 26 |
| | 27 Enter amount from line 26 Credited to 2009 estimated tax ► | | Refunded ► | 27 |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

*COPY*

► _____ Signature of officer   Date

► PRESIDENT   Title

May the IRS discuss this return with the preparer shown below (see instructions)?   ☐ Yes  ☒ No

| | | | | |
|---|---|---|---|---|
| **Paid Preparer's Use Only** | Preparer's signature ► | Date 10/08/09 | Check if self-employed ☒ | Preparer's SSN or PTIN 2069 |
| | Firm's name (or yours if self-employed), address, and ZIP code ► | MICHAEL K. KHIM ACCOUNTANCY CORPORATION 3250 WILSHIRE BLVD STE 1705 LOS ANGELES          CA 90010 | EIN 7994 | |
| | | | Phone no. | |

BAA For Privacy Act and Paperwork Reduction Act Notice, see the separate Instructions.        SPSA0112  12/30/08        Form **1120S** (2008)

Form 1120S (2008)   LAURA'S FRENCH BAKING COMPANY, INC.                           0622      Page 2

## Cost of Goods Sold (see Instructions)

| | | | |
|---|---|---|---|
| 1 | Inventory at beginning of year | 1 | 69,076. |
| 2 | Purchases | 2 | 598.288. |
| 3 | Cost of labor | 3 | 362.772. |
| 4 | Additional section 263A costs (attach statement) | 4 | |
| 5 | Other costs (attach statement) ... * STMT. | 5 | 131,659. |
| 6 | Total. Add lines 1 through 5 | 6 | 1,161,795. |
| 7 | Inventory at end of year | 7 | 19,041. |
| 8 | Cost of goods sold. Subtract line 7 from line 6. Enter here and on page 1, line 2 | 8 | 1,142,754. |

9a Check all methods used for valuing closing inventory:

   (i) [X] Cost as described in Regulations section 1.471-3

   (ii) [ ] Lower of cost or market as described in Regulations section 1.471-4

   (iii) [ ] Other (Specify method used and attach explanation.) ▶ _____

  b Check if there was a writedown of subnormal goods as described in Regulations section 1.471-2(c) ........................ ▶ [ ]

  c Check if the LIFO inventory method was adopted this tax year for any goods (if checked, attach Form 970) ................ ▶ [ ]

  d If the LIFO inventory method was used for this tax year, enter percentage (or amounts) of closing inventory computed under LIFO ...... | 9d |

  e If property is produced or acquired for resale, do the rules of section 263A apply to the corporation? .................. [ ] Yes [X] No

  f Was there any change in determining quantities, cost, or valuations between opening and closing inventory? If 'Yes,' attach explanation .......... [ ] Yes [X] No

## Other Information (see Instructions)

| | | Yes | No |
|---|---|---|---|
| 1 | Check accounting method:  a [ ] Cash  b [X] Accrual  c [ ] Other (specify) ▶ _____ | | |
| 2 | See the Instructions and enter the: | | |
| | a Business activity ▶ WHOLESALE _____   b Product or service ... ▶ BAKERY _____ | | |
| 3 | At the end of the tax year, did the corporation own, directly or indirectly, 50% or more of the voting stock of a domestic corporation? (For rules of attribution, see section 267(c).) If 'Yes,' attach a statement showing: (a) name and employer Identification number (EIN), (b) percentage owned, and (c) if 100% owned. was a QSub election made? .................. | | X |
| 4 | Has this corporation filed, or is it required to file, a return under section 6111 to provide Information on any reportable transaction? .................. | | X |
| 5 | Check this box if the corporation issued publicly offered debt instruments with original issue discount ........ ▶ [ ] If checked, the corporation may have to file Form 8281, Information Return for Publicly Offered Original Issue Discount Instruments. | | |
| 6 | If the corporation: (a) was a C corporation before it elected to be an S corporation or the corporation acquired an asset with a basis determined by reference to its basis (or the basis of any other property) in the hands of a C corporation and (b) has net unrealized built-in gain (defined in section 1374(d)(1)) in excess of the net recognized built-in gain from prior years. enter the net unrealized built-in gain reduced by net recognized built-in gain from prior years .................. $ _____ | | |
| 7 | Enter the accumulated earnings and profits of the corporation at the end of the tax year ........ $ _____ | | |
| 8 | Are the corporation's total receipts (see Instructions) for the tax year and its total assets at the end of the tax year less than $250,000? If 'Yes,' the corporation is not required to complete Schedules L and M-1 .................. | | X |

## Shareholders' Pro Rata Share Items

| | | | Total amount |
|---|---|---|---|
| **I N C O M E (L O S S)** | 1 Ordinary business income (loss) (page 1, line 21) | 1 | −159 534. |
| | 2 Net rental real estate income (loss) (attach Form 8825) | 2 | |
| | 3a Other gross rental income (loss) | 3a | |
| | b Expenses from other rental activities (attach statement) | 3b | |
| | c Other net rental income (loss). Subtract line 3b from line 3a | 3c | |
| | 4 Interest income | 4 | |
| | 5 Dividends:  a Ordinary dividends | 5a | |
| | b Qualified dividends | 5b | |
| | 6 Royalties | 6 | |
| | 7 Net short-term capital gain (loss) (attach Schedule D (Form 1120S)) | 7 | |
| | 8a Net long-term capital gain (loss) (attach Schedule D (Form 1120S)) | 8a | |
| | b Collectibles (28%) gain (loss) | 8b | |
| | c Unrecaptured section 1250 gain (attach statement) | 8c | |
| | 9 Net section 1231 gain (loss) (attach Form 4797) | 9 | |
| | 10 Other income (loss) (see Instructions) | 10 | |

Form 1120S (2008)

SPSA0112   12/00/08

USA - 017386

Form 1120S (2008)   LAURA'S FRENCH BAKING COMPANY, INC.                    0622         Page 3
Shederholders' Pro Rata Share Items (continued)                             Total amount

| | | | | Total amount |
|---|---|---|---|---|
| **Deductions** | 11 | Section 179 deduction (attach Form 4562) | 11 | |
| | 12a | Contributions | 12a | |
| | b | Investment interest expense | 12b | |
| | c | Section 59(e)(2) expenditures (1) Type ▶ _____ (2) Amount ▶ | 12c (2) | |
| | d | Other deductions (see instructions) ... Type ▶ | 12d | |
| **Credits** | 13a | Low-income housing credit (section 42(j)(5)) | 13a | |
| | b | Low-income housing credit (other) | 13b | |
| | c | Qualified rehabilitation expenditures (rental real estate) (attach Form 3468) | 13c | |
| | d | Other rental real estate credits (see instrs)   Type ▶ | 13d | |
| | e | Other rental credits (see instrs)   Type ▶ | 13e | |
| | f | Alcohol and cellulosic biofuel fuels credit (attach Form 6478) | 13f | |
| | g | Other credits (see instructions) ..... Type ▶ | 13g | |
| **Foreign Transactions** | 14a | Name of country or U.S. possession ...... ▶ | | |
| | b | Gross income from all sources | 14b | |
| | c | Gross income sourced at shareholder level | 14c | |
| | | Foreign gross income sourced at corporate level | | |
| | d | Passive category | 14d | |
| | e | General category | 14e | |
| | f | Other (attach statement) | 14f | |
| | | Deductions allocated and apportioned at shareholder level | | |
| | g | Interest expense | 14g | |
| | h | Other | 14h | |
| | | Deductions allocated and apportioned at corporate level to foreign source income | | |
| | i | Passive category | 14i | |
| | j | General category | 14j | |
| | k | Other (attach statement) | 14k | |
| | | Other Information | | |
| | l | Total foreign taxes (check one): ▶ ☐ Paid   ☐ Accrued | 14l | |
| | m | Reduction in taxes available for credit (attach statement) | 14m | |
| | n | Other foreign tax information (attach statement) | | |
| **Alternative Minimum Tax (AMT) Items** | 15a | Post-1986 depreciation adjustment | 15a | 205. |
| | b | Adjusted gain or loss | 15b | |
| | c | Depletion (other than oil and gas) | 15c | |
| | d | Oil, gas, and geothermal properties — gross income | 15d | |
| | e | Oil, gas, and geothermal properties — deductions | 15e | |
| | f | Other AMT items (attach statement) | 15f | |
| **Items Affecting Shareholder Basis** | 16a | Tax-exempt interest income | 16a | |
| | b | Other tax-exempt income | 16b | |
| | c | Nondeductible expenses | 16c | 1,199. |
| | d | Property distributions | 16d | |
| | e | Repayment of loans from shareholders | 16e | |
| **Other Information** | 17a | Investment income | 17a | |
| | b | Investment expenses | 17b | |
| | c | Dividend distributions paid from accumulated earnings and profits | 17c | |
| | d | Other items and amounts (attach statement) | | |
| **Reconciliation** | 18 | Income/loss reconciliation. Combine the amounts on lines 1 through 10 in the far right column. From the result, subtract the sum of the amounts on lines 11 through 12d and lines 14l ... | 18 | -159,534. |

BAA                                                                 Form 1120S (2008)

SPSA0134   06/28/08

USA - 017387

Form 1120S (2008)   LAURA'S FRENCH BAKING COMPANY, INC.   ██████0622   Page 4

## Schedule L   Balance Sheets per Books

| Assets | (a) | (b) Beginning of tax year | (c) | (d) End of tax year |
|---|---|---|---|---|
| 1 Cash | | 8,228. | | 58,969. |
| 2a Trade notes and accounts receivable | 193,234. | | 108,659. | |
| b Less allowance for bad debts | 6,643. | 186,591. | | 108,659. |
| 3 Inventories | | 69,076. | | 19,041. |
| 4 U.S. government obligations | | | | |
| 5 Tax-exempt securities (see instructions) | | | | |
| 6 Other current assets (attach stmt) Ln. 6 St. | | 11. | | 117. |
| 7 Loans to shareholders | | | | |
| 8 Mortgage and real estate loans | | | | |
| 9 Other investments (attach statement) | | | | |
| 10a Buildings and other depreciable assets | 551,812. | | 577,943. | |
| b Less accumulated depreciation | 436,878. | 114,934. | 462,943. | 115,000. |
| 11a Depletable assets | | | | |
| b Less accumulated depletion | | | | |
| 12 Land (net of any amortization) | | | | |
| 13a Intangible assets (amortizable only) | | | | |
| b Less accumulated amortization | | | | |
| 14 Other assets (attach stmt) Ln. 14 St. | | 22,442. | | 15,885. |
| 15 Total assets | | 401,282. | | 317,671. |
| Liabilities and Shareholders' Equity | | | | |
| 16 Accounts payable | | 45,609. | | 59,011. |
| 17 Mortgages, notes, bonds payable in less than 1 year | | | | |
| 18 Other current liabilities (attach stmt) Ln. 18 St. | | 261,445. | | 403,501. |
| 19 Loans from shareholders | | 129,792. | | |
| 20 Mortgages, notes, bonds payable in 1 year or more | | | | |
| 21 Other liabilities (attach statement) | | | | |
| 22 Capital stock | | 100,000. | | 100,000. |
| 23 Additional paid-in capital | | 132,083. | | 182,083. |
| 24 Retained earnings | | -267,647. | | -426,924. |
| 25 Adjustments to shareholders' equity (att stmt) | | | | |
| 26 Less cost of treasury stock | | | | |
| 27 Total liabilities and shareholders' equity | | 401,282. | | 317,671. |

## Schedule M-1   Reconciliation of Income (Loss) per Books With Income (Loss) per Return

Note: Schedule M-3 required instead of Schedule M-1 if total assets are $10 million or more — see instructions

| | | | | |
|---|---|---|---|---|
| 1 Net income (loss) per books | -159,277. | 5 Income recorded on books this year not included on Schedule K, lines 1 through 10 (itemize): | | |
| 2 Income included on Schedule K, lines 1, 2, 3c, 4, 5a, 6, 7, 8a, 9, and 10, not recorded on books this year (itemize): | | a Tax-exempt interest  $ | | |
| 3 Expenses recorded on books this year not included on Schedule K, lines 1 through 12, and 14l (itemize): | | 6 Deductions included on Schedule K, lines 1 through 12, and 14l, not charged against book income this year (itemize): | | |
| a Depreciation  $ | | a Depreciation  $   1,456. | | 1,456. |
| b Travel and entertainment  $   872. | | | | |
| * STMT   327. | 1,199. | 7 Add lines 5 and 6 | | 1,456. |
| 4 Add lines 1 through 3 | -158,078. | 8 Income (loss) (Schedule K, ln 18). Ln 4 less ln 7 | | -159,534. |

## Schedule M-2   Analysis of Accumulated Adjustments Account, Other Adjustments Account, and Shareholders' Undistributed Taxable Income Previously Taxed (see instructions)

| | (a) Accumulated adjustments account | (b) Other adjustments account | (c) Shareholders' undistributed taxable income previously taxed |
|---|---|---|---|
| 1 Balance at beginning of tax year | -307,237. | | |
| 2 Ordinary income from page 1, line 21 | | | |
| 3 Other additions | | | |
| 4 Loss from page 1, line 21 | 159,534. | | |
| 5 Other reductions   * STMT | 1,199. | | |
| 6 Combine lines 1 through 5 | -467,970. | | |
| 7 Distributions other than dividend distributions | | | |
| 8 Balance at end of tax year. Subtract line 7 from line 6 | -467,970. | | |

EPSA0134   06/25/08   Form 1120S (2008)

USA - 017388

| Form **4562** | | **Depreciation and Amortization** (Including Information on Listed Property) | | OMB No. 1545-0172 **2008** |
|---|---|---|---|---|
| Department of the Treasury Internal Revenue Service (99) | | ► See separate instructions.    ► Attach to your tax return. | | Attachment Sequence No. **67** |

Name(s) shown on return: **LAURA'S FRENCH BAKING COMPANY, INC.**  
Identifying number: **0622**

Business or activity to which this form relates: **Form 1120S Line 21**

### Part I  Election To Expense Certain Property Under Section 179
Note: If you have any listed property, complete Part V before you complete Part I.

| | | | | |
|---|---|---|---|---|
| 1 | Maximum amount. See the instructions for a higher limit for certain businesses | 1 | $250,000. |
| 2 | Total cost of section 179 property placed in service (see instructions) | 2 | |
| 3 | Threshold cost of section 179 property before reduction in limitation (see instructions) | 3 | $800,000. |
| 4 | Reduction in limitation. Subtract line 3 from line 2. If zero or less, enter -0- | 4 | |
| 5 | Dollar limitation for tax year. Subtract line 4 from line 1. If zero or less, enter -0-. If married filing separately, see instructions | 5 | |

| 6 | (a) Description of property | (b) Cost (business use only) | (c) Elected cost |
|---|---|---|---|
| | | | |

| | | | | |
|---|---|---|---|---|
| 7 | Listed property. Enter the amount from line 29 | 7 | | |
| 8 | Total elected cost of section 179 property. Add amounts in column (c), lines 6 and 7 | 8 | |
| 9 | Tentative deduction. Enter the smaller of line 5 or line 8 | 9 | |
| 10 | Carryover of disallowed deduction from line 13 of your 2007 Form 4562 | 10 | |
| 11 | Business income limitation. Enter the smaller of business income (not less than zero) or line 5 (see instrs) | 11 | |
| 12 | Section 179 expense deduction. Add lines 9 and 10, but do not enter more than line 11 | 12 | |
| 13 | Carryover of disallowed deduction to 2009. Add lines 9 and 10, less line 12 ► | 13 | | |

Note: Do not use Part II or Part III below for listed property. Instead, use Part V.

### Part II  Special Depreciation Allowance and Other Depreciation (Do not include listed property.) (See instructions.)

| | | | |
|---|---|---|---|
| 14 | Special depreciation allowance for qualified property (other than listed property) placed in service during the tax year (see instructions) | 14 | |
| 15 | Property subject to section 168(f)(1) election | 15 | |
| 16 | Other depreciation (including ACRS) | 16 | 130. |

### Part III  MACRS Depreciation (Do not include listed property.) (See instructions.)

Section A

| | | | |
|---|---|---|---|
| 17 | MACRS deductions for assets placed in service in tax years beginning before 2008 | 17 | 23,662. |
| 18 | If you are electing to group any assets placed in service during the tax year into one or more general asset accounts, check here ► ☐ | | |

Section B — Assets Placed in Service During 2008 Tax Year Using the General Depreciation System

| (a) Classification of property | (b) Month and year placed in service | (c) Basis for depreciation (business/investment use only — see instructions) | (d) Recovery period | (e) Convention | (f) Method | (g) Depreciation deduction |
|---|---|---|---|---|---|---|
| 19a 3-year property | | | | | | |
| b 5-year property | | 500. | 5.0 yrs | MQ | 200DB | 75. |
| c 7-year property | | | | | | |
| d 10-year property | | | | | | |
| e 15-year property | | 22,225. | 15.0 yrs | MQ | Various | 269. |
| f 20-year property | | | | | | |
| g 25-year property | | | 25 yrs | | S/L | |
| h Residential rental property | | | 27.5 yrs | MM | S/L | |
| | | | 27.5 yrs | MM | S/L | |
| i Nonresidential real property | | | 39 yrs | MM | S/L | |
| | | | | MM | S/L | |

Section C — Assets Placed in Service During 2008 Tax Year Using the Alternative Depreciation System

| | | | | | | |
|---|---|---|---|---|---|---|
| 20 a Class life | | | | | S/L | |
| b 12-year | | | 12 yrs | | S/L | |
| c 40-year | | | 40 yrs | MM | S/L | |

### Part IV  Summary (See instructions.)

| | | | |
|---|---|---|---|
| 21 | Listed property. Enter amount from line 28 | 21 | 3,377. |
| 22 | Total. Add amounts from line 12, lines 14 through 17, lines 19 and 20 in column (g), and line 21. Enter here and on the appropriate lines of your return. Partnerships and S corporations — see instructions | 22 | 27,521. |
| 23 | For assets shown above and placed in service during the current year, enter the portion of the basis attributable to section 263A costs | 23 | |

BAA For Paperwork Reduction Act Notice, see separate instructions.    FDIZ0812 06/18/08    Form 4562 (2008)

USA - 017389

Form 4562 (2008)  LAURA'S FRENCH BAKING COMPANY, INC.  ▮▮▮▮0622  Page 2

**Part V** Listed Property (Include automobiles, certain other vehicles, cellular telephones, certain computers, and property used for entertainment, recreation, or amusement.)

Note: For any vehicle for which you are using the standard mileage rate or deducting lease expense, complete only 24a, 24b, columns (a) through (c) of Section A, all of Section B, and Section C if applicable.

**Section A — Depreciation and Other Information (Caution: See the instructions for limits for passenger automobiles.)**

24a Do you have evidence to support the business/investment use claimed? .......... [X] Yes [ ] No | 24b If 'Yes,' is the evidence written? ...... [X] Yes [ ] No

| (a) Type of property (list vehicles first) | (b) Date placed in service | (c) Business/ investment use percentage | (d) Cost or other basis | (e) Basis for depreciation (business/investment use only) | (f) Recovery period | (g) Method/ Convention | (h) Depreciation deduction | (i) Elected section 179 cost |
|---|---|---|---|---|---|---|---|---|
| 25 Special depreciation allowance for qualified listed property placed in service during the tax year and used more than 50% in a qualified business use (see instructions) .......... | | | | | | 25 | | |
| 26 Property used more than 50% in a qualified business use: | | | | | | | | |
| 30. Chevy Astro | 05/31/00 | 100.00 | 20,599. | 20,599. | 5.00 | 200DB/HY | 1,402. | |
| 33. Hyundai | 10/31/00 | 100.00 | 13,942. | 13,942. | 5.00 | 200DB/HY | 0. | |
| 48. Vehicle | 08/27/03 | 100.00 | 19,511. | 19,511. | 5.00 | 200DB/HY | 1,975. | |
| 27 Property used 50% or less in a qualified business use: | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| 28 Add amounts in column (h), lines 25 through 27. Enter here and on line 21, page 1 .......... | | | | | 28 | | 3,377. | |
| 29 Add amounts in column (i), line 26. Enter here and on line 7, page 1 .......... | | | | | | 29 | | |

**Section B — Information on Use of Vehicles**

Complete this section for vehicles used by a sole proprietor, partner, or other 'more than 5% owner,' or related person. If you provided vehicles to your employees, first answer the questions in Section C to see if you meet an exception to completing this section for those vehicles.

| | (a) Vehicle 1 | (b) Vehicle 2 | (c) Vehicle 3 | (d) Vehicle 4 | (e) Vehicle 5 | (f) Vehicle 6 |
|---|---|---|---|---|---|---|
| 30 Total business/investment miles driven during the year (do not include commuting miles) .......... | | | | | | |
| 31 Total commuting miles driven during the year .......... | | | | | | |
| 32 Total other personal (noncommuting) miles driven .......... | | | | | | |
| 33 Total miles driven during the year. Add lines 30 through 32 .......... | | | | | | |

| | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 34 Was the vehicle available for personal use during off-duty hours? .......... | | | | | | | | | | | | |
| 35 Was the vehicle used primarily by a more than 5% owner or related person? .......... | | | | | | | | | | | | |
| 36 Is another vehicle available for personal use? .......... | | | | | | | | | | | | |

**Section C — Questions for Employers Who Provide Vehicles for Use by Their Employees**

Answer these questions to determine if you meet an exception to completing Section B for vehicles used by employees who are not more than 5% owners or related persons (see instructions).

| | Yes | No |
|---|---|---|
| 37 Do you maintain a written policy statement that prohibits all personal use of vehicles, including commuting, by your employees? .......... | | |
| 38 Do you maintain a written policy statement that prohibits personal use of vehicles, except commuting, by your employees? See the instructions for vehicles used by corporate officers, directors, or 1% or more owners .......... | | |
| 39 Do you treat all use of vehicles by employees as personal use? .......... | | |
| 40 Do you provide more than five vehicles to your employees, obtain information from your employees about the use of the vehicles, and retain the information received? .......... | | |
| 41 Do you meet the requirements concerning qualified automobile demonstration use? (See instructions.) .......... | | |

Note: If your answer to 37, 38, 39, 40, or 41 is 'Yes,' do not complete Section B for the covered vehicles.

**Part VI** Amortization

| (a) Description of costs | (b) Date amortization begins | (c) Amortizable amount | (d) Code section | (e) Amortization period or percentage | (f) Amortization for this year |
|---|---|---|---|---|---|
| 42 Amortization of costs that begins during your 2008 tax year (see instructions): | | | | | |
| | | | | | |
| | | | | | |
| 43 Amortization of costs that began before your 2008 tax year .......... | | | | 43 | |
| 44 Total. Add amounts in column (f). See the instructions for where to report .......... | | | | 44 | |

FDIZ0812 06/12/08

Form 4562 (2008)

USA - 017390

**Schedule K-1**
(Form 1120S)

Department of the Treasury
Internal Revenue Service

**2008**

For calendar year 2008, or tax
year beginning _____ , 2008
ending _____

| | Final K-1 | | Amended K-1 | **L71108** |
|---|---|---|---|---|

OMB No. 1545-0130

**Part III** **Shareholder's Share of Current Year Income, Deductions, Credits, and Other Items**

**Shareholder's Share of Income, Deductions, Credits, etc.** ► See page 2 of form and separate instructions.

**Part I** **Information About the Corporation**

A  Corporation's employer identification number
▮▮▮0622

B  Corporation's name, address, city, state, and ZIP code
LAURA'S FRENCH BAKING COMPANY, INC.
6721 ALAMEDA STREET
LOS ANGELES, CA 90001

C  IRS Center where corporation filed return
Ogden, UT   84201-0013

**Part II** **Information About the Shareholder**

D  Shareholder's identifying number
▮▮▮2875

E  Shareholder's name, address, city, state, and ZIP code
STERLING J KIM
▮▮▮▮▮▮▮▮
LOS ANGELES, CA ▮▮▮▮

F  Shareholder's percentage of stock
ownership for tax year .............   10.00000 %

| | | |
|---|---|---|
| 1 Ordinary business income (loss) | 13 | Credits |
| -15,953. | | |
| 2 Net rental real estate income (loss) | | |
| 3 Other net rental income (loss) | | |
| 4 Interest income | | |
| 5a Ordinary dividends | | |
| 5b Qualified dividends | 14 | Foreign transactions |
| 6 Royalties | | |
| 7 Net short-term capital gain (loss) | | |
| 8a Net long-term capital gain (loss) | | |
| 8b Collectibles (28%) gain (loss) | | |
| 8c Unrecaptured section 1250 gain | | |
| 9 Net section 1231 gain (loss) | | |
| 10 Other income (loss) | 15 | Alternative minimum tax (AMT) items |
| | A | 21. |
| 11 Section 179 deduction | 16 | Items affecting shareholder basis |
| | C | 120. |
| 12 Other deductions | | |
| | 17 | Other information |

F
O
R

I
R
S

U
S
E

O
N
L
Y

*See attached statement for additional information.

BAA  For Paperwork Reduction Act Notice, see instructions for Form 1120S.                    Schedule K-1 (Form 1120S) 2008

SPSA0412   12/10/08

USA - 017391

671108

OMB No. 1545-0130

**Schedule K-1**
**(Form 1120S)**
Department of the Treasury
Internal Revenue Service

**2008**

☐ Final K-1   ☐ Amended K-1

For calendar year 2008, or tax
year beginning _____ , 2008
ending _____

**Shareholder's Share of Income, Deductions, Credits, etc.** ► See page 2 of form and separate instructions.

## Part I   Information About the Corporation

A Corporation's employer identification number
▮▮0622

B Corporation's name, address, city, state, and ZIP code
LAURA'S FRENCH BAKING COMPANY, INC.
6721 ALAMEDA STREET
LOS ANGELES, CA 90001

C IRS Center where corporation filed return
Ogden, UT  84201-0013

## Part II   Information About the Shareholder

D Shareholder's identifying number
▮▮8486

E Shareholder's name, address, city, state, and ZIP code
LAURA HI JA KIM
▮▮▮▮▮▮▮
LOS ANGELES, CA ▮▮▮

F Shareholder's percentage of stock
ownership for tax year .................. 90.00000 %

**Part III   Shareholder's Share of Current Year Income, Deductions, Credits, and Other Items**

| | | | |
|---|---|---|---|
| 1 | Ordinary business income (loss) | 13 | Credits |
| | 143,581. | | |
| 2 | Net rental real estate income (loss) | | |
| 3 | Other net rental income (loss) | | |
| 4 | Interest income | | |
| 5a | Ordinary dividends | | |
| 5b | Qualified dividends | 14 | Foreign transactions |
| 6 | Royalties | | |
| 7 | Net short-term capital gain (loss) | | |
| 8a | Net long-term capital gain (loss) | | |
| 8b | Collectibles (28%) gain (loss) | | |
| 8c | Unrecaptured section 1250 gain | | |
| 9 | Net section 1231 gain (loss) | | |
| 10 | Other income (loss) | 15 | Alternative minimum tax (AMT) items |
| | | A | 184. |
| 11 | Section 179 deduction | 16 | Items affecting shareholder basis |
| | | C | 1,079. |
| 12 | Other deductions | | |
| | | 17 | Other information |

FOR IRS USE ONLY

*See attached statement for additional information.

**BAA For Paperwork Reduction Act Notice, see Instructions for Form 1120S.**   Schedule K-1 (Form 1120S) 2008

SPSA0412   12/10/08

USA - 017392

# Exhibit 198

**Form 1120S**

Department of the Treasury
Internal Revenue Service

## U.S. Income Tax Return for an S Corporation

► Do not file this form unless the corporation has filed or is attaching Form 2553 to elect to be an S corporation.
► See separate instructions.

OMB No. 1545-0130

## 2009

For calendar year 2009 or tax year beginning                    , 2009, ending

| | | | |
|---|---|---|---|
| **A** S election effective date 04/17/97 | Use IRS label. Other-wise, print or type. | **Name** LADRA'S FRENCH BAKING COMPANY, INC. | **D** Employer identification number ████0622 |
| **B** Business activity code number (see instrs) 311800 | | Number, street, and room or suite no. If a P.O. box, see instructions. 6721 ALAMEDA STREET | **E** Incorporated 04/17/97 |
| **C** Check if Sch M-3 attached ☐ | | City or town, state, and ZIP code LOS ANGELES          CA 90001 | **F** Total assets (see instructions) $  541,197. |

**G** Is the corporation electing to be an S corporation beginning with this tax year?  ☐ Yes  ☒ No  If 'Yes,' attach Form 2553 if not previously filed

**H** Check if:  (1) ☐ Final return  (2) ☐ Name change  (3) ☐ Address change
(4) ☐ Amended return  (5) ☐ S election termination or revocation

**I** Enter the number of shareholders who were shareholders during any part of the tax year ............................ ► 2

Caution. Include only trade or business income and expenses on lines 1a through 21. See the instructions for more information.

| | | | |
|---|---|---|---|
| **I N C O M E** | **1a** Gross receipts or sales 1,933,251. **b** Less returns and allowances 136,943. **c** Bal ► | **1c** | 1,796,308. |
| | **2** Cost of goods sold (Schedule A, line 8) | **2** | 1,197,946. |
| | **3** Gross profit. Subtract line 2 from line 1c | **3** | 598,362. |
| | **4** Net gain (loss) from Form 4797, Part II, line 17 (attach Form 4797) | **4** | |
| | **5** Other income (loss) (attach statement) ....► STMT | **5** | 4,815. |
| | **6** Total income (loss). Add lines 3 through 5 ► | **6** | 603,177. |
| **D E D U C T I O N S (SEE INSTRS)** | **7** Compensation of officers | **7** | |
| | **8** Salaries and wages (less employment credits) | **8** | 306,147. |
| | **9** Repairs and maintenance | **9** | |
| | **10** Bad debts | **10** | |
| | **11** Rents | **11** | 143,040. |
| | **12** Taxes and licenses | **12** | 47,112. |
| | **13** Interest | **13** | |
| | **14** Depreciation not claimed on Schedule A or elsewhere on return (attach Form 4562) | **14** | 23,641. |
| | **15** Depletion (Do not deduct oil and gas depletion.) | **15** | |
| | **16** Advertising | **16** | |
| | **17** Pension, profit-sharing, etc, plans | **17** | |
| | **18** Employee benefit programs | **18** | |
| | **19** Other deductions (attach statement) ....► STMT | **19** | 210,318. |
| | **20** Total deductions. Add lines 7 through 19 ► | **20** | 730,258. |
| | **21** Ordinary business income (loss). Subtract line 20 from line 6 | **21** | -127,081. |

| | | | |
|---|---|---|---|
| **T A X  A N D  P A Y M E N T S** | **22a** Excess net passive income or LIFO recapture tax (see instructions) ........... **22a** | | |
| | **b** Tax from Schedule D (Form 1120S) ........... **22b** | | |
| | **c** Add lines 22a and 22b (see instructions for additional taxes) | **22c** | |
| | **23a** 2009 estimated tax payments and 2008 overpayment credited to 2009 ....... **23a** | | |
| | **b** Tax deposited with Form 7004 ........... **23b** | | |
| | **c** Credit for federal tax paid on fuels (attach Form 4136) ........... **23c** | | |
| | **d** Add lines 23a through 23c | **23d** | |
| | **24** Estimated tax penalty (see instructions). Check if Form 2220 is attached ............ ► ☐ | **24** | |
| | **25** Amount owed. If line 23d is smaller than the total of lines 22c and 24, enter amount owed | **25** | |
| | **26** Overpayment. If line 23d is larger than the total of lines 22c and 24, enter amount overpaid | **26** | |
| | **27** Enter amount from line 26 Credited to 2010 estimated tax ►          Refunded ► | **27** | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Signature of officer          Date          ► PRESIDENT
                                              Title

May the IRS discuss this return with the preparer shown below (see instructions)?  ☒ Yes  ☐ No

**Paid Preparer's Use Only**

| | | |
|---|---|---|
| Preparer's signature ✗ | Date 03/11/10 | Check if self-employed ☒  Preparer's SSN or PTIN ████7069 |
| Firm's name (or yours if self-employed), address, and ZIP code ► | MICHAEL K. KHIM ACCOUNTANCY CORPORATION 3250 WILSHIRE BLVD STE 1705 LOS ANGELES          CA 90010 | EIN ████7994  Phone no. (213) 736-6789 |

BAA For Privacy Act and Paperwork Reduction Act Notice, see the separate instructions.

SPSA0112  12/16/09          Form **1120S** (2009)

USA - 017348

Form 1120S (2009)   LAURA'S FRENCH BAKING COMPANY, INC.   0622   Page 3

**Shareholders' Pro Rata Share Items (continued)**

| | | | Total amount |
|---|---|---|---|
| **Deductions** | 11 Section 179 deduction *(attach Form 4562)* | 11 | |
| | 12a Contributions | 12a | |
| | b Investment interest expense | 12b | |
| | c Section 59(e)(2) expenditures (1) Type ▶ _____ (2) Amount ▶ | 12c (2) | |
| | d Other deductions *(see instructions)* . . . Type ▶ | 12d | |
| **Credits** | 13 a Low-income housing credit (section 42(j)(5)) | 13a | |
| | b Low-income housing credit (other) | 13b | |
| | c Qualified rehabilitation expenditures (rental real estate) *(attach Form 3468)* | 13c | |
| | d Other rental real estate credits *(see instrs)*  Type ▶ | 13d | |
| | e Other rental credits *(see instrs)*  Type ▶ _____ | 13e | |
| | f Alcohol and cellulosic biofuel fuels credit *(attach Form 6478)* | 13f | |
| | g Other credits *(see instructions)* . . . . . Type ▶ | 13g | |
| **Foreign Transactions** | 14a Name of country or U.S. possession . . . . . . ▶ | | |
| | b Gross income from all sources | 14b | |
| | c Gross income sourced at shareholder level | 14c | |
| | *Foreign gross income sourced at corporate level* | | |
| | d Passive category | 14d | |
| | e General category | 14e | |
| | f Other *(attach statement)* | 14f | |
| | *Deductions allocated and apportioned at shareholder level* | | |
| | g Interest expense | 14g | |
| | h Other | 14h | |
| | *Deductions allocated and apportioned at corporate level to foreign source income* | | |
| | i Passive category | 14i | |
| | j General category | 14j | |
| | k Other *(attach statement)* | 14k | |
| | *Other information* | | |
| | l Total foreign taxes (check one): ▶ ☐ Paid   ☐ Accrued | 14l | |
| | m Reduction in taxes available for credit | | |
| | *(attach statement)* | 14m | |
| | n Other foreign tax information *(attach statement)* | | |
| **Alternative Minimum Tax (AMT) Items** | 15a Post-1986 depreciation adjustment | 15a | -39. |
| | b Adjusted gain or loss | 15b | |
| | c Depletion (other than oil and gas) | 15c | |
| | d Oil, gas, and geothermal properties — gross income | 15d | |
| | e Oil, gas, and geothermal properties — deductions | 15e | |
| | f Other AMT items *(attach statement)* | 15f | |
| **Items Affecting Shareholder Basis** | 16a Tax-exempt interest income | 16a | |
| | b Other tax-exempt income | 16b | |
| | c Nondeductible expenses | 16c | |
| | d Property distributions | 16d | |
| | e Repayment of loans from shareholders | 16e | |
| **Other Information** | 17a Investment income | 17a | 1. |
| | b Investment expenses | 17b | |
| | c Dividend distributions paid from accumulated earnings and profits | 17c | |
| | d Other items and amounts | | |
| | *(attach statement)* | | |
| **Reconciliation** | 18 Income/loss reconciliation. Combine the amounts on lines 1 through 10 in the far right column. From the result, subtract the sum of the amounts on lines 11 through 12d and lines 14l | 18 | -127,080. |

BAA                                                                 Form 1120S (2009)

USA - 017349

Form 1120S (2009)  **LAURA'S FRENCH BAKING COMPANY, INC.**  ████ 0622  Page 4

### Schedule L — Balance Sheets per Books

| Assets | Beginning of tax year (a) | (b) | End of tax year (c) | (d) |
|---|---|---|---|---|
| 1 Cash | | 58,969. | | 278,558. |
| 2a Trade notes and accounts receivable | 108,659. | | 92,069. | |
| b Less allowance for bad debts | | 108,659. | | 92,069. |
| 3 Inventories | | 19,041. | | 15,025. |
| 4 U.S. government obligations | | | | |
| 5 Tax-exempt securities (see instructions) | | | | |
| 6 Other current assets (attach stmt) .. Ln. 6 St. | | 117. | | 0. |
| 7 Loans to shareholders | | | | |
| 8 Mortgage and real estate loans | | | | |
| 9 Other investments (attach statement) | | | | |
| 10a Buildings and other depreciable assets | 577,943. | | 601,244. | |
| b Less accumulated depreciation | 462,943. | 115,000. | 461,584. | 139,660. |
| 11a Depletable assets | | | | |
| b Less accumulated depletion | | | | |
| 12 Land (net of any amortization) | | | | |
| 13a Intangible assets (amortizable only) | | | | |
| b Less accumulated amortization | | | | |
| 14 Other assets (attach stmt) .. Ln. 14 St. | | 15,885. | | 15,885. |
| 15 Total assets | | 317,671. | | 541,197. |
| **Liabilities and Shareholders' Equity** | | | | |
| 16 Accounts payable | | 59,011. | | 66,916. |
| 17 Mortgages, notes, bonds payable in less than 1 year | | | | |
| 18 Other current liabilities (attach stmt) .. Ln 18 St | | -403,501. | | 546,202. |
| 19 Loans from shareholders | | | | 200,000. |
| 20 Mortgages, notes, bonds payable in 1 year or more | | | | |
| 21 Other liabilities (attach statement) | | | | |
| 22 Capital stock | | 100,000. | | 100,000. |
| 23 Additional paid-in capital | | 182,083. | | 182,083. |
| 24 Retained earnings | | -426,924. | | -554,004. |
| 25 Adjustments to shareholders' equity (att stmt) | | | | |
| 26 Less cost of treasury stock | | | | |
| 27 Total liabilities and shareholders' equity | | 317,671. | | 541,197. |

### Schedule M-1  Reconciliation of Income (Loss) per Books With Income (Loss) per Return
Note: Schedule M 3 required instead of Schedule M 1 if total assets are $10 million or more — see instructions

1 Net income (loss) per books — -127,080.
2 Income included on Schedule K, lines 1, 2, 3c, 4, 5a, 6, 7, 8a, 9, and 10, not recorded on books this year (itemize):
3 Expenses recorded on books this year not included on Schedule K, lines 1 through 12, and 14l (itemize):
a Depreciation ...... $
b Travel and entertainment . $
4 Add lines 1 through 3 . -127,080.
5 Income recorded on books this year not included on Schedule K, lines 1 through 10 (itemize):
a Tax-exempt interest . $
6 Deductions included on Schedule K, lines 1 through 12, and 14l, not charged against book income this year (itemize):
a Depreciation .... $
7 Add lines 5 and 6
8 Income (loss) (Schedule K, ln 18) Ln 4 less ln 7 -127,080.

### Schedule M-2  Analysis of Accumulated Adjustments Account, Other Adjustments Account, and Shareholders' Undistributed Taxable Income Previously Taxed (see instructions)

| | (a) Accumulated adjustments account | (b) Other adjustments account | (c) Shareholders' undistributed taxable income previously taxed |
|---|---|---|---|
| 1 Balance at beginning of tax year | -467,970. | | |
| 2 Ordinary income from page 1, line 21 | | | |
| 3 Other additions ... STMT | 1. | | |
| 4 Loss from page 1, line 21 | 127,081. | | |
| 5 Other reductions | | | |
| 6 Combine lines 1 through 5 | -595,050. | | |
| 7 Distributions other than dividend distributions | | | |
| 8 Balance at end of tax year. Subtract line 7 from line 6 | -595,050. | | |

SPSA0134  12/16/09

Form 1120S (2009)

USA - 017350

| Form **4562** | **Depreciation and Amortization** (Including Information on Listed Property) | | OMB No. 1545-0172 |
|---|---|---|---|
| Department of the Treasury Internal Revenue Service  (99) | ► See separate instructions.   ► Attach to your tax return. | | **2009** Attachment Sequence No. **67** |

Name(s) shown on return: **LAURA'S FRENCH BAKING COMPANY, INC.**

Identifying number: **0622**

Business or activity to which this form relates: **Form 1120S Line 21**

**Part I  Election To Expense Certain Property Under Section 179**
Note: *If you have any listed property, complete Part V before you complete Part I.*

| | | |
|---|---|---|
| 1 Maximum amount. See the instructions for a higher limit for certain businesses | 1 | $250,000. |
| 2 Total cost of section 179 property placed in service (see instructions) | 2 | |
| 3 Threshold cost of section 179 property before reduction in limitation (see instructions) | 3 | $800,000. |
| 4 Reduction in limitation. Subtract line 3 from line 2. If zero or less, enter -0- | 4 | |
| 5 Dollar limitation for tax year. Subtract line 4 from line 1. If zero or less, enter -0-. If married filing separately, see instructions | 5 | |

| 6 | (a) Description of property | (b) Cost (business use only) | (c) Elected cost |
|---|---|---|---|
| | | | |

| | | |
|---|---|---|
| 7 Listed property. Enter the amount from line 29 | 7 | |
| 8 Total elected cost of section 179 property. Add amounts in column (c), lines 6 and 7 | 8 | |
| 9 Tentative deduction. Enter the smaller of line 5 or line 8 | 9 | |
| 10 Carryover of disallowed deduction from line 13 of your 2008 Form 4562 | 10 | |
| 11 Business income limitation. Enter the smaller of business income (not less than zero) or line 5 (see instrs) | 11 | |
| 12 Section 179 expense deduction. Add lines 9 and 10, but do not enter more than line 11 | 12 | |
| 13 Carryover of disallowed deduction to 2010. Add lines 9 and 10, less line 12 ►| 13 | | |

Note: *Do not use Part II or Part III below for listed property. Instead, use Part V.*

**Part II  Special Depreciation Allowance and Other Depreciation** (Do not include listed property.) (See instructions.)

| | | |
|---|---|---|
| 14 Special depreciation allowance for qualified property (other than listed property) placed in service during the tax year (see instructions) | 14 | |
| 15 Property subject to section 168(f)(1) election | 15 | |
| 16 Other depreciation (including ACRS) | 16 | 1,136. |

**Part III  MACRS Depreciation** (Do not include listed property.) (See instructions.)

**Section A**

| | | |
|---|---|---|
| 17 MACRS deductions for assets placed in service in tax years beginning before 2009 | 17 | 20,836. |
| 18 If you are electing to group any assets placed in service during the tax year into one or more general asset accounts, check here ►☐ | | |

**Section B — Assets Placed in Service During 2009 Tax Year Using the General Depreciation System**

| (a) Classification of property | (b) Month and year placed in service | (c) Basis for depreciation (business/investment use only — see instructions) | (d) Recovery period | (e) Convention | (f) Method | (g) Depreciation deduction |
|---|---|---|---|---|---|---|
| 19a 3-year property | | | | | | |
| b 5-year property | | | | | | |
| c 7-year property | | | | | | |
| d 10-year property | | | | | | |
| e 15-year property | | | | | | |
| f 20-year property | | | | | | |
| g 25-year property | | | 25 yrs | | S/L | |
| h Residential rental property | | | 27.5 yrs | MM | S/L | |
| | | | 27.5 yrs | MM | S/L | |
| i Nonresidential real property | | | 39 yrs | MM | S/L | |
| | | | | MM | S/L | |

**Section C — Assets Placed in Service During 2009 Tax Year Using the Alternative Depreciation System**

| | | | | | | |
|---|---|---|---|---|---|---|
| 20a Class life | | | | | S/L | |
| b 12-year | | | 12 yrs | | S/L | |
| c 40-year | | | 40 yrs | MM | S/L | |

**Part IV  Summary** (See instructions.)

| | | |
|---|---|---|
| 21 Listed property. Enter amount from line 28 | 21 | 1,669. |
| 22 Total. Add amounts from line 12, lines 14 through 17, lines 19 and 20 in column (g), and line 21. Enter here and on the appropriate lines of your return. Partnerships and S corporations — see instructions | 22 | 23,641. |
| 23 For assets shown above and placed in service during the current year, enter the portion of the basis attributable to section 263A costs | 23 | |

BAA For Paperwork Reduction Act Notice, see separate instructions.    FDIZ0812 07/07/09    Form 4562 (2009)

USA - 017351

Form 4562 (2009)   LAURA'S FRENCH BAKING COMPANY, INC.   0622   Page 2

**Part V   Listed Property** (Include automobiles, certain other vehicles, cellular telephones, certain computers entertainment, recreation, or amusement.)

Note: For any vehicle for which you are using the standard mileage rate or deducting lease expense, complete only 24a, 24b, columns (a) through (c) of Section A, all of Section B, and Section C if applicable.

**Section A – Depreciation and Other Information (Caution: See the instructions for limits for passenger automobiles.)**

| 24a Do you have evidence to support the business/investment use claimed? | X Yes | No | 24b If 'Yes,' is the evidence written? | X Yes | No |
| --- | --- | --- | --- | --- | --- |

| (a) Type of property (list vehicles first) | (b) Date placed in service | (c) Business/ investment use percentage | (d) Cost or other basis | (e) Basis for depreciation (business/investment use only) | (f) Recovery period | (g) Method/ Convention | (h) Depreciation deduction | (i) Elected section 179 cost |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 25 Special depreciation allowance for qualified listed property placed in service during the tax year and used more than 50% in a qualified business use (see instructions) .................... 25 | | | | | | | | |
| 26 Property used more than 50% in a qualified business use: | | | | | | | | |
| 30. Chevy Astro | 05/31/00 | 100.00 | 20,599. | 20,599. | 5.00 | 200 DB-HY | 0. | |
| 33. Hyundai | 10/31/00 | 100.00 | 13,942. | 13,942. | 5.00 | 200 DB-HY | 0. | |
| 48. Vehicle | 08/27/03 | 100.00 | 19,511. | 19,511. | 5.00 | 200 DB-HY | 1,669. | |
| 27 Property used 50% or less in a qualified business use: | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| 28 Add amounts in column (h), lines 25 through 27. Enter here and on line 21, page 1 .................. 28 | | | | | | | 1,669. | |
| 29 Add amounts in column (i), line 26. Enter here and on line 7, page 1 ........................................ 29 | | | | | | | | |

**Section B – Information on Use of Vehicles**

Complete this section for vehicles used by a sole proprietor, partner, or other 'more than 5% owner,' or related person. If you provided vehicles to your employees, first answer the questions in Section C to see if you meet an exception to completing this section for these vehicles.

| | (a) Vehicle 1 | | (b) Vehicle 2 | | (c) Vehicle 3 | | (d) Vehicle 4 | | (e) Vehicle 5 | | (f) Vehicle 6 | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 30 Total business/investment miles driven during the year (do not include commuting miles) ........ | | | | | | | | | | | | |
| 31 Total commuting miles driven during the year ......... | | | | | | | | | | | | |
| 32 Total other personal (noncommuting) miles driven .................. | | | | | | | | | | | | |
| 33 Total miles driven during the year. Add lines 30 through 32 ........... | | | | | | | | | | | | |
| | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No |
| 34 Was the vehicle available for personal use during off-duty hours? .................. | | | | | | | | | | | | |
| 35 Was the vehicle used primarily by a more than 5% owner or related person? .......... | | | | | | | | | | | | |
| 36 Is another vehicle available for personal use? ....................... | | | | | | | | | | | | |

**Section C – Questions for Employers Who Provide Vehicles for Use by Their Employees**

Answer these questions to determine if you meet an exception to completing Section B for vehicles used by employees who are not more than 5% owners or related persons (see instructions).

| | Yes | No |
| --- | --- | --- |
| 37 Do you maintain a written policy statement that prohibits all personal use of vehicles, including commuting, by your employees? ........................................... | | |
| 38 Do you maintain a written policy statement that prohibits personal use of vehicles, except commuting, by your employees? See the instructions for vehicles used by corporate officers, directors, or 1% or more owners .................... | | |
| 39 Do you treat all use of vehicles by employees as personal use? ........................... | | |
| 40 Do you provide more than five vehicles to your employees, obtain information from your employees about the use of the vehicles, and retain the information received? ................ | | |
| 41 Do you meet the requirements concerning qualified automobile demonstration use? (See instructions.) .................... Note: If your answer to 37, 38, 39, 40, or 41 is 'Yes,' do not complete Section B for the covered vehicles. | | |

**Part VI   Amortization**

| (a) Description of costs | (b) Date amortization begins | (c) Amortizable amount | (d) Code section | (e) Amortization period or percentage | (f) Amortization for this year |
| --- | --- | --- | --- | --- | --- |
| 42 Amortization of costs that begins during your 2009 tax year (see instructions): | | | | | |
| | | | | | |
| | | | | | |
| 43 Amortization of costs that began before your 2009 tax year ........................ 43 | | | | | |
| 44 Total. Add amounts in column (f). See the instructions for where to report ......... 44 | | | | | |

FDZ0812 07/07/09

Form 4562 (2009)

USA - 017352

(b)(3)26 U S C § 6105

USA - 017353

Form 1120S (2009)   LAURA'S FRENCH BAKING COMPANY, INC.                    0622       Page 3

| | Shareholders' Pro Rata Share Items (continued) | | Total amount |
|---|---|---|---|
| **Deductions** | 11 Section 179 deduction *(attach Form 4562)* | 11 | |
| | 12a Contributions | 12a | |
| | b Investment interest expense | 12b | |
| | c Section 59(e)(2) expenditures (1) Type ► _____ (2) Amount ► | 12c (2) | |
| | d Other deductions *(see instructions)* ... Type ► | 12d | |
| **Credits** | 13a Low-income housing credit (section 42(j)(5)) | 13a | |
| | b Low-income housing credit (other) | 13b | |
| | c Qualified rehabilitation expenditures (rental real estate) *(attach Form 3468)* | 13c | |
| | d Other rental real estate credits *(see instrs)* Type ► | 13d | |
| | e Other rental credits *(see instrs)* Type ► | 13e | |
| | f Alcohol and cellulosic biofuel fuels credit *(attach Form 6478)* | 13f | |
| | g Other credits *(see instructions)* ...... Type ► | 13g | |
| **Foreign Transactions** | 14a Name of country or U.S. possession ► | | |
| | b Gross income from all sources | 14b | |
| | c Gross income sourced at shareholder level | 14c | |
| | *Foreign gross income sourced at corporate level* | | |
| | d Passive category | 14d | |
| | e General category | 14e | |
| | f Other *(attach statement)* | 14f | |
| | *Deductions allocated and apportioned at shareholder level* | | |
| | g Interest expense | 14g | |
| | h Other | 14h | |
| | *Deductions allocated and apportioned at corporate level to foreign source income* | | |
| | i Passive category | 14i | |
| | j General category | 14j | |
| | k Other *(attach statement)* | 14k | |
| | *Other information* | | |
| | l Total foreign taxes (check one): ► ☐ Paid  ☐ Accrued | 14l | |
| | m Reduction in taxes available for credit *(attach statement)* | 14m | |
| | n Other foreign tax information *(attach statement)* | | |
| **Alternative Minimum Tax (AMT) Items** | 15a Post-1986 depreciation adjustment | 15a | −39. |
| | b Adjusted gain or loss | 15b | |
| | c Depletion (other than oil and gas) | 15c | |
| | d Oil, gas, and geothermal properties — gross income | 15d | |
| | e Oil, gas, and geothermal properties — deductions | 15e | |
| | f Other AMT items *(attach statement)* | 15f | |
| **Items Affecting Shareholder Basis** | 16a Tax-exempt interest income | 16a | |
| | b Other tax-exempt income | 16b | |
| | c Nondeductible expenses | 16c | |
| | d Property distributions | 16d | |
| | e Repayment of loans from shareholders | 16e | |
| **Other Information** | 17a Investment income | 17a | 1. |
| | b Investment expenses | 17b | |
| | c Dividend distributions paid from accumulated earnings and profits | 17c | |
| | d Other items and amounts *(attach statement)* | | |
| **Reconciliation** | 18 Income/loss reconciliation. Combine the amounts on lines 1 through 10 in the far right column. From the result, subtract the sum of the amounts on lines 11 through 12d and lines 14l | 18 | −127,080. |

BAA                                                                Form 1120S (2009)

USA - 017354

(b)(3)26 U S C § 6105

USA - 017356

(b)(3)26 U S C § 6105

USA - 017357

(b)(3) 26 U S C § 6105

USA - 017358

Form 1120S (2009)

Page **3**

| | | Shareholders' Pro Rata Share Items (continued) | | Total amount |
|---|---|---|---|---|
| **Deductions** | 11 | Section 179 deduction *(attach Form 4562)* | 11 | |
| | 12a | Contributions | 12a | |
| | b | Investment interest expense | 12b | |
| | c | Section 59(e)(2) expenditures **(1)** Type ▶        **(2)** Amount ▶ | 12c(2) | |
| | d | Other deductions *(see instructions)*        Type ▶ | 12d | |
| **Credits** | 13a | Low-income housing credit (section 42(j)(5)) | 13a | |
| | b | Low-income housing credit (other) | 13b | |
| | c | Qualified rehabilitation expenditures (rental real estate) *(attach Form 3468)* | 13c | |
| | d | Other rental real estate credits *(see instructions)*        Type ▶ | 13d | |
| | e | Other rental credits (see instructions)        Type ▶ | 13e | |
| | f | Alcohol and cellulosic biofuels credit *(attach Form 6478)* | 13f | |
| | g | Other credits *(see instructions)*        Type ▶ | 13g | |
| **Foreign Transactions** | 14a | Name of country or U.S. possession   ▶ | | |
| | b | Gross income from all sources | 14b | |
| | c | Gross income sourced at shareholder level | 14c | |
| | | *Foreign gross income sourced at corporate level* | | |
| | d | Passive category | 14d | |
| | e | General category | 14e | |
| | f | Other *(attach statement)* | 14f | |
| | | *Deductions allocated and apportioned at shareholder level* | | |
| | g | Interest expense | 14g | |
| | h | Other | 14h | |
| | | *Deductions allocated and apportioned at corporate level to foreign source income* | | |
| | i | Passive category | 14i | |
| | j | General category | 14j | |
| | k | Other *(attach statement)* | 14k | |
| | | *Other information* | | |
| | l | Total foreign taxes (check one):  ▶ ☐ Paid  ☐ Accrued | 14l | |
| | m | Reduction in taxes available for credit *(attach statement)* | 14m | |
| | n | Other foreign tax information *(attach statement)* | | |
| **Alternative Minimum Tax (AMT) Items** | 15a | Post 1986 depreciation adjustment | 15a | -39 |
| | b | Adjusted gain or loss | 15b | |
| | c | Depletion (other than oil and gas) | 15c | |
| | d | Oil, gas, and geothermal properties—gross income | 15d | |
| | e | Oil, gas, and geothermal properties—deductions | 15e | |
| | f | Other AMT items *(attach statement)* | 15f | |
| **Items Affecting Shareholder Basis** | 16a | Tax-exempt interest income | 16a | |
| | b | Other tax-exempt income | 16b | |
| | c | Nondeductible expenses | 16c | |
| | d | Property distributions | 16d | |
| | e | Repayment of loans from shareholders | 16e | |
| **Other Information** | 17a | Investment income | 17a | 1 |
| | b | Investment expenses | 17b | |
| | c | Dividend distributions paid from accumulated earnings and profits | 17c | |
| | d | Other items and amounts *(attach statement)* | | |
| **Recon- ciliation** | 18 | **Income/loss reconciliation.** Combine the amounts on lines 1 through 10 in the far right column. From the result, subtract the sum of the amounts on lines 11 through 12d and 14l | 18 | 127,080 |

Form **1120S** (2009)

USA - 017359
7/25/2013

Form 1120S (2009)                                                                                        Page **4**

| Schedule L | Balance Sheets Per Books | Beginning of tax year | | End of tax year | |
|---|---|---|---|---|---|
| | Assets | (a) | (b) | (c) | (d) |
| | Cash . . . . . . . . | | 58,969 | | 278,558 |
| | Trade notes and accounts receivable | 108,659 | | 92,069 | |
| b | Less allowance for bad debts . . . | ( ) | 108,659 | ( ) | 92,069 |
| 3 | Inventories . . . . . . . | | 19,041 | | 15,025 |
| 4 | U.S. government obligations . . . | | | | |
| 5 | Tax exempt securities *(see instructions)*. . | | | | |
| 6 | Other current assets *(attach statement)* | | 117 | | 0 |
| 7 | Loans to shareholders . . . . | | | | |
| 8 | Mortgage and real estate loans . . | | | | |
| 9 | Other investments *(attach statement)* | | | | |
| 10a | Buildings and other depreciable assets | 577,943 | | 601,244 | |
| b | Less accumulated depreciation . . | (462,943) | 115,000 | (461,584) | 139,660 |
| 11a | Depletable assets . . . . . | | | | |
| b | Less accumulated depletion . . | ( ) | | ( ) | |
| 12 | Land (net of any amortization) . . | | | | |
| 13a | Intangible assets (amortizable only) | | | | |
| b | Less accumulated amortization . . | ( ) | | ( ) | |
| 14 | Other assets *(attach statement)*. . | | 15,885 | | 15,885 |
| 15 | Total assets . . . . . . | | 317,671 | | 541,197 |
| | **Liabilities and Shareholders' Equity** | | | | |
| 16 | Accounts payable . . . . . | | 59,011 | | 66,916 |
| 17 | Mortgages, notes, bonds payable in less than 1 year | | | | |
| | Other current liabilities *(attach statement)* | | 403,501 | | 546,202 |
| 19 | Loans from shareholders . . . | | | | 200,000 |
| 20 | Mortgages, notes, bonds payable in 1 year or more | | | | |
| 21 | Other liabilities *(attach statement)* | | | | |
| 22 | Capital stock . . . . . . | | 100,000 | | 100,000 |
| 23 | Additional paid-in capital . . . | | 182,083 | | 182,083 |
| 24 | Retained earnings . . . . . | | -426,924 | | -554,004 |
| 25 | Adjustments to shareholders' equity *(attach statement)* | | | | |
| 26 | Less cost of treasury stock . . | | ( ) | | ( ) |
| 27 | Total liabilities and shareholders' equity | | 317,671 | | 541,197 |

USA - 017360
7/25/2013

**Schedule M-1    Reconciliation of Income (Loss) per Books With Income (Loss) per Return**

Note: Schedule M-3 required instead of Schedule M-1 if total assets are $10 million or more—see instructions

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1 | Net income (loss) per books . . | -127,080 | 5 | Income recorded on books this year not included on Schedule K, lines 1 through 10 (itemize): | | | |
| 2 | Income included on Schedule K, lines 1, 2, 3c, 4, 5a, 6, 7, 8a, 9, and 10, not recorded on books this year (itemize): | | a | Tax-exempt interest | $ | | |
| 3 | Expenses recorded on books this year not included on Schedule K, lines 1 through 12 and 14l (itemize): | | 6 | Deductions included on Schedule K, lines 1 through 12 and 14l, not charged against book income this year (itemize): | | | |
| a | Depreciation | $ | a | Depreciation | $ | | |
| b | Travel and entertainment | $ | | | | | |
| | | | 7 | Add lines 5 and 6 . . . . | | | |
| 4 | Add lines 1 through 3 . . . . . | -127,080 | 8 | Income (loss) (Schedule K, line 18) Line 4 less line 7 | | | -127,080 |

**Schedule M-2    Analysis of Accumulated Adjustments Account, Other Adjustments Account, and Shareholders' Undistributed Taxable Income Previously Taxed** (see instructions)

| | | (a) Accumulated adjustments account | (b) Other adjustments account | (c) Shareholders' undistributed taxable income previously taxed |
|---|---|---|---|---|
| 1 | Balance at beginning of tax year . . . . . . . . | -467,970 | | |
| 2 | Ordinary income from page 1, line 21 . . . . . . | | | |
| 3 | Other additions . . . . . . . . . . . . | 1 | | |
| 4 | Loss from page 1, line 21 . . . . . . . . . . | (127,081) | | |
| 5 | Other reductions . . . . . . . . . . . . | ( ) | ( ) | |
| 6 | Combine lines 1 through 5 . . . . . . . . . | 595,050 | | |
| 7 | Distributions other than dividend distributions . . . . . | | | |
| 8 | Balance at end of tax year. Subtract line 7 from line 6 . . | -595,050 | | |

Form **1120S** (2009)

USA - 017361
7/25/2013

**Additional Data**

|  |  |
|---|---|
| **Software ID:** | |
| **Software Version:** | |
| **EIN:** | ▮▮▮▮0622 |
| **Name:** | LAURA'S FRENCH BAKING COMPANY INC |

**F1120S - Special Condition Description:**

| Special Condition Description |
|---|
| |

USA - 017362

7/25/2013

| efile GRAPHIC print - DO NOT PROCESS | LATEST DATA - Production | DLN: 93316071556900 |
| --- | --- | --- |

| Form **4562** | **Depreciation and Amortization** (Including Information on Listed Property) | OMB No. 1545-0172 **2009** |
| --- | --- | --- |
| Department of the Treasury Internal Revenue Service | ▶ **See separate instructions.**   ▶ **Attach to your tax return.** | Attachment Sequence No. **67** |

| Name(s) shown on return LAURA'S FRENCH BAKING COMPANY INC | Business or activity to which this form relates Form 1120S Line 21 | Identifying number |
| --- | --- | --- |

**Part I      Election To Expense Certain Property Under Section 179**
*Note: If you have any listed property, complete Part V before you complete Part I.*

| 1 Maximum amount. See the instructions for a higher limit for certain businesses . . . . . | 1 | $ 125,000 |
| --- | --- | --- |
| 2 Total cost of section 179 property placed in service (see instructions) . . . . . . | 2 | |
| 3 Threshold cost of section 179 property before reduction in limitation (see instructions) . . . . | 3 | $ 500,000 |
| 4 Reduction in limitation. Subtract line 3 from line 2. If zero or less, enter -0- . . . . | 4 | |
| 5 Dollar limitation for tax year. Subtract line 4 from line 1. If zero or less, enter -0-. If married filing separately, see instructions . . . . . . . . . . . . . . | 5 | |

| (a) Description of property | (b) Cost (business use only) | (c) Elected cost |
| --- | --- | --- |
| 6 | | |

| 7 Listed property. Enter the amount from line 29 . . . . . | 7 | | |
| --- | --- | --- | --- |
| 8 Total elected cost of section 179 property. Add amounts in column (c), lines 6 and 7 . . | 8 | |
| 9 Tentative deduction. Enter the smaller of line 5 or line 8 . . . . . . | 9 | |
| 10 Carryover of disallowed deduction from line 13 of your 2008 Form 4562 . . . | 10 | |
| 11 Business income limitation. Enter the smaller of business income (not less than zero) or line 5 (see instructions). | 11 | |
| ...ection 179 expense deduction. Add lines 9 and 10, but do not enter more than line 11 | 12 | |
| 13 Carryover of disallowed deduction to 2010 Add lines 9 and 10, less line 12 . ▶ | 13 | | |

**Note:** *Do not use Part II or Part III below for listed property. Instead, use Part V.*

**Part II      Special Depreciation Allowance and Other Depreciation (Do not include listed property.) (See instructions.)**

| 14 Special depreciation allowance for qualified property (other than listed property) placed in service during the tax year (see instructions) . . . . . . . | 14 | |
| --- | --- | --- |
| 15 Property subject to section 168(f)(1) election . . . . . . | 15 | |
| 16 Other depreciation (including ACRS) . . . . . | 16 | 1,136 |

**Part III      MACRS Depreciation (Do not include listed property.) (See instructions.)**

**Section A**

| 17 MACRS deductions for assets placed in service in tax years beginning before 2009 . . | 17 | 20,836 |
| --- | --- | --- |
| 18 If you are electing to group any assets placed in service during the tax year into one or more general asset accounts, check here . . . . . . . . . . ▶ ⌐ | | |

**Section B—Assets Placed in Service During 2009 Tax Year Using the General Depreciation System**

| (a) Classification of property | (b) Month and year placed in service | (c) Basis for depreciation (business/investment use only—see instructions) | (d) Recovery period | (e) Convention | (f) Method | (g)Depreciation deduction |
| --- | --- | --- | --- | --- | --- | --- |
| 19a 3-year property | | | | | | |
| b 5-year property | | | | | | |
| c 7-year property | | | | | | |
| d 10-year property | | | | | | |
| e 15-year property | | | | | | |
| f 20-year property | | | | | | |
| g 25-year property | | | 25 yrs. | | S/L | |
| h Residential rental roperty | | | 27.5 yrs. | MM | S/L | |
| | | | 27.5 yrs. | MM | S/L | |
| onresidential real property | | | 39 yrs. | MM | S/L | |
| | | | | MM | S/L | |

**Section C—Assets Placed in Service During 2009 Tax Year Using the Alternative Depreciation System**

| 20a Class life | | | | | S/L | |
| --- | --- | --- | --- | --- | --- | --- |
| b 12-year | | | 12 yrs. | | S/L | |

USA - 017363

| (a) Classification of property | (b) Month and year placed in service | (c) Basis for depreciation (business/investment use only—see instructions) | (d) Recovery period | (e) Convention | (f) Method | | (g) Depreciation deduction |
|---|---|---|---|---|---|---|---|
| 40-year | | | 40 yrs. | MM | S/L | | |

**t IV   Summary** (see instructions)

| | | | |
|---|---|---|---|
| **21** Listed property. Enter amount from line 28     .     .     .     .     .     .     .     .     .     .     .     .     . | | **21** | 1,669 |
| **22 Total.** Add amounts from line 12, lines 14 through 17, lines 19 and 20 in column (g), and line 21. Enter here and on the appropriate lines of your return. Partnerships and S corporations—see instructions.     .     .     .     . | | **22** | 23,641 |
| **23** For assets shown above and placed in service during the current year, enter the portion of the basis attributable to section 263A costs     .     .     .     .     .     .     . | **23** | | |

For Paperwork Reduction Act Notice, see separate instructions.     Cat. No. 12906N                         Form **4562** (2009)

USA - 017364
7/25/2013

Form 4562 (2009)                                                                                               Page **2**

**Part V**   **Listed Property** (Include automobiles, certain other vehicles, cellular telephones, certain computers, and property used for entertainment, recreation, or amusement.)

**Note:** *For any vehicle for which you are using the standard mileage rate or deducting lease expense, complete only 24a, 24b, columns (a) through (c) of Section A, all of Section B, and Section C if applicable.*

**Section A—Depreciation and Other Information (Caution: See the instructions for limits for passenger automobiles.)**

| 24a Do you have evidence to support the business/investment use claimed? ☑ Yes ☐ No | | 24b If "Yes," is the evidence written? ☑ Yes ☐ No | |

| (a) Type of property (list vehicles first) | (b) Date placed in service | (c) Business/ Investment use percentage | (d) Cost or other basis | (e) Basis for depreciation (business/investment use only) | (f) Recovery period | (g) Method/ Convention | (h) Depreciation/ deduction | (i) Elected section 179 cost |
|---|---|---|---|---|---|---|---|---|
| **25** Special depreciation allowance for qualified listed property placed in service during the tax year and used more than 50% in a qualified business use (see instructions) . . . . . . . | | | | | **25** | | | |
| **26** Property used more than 50% in a qualified business use: | | | | | | | | |
| 30. Chevy Astro | 2000-05-31 | 100.000 % | 20,599 | 20,599 | 5.0 | | | |
| 33. Hyundai | 2000-10-31 | 100.000 % | 13,942 | 13,942 | 5.0 | | | |
| 4B. Vehicle | 2003-08-27 | 100.000 % | 19,511 | 19,511 | 5.0 | | 1,669 | |
| **27** Property used 50% or less in a qualified business use: | | | | | | | | |
| | | % | | | S/L - | | | |
| | | % | | | S/L - | | | |
| | | % | | | S/L - | | | |
| **28** Add amounts in column (h), lines 25 through 27. Enter here and on line 21, page 1 . | | | | | **28** | | 1,669 | |
| **29** Add amounts in column (i), line 26. Enter here and on line 7, page 1 . . . . . . | | | | | | **29** | | |

**Section B—Information on Use of Vehicles**

Complete this section for vehicles used by a sole proprietor, partner, or other "more than 5% owner," or related person.
If you provided vehicles to your employees, first answer the questions in Section C to see if you meet an exception to completing this section for those vehicles.

| | (a) Vehicle 1 | | (b) Vehicle 2 | | (c) Vehicle 3 | | (d) Vehicle 4 | | (e) Vehicle 5 | | (f) Vehicle 6 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **30** Total business/investment miles driven during the year (**do not** include commuting miles) . . | | | | | | | | | | | | |
| **31** Total commuting miles driven during the year . | | | | | | | | | | | | |
| **32** Total other personal (noncommuting) miles driven | | | | | | | | | | | | |
| **33** Total miles driven during the year. Add lines 30 through 32 . . . . . . | | | | | | | | | | | | |
| | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No |
| **34** Was the vehicle available for personal use during off-duty hours? . . . . | | | | | | | | | | | | |
| **35** Was the vehicle used primarily by a more than 5% owner or related person? . . . . | | | | | | | | | | | | |
| **36** Is another vehicle available for personal use? | | | | | | | | | | | | |

**Section C—Questions for Employers Who Provide Vehicles for Use by Their Employees**

Answer these questions to determine if you meet an exception to completing Section B for vehicles used by employees who **are not** more than 5% owners or related persons (see instructions).

| | | Yes | No |
|---|---|---|---|
| **37** Do you maintain a written policy statement that prohibits all personal use of vehicles, including commuting, by your employees? . . . . . . . . . . . . | | | |
| **38** Do you maintain a written policy statement that prohibits personal use of vehicles, except commuting, by your employees? See the instructions for vehicles used by corporate officers, directors, or 1% or more owners . . . . | | | |
| **39** Do you treat all use of vehicles by employees as personal use? . . . . . . . . . . | | | |
| **40** Do you provide more than five vehicles to your employees, obtain information from your employees about the use of the vehicles, and retain the information received? . . . . . . . . . . | | | |
| **41** Do you meet the requirements concerning qualified automobile demonstration use? (See instructions.) . . . . | | | |
| **Note:** If your answer to 37, 38, 39, 40, or 41 is "Yes," do not complete Section B for the covered vehicles. | | | |

**Part VI**   **Amortization**

| (a) Description of costs | (b) Date amortization begins | (c) Amortizable amount | (d) Code section | (e) Amortization period or percentage | (f) Amortization for this year |
|---|---|---|---|---|---|
| **42** Amortization of costs that begins during your 2009 tax year (see instructions): | | | | | |
| | | | | | |
| | | | | | |
| **43** Amortization of costs that began before your 2009 tax year . . . . . . . . . | | | **43** | | |
| **44** Total. Add amounts in column (f). See the instructions for where to report . . . . . | | | **44** | | |

Form **4562** (2009)

**Additional Data**

**Software ID:**
**Software Version:**
**EIN:** ███████0622
**Name:** LAURA'S FRENCH BAKING COMPANY INC

efile **GRAPHIC** print - **DO NOT PROCESS** | **LATEST DATA - Production** | DLN: 93316071556900

## TY 2009 Accumulated Adjustments
## Account - Other Additions Schedule

**Name:** LAURA'S FRENCH BAKING COMPANY INC
**EIN:** ▮▮▮▮0622
**Regulation:** IRC section 1368(e)(1)

| Type | Amount |
|---|---|
| INTEREST INCOME | 1 |

| efile GRAPHIC print - DO NOT PROCESS | LATEST DATA - Production | | DLN: 93316071556900 |

## TY 2009 Itemized Other Assets Schedule

**Name:** LAURA'S FRENCH BAKING COMPANY INC

**EIN:** ████0622

| Corporation Name | Corporation EIN | Other Assets Description | Beginning Amount | Ending Amount |
|---|---|---|---|---|
| | | LEASE DEPOSITS | 15,885 | 15,885 |

USA - 017368

7/25/2013

efile GRAPHIC print - DO NOT PROCESS | LATEST DATA - Production | DLN: 93316071556900

## TY 2009 Itemized Other Costs Schedule

**Name:** LAURA'S FRENCH BAKING COMPANY INC

**EIN:** ▮▮▮▮0622

| Corporation Name | Corporation EIN | Type of Other Cost | Amount of Other Cost |
|---|---|---|---|
| | | BAKERY TOOLS & PAPER SUPPLIES | 78,578 |
| | | CLEANING & JANITORIAL SERVICE | 3,050 |
| | | DISPOSAL & TRASH | 17,522 |
| | | FREIGHT & SHIPPING | 19,527 |
| | | PAYROLL TAXES | 34,841 |
| | | R & MAINT EQUIPMENT | 53,162 |
| | | INSURANCE | 41,178 |
| | | FACTORY MEDICAL EXPENSES | 2,160 |
| | | PAYROLL PROCESSING EXPENSES | 2,129 |
| | | LABORATORY FEE | 460 |
| | | LINENS AND LAUNDRY | 13,232 |
| | | SAFETY SUPPLIES | 1,761 |

USA - 017369
7/25/2013

| efile GRAPHIC print - DO NOT PROCESS | LATEST DATA - Production | | DLN: 9331607155690O |

## TY 2009 Itemized Other Current Assets
**hedule**

**Name:** LAURA'S FRENCH BAKING COMPANY INC

**EIN:** ▮▮▮▮0622

| Corporation Name | Corporation EIN | Other Current Assets Description | Beginning Amount | Ending Amount |
|---|---|---|---|---|
| | | EMPLOYEE ADVANCE | 117 | |

USA - 017370

7/25/2013

efile GRAPHIC print - DO NOT PROCESS | LATEST DATA - Production | DLN: 93316071556900

## TY 2009 Itemized Other Current Liabilities Schedule

**Name:** LAURA'S FRENCH BAKING COMPANY INC

**EIN:** ███ 0622

| Corporation Name | Corporation EIN | Description | Beginning Amount | Ending Amount |
|---|---|---|---|---|
| | | ACCRUED RENT | 397,290 | 540,330 |
| | | GARNISHMENT PAYABLE | 339 | |
| | | REBATE PAYABLE | 5,872 | 5,872 |

USA - 017371

7/25/2013

| efile GRAPHIC print - DO NOT PROCESS | LATEST DATA - Production | | DLN: 93316071556900 |
| --- | --- | --- | --- |

## TY 2009 Itemized Other Income (Loss)
### hedule

**Name:** LAURA'S FRENCH BAKING COMPANY INC

**EIN:** ████ 0622

| Type | Amount |
| --- | --- |
| RENTAL INCOME FOR MOVIE SET | 4,815 |

USA - 017372

efile GRAPHIC print - DO NOT PROCESS | LATEST DATA - Production | DLN: 93316071556900

## TY 2009 Other Deductions Schedule

**Name:** LAURA'S FRENCH BAKING COMPANY INC

**EIN:** ▮▮▮0622

| Description | Foreign Amount (should only be used when attached to 5471 Schedule C Line 16) | Amount |
|---|---|---|
| ACCOUNTING | | 11,800 |
| AUTOMOBILE AND TRUCK EXPENSE | | 953 |
| BANK CHARGES | | 192 |
| COMMISSIONS | | 15,131 |
| COMPUTER SERVICES AND SUPPLIES | | 26,974 |
| EQUIPMENT RENT | | 27,932 |
| INSURANCE | | 22,743 |
| LEGAL AND PROFESSIONAL | | 4,464 |
| MISCELLANEOUS | | 321 |
| OFFICE EXPENSE | | 7,480 |
| SUPPLIES | | 4,211 |
| EPHONE | | 9,220 |
| TRAVEL | | 3,415 |
| ALARM AND SECURITY | | 3,089 |
| COMMUNITY ACTIVITIES & SUPPORT | | 487 |
| INSPECTION | | 1,045 |
| MARKETING AUTO EXP | | 13,693 |
| PROMOTION | | 57,168 |

USA - 017373

| efile GRAPHIC print - DO NOT PROCESS | LATEST DATA - Production | | DLN: 92567071267580 |
|---|---|---|---|

671109

| | □ Final K 1 | □ Amended K-1 | OMB No. 1545-0130 |

**Schedule K-1**
**(Form 1120S)**

**2009**

Department of the Treasury
Internal Revenue Service

For calendar year 2009, or tax
year beginning    01 01-2009
ending    12 31 2009

**Shareholder's Share of Income, Deductions, Credits, etc.** ▸ See back of form and separate instructions.

**Part I   Information About the Corporation**

**A**  Corporation's employer identification number
0622

**B**  Corporation's name, address, city, state, and ZIP code
LAURA'S FRENCH BAKING COMPANY INC

6721 ALAMEDA STREET
LOS ANGELES, CA  90001

**C**  IRS Center where corporation filed return
OGDEN

**Part II   Information About the Shareholder**

**D**  Shareholder's Identifying number
2875

**E**  Shareholder's name, address, city, state, and ZIP code
STERLING J KIM

**F**  Shareholder's percentage of stock
ownership for tax year   .   .   .   .   .   10.000 %

**Part III   Shareholder's Share of Current Year Income, Deductions, Credits, and Other Items**

| 1 | Ordinary business income (loss) | 13 | Credits |
|---|---|---|---|
| | 12,708 | | |
| 2 | Net rental real estate income (loss) | 14 | Foreign transactions |
| 3 | Other net rental income (loss) | 15 | Alternative minimum tax (AMT) items |
| 4 | Interest income | A | 4 |
| 5a | Ordinary dividends | 16 | Items affecting shareholder basis |
| 5b | Qualified dividends | | 17 | Other information |
| 6 | Royalties | A | |
| 7 | Net short term capital gain (loss) | | |
| 8a | Net long term capital gain (loss) | | |
| 8b | Collectibles (28%) gain (loss) | | |
| 8c | Unrecaptured section 1250 gain | | |
| 9 | Net section 1231 gain (loss) | | |
| 10 | Other income (loss) | | |
| 11 | Section 179 deduction | | |
| 12 | Other deductions | | |

* See attached statement for additional information.

For IRS Use Only

USA - 017374

For Paperwork Reduction Act Notice, see Instructions for Form 1120S.        Cat. No. 11520D        Schedule K-1 (Form 1120S) 2009

## Additional Data

|  |  |
|---:|:---|
| **Software ID:** |  |
| **Software Version:** |  |
| **EIN:** | ▪▪▪▪0622 |
| **Name:** | LAURA'S FRENCH BAKING COMPANY INC |

**Form 1120S Schedule K-1, Line E - Shareholder Name Control:** STER

USA - 017376

| efile GRAPHIC print - DO NOT PROCESS | LATEST DATA - Production | DLN: 92567071251540 |

671109

| | | ☐ Final K-1 | ☐ Amended K-1 | OMB No. 1545-0130 |

**Schedule K-1
(Form 1120S)**

**2009**

Department of the Treasury
Internal Revenue Service

For calendar year 2009, or tax
year beginning   01-01-2009
ending   12-31-2009

**Shareholder's Share of Income, Deductions,
Credits, etc.** ▸ See back of form and separate instructions.

### Part I   Information About the Corporation

**A** Corporation's employer identification number
████0622

**B** Corporation's name, address, city, state, and ZIP code
LAURA'S FRENCH BAKING COMPANY INC

6721 ALAMEDA STREET
LOS ANGELES, CA  90001

**C** IRS Center where corporation filed return
OGDEN

### Part II   Information About the Shareholder

**D** Shareholder's identifying number
████3486

**E** Shareholder's name, address, city, state, and ZIP code
LAURA HI JA KIM

**F** Shareholder's percentage of stock
ownership for tax year   .   .   .   .   .   90.000 %

### Part III   Shareholder's Share of Current Year Income, Deductions, Credits, and Other Items

| | | | |
|---|---|---|---|
| **1** | Ordinary business income (loss) 114,373 | **13** | Credits |
| **2** | Net rental real estate income (loss) | **14** | Foreign transactions |
| **3** | Other net rental income (loss) | **15** | Alternative minimum tax (AMT) items |
| **4** | Interest income | **A** | -35 |
| **5a** | Ordinary dividends | **16** | Items affecting shareholder basis |
| **5b** | Qualified dividends | **17** | Other information |
| **6** | Royalties | **A** | 1 |
| **7** | Net short-term capital gain (loss) | | |
| **8a** | Net long-term capital gain (loss) | | |
| **8b** | Collectibles (28%) gain (loss) | | |
| **8c** | Unrecaptured section 1250 gain | | |
| **9** | Net section 1231 gain (loss) | | |
| **10** | Other income (loss) | | |
| **11** | Section 179 deduction | | |
| **12** | Other deductions | | |

\* See attached statement for additional information.

For IRS Use Only

USA - 017377
7/25/2013

For Paperwork Reduction Act Notice, see Instructions for Form 1120S.     Cat. No. 11520D     Schedule K-1 (Form 1120S) 2009

USA - 017378

**Additional Data**

| | |
|---|---|
| **Software ID:** | |
| **Software Version:** | |
| **EIN:** | ████0622 |
| **Name:** | LAURA'S FRENCH BAKING COMPANY INC |

**Form 1120S Schedule K-1, Line E – Shareholder Name Control:** LAUR

efile GRAPHIC print - DO NOT PROCESS | Production | DLN: 93316071556900

## Return Acknowledgement

**The Return Acknowledgement cannot be displayed.**

USA - 017380

efile GRAPHIC print - DO NOT PROCESS | Production | DLN: 93316071556900

## Code and Edit Values

| Code Type | Code | Amount | Description | Source of Code | Rule Number | Status | Status Date |
|---|---|---|---|---|---|---|---|
| Method Of Accounting Code | 2 | | Method of Acct - Accrual | F1120S, Sch B | | ORIGINAL | 2010-03 12 |
| Salaries/Wages Code | 1 | | Salaries/Wages | F1120S | | ORIGINAL | 2010-03 12 |

efile GRAPHIC print - DO NOT PROCESS | Production                    DLN: 93316071556900

## Processing Status

| Status Description | Status Date | Processing Code | Processing Code Description |
|---|---|---|---|
| ORIGINAL RETURN | 2010-03-12 | | |
| GMF PERFECTED | 2010-03-16 | 03 | ASSET |
| GMF PERFECTED | 2010-03-16 | 1 | MATH STATUS |
| GMF PERFECTED | 2010-03-16 | 1 | SALARY WAGE |
| GMF PERFECTED | 2010-03-16 | 2 | ACCOUNTING METHOD |
| GMF PERFECTED | 2010-03-16 | 2 | DIRECT INDIRECT INTEREST |
| GMF PERFECTED | 2010-03-16 | 2 | DISREGARDED ENTITY |
| GMF PERFECTED | 2010-03-16 | 2 | ET INCOME EXCLUSION |
| GMF PERFECTED | 2010-03-16 | 2 | FOREIGN FINANCIAL ACCOUNT |
| GMF PERFECTED | 2010-03-16 | 2 | FOREIGN TRUST DISTRIBUTION |
| GMF PERFECTED | 2010-03-16 | 2 | FOREIGN CONTROLLED CORP |
| GMF PERFECTED | 2010-03-16 | E | INPUT SYSTEM SOURCE |
| GMF PERFECTED | 2010-03-16 | M | TRANS SOURCE CODE |
| GMF PERFECTED | 2010-03-16 | MEF | GMF INPUT SYSTEM ID |
| MF POSTED | 2010-03-21 | | |

USA - 017382

7/25/2013

| efile GRAPHIC print - DO NOT PROCESS | Production | | DLN: 93316071556900 |

## Return Change History

**There is no Change History data.**

efile GRAPHIC print - DO NOT PROCESS | Production | DLN: 93316071556900

## Return Index - sorted by Display Name in ascending order

| Display Name | Identifying # | Attach To | Document Type | Regulation |
|---|---|---|---|---|
| 1120S | | | Form | |
| 4562 | Form 1120S Line 21 | 1120S | Form | |
| Accumulated Adjustments Account - Other Additions Schedule | | 1120S | Schedule | IRC section 1368(e) (1) |
| Acknowledgement | | | Acknowledgement | |
| Change History | | | Change History | |
| Code and Edit | | | Code and Edit | |
| Itemized Other Assets Schedule | | 1120S | Schedule | |
| Itemized Other Costs Schedule | | 1120S | Schedule | |
| Itemized Other Current Assets Schedule | | 1120S | Schedule | |
| nized Other Current Liabilities Schedule | | 1120S | Schedule | |
| Itemized Other Income (Loss) Schedule | | 1120S | Schedule | |
| Other Deductions Schedule | | 1120S | Schedule | |
| Processing Status | | | Processing Status | |
| Schedule K-1 (1120S) | ▮▮2875 | 1120S | Schedule | |
| Schedule K-1 (1120S) | ▮▮8486 | 1120S | Schedule | |

USA - 017384
7/25/2013

# Exhibit 199

**Form 1120S**

Department of the Treasury
Internal Revenue Service

**U.S. Income Tax Return for an S Corporation**

► Do not file this form unless the corporation has filed or is attaching Form 2553 to elect to be an S corporation.
► See separate instructions.

OMB No. 1545-0130

**2010**

For calendar year 2010 or tax year beginning _____ , 2010, ending _____

**A** S election effective date
04/17/97

**B** Business activity code number (see instrs)
311800

**C** Check if Sch M-3 attached ☐

Name
LAURA'S FRENCH BAKING COMPANY, INC.

TYPE
OR
PRINT

Number, street, and room or suite no. If a P.O. box, see instructions.
6721 ALAMEDA STREET

City or town, state, and ZIP code
LOS ANGELES          CA  90001

**D** Employer identification number
0622

**E** Date incorporated
04/17/97

**F** Total assets (see instructions)
$          452,245.

**G** Is the corporation electing to be an S corporation beginning with this tax year?  ☐ Yes  ☒ No  If 'Yes,' attach Form 2553 if not previously filed

**H** Check if:  (1) ☐ Final return  (2) ☐ Name change  (3) ☐ Address change
(4) ☐ Amended return  (5) ☐ S election termination or revocation

**I** Enter the number of shareholders who were shareholders during any part of the tax year .................................... ►   2

**Caution.** Include only trade or business income and expenses on lines 1a through 21. See the instructions for more information.

| | | | |
|---|---|---|---|
| **I N C O M E** | **1a** Gross receipts or sales .. | 1,715,367. | **b** Less returns and allowances .. | 11,909. | **c** Bal ► | **1c** | 1,703,458. |
| | **2** Cost of goods sold (Schedule A, line 8) ..................................... | | **2** | 924,207. |
| | **3** Gross profit. Subtract line 2 from line 1c ..................................... | | **3** | 779,251. |
| | **4** Net gain (loss) from Form 4797, Part II, line 17 (attach Form 4797) ............. | | **4** | |
| | **5** Other income (loss) (see instrs – all statement) ..... STMT ............. | | **5** | 27,071. |
| | **6** Total income (loss). Add lines 3 through 5 ................................. ► | | **6** | 806,322. |

| | | | |
|---|---|---|---|
| **D E D U C T I O N S   (SEE INSTRS)** | **7** Compensation of officers .................................................. | **7** | |
| | **8** Salaries and wages (less employment credits) ............................. | **8** | 179,665. |
| | **9** Repairs and maintenance ................................................. | **9** | 5,409. |
| | **10** Bad debts ............................................................. | **10** | 114. |
| | **11** Rents ................................................................. | **11** | 0. |
| | **12** Taxes and licenses .................................................... | **12** | 28,727. |
| | **13** Interest .............................................................. | **13** | 34. |
| | **14** Depreciation not claimed on Schedule A or elsewhere on return (attach Form 4562) .. | **14** | 14,432. |
| | **15** Depletion (Do not deduct oil and gas depletion.) ........................ | **15** | |
| | **16** Advertising ........................................................... | **16** | 264. |
| | **17** Pension, profit-sharing, etc, plans ...................................... | **17** | |
| | **18** Employee benefit programs ............................................. | **18** | 16,085. |
| | **19** Other deductions (attach statement) ..... STMT .......................... | **19** | 662,610. |
| | **20** Total deductions. Add lines 7 through 19 ............................... ► | **20** | 907,340. |
| | **21** Ordinary business income (loss). Subtract line 20 from line 6 .............. | **21** | -101,018. |

| | | | |
|---|---|---|---|
| **T A X   A N D   P A Y M E N T S** | **22a** Excess net passive income or LIFO recapture tax (see instructions) | **22a** | | |
| | **b** Tax from Schedule D (Form 1120S) | **22b** | | |
| | **c** Add lines 22a and 22b (see instructions for additional taxes) ............... | | **22c** | |
| | **23a** 2010 estimated tax payments and 2009 overpayment credited to 2010 ...... | **23a** | | |
| | **b** Tax deposited with Form 7004 | **23b** | 0. | |
| | **c** Credit for federal tax paid on fuels (attach Form 4136) | **23c** | | |
| | **d** Add lines 23a through 23c ............................................. | | **23d** | 0. |
| | **24** Estimated tax penalty (see instructions). Check if Form 2220 is attached ..... ► ☐ | | **24** | |
| | **25** Amount owed. If line 23d is smaller than the total of lines 22c and 24, enter amount owed .. | | **25** | 0. |
| | **26** Overpayment. If line 23d is larger than the total of lines 22c and 24, enter amount overpaid .... | | **26** | |
| | **27** Enter amount from line 26 Credited to 2011 estimated tax ►    Refunded ► | | **27** | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

►_____     _____     ► V. PRESIDENT
Signature of officer          Date          Title

May the IRS discuss this return with the preparer shown below (see instructions)?
☐ Yes  ☒ No

**Paid Preparer Use Only**

| Print/Type preparer's name | Preparer's signature | Date | Check ☒ if self-employed | PTIN |
|---|---|---|---|---|
| MICHAEL K. KHIM | M. Khim | 03/21/14 | | 7069 |

Firm's name  ► MICHAEL K. KHIM ACCOUNTANCY CORPORATION          Firm's EIN ►          7994
Firm's address ► 3250 WILSHIRE BLVD STE 705
LOS ANGELES          CA  90010          Phone no. (213) 736-6789

**BAA For Paperwork Reduction Act Notice, see separate instructions.**          SPSA0112  01/18/11          Form **1120S** (2010)

USA - 020311

Form 1120S (2010)   LAURA'S FRENCH BAKING COMPANY, INC.                    0622          Page **2**

## Schedule A | Cost of Goods Sold (see instructions)

| | | | |
|---|---|---|---|
| 1 | Inventory at beginning of year | 1 | 15,025. |
| 2 | Purchases | 2 | 392,462. |
| 3 | Cost of labor | 3 | 392,046. |
| 4 | Additional section 263A costs *(attach statement)* | 4 | |
| 5 | Other costs *(attach statement)* .....•...STMT. | 5 | 238,280. |
| 6 | Total. Add lines 1 through 5 | 6 | 1,037,813. |
| 7 | Inventory at end of year | 7 | 113,606. |
| 8 | Cost of goods sold. Subtract line 7 from line 6. Enter here and on page 1, line 2 | 8 | 924,207. |

9a  Check all methods used for valuing closing inventory:

    *(i)*  [X]  Cost as described in Regulations section 1.471-3

    *(ii)*  [ ]  Lower of cost or market as described in Regulations section 1.471-4

    *(iii)*  [ ]  Other (Specify method used and attach explanation.) ▶ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

  **b** Check if there was a writedown of subnormal goods as described in Regulations section 1.471-2(c) ............... ▶ [ ]

  **c** Check if the LIFO inventory method was adopted this tax year for any goods (if checked, attach Form 970) ............... ▶ [ ]

  **d** If the LIFO inventory method was used for this tax year, enter percentage (or amounts) of closing inventory computed under LIFO ............ | **9d** | |

  **e** If property is produced or acquired for resale, do the rules of section 263A apply to the corporation? ............... [ ] Yes  [X] No

  **f** Was there any change in determining quantities, cost, or valuations between opening and closing inventory? If 'Yes,' attach explanation ............... [ ] Yes  [X] No

## Schedule B | Other Information (see instructions)

| | | Yes | No |
|---|---|---|---|
| 1 | Check accounting method:  **a** [ ] Cash  **b** [X] Accrual  **c** [ ] Other (specify) ▶ _ _ _ _ _ _ _ _ _ _ | | |
| 2 | See the instructions and enter: | | |
| | **a** Business activity ▶ WHOLESALE _ _ _ _ _ _ _ _ _ _ _  **b** Product or service ... ▶ BAKERY | | |
| 3 | At the end of the tax year, did the corporation own, directly or indirectly, 50% or more of the voting stock of a domestic corporation? (For rules of attribution, see section 267(c).) If 'Yes,' attach a statement showing: (a) name and employer identification number (EIN), (b) percentage owned, and (c) if 100% owned, was a qualified subchapter S subsidiary election made? ............... | | X |
| 4 | Has this corporation filed, or is it required to file, Form 8918, Material Advisor Disclosure Statement, to provide information on any reportable transaction? ............... | | X |
| 5 | Check this box if the corporation issued publicly offered debt instruments with original issue discount ............... ▶ [ ]  If checked, the corporation may have to file Form 8281, Information Return for Publicly Offered Original Issue Discount Instruments. | | |
| 6 | If the corporation: (a) was a C corporation before it elected to be an S corporation or the corporation acquired an asset with a basis determined by reference to the basis of the asset (or the basis of any other property) in the hands of a C corporation and (b) has net unrealized built-in gain in excess of the net recognized built-in gain from prior years, enter the net unrealized built-in gain reduced by net recognized built-in gain from prior years *(see instructions)* ............... ▶ $ _ _ _ _ _ _ _ _ _ | | |
| 7 | Enter the accumulated earnings and profits of the corporation at the end of the tax year ......... $ _ _ _ _ _ _ | | |
| 8 | Are the corporation's total receipts *(see instructions)* for the tax year and its total assets at the end of the tax year less than $250,000? If 'Yes,' the corporation is not required to complete Schedules L and M-1 ............... | | X |
| 9 | During the tax year, was a qualified subchapter S subsidiary election terminated or revoked? If 'Yes,' see instructions ...... | | |

## Schedule K | Shareholders' Pro Rata Share Items

| | | | Total amount |
|---|---|---|---|
| **I**<br>**N**<br>**C**<br>**O**<br>**M**<br>**E**<br><br>**(L**<br>**O**<br>**S**<br>**S)** | 1 Ordinary business income (loss) (page 1, line 21) | 1 | −101,018. |
| | 2 Net rental real estate income (loss) *(attach Form 8825)* | 2 | |
| | 3a Other gross rental income (loss) ............ \| **3a** \| | | |
| |   **b** Expenses from other rental activities *(attach statement)* ...... \| **3b** \| | | |
| |   **c** Other net rental income (loss). Subtract line 3b from line 3a | 3c | |
| | 4 Interest income | 4 | 36. |
| | 5 Dividends:  **a** Ordinary dividends | 5a | |
| |   **b** Qualified dividends ............ \| **5b** \| | | |
| | 6 Royalties | 6 | |
| | 7 Net short-term capital gain (loss) *(attach Schedule D (Form 1120S))* | 7 | |
| | 8a Net long-term capital gain (loss) *(attach Schedule D (Form 1120S))* | 8a | |
| |   **b** Collectibles (28%) gain (loss) ............ \| **8b** \| | | |
| |   **c** Unrecaptured section 1250 gain *(attach statement)* ............ \| **8c** \| | | |
| | 9 Net section 1231 gain (loss) *(attach Form 4797)* | 9 | |
| | 10 Other income (loss) *(see instructions)* ............ Type ▶ | 10 | |

Form **1120S** (2010)

USA - 020312

Form 1120S (2010)   LAURA'S FRENCH BAKING COMPANY, INC.                          ▬▬▬▬ 0622          Page 3

**Shareholders' Pro Rata Share Items (continued)**                                    Total amount

| | | | |
|---|---|---|---|
| **Deduc-tions** | 11 Section 179 deduction *(attach Form 4562)* ............................................... | 11 | |
| | 12a Contributions .......................................................................... | 12a | |
| | b Investment interest expense ......................................................... | 12b | |
| | c Section 59(e)(2) expenditures  (1) Type ► _ _ _ _ _ _ _ _ _ _ _ _ _ (2) Amount ► | 12c (2) | |
| | d Other deductions *(see instructions)*... Type ► | 12d | |
| **Credits** | 13a Low-income housing credit (section 42(j)(5)) ......................................... | 13a | |
| | b Low-income housing credit (other) ................................................... | 13b | |
| | c Qualified rehabilitation expenditures (rental real estate) *(attach Form 3468)* ......... | 13c | |
| | d Other rental real estate credits *(see instrs)*   Type ► _ _ _ _ _ _ _ _ _ _ _ | 13d | |
| | e Other rental credits *(see instrs)*   Type ► _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | 13e | |
| | f Alcohol and cellulosic biofuel fuels credit *(attach Form 6478)* ...................... | 13f | |
| | g Other credits *(see instructions)* ...... Type ► | 13g | |
| **Foreign Trans-actions** | 14a Name of country or U.S. possession ........ ► _ _ _ _ _ _ _ _ _ _ _ | ▬▬▬▬ | |
| | b Gross income from all sources ...................................................... | 14b | |
| | c Gross income sourced at shareholder level ........................................... | 14c | |
| | *Foreign gross income sourced at corporate level* | ▬▬▬▬ | |
| | d Passive category .................................................................... | 14d | |
| | e General category .................................................................... | 14e | |
| | f Other *(attach statement)* .......................................................... | 14f | |
| | *Deductions allocated and apportioned at shareholder level* | ▬▬▬▬ | |
| | g Interest expense ................................................................... | 14g | |
| | h Other .............................................................................. | 14h | |
| | *Deductions allocated and apportioned at corporate level to foreign source income* | ▬▬▬▬ | |
| | i Passive category ................................................................... | 14i | |
| | j General category ................................................................... | 14j | |
| | k Other *(attach statement)* ......................................................... | 14k | |
| | *Other information* | ▬▬▬▬ | |
| | l Total foreign taxes (check one): ► ☐  Paid          ☐  Accrued ................. | 14l | |
| | m Reduction in taxes available for credit *(attach statement)* | 14m | |
| | n Other foreign tax information *(attach statement)* | ▬▬▬▬▬▬▬ | |
| **Alterna-tive Mini-mum Tax (AMT) Items** | 15a Post-1986 depreciation adjustment ................................................... | 15a | -392. |
| | b Adjusted gain or loss ............................................................... | 15b | |
| | c Depletion (other than oil and gas) .................................................. | 15c | |
| | d Oil, gas, and geothermal properties — gross income .................................. | 15d | |
| | e Oil, gas, and geothermal properties — deductions .................................... | 15e | |
| | f Other AMT items *(attach statement)* ............................................... | 15f | |
| **Items Affec-ting Share-holder Basis** | 16a Tax-exempt interest income ......................................................... | 16a | |
| | b Other tax-exempt income ............................................................ | 16b | |
| | c Nondeductible expenses ............................................................. | 16c | 1.899. |
| | d Distributions *(attach stmt if required) (see instrs)* ............................... | 16d | |
| | e Repayment of loans from shareholders ............................................... | 16e | |
| **Other Inform-ation** | 17a Investment income .................................................................. | 17a | 36. |
| | b Investment expenses ................................................................ | 17b | |
| | c Dividend distributions paid from accumulated earnings and profits ................... | 17c | |
| | d Other items and amounts *(attach statement)* | ▬▬▬▬ | ▬▬▬▬ |
| **Recon-ciliation** | 18 Income/loss reconciliation. Combine the amounts on lines 1 through 10 in the far right column. From the result, subtract the sum of the amounts on lines 11 through 12d and lines 14l .... | 18 | -100,982. |

BAA                                                                              Form 1120S (2010)

USA - 020313

Form **1120S** (2010)   LAURA'S FRENCH BAKING COMPANY, INC.     ████ 0622     Page 4

**Schedule L** | Balance Sheets per Books

| Assets | Beginning of tax year (a) | (b) | End of tax year (c) | (d) |
|---|---|---|---|---|
| 1 Cash | | 278,558. | | 50,086. |
| 2a Trade notes and accounts receivable | 92,069. | | 143,810. | |
| b Less allowance for bad debts | | 92,069. | | 143,810. |
| 3 Inventories | | 15,025. | | 113,606. |
| 4 U.S. government obligations | | | | |
| 5 Tax-exempt securities (see instructions) | | | | |
| 6 Other current assets (attach stmt) .... Ln .6. St. | | 0. | | 1,300. |
| 7 Loans to shareholders | | | | |
| 8 Mortgage and real estate loans | | | | |
| 9 Other investments (attach statement) | | | | |
| 10a Buildings and other depreciable assets | 601,244. | | 603,574. | |
| b Less accumulated depreciation | 461,584. | 139,660. | 476,016. | 127,558. |
| 11a Depletable assets | | | | |
| b Less accumulated depletion | | | | |
| 12 Land (net of any amortization) | | | | |
| 13a Intangible assets (amortizable only) | | | | |
| b Less accumulated amortization | | | | |
| 14 Other assets (attach stmt) .... Ln .14. St. | | 15,885. | | 15,885. |
| 15 Total assets | | 541,197. | | 452,245. |
| **Liabilities and Shareholders' Equity** | | | | |
| 16 Accounts payable | | 66,916. | | 55,845. |
| 17 Mortgages, notes, bonds payable in less than 1 year | | | | |
| 18 Other current liabilities (attach stmt) .. Ln .18. St. | | 546,202. | | 546,202. |
| 19 Loans from shareholders | | 200,000. | | 165,000. |
| 20 Mortgages, notes, bonds payable in 1 year or more | | | | |
| 21 Other liabilities (attach statement) | | | | |
| 22 Capital stock | | 100,000. | | 100,000. |
| 23 Additional paid-in capital | | 182,083. | | 242,083. |
| 24 Retained earnings | | -554,004. | | -656,885. |
| 25 Adjustments to shareholders' equity (att stmt) | | | | |
| 26 Less cost of treasury stock | | | | |
| 27 Total liabilities and shareholders' equity | | 541,197. | | 452,245. |

**Schedule M-1** | Reconciliation of Income (Loss) per Books With Income (Loss) per Return

Note: Schedule M-3 required instead of Schedule M-1 if total assets are $10 million or more — see instructions

| | | | |
|---|---|---|---|
| 1 Net income (loss) per books | -102,881. | 5 Income recorded on books this year not included on Schedule K, lines 1 through 10 (itemize): | |
| 2 Income included on Schedule K, lines 1, 2, 3c, 4, 5a, 6, 7, 8a, 9, and 10, not recorded on books this year (itemize): | | a Tax-exempt interest . $ _____ | |
| 3 Expenses recorded on books this year not included on Schedule K, lines 1 through 12, and 14l (itemize): | | 6 Deductions included on Schedule K, lines 1 through 12, and 14l, not charged against book income this year (itemize): | |
| a Depreciation ........ $ | | a Depreciation .... $ _____ | |
| b Travel and entertainment . $ _____ 1,899. | | 7 Add lines 5 and 6 | |
| | 1,899. | | |
| 4 Add lines 1 through 3 | -100,982. | 8 Income (loss) (Schedule K, ln 18). Ln 4 less ln 7 ... | -100,982. |

**Schedule M-2** | Analysis of Accumulated Adjustments Account, Other Adjustments Account, and Shareholders' Undistributed Taxable Income Previously Taxed (see instructions)

| | (a) Accumulated adjustments account | (b) Other adjustments account | (c) Shareholders' undistributed taxable income previously taxed |
|---|---|---|---|
| 1 Balance at beginning of tax year | -595,050. | | |
| 2 Ordinary income from page 1, line 21 | | | |
| 3 Other additions ............ STMT. | 36. | | |
| 4 Loss from page 1, line 21 | 101,019. | | |
| 5 Other reductions .......... STMT. | 1,899. | | |
| 6 Combine lines 1 through 5 | -697,931. | | |
| 7 Distributions other than dividend distributions | | | |
| 8 Balance at end of tax year. Subtract line 7 from line 6 | -697,931. | | |

SPSA0134   07/22/10                                   Form **1120S** (2010)

USA - 020314

Form **4562**

**Depreciation and Amortization**
(Including Information on Listed Property)

OMB No. 1545-0172

**2010**

Department of the Treasury
Internal Revenue Service (99)

► See separate instructions. ► Attach to your tax return.

Attachment
Sequence No. **67**

Name(s) shown on return
LAURA'S FRENCH BAKING COMPANY, INC.

Identifying number
███0622

Business or activity to which this form relates
Form 1120S Line 21

**Part I** **Election To Expense Certain Property Under Section 179**
Note: *If you have any listed property, complete Part V before you complete Part I.*

| | | | |
|---|---|---|---|
| 1 | Maximum amount (see instructions) | 1 | 500,000. |
| 2 | Total cost of section 179 property placed in service (see instructions) | 2 | |
| 3 | Threshold cost of section 179 property before reduction in limitation (see instructions) | 3 | 2,000,000. |
| 4 | Reduction in limitation. Subtract line 3 from line 2. If zero or less, enter -0- | 4 | |
| 5 | Dollar limitation for tax year. Subtract line 4 from line 1. If zero or less, enter -0-. If married filing separately, see instructions | 5 | |

| 6 | (a) Description of property | (b) Cost (business use only) | (c) Elected cost |
|---|---|---|---|
| | | | |
| | | | |

| | | | |
|---|---|---|---|
| 7 | Listed property. Enter the amount from line 29 | 7 | |
| 8 | Total elected cost of section 179 property. Add amounts in column (c), lines 6 and 7 | 8 | |
| 9 | Tentative deduction. Enter the smaller of line 5 or line 8 | 9 | |
| 10 | Carryover of disallowed deduction from line 13 of your 2009 Form 4562 | 10 | |
| 11 | Business income limitation. Enter the smaller of business income (not less than zero) or line 5 (see instrs) | 11 | |
| 12 | Section 179 expense deduction. Add lines 9 and 10, but do not enter more than line 11 | 12 | |
| 13 | Carryover of disallowed deduction to 2011. Add lines 9 and 10, less line 12 ► | 13 | |

Note: *Do not use Part II or Part III below for listed property. Instead, use Part V.*

**Part II** **Special Depreciation Allowance and Other Depreciation** (Do not include listed property.) (See instructions.)

| | | | |
|---|---|---|---|
| 14 | Special depreciation allowance for qualified property (other than listed property) placed in service during the tax year (see instructions) | 14 | |
| 15 | Property subject to section 168(f)(1) election | 15 | |
| 16 | Other depreciation (including ACRS) | 16 | 1,136. |

**Part III** **MACRS Depreciation** (Do not include listed property.) (See instructions.)

**Section A**

| | | | |
|---|---|---|---|
| 17 | MACRS deductions for assets placed in service in tax years beginning before 2010 | 17 | 13,296. |
| 18 | If you are electing to group any assets placed in service during the tax year into one or more general asset accounts, check here ► ☐ | | |

**Section B – Assets Placed in Service During 2010 Tax Year Using the General Depreciation System**

| (a) Classification of property | (b) Month and year placed in service | (c) Basis for depreciation (business/investment use only — see instructions) | (d) Recovery period | (e) Convention | (f) Method | (g) Depreciation deduction |
|---|---|---|---|---|---|---|
| 19a 3-year property | | | | | | |
| b 5-year property | | | | | | |
| c 7-year property | | | | | | |
| d 10-year property | | | | | | |
| e 15-year property | | | | | | |
| f 20-year property | | | | | | |
| g 25-year property | | | 25 yrs | | S/L | |
| h Residential rental property | | | 27.5 yrs | MM | S/L | |
| | | | 27.5 yrs | MM | S/L | |
| i Nonresidential real property | | | 39 yrs | MM | S/L | |
| | | | | MM | S/L | |

**Section C – Assets Placed in Service During 2010 Tax Year Using the Alternative Depreciation System**

| | | | | | | |
|---|---|---|---|---|---|---|
| 20a Class life | | | | | S/L | |
| b 12-year | | | 12 yrs | | S/L | |
| c 40-year | | | 40 yrs | MM | S/L | |

**Part IV** **Summary** (See instructions.)

| | | | |
|---|---|---|---|
| 21 | Listed property. Enter amount from line 28 | 21 | 0. |
| 22 | Total. Add amounts from line 12, lines 14 through 17, lines 19 and 20 in column (g), and line 21. Enter here and on the appropriate lines of your return. Partnerships and S corporations — see instructions | 22 | 14,432. |
| 23 | For assets shown above and placed in service during the current year, enter the portion of the basis attributable to section 263A costs | 23 | |

BAA For Paperwork Reduction Act Notice, see separate instructions. FDIZ0812 10/29/10

USA - 020315

Form 4562 (2010)

Form 4562 (2010)   LAURA'S FRENCH BAKING COMPANY, INC.                    0622   Page 2

**Part V** Listed Property (Include automobiles, certain other vehicles, certain computers, and property us____ainment, recreation, or amusement.)

**Note:** *For any vehicle for which you are using the standard mileage rate or deducting lease expense, complete only 24a, 24b, columns (a) through (c) of Section A, all of Section B, and Section C if applicable.*

**Section A – Depreciation and Other Information (Caution: See the instructions for limits for passenger automobiles.)**

| 24a Do you have evidence to support the business/investment use claimed? | X | Yes | | No | 24b If 'Yes,' is the evidence written? | X | Yes | | No |

| (a) Type of property (list vehicles first) | (b) Date placed in service | (c) Business/ investment use percentage | (d) Cost or other basis | (e) Basis for depreciation (business/investment use only) | (f) Recovery period | (g) Method/ Convention | (h) Depreciation deduction | (i) Elected section 179 cost |
|---|---|---|---|---|---|---|---|---|
| 25 Special depreciation allowance for qualified listed property placed in service during the tax year and used more than 50% in a qualified business use (see instructions) | | | | | 25 | | | |
| 26 Property used more than 50% in a qualified business use: | | | | | | | | |
| 30. Chevy Astro | 05/31/00 | 100.00 | 20,599. | 20,599. | 5.00 | 200 DB-HY | 0. | |
| 33. Hyundai | 10/31/00 | 100.00 | 13,942. | 13,942. | 5.00 | 200 DB-HY | 0. | |
| 48. Vehicle | 08/27/03 | 100.00 | 19,511. | 19,511. | 5.00 | 200 DB-HY | 0. | |
| 27 Property used 50% or less in a qualified business use: | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| 28 Add amounts in column (h), lines 25 through 27. Enter here and on line 21, page 1 | | | | | | 28 | 0. | |
| 29 Add amounts in column (i), line 26. Enter here and on line 7, page 1 | | | | | | 29 | | |

**Section B – Information on Use of Vehicles**

Complete this section for vehicles used by a sole proprietor, partner, or other 'more than 5% owner,' or related person. If you provided vehicles to your employees, first answer the questions in Section C to see if you meet an exception to completing this section for those vehicles.

| | (a) Vehicle 1 | (b) Vehicle 2 | (c) Vehicle 3 | (d) Vehicle 4 | (e) Vehicle 5 | (f) Vehicle 6 |
|---|---|---|---|---|---|---|
| 30 Total business/investment miles driven during the year (do not include commuting miles) | | | | | | |
| 31 Total commuting miles driven during the year | | | | | | |
| 32 Total other personal (noncommuting) miles driven | | | | | | |
| 33 Total miles driven during the year. Add lines 30 through 32 | | | | | | |

| | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 34 Was the vehicle available for personal use during off-duty hours? | | | | | | | | | | | | |
| 35 Was the vehicle used primarily by a more than 5% owner or related person? | | | | | | | | | | | | |
| 36 Is another vehicle available for personal use? | | | | | | | | | | | | |

**Section C – Questions for Employers Who Provide Vehicles for Use by Their Employees**

Answer these questions to determine if you meet an exception to completing Section B for vehicles used by employees who are not more than 5% owners or related persons (see instructions).

| | Yes | No |
|---|---|---|
| 37 Do you maintain a written policy statement that prohibits all personal use of vehicles, including commuting, by your employees? | | |
| 38 Do you maintain a written policy statement that prohibits personal use of vehicles, except commuting, by your employees? See the instructions for vehicles used by corporate officers, directors, or 1% or more owners | | |
| 39 Do you treat all use of vehicles by employees as personal use? | | |
| 40 Do you provide more than five vehicles to your employees, obtain information from your employees about the use of the vehicles, and retain the information received? | | |
| 41 Do you meet the requirements concerning qualified automobile demonstration use? (See instructions.) | | |

**Note:** *If your answer to 37, 38, 39, 40, or 41 is 'Yes,' do not complete Section B for the covered vehicles.*

**Part VI** Amortization

| (a) Description of costs | (b) Date amortization begins | (c) Amortizable amount | (d) Code Section | (e) Amortization period or percentage | (f) Amortization for this year |
|---|---|---|---|---|---|
| 42 Amortization of costs that begins during your 2010 tax year (see instructions): | | | | | |
| | | | | | |
| | | | | | |
| 43 Amortization of costs that began before your 2010 tax year | | | | | 43 |
| 44 Total. Add amounts in column (f). See the instructions for where to report | | | | | 44 |

671110

☐ Final K-1        ☐ Amended K-1        OMB No. 1545-0130

**Schedule K-1**
(Form 1120S)

**2010**

Department of the Treasury
Internal Revenue Service

For calendar year 2010, or tax
year beginning                    , 2010
ending                    ,

**Shareholder's Share of Income, Deductions, Credits, etc.** ► See page 2 of form and separate instructions.

| **Part III** | **Shareholder's Share of Current Year Income, Deductions, Credits, and Other Items** |
|---|---|

| | | | |
|---|---|---|---|
| **1** | Ordinary business income (loss) | **13** | Credits |
| | −10,102. | | |
| **2** | Net rental real estate income (loss) | | |
| **3** | Other net rental income (loss) | | |
| **4** | Interest income | | |
| | 4. | | |
| **5a** | Ordinary dividends | | |
| **5b** | Qualified dividends | **14** | Foreign transactions |
| **6** | Royalties | | |
| **7** | Net short-term capital gain (loss) | | |
| **8a** | Net long-term capital gain (loss) | | |
| **8b** | Collectibles (28%) gain (loss) | | |
| **8c** | Unrecaptured section 1250 gain | | |
| **9** | Net section 1231 gain (loss) | | |
| **10** | Other income (loss) | **15** | Alternative minimum tax (AMT) items |
| | | | A              −39. |
| **11** | Section 179 deduction | **16** | Items affecting shareholder basis |
| | | | C              190. |
| **12** | Other deductions | | |
| | | **17** | Other information |
| | | | A              4. |

**Part I**   Information About the Corporation

**A** Corporation's employer identification number
████0622

**B** Corporation's name, address, city, state, and ZIP code
LAURA'S FRENCH BAKING COMPANY, INC.
6721 ALAMEDA STREET
LOS ANGELES, CA 90001

**C** IRS Center where corporation filed return
Ogden, UT 84201-0013

**Part II**   Information About the Shareholder

**D** ████er's identifying number
████-2875

**E** ████er's name, address, city, state, and ZIP code
STERLING J KIM
LOS ANGELES, ████

**F** Shareholder's percentage of stock
ownership for tax year ..................... 10.00000 %

F
O
R

I
R
S

U
S
E

O
N
L
Y

*See attached statement for additional information.

671110

| Schedule K-1 (Form 1120S) Department of the Treasury Internal Revenue Service | **2010** For calendar year 2010, or tax year beginning _____ , 2010 ending _____ | |
|---|---|---|

OMB No. 1545-0130

☐ Final K-1      ☐ Amended K-1

**Part III   Shareholder's Share of Current Year Income, Deductions, Credits, and Other Items**

**Shareholder's Share of Income, Deductions, Credits, etc.** ► See page 2 of form and separate instructions.

| | |
|---|---|
| 1 Ordinary business income (loss) −90,916. | 13 Credits |
| 2 Net rental real estate income (loss) | |
| 3 Other net rental income (loss) | |
| 4 Interest income 32. | |
| 5a Ordinary dividends | |
| 5b Qualified dividends | 14 Foreign transactions |
| 6 Royalties | |
| 7 Net short-term capital gain (loss) | |
| 8a Net long-term capital gain (loss) | |
| 8b Collectibles (28%) gain (loss) | |
| 8c Unrecaptured section 1250 gain | |
| 9 Net section 1231 gain (loss) | |
| 10 Other income (loss) | 15 Alternative minimum tax (AMT) items A −353. |
| 11 Section 179 deduction | 16 Items affecting shareholder basis C 1,709. |
| 12 Other deductions | |
| | 17 Other information A 32. |

**Part I   Information About the Corporation**

A Corporation's employer identification number ____0622

B Corporation's name, address, city, state, and ZIP code
LAURA'S FRENCH BAKING COMPANY, INC.
6721 ALAMEDA STREET
LOS ANGELES, CA 90001

C IRS Center where corporation filed return
Ogden, UT 84201-0013

**Part II   Information About the Shareholder**

D Shareholder's identifying number ____8486

E Shareholder's name, address, city, state, and ZIP code
LAURA HI JA KIM
LOS ANGELES, CA

F Shareholder's percentage of stock ownership for tax year .......... 90.00000 %

F O R   I R S   U S E   O N L Y

*See attached statement for additional information.

BAA For Paperwork Reduction Act Notice, see Instructions for Form 1120S.     Schedule K-1 (Form 1120S) 2010

SPSA0412  07/19/10

USA - 020318

LAURA'S FRENCH BAKING COMPANY, INC.    ██████0622                                    1

Form 1120S, Page 1, Line 5
**Other Income (Loss)**

| | |
|---|---:|
| INSURANCE CLAIM | 10,399. |
| MISCELL INCOME | 16,672. |
| Total | 27,071. |

Form 1120S, Page 1, Line 19
**Other Deductions**

| | |
|---|---:|
| ACCOUNTING | 5,257. |
| AUTOMOBILE AND TRUCK EXPENSE | 9,130. |
| BANK CHARGES | 687. |
| COMMISSIONS | 223,644. |
| EQUIPMENT RENT | 2,804. |
| GIFTS | 27. |
| INSURANCE | 31,933. |
| LEGAL AND PROFESSIONAL | 251,444. |
| MEALS AND ENTERTAINMENT (50%) | 1,900. |
| OFFICE EXPENSE | 2,948. |
| PRINTING | 775. |
| TELEPHONE | 6,428. |
| ALARM AND SECURITY | 2,569. |
| FINANCIAL AND MANAGEMENT EXPENSE | 2,050. |
| INSPECTION | 3,210. |
| LOAN PAYMENT | 650. |
| MARKETING AUTO EXP | 4,075. |
| MARKETING EXPENSE | 846. |
| OTHER EXPENSE | 5,682. |
| PAYROLL PROCESSING FEE | 2,350. |
| PEST CONTROL | 2,925. |
| PROMOTION | 272. |
| RECONCILIATION DISCREPANCIES | 95,090. |
| SALES TAX | 103. |
| WAREHOUSE SUPPLIES | 4,611. |
| WEB-SITE DESIGN EXPENSE | 1,200. |
| Total | 662,610. |

Form 1120S, Page 2, Schedule A, Line 5
**Schedule A, Other Costs**

| | |
|---|---:|
| BAKERY TOOLS & PAPER SUPPLIES | |
| CLEANING & JANITORIAL SERVICE | 7,991. |
| DISPOSAL & TRASH | 3,741. |
| FREIGHT & SHIPPING | 4,074. |
| PAYROLL TAXES | 47,460. |
| R & MAINT EQUIPMENT | 50,628. |
| INSURANCE | 6,062. |
| FACTORY MEDICAL EXPENSES | |
| PAYROLL PROCESSING EXPENSES | |
| LABORATORY FEE | |
| LINENS AND LAUNDRY | 16,532. |
| SUPPLIES | 4,390. |
| EMPLOYEE BENEFIT | -271. |
| SAMPLE EXPENSE | 6,494. |
| UTILITIES | 65,925. |

USA - 020319

LAURA'S FRENCH BAKING COMPANY, INC.   ████ 0622                                        2

Form 1120S, Page 2, Schedule A, Line 5                                    Continued
**Schedule A, Other Costs**

| | |
|---|---:|
| SCRAP (SOPILAGE) WRITE-OFF | 516. |
| UNIFORM | 1,800. |
| EQUIPMENT RENTAL | 22,129. |
| R&D EXPENSE | 809. |
| Total | 238,280. |

Other Current Assets:
**1120S, Schedule L, Line 6**

| **Other Current Assets:** | Beginning of tax year | End of tax year |
|---|---:|---:|
| EMPLOYEE ADVANCE | 0. | 1,300. |
| Total | 0. | 1,300. |

Other Assets:
**1120S, Schedule L, Line 14**

| **Other Assets:** | Beginning of tax year | End of tax year |
|---|---:|---:|
| LEASE DEPOSITS | 15,885. | 15,885. |
| Total | 15,885. | 15,885. |

Other Current Liabilities:
**1120S, Schedule L, Line 18**

| **Other Current Liabilities:** | Beginning of tax year | End of tax year |
|---|---:|---:|
| RENT PAYABLE | 540,330. | 540,330. |
| REBATE PAYABLE | 5,872. | 5,872. |
| Total | 546,202. | 546,202. |

Form 1120S, Page 4, Schedule M-2, Line 3
**Schedule M-2, Other Additions**

| | |
|---|---:|
| INTEREST INCOME | 36. |
| Total | 36. |

Form 1120S, Page 4, Schedule M-2, Line 5
**Schedule M-2, Other Reductions**

| | |
|---|---:|
| MEALS AND ENTERTAINMENT | 1,899. |
| Total | 1,899. |

USA - 020320

LAURA'S FRENCH BAKING COMPANY, INC.   ███0622                    3

**Supporting Statement of:**

Form 1120S p1-2/Line 1b

| Description | Amount |
|---|---|
| REBATES TO CUSTOMERS | 134. |
| SALES DISCOUNTS | 11,775. |
| Total | 11,909. |

**Supporting Statement of:**

Form 1120S p1-2/Line 8

| Description | Amount |
|---|---|
| CLERICAL | 107,701. |
| MARKETING | 71,964. |
| Total | 179,665. |

**Supporting Statement of:**

Form 1120S p1-2/Prop Taxes

| Description | Amount |
|---|---|
| CITY | 2,294. |
| PROPERTY | 18,266. |
| Total | 20,560. |

**Supporting Statement of:**

Form 1120S p1-2/Payroll Taxes

| Description | Amount |
|---|---|
| CLERICAL | 1,467. |
| MARKETING | 1,835. |
| Total | 3,302. |

**Supporting Statement of:**

Form 1120S p1-2/Sch A, Line 2

| Description | Amount |
|---|---|
| PURCHASE - RAW MATERIALS | 474,675. |

USA - 020321

LAURA'S FRENCH BAKING COMPANY, INC. ████0622                    4

Continued

**Supporting Statement of:**

Form 1120S p1-2/Sch A, Line 2

| Description | Amount |
|---|---|
| PURCHASE - SUPPLIES (PACKAGING) | -82,213. |
| PURCHASE - MATERIALS | |
| Total | 392,462. |

# Exhibit 200

# Form 1120S

**U.S. Income Tax Return for an S Corporation**

OMB No. 1545-0130

Department of the Treasury - Internal Revenue Service

► Do not file this form unless the corporation has filed or is attaching Form 2553 to elect to be an S corporation.
► See separate instructions.

**2011**

For calendar year 2011 or tax year beginning _____, 2011, ending _____

**A** S election effective date  04/17/97

**B** Business activity code number (see instrs)  311800

**C** Check if Sch M-3 attached ☐

TYPE OR PRINT

Name  LAURA'S FRENCH BAKING COMPANY, INC.

Number, street, and room or suite no. If a P.O. box, see instructions.  6721 ALAMEDA STREET

City or town, state, and ZIP code  LOS ANGELES   CA 90001

**D** Employer identification number  ███████0622

**E** Date incorporated  04/17/97

**F** Total assets (see instructions)  $  468,246.

**G** Is the corporation electing to be an S corporation beginning with this tax year?  Yes ☐  No ☒  If 'Yes,' attach Form 2553 if not already filed

**H** Check if: **(1)** ☐ Final return  **(2)** ☐ Name change  **(3)** ☐ Address change  **(4)** ☐ Amended return  **(5)** ☐ S election termination or revocation

**I** Enter the number of shareholders who were shareholders during any part of the tax year ................................ ► 2

**Caution.** Include only trade or business income and expenses on lines 1a through 21. See the instructions for more information.

| | | | | |
|---|---|---|---|---|
| **I N C O M E** | 1a Merchant card and third-party payments. For 2011, enter -0- ............ | 1a | 0. | |
| | b Gross receipts or sales not reported on line 1a (see instructions) ........... | 1b | 1,613,117. | |
| | c Total. Add lines 1a and 1b ................................. | 1c | 1,613,117. | |
| | d Returns and allowances plus any other adjustments (see instructions) ....... | 1d | 132,165. | |
| | e Subtract line 1d from line 1c | | | 1e | 1,480,952. |
| | 2 Cost of goods sold (attach Form 1125-A) ................................... | | | 2 | 1,054,625. |
| | 3 Gross profit. Subtract line 2 from line 1e ................................... | | | 3 | 426,327. |
| | 4 Net gain (loss) from Form 4797, Part II, line 17 (attach Form 4797) ........... | | | 4 | |
| | 5 Other income (loss) (see instrs — att statement) ...... * STMT .......... | | | 5 | 805. |
| | 6 Total income (loss). Add lines 3 through 5 ................................ ► | | | 6 | 427,132. |
| **D E D U C T I O N S (SEE INSTRS)** | 7 Compensation of officers ......................................... | | | 7 | |
| | 8 Salaries and wages (less employment credits) ............................. | | | 8 | 151,653. |
| | 9 Repairs and maintenance ........................................ | | | 9 | 1,160. |
| | 10 Bad debts ................................................. | | | 10 | |
| | 11 Rents ................................................... | | | 11 | |
| | 12 Taxes and licenses ........................................... | | | 12 | 69,991. |
| | 13 Interest .................................................. | | | 13 | 264. |
| | 14 Depreciation not claimed on Form 1125-A or elsewhere on return (attach Form 4562) ..... | | | 14 | 6,954. |
| | 15 Depletion (Do not deduct oil and gas depletion.) ............................. | | | 15 | |
| | 16 Advertising ............................................... | | | 16 | |
| | 17 Pension, profit-sharing, etc, plans ................................... | | | 17 | |
| | 18 Employee benefit programs ....................................... | | | 18 | 11,023. |
| | 19 Other deductions (attach statement) ...... * STMT ................. | | | 19 | 173,879. |
| | 20 Total deductions. Add lines 7 through 19 ................................ ► | | | 20 | 414,924. |
| | 21 Ordinary business income (loss). Subtract line 20 from line 6 ................... | | | 21 | 12,208. |
| **T A X A N D P A Y M E N T S** | 22a Excess net passive income or LIFO recapture tax (see instructions) .......... | 22a | | | |
| | b Tax from Schedule D (Form 1120S) ................. | 22b | | | |
| | c Add lines 22a and 22b (see instructions for additional taxes) ................... | | | 22c | |
| | 23a 2011 estimated tax payments and 2010 overpayment credited to 2011 ....... | 23a | | | |
| | b Tax deposited with Form 7004 ................... | 23b | 0. | | |
| | c Credit for federal tax paid on fuels (attach Form 4136) ............ | 23c | | | |
| | d Add lines 23a through 23c ........................................ | | | 23d | 0. |
| | 24 Estimated tax penalty (see instructions). Check if Form 2220 is attached ....... ► ☐ | | | 24 | |
| | 25 Amount owed. If line 23d is smaller than the total of lines 22c and 24, enter amount owed ........ | | | 25 | 0. |
| | 26 Overpayment. If line 23d is larger than the total of lines 22c and 24, enter amount overpaid ...... | | | 26 | |
| | 27 Enter amount from line 26 Credited to 2012 estimated tax ► _____ Refunded ► | | | 27 | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Signature of officer _____  Date _____  Title  V. PRESIDENT

May the IRS discuss this return with the preparer shown below (see instructions)?  ☐ Yes  ☒ No

**Paid Preparer Use Only**

| | | | |
|---|---|---|---|
| Print/Type preparer's name  MICHAEL K. KHIM | Preparer's signature  _____ | Date  03/21/14 | Check ☒ if self-employed   PTIN  ████7069 |
| Firm's name ►  MICHAEL K. KHIM ACCOUNTANCY CORPORATION | | | Firm's EIN ►  ███7994 |
| Firm's address ►  3250 WILSHIRE BLVD STE 1705  LOS ANGELES    CA 90010 | | | Phone no.  (213) 736-6789 |

BAA  For Paperwork Reduction Act Notice, see separate instructions.   SPSA0112  12/12/11   Form 1120S (2011)

USA - 020323

Form 1120S (2011)   LAURA'S FRENCH BAKING COMPANY, INC. ▮▮▮▮0622   Page **2**

## Schedule B | Other Information (see instructions)

| | | Yes | No |
|---|---|---|---|
| **1** Check accounting method:   a ☐ Cash   b ☒ Accrual   c ☐ Other (specify) ► | | | |
| **2** See the instructions and enter the:   a Business activity ► WHOLESALE _____   b Product or service ... ► BAKERY _____ | | | |
| **3** At the end of the tax year, did the corporation own, directly or indirectly, 50% or more of the voting stock of a domestic corporation? (For rules of attribution, see section 267(c).) If 'Yes,' attach a statement showing: **(a)** name and employer identification number (EIN), **(b)** percentage owned, and **(c)** if 100% owned, was a qualified subchapter S subsidiary election made? ................................................................................ | | | X |
| **4** Has this corporation filed, or is it required to file, **Form 8918**, Material Advisor Disclosure Statement, to provide information on any reportable transaction? ................................................................ | | | X |
| **5** Check this box if the corporation issued publicly offered debt instruments with original issue discount ........... ► ☐<br>If checked, the corporation may have to file **Form 8281**, Information Return for Publicly Offered Original Issue Discount Instruments. | | | |
| **6** If the corporation: **(a)** was a C corporation before it elected to be an S corporation or the corporation acquired an asset with a basis determined by reference to the basis of the asset (or the basis of any other property) in the hands of a C corporation and **(b)** has net unrealized built-in gain in excess of the net recognized built-in gain from prior years, enter the net unrealized built-in gain reduced by net recognized built-in gain from prior years *(see instructions)* ........................................... ► $ _____ | | | |
| **7** Enter the accumulated earnings and profits of the corporation at the end of the tax year ......... $ _____ | | | |
| **8** Are the corporation's total receipts *(see instructions)* for the tax year and its total assets at the end of the tax year less than $250,000? If 'Yes,' the corporation is not required to complete Schedules L and M-1 ............................. | | | X |
| **9** During the tax year, was a qualified subchapter S subsidiary election terminated or revoked? If 'Yes,' see instructions....... | | | X |
| **10a** Did the corporation make any payments in 2011 that would require it to file Form(s) 1099 (see instructions)? ............. | | | X |
| **b** If 'Yes,' did the corporation file or will it file all required Forms 1099? .............................. | | | |

## Schedule K | Shareholders' Pro Rata Share Items

| | | | Total amount |
|---|---|---|---|
| **I N C O M E   L O S S** | **1** Ordinary business income (loss) (page 1, line 21) ....................... | **1** | 12,208. |
| | **2** Net rental real estate income (loss) *(attach Form 8825)* ................ | **2** | |
| | **3a** Other gross rental income (loss) .......................... 3a | | |
| | **b** Expenses from other rental activities *(attach statement)* .............. 3b | | |
| | **c** Other net rental income (loss). Subtract line 3b from line 3a .............. | **3c** | |
| | **4** Interest income ................................................. | **4** | 6. |
| | **5** Dividends:   a Ordinary dividends............................... | **5a** | |
| | **b** Qualified dividends ......................... 5b | | |
| | **6** Royalties .................................................... | **6** | |
| | **7** Net short-term capital gain (loss) *(attach Schedule D (Form 1120S))* ...... | **7** | |
| | **8a** Net long-term capital gain (loss) *(attach Schedule D (Form 1120S))* ...... | **8a** | |
| | **b** Collectibles (28%) gain (loss) ................... 8b | | |
| | **c** Unrecaptured section 1250 gain *(attach statement)* ............. 8c | | |
| | **9** Net section 1231 gain (loss) *(attach Form 4797)* ................... | **9** | |
| | **10** Other income (loss) *(see instructions)* ............ Type ► | **10** | |

Form **1120S** (2011)

USA - 020324

Form **1120S** (2011)  LAURA'S FRENCH BAKING COMPANY, INC.          ▆▆▆ 0622      Page 3

Shareholders' Pro Rata Share Items (continued) | Total amount

| | | | | Total amount |
|---|---|---|---|---|
| **Deductions** | 11 Section 179 deduction *(attach Form 4562)* | 11 | | |
| | 12a Contributions | 12a | | |
| | b Investment interest expense | 12b | | |
| | c Section 59(e)(2) expenditures **(1)** Type ▶ ___ **(2)** Amount ▶ | 12c (2) | | |
| | d Other deductions *(see instructions)* ... Type ▶ ___ | 12d | | |
| **Credits** | 13a Low-income housing credit (section 42(j)(5)) | 13a | | |
| | b Low-income housing credit (other) | 13b | | |
| | c Qualified rehabilitation expenditures (rental real estate) *(attach Form 3468)* | 13c | | |
| | d Other rental real estate credits *(see instrs)* Type ▶ ___ | 13d | | |
| | e Other rental credits *(see instrs)* Type ▶ ___ | 13e | | |
| | f Alcohol and cellulosic biofuel fuels credit *(attach Form 6478)* | 13f | | |
| | g Other credits *(see instructions)* ...... Type ▶ | 13g | | |
| **Foreign Transactions** | 14a Name of country or U.S. possession ....... ▶ ___ | | | |
| | b Gross income from all sources | 14b | | |
| | c Gross income sourced at shareholder level | 14c | | |
| | *Foreign gross income sourced at corporate level* | | | |
| | d Passive category | 14d | | |
| | e General category | 14e | | |
| | f Other *(attach statement)* | 14f | | |
| | *Deductions allocated and apportioned at shareholder level* | | | |
| | g Interest expense | 14g | | |
| | h Other | 14h | | |
| | *Deductions allocated and apportioned at corporate level to foreign source income* | | | |
| | i Passive category | 14i | | |
| | j General category | 14j | | |
| | k Other *(attach statement)* | 14k | | |
| | *Other information* | | | |
| | l Total foreign taxes (check one): ▶ ☐ Paid   ☐ Accrued | 14l | | |
| | m Reduction in taxes available for credit *(attach statement)* | 14m | | |
| | n Other foreign tax information *(attach statement)* | | | |
| **Alternative Minimum Tax (AMT) Items** | 15a Post-1986 depreciation adjustment | 15a | | −350. |
| | b Adjusted gain or loss | 15b | | |
| | c Depletion (other than oil and gas) | 15c | | |
| | d Oil, gas, and geothermal properties — gross income | 15d | | |
| | e Oil, gas, and geothermal properties — deductions | 15e | | |
| | f Other AMT items *(attach statement)* | 15f | | |
| **Items Affecting Shareholder Basis** | 16a Tax-exempt interest income | 16a | | |
| | b Other tax-exempt income | 16b | | |
| | c Nondeductible expenses | 16c | | 3,609. |
| | d Distributions *(attach stmt if required) (see instrs)* | 16d | | |
| | e Repayment of loans from shareholders | 16e | | |
| **Other Information** | 17a Investment income | 17a | | 6. |
| | b Investment expenses | 17b | | |
| | c Dividend distributions paid from accumulated earnings and profits | 17c | | |
| | d Other items and amounts *(attach statement)* | | | |
| **Reconciliation** | 18 **Income/loss reconciliation.** Combine the amounts on lines 1 through 10 in the far right column. From the result, subtract the sum of the amounts on lines 11 through 12d and lines 14l | 18 | | 12,214. |

BAA                                                      Form **1120S** (2011)

USA - 020325

Form **1120S** (2011)  LAURA'S FRENCH BAKING COMPANY, INC.          ████0622          Page **4**

## Schedule L — Balance Sheets per Books

| Assets | | (a) Beginning of tax year | (b) | (c) End of tax year | (d) |
|---|---|---|---|---|---|
| 1 Cash | | | 50,086. | | 76,526. |
| 2a Trade notes and accounts receivable | | 143,810. | | 88,577. | |
| b Less allowance for bad debts | | | 143,810. | | 88,577. |
| 3 Inventories | | | 113,606. | | 166,484. |
| 4 U.S. government obligations | | | | | |
| 5 Tax-exempt securities (see instructions) | | | | | |
| 6 Other current assets (attach stmt) ... Ln .6 .St | | | 1,300. | | 170. |
| 7 Loans to shareholders | | | | | |
| 8 Mortgage and real estate loans | | | | | |
| 9 Other investments (attach statement) | | | | | |
| 10a Buildings and other depreciable assets | | 603,574. | | 603,574. | |
| b Less accumulated depreciation | | 476,016. | 127,558. | 482,970. | 120,604. |
| 11a Depletable assets | | | | | |
| b Less accumulated depletion | | | | | |
| 12 Land (net of any amortization) | | | | | |
| 13a Intangible assets (amortizable only) | | | | | |
| b Less accumulated amortization | | | | | |
| 14 Other assets (attach stmt) ... Ln .14 .St | | | 15,885. | | 15,885. |
| 15 Total assets | | | 452,245. | | 468,246. |
| **Liabilities and Shareholders' Equity** | | | | | |
| 16 Accounts payable | | | 55,845. | | 64,495. |
| 17 Mortgages, notes, bonds payable in less than 1 year | | | | | |
| 18 Other current liabilities (attach stmt) .. Ln .18 .St | | | 546,202. | | 651,648. |
| 19 Loans from shareholders | | | 165,000. | | 163,300. |
| 20 Mortgages, notes, bonds payable in 1 year or more | | | | | |
| 21 Other liabilities (attach statement) | | | | | |
| 22 Capital stock | | | 100,000. | | 100,000. |
| 23 Additional paid-in capital | | | 242,083. | | 242,083. |
| 24 Retained earnings | | | −656,885. | | −753,280. |
| 25 Adjustments to shareholders' equity (att stmt) | | | | | |
| 26 Less cost of treasury stock | | | | | |
| 27 Total liabilities and shareholders' equity | | | 452,245. | | 468,246. |

## Schedule M-1 — Reconciliation of Income (Loss) per Books With Income (Loss) per Return

Note. Schedule M-3 required instead of Schedule M-1 if total assets are $10 million or more — see instructions

| | | |
|---|---|---|
| 1 Net income (loss) per books | | −96,395. |
| 2 Income included on Schedule K, lines 1, 2, 3c, 4, 5a, 6, 7, 8a, 9, and 10, not recorded on books this year (itemize): | | |
| 3 Expenses recorded on books this year not included on Schedule K, lines 1 through 12, and 141 (itemize): | | |
| a Depreciation ..... $ | | |
| b Travel and entertainment . $ 3,609. | | |
| * STMT $ 105,000. | 108,609. | |
| 4 Add lines 1 through 3 | 12,214. | |

| | | |
|---|---|---|
| 5 Income recorded on books this year not included on Schedule K, lines 1 through 10 (itemize): | | |
| a Tax-exempt interest . $ | | |
| 6 Deductions included on Schedule K, lines 1 through 12, and 141, not charged against book income this year (itemize): | | |
| a Depreciation ..... $ | | |
| 7 Add lines 5 and 6 | | |
| 8 Income (loss) (Schedule K, ln 18). Ln 4 less ln 7 | 12,214. | |

## Schedule M-2 — Analysis of Accumulated Adjustments Account, Other Adjustments Account, and Shareholders' Undistributed Taxable Income Previously Taxed (see instructions)

| | | (a) Accumulated adjustments account | (b) Other adjustments account | (c) Shareholders' undistributed taxable income previously taxed |
|---|---|---|---|---|
| 1 Balance at beginning of tax year | | −697,931. | | |
| 2 Ordinary income from page 1, line 21 | | 12,208. | | |
| 3 Other additions ... STMT | | 6. | | |
| 4 Loss from page 1, line 21 | | | | |
| 5 Other reductions ... STMT | | 3,609. | | |
| 6 Combine lines 1 through 5 | | −689,326. | | |
| 7 Distributions other than dividend distributions | | | | |
| 8 Balance at end of tax year. Subtract line 7 from line 6 | | −689,326. | | |

SPSA0134  06/03/11.

Form **1120S** (2011)

USA - 020326

**Form 1125-A**
(December 2011)

Department of the Treasury
Internal Revenue Service

# Cost of Goods Sold

► Attach to Form 1120, 1120-C, 1120-F, 1120-S, 1065, and 1065-B.

OMB No. 1545-2225

**Name**

LAURA'S FRENCH BAKING COMPANY, INC.

**Employer Identification number**

████████0622

| | | | |
|---|---|---|---:|
| 1 | Inventory at beginning of year | 1 | 113,606. |
| 2 | Purchases | 2 | 473,014. |
| 3 | Cost of labor | 3 | 392,913. |
| 4 | Additional section 263A costs (attach schedule) | 4 | |
| 5 | Other costs (attach schedule) ...... STMT | 5 | 241,576. |
| 6 | Total. Add lines 1 through 5 | 6 | 1,221,109. |
| 7 | Inventory at end of year | 7 | 166,484. |
| 8 | Cost of goods sold. Subtract line 7 from line 6. Enter here and on Form 1120, page 1, line 2 or the appropriate line of your tax return (see instructions) | 8 | 1,054,625. |

**9a** Check all methods used for valuing closing inventory:

　　(i) ☒ Cost

　　(ii) ☐ Lower of cost or market

　　(iii) ☐ Other (Specify method used and att. expl.) .. ► _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**b** Check if there was a writedown of subnormal goods ................................................................ ► ☐

**c** Check if the LIFO inventory method was adopted this tax year for any goods (if checked, attach Form 970) ................ ► ☐

**d** If the LIFO inventory method was used for this tax year, enter amount of closing inventory computed under LIFO | 9d |

**e** If property is produced or acquired for resale, do the rules of section 263A apply to the corporation? ................ ☐ Yes ☒ No

**f** Was there any change in determining quantities, cost, or valuations between opening and closing inventory? If 'Yes,' attach explanation ................................................ ☐ Yes ☒ No

**BAA For Paperwork Reduction Act Notice, see separate instructions.**                    Form 1125-A (12-2011)

CPCZ0401  01/25/12

USA - 020327

671111

☐ Final K-1     ☐ Amended K-1     OMB No. 1545-0130

**Schedule K-1**
**(Form 1120S)**

**2011**

For calendar year 2011, or tax

Department of the Treasury
Internal Revenue Service

year beginning _____ , 2011

ending _____

**Shareholder's Share of Income, Deductions, Credits, etc** ► See page 2 of form and separate instructions.

| **Part I** | Information About the Corporation |

**A** Corporation's employer identification number

    ██ 0622

**B** Corporation's name, address, city, state, and ZIP code

LAURA'S FRENCH BAKING COMPANY, INC.
6721 ALAMEDA STREET
LOS ANGELES, CA 90001

**C** IRS Center where corporation filed return

Ogden, UT 84201-0013

| **Part II** | Information About the Shareholder |

**D** Shareholder's identifying number

    ██ 2875

**E** Shareholder's name, address, city, state, and ZIP code

STERLING J KIM

LOS ANGELES, CA ████

**F** Shareholder's percentage of stock
ownership for tax year .................... 10.00000 %

F
O
R

I
R
S

U
S
E

O
N
L
Y

| **Part III** | **Shareholder's Share of Current Year Income, Deductions, Credits, and Other Items** |

| 1 Ordinary business income (loss) | 13 Credits |
| 1,221. | |

| 2 Net rental real estate income (loss) | |

| 3 Other net rental income (loss) | |

| 4 Interest income | |
| 1. | |

| 5a Ordinary dividends | |

| 5b Qualified dividends | 14 Foreign transactions |

| 6 Royalties | |

| 7 Net short-term capital gain (loss) | |

| 8a Net long-term capital gain (loss) | |

| 8b Collectibles (28%) gain (loss) | |

| 8c Unrecaptured section 1250 gain | |

| 9 Net section 1231 gain (loss) | |

| 10 Other income (loss) | 15 Alternative minimum tax (AMT) items |
| | A -35. |

| 11 Section 179 deduction | 16 Items affecting shareholder basis |
| | C 361. |

| 12 Other deductions | |

| | 17 Other information |
| | A 1. |

*See attached statement for additional information.

BAA For Paperwork Reduction Act Notice, see Instructions for Form 1120S.     Schedule K-1 (Form 1120S) 2011

SIPSA0412 08/02/11

USA - 020328

**Schedule K-1**
**(Form 1120S)**

Department of the Treasury
Internal Revenue Service

**2011**

For calendar year 2011, or tax
year beginning _____ , 2011
ending _____ .

**Shareholder's Share of Income, Deductions, Credits, etc** ► See page 2 of form and separate instructions.

**Part I**  **Information About the Corporation**

**A** Corporation's employer identification number
■ 0622

**B** Corporation's name, address, city, state, and ZIP code
LAURA'S FRENCH BAKING COMPANY, INC.
6721 ALAMEDA STREET
LOS ANGELES, CA 90001

**C** IRS Center where corporation filed return
Ogden, UT 84201-0013

**Part II**  **Information About the Shareholder**

**D** Shareholder's identifying number
■ 8486

**E** Shareholder's name, address, city, state, and ZIP code
LAURA HI JA KIM
■
LOS ANGELES, CA ■

**F** Shareholder's percentage of stock
ownership for tax year ................ **90.00000 %**

☐ Final K-1   ☐ Amended K-1   671111   OMB No. 1545-0130

**Part III**  **Shareholder's Share of Current Year Income, Deductions, Credits, and Other Items**

1 Ordinary business income (loss) **10,987.**
2 Net rental real estate income (loss)
3 Other net rental income (loss)
4 Interest income **5.**
5a Ordinary dividends
5b Qualified dividends
6 Royalties
7 Net short-term capital gain (loss)
8a Net long-term capital gain (loss)
8b Collectibles (28%) gain (loss)
8c Unrecaptured section 1250 gain
9 Net section 1231 gain (loss)
10 Other income (loss)
11 Section 179 deduction
12 Other deductions

13 Credits

14 Foreign transactions

15 Alternative minimum tax (AMT) items
A **-315.**

16 Items affecting shareholder basis
C **3,248.**

17 Other information
A **5.**

*See attached statement for additional information.

**F O R   I R S   U S E   O N L Y**

BAA For Paperwork Reduction Act Notice, see Instructions for Form 1120S.

Schedule K-1 (Form 1120S) 2011

SPSA0412  08/02/11

USA - 020329

| Form **4562** | **Depreciation and Amortization** (Including Information on Listed Property) | OMB No. 1545-0172 **2011** |
|---|---|---|
| Department of the Treasury Internal Revenue Service (99) | ► See separate instructions.   ► Attach to your tax return. | Attachment Sequence No. **179** |

Name(s) shown on return

LAURA'S FRENCH BAKING COMPANY, INC.

Identifying number ██████ 0622

Business or activity to which this form relates

Form 1120S Line 21

## Part I  Election To Expense Certain Property Under Section 179
**Note:** *If you have any listed property, complete Part V before you complete Part I.*

| | | | |
|---|---|---|---|
| 1 | Maximum amount (see instructions) | 1 | 500,000. |
| 2 | Total cost of section 179 property placed in service (see instructions) | 2 | |
| 3 | Threshold cost of section 179 property before reduction in limitation (see instructions) | 3 | 2,000,000. |
| 4 | Reduction in limitation. Subtract line 3 from line 2. If zero or less, enter -0- | 4 | |
| 5 | Dollar limitation for tax year. Subtract line 4 from line 1. If zero or less, enter -0-. If married filing separately, see instructions | 5 | |

| 6 | (a) Description of property | (b) Cost (business use only) | (c) Elected cost |
|---|---|---|---|
| | | | |
| | | | |

| | | | |
|---|---|---|---|
| 7 | Listed property. Enter the amount from line 29 | 7 | |
| 8 | Total elected cost of section 179 property. Add amounts in column (c), lines 6 and 7 | 8 | |
| 9 | Tentative deduction. Enter the smaller of line 5 or line 8 | 9 | |
| 10 | Carryover of disallowed deduction from line 13 of your 2010 Form 4562 | 10 | |
| 11 | Business income limitation. Enter the smaller of business income (not less than zero) or line 5 (see instrs) | 11 | |
| 12 | Section 179 expense deduction. Add lines 9 and 10, but do not enter more than line 11 | 12 | |
| 13 | Carryover of disallowed deduction to 2012. Add lines 9 and 10, less line 12 ► | 13 | |

**Note:** *Do not use Part II or Part III below for listed property. Instead, use Part V.*

## Part II  Special Depreciation Allowance and Other Depreciation (Do not include listed property.) (See instructions.)

| | | | |
|---|---|---|---|
| 14 | Special depreciation allowance for qualified property (other than listed property) placed in service during the tax year (see instructions) | 14 | |
| 15 | Property subject to section 168 (f)(1) election | 15 | |
| 16 | Other depreciation (including ACRS) | 16 | 996. |

## Part III  MACRS Depreciation (Do not include listed property.) (See instructions.)

### Section A

| | | | |
|---|---|---|---|
| 17 | MACRS deductions for assets placed in service in tax years beginning before 2011 | 17 | 5,958. |
| 18 | If you are electing to group any assets placed in service during the tax year into one or more general asset accounts, check here ► ☐ | | |

### Section B — Assets Placed in Service During 2011 Tax Year Using the General Depreciation System

| (a) Classification of property | (b) Month and year placed in service | (c) Basis for depreciation (business/investment use only — see instructions) | (d) Recovery period | (e) Convention | (f) Method | (g) Depreciation deduction |
|---|---|---|---|---|---|---|
| 19a 3-year property | | | | | | |
| b 5-year property | | | | | | |
| c 7-year property | | | | | | |
| d 10-year property | | | | | | |
| e 15-year property | | | | | | |
| f 20-year property | | | | | | |
| g 25-year property | | | 25 yrs | | S/L | |
| h Residential rental property | | | 27.5 yrs | MM | S/L | |
| | | | 27.5 yrs | MM | S/L | |
| i Nonresidential real property | | | 39 yrs | MM | S/L | |
| | | | | MM | S/L | |

### Section C — Assets Placed in Service During 2011 Tax Year Using the Alternative Depreciation System

| | | | | | | |
|---|---|---|---|---|---|---|
| 20a Class life | | | | | S/L | |
| b 12-year | | | 12 yrs | | S/L | |
| c 40-year | | | 40 yrs | MM | S/L | |

## Part IV  Summary (See instructions.)

| | | | |
|---|---|---|---|
| 21 | Listed property. Enter amount from line 28 | 21 | 0. |
| 22 | Total. Add amounts from line 12, lines 14 through 17, lines 19 and 20 in column (g), and line 21. Enter here and on the appropriate lines of your return. Partnerships and S corporations — see instructions | 22 | 6,954. |
| 23 | For assets shown above and placed in service during the current year, enter the portion of the basis attributable to section 263A costs | 23 | |

BAA For Paperwork Reduction Act Notice, see separate instructions.     FDIZ0812 05/20/11     Form **4562** (2011)

USA - 020330

Form 4562 (2011)   LAURA'S FRENCH BAKING COMPANY. INC.   0622   Page 2

**Part V  Listed Property** (Include automobiles, certain other vehicles, certain computers, and property used for entertainment, recreation, or amusement.)

Note: For any vehicle for which you are using the standard mileage rate or deducting lease expense, complete only 24a, 24b, columns (a) through (c) of Section A, all of Section B, and Section C if applicable.

**Section A — Depreciation and Other Information** (Caution: See the instructions for limits for passenger automobiles.)

24a Do you have evidence to support the business/investment use claimed? ...... [X] Yes   No  24b If 'Yes,' is the evidence written? ...... [X] Yes   No

| (a) Type of property (list vehicles first) | (b) Date placed in service | (c) Business/investment use percentage | (d) Cost or other basis | (e) Basis for depreciation (business/investment use only) | (f) Recovery period | (g) Method/Convention | (h) Depreciation deduction | (i) Elected section 179 cost |
|---|---|---|---|---|---|---|---|---|
| 25 Special depreciation allowance for qualified listed property placed in service during the tax year and used more than 50% in a qualified business use (see instructions) ..... 25 | | | | | | | | |
| 26 Property used more than 50% in a qualified business use: | | | | | | | | |
| 30. Chevy Astro | 05/31/00 | 100.00 | 20,599. | 20,599. | 5.00 | 200 DB-HY | 0. | |
| 33. Hyundai | 10/31/00 | 100.00 | 13,942. | 13,942. | 5.00 | 200 DB-HY | 0. | |
| 48. Vehicle | 08/27/03 | 100.00 | 19,511. | 19,511. | 5.00 | 200 DB-HY | 0. | |
| 27 Property used 50% or less in a qualified business use: | | | | | | | | |
| | | | | | | | | |
| 28 Add amounts in column (h), lines 25 through 27. Enter here and on line 21, page 1 ..... 28 | | | | | | | 0. | |
| 29 Add amounts in column (i), line 26. Enter here and on line 7, page 1 ..... 29 | | | | | | | | |

**Section B — Information on Use of Vehicles**

Complete this section for vehicles used by a sole proprietor, partner, or other 'more than 5% owner,' or related person. If you provided vehicles to your employees, first answer the questions in Section C to see if you meet an exception to completing this section for those vehicles.

| | | (a) Vehicle 1 | (b) Vehicle 2 | (c) Vehicle 3 | (d) Vehicle 4 | (e) Vehicle 5 | (f) Vehicle 6 |
|---|---|---|---|---|---|---|---|
| 30 | Total business/investment miles driven during the year (do not include commuting miles) ..... | | | | | | |
| 31 | Total commuting miles driven during the year ..... | | | | | | |
| 32 | Total other personal (noncommuting) miles driven ..... | | | | | | |
| 33 | Total miles driven during the year. Add lines 30 through 32 ..... | | | | | | |
| | | Yes No | Yes No | Yes No | Yes No | Yes No | Yes No |
| 34 | Was the vehicle available for personal use during off-duty hours? ..... | | | | | | |
| 35 | Was the vehicle used primarily by a more than 5% owner or related person? ..... | | | | | | |
| 36 | Is another vehicle available for personal use? ..... | | | | | | |

**Section C — Questions for Employers Who Provide Vehicles for Use by Their Employees**

Answer these questions to determine if you meet an exception to completing Section B for vehicles used by employees who are not more than 5% owners or related persons (see instructions).

| | Yes | No |
|---|---|---|
| 37 Do you maintain a written policy statement that prohibits all personal use of vehicles, including commuting, by your employees? ..... | | |
| 38 Do you maintain a written policy statement that prohibits personal use of vehicles, except commuting, by your employees? See the instructions for vehicles used by corporate officers, directors, or 1% or more owners ..... | | |
| 39 Do you treat all use of vehicles by employees as personal use? ..... | | |
| 40 Do you provide more than five vehicles to your employees, obtain information from your employees about the use of the vehicles, and retain the information received? ..... | | |
| 41 Do you meet the requirements concerning qualified automobile demonstration use? (See instructions.) ..... | | |

Note: If your answer to 37, 38, 39, 40, or 41 is 'Yes,' do not complete Section B for the covered vehicles.

**Part VI  Amortization**

| (a) Description of costs | (b) Date amortization begins | (c) Amortizable amount | (d) Code section | (e) Amortization period or percentage | (f) Amortization for this year |
|---|---|---|---|---|---|
| 42 Amortization of costs that begins during your 2011 tax year (see instructions): | | | | | |
| | | | | | |
| 43 Amortization of costs that began before your 2011 tax year ..... 43 | | | | | |
| 44 Total. Add amounts in column (f). See the instructions for where to report ..... 44 | | | | | |

FDIZ0812 05/20/11   Form 4562 (2011)

USA - 020331

LAURA'S FRENCH BAKING COMPANY, INC.     ████ 0622                          1

Form 1120S, Page 1, Line 5
**Other Income (Loss)**

| | |
|---|---|
| OTHER INCOME | 805. |
| Total | 805. |

Form 1120S, Page 1, Line 19
**Other Deductions**

| | |
|---|---|
| AUTOMOBILE AND TRUCK EXPENSE | 13,529. |
| BANK CHARGES | 1,581. |
| COMPUTER SERVICES AND SUPPLIES | 3,709. |
| DUES AND SUBSCRIPTIONS | 288. |
| EQUIPMENT RENT | 4,083. |
| INSURANCE | 25,216. |
| JANITORIAL | 43. |
| LEGAL AND PROFESSIONAL | 13,348. |
| MEALS AND ENTERTAINMENT (50%) | 3,609. |
| OFFICE EXPENSE | 2,300. |
| PARKING FEES AND TOLLS | 89. |
| POSTAGE | 481. |
| PRINTING | 2,196. |
| TELEPHONE | 6,794. |
| TRAVEL | 1,116. |
| BROKER FEE | 2,161. |
| MARKETING EXPENSE | 74,736. |
| MEDICAL EXPENSE | 3,543. |
| PAYROLL PROCESSING FEE | 1,981. |
| RECRUITING EXPENSE | 50. |
| SAMPLE EXPENSE | 2,790. |
| SHOW EXPENSE | 9,736. |
| WEB-SITE EXPENSE | 500. |
| Total | 173,879. |

Other Current Assets:
**1120S, Schedule L, Line 6**

| **Other Current Assets:** | Beginning of tax year | End of tax year |
|---|---|---|
| EMPLOYEE ADVANCE | 1,300. | 170. |
| Total | 1,300. | 170. |

Other Assets:
**1120S, Schedule L, Line 14**

| **Other Assets:** | Beginning of tax year | End of tax year |
|---|---|---|
| LEASE DEPOSITS | 15,885. | 15,885. |
| Total | 15,885. | 15,885. |

USA - 020332

USA - 020333

**1120S, Schedule L, Line 18**
Other Current Liabilities:

| Other Current Liabilities: | Beginning of tax year | End of tax year |
|---|---|---|
| PAYROLL TAXES PAYABLE | 0. | 446. |
| REBATE PAYABLE | 5,872. | 5,872. |
| RENT PAYABLE | 540,330. | 645,330. |
| Total | 546,202. | 651,648. |

Form 1120S, Page 4, Schedule M-1, Line 3
**Sch M-1, Line 3**

| ACCRUED RENT | 105,000. |
|---|---|
| Total | 105,000. |

Form 1120S, Page 4, Schedule M-2, Line 3
**Schedule M-2, Other Additions**

| INTEREST INCOME | 6. |
|---|---|
| Total | 6. |

Form 1120S, Page 4, Schedule M-2, Line 5
**Schedule M-2, Other Reductions**

| MEALS AND ENTERTAINMENT | 3,609. |
|---|---|
| Total | 3,609. |

Form 1125, Line 5
**Other Costs Statement**

| ALARM AND SECURITY | 2,047. |
|---|---|
| CLEANING & JANITORIAL SERVICE | 8,135. |
| DISPOSAL | 4,466. |
| EQUIPMENT RENTAL | 15,401. |
| INSPECTION EXPENSE | 4,757. |
| INSURANCE | 40,302. |
| LINENS AND LAUNDRY | 13,613. |
| PAYROLL TAXES | 14,128. |
| PEST CONTROL | 3,124. |
| R&D EXPENSE | 819. |
| REPAIRS AND MAINTENANCE | 39,333. |
| SUPPLIES | 22,915. |
| UTILITIES | 72,536. |
| Total | 241,576. |