1  Caroline D. Ciraolo
2  Email: cciraolo@kflaw.com
   William G. Greco
3  Email: wgreco@kflaw.com
4  Telephone: (443) 845-4898
   Fax: (212) 808-8108
5  Kostelanetz LLP
6  601 New Jersey Ave, N.W., Ste. 260
   Washington, DC 20001
7  *Pro Hac Vice Counsel*

8  A. Lavar Taylor (CA Bar No. 129512)
9  Email: ltaylor@taylorlaw.com
   Jonathan T. Amitrano (CA Bar No. 283389)
10 Email: jamitrano@taylorlaw.com
11 Telephone: (714) 546-0445, ext. 116
   Fax: (714) 546-2604
12 Taylor, Nelson & Amitrano, LLP
13 3 Hutton Centre Drive, Ste. 500
   Santa Ana, CA 92707
14 *Attorneys for Laura Kim*

15
16                   UNITED STATES DISTRICT COURT
17                  CENTRAL DISTRICT OF CALIFORNIA
18                         WESTERN DIVISION

| | |
|---|---|
| 19  United States of America, | CASE NO. 2:21-cv-06746 FMO (KSx) |
| 20       Plaintiff, | |
| 21       v. | **SUPPLEMENTAL MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| 22  Laura Kim, | |
| 23       Defendant. | |
| 24 | Motion Hearing Date: Mar. 9, 2022 |
| 25 | Motion Hearing Time: 10:00am PST |
|   | Courtroom: 6D |
| 26 | Judge: Fernando Olguin |
| 27 | |
|   | Action Filed: February 7, 2023 |
| 28 | Trial Date: |

1

# SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I. Introduction

Defendant Laura Kim ("Ms. Kim") files this Supplemental Memorandum of Points and Authorities pursuant to this Court's Order Re: Summary Judgment Motions, ECF No. 21 (Feb. 15, 2022), supplementing the parties' Cross Motion for Summary Judgment, ECF No. 36 (Feb. 7, 2023) ("Cross Motion").

## II. Ms. Kim did not willfully file inaccurate FBARs

In considering Plaintiff's motion for summary judgment, the evidence presented by Ms. Kim to support lack of willfulness "is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). Whether Ms. Kim acted willfully is a "disputed fact that a jury must find or not." *See United States v. Cohen*, No. 2:17-cv-01652, 2019 WL 8231039, at *1, *7 (C.D. Cal. Dec. 16, 2019).

Ms. Kim provided sworn testimony that she learned of the FBAR from her sister in 2009, D300-D301, immediately found the form, D304, prepared it to the best of her ability, D307, and filed the FBAR with a note asking the IRS to contact her if she made any mistakes, D308-D309. Ms. Kim also presented evidence proving that Michael Khim ("Khim"), her U.S. accountant, never advised her to report her foreign accounts or explained the FBAR requirements, D305; that she did not personally manage her bank accounts, D259; that she relied in good faith on employees who managed her foreign accounts to provide the records she used to prepare her FBARs, P177-P179, D511; and that Korean banks frequently closed and rolled over her short-term interest-bearing savings accounts without her explicit authorization or knowledge, D515-D517.

Plaintiff contends that Ms. Kim did not take her obligation seriously and therefore, she acted recklessly. This assertion mispresents Ms. Kim's sworn testimony:

> Q. Who was making the decision about what letters and numbers to type on this form?
>
> A. I was -- they must have gave me the account number and the balances; so I must have say what to put that in there. I didn't think it was that serious because it was -- I didn't think it was that serious at that time.

P176; Ex. 182 at 46:16-24. Plaintiff is aware that Ms. Kim is not a native English speaker and has limited proficiency. D218-D219, Ex. 182 at 6:21-7:7. She learned of the FBAR in 2009 and promptly did her best to complete the form. The suggestion that this is evidence of recklessness lacks merit.

Without direct evidence that Ms. Kim willfully violated the FBAR reporting requirements, Plaintiff further seeks to inflame the passions of the court by citing the number of Korean accounts related to Ms. Kim in the years at issue and amounts reflected on Korean account statements, and calculating alleged percentages of amounts not reported on the timely filed FBARs. Ms. Kim disputes Plaintiff's calculations and, more importantly, rejects its suggestion that the number of accounts or amount of funds therein establish that she knowingly (or recklessly) violated a known legal duty.

Regardless of whether willfulness includes recklessness,[1] or whether the standard of review is clear and convincing or by a preponderance of the

---

[1] This issue is the subject of a petition for writ of certiorari pending before the U.S. Supreme Court in *Bedrosian v. United States*, 42 F.4th 174 (3d Cir. 2022), *petition for cert. filed* (U.S. Dec. 29, 2022) (No. 22-598). On February 13, 2023, the Court ordered the United States to respond to the petition.

3

evidence, viewing the evidence presented in the light most favorable to Ms. Kim, Plaintiff's motion for summary judgment must be denied.

### III. The FBAR Penalties were assessed after the limitations periods

Plaintiff concedes that "Defendant agreed to conditionally extend the statute of limitations to December 31, 2019, if the case was forwarded to Appeals – using the language 'in the very near future[.]'" Cross Motion, at 31. The undisputed evidence establishes that RA Chernyak continued her examination after receiving the April 2018 Conditional Consent and did not transfer the cases to Appeals until nearly six months later. D385-D397.] No reasonable juror would define "in the very near future" as six months later.

Since the outset of the audit in late 2012, Ms. Kim had travelled to the United States from Korea twice to give in-person interviews with the IRS. Ex. 116 at USA – 004599. In November 2016, the IRS said that its income tax audit was concluded and sent Ms. Kim an incomplete Form 4549 proposing adjustments to income for 2010-2012. *Id.* In December 2016, RA Chernyak revised her proposed income adjustments. Ex. 107 at USA – 003566. In response, Ms. Kim presented evidence that the proposed adjustment to foreign-source "other income" of more than $11 million was grossly erroneous. *Id.* at 3566-3568. Ms. Kim asked that the FBAR audit be resolved with the income tax audit because the inflated income adjustments appeared to be driving the FBAR penalty analysis. *Id.* at 3568. The IRS promised that the proposed FBAR penalties would be held pending the outcome of the income tax audit. *Id.*

Notwithstanding that promise, RA Chernyak issued a Letter 3709 in April 2017 proposing $6 million in willful FBAR penalties without closing the income tax audit. *Id.* at 3569; Ex. 84. Ms. Kim filed a protest in May 2017 and the IRS promised to "hold" the protest until after a meeting in June 2017 to discuss the income tax audit. Ex. 107, at 3570. The June 2017

meeting was delayed until January 2018, when the IRS told Ms. Kim's representatives that it was opening new issues in the income tax audit and re-issuing the Letter 3709. *Id.* The FBAR Explanation of Items attached to the second Letter 3709 was nearly identical to the version attached to the first Letter 3709, except the "Conclusion" was modified in an attempt to justify a penalty of $4 million. The slightly modified Explanation of Items did not address any of the factual errors identified by Ms. Kim in her May 2017 protest. *See* D371; *compare* Ex. 84 *and* Ex. 69.

On April 2, 2018, Ms. Kim's representatives met with the IRS again to explain why its proposed adjustments to income were grossly incorrect. Ex. 161 at USA – 013089. RA Chernyak was told that Ms. Kim "really wants to get this wrapped up." *Id.* at 13089-13090. Yet when Ms. Kim submitted the April 2018 Conditional Consent three weeks later, more than a year after the IRS first advised that the income tax audit was complete and would be closed with the FBAR audit, Ms. Kim still had not received a 30-day letter closing the income tax audit. Ex. 116, at 4599-4600.

It is in this context that Ms. Kim conditioned her consent to extend the limitations period to assess FBAR penalties. Ms. Kim, who had previously attempted suicide, D242, Ex. 192 at 118:5-9, was becoming increasingly distressed by an audit that had no end in sight, *see* Ex. 190 at ¶29. Ms. Kim imposed the condition on the consent to hold the IRS to its promises that the audits were over. *See* Ex. 116, at 4600.

Plaintiff contends that the IRS complied with the condition imposed and, at the same time, attempts to mitigate RA Chernyak's intentional delay in closing the audit and transferring the cases to Appeals by arguing that Ms. Kim still had the opportunity to a pre-assessment review. *See* Cross Motion, at 29. Plaintiff ignores the fact that the condition was imposed by Ms. Kim to ensure prompt closure of the audit that had been pending for

1  more than five years, Ex. 116 at USA – 004599, and to avoid further damage
2  to Ms. Kim's precarious mental health. Ex. 190, at No. 17.

3        RA Chernyak breached the unambiguous condition imposed on the
4  April 2018 Conditional Consent. As a result, the statute of limitations to
5  assess civil FBAR penalties expired on June 30, 2019, rather than the
6  conditionally extended date of December 31, 2019. Accordingly, the
7  assessment of the FBAR Penalties is invalid.

8  **IV. <u>The FBAR Penalties were assessed without requisite authority</u>**

9        Plaintiff contends that Mitchell, who was authorized to assess FBAR
10 penalties in her capacity as Acting Department Manager, CTR Operations,
11 properly redelegated this authority to Graves. Cross Motion, at 38. However,
12 Delegation Order 25-13 specifies that FBAR enforcement authority,
13 including authority to assess and collect civil FBAR penalties, "*may not be*
14 *redelegated*." Delegation Order 25-13, IRM 1.2.2.14.13 (04-11-2012) ("Deleg.
15 Order 25-13") (emphasis supplied). The 2015 modification of the Delegation
16 Order did not alter that restriction. *See* Memo for Comm'r, LB&I et al. re:
17 Deleg. Order 25-13 (Jul. 8, 2015) ("Memo for Comm'r, LB&I *et al*"). Nor does
18 the provision that the authority to "assess and collect civil penalties"
19 includes the authority to "take any other action reasonably necessary for the
20 enforcement of [the FBAR provisions]," Deleg. Order 25-13, undermine that
21 restriction. *See, e.g.*, *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
22 566 U.S. 639, 645 (2012) ("[I]t is a commonplace of statutory construction
23 that the specific governs the general."). Plaintiff fails to cite a single case
24 where the court permitted delegation where the delegation was in direct
25 violation of the delegation order.

26       Plaintiff cites *Crawford-Hall v. United States*, 394 F. Supp. 3d 1122
27 (C.D. Cal. 2019), for the proposition that the Ninth Circuit presumes a
28 subdelegation by a federal officer is permissible. However, *Crawford-Hall*

6

makes clear that this presumption is not absolute; in fact, the attempted subdelegation in that case was found to be *impermissible*:

> In this case, however, the issue is not whether Congress authorized subdelegations in this particular context, but whether the agency is permitted to engage in subdelegations based on the language of its own regulatory provisions. Agencies are bound to follow the regulations they promulgate, whether procedural or substantive in nature. . . . Thus, whether a subdelegation of agency authority is lawful also depends on an analysis of the applicable regulations to determine the agency's own intent regarding subdelegations. Here, a plain reading of Section 2.20(c) provides affirmative evidence of an intent to restrict the Assistant Secretary's authority to subdelegate the ability to decide appeals.

*Id.*, at 1136-37 (cleaned up). In addition to ignoring this clear holding of *Crawford Hall,* Plaintiff misrepresents the applicability of *Frankl v. HTH Corp.,* 650 F.3d 1334, 1350 (9th Cir. 2011), and *Inland Empire Pub. Lands Council v. Glickman,* 88 F.3d 697, 702 (9th Cir. 1996), neither of which involved a clear, unequivocal prohibition against redelegation.

Treas. Reg. § 301.7701-9(c) provides, "An officer or employee, including the Commissioner, authorized by regulations or Treasury decision to perform a function shall have authority to redelegate the performance of such function to any officer or employee performing services under his supervision and control, *unless such power to so redelegate is prohibited or restricted by proper order or directive.*" *Id.* (emphasis added). The delegation to the Commissioner of authority to "assess and collect civil penalties under 31 U.S.C. § 5321" is codified in 31 C.F.R. § 1010.810(g). That authority was then redelegated to, *inter alia,* Department Manager, CTR Operations, by Delegation Order 25-13, as modified. *See* Deleg. Order 25-13; Memo for

1 Comm'r, LB&I *et al*. As noted, Delegation Order 25-13 provides that, "These
2 authorities may not be redelegated." Deleg. Order 25-13. As in *Crawford-*
3 *Hall*, "a plain reading" of the applicable regulations and delegation order in
4 this case "provides affirmative evidence of an intent to restrict"
5 subdelegation of the authority to assess civil FBAR penalties.

6       Plaintiff also conflates "delegation" with "designation." Mitchell was
7 authorized to assess FBAR penalties because Smith-Pope *designated* her to
8 serve as Acting Department Manager, CTR Operations. However, Mitchell's
9 subsequent attempt to *delegate* authority to assess FBAR penalties to
10 Graves, a Supervisory Tax Examiner, failed because a Department Manager,
11 CTR Operations is prohibited from redelegating such authority.

12       An IRS employee or officer may "designate an employee to serve as acting
13 for them during their absence and, if a supervisory position under their
14 supervision and control becomes vacant, to designate an employee to serve as
15 acting until the position is filled." Deleg. Order No. 12 (Rev.13) (eff. June 24,
16 1994) (quoted in *Grossman v. United States*, 57 Fed. Cl. 319, 323 (2003)). This is
17 permitted even where the employee is prohibited from redelegating a function
18 to a subordinate because, in the case of designation, the authority to perform
19 the function is *not* redelegated to a new position but is granted to a new
20 individual who temporarily holds the position that has already been delegated
21 the authority. *Grossman*, 57 Fed. Cl. at 324.

22       Plaintiff expressed concern that a finding that the IRS violated the
23 Delegation Order would prevent the IRS from assessing FBAR penalties
24 while the CTR Operations Department Manager is on leave. This concern is
25 unfounded. Designated to serve as Acting Department Manager, Mitchell
26 was authorized to sign, and could have signed, the Forms 13448 in Smith-
27 Pope's absence. There is no statutory prohibition against the reviewer also
28 assessing the FBAR penalties. Moreover, Mitchell could have asked Graves

8

to review the Forms 13448 before Mitchell signed and assessed the FBAR Penalties. Instead, Mitchell improperly delegated the authority to assess and therefore, the assessment of the FBAR Penalties is invalid.

## V. The IRS failed to identify specific accounts that Ms. Kim failed to accurately report on her timely filed FBARs

The maximum civil penalty for a willful violation of the FBAR reporting obligations is the greater of $100,000 or 50% of *the balance in the unreported account at the time of the violation.* 31 U.S.C. § 5321(a)(5)(C), (D) (emphasis supplied). In other words, to calculate a willful FBAR penalty, the IRS must identify each account that the U.S. person willfully failed to accurately report, and determine the balance in the account on the date of violation. The IRS uses the Form 13449 to record and relay this information to IRS personnel authorized to assess FBAR penalties, IRM 4.26.17.4.3(4)(b) (12-11-2019) and D140-155, and the Form 13448 to reflect the accounts subject to the assessment, D211-D226. These internal, administrative procedures are supported by Mitchell's testimony, D244, and McGeehan's correspondence with Binns, D242-243.

Plaintiff does not dispute that the Forms 13449 and 13448 did not identify specific accounts or include the balances on the date of violation. Instead, Plaintiff argues that the IRS is not required to use specific forms to convey this information. While that may be true, the information must be conveyed to the person authorized to assess FBAR penalties in some fashion and here, this simply was not done. Binns provided nothing to CTR Operations except the Forms 13449, without any attachments, and lacking any of the foregoing information. D417. Plaintiff cannot cure this critical failure now, during this litigation, by identifying specific accounts and alleging that Ms. Kim willfully failed to report these accounts. The Service

1  had to make those identifications at assessment. It did not, so the
2  assessments are invalid.

## VI. Calculation of the FBAR Penalties is arbitrary and capricious

Contrary to Plaintiff's contention, even if FBAR penalties are "well within the maximum allotted for in the statute," the penalties are still arbitrary and capricious if "based on inappropriate data that should not have been considered in assessing the penalty." *Jones v. United States*, No. 19-cv-4950, 2020 WL 2803353, at *8 (C.D. Cal. May 11, 2020). Here, it is clear that the FBAR Penalties were calculated based on inappropriate data and thus, the assessments must be vacated as arbitrary and capricious.

Faced with the IRS's failure to identify specific accounts and corresponding balances that support the FBAR Penalties assessed, Plaintiff engages in hypotheticals to reconstruct how the FBAR Penalties could have been calculated. For the reasons set forth at length in Ms. Kim's Protest, *see* Ex. 107, at USA - 003592 to 3598, and motion for summary judgment, *see* Cross Motion, at Section VI.A, it is clear that RA Chernyak calculated, and Binns affirmed, the FBAR Penalties based on inappropriate data. Plaintiff's attempt to rectify these errors do not satisfy the statutory requirements and therefore, the assessments must be vacated. *See, e.g.*, *350 Montana v. Haaland*, 50 F.4th 1254, 1273 (9th Cir. 2022); *see also* 5 U.S.C. § 706(2)(D) ("The reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . without observance of procedure required by law . . . .").

## VII. Ms. Kim's Eighth Amendment claim is not waived

In her Answer, Ms. Kim raised the affirmative defense that the FBAR Penalties are grossly disproportional to the gravity of her conduct in violation of the Eighth Amendment. Answer, ECF No. 16, at 15 (Dec. 15. 2021); *see* U.S. Const. amend. VIII; *United States v. Bajakajian,* 524 U.S.

10

321, 334 (1998) ("a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense."); *United States v. Simonelli,* 614 F. Supp. 2d 241, 242 (D. Conn. 2008) (holding that the FBAR penalty is a penal sanction that is "not compensation for actual pecuniary loss"); *Toth v. United States*, 598 U.S. __ (2023) *denying cert.* 33 F.4th 1 (1st Cir. 2022) (Gorsuch, J., dissenting) ("Under our cases a fine that serves even '*in part* to punish' is subject to analysis under the Excessive Fines Clause.") (petition for rehearing pending). A decision on the issue of disproportionality is premature because, as noted, the calculation of the FBAR Penalties is in dispute.

**VIII. Conclusion**

Based on the foregoing, the Court should grant summary judgment in favor of Ms. Kim and deny summary judgment to Plaintiff.

Respectfully submitted,

February 23, 2023    /s/
WILLIAM GRECO
Kostelanetz LLP

February 23, 2023    /s/
CAROLINE D. CIRAOLO
Kostelanetz LLP

February 23, 2023    /s/
JONATHAN AMITRANO
Taylor, Nelson & Amitrano, LLP

February 23, 2023    /s/
A. LAVAR TAYLOR
Taylor, Nelson & Amitrano, LLP