1   E. MARTIN ESTRADA
2   United States Attorney
    THOMAS D. COKER
3   Assistant United States Attorney
    Chief, Tax Division
4   GAVIN L. GREENE (Cal. Bar No. 230807)
5   Assistant United States Attorney
6       Federal Building, Suite 7211
7       300 North Los Angeles Street
        Los Angeles, California 90012
8       Telephone: (213) 894-4600
        Facsimile: (213) 894-0115
9       E-mail: Gavin.Greene@usdoj.gov
10
11  Attorneys for the United States of America

12              UNITED STATES DISTRICT COURT
13             CENTRAL DISTRICT OF CALIFORNIA
                     WESTERN DIVISION
14

15

16  United States of America,          Case No. 2:21-cv-06746-FMO-KS
17          Plaintiff,                  Notice of Motion and Cross-Motion for
18                                       Summary Judgment; Memorandum of
        v.                               Points and Authorities; Declarations
19
20  Laura Kim,                          Date:       Thursday,
21                                                   June 1, 2023
            Defendant.                   Time:       10:00 a.m.
22                                       Courtroom:  6D
23                                       Location:   First Street Courthouse
                                                     350 West First Street
24                                                   Los Angeles, California
25

26

27

28

                              1

1

## Notice of Motion and Cross-Motion for Summary Judgment

2   PLEASE TAKE NOTICE that the United States of America

3   ("Plaintiff") and Laura Kim ("Defendant") (collectively, "the Parties") each

4   move the Court for an order granting summary judgment pursuant to

5   Federal Rule of Civil Procedure 56.

6   On April 5, 2023, Plaintiffs' counsel, AUSA Gavin Greene, conferred

7   with Defendant's counsel, Caroline Ciraolo, William Greco, A. Lavar Taylor,

8   and Jonathan Amitrano pursuant to Local Rule 7-3, the Court's Order Re:

9   Summary Judgment Motions (ECF document number 21), and the Court's

10  Order Re: Pending Motions (ECF document number 48). Counsel for the

11  Parties were unable to reach a resolution regarding the matters raised by

12  the motions.

13  This motion is based upon this Notice of Motion, the following

14  documents, and such additional evidence that the Court may permit:

15  - Joint Memorandum of Points and Authorities;

16  - Evidentiary Appendix of declarations and written evidence

17    (including documents and deposition excerpts), filed February 7,

18    2023 (ECF document numbers 36-1 through 36-10), and February 8,

19    2023 (ECF document numbers 39-1 through 39-7);

20  - Joint Appendix of Undisputed and Disputed Facts, filed February 7,

21    2023 (ECF document number 36-11);

22  - Supplement to Joint Appendix of Undisputed and Disputed Facts;

23  - Declaration of Gavin Greene (GG or Exhibit 186), filed February 7,

24    2023 (ECF document number 36-12);

25  - Declaration of IRS Appeals Officer Duane Binns (DB or Exhibit

26    188), filed February 7, 2023 (ECF document number 36-13);

27  - Declaration of Kathy Mitchell (KM or Exhibit 189), filed February 7,

28    2023 (ECF document number 36-14); and

2

1    • Deposition of Laura Kim (Kim or Exhibit 182); and

2    • Stipulation Regarding Foreign Account Balances (Exhibit 213).

3

4                                   Respectfully submitted,

5

6                                   E. MARTIN ESTRADA
                                    United States Attorney
7                                   THOMAS D. COKER
                                    Assistant United States Attorney
8                                   Chief, Tax Division

9

10

11   Dated: May 2, 2023             /s/
                                    GAVIN GREENE
12                                  Assistant United States Attorney
13                                  Attorneys for the United States of America

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Contents

I. Preliminary Statements ................................................................. 1

    A. United States' Preliminary Statement ............................... 1

    B. Defendant's Preliminary Statement .................................. 1

II. Whether Defendant was willful ................................................ 2

    A. United States' Position .................................................... 2

        1.   Facts ................................................................. 2

        2.   Analysis ........................................................... 8

    B. Defendant's Position ..................................................... 16

        1.   Facts ............................................................... 16

        2.   Analysis ......................................................... 24

III. Whether the FBAR penalties were timely assessed ............................. 27

    A. Defendant's Position .................................................... 27

    B. United States' Position ................................................. 28

        1.   Additional Facts ........................................... 28

        2.   Analysis ......................................................... 29

IV. Whether the FBAR penalties were assessed by someone with the requisite authority to make the assessment ...................................... 31

    A. Defendant's Position .................................................... 31

    B. United States' Position ................................................. 35

        1.   Additional Facts ........................................... 35

        2.   Analysis ......................................................... 36

V. Whether the IRS assessment of the FBAR penalties was arbitrary and capricious................................................................................. 38

    A. Defendant's Position .................................................... 38

    B. United States' Position ................................................. 45

        1.   Additional Facts ........................................... 45

        2.   Analysis ......................................................... 46

i

VI. Defendant's Conclusion ............................................................... 48

## CASES

*350 Montana v. Haaland*, 50 F.4th 1254 (9th Cir. 2022) .............................. 39

*Am. Power & Light Co. v. SEC*, 329 U.S. 90 (1946) ..................................... 46

*Bedrosian v. United States*, No. CV 15-5853, 2017 WL 4946433 (E.D.
     Pa. Sept. 20, 2017) (*Bedrosian I*) .................................................. 12, 13

*Bedrosian v. United States*, 912 F.3d 144 (3d Cir. 2018) (*Bedrosian II*) 10, 12,
     13

*Bedrosian v. United States*, 505 F. Supp. 3d 502 (E.D. Pa. 2020)
     (*Bedrosian III*) .................................................................................. 13

*Bedrosian v. United States*, 42 F.4th 174 (3d Cir. 2022) (*Bedrosian IV*),
     *petition for cert. filed* (U.S. Dec. 29, 2022) (No. 22-598) ...................... 25

*Bellis v. Comm'r,* 67 TCM 2013 (1994) ........................................................ 28

*Bittner v. United States*, 143 S. Ct. 713 (2023) .................................. 25, 40, 46

*Brafman v. United States*, 384 F.2d 863 (5th Cir. 1967) .............................. 34

*Candyce Martin 1999 Irrevocable Tr. v. United States*, 739 F.3d 1204
     (9th Cir. 2014) ............................................................................... 30

*Country Gas Service, Inc. v. United States*, 405 F.2d 147 (1st Cir. 1969)..... 35

*Crawford-Hall v. United States*, 394 F. Supp. 3d 1122 (C.D. Cal. 2019)...... 33

*DelPonte v. Comm'r*, 158 T.C. No. 7 (2022) ............................................. 33, 38

*Dep't of Homeland Security v. Regents of the University of California*,
     140 S. Ct. 1891 (2020) ...................................................................... 39

*Est. of Duncan v. Comm'r*, 890 F.3d 192 (5th Cir. 2018) .............................. 38

*Fargo v. Comm'r*, 447 F.3d 706 (9th Cir. 2006) ....................................... 30, 38

*Farmer v. Brennan*, 511 U.S. 825 (1994) ...................................................... 9

*Fund for Animals, Inc. v. Rice*, 85 F.3d 535 (11th Cir. 1996) ...................... 46

*Grossman v. United States*, 57 Fed. Cl. 319 (2003) ................................. 33, 34

*Hicks v. Comm'r,* 62 TCM 1234 (1991) ........................................................ 28

*In re Klee*, 216 B.R. 42 (Bankr. D. Or. 1997) ............................................... 35

*Jones v. United States*, No. 19-cv-4950, 2020 WL 2803353 (C.D. Cal. May 11, 2020) .................................................................................passim

*Kimble v. United States*, 141 Fed. Cl. 373 (Fed. Cl. 2018) ............................ 15

*Lefcourt v. United States*, 125 F.3d 79 (2d Cir. 1997) ................................... 10

*Mann Construction, Inc. v. United States,* No. 1:20-cv-11307, --- F. Supp. 3d ---, 2023 WL 248814 (E.D. Mich.) (Jan. 18, 2023) ................ 39

*Miller v. United States*, 363 F.3d 999 (9th Cir. 2004) ................................... 30

*Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) ................................................................................ 39, 40

*Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021) ............................................ 48

*Norman v. United States*, 138 Fed. Cl. 189 (2018) (*Norman I*) ..................... 15

*Norman v. United States*, 942 F.3d 1111 (Fed. Cir. 2019) (*Norman II*)  10, 12, 15

*Pollinator Stewardship Council v. EPA*, 806 F.3d 520 (9th Cir. 2015)......... 44

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639 (2012) ............................................................................................... 33

*Ratzlaf v. United States*, 510 U.S. 135 (1994) ........................................ 24, 25

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007) ......................................... 9

*Smith v. Comm'r,* 56 TCM 1373 (1989) ........................................................ 28

*Stiskin v. Comm'r*, T.C. Memo. 1996-306, 1996 WL 377047......................... 31

*Toth v. United States*, 598 U.S. __ (2023) *denying cert.* 33 F.4th 1 (1st Cir. 2022) (Gorsuch, J., dissenting) ......................................................... 2

*United States v. Bajakajian,* 524 U.S. 321 (1998) ........................................... 2

*United States v. Bohanec*, 263 F. Supp. 3d 881 (C.D. Cal. 2016) .. 9, 10, 25, 26

*United States v. Cohen*, No. 2:17-cv-01652, 2019 WL 8231039 (C.D. Cal. 2019) ............................................................................10, 12, 16, 26

*United States v. Gentges*, 531 F. Supp. 3d 731 (S.D.N.Y. 2021)........ 15, 38, 39

*United States v. Goldsmith*, 541 F. Supp. 3d 1058 (S.D. Cal. 2021) ............... 9

1  *United States v. Granda,* 565 F.2d 922 (5th Cir. 1978).................................. 25

2  *United States v. Horowitz*, 978 F.3d 80 (4th Cir. 2020)........................... 15, 26

3  *United States v. Hughes*, No. 18-CV-05931-JCS, 2020 WL 1536509

4      (N.D. Cal. Mar. 31, 2020) ...................................................... 10

5  *United States v. Hughes*, No. 18-CV-05931-JCS, 2023 WL 2393780

6      (N.D. Cal. Mar. 6, 2023) ........................................................ 47

7  *United States v. Mahyari*, No. 20-cv-1887, 2023 WL 372656 (D. Or. Jan.

8      24, 2023) ............................................................................ 25

9  *United States v. McBride*, 908 F. Supp. 2d 1186 (D. Utah 2012)................. 10

10  *United States v. Pomerantz*, No. C16-0689JLR, 2017 WL 2483213 (W.D.

11      Wash. June 8, 2017) ............................................................. 35

12  *United States v. Rum*, 2019 WL 3943250 (M.D. Fla. Aug. 2, 2019)............. 15

13  *United States v. Schwarzbaum*, 24 F.4th 1355 (11th Cir. 2022)................... 47

14  *United States v. Simonelli*, 614 F. Supp. 2d 241 (D. Conn. 2008)................... 2

15  *United States v. Williams*, 489 F. App'x 655 (4th Cir. 2012) ....................... 10

16  *Vidiksis v. E.P.A.*, 612 F.3d 1150 (11th Cir. 2010) ....................................... 46

17  **CONSTITUTION**

18  U.S. Const. amend. VIII ................................................................. 2

19  **STATUTES**

20  5 U.S.C. § 706 .......................................................................... 2, 39, 46

21  26 U.S.C. § 6110 ............................................................................ 37

22  31 U.S.C. § 5314 ................................................................. 8, 31, 40

23  31 U.S.C. § 5321 ......................................................................passim

24  31 U.S.C. § 5322 ................................................................... 24, 25

25  31 U.S.C. § 5324 ................................................................... 24, 25

26  Bank Secrecy Act ("BSA"), 31 U.S.C. § 5311 *et seq.* ...................................... 24

27  Cal. Civ. Code § 1654 ................................................................... 30

28

Money Laundering Suppression Act of 1994, Pub. L. No. 103-325, 108

    Stat. 2160 ...................................................................................... 24, 25

**REGULATIONS**

26 C.F.R. § 301.7701-9 ...................................................................... 32, 33

31 C.F.R. § 1010.306............................................................................ 9, 27, 29

31 C.F.R. § 1010.350................................................................................... 8

31 C.F.R. § 1010.810.................................................................................. 32

**OTHER AUTHORITIES**

2019 IRM 1.2.2.14.13 Delegation Order 25-13 (04-11-2012)............. 32, 33, 36

2019 IRM 1.2.2.2.2 Delegation Order 1-2 (08-29-1996)............................... 33

2019 IRM 4.26.1-2 FBAR Delegation to IRS (04-05-2011)........................... 32

Deleg. Order No. 12 (Rev. 13) (eff. June 24, 1994) ...................................... 33

IRM 1.2.3.4.2 (04-28-2000) ........................................................................ 37

IRM 4.26.16.6.5.3 (11-06-2015) ................................................................. 41

IRM 4.26.17.4.3 (12-11-2019) ............................................................... 34, 37

IRM 4.26.17.4.3.4.2 ................................................................................... 30

IRM 4.26.17.4.6 ........................................................................................ 30

IRS CCA 200133043 (Aug. 17, 2001) ................................................ 32, 33, 37

IRS CCA 200603026 (Jan. 20, 2006).................................................... 25, 26

Memo for Comm'r, LB&I *et al.* re: Deleg. Order 25-13 (Jul 8, 2015) 32, 33, 34

Treas. Order 180-01, 67 Fed. Reg. 64697-01, 64697 (Oct. 21, 2002)............. 32

1

## <u>Joint Memorandum of Points and Authorities</u>

2

**I. Preliminary Statements**

3

**A. United States' Preliminary Statement**

4  A citizen of the United States is required to report his or her foreign
5  bank accounts if the balance exceeds $10,000. This information is reported
6  on the Report of Foreign Bank and Financial Accounts (FBAR). Willful
7  failure to comply is subject to a penalty of $100,000 or 50% of the balance on
8  June 30 of the following year, whichever is greater. In this case, the United
9  States assessed the willful FBAR penalty against Defendant for failure to
10 fully disclose her foreign bank accounts and maximum balances for the years
11 2009 through 2012. The issues in this case are: (1) whether Defendant was
12 willful, (2) whether the FBAR penalties were timely assessed, (3) whether
13 the FBAR penalties were assessed by someone with the requisite authority
14 to make the assessment, and (4) whether the assessment of the FBAR
15 penalties was arbitrary and capricious.

16

**B. Defendant's Preliminary Statement**

17 The Internal Revenue Service ("IRS") assessed four penalties against
18 Laura Kim ("Ms. Kim") for 2009, 2010, 2011, and 2012 pursuant to 31 U.S.C.
19 § 5321(a)(5) ("FBAR Penalties"). D215, Ex. 70. To prevail in this action,
20 Plaintiff must prove that: (1) Ms. Kim was a U.S. person who had a financial
21 interest in or authority over certain accounts that held more than $10,000 in
22 each year; (2) Ms. Kim willfully failed to accurately report those accounts on
23 timely filed FBARs; (3) the IRS properly assessed the FBAR Penalties
24 against Ms. Kim; and (4) the FBAR Penalties were properly calculated.

25 The IRS committed several errors that render the assessments invalid:
26 (1) the FBAR Penalties were assessed after the limitations periods expired;
27 (2) the FBAR Penalties were assessed by an individual who lacked requisite

28

1

1    authority; and (3) the FBAR Penalties were assessed in violation of the

2    Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2).[1]

3    **II. Whether Defendant was willful**

4    **A. United States' Position**

5        **1. Facts**

6        a. Background

7        Defendant was born in the Republic of Korea (South Korea) and

8    became a citizen of the United States in 1974 [Joint Appendix of Undisputed

9    and Disputed Facts P66-67; Kim 5:19-20, 24-25]. She has a Ph.D. in

10   ecological engineering [Fact P68; Kim 6:11-15]. Defendant owns multiple

11   businesses in the United States and South Korea [Fact P68; Defendant

12   Laura Kim's Response to United States' First Request for Admissions ¶ 6].

13   From 2009 through 2012, she owned Marina Enterprises, Inc. [Fact P70;

14   Kim 11:24-25, 12:1-8, 13:15-16], which operated in South Korea [Fact P71;

15   Kim 36:5-7]. In 2011 and 2012, she owned LK Water Company [Fact P72;

16   Kim 12:9-12, 13:21-24], which also operated in South Korea [Fact P73; Kim

17   36:8-9].

---

20   [1] Ms. Kim raised the affirmative defense in her Answer and reserves the
     right to challenge the FBAR Penalties as grossly disproportional to the
     gravity of her conduct in violation of the Eighth Amendment. *See* U.S.
22   Const. amend. VIII; *United States v. Bajakajian,* 524 U.S. 321, 334 (1998)
     ("a punitive forfeiture violates the Excessive Fines Clause if it is grossly
23   disproportional to the gravity of a defendant's offense."); *United States v.*
24   *Simonelli,* 614 F. Supp. 2d 241, 242 (D. Conn. 2008) (holding that the
     FBAR penalty is a penal sanction that is "not compensation for actual
25   pecuniary loss"); *Toth v. United States*, 598 U.S. __ (2023), *denying cert.* 33
     F.4th 1 (1st Cir. 2022) (Gorsuch, J., dissenting) ("Under our cases a fine
26   that serves even '*in part* to punish' is subject to analysis under the
27   Excessive Fines Clause."). A decision on the issue of disproportionality is
28   premature because the calculation of the FBAR Penalties is in dispute.

b. <u>Defendant Timely filed FBARs for 2009 through 2012</u>

Defendant had foreign bank accounts since at least 2001 [Fact P77; Kim 14:3-16]. The first FBAR Defendant filed reporting to the United States that she had a financial interest in or signature or other authority over foreign bank accounts was for the year 2008 [Fact P78; Kim 41:19-25, 42:1-13].

For the years 2009 through 2012, Defendant had multiple foreign bank accounts with Woori Bank and Standard Chartered First Bank Korea Limited. [Facts P4-56, 83; Exhibits 1-53]. During those years, Defendant used Michael Khim, a CPA, to prepare her U.S. Individual Income Tax Return (Form 1040) [Fact P173; Kim 35:21-23].

In 2009, Defendant requested and received an electronic copy of the FBAR from Mr. Khim [Fact P174; Kim 67:3-13, Exhibit 67]. For the years 2009 through 2012, Defendant did not seek the assistance of Mr. Khim in preparing her FBARs [Fact P175; Kim 45:9-15, 71:5-23] because she did not think that the FBAR was that serious at the time [Fact P176; Kim 46:16-24]. Instead, Defendant had her bookkeeper assist her in preparing her FBARs [Fact P177; Kim 70:19-22, 71:8-16]. The bookkeeper came to Defendant's home [Fact P178; Kim 71:2-4], brought bank statements or notes to assist in completing the FBAR forms [Fact P179; Kim 70:23-25, 71:1], and assisted Defendant by filling out the FBAR forms on the computer [Fact P180; Kim 70:19-22].

Defendant directed her bookkeeper what to type [Fact P181; Kim 46:16-24] and she made the decision about what information to put on the FBAR form [Fact P182; Kim 46:16-24]. Defendant then reviewed the completed FBAR forms before they were filed [Fact P183; Kim 71:5-7].

c. Defendant did not report most of her bank accounts and almost all of her foreign assets on her FBARs for 2009 through 2012

Between 2009 and 2012, Defendant owned or controlled at least 53 different foreign bank accounts [Facts P4-56, 92; Exhibits 1-53].

For 2009, Defendant timely filed an FBAR and reported that she owned seven accounts in her name at Standard Chartered First Bank Korea Ltd., in South Korea with account numbers ending in 6699, 3627, 2983, 2994, 2505, 5207, and 0218. Defendant also reported that she had a financial interest in one bank account held by Marina Enterprises with Woori Bank in South Korea with an account number ending in 6411. The reported maximum value of all the accounts on the FBAR was $492,720.87. [Facts P84-85, 215; Exhibits 59, 63]. However, in 2009 Defendant had at least 15 different foreign bank accounts [Facts P4-18, 93, Exhibits 1-15]. In July 2009, the combined value of the 12 of her foreign bank accounts with balances over $100,000 was approximately $11,465,988, of which she only reported $492,721 or approximately 4% on her FBAR [Facts P102, 109, Exhibit 213 ¶¶ 2, 9].

For 2010, Defendant timely filed an FBAR and reported that she owned one savings account in her name with no bank name or account number, and two bank accounts held in her name with Woori Bank in South Korea, with account numbers ending in 9362 and 1003 (which was a legacy account number for an account that had been given a new account number ending in 2033). The reported maximum value of all the accounts on the FBAR was $607,773.00. [Facts P86-87, 216; Exhibits 60, 64]. However, in 2010 Defendant had at least 35 different foreign bank accounts [Facts P4-17, 19-33, 48-51, 53-54, 95; Exhibits 1-14, 16-30, 45-48, 50-51]. In August 2010, the combined value of the 6 of her foreign bank accounts with balances over $100,000 was approximately $11,381,380, of which she only reported

4

$607,773 or approximately 5% on her FBAR [Facts P104, 110, Exhibit 213 ¶ 4, 10].

For 2011, Defendant timely filed an FBAR and reported two bank accounts held in her name, one with Woori Bank with an account number ending in 5527, and the other with Standard Chartered with an account number ending in 1528, with a combined reported maximum value during the calendar year of $263,811.00 [Facts P63, 88-89; Exhibits 61, 65]. However, in 2011, Defendant had a financial interest in or authority over at least 28 different foreign bank accounts [Facts 97; Exhibits 1-4, 13, 22, 25-27, 29-40, 43, 45-46, 48, 50, 51, 53]. In April 2011, the combined value of the 5 of her foreign bank accounts with balances over $100,000 was approximately $11,437,064, of which she only reported $263,811 or approximately 2% on her FBAR [Facts P106, 111, Exhibit 213 ¶¶ 6, 11].

For 2012, Defendant timely filed an FBAR and reported two bank accounts held in her name—one with Woori Bank with an account number ending in 61AB, and the other with Standard Chartered with an account number ending in 7610—and an account owned by Marina Enterprises at Woori Bank with an account number ending in 6411, with a combined reported maximum value during the calendar year of $495,016.00 [Facts P64, 90-91, 217; Exhibits 62, 66]. However, in 2012 Defendant had at least 27 different foreign bank accounts [Fact P99; Exhibits 1-3, 13, 22, 25-27, 32, 34-42, 44-53]. In February 2012, the combined value of the 6 of her foreign bank accounts with balances over $100,000 was approximately $6,221,206, of which she only reported $495,016 or approximately 8% on her FBAR [Facts P108, 112, Exhibit 213 ¶¶ 8, 12].

The following is a summary for each year from 2009 through 2012, by account number, of the maximum value in South Korean Won ("KRW") (if the account was held in KRW), the maximum value in U.S. dollars, and the

5

maximum amount Defendant reported on her FBAR. It also demonstrates the total maximum value for each of the accounts in comparison to the amount that Defendant reported on her FBAR.

| Exhibit Number | Last 4 of Account Number | Maximum Value in KRW in 2009 | Maximum Value in Dollars in 2009 | Maximum Value Reported by Defendant on FBAR | Account Reported on FBAR | Account Not Reported on FBAR |
|---|---|---|---|---|---|---|
| 1 | 3441 | ₩ 2,144,283,978 | $ 1,838,890 | $ - | | X |
| 3 | 2033 | USD | $ 2,124,869 | $ - | | X |
| 4 | 5806 | USD | $ 215,106 | $ - | | X |
| 5 | 6658 | USD | $ 2,372,626 | $ - | | X |
| 6 | 6817 | USD | $ 511,156 | $ - | | X |
| 7 | 6005 | USD | $ 1,971,097 | $ - | | X |
| 8 | 0368 | USD | $ 325,708 | $ - | | X |
| 9 | 0361 | USD | $ 1,488,737 | $ - | | X |
| 10 | 2308 | USD | $ 655,968 | $ - | | X |
| 11 | 4317 | USD | $ 558,871 | $ - | | X |
| 12 | 0365 | USD | $ 323,048 | $ - | | X |
| 13 | 6411 | ₩ 719,639,591 | $ 617,147 | $ 319,716 | X | |
| 14 | 3626 | ₩ 2,000,000,000 | $ 1,715,156 | $ - | | X |
| | | Total in 2009 | $ 14,718,379 | | | |
| | | | | | | |
| | | Reported on FBAR | $ 492,721 | 3% | | |
| | | Amount Unreported | $ 14,225,658 | 97% | | |
| | | Total in 2009 | $ 14,718,379 | 100% | | |

[Facts P101-102, Exhibit 213 ¶¶ 1-2].

| Exhibit Number | Last 4 of Account Number | Maximum Value in KRW in 2010 | Maximum Value in Dollars in 2010 | Maximum Value Reported by Defendant on FBAR | Account Reported on FBAR | Account Not Reported on FBAR |
|---|---|---|---|---|---|---|
| 1 | 3441 | ₩ 1,163,671,196 | $ 1,039,039 | $ - | | X |
| 3 | 2033 | USD | $ 1,180,825 | $ 211,471 | X | |
| 17 | 7795 | USD | $ 297,071 | $ - | | X |
| 18 | 1478 | USD | $ 560,401 | $ - | | X |
| 19 | 2567 | USD | $ 665,368 | $ - | | X |
| 20 | 4765 | USD | $ 5,392,472 | $ - | | X |
| 21 | 1017 | ₩ 2,000,000,000 | $ 1,785,794 | $ - | | X |
| 22 | 9362 | USD | $ 1,450,856 | $ 305,885 | X | |
| 23 | 2274 | USD | $ 5,914,248 | $ - | | X |
| 24 | 4207 | USD | $ 2,393,868 | $ - | | X |
| 25 | 4889 | ₩ 906,297,396 | $ 809,230 | $ - | | X |
| 27 | 9368 | ₩ 501,072,295 | $ 447,406 | $ - | | X |
| 28 | 2748 | USD | $ 500,000 | $ - | | X |
| 29 | 2323 | USD | $ 9,130,610 | $ - | | X |
| 30 | 6397 | ₩ 1,164,831,183 | $ 1,040,074 | $ - | | X |
| | | Total in 2010 | $ 32,607,262 | | | |
| | | | | | | |
| | | Reported on FBAR | $ 607,773 | 2% | | |
| | | Amount Unreported | $ 31,999,489 | 98% | | |
| | | Total in 2010 | $ 32,607,262 | 100% | | |

[Facts P103-104, Exhibit 213 ¶¶ 3-4].

| Exhibit Number | Last 4 of Account Number | Maximum Value in KRW in 2011 | Maximum Value in Dollars in 2011 | Maximum Value Reported by Defendant on FBAR | Account Reported on FBAR | Account Not Reported on FBAR |
|---|---|---|---|---|---|---|
| 1 | 3441 | ₩ 1,165,788,609 | $ 1,005,727 | $ - | | X |
| 3 | 2033 | USD | $ 656,109 | $ - | | X |
| 13 | 6411 | ₩ 290,870,197 | $ 250,934 | $ - | | X |
| 22 | 9362 | USD | $ 1,038,822 | $ - | | X |
| 25 | 4889 | ₩ 951,030,833 | $ 820,455 | $ - | | X |
| 29 | 2323 | USD | $ 9,144,218 | $ - | | X |
| 32 | 0302 | USD | $ 3,180,516 | $ - | | X |
| 33 | 3570 | ₩ 878,049,687 | $ 757,494 | $ - | | X |
| 34 | 4681 | ₩ 3,243,030,079 | $ 2,797,765 | $ - | | X |
| 35 | 5417 | ₩ 1,022,415,985 | $ 882,039 | $ - | | X |
| 36 | 0758 | USD | $ 3,006,985 | $ - | | X |
| | | Total in 2011 | $ 23,541,064 | | | |
| | | | | | | |
| | | Reported on FBAR | $ 263,811 | 1% | | |
| | | Amount Unreported | $ 23,277,253 | 99% | | |
| | | Total in 2011 | $ 23,541,064 | 100% | | |

[Facts P105-106, Exhibit 213 ¶¶ 5-6].

| Exhibit Number | Last 4 of Account Number | Maximum Value in KRW in 2012 | Maximum Value in Dollars in 2012 | Maximum Value Reported by Defendant on FBAR | Account Reported on FBAR | Account Not Reported on FBAR |
|---|---|---|---|---|---|---|
| 1 | 3441 | ₩ 143,791,786 | $ 134,696 | $ - | | X |
| 22 | 9362 | USD | $ 952,593 | $ - | | X |
| 25 | 4889 | ₩ 1,001,030,833 | $ 937,707 | $ - | | X |
| 34 | 4681 | ₩ 1,030,411,877 | $ 965,230 | $ - | | X |
| 35 | 5417 | ₩ 587,979,598 | $ 550,785 | $ - | | X |
| 39 | 9689 | ₩ 158,652,370 | $ 148,616 | $ - | | X |
| 42 | 9546 | USD | $ 3,018,652 | $ - | | X |
| 44 | 8765 | USD | $ 683,085 | $ - | | X |
| 48 | 3908 | ₩ 110,023,721 | $ 103,064 | $ - | | X |
| 49 | 5183 | ₩ 110,911,770 | $ 103,896 | $ - | | X |
| 52 | 3558 | USD | $ 3,022,086 | $ - | | X |
| | | Total in 2012 | $ 10,620,410 | | | |
| | | | | | | |
| | | Reported on FBAR | $ 495,016 | 5% | | |
| | | Amount Unreported | $ 10,125,394 | 95% | | |
| | | Total in 2012 | $ 10,620,410 | 100% | | |

[Facts P107-108, Exhibit 213 ¶¶ 7-8].

    d. <u>FBAR Penalty Assessments</u>

    On August 20, 2019, the IRS assessed willful FBAR penalties against Defendant for the years 2009 through 2012 in the amount of $1,014,109.85 for each year [Facts P165-166; KM ¶¶ 11-12, Exhibit 70].

    **2. Analysis**

    a. <u>FBAR filing requirements</u>

    Citizens of the United States are required to report to the IRS certain activity with foreign financial agencies for each year in which the activity occurs. 31 U.S.C. § 5314(a); 31 C.F.R. § 1010.350(a). One such activity is "having a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country." 31 C.F.R. § 1010.350(a). The form that needs to be completed for this annual reporting requirement is the FBAR. For calendar years before 2017, the FBAR report

for foreign financial accounts exceeding $10,000 maintained during a calendar year was due by June 30 of the following calendar year. 31 C.F.R. § 1010.306(c). Civil penalties can be assessed against an individual who, whether willfully or non-willfully, fails to comply with the FBAR reporting requirements. 31 U.S.C. § 5321(a)(5)(A). For willful violations, the maximum penalty that can be assessed is the greater of $100,000 or 50% of the balance in each foreign financial account at the time of the violation. 31 U.S.C. § 5321(a)(5)(C)(i).

There is no dispute that Defendant was required to file FBARs for the years 2009 through 2012 and report all foreign bank accounts that she had a financial interest in, or signature or other authority over, in which the aggregate balance exceeded $10,000 during the year. In fact, Defendant filed FBARs for those years, but did not report all her foreign bank accounts. On August 20, 2019, the IRS made FBAR penalty assessments against Defendant for willfully violating the statutory reporting requirements. The government has the burden to establish her willfulness in this case by a preponderance of the evidence. *United States v. Goldsmith*, 541 F. Supp. 3d 1058, 1072 (S.D. Cal. 2021); *United States v. Bohanec*, 263 F. Supp. 3d 881, 889 (C.D. Cal. 2016) (J. Pregerson).

  b. Willfulness includes knowing violations and recklessness

Although Congress did not define the term "willful" in the statute, the Supreme Court has made clear that "where willfulness is a statutory condition of civil liability," the term covers "not only knowing violations of a standard, but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007). In civil cases, recklessness refers to "conduct violating an *objective standard*: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id*. at 68 (emphasis added) (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). Following this

9

guidance, "willfulness" under 31 U.S.C. § 5321 also includes reckless disregard of a statutory duty. *See e.g., Norman v. United States*, 942 F.3d 1111, 1115 (Fed. Cir. 2019) ("[W]illfulness in the context of § 5321(a)(5)(C) includes recklessness."); *Bedrosian v. United States*, 912 F.3d 144, 152-53 (3d Cir. 2018) (same); *United States v. Williams*, 489 F. App'x 655, 660 (4th Cir. 2012) ("[The defendant's] undisputed actions establish reckless conduct, which satisfies the proof requirement under § 5314."); *United States v. Bohanec*, 263 F. Supp. 3d 881, 889 (C.D. Cal. 2016) (J. Pregerson) (applying recklessness standard for a willful FBAR violation); *United States v. Cohen*, 2019 WL 8231039, at *7 (C.D. Cal. 2019) (J. Fitzgerald) (in the FBAR context, the term "willfulness" includes recklessness).

Under the civil standard, an improper motive or bad purpose is not necessary to establish willfulness. *United States v. Hughes*, 2020 WL 1536509, at *6 (N.D. Cal. Mar. 31, 2020); *United States v. McBride*, 908 F. Supp. 2d 1186, 1204 (D. Utah 2012). A "subjective good faith belief that one's conduct is lawful" does not preclude the imposition of a penalty in these circumstances. *Lefcourt v. United States*, 125 F.3d 79, 82 (2d Cir. 1997).

c. Defendant willfully did not report foreign bank accounts with
substantial balances despite knowledge of the FBAR requirements

Defendant had actual knowledge of the FBAR filing requirements, and timely filed FBARs for the years 2009 through 2012. As noted above, for 2009 Defendant reported some of the multiple bank accounts held in her name with Standard Chartered, and one bank account held by Marina Enterprises with Woori Bank, with a combined reported maximum value during the calendar year of $492,721. However, she had signature authority for at least 12 other foreign bank accounts that she did not report on her FBAR, each with a value during the year of over $100,000, and the largest unreported account had a maximum value of over $2,000,000.

For 2010, Defendant reported one savings account, and two bank accounts with a combined reported maximum value during the calendar year of $607,773. However, she had signature authority for at least 14 other foreign bank accounts that she did not report on her FBAR, each with a maximum value during the year of over $100,000, and the largest unreported account had a maximum value of over $8,000,000.

For 2011, Defendant reported two bank accounts held in her name, one with Woori Bank, and the other with Standard Chartered, with a combined reported maximum value during the calendar year of $263,811. However, she had signature authority for at least 11 other foreign bank accounts that she did not report on her FBAR, each with a maximum value during the year of over $100,000, and the largest unreported account had a maximum value of over $8,000,000.

For 2012, Defendant reported two bank accounts held in her name—one with Woori Bank, and the other with Standard Chartered—and an account owned by Marina Enterprises at Woori Bank, with a combined reported maximum value during the calendar year of $495,016. However, she had signature authority for at least 11 other foreign bank accounts that she did not report on her FBAR, each with a maximum value during the year of over $100,000, and the largest unreported account had a maximum value of over $3,000,000.

Defendant's filed FBARs show that she knew that she was legally required to report the foreign bank accounts held in her name and those for which she had signature authority but were held in the name of a foreign corporation. For example, in her 2009 FBAR, she reported an account held by Marina Enterprises. The filed FBARs also demonstrate that Defendant knew that multiple bank accounts with the same bank needed to be reported separately. Yet despite this knowledge, she did not comply with her legal

11

obligation. She willfully omitted almost all the foreign bank accounts for which she had signature authority – including accounts that were worth millions of dollars – and underreported the balances of the accounts she did report. As such, the Court should find that Defendant's failure to properly report the bank accounts she owned or controlled was willful.

> d. <u>In the alternative, Defendant willfully failed to include foreign bank accounts with substantial balances due to recklessness</u>

Even if Defendant did not knowingly violate the FBAR filing requirement by not reporting certain bank accounts and underreporting the total value of her foreign bank accounts, she is still liable for the willful penalty because her actions were reckless. A person is willful if she recklessly fails to comply with an IRS filing requirement when the person: (1) clearly ought to have known that (2) there was a grave risk that the filing requirement was not being met and (3) was in a position to find out for certain very easily. *Bedrosian* 912 F.3d at 153; *Cohen* at *7. *See also Norman v. United States*, 942 F.3d 1111, 1115-16 (Fed. Cir. 2019) (willfulness in the FBAR context includes recklessness, actual knowledge of the obligation to file an FBAR is not required, and failure to read signed documents supports a finding of recklessness).

Defendant's willful failure to report some of her foreign bank accounts to the IRS is similar to the facts in *Bedrosian v. United States*, No. CV 15-5853, 2017 WL 4946433 (E.D. Pa. Sept. 20, 2017) (*Bedrosian I*). Arthur Bedrosian was a successful businessman who had two bank accounts with UBS. *Id*. at *1. In 2008, he filed an FBAR for the year 2007, but he only listed his UBS account ending in 5316, which had assets totaling approximately $240,000, but did not report the account ending in 6167, which had assets totaling approximately $2,000,000. *Id*. at *2.

The district court initially determined that the government had not met its burden to establish that Bedrosian willfully violated Section 5314. *Id.* at *7. On appeal, the Third Circuit confirmed that willfulness "includes both knowing and reckless conduct" *Bedrosian v. United States*, 912 F.3d 144, 152-53 (3d Cir. 2018) (*Bedrosian II*), and remanded the case to the district court to apply the appropriate standard for recklessness. *Id.* at 154. On remand, the district court explained that originally it did not consider whether, when his 2007 FBAR filing came due, Bedrosian "(1) clearly ought to have known that (2) there was a grave risk that [an accurate FBAR was not being filed] and if (3) he was in a position to find out for certain very easily. *Bedrosian v. United States*, 505 F. Supp. 3d 502, 507 (E.D. Pa. 2020) (*Bedrosian III*). Bedrosian was aware of the significant amount of money held in his foreign bank accounts, *id.* at 504, and even if he did not know that there were two accounts, the stated amount should have prompted him to investigate further, which he could have done easily by contacting the bank. *Id.* at 508. Bedrosian's claim that he did not review the form did not negate recklessness because he knew or should have known the form he signed was inaccurate, and his failure to disclose the second and much larger UBS account was willful. *Id.*

Bedrosian filed an FBAR and listed one UBS account with a value of $240,000, but omitted the other one with a value of $2,000,000. He omitted half of his accounts and almost 90% of his assets, and his omission was found to be reckless, and therefore willful.

In this case, Defendant's omissions were much more egregious. She filed the FBAR forms and omitted more than half of her foreign bank accounts and between 95% and 99% of the maximum balances for each of the years 2009 through 2012. Even if only the highest monthly balance for

13

accounts worth more than $100,000 is considered, she still omitted between 92% and 98% of her foreign account assets, summarized as follows:

|  | 2009 | 2010 | 2011 | 2012 |
|---|---|---|---|---|
| Month with the Maximum Combined Balance | July 2009 | August 2010 | April 2011 | February 2012 |
| Combined Value of Accounts over $100,000 | $ 11,465,988.01 | $ 11,381,379.97 | $ 11,437,063.80 | $ 6,221,206.17 |
| Amount Reported by Defendant on her FBAR | $      492,721.00 | $      607,773.00 | $      263,811.00 | $      495,016.00 |
| Amount Unreported by Defendant on her FBAR | $ 10,973,267.01 | $ 10,773,606.97 | $ 11,173,252.80 | $ 5,726,190.17 |
| Percentage Reported by Defendant | 4% | 5% | 2% | 8% |
| Percentage Unreported by Defendant | 96% | 95% | 98% | 92% |

Fact P102, 104, 106, 108-112, Exhibit 213 ¶ 2, 4, 6, 8-12.

Defendant knew that she had numerous accounts with Woori Bank, and she only reported a few of them each year. Even a cursory review of her FBARs forms reveals that she did not list all her foreign bank accounts and the total amount reported was much too low. She signed the FBARs and ought to have known that there was a grave risk that the filing requirement was not being met, both because she had many more bank accounts than had been reported, and the combined reported maximum value was consistently off by 95% or more. Furthermore, she was able to find out for certain very easily by checking the bank statements, contacting Woori Bank, or providing the bank statements to her CPA and having him prepare the FBAR. Based on the foregoing, Defendant filed FBARs for the years 2009 through 2012 that recklessly omitted numerous bank accounts and understated the maximum value of her foreign accounts in violation of her reporting obligation. As such, the United States is entitled to summary judgment against the Defendant for the willful FBAR penalty as a matter of law for the years 2009 through 2012.

1    e. Willfulness is appropriate to decide on summary judgment

2    Although willfulness is generally a question of fact, courts have decided

3  the question on summary judgment where the undisputed facts

4  demonstrated that the civil willfulness standard was satisfied. *See e.g.,*

5  *United States v. Horowitz*, 978 F.3d 80, 89-90 (4th Cir. 2020) (the Horowitzes

6  were reckless as a matter of law for failure to file FBARs to report the

7  foreign account that held a "significant portion of their savings" and despite

8  "numerous red flags, they neither made a simple inquiry to their accountant

9  nor gave even the minimal effort necessary to render meaningful their sworn

10  declaration[.]"); *Norman v. United States*, 138 Fed. Cl. 189, 196 (2018)

11  ("repeated and admitted lack of care" was sufficient to reach "the standard of

12  reckless disregard for the law required to constitute a willful violation of

13  § 5314."), aff'd, 942 F.3d 1111 (Fed. Cir. 2019) ; *United States v. Rum*, No. 17-

14  CV-826, 2019 WL 3943250 (M.D. Fla. Aug. 2, 2019), report and

15  recommendation adopted, 2019 WL 5188325 (M.D. Fla. Sept. 26, 2019),

16  appeal docketed, No. 19-14464, 995 F.3d 882, 890 (11th Cir. Apr. 23, 2021)

17  ("[N]o genuine issues of material fact regarding Rum's willfulness or

18  recklessness."); *Kimble v. United States*, 141 Fed. Cl. 373, 386 (Fed. Cl. 2018)

19  (Kimble "exhibited a 'reckless disregard' of the legal duty under federal tax

20  law to report foreign bank accounts to the IRS by filing a FBAR."); *United*

21  *States v. Gentges*, 531 F. Supp. 3d 731, 752 (S.D.N.Y. 2021) ("Defendant

22  recklessly disregarded the FBAR reporting obligation.").

23    This case is not like cases in the Central District of California that

24  have denied summary judgment in FBAR cases on the issue of willfulness. In

25  *Jones v. United States*, Mrs. Jones did not timely file an FBAR for the year at

26  issue, so there was a dispute as to whether she had knowledge of the FBAR

27  filing requirement sufficient to establish willfulness. WL 2803353, at *6-7

28  (C.D. Cal. May 11, 2020) (J. Selna). In this case, Defendant filed timely

FBARs for the years at issue, so there is no dispute that she knew about the FBAR filing requirement.

In *United States v. Cohen*, Fariba Cohen had signature authority for an account at Bank Leumi (Luxembourg). 2019 WL 8231039, at *2 (C.D. Cal. Dec. 16, 2019) (J. Fitzgerald). However, Fariba Cohen disputed signing all the documents. *Id*. at *7. She also asserted that she did not know that Bank Leumi (Luxembourg) was a foreign bank, and that she did not know how much money was in the foreign bank accounts. *Id*. Based on the record, the court could not determine as a matter of law that Fariba Cohen recklessly violated the FBAR requirement. *Id*.

In this case, unlike *Jones* and *Cohen,* there is no dispute that Defendant knew that she had foreign bank accounts and that she knew she was required to comply with the FBAR filing requirement to report the maximum balances for each of her foreign bank accounts. As such, granting the motion for summary judgment in favor of the United States would be consistent with the decisions in both *Jones* and *Cohen*, as well numerous other federal decisions as cited above.

## B. Defendant's Position

### 1. Facts

Ms. Kim was born and raised in South Korea ("Korea"). D216-D217, Ex. 182 at 5:20-23. She is not a native English speaker and has limited proficiency. D218-D219, Ex. 182 at 6:21-7:7. She moved to the United States in 1968, when she was 22 years old. D217, Ex. 182 at 5:23. She married, had two children, and in 1974 became a U.S. citizen and opened Laura's French Baking Company ("LFBC") in Los Angeles. D220, Ex. 191 at 4; D221, Ex. 192 at 16:7-8; D222-D223, Ex. 182 at 5:25, 13:17-19. In 1989 and 1990, she went through a difficult divorce and suffered financial hardship resulting in a bankruptcy in 1991. D224-D226, Ex. 192 at 40:21-42:11. In or around 1994,

1   she married again and returned to Korea, where she has lived ever since.
2   D227, Ex. 191 at 6; D228-D229, Ex. 193 at 7:18, 9:13-20. During this time,
3   her brother-in-law operated LFBC. D230-D239, Ex. 194 at 5:7, 7:8-10.

4        Ms. Kim's second husband tragically died shortly after they moved to
5   Korea, leading Ms. Kim to suffer severe depression and attempt suicide in
6   1997. D240-D242, Ex. 192 at 118:1-9. She sustained a serious head injury
7   that continues to cause her difficulties, including severe dizziness. D243-
8   D245, Ex. 182 at 9:14-10:9.

9        While recuperating in Korea, Ms. Kim formed Marina Enterprise, her
10  first business outside the United States. D246, Ex. 193 at 25:15. In 2004, she
11  enrolled in a Korean university to study ecological engineering full time,
12  earning a bachelor's degree, master's degree, and eventually her Ph.D. in
13  2011. D247-D248, D252-253, Ex. 193 at 6:18, 7:21, 9:16, 10:6-7; D249-D250,
14  Ex. 182 at 6:12, 8:1-5; D251, Ex. 192 at 17:12-18. While in school, Ms. Kim
15  purchased LK Water Corp, which aligned with her environmental interests.
16  D254, Ex. 193 at 21:2. Ms. Kim has no training in finance, tax, or
17  accounting. D255-D257, Ex. 191 at 11. She never prepared Korean or U.S.
18  tax returns and relied on her family, employees, and professionals for
19  bookkeeping, accounting, and tax return preparation. D258, Ex. 182 at
20  60:25-62:22, Ex. 192 at 11:6-14:5; D259-D261, Ex. 193 at 28:15-29:5, 45:3.
21  When her accountants sought information, Ms. Kim referred them to her
22  employees, who responded. D262, Ex. 192 at 14:3-5, Ex. 193, 60:5-7.

23       Ms. Kim had a financial interest in Korean bank accounts at Woori
24  Bank and Standard Chartered ("the Korean Banks"). D515, Ex. 193, 27:10-
25  18. Many of those accounts were opened by the Korean Banks without her
26  knowledge or participation, based on the Korean Banks' practice of closing
27  short-term interest-bearing accounts and transferring funds into new
28  accounts on a frequent, periodic basis. D516-517, Ex. 195 at 5.

17

1    Ms. Kim engaged a Korean accountant to prepare her Korean tax
2    returns and she paid her Korean taxes. D263, Ex. 182 at 37:1-3; D264, Ex.
3    191 at 14. The Korean accountant did not advise Ms. Kim that she was
4    required to report her Korean income and accounts to the United States.
5    D265, Ex. 182 at 39:14-24. Michael Khim, CPA ("Khim"), D266, Ex. 196 at
6    13:12-14, prepared U.S. tax returns for Ms. Kim and LFBC from 2009 to
7    2013. D267-D271, Ex. 196 at 17:17-21, 47:13-15; D272-D276, Exs. 197-201.
8    Khim knew Ms. Kim lived in Korea and that she wired funds from her
9    Korean personal account to LFBC's U.S. account. D277, Ex. 196 at 29:9-18;
10   D278, Ex. 104 at 75:3-80:24. Khim did not advise Ms. Kim that she was
11   required to report her foreign income and accounts to the United States and
12   he filed her U.S. tax returns without sending her drafts to review. D279, Ex.
13   182 at 39:14-24; D280, Ex. 107 at USA – 003563; D281, Ex. 196 at 40:9-23;
14   D282, Ex. 193 at 61:3-4. Because she did not know she was required to do so,
15   Ms. Kim did not report her Korean income or claim any foreign tax credit on
16   her U.S. tax returns.[2] D283, Ex. 182 at 39:14-24; D284-D289, Exs. 55-57.

17       In 2009, Ms. Kim's sister mailed her a U.S. newspaper clipping noting
18   the need to report foreign accounts. D299, Ex. 182 at 41:23-42:3; D300, Ex.
19   193 at 14:15-16:4. Ms. Kim contacted the IRS and Khim to request the form.
20   D302, Ex. 182 at 44:1-4; D303, Ex. 67 at LHK_0267. Khim emailed the form
21   but did not explain to Ms. Kim what needed to be reported. D304-D305, Ex.
22   67 at LHK_0267. Ms. Kim read the instructions and completed her 2008
23   FBAR to the best of her ability based on account information provided by her
24   employee who managed her Korean accounts. D306, Ex. 191 at 17; D307, Ex.

---

26   [2] Ms. Kim's foreign tax credits, as determined by the IRS, exceeded the tax
27   due on her foreign income for 2011, D293-D295, Ex. 195, and offset most of
     the tax due on her foreign income for 2010, D290-D292, Ex. 195, and 2012,
28   D296-D298, Ex. 195. The IRS proposed no adjustments to tax year 2009.

193 at 95:2-10. When she mailed the FBAR to the IRS from Korea, Ms. Kim included a note asking the IRS to inform her of any errors. D308-D309, Ex. 182 at 44:2-5. The IRS did not respond. D310, Ex. 107 at USA - 003563. Ms. Kim sent the IRS a revised 2008 FBAR with corrections and another note, explaining why the second FBAR was being filed. D311-D314, Ex. 202. The IRS did not respond. D315, Ex. 107 at USA - 003563.

Ms. Kim prepared and timely filed her FBARs for 2009 through 2012 in the same manner. D316-D318, Ex. 193 at 95:2-10; D319, Ex. 182 at 56:21-57:8; D320-D323, Exs. 63-66. Although she became aware of the FBAR in 2009 and had read its instructions, she did not fully understand what information was required. D301, Ex. 193 at 15:19; D306, Ex. 191 at 17; D518, Ex. 182 at 43:23-44:2. She did not realize there were problems with her FBARs until after the IRS began auditing her and she filed her 2012 FBAR. D324-D325, Ex. 203; D326, Ex. 191 at 22; D327, Ex. 182 at 52:3-9. After learning her FBARs were incorrect, Ms. Kim terminated Khim and engaged Henry Chi, CPA. D328-D330, Ex. 193 at 76:25-77:2, 88:10-23.

In April 2017, the IRS sent Ms. Kim a Letter 3709 proposing penalties of $6,111,613 for willfully failing to report foreign accounts for 2009 through 2012. D331-D332, Ex. 84. The Letter 3709 included a Form 13449, *Agreement to Assessment and Collection of Penalties Under 31 USC 5321(a)(5) and 5321(a)(6)* ("Form 13449"), and an "FBAR Explanation of Items" containing Revenue Agent Ella Chernyak's ("Chernyak") rationale for imposing willful penalties and calculation of the penalties.[3] D333-D336, Ex. 84. Ms. Kim promptly filed a protest requesting a hearing with the IRS Office of Appeals ("Appeals") and signed Consents to Extend the Time to Assess Civil FBAR Penalties ("Consents") agreeing to extend the time to

---

[3] Chernyak repeatedly testified that she does not recall Ms. Kim's case. D519, Ex. 177 at 199:19-20, 154:6-9, 189:9-10, 275:2-3; Ex. 212 at 60:9-10.

assess FBAR penalties for 2009, 2010, and 2011 until June 30, 2019. D337-D338, Ex. 107; D339-D341, Ex. 185.

Chernyak did not forward Ms. Kim's case to Appeals. Instead, she issued a second Letter 3709 nearly a year later on March 7, 2018 ("the second Letter 3709"), D343-D345, Ex. 69 at LHK_3479-3481, which included a revised Form 13449 reducing the "willful" penalties to $1,014,109.85 for each year, totaling "$4056439.3999999999." D346, D351-D353, Ex. 69 at LHK_3482-3483. The Form 13449 identifies the 2011 "Foreign Bank, Institution or Agent(s)" as "Woori Bank and Standard Chartered Bank," the "Foreign account number(s)" as "various (see attached)," and the "Proposed penalty" as being for "willful failure to meet recordkeeping requirements and/or report a foreign financial account on [an FBAR]." D354-D357, Ex. 69 at LHK_3482-3483. The Form 13449 does not identify any foreign bank, foreign account numbers, or reason for proposed penalties for 2009, 2010, or 2012. D358-D369, Ex. 69 at LHK_3483.

The second Letter 3709 included a revised "FBAR Explanation of Items," D370, Ex. 69 at LHK_3580-3598, in which Chernyak states: "In an effort to be conservative and safe regarding statute, the examining agent is assessing $4,056,439.39 per the attached penalty calculation [("Penalty Spreadsheet")] for the total FBAR penalty for the years 2009 through 2012." D520, Ex. 69 at LHK_3598. The Penalty Spreadsheet, D372, Ex. 69 at LHK_3484-3485, lists balances in various accounts as of June 30, 2012, and reflects a penalty equal to the greater of $100,000 or 50% of the stated account balance for each account.[4] D373-D375, Ex. 69 at LHK_3484-3485; Ex. 177 at 291:2-18. Chernyak attached Korean account statements to the Penalty Spreadsheet. D376, Ex. 69 at LHK_3487-3578.

---

[4] Chernyak's penalty calculation was riddled with errors. *See infra* at 43.

On April 23, 2018, Ms. Kim sent Chernyak a protest to the second Letter 3709 and again requested a hearing with Appeals, noting that she "repeatedly requested that the income tax audit and the FBAR penalty case be resolved concurrently," but that "the IRS has refused to do so." D377-D379, Ex. 107 at USA – 003557, 003564. Ms. Kim also stated: "As of the date of this protest the IRS has still not issued a 30 day letter . . . for the income tax years under audit," in spite of being "repeatedly told that this audit will be closed soon." D380, Ex. 107 at USA - 003573. Ms. Kim also signed additional Consents to extend the time to assess FBAR penalties for 2009 through 2012 until December 31, 2019, D381-D384, Ex. 85 at USA – 003553 to 003556, and imposed the following condition in the letter that accompanied the Consents ("the April 2018 Conditional Consents"):

> It is our understanding that the FBAR penalty audit conducted by your office has now concluded and that your office will be forwarding our protest of the proposed FBAR penalty assessments against Ms. Kim, sent to you this same day, to the Office of Appeals in the very near future. The enclosed Consents are being submitted based and conditioned upon these understandings and representations by your office.

D385-D387, Ex. 85 at USA – 003551 to 003552.

Instead of closing Ms. Kim's FBAR audit and sending it to Appeals as instructed, Chernyak again held onto the FBAR case and continued to work on the income tax exam. D388, Ex. 161 at USA - 013092. On May 1, 2018, Chernyak proposed a $4.5 million increase in Ms. Kim's taxable income for 2010 through 2012. D389, Ex. 100 at USA - 016035. Ms. Kim filed a protest and requested an Appeals conference on June 8, 2018. D390, Ex. 178. Rather than forward the cases to Appeals, over the next several months, Chernyak sent Ms. Kim four revised reports proposing income tax adjustments. D391,

Ex. 101; D392, Ex. 90; D393, Ex. 91; D394, Ex. 92. Ms. Kim responded to the final report, dated September 5, 2018, with yet another protest requesting an Appeals conference regarding the proposed income tax adjustments. D395, Ex. 116 at USA - 004600.

Chernyak finally closed Ms. Kim's FBAR audit on October 17, 2018, D396, Ex. 110, and Appeals received the case on November 15, 2018, D397, Ex. 111. The appeals were assigned to IRS Appeals Officer Duane Binns ("Binns"), D398-D399, Ex. 108 at USA – 004646, and on May 24, 2019, Binns sent Ms. Kim a Consent to extend the time to assess FBAR penalties for 2009 through 2012 until December 31, 2020. D400, Ex. 114; D401, Ex. 115.

On July 10, 2019, Ms. Kim signed and returned the Consent with a letter imposing a condition ("the July 2019 Conditional Consent"):

Please understand that the enclosed Extension is conditional in nature. It operates to extend the statute of limitations on assessment for FBAR penalties for the years 2009 through 2012 **only** if the prior Consent to Extend the Time to Assess Civil FBAR Penalties, sent in April of 2018 to the Revenue Agent who conducted the audit, was valid. That particular Extension stated that it extended the statute of limitations assessing FBAR penalties for years 2009 through 2012 to December 31, 2019. But that particular Consent was accompanied by a letter which imposed a condition on the Extension. Specifically, that condition was as follows:

Ms. Kim wishes to pursue a pre-assessment administrative appeal to challenge the proposed FBAR penalty assessments which have been proposed by your office. **It is our understanding that the FBAR penalty audit conducted by your office has now concluded and that your office will be forwarding our protest of the proposed FBAR penalty assessments against Ms. Kim, sent to you this**

22

**same day, to the Office of Appeals in the very near future. The**
**enclosed Consents are being submitted based and conditioned**
**upon these understandings and representations by your office.**
D402, Ex. 115; D403-D404, Ex. 116 at USA – 004596 to 004597.

On July 24, 2019, prior to considering the merits of Ms. Kim's appeals, Binns and his manager, Gregory Butler ("Butler"), determined they could not rely on the July 2019 Conditional Consent and agreed to request immediate assessment of the FBAR Penalties. D405-D407, Ex. 204 at 18:8-10, 79:18-80:5, 172:1-8, 208:15-21; D408-D409, Ex. 108 at USA - 004647. Butler signed a Form 13449 identical to the April version except the total penalty was revised from $4056439.3999999999 to $4056439.39. D411-D413, Ex. 155 at LHK_4046-4047. On August 13, 2019, Binns sent the signed Form 13449 to Onisha Darnell ("Darnell"), FBAR Penalty Coordinator at CTR Operations, and asked her to assess the FBAR Penalties. D414-D415, Ex. 155; D416, Ex. 206 at 88:13-14. Binns did not provide Darnell with any other attachments or explanation of how the FBAR penalties were calculated. D417-D418, Ex. 205 at 114:14-115:15. On August 20, 2019, Darnell asked Binns to provide a Consent confirming that the time to assess had not expired. D419, Ex. 156. Binns sent the July 2019 Conditional Consent—which he determined was unreliable—without the letter setting forth the condition. D420, Ex. 156; D421, Ex. 205 at 115:19-21.

The IRS assessed the FBAR Penalties on August 20, 2019. D422, Ex. 70. Cesilee Graves, a Lead Tax Examiner serving as an acting Supervisory Tax Examiner with CTR Operations ("Graves"), signed the four Forms 13448, *Penalty Assessment Certification (Title 31 "FBAR")* ("Forms 13448"), for 2009 through 2012. D423-D425, Ex. 70, Ex. 206 at 84:13-85:1. The Forms 13448 for each year listed the amount of penalty as $1,014,109.85, the "Foreign Account Number(s)" as "VARIOUS," and the "Foreign Bank" as

23

1 "WOORI BANK AND STANDARD CHARTERED BANK." D426-D441, Ex.
2 70. At the request of Kathy Mitchell, a Supervisory Tax Law Specialist
3 serving as acting CTR Operations Department Manager ("Mitchell"), Graves
4 signed each Form 13448 "for: Leah Smith-Pope," the CTR Operations
5 Department Manager ("Smith-Pope"). D442, Ex. 206 at 35:13-17; D443, Ex.
6 68; D444, Ex. 70; D456, Ex. 206 at 82:18-20.

7      After the FBAR Penalties were assessed, Binns learned that Chernyak
8 made numerous errors that inflated the FBAR Penalties by at least
9 $800,000.[5] D448, Ex. 153 at LHK_4036-4037. Binns told Ms. Kim's counsel
10 that he would recommend to the Department of Justice ("DOJ") a reduction
11 of $800,000 but only if Ms. Kim conceded liability for and immediately paid
12 the reduced penalties totaling $3.3 million. D449-D450, Ex. 142. Ms. Kim
13 rejected this offer and Appeals upheld Chernyak's erroneous penalty
14 determination. D451-D452, Ex. 144 at LHK_4007.

15      **2. Analysis**

16      This Court reviews *de novo* whether Ms. Kim violated FBAR reporting
17 requirements under the Bank Secrecy Act ("BSA"), 31 U.S.C. § 5311 *et seq.*,
18 and owes willful FBAR penalties under 31 U.S.C. § 5321. *Jones v. United*
19 *States*, No. 19-cv-4950, 2020 WL 2803353, at *5 (C.D. Cal. May 11, 2020).

20      Willfulness is a "word of many meanings." *Ratzlaf v. United States*, 510
21 U.S. 135, 141 (1994). In the BSA context, willful violations require actual
22 knowledge of the reporting requirement and a specific intent to violate the
23 law. *See id.* at 141-43 (penalty provision of 31 U.S.C. § 5322 for violations of
24 31 U.S.C. § 5324 require knowledge that structuring was unlawful and
25 "willful" should have same meaning for § 5322 as elsewhere in the BSA). In
26 the Money Laundering Suppression Act of 1994, Pub. L. No. 103-325, 108
27 Stat. 2160, Congress excepted § 5324 from the penalty provisions of § 5322,

28      ―――――――――――――
[5] *See infra* at 43-44.

added a penalty provision to § 5324 that did not require knowledge that the structuring was illegal, and *left unchanged* the FBAR penalty provisions. *Id.* at § 411(a) and (c)(1), codified at 31 U.S.C. §§ 5322 (a), (b) and 5324(d).

"When Congress includes particular language in one section of a statute but omits it from a neighbor, we normally understand that difference in language to convey a difference in meaning." *Bittner v. United States,* 143 S. Ct. 713, 720 (2023). Because Congress decreased the threshold for a § 5324 violation but left untouched the "willfulness" standards for FBAR violations under §§ 5321 and 5322, the *Ratzlaf* standard for willfulness should continue to apply for §§ 5321 and 5322. The Ninth Circuit has not defined willfulness for purposes of the civil FBAR penalty. *See United States v. Mahyari*, No. 20-cv-1887, 2023 WL 372656, at *5 n.4 (D. Or. Jan. 24, 2023); *but see United States v. Bohanec*, 263 F. Supp. 3d 881, 888-89 (C.D. Cal. 2016) (applying definition of "willfulness" in civil *tax* context, which includes "recklessness," to FBAR violations under BSA).

Expanding willfulness to include recklessness converts this regulatory violation into a *de facto* strict liability statute. *See United States v. Granda,* 565 F.2d 922, 926 (5th Cir. 1978) ("Congress, by adding [the terms knowing and willful], took this regulatory statute out of the ranks of strict liability . . . ."); *see also Ratzlaf*, 510 U.S. at 146 ("Had Congress wished to dispense with the [willful] requirement, it could have furnished the appropriate instruction."). In 2006, the IRS agreed. *See* IRS CCA 200603026 (Jan. 20, 2006) ("With respect to the issue of "willfulness" . . . [t]he first question is whether the phrase 'willful violation (or willfully causes any violation)' has the same definition and interpretation under 31 U.S.C. § 5321 (the civil penalty) and § 5322 (the criminal penalty). The answer is yes."). This issue is the subject of a petition for writ of certiorari pending before the U.S. Supreme Court in *Bedrosian v. United States*, 42 F.4th 174 (3d Cir. 2022),

*petition for cert. filed* (U.S. Dec. 29, 2022) (No. 22-598).

This court held that willfulness under the BSA must be established by a preponderance of the evidence. *See Bohanec*, 263 F. Supp. 3d at 889. Ms. Kim contends that the standard is clear and convincing evidence, which the IRS has said may apply. *See* IRS CCA 200603026 (Jan. 20, 2006). Regardless of which standard applies, a court must consider all relevant facts regarding Ms. Kim's knowledge, intent, and conduct. These facts are in dispute and, even if they were not, "*willfulness* itself would remain the disputed fact that a jury must find or not." *See United States v. Cohen*, No. 2:17-cv-01652, 2019 WL 8231039, at *1 (C.D. Cal. Dec. 16, 2019) (emphasis in original).

Ms. Kim lived and owned businesses in Korea, making it necessary for her to maintain Korean accounts. D512-D513, Ex. 193 at 13:12-15, 26:24-27:18. As soon as Ms. Kim learned of the requirement to file an FBAR, she requested the form, read the instructions, and tried her best to comply. D302, Ex. 182 at 44:1-4; D303, Ex. 67 at LHK_0267; D306, Ex. 191 at 17; D307, Ex. 193 at 95:2-10. Unlike the defendants in cases cited by Plaintiff, there is no evidence that Ms. Kim concealed her ownership of those accounts. *See, e.g.*, *United States v. Horowitz*, 978 F.3d 80, 89-90 (4th Cir. 2020). Instead, Ms. Kim reported the Korean Banks on her FBARs, providing a clear path to her account information. D523-D529, Exs. 59-62. At that time, she did not personally manage her accounts, D259, Ex. 193 at 28:15-20, and the Korean Banks often closed and opened accounts without her knowledge, D516-D517, Ex. 195, so she was not aware of all the accounts in her name or in the names of her companies. *See Cohen*, 2019 WL 8231039, at *7-*8 (denying summary judgment where there was a genuine dispute over whether defendant knew she had reportable account).

Ms. Kim relied on her employee to provide records needed to prepare the FBAR. D307, Ex. 193 at 95:2-10; P174, Ex. 182 at 70:23-71:1. When Ms.

26

Kim filed her 2008 FBAR, she asked the IRS to contact her if there were any errors. D309, Ex. 182 at 44:2-5. Receiving no response, D310, Ex. 107 at USA – 003563, and with the good faith belief that she was filing accurately, Ms. Kim timely filed FBARs for 2009, 2010, 2011, and 2012 in the same manner. D316-D319, Ex. 193 at 95:2-10, Ex. 182 at 56:21-57:8; D320-D323, Exs. 63-66. As soon as she was advised of the errors, she engaged a new accountant and promptly took corrective action. D326, Ex. 191 at 22; D328-D329, Ex. 193 at 88:10-23. As this Court noted in *Cohen*:

> to determine whether Plaintiff acted recklessly, it would have to make a credibility determination of Defendant's testimony. Of course, on a motion for summary judgment, the Court cannot make such credibility determinations.

2019 WL 8231039, at *8. There are genuine disputes as to material facts and whether Ms. Kim intentionally violated a known legal duty or acted recklessly. Therefore, Plaintiff is not entitled to judgment as a matter of law.

**III. Whether the FBAR penalties were timely assessed**

**A. Defendant's Position**

An FBAR penalty may be assessed within six years of the FBAR filing deadline. 31 U.S.C. § 5321(b)(1). For the years at issue, the FBAR was due on June 30 following the calendar year. *See* 31 C.F.R. § 1010.306(c).

On September 11, 2017, Ms. Kim's representatives signed Consents to extend the FBAR penalty assessment period for 2009-2011 until June 30, 2019. D339-D341, Ex. 185. On April 23, 2018, Ms. Kim's representatives signed the April 2018 Conditional Consents. D381-D384, Ex. 85.

Chernyak's office did not close the FBAR audit until October 17, 2018, and did not forward Ms. Kim's protest to Appeals until November 5, 2018. D396, Ex. 110; D397, Ex. 111. This substantial delay violated the April 2018 Conditional Consent. On July 10, 2019, Ms. Kim's representatives signed the

27

1    July 2019 Conditional Consent, expressly conditioned on the validity of the
2    April 2018 Conditional Consent. D402-D404, Exs. 115-116.

3         The IRS failed to satisfy the conditions of the April 2018 Conditional
4    Consent and July 2019 Conditional Consent. Thus, the deadline to assess
5    FBAR penalties for 2009 through 2012 expired on June 30, 2019, and the
6    FBAR penalty assessments on August 20, 2019, are invalid. *See Bellis v.*
7    *Comm'r,* 67 TCM 2013 (1994) (cover letter requesting open-ended extension
8    "be restricted to a period not to exceed" specified date barred assessment
9    after that date); *Hicks v. Comm'r,* 62 TCM 1234 (1991) (expansion of audit
10   invalidated conditional waiver where revenue agent solicited waiver stating
11   audit would only cover specified issues); *Smith v. Comm'r,* 56 TCM 1373
12   (1989) (waiver invalid where letter conditioned waiver on transfer of case to
13   a district that then declined to accept case).

14   **B. United States' Position**

15        **1. Additional Facts**

16        On September 11, 2017, Defendant's counsel consented to extend the
17   time to assess the FBAR penalties under 31 U.S.C. § 5321 to June 30, 2019
18   [Fact P184; Exhibit 185].

19        On April 23, 2018, Defendant's counsel consented to extend the time to
20   assess the FBAR penalties for the years 2009 through 2012 until December
21   31, 2019, provided that the case was forwarded to IRS Appeals "in the very
22   near future." [Fact P185; Exhibit 85]. This allowed Appeals to consider the
23   matter pre-assessment [*Id*].

24        On October 17, 2018, a document transmittal (Form 3210) was
25   completed to transfer the FBAR case files from IRS Exam to Appeals [Fact
26   P186; Exhibit 110]. Defendant's FBAR case was originally assigned to
27   Appeals Officer Russell McGeehan ("Appeals Officer McGeehan" or
28   "McGeehan") on December 21, 2018 [Fact P187; DB ¶ 3]. On March 22, 2019,

Appeals Officer McGeehan contacted Defendant's counsel and agreed on the contested issues and a plan for a conference [Fact P188; DB ¶ 4]. Appeals Officer McGeehan's work on the case was delayed due to several competing priorities, so on May 24, 2019, the case was reassigned to Appeals Officer Duane Binns [Fact P189; DB ¶ 5]. On May 30, 2019, Defendant's counsel contacted Appeals Officer Binns and agreed to provide an extension to the statute of limitations for assessment [Fact P190; DB ¶ 7]. On July 24, 2019, Appeals Officer Binns received a letter from Defendant's counsel conditionally extending the statute of limitations for assessing the FBAR penalty for tax years 2009 through 2012 [Fact P191; DB ¶ 8]. The same day, Appeals Officer Binns informed Defendant's counsel that if he did not agree to extend the statute of limitations without conditions, the IRS would assess the FBAR penalties [Fact P192; DB ¶ 9]. Defendant's counsel refused to unconditionally extend the statute of limitations for assessing the FBAR penalty for tax years 2009 through 2012 [Fact P193; DB ¶ 10]. On August 20, 2019, the IRS assessed willful FBAR penalties against Defendant for the years 2009 through 2012 in the amount of $1,014,109.85 for each year, for a total of $4,056,439.40 [Facts P165-166; KM ¶¶ 11-12, Exhibit 70].

### 2. Analysis

For the years 2009 through 2012, the FBAR reports were due to be filed by June 30 of the following calendar year. 31 C.F.R. § 1010.306(c). Unless the parties agree to extend the limitations period, the FBAR penalty must be assessed within 6 years from the date the FBAR was due to be filed. 31 U.S.C. § 5321(b)(1). Appeals has unlimited settlement authority if the penalty has not been assessed (pre-assessment), but if the penalty has been assessed, then a settlement reducing the amount of the penalty over $100,000 requires Department of Justice approval. *See* Internal Revenue

1   Manual ("IRM") 4.26.17.4.3.4.2(3)(b.).[6] Also, at the time Appeals would not

2   consider pre-assessment FBAR cases unless there was at least 180 days

3   remaining on the assessment statute of limitations. IRM 4.26.17.4.6(2)(c.)

4   (added 01-01-2007).

5      "[E]xtension agreements are interpreted using contract principles."

6   *Candyce Martin 1999 Irrevocable Tr. v. United States*, 739 F.3d 1204, 1211

7   (9th Cir. 2014). And contracts are construed against the drafter. Under

8   California law, where a contract is ambiguous, "the language of a contract

9   should be interpreted most strongly against the party who caused the

10  uncertainty to exist." Cal. Civ. Code § 1654; *Miller v. United States*, 363 F.3d

11  999, 1006 (9th Cir. 2004). In her April 23, 2018 letter, Defendant agreed to

12  conditionally extend the statute of limitations to December 31, 2019, if the

13  case was forwarded to Appeals – using the language "in the very near

14  future[.]" But Defendant did not define that term and provided no specific

15  deadlines or other dates in her letter. IRS Exam closed the case and

16  transferred it pre-assessment to Appeals on October 17, 2018.

17     On May 30, 2019, Defendant's counsel contacted Appeals Officer Binns

18  and agreed to provide an extension to the statute of limitations on

19  assessment, but when it arrived on July 24, 2019, the extension was again

20  conditional. Appeals Officer Binns informed Defendant's counsel that if he

21  did not agree to extend the statute of limitations without conditions, the IRS

22  would assess the FBAR penalties. Defendant's counsel refused, so the FBAR

23  penalties were assessed.

24     The IRS complied with the terms of the agreement dated April 23,

25  2018. The parties understood that the case would be transferred to Appeals

26

27  ─────────────
    [6] The IRM "does not have the force of law and does not confer rights on
28  taxpayers." *Fargo v. Commissioner*, 447 F.3d 706, 713 (9th Cir. 2006). Still,
    the Manual provides extensive guidance to IRS employees.

1  "in the very near future" so that Appeals would accept the case and review it
2  pre-assessment. That is what happened. IRS Exam closed the case and
3  transferred it pre-assessment to Appeals, which allowed Defendant the
4  opportunity to present her argument to Appeals about why she was not
5  willful.

6        When the case was transferred to Appeals in October 2018, there was
7  still well over 180 days on the statute of limitations as required by the IRM,
8  even if the earlier date of June 30, 2019 was used. In May 2019, and well
9  after the April 23, 2018 letter, Defendant's counsel agreed to provide Appeals
10 Officer Binns with an additional extension of the statute of limitations but
11 refused to do so without conditions. As there was then less than 180 days
12 before the expiration of the statute of limitations, Appeals Officer Binns
13 requested that the FBAR penalties be assessed for the years 2009 through
14 2012.

15       Defendant could have had a more thorough review by Appeals pre-
16 assessment, but Defendant's counsel refused to extend the statute
17 unconditionally in May 2019. The IRS complied with the conditions – which
18 are construed against Defendant – and the penalties were assessed within
19 the statute of limitations.

20 **IV. Whether the FBAR penalties were assessed by someone with the**
21 **requisite authority to make the assessment**
22 **A. Defendant's Position**
23       An action taken by an IRS employee is "null and void" unless that
24 employee has the necessary authority to take that action. *See Stiskin v.*
25 *Comm'r*, T.C. Memo. 1996-306, 1996 WL 377047, at *3. The authority to
26 assess penalties for violations of 31 U.S.C. § 5314 is granted by statute to the
27 Secretary of the Treasury ("the Secretary"). 31 U.S.C. § 5321(a)(5)(A).
28

31

In 2002, the Secretary delegated FBAR enforcement authority to the Director of the Financial Crimes Enforcement Network ("FinCEN"), a bureau of the Treasury Department. *See* Treas. Order 180-01, 67 Fed. Reg. 64697-01, 64697 (Oct. 21, 2002). By Memorandum of Agreement and Delegation of Authority for Enforcement of FBAR Requirements, dated April 8, 2003, FinCEN redelegated its FBAR enforcement authority to the Commissioner of the IRS ("Commissioner"). 2019 IRM 4.26.1-2 FBAR Delegation to IRS (04-05-2011); *see also* 31 C.F.R. § 1010.810(g) (Mar. 1, 2011).

When an employee of the IRS is authorized by regulations or a Treasury decision to perform a particular function, they "shall have authority to redelegate the performance of such function to any officer or employee performing services under his supervision and control, *unless such power to so redelegate is prohibited or restricted by proper order or directive.*" 26 C.F.R. § 301.7701-9(c) (emphasis supplied). The Commissioner exercised this authority when he delegated his civil FBAR enforcement authority to "assess and collect civil penalties under 31 USC [sic] § 5321" to specific IRS employees through Delegation Order 25-13 (formerly DO 4-35, Rev. 1), 2019 IRM 1.2.2.14.13 (04-11-2012). In 2015, the Commissioner modified Delegation Order 25-13, identifying different IRS employees who have the authority to assess FBAR penalties, including the Department Manager, CTR Operations. *See* Memo for Comm'r, LB&I *et al.* re: Deleg. Order 25-13 (Jul. 8, 2015) ("Memo for Comm'r, LB&I *et al.*").

Delegation orders are used by the IRS to "vest authority at the point where immediate responsibility has been placed." IRS CCA 200133043 (Aug. 17, 2001). Authority is "delegated directly to the lowest level expected to take final action." *Id.* When a delegate is vested with authority to perform a particular action, "[e]very intervening line supervisory position up to and including the Commissioner has the same authority," but no inferior

1   employee in the IRS's organizational hierarchy has that authority. *Id.* A
2   delegate may redelegate their authority to any employee who performs
3   services under the delegate's supervision and control *unless* redelegation is
4   prohibited or restricted. *Id.*; *see also* 26 C.F.R. § 301.7701-9(c). If the "plain
5   language" of a delegation order restricts the ability of an IRS employee from
6   redelegating an authority, such language should be given its full effect.
7   *DelPonte v. Comm'r*, 158 T.C. No. 7, *7 (2022); *cf. Crawford-Hall v. United
8   States*, 394 F. Supp. 3d 1122 (C.D. Cal. 2019) ("a plain reading" of the
9   applicable regulations and delegation order "provides affirmative evidence of
10  an intent to restrict" subdelegation authority).

11          Delegation Order 25-13 specifies that FBAR enforcement authority,
12  including authority to assess and collect civil FBAR penalties, "*may not be
13  redelegated.*" Deleg. Order 25-13 (emphasis supplied). That restriction was
14  neither lifted by the 2015 modification, *see* Memo for Comm'r, LB&I *et al.*,
15  nor undermined by the fact that the authority to "assess and collect civil
16  penalties" includes the authority to "take any other action reasonably
17  necessary for the enforcement of [the FBAR provisions]," Deleg. Order 25-13;
18  *see, e.g.*, *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639,
19  645 (2012) ("[I]t is a commonplace of statutory construction that the specific
20  governs the general."). However, that restriction does not interfere with the
21  authority of an IRS employee to designate other IRS employees to serve as
22  acting for them during their absence. *See* Deleg. Order 1-2 (formerly DO-12,
23  Rev. 14), 2019 IRM 1.2.2.2.2 (08-29-1996); *see also Grossman v. United
24  States*, 57 Fed. Cl. 319, 323 (2003) (quoting Deleg. Order No. 12 (Rev.13) (eff.
25  June 24, 1994) (superseded by Deleg. Order 1-2)). Even where the employee
26  is prohibited from redelegating a function to a subordinate—such as with the
27  authority to assess civil FBAR penalties—designation is permitted because
28  the authority to perform the function is *not* redelegated to a new position but

1   is granted to a new individual who temporarily holds the position that has
2   already been delegated the authority. *See Grossman*, 57 Fed. Cl. at 324.

3       In August 2019, Smith-Pope was Department Manager, CTR
4   Operations. D444, Ex. 70. She designated Mitchell, a Supervisory Tax Law
5   Specialist in CTR Operations, to serve as Acting Department Manager, CTR
6   Operations, from August 20-26, 2019. D442, Ex. 206 at 35:13-17; D443, Ex.
7   68. As Acting Department Manager, CTR Operations, Mitchell had authority
8   to assess FBAR penalties on August 20, 2019.

9       On or about August 20, 2019, Graves signed the Forms 13448 on behalf
10  of Smith-Pope at Mitchell's request. D456, Ex. 206 at 82:18-20. Proper
11  execution of a Form 13448 by a "designated official" effectuates the
12  assessment of a civil FBAR penalty, making it valid and enforceable. IRM
13  4.26.17.4.3(8)(b) (12-11-2019) (the Form 13448 "functions in the same way as
14  the Form 23C, Assessment Certificate – Summary Record of Assessments");
15  *see also Brafman v. United States*, 384 F.2d 863, 864-865 (5th Cir. 1967)
16  (assessment of estate tax invalid because Form 23C was not signed by an
17  assessment officer). Graves signed the Forms 13448 on or about August 20,
18  2019, when she was a Lead Tax Examiner temporarily serving as a
19  Supervisory Tax Examining Technician. D422-D423, Ex. 70; D424-D425, Ex.
20  206 at 84:13-85:1.

21      Graves was not an authorized individual when she signed the Forms
22  13448. Neither a Lead Tax Examiner nor a Supervisory Tax Examining
23  Technician are authorized to assess FBAR penalties under Delegation Order
24  25-13, as modified. *See* Memo for Comm'r, LB&I *et al*. The fact that Mitchell,
25  as Acting Department Manager, CTR Operations, delegated this task to
26  Graves does not make the assessment valid because the authority to assess
27  civil FBAR penalties explicitly "may not be redelegated." *Id.*

28

34

1     Where IRS employees act outside their delegated authority, courts
2   have declared those actions null and void. In *Country Gas Service, Inc. v.*
3   *United States*, 405 F.2d 147 (1st Cir. 1969), the First Circuit examined
4   whether an IRS revenue agent "had authority to make a binding agreement"
5   with taxpayers. *Id.* at 149. The court found that authority to compromise tax
6   liabilities was explicitly reposed in "the Secretary or his delegate," and that
7   "such delegation stops at the district director level." *Id.* at 150. There, as
8   here, the relevant authority was delegated through a delegation order that
9   stated the "authority may not be redelegated." *Id.* n.5. Because the revenue
10  agent was not a district director, "any arrangement taxpayer[s] made with
11  [the agent] had no legal standing." *Id.* Similarly, in *In re Klee*, 216 B.R. 42
12  (Bankr. D. Or. 1997), the court held that a closing agreement between the
13  debtors and an IRS Associate Chief of Appeals was not binding because the
14  agreement related to a matter pending in the U.S. Tax Court and the
15  delegation order authorizing Associate Chiefs of Appeals to enter into closing
16  agreements explicitly excluded cases docketed before the U.S. Tax Court. *Id.*
17  at 44. Because the Associate Chief "did not have authority to enter the
18  closing agreement," the agreement was "null and void." *Id.* at 44-45.
19     Graves assessed the FBAR Penalties when she did not hold a position
20  identified in Delegation Order 25-13, as modified. Because the Forms 13448
21  were not signed by an authorized individual, the assessments are null and
22  void. Without valid assessments, Plaintiff cannot collect. *See* 31 U.S.C. §
23  5321(b)(2); *see also United States v. Pomerantz*, No. C16-0689JLR, 2017 WL
24  2483213, at *4 (W.D. Wash. June 8, 2017).
25  **B. United States' Position**
26     **1. Additional Facts**
27     In August 2019, Leah Smith-Pope was the Department Manager of
28  Currency Transaction Reporting (CTR) Operations [Fact P156; KM ¶ 2].

35

1   Kathy Mitchell was a Supervisory Tax Law Specialist in CTR Operations
2   and reported directly to Leah Smith-Pope [Fact P157; KM ¶ 3]. The general
3   procedure in CTR Operations regarding the FBAR Penalty Assessment
4   Certification (Form 13448) was as follows: first it was reviewed by Kathy
5   Mitchell, and once her review was complete, she would give it to Leah Smith-
6   Pope for signature so that one person was not both the initial reviewer and
7   final signatory authorizing assessment [Fact P158; KM ¶ 4].

8          During the week of August 20, 2019 to August 26, 2019, Leah Smith-
9   Pope was on leave, and Kathy Mitchell was the Acting Department Manager,
10  CTR Operations [Facts P159-160; KM ¶ 5-6, Exhibit 68]. Cesilee Graves was
11  on detail as a frontline manager with the title Supervisory Tax Examiner in
12  CTR Operations [Fact P161; KM ¶ 7].

13         Kathy Mitchell reviewed the Penalty Assessment Certification (Form
14  13448) for Defendant for the years 2009, 2010, 2011, and 2012 [Fact P162;
15  KM ¶ 8]. After reviewing Form 13448, Kathy Mitchell gave the form to
16  Cesilee Graves and verbally requested that she sign the Form 13448 for
17  Leah Smith-Pope so that Kathy Mitchell was not both the reviewer and
18  signatory on the Form 13448 [Fact P163; KM ¶ 9]. Form 13448 for
19  Defendant dated August 20, 2019, was signed by Cesilee Graves for Leah
20  Smith-Pope [Facts P164-165; KM ¶¶ 10-11, Exhibit 70].

21         **2. Analysis**

22         Although Defendant recognizes that delegation of authority to assess
23  the FBAR penalty is allowed, her argument would give her an unfair
24  $4,000,000 windfall and should be rejected.

25         Delegation Order 25-13 delegates to the Department Manager, CTR
26  Operations, authority to assess the FBAR penalty "and to take any other
27  action reasonably necessary for the enforcement of these and related
28  provisions." Exhibit 183 at ¶¶ 2 and 3. The Department Manager of CTR

Operations has the authority to assess the willful FBAR penalty. Leah Smith-Pope was the Department Manager, but during the relevant time she was on leave and had designated Kathy Mitchell as Acting Department Manager of CTR Operations. Defendant acknowledges that Kathy Mitchell had authority to assess FBAR penalties on August 20, 2019. Kathy Mitchell reviewed Form 13448, then requested that Cesilee Graves sign it to assess the FBAR penalty.

The procedure used by the IRS was reasonable because it preserved the distinction between the person reviewing the file and approving the penalty, while also allowing Kathy Mitchell to continue to use her experience and expertise as the person reviewing the file. CTR Operations should be allowed to do its job, and the review process should be encouraged. Defendant has cited no cases for the position that either the work of the government must stop when certain people are unavailable, or that specific individuals within the organization cannot temporarily assume the powers of someone who is unavailable.

Defendant cites Chief Counsel Advisory 200133043 at length, even though it analyzed the delegation of authority under Title 26 during a limited transitional period for the IRS, and it cites 26 U.S.C. § 6110(k)(3) to make clear that it "should not be cited as precedent." Regardless, as explained in the advisory opinion, "the primary objective of a delegation order is to vest front line employees and their immediate supervisors with the requisite authority to perform the duties." *Id*. citing IRM 1.2.3.4.2 (April 28, 2000). Similarly, Defendant cites IRM 4.26.17.4.3(8)(b) (12-11-2019), which instructs IRS employees to "[f]orward the penalty assessment information to the department manager, CTR Operations, or an authorized designee. This designated official completes the assessment using Form 13448[.]" Kathy Mitchell had authority as the Acting Department Manager

37

of CTR Operations to assess the FBAR penalty, and to take any other action reasonably necessary for the enforcement of these and related provisions. Asking Cesilee Graves to sign Form 13448 is consistent with Delegation Order 25-13 and the IRM because it maintained Kathy Mitchell's ability to use her expertise to review the file while maintaining the two-person review/approval process used by CTR Operations. In any event, the IRM does not have the force of law and does not confer rights on taxpayers. *Fargo v. Commissioner*, 447 F.3d 706, 713 (9th Cir. 2006); *Est. of Duncan v. Commissioner*, 890 F.3d 192, 200 (5th Cir. 2018) (the IRM contains internal operating procedures for the IRS, but it is not legally binding and does not create rights in the taxpayer).

Similarly, Defendant cites *DelPonte v. Commissioner*, 158 T.C. No. 7 (2022), which simply stands for the proposition that the IRS Office of Chief Counsel cannot delegate litigation decisions outside the organization, which is not what happened here. In this case, the Department Manager of CTR Operations was out on leave and transferred authority to Kathy Mitchell to make the FBAR assessment while she was out of the office. After Kathy Mitchell reviewed the Form 13448, she requested that Cesilee Graves sign it to assess the FBAR penalty. It was reviewed by the Acting Department Manager of CTR Operations and signed by Cesilee Graves for Leah Smith-Pope. This is consistent with Delegation Order 25-13 and does not serve as a basis for Defendant to avoid her FBAR penalties.

**V. Whether the IRS assessment of the FBAR penalties was arbitrary and capricious**

**A. Defendant's Position**

Courts review the amount of willful FBAR penalties for "abuse of discretion under the 'arbitrary and capricious' standard of the [APA]." *United States v. Gentges*, 531 F. Supp. 3d 731, 752 (S.D.N.Y. 2021) (citing 5 U.S.C. §

706(2)(A) and *Jones, supra*, at *8). A decision that departs from the IRS's internal guidelines is arbitrary and capricious, *see Gentges*, 531 F. 3d, at 754, as is a decision that relies on factors that Congress did not intend for it to consider, *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

When an agency action is arbitrary and capricious, "vacatur is the presumptive remedy under the APA." *350 Montana v. Haaland*, 50 F.4th 1254, 1273 (9th Cir. 2022); *see also* 5 U.S.C. § 706(2)(D) ("The reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . without observance of procedure required by law . . . ."). Any remand to the agency is limited, as outlined by the Supreme Court in *Dep't of Homeland Security v. Regents of the University of California*, 140 S. Ct. 1891 (2020):

> It is a "foundational principle of administrative law" that judicial review of agency action is limited to "the grounds that the agency invoked when it took the action." If those grounds are inadequate, a court may remand for the agency to do one of two things: First, the agency can offer "a fuller explanation of the agency's reasoning at the time of the agency action." This route has important limitations. When an agency's initial explanation "indicate[s] the determinative reason for the final action taken," the agency may elaborate later on that reason (or reasons) but may not provide new ones. Alternatively, the agency can "deal with the problem afresh" by taking new agency action. An agency taking this route is not limited to its prior reasons but must comply with the procedural requirements for *new* agency action.

*Id.* at 1907-08 (citations omitted) (emphasis in original); *see also Mann Construction, Inc. v. United States*, No. 1:20-cv-11307, --- F. Supp. 3d ---,

1    2023 WL 248814, at *3 (E.D. Mich.) (Jan. 18, 2023) ("if an agency action

2    violates the APA, 'then the court should invalidate the challenged action.'").

3         Penalties for FBAR violations under § 5314 are prescribed by §

4    5321(a)(5). In holding that a violation of § 5314 is the failure to file an

5    accurate FBAR, not the failure to report a particular account on an FBAR,

6    the Supreme Court recognized in *Bittner v. United States*, 143 S. Ct. 713,

7    719-720 (2023), that,

8         if an individual "willfully" violates § 5314, he may face a maximum

9         penalty of $100,000. § 5321(a)(5)(C)(i)(I). The statute then adds an even

10         more specific rule for a subclass of willful violations—those that involve

11         "a failure to report the existence of an account or any identifying

12         information required to be provided with respect to an account." §

13         5321(a)(5)(D)(ii). In cases like that, the law authorizes the Secretary to

14         impose a maximum penalty of *either* $100,000 *or* 50% of "the balance in

15         the account at the time of the violation" – *whichever is greater*. §§

16         5321(a)(5)(C) and (D)(ii).

17    *Id.* at 720 (emphasis supplied).

18         A willful FBAR penalty for a particular year is therefore arbitrary and

19    capricious if it is over $100,000 unless the aggregate balance of the willfully

20    unreported accounts on the date of violation exceeds $200,000, regardless of

21    the number of willfully unreported accounts.[7] Therefore, the IRS must prove

22    that it considered the aggregate balance on the date of violation when it

23    calculated the willful FBAR penalty. *See State Farm*, 463 U.S., at 43 ("In

24    reviewing [an agency's] explanation, we must 'consider whether the decision

25    was based on a consideration of the relevant factors . . .'").

26

27

28

---

[7] Ms. Kim raised this point in her Protest filed with the IRS on April 23, 2018. *See* D538, Ex. 107, at USA – 003597.

In 2015, the IRS issued administrative guidance that departed from the method of calculating willful penalties prescribed by the statute:

> the total [willful FBAR] penalty amount for all years under examination will be limited to 50 percent of the highest aggregate balance of all unreported foreign financial accounts during the years under examination. In such cases, the penalty for each year will be determined by allocating the total penalty amount to all years for which the FBAR violations were willful based upon the ratio of the highest aggregate balance for each year to the total of the highest aggregate balances for all years combined, subject to the maximum penalty limitation in 31 USC 5321(a)(5)(C) for each year.

IRM 4.26.16.6.5.3(2) (11-06-2015).

Ignoring this guidance and the statute, Chernyak calculated the FBAR Penalties using a third approach: selecting accounts she determined were open from January 1, 2011, to June 30, 2012; imposing a penalty *on each account* of the greater of $100,000 or 50% of the balance on June 30, 2012; and dividing the total penalty evenly across four years.[8] D461, Ex. 177 at 266:9-13, 291:2-18. That calculation is reflected in Chernyak's Penalty Spreadsheet, D372, Ex. 69 at LHK_3484-LHK_3485:

| Last 4 Digits | Accounts Listed in IRS FBAR Penalty Calculation Spreadsheet | Balance on 6/30/2012 Per IRS | Penalty Amount Per IRS |
|---|---|---|---|
| 2323 | 1080-800-202323 | $796.46 | $100,000.00 |
| 0302 | 1081-900-510302 | $1,899.23 | $100,000.00 |

[8] Appeals upheld Chernyak's calculation but misstated her methodology, claiming the penalties were based on "every account that had some balance in 2011," rather than every account that was open from January 1, 2011, until June 30, 2012. D530, Ex. 144 at LHK_4007.

| | | | |
|---|---|---|---|
| 0758 | 1080-000-210758 | $2,613.00 | $100,000.00 |
| 5806 | 1081-500-085806 | | $100,000.00 |
| 4681 | 1002-544-404681 | | $100,000.00 |
| 9534 | 1040-205-569534 | $6,012.50 | $100,000.00 |
| 6397 | 1020-209-256397 | | $100,000.00 |
| 8740 | 1020-502-668740 | | $100,000.00 |
| 3570 | 1002-444-133570 | | $100,000.00 |
| 3441 | 1002-209-183441 | $108,254.36 | $100,000.00 |
| 6699 | 518-20-116699 | $2,362.44 | $100,000.00 |
| 9689 | 1005-901-969689 | $2,722.00 | $100,000.00 |
| 9676 | 1005-901-899676 | $202.00 | $100,000.00 |
| 5417 | 1005-601-855417 | | $100,000.00 |
| 6411 | 1005-900-336411 | $15,056.00 | $100,000.00 |
| 2033 | 1081-900-052033 | | $100,000.00 |
| 4889 | 1121-600-034889 | | $100,000.00 |
| 9362 | 1081-100-479362 | $194,390.18 | $100,000.00 |
| 0232 | 1005-501-830232 | | $100,000.00 |
| 8951 | 1020-203-418951 | | $100,000.00 |
| 5091 | 1020-111-115091 | | $100,000.00 |
| 6048 | 1020-911-146048 | | $100,000.00 |
| 0907 | 1181-501-900907 | | $100,000.00 |
| 9368 | 1181-404-959368 | | $100,000.00 |
| 5711 | 1040-804-165711 | | $100,000.00 |
| 1926 | 1002-245-441926 | | $100,000.00 |
| 7808 | 1002-942-817808 | $8.68 | $100,000.00 |
| 9166 | 1002-534-789166 | | $100,000.00 |
| 2001 | 460-040524-12-001 | $63,294.13 | $100,000.00 |
| 6539 | 1005-801-926539 | | $100,000.00 |
| 1003 | 460-069541-41-003 | | $100,000.00 |
| 3001 | 460-069541-13-001 | $7,919.20 | $100,000.00 |
| 5417 | 1005-601-855417 | $450,683.22 | $100,000.00 |
| 0405 | 1002-430-970405 | | $100,000.00 |
| 8765 | 1081-400-538765 | $631.80 | $100,000.00 |
| 9546 | 1080-400-219546 | $2,792.25 | $100,000.00 |
| 4681 | 1002-544-404681 | $712,878.78 | $356,439.39 |
| 6258 | 1020-711-226258 | $46,250.00 | $100,000.00 |
| | | **$1,618,766.23** | **$4,056,439.39** |

Without accepting Chernyak's figures, the Penalty Spreadsheet does not support a willful FBAR penalty for 2011 in excess of $809,383.12, i.e. 50% of the alleged aggregate 2011 violation-date balance. Moreover, the Penalty Spreadsheet makes no reference to accounts or violation-date balances for 2009, 2010, or 2012. *Id.*

Even if Chernyak's methodology for calculating the FBAR Penalties is not arbitrary and capricious *per se*, the Court should vacate the assessments due to her clear errors, all of which were raised by Ms. Kim during the audit. D377, Ex. 107 at USA – 003592 to 3598. Chernyak imposed *two* penalties on Account -4681, totaling $456,439.39, D462-D463, Ex. 69 at LHK_3484-3485; and *two* penalties on Account -5417, totaling $200,000, D465, Ex. 69 at LHK_3484-3485. She also imposed a $100,000 penalty on Account -6699 even though Ms. Kim reported this account and Accounts -3627 and -5282 on her 2011 FBAR.[9] D467-D468, Ex. 65. In addition, Chernyak imposed $100,000 penalties on Accounts -8765, -9546, and -6258, but there is no evidence that these accounts were open in 2011. D475-D477, Ex. 69 at LHK_3484-3485; D478-D480, Exs. 41, 42, 44. Finally, she imposed $100,000 penalties on Accounts -1003, -2001, -2033, -3001, -3441, and -6411. D483-D488, Ex. 69 at LHK_3484-3485. However, accounts -1003 and -2033 are the same, as are -2001 and -3441, and -3001 and -6411. D483-488, Ex. 69 at LHK_3484-3485; D489-D491, Exs. 209-211.[10]

Moreover, the IRS *knew* Chernyak's calculations were erroneous. On August 10, 2020, Binns told McGeehan that Accounts -8765, -9546, and -6258 were not open in 2011, and that Accounts -6411, -3441, and -2033 were

---

[9] Ms. Kim reported multiple accounts in single account fields on her FBARs, separating account numbers by commas. D474, Ex. 59.

[10] The account statements state—and Binns accepted—that these are "Precursor/Successor Accounts." D448, Ex. 153 at LHK_4036-4037; D489-491, Exs. 209-210.

"successor" accounts to Accounts -3001, -2001, and -1003, respectively. D448, Ex. 153 at LHK_4036-4037. Binns recommended that the FBAR penalty for 2011 be reduced by $800,000 ($100,000 for each account incorrectly penalized). D449, Ex. 142. On September 24, 2020, McGeehan told Binns that DOJ's approval is likely conditional on Ms. Kim "full paying the remaining $3.3M FBAR liability immediately." D492, Ex. 207 at LHK_4155. On September 24, 2020, Binns told Ms. Kim's counsel that Appeals:

> sees no reason to present this to the DOJ unless 1) Taxpayer agrees that she will settle the FBAR issue for this amount, and 2) Taxpayer agrees that she will immediately pay this amount (i.e., the DOJ's approval will, in all likelihood, be conditional on Taxpayer paying this amount upfront to secure the agreement). If Taxpayer is not willing to make these two commitments, Appeals will close the case unagreed,

and you can take the full amount (i.e., with no abatement) to trial. D493, Ex. 142. Nonetheless, the IRS upheld the assessment of the FBAR Penalties based on Chernyak's calculations. D452, Ex. 144. *See Jones, supra* at *8 ("While the end result was well within the maximum allotted for in the statute, the calculation of the penalty was 'arbitrary and capricious.'"). The IRS's serious and blatant disregard of the statute and its own administrative guidance renders its decision fundamentally flawed, warranting vacatur. *See Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015).

Finally, there are several accounts that the IRS included in calculating the FBAR Penalties but, in the Complaint, Plaintiff failed to allege Ms. Kim willfully omitted these accounts from her FBARs.[11] Thus, Plaintiff's request to collect FBAR penalties attributable to those accounts must be denied.

---

[11] The IRS attributed penalties of $100,000 each to Accounts -9534, -8740, -6699, -9676, -0232, -8951, -5091, -6048, -0907, -5711, -1926, -7808, -9166, -

*(footnote cont'd on next page)*

**B. United States' Position**

    **1. Additional Facts**

        The following is a summary for each year from 2009 through 2012, by account number, of the maximum value in KRW (if the account was held in KRW), the maximum value in U.S. dollars, the maximum amount Defendant reported on her FBAR, value in dollars on the date Defendant's FBAR was filed, the total on that date, and the potential FBAR penalty equal to 50% of the total.

| Exhibit Number | Last 4 of Account Number | Maximum Value in KRW in 2009 | | Maximum Value in Dollars in 2009 | Maximum Value Reported by Defendant on FBAR | Value in KRW on June 28, 2010 | | Value in Dollars on June 28, 2010 |
|---|---|---|---|---|---|---|---|---|
| 1 | 3441 | ₩ | 2,144,283,978 | $ 1,838,890 | $ - | ₩ | 151,743,282 | $ 126,126.91 |
| 3 | 2033 | USD | | $ 2,124,869 | $ - | USD | | $ 177,746.74 |
| 5 | 6658 | USD | | $ 2,372,626 | $ - | USD | | $ 2,372,626.98 |
| | | | | | | Total on June 28, 2010 | | $ 2,676,500.63 |
| | | | | | | Potential 2009 FBAR Penalty | | $ 1,338,250.32 |

[Facts P4, 6, 8, 85, 101-102, Exhibits 1, 3, 5, 63, 213 ¶¶ 1-2].

| Exhibit Number | Last 4 of Account Number | Maximum Value in KRW in 2010 | | Maximum Value in Dollars in 2010 | Maximum Value Reported by Defendant on FBAR | Value in KRW on June 30, 2011 | | Value in Dollars on June 30, 2011 |
|---|---|---|---|---|---|---|---|---|
| 1 | 3441 | ₩ | 1,163,671,196 | $ 1,039,039 | $ - | ₩ | 68,426,086 | $ 64,090.37 |
| 3 | 2033 | USD | | $ 1,180,825 | $ 211,471 | | | $ 10,526.69 |
| 22 | 9362 | USD | | $ 1,450,856 | $ 305,885 | USD | | $ 234,997.51 |
| 25 | 4889 | ₩ | 906,297,396 | $ 809,230 | $ - | ₩ | 906,297,396 | $ 848,871.26 |
| | | | | | | Total on June 30, 2011 | | $ 1,158,485.83 |
| | | | | | | Potential 2010 FBAR Penalty | | $ 579,242.92 |

[Facts P4, 6, 25, 28, 87, 103-104, Exhibits 1, 3, 22, 25, 64, 213 ¶¶ 3-4].

---

6539, -0405, and -6258. D494-D509, Ex. 69 at LHK_3484-3485. Plaintiff has not alleged that Ms. Kim willfully failed to report these accounts on her 2011 FBAR. Complaint at Ex. A, ECR No. 1 (Aug. 20, 2021).

45

| Exhibit Number | Last 4 of Account Number | Maximum Value in KRW in 2011 | Maximum Value in Dollars in 2011 | Maximum Value Reported by Defendant on FBAR | Value in KRW on June 29, 2012 | Value in Dollars on June 29, 2012 |
|---|---|---|---|---|---|---|
| 1 | 3441 | ₩ 1,165,788,609 | $ 1,005,727 | $ - | ₩ 116,531,736 | $ 102,135.71 |
| 22 | 9362 | USD | $ 1,038,822 | $ - | USD | $ 194,390.18 |
| 25 | 4889 | ₩ 951,030,833 | $ 820,455 | $ - | ₩ 951,030,833 | $ 833,542.95 |
| 34 | 4681 | ₩ 3,243,030,079 | $ 2,797,765 | $ - | ₩ 770,679,760 | $ 675,471.98 |
| | | | | | Total on June 29, 2012 | $ 1,805,540.82 |
| | | | | | Potential 2011 FBAR Penalty | $ 902,770.41 |

[Facts P4, 25, 28, 37, 89, 105-106, Exhibits 1, 22, 25, 34, 89, 213 ¶¶ 5-6].

| Exhibit Number | Last 4 of Account Number | Maximum Value in KRW in 2012 | Maximum Value in Dollars in 2012 | Maximum Value Reported by Defendant on FBAR | Value in KRW on June 27, 2013 | Value in Dollars on June 27, 2013 |
|---|---|---|---|---|---|---|
| 52 | 3558 | USD | $ 3,022,086 | $ - | USD | $ 2,722,471.00 |
| | | | | | Potential 2012 FBAR Penalty | $ 1,361,235.50 |

[Facts P55, 91, 107-108, Exhibits 52, 66, 213 ¶¶ 7-8].

### 2. Analysis

#### a. The FBAR penalty was not arbitrary and capricious

The IRS's determination will be set aside only if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," taking "due account . . . of the rule of prejudicial error," as provided under the Administrative Procedure Act, 5 U.S.C. § 706; *see, e.g., Jones v. United States*, 2020 WL 2803353, at *8 (C.D. Cal. May 11, 2020)). This standard is "exceedingly deferential" to the agency. *Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 541 (11th Cir. 1996). "Only if the remedy chosen is unwarranted in law or is without justification in fact should a court attempt to intervene in the matter." *Vidiksis v. E.P.A.*, 612 F.3d 1150, 1154 (11th Cir. 2010), quoting *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 112-13 (1946)).

In this case, the amounts of the penalties are warranted by the facts and the law. In *Bittner v. United States*, 143 S.Ct. 713 (2023), the question before the Supreme Court was whether a nonwillful FBAR penalty accrues

46

1    on a per-report or a per-account basis. *Id.* at 719. It concluded that "in all

2    cases, penalties for nonwillful violations accrue on a per-report, not a per-

3    account, basis." *Id.* at 720. This case involves willful FBAR penalties. Even if

4    *Bittner* applies and limits the amount of the willful penalty for a particular

5    year to the greater of $100,000 or 50% of the balances of all the unreported

6    foreign bank accounts, the maximum allowed under this approach is still

7    greater in aggregate than the amount assessed against Defendant. Similarly,

8    if the IRS is permitted to assess $100,000 per account that Defendant

9    willfully failed to report on her FBAR (*see e.g. United States v. Hughes*, No.

10   18-CV-05931-JCS, 2023 WL 2393780, at *9 (N.D. Cal. Mar. 6, 2023)), the

11   FBAR penalty of $1,014,109.85 per year is less than the statutory maximum,

12   so it is not arbitrary and capricious.

13        b. <u>In the alternative, remand to the IRS is appropriate</u>

14        If the Court determines that the IRS calculation for the FBAR

15   penalties was arbitrary and capricious, the proper remedy is for the Court to

16   remand this case to the IRS. In *Jones v. United States*, the assessed FBAR

17   penalties for 2011 and 2012 were based on the statutory maximum penalty

18   of 50% of the balance on June 30, 2013, prorated between the two years.

19   2020 WL 2803353, at *11 (C.D. Cal. May 11, 2020). The Court determined

20   that "[s]hould willfulness be found at trial, the Court will remand the action

21   to the IRS for recalculation." *Id.* at *8. "[T]his would not be a new

22   assessment of penalties, but rather a recalculation of the initial penalty

23   based upon an upheld finding of willfulness." *Id. See also United States v.

24   Schwarzbaum*, 24 F.4th 1355, 1365 (11th Cir. 2022) (directing the district

25   court to remand to the IRS). Accordingly, this Court should follow *Jones* and

26   first determine if Defendant was willful. If the court determines that

27   Defendant was willful, then assuming arguendo that the IRS calculation was

28

arbitrary and capricious, the proper remedy is to remand the action to the IRS for recalculation of the penalty.

## VI. Defendant's Conclusion

Ms. Kim is a native of Korea with limited English proficiency. Relying in good faith on her advisors, she did her best to comply with her FBAR obligations, timely filing the FBARs at issue and asking the IRS for assistance that it never provided. Ms. Kim did not willfully or recklessly violate a known legal duty.

In contrast, the IRS engaged in improper and abusive conduct during Ms. Kim's audit, administrative appeal, and this litigation. Chernyak made numerous, blatant errors in proposing willful FBAR penalties, repeatedly delayed this case, issued serial, inflated proposed income adjustments that forced Ms. Kim to incur substantial professional fees, and claimed complete ignorance of this case during her depositions. Binns rushed to assess the inflated FBAR Penalties in violation of the statutory provisions and the APA. Graves assessed the FBAR Penalties without authority. In sum, the IRS attempts to extract excessive, illegal penalties from Ms. Kim for failing to turn square corners in her dealings with the government, while intentionally and repeatedly failing to hold itself to the same standard. *See Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1486 (2021).

Plaintiff seeks to collect FBAR Penalties assessed after the statute of limitations expired, without proper authorization, and based on false allegations and clearly erroneous calculations that violate the statutory framework and the APA. Based on the foregoing, the Court should grant summary judgment in favor of Ms. Kim, deny summary judgment to Plaintiff, vacate the assessment of the FBAR Penalties, and grant such other relief as justice may require.

1                                  Respectfully submitted,

2

3                                  E. MARTIN ESTRADA
                                  United States Attorney

4                                  THOMAS D. COKER
                                  Assistant United States Attorney

5                                  Chief, Tax Division

6

7  May 2, 2023                    /s/
                                    GAVIN GREENE

8                                  Assistant United States Attorney

9

                                  Kostelanetz LLP

10

11  May 2, 2023                  /s/
                                    CAROLINE D. CIRAOLO

12                                  Attorneys for Laura Kim

13

                                  Kostelanetz LLP

14

15  May 2, 2023                  /s/
                                    WILLIAM GRECO

16                                  Attorneys for Laura Kim

17

                                  Taylor, Nelson & Amitrano, LLP

18

19  May 2, 2023                  /s/
                                    A. LAVAR TAYLOR

20                                  Attorneys for Laura Kim

21

22                                  Taylor, Nelson & Amitrano, LLP

23

24  May 2, 2023                  /s/
                                    JONATHAN AMITRANO

25                                  Attorneys for Laura Kim

26

27        Pursuant to Local Rule 5-4.3.4(a)(2)(i), I, Gavin Greene, attest that

Caroline D. Ciraolo, William Greco, A. Lavar Taylor, and Jonathan

28

Amitrano, concur in the contents of this document and have authorized this filing.

# Certificate of Compliance

The undersigned, counsel of record for the United States and Defendant Laura Kim, certify that this brief contains no more than 50 pages, which complies with Court's requirement that the cross-motion for summary judgment be a single integrated document with no more than 25 pages per side. *See* ECF document numbers 21 and 30.

|  |  |
|---|---|
|  | E. MARTIN ESTRADA<br>United States Attorney<br>THOMAS D. COKER<br>Assistant United States Attorney<br>Chief, Tax Division |
| Dated: May 2, 2023 | /s/<br>GAVIN GREENE<br>Assistant United States Attorney |
|  | Kostelanetz LLP |
| Dated: May 2, 2023 | /s/<br>CAROLINE D. CIRAOLO<br>Attorneys for Laura Kim |
|  | Kostelanetz LLP |
| Dated: May 2, 2023 | /s/<br>WILLIAM GRECO<br>Attorneys for Laura Kim |

51

1

2                                       Taylor, Nelson & Amitrano, LLP

3      Dated: May 2, 2023              /s/

4                                       A. LAVAR TAYLOR
                                        Attorneys for Laura Kim
5

6                                       Taylor, Nelson & Amitrano, LLP

7
       Dated: May 2, 2023              /s/
8                                       JONATHAN AMITRANO
                                        Attorneys for Laura Kim
9

10

11          Pursuant to Local Rule 5-4.3.4(a)(2)(i), I, Gavin Greene, attest that

12     Caroline D. Ciraolo, William Greco, A. Lavar Taylor, and Jonathan

13     Amitrano, concur in the contents of this document and have authorized this

14     filing.

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                        52