Caroline D. Ciraolo
Email: cciraolo@kflaw.com
William G. Greco
Email: wgreco@kflaw.com
Telephone: (443) 845-4898
Fax: (212) 808-8108
Kostelanetz LLP
601 New Jersey Ave, N.W., Ste. 260
Washington, DC 20001
*Pro Hac Vice Counsel*

A. Lavar Taylor (CA Bar No. 129512)
Email: ltaylor@taylorlaw.com
Jonathan T. Amitrano (CA Bar No. 283389)
Email: jamitrano@taylorlaw.com
Telephone: (714) 546-0445, ext. 116
Fax: (714) 546-2604
Taylor, Nelson & Amitrano, LLP
3 Hutton Centre Drive, Ste. 500
Santa Ana, CA 92707
*Attorneys for Laura Kim*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| United States of America,<br><br>          Plaintiff,<br><br>               v.<br><br>Laura Kim,<br><br>          Defendant. | CASE NO. 2:21-cv-06746 FMO (KSx)<br><br>**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Motion Hearing Date: June 1, 2023<br>Motion Hearing Time: 10:00am PST<br>Courtroom: 6D<br>Judge: Fernando Olguin<br><br>Action Filed: May 2, 2023<br>Trial Date: |

1

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I. <u>Introduction</u>

Defendant Laura Kim ("Ms. Kim") files this Supplemental Memorandum pursuant to this Court's Order Re: Summary Judgment Motions, ECF No. 21 (Feb. 15, 2022), and Order Regarding Cross Motions for Summary Judgment, ECF No. 50 (Apr. 13, 2023), supplementing the parties' Cross-Motion for Summary Judgment, ECF No. 51 (May 2, 2023) ("Cross-Motion").

II. <u>Ms. Kim did not willfully file inaccurate FBARs</u>

Neither the BSA nor the Court of Appeals for the Ninth Circuit has defined "willful" for purposes of the civil FBAR penalty. *See* 31 U.S.C. § 5321(a)(5)(C); *United States v. Mahyari*, No. 20-cv-1887, 2023 WL 372656, at *5 n.4 (D. Or. Jan. 24, 2023). The definition is the subject of a petition for writ of certiorari pending before the U.S. Supreme Court. *See Bedrosian v. United States*, 42 F.4th 174 (3d Cir. 2022), *petition for cert. filed* (U.S. Dec. 29, 2022) (No. 22-598).

The starting point for any question of statutory interpretation is the plain language of the statute. *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992). "[U]nless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979). "Willful," as the term is used in § 5321(a)(5)(C), most commonly means "done deliberately" or "intentional." *Willful*, MERRIAM-WEBSTER, https://unabridged.merriam-webster.com/unabridged/willful (last visited May 15, 2023). This definition excludes recklessness, which describes conduct that falls short of an intentional violation. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68 (2007) (defining recklessness as "an objective standard: action entailing an

2

1   'unjustifiably high risk of harm that is either known or so obvious that it
2   should be known.'" (citation omitted)).

3      As further support for the plain meaning, the context here indicates
4   that "willful" requires more culpability than objective recklessness. In 2004,
5   Congress amended the BSA to penalize both willful and nonwillful violations
6   of § 5314 while providing for a reasonable cause exception to nonwillful
7   violations. *See* American Jobs Creation Act of 2004, Pub. L. No. 108-357, §
8   821, 118 Stat. 1418, 1586 (2004) (codified at 31 U.S.C. § 5321(a)(5)). Thus,
9   Congress clearly contemplated three degrees of violations: willful violations,
10  which are subject to a maximum penalty of the greater of $100,000 or fifty
11  percent of the balance in the accounts at issue on the date of violation;
12  nonwillful violations, which are subject to a maximum $10,000 penalty; and
13  nonwillful violations for which there is reasonable cause, which are not
14  subject to any penalty. *Id.* An objective reckless standard for willfulness
15  obliterates any meaningful distinction between willful violations and
16  nonwillful violations for which there is no reasonable cause exception.

17     Consider the facts at issue: Ms. Kim is a non-native English speaker
18  living abroad, D218, Ex. 182 at 6:21-7:7; D229, Ex. 193 at 9:13-20; she did
19  not maintain her own financial information, D258-D261, Ex. 182 at 60:25-
20  62:22, Ex. 192 at 11:6-14:5, Ex. 193, 28:15-20, 29:4-5, 45:3; and she has no
21  background in tax or FBARs, D256, Ex. 191 at No. 11. She never heard about
22  FBARs from her accountant, D280, Ex. 107 at USA – 003563; D305, Ex. 67
23  at LHK_0267, and was unaware of the potential reasons to consult her
24  accountant on the matter, Ex. 182 at 46:20-24;[1] instead, she tried to

25
26   _____
27   [1] Plaintiff wrongfully infers that Ms. Kim was dismissive of her duty to
     report her foreign accounts because she "didn't think it was that serious at
     that time." P176; Ex. 182 at 46:16-24. On the contrary, Ms. Kim earnestly
28   attempted to fulfill her duty, but was merely unaware of the seriousness of
     the consequences of incorrectly reporting her accounts.

understand the form by herself, D306, Ex. 191 at No. 17. Plaintiff labels Ms. Kim's mistakes as willful, purportedly based on how an objective person would view the circumstances, regardless of her actual state of mind. That is not how the statute is designed to work.

The penalties under § 5321 are thus distinguishable from penalties under 26 U.S.C. ("IRC") § 6672, which imposes civil penalties on "responsible persons" for "willful" failure to withhold tax, *see* IRC § 6672(a). In the Ninth Circuit, a "responsible person" is "willful" under" IRC § 6672 if he engaged in conduct that can be described as "grossly negligent" by failing to withhold taxes even though he "(1) clearly ought to have known that (2) there was a grave risk that withholding taxes were not being paid and if (3) he was in a position to find out for certain very easily." *See Phillips v. IRS*, 73 F.3d 939, 943 (9th Cir. 1996). This standard, which the Ninth Circuit has described as seemingly "oppressive" and amounting to "'unwittingly' willful," *id.* at 942, is necessary in the withholding context because, "if a high degree of recklessness were required the purpose of the statute would be thwarted." *Id.* at 943 (quoting *Wright v. United States*, 809 F.2d 425, 427 (7th Cir. 1987)). In other words, because the statute only penalizes willful failures to withhold tax, a lower standard was necessary to prevent responsible persons from "adopting a 'hear no evil—see no evil' policy" to avoid liability. *Id.* By contrast, the BSA provides for willful *and* nonwillful FBAR penalties. A low standard of willfulness is not necessary to ensure violators are penalized, but rather renders redundant the nonwillful penalties and undermines Congress's intent to establish a two-tier penalty regime.

To the extent the statutory structure of the BSA leaves the definition of "willful" ambiguous, the rule of lenity requires that the ambiguity be resolved in favor of Ms. Kim. *See, e.g.*, *Comm'r v. Acker*, 361 U.S. 87, 91 (1959); *Bittner v. United States*, 143 S. Ct. 713, 724-25 (2023) (opinion of

Gorsuch, J.); *cf. United States v. Boyd*, 991 F.3d 1077, 1085-86 (9th Cir. 2021) ("[O]ur circuit strictly construes tax penalty provisions independent of the rule of lenity."). Under a strict construction of the BSA, "willful" should be defined as a knowing failure to accurately report one's foreign accounts. *See Ratzlaf v. United States*, 510 U.S. 135, 141-43 (1994).

Moreover, the evidence presented by Ms. Kim to support lack of willfulness "is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). Whether Ms. Kim acted willfully is a "disputed fact that a jury must find or not." *See United States v. Cohen*, No. 2:17-cv-01652, 2019 WL 8231039, at *1, *7 (C.D. Cal. Dec. 16, 2019). Ms. Kim provided sworn testimony that she learned of the FBAR from her sister in 2009, D300-D301, Ex. 193 at 14:15-16:4, immediately found the form, D304, Ex. 67 at LHK_0267, prepared it to the best of her ability, D307, Ex. 193 at 95:2-10, and filed the FBAR with a note asking the IRS to contact her if she made any mistakes, D308-D309, Ex. 182 at 44:2-5. Ms. Kim also presented evidence proving that Michael Khim ("Khim"), her U.S. accountant, never advised her to report her foreign accounts or explained the FBAR requirements, D305, Ex. 67 at LHK_0267; that she did not personally manage her bank accounts, D259, Ex. 193 at 28:15-20; that she relied in good faith on employees who managed her foreign accounts to provide the records she used to prepare her FBARs, P177-P179, D511, Ex. 182 at 70:19-71:16, 52:2-12; and that Korean banks frequently closed and rolled over her short-term interest-bearing savings accounts without her explicit authorization or knowledge, D515, Ex. 193 at 27:10-18, D516-D517, Ex. 195.

Without direct evidence that Ms. Kim willfully violated the FBAR reporting requirements, Plaintiff further seeks to inflame the passions of the Court by citing the number of Korean accounts related to Ms. Kim in the

1  years at issue and amounts reflected on Korean account statements,
2  calculating alleged percentages of amounts not reported on the timely filed
3  FBARs. Ms. Kim disputes Plaintiff's calculations and, more importantly,
4  rejects its suggestion that the number of accounts or amount of funds therein
5  establish that she knowingly (or recklessly) violated a known legal duty.

6      In *United States v. Clemons*, No. 8:18-cv-258-T-36SPF, 2019 WL
7  7482218 (M.D. Fla. Oct. 9, 2019), Plaintiff similarly relied on circumstantial
8  evidence in support of its motion for summary judgment. The district court
9  rejected Plaintiff's reading of the facts as debatable and pointed out that
10 other cases in which courts found willfulness on summary judgment involved
11 admitted deception by the account holder in efforts to hide assets from the
12 IRS or potential judgment creditors. *Id.* at *7-8. As in *Clemons*, there is no
13 undisputed evidence of deception in this case and therefore the issue of
14 willfulness should be decided by the trier of fact.

15     Regardless of whether willfulness includes recklessness, or whether the
16 standard of review is clear and convincing or by a preponderance of the
17 evidence, viewing the evidence presented in the light most favorable to Ms.
18 Kim, disputed questions of material fact remain for trial and Plaintiff's
19 motion for summary judgment must be denied.

20 **III. The FBAR Penalties were assessed after the limitations periods**

21     Plaintiff concedes that "Defendant agreed to conditionally extend the
22 statute of limitations to December 31, 2019, if the case was forwarded to
23 Appeals – using the language 'in the very near future[.]'" Cross-Motion, at
24 30. The undisputed evidence establishes that Chernyak continued her
25 examination after receiving the April 2018 Conditional Consent and did not
26 transfer the cases to Appeals until nearly six months later. D385-D397. No
27 reasonable juror would define "in the very near future" to permit another six
28 months of audit.

Chernyak told Ms. Kim in November 2016 that her income tax audit was complete, four years after it began. Ex. 116 at USA - 004599. Notwithstanding that representation, Chernyak continued her work on the audit for two more years. *Id.* at USA - 004599-004600. During that time, Chernyak issued two Letters 3709 proposing willful FBAR penalties of several million dollars, despite promising that she would close Ms. Kim's income tax and FBAR audits together. *Id.* By the time Kim submitted the April 2018 Conditional Consent, more than a year after Chernyak first advised that the income tax audit was complete and would be closed with the FBAR audit, Ms. Kim still had not received a 30-day letter closing the income tax audit. *Id.*

It is in this context that Ms. Kim conditioned her consent to extend the limitations period to assess FBAR penalties. Ms. Kim, who had previously attempted suicide, D242, Ex. 192 at 118:5-9, was becoming increasingly distressed by an audit that had no end in sight, *see* Ex. 190 at ¶29. Ms. Kim imposed the condition on the consent to hold the IRS to its promises that the audits were over. *See* Ex. 116 at USA - 004600.

Plaintiff contends that the IRS complied with the condition imposed and, at the same time, attempts to mitigate Chernyak's intentional delay in closing the audit and transferring the cases to Appeals by arguing that Ms. Kim still had the opportunity to a pre-assessment review. *See* Cross-Motion, at 31. Plaintiff ignores the fact that the condition was imposed by Ms. Kim to ensure prompt closure of the audit that had been pending for more than five years, Ex. 116 at USA - 004599, and to avoid further damage to Ms. Kim's precarious mental health. Ex. 190, at No. 17.

Chernyak breached the unambiguous condition imposed on the April 2018 Conditional Consent. As a result, the statute of limitations to assess civil FBAR penalties expired on June 30, 2019, rather than the conditionally

extended date of December 31, 2019, and the assessment of the FBAR Penalties is invalid.

## IV. __The FBAR Penalties were assessed without requisite authority__

Plaintiff argues that Mitchell's delegation of assessment authority to Graves should be approved in spite of Delegation Order 25-13 because the delegation was a reasonable means of complying with CTR Operations' unwritten policy that an initial reviewer of a Form 13448 cannot also be the signatory. Cross-Motion at 37. Plaintiff cites no authority (other than Delegation Order 25-13 itself) allowing a delegation order to be ignored when "reasonable," or prohibiting a signatory of a Form 13448 from being the initial reviewer. As noted, the general permission to "take any other action reasonably necessary for the enforcement of [the FBAR provisions]" does not undermine the specific prohibition against authorized individuals redelegating their authority, *see* Deleg. Order 25-13. Cross-Motion at 33.

Regardless, there is no conflict between Delegation Order 25-13 and CTR Operations' unwritten review policy. Mitchell could have asked Graves to review the Forms 13448 before Mitchell signed them.[2] Alternatively, Mitchell could have reviewed the Forms 13448 and then asked Smith-Pope's supervisor to sign. *See* IRS CCA 200133043 (Aug. 17, 2001) (when a delegate has authority to perform a particular action, "[e]very intervening line supervisory position up to and including the Commissioner has the same authority."). Instead, Mitchell improperly delegated assessment authority to Graves in violation of Delegation Order 25-13. The assessment of the FBAR Penalties is therefore invalid.

Plaintiff also appears to argue delegation orders in general are not binding. This argument is easily dispatched, as courts have repeatedly held

---

[2] If Graves is unqualified to review a Form 13448, it hardly makes sense why she could be qualified to sign one.

that actions taken by unauthorized IRS employees were null and void *because* a delegation order deprived them of authority. *See, e.g.*, *Aller v. United States*, No. 09-cv-01889, 2010 WL 1688123, at *6 (C.D. Cal. Feb. 17, 2010) (form signed by IRS settlement officer invalid because settlement officers are not authorized by Delegation Order No. 97 to sign closing agreements); *Stiskin v. Comm'r*, T.C. Memo. 1996-306, 1996 WL 377047, at *3 (closing agreement was "null and void" because "delegation orders preclude specified officers of the IRS . . . from entering into closing agreements . . . ."); *cf. In re Crowell*, 305 F.3d 474, 477 (6th Cir. 2002) ("[I]f DO 97 applies, then Spooner, an associated chief of appeals, lacked authority to execute the agreements . . . ."); *DelPonte v. Comm'r*, 158 T.C. No. 7, 7 (2022) (IRS Chief Counsel could not delegate authority outside Office of Chief Counsel *because* General Counsel Order No. 4, IRM 30.2.2-6 (06-25-2013), limited redelegations of authority).

Looking beyond this well-established precedent, though, Plaintiff's argument founders on the shores of its own premises. Plaintiff acknowledges that the Department Manager, CTR Operations, is authorized to assess FBAR penalties. But where does that authority come from, if not Delegation Order 25-13 (as modified by Memo for Comm'r, LB&I *et al.* re: Deleg. Order 25-13 (Jul. 8, 2015))? Plaintiff cannot selectively treat some provisions of a delegation order as authoritative and treat the rest as mere jetsam.

## V. <u>Calculation of the FBAR Penalties is arbitrary and capricious</u>

Contrary to Plaintiff's contention, an FBAR penalty that is "well below the maximum 50% penalty" permitted by the statute is arbitrary and capricious if "based on inappropriate data that should not have been considered in assessing the penalty." *Jones v. United States*, No. 19-cv-04950, 2020 WL 2803353, at *8 (C.D. Cal. May 11, 2020). Here, it is clear (and Plaintiff does not dispute) that the FBAR Penalties were calculated based on

inappropriate data and thus, the assessments must be vacated as arbitrary and capricious.

Additionally, Plaintiff has not established that the FBAR Penalties are less than the statutory maximum. Plaintiff cites account statements that are inadmissible hearsay to establish Ms. Kim's aggregate account balances on June 28, 2010; June 30, 2011; June 29, 2012; and June 27, 2013. *See* Cross-Motion at 45-46. Regardless of whether Plaintiff accurately reflects the information in those account statements, account balances for any date other than June 30 are irrelevant because the penalty must be based on the date of violation. *See United States v. Gentges*, 531 F. Supp. 3d 731, 752 (S.D.N.Y. 2021). Accordingly, Plaintiff has not alleged facts sufficient to establish the maximum penalties for 2009, 2011, and 2012. And Plaintiff alleges the maximum allowable penalty for 2010 is $579,242.92, which is less than the more-than $1-million-penalty that was assessed for 2010.

Vacatur is the appropriate remedy because it is mandated by the APA. 5 U.S.C. § 706(2) ("The reviewing court *shall . . . hold unlawful and set aside* agency action . . . ." (emphasis added)). In the Ninth Circuit, arbitrary and capricious agency action is remanded without vacatur *only* in those "limited circumstances" when "equity demands," taking into consideration "the seriousness of the agency's errors" and the "disruptive consequences of an interim change that may itself be changed." *See Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015). An agency's errors will be considered serious when "fundamental flaws" in the agency's decision make it unlikely that the agency will take the same action on remand. *See id.* Sufficiently disruptive consequences have generally been found only when "serious irreparable environmental injury" is at stake. *See Ctr. for Food Safety v. Vilsak*, 734 F. Supp. 2d 948, 951 (N.D. Cal. 2010).

Here, there is no strong showing that the equities weigh against vacatur because the penalty calculation is fundamentally flawed. As previously described at length, the penalties were calculated without regard to the statute, administrative guidance, and facts of the case. This is not a situation where the IRS committed a single legal error that could be readily fixed on remand and yield an identical result. *See, e.g.*, *United States v. Schwarzbaum*, 24 F.4th 1355, 1365-66 (11th Cir. 2022). Moreover, Ms. Kim pointed out the IRS's errors during her audit, D377, Ex. 107 at USA – 003592 to 3598, and appeal, *see* Ex. 153 at LHK_4037, yet Binns upheld the calculations knowing they were erroneous, *id.*; D452, Ex. 144 at LHK_4007.

Furthermore, there is no evidence that vacatur would lead to disruptive consequences—certainly none that are comparable to the lasting environmental damage that usually justifies departure from the standard vacatur remedy under the APA, *see Ctr. for Food Safety*, 734 F. Supp. 2d at 951. Vacatur is necessary to ensure the IRS fulfills its duty to engage in "reasoned decisionmaking." *See Michigan v. EPA*, 576 U.S. 743, 750 (2015). Without the threat of vacatur, the IRS has no incentive to assess reasonable FBAR penalties because it will expect a mulligan any time a court finds its calculations to be arbitrary and capricious. *See California v. Bernhardt*, 472 F. Supp. 3d 573, 631 (N.D. Cal. 2020) ("Departing from the default remedy of vacatur risks giving the agency a free pass to ignore its legal obligations under the APA, making a mockery of the statute." (cleaned up)).

## VI. <u>Conclusion</u>

Based on the foregoing, the Court should grant summary judgment in favor of Ms. Kim and deny summary judgment to Plaintiff.

Respectfully submitted,

May 16, 2023

/s/
CAROLINE D. CIRAOLO

11

1    Kostelanetz LLP

2    May 16, 2023                          /s/
3                                          WILLIAM GRECO
4                                          Kostelanetz LLP

5    May 16, 2023                          /s/
6                                          A. LAVAR TAYLOR
7                                          Taylor, Nelson & Amitrano, LLP

8    May 16, 2023                          /s/
9                                          JONATHAN AMITRANO
10                                         Taylor, Nelson & Amitrano, LLP
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28